RON BENDER (SBN 143364)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  RB@LNBYB.COM; JYO@LNBYB.COM

Proposed Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE SOURCE HOTEL, LLC, a<br>California limited liability company,<br><br>       Debtor and Debtor in  Possession. | Case No.: 8:21-bk-10525-ES<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PAYMENT TO UTILITY COMPANIES PURSUANT TO 11 U.S.C. § 366; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD CHAE IN SUPPORT THEREOF**<br><br>[APPLICATION FOR ORDER SETTING HEARING ON SHORTENED TIME FILED CONCURRENTLY HEREWITH]<br><br>Date:     [To be set]<br>Time:     [To be set]<br>Place:   ZoomGov |

1

**TO THE OFFICE OF THE UNITED STATES TRUSTEE, ALL KNOWN SECURED CREDITORS, TWENTY LARGEST UNSECURED CREDITORS, UTILITY COMPANIES, AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

**PLEASE TAKE NOTICE** that The Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "<u>Debtor</u>"), hereby submits this motion (the "<u>Motion</u>"), pursuant to 11 U.S.C. § 366, for the entry of an order authorizing the Debtor to provide adequate assurance of future payment to certain utility companies.

Since 2014, Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "<u>Hotel</u>"), which upon completion includes conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services. The Hotel is part of a larger 12.8-acre mixed-use development project called "The Source" (the "<u>Master Development</u>"), which includes a 400,000 square-foot retail center and a 50,000 square-foot seven-story office building which were completed in 2016. The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property with the Debtor's affiliate, The Source at Beach, LLC.

Construction of the Hotel began in 2016. Approximately 85% of the Hotel construction had been completed. However, in late 2019, the Debtor was forced to cease construction activities when the Debtor's senior secured lender at the time, Evertrust Bank ("<u>Evertrust</u>"), refused to issue the final $4 million of agreed-upon financing. The Debtor's efforts to refinance its loan from Evertrust Bank were ultimately unsuccessful due to the effects of the COVID-19 pandemic. During 2020, the Debtor engaged in active forbearance negotiations with Evertrust to be able to allow the Hotel to recover from the effects of the COVID-19 pandemic, to obtain refinancing or additional investments, and ultimately to recommence construction of the Hotel. However, in December 2020, Evertrust sold its interests in the Loan to Shady Bird Lending, LLC ("<u>Shady Bird</u>") at a significant discount, for a reported purchase price of approximately $19

million.  Even though Shady Bird repeatedly represented to Debtor that it would provide Debtor with a two-year period within which to complete the construction of the Hotel, Shady Bird immediately took steps to foreclose on the Hotel and scheduled a Trustee's Sale for the Hotel on March 1, 2021.  In addition, Shady Bird obtained an *ex parte* order appointing a receiver, who then immediately took possession of the Hotel.

As a result of the foregoing, Debtor sought chapter 11 bankruptcy protection on February 26, 2021 (the "Petition Date") in order to prevent the impending foreclosure of the Hotel (which is the Debtor's primary asset), to preserve the equity in the Hotel for the benefit of all creditors (not just Shady Bird), to obtain refinancing or investments to enable the Debtor to complete construction of the Hotel, and to be afforded a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion.

Although there is currently no active construction activity occurring at the Hotel, the Debtor receives electricity and telephone services from certain utility companies (each a "Utility Company," and collectively, the "Utility Companies") which are necessary to preserve and maintain the Hotel.  Therefore, it is crucial that the means of providing adequate assurance to the Utility Companies that provide utility services to the Debtor be determined promptly so that there is no interruption in the services provided.

As set forth in the Motion, the Debtor proposes that adequate "assurance of payment" be provided to the Utility Companies in the form of cash deposits, as authorized by 11 U.S.C. § 366(c)(1)(A)(i), in the amounts set forth in the annexed Memorandum of Points and Authorities ("Cash Deposits").  The total aggregate amount of the Cash Deposits proposed to be paid by the Debtor is approximately $1,950.00.  Generally, the Debtor is proposing to provide each Utility Company with a cash deposit in an amount equal to the average monthly payment based on payments historically made on the utility account(s) (as determined by the last three monthly payments made on such utility accounts).  In addition to the Cash Deposits, the Utility Companies will be kept current on all post-petition amounts payable to such Utility Companies.

The source of the funds to be used to pay the Cash Deposits to the Utility Companies will be the proceeds of unsecured post-petition financing proposed to be provided to the Debtor by the Debtor's Manager, M + D Properties ("M+D"). Accordingly, concurrently herewith, the Debtor has filed a motion seeking the entry of an order authorizing the Debtor to obtain unsecured post-petition financing from M+D to allow the Debtor to maintain utility services at the Hotel so that the Debtor may preserve and maintain the Hotel. Since the source of the funds proposed to be used to pay the Cash Deposits is unsecured post-petition financing from M+D, approval to pay the Cash Deposits to the Utility Companies will not render the Debtor's bankruptcy estate administratively insolvent.

11 U.S.C. § 366 permits the Utility Companies to discontinue service to the Debtor based on the commencement of the Debtor's bankruptcy case or the failure of the Debtor to pay a pre-petition debt for utility services provided if the Debtor does not furnish adequate assurance of payment in the form of cash deposits (or other security) within the first thirty (30) days after the Petition Date (*i.e.*, by Sunday, March 28, 2021). To ensure that the amount of each Cash Deposit is approved by the Court and delivered to the respective Utility Company before Sunday, March 28, 2021, the Debtor has filed concurrently herewith an application for an order setting the hearing on the Motion on shortened notice, pursuant to which **the Debtor is seeking to have the Motion heard on or before Wednesday, March 24, 2021**.

The Motion is based upon 11 U.S.C. § 366, Local Bankruptcy Rule 9013-1 and 9075-1(b), this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Declaration of Donald Chae, the entire record in the Debtor's bankruptcy case, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

/ / /

/ / /

/ / /

4

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order:

(1)    granting the Motion in its entirety;

(2)    authorizing the Debtor to provide adequate "assurance of payment" to the Utility Companies in the form of Cash Deposits in the amounts proposed in the Motion, pursuant to the terms and conditions set forth therein;

(3)    deeming the Cash Deposits to constitute adequate "assurance of payment" pursuant to 11 U.S.C. § 366(c);

(4)    requiring the Utility Companies that receive Cash Deposits under an order of the Court granting the Motion to return such Cash Deposits to the Debtor within ten (10) business days if, and when, such Utility Companies' services are terminated by the Debtor; and

(5)    granting such other and further relief as the Court deems just and proper.

Dated:  March 11, 2021                        THE SOURCE HOTEL, LLC

By:_____
      RON BENDER
      JULIET Y. OH
      LEVENE, NEALE, BENDER, YOO
         & BRILL L.L.P.
      Proposed Attorneys for Chapter 11 Debtor
      and Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

**A.    Background.**

1.      The Source Hotel, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case, filed a voluntary petition for relief under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on February 26, 2021 (the "Petition Date"). The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor is a limited liability company that was organized in November, 2012 in the State of California.   DMC Investment Holdings, LLC is the sole member of the Debtor. Donald Chae and Min S. Chae, who are brothers, are the members and principals of DMC Investment Holdings, LLC.

3.      Since 2014, the Debtor has been developing a full-service seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which includes conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services.   The Hotel is part of a larger 12.8-acre mixed-use development project (the "Master Development"), which includes a 400,000 square-foot retail center and a 50,000 square-foot seven-story office building which were completed in 2016.  The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property with the Debtor's affiliate, The Source at Beach, LLC.

4.      Construction of the Hotel began in 2016.  To finance the construction of the Hotel, on May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from Evertrust Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling $25 million.   Through October 2019, approximately 85% of the Hotel construction had been completed, including: substantial completion of the core and shell, exterior painting, porte cochère, street lighting, ceiling framing, kitchen framing and glass block installation, food storages, all glass

storefronts, electrical wiring and switchgear, guestroom flooring, ceiling fixtures, pool bar canopy structure, deck drains, window washing system, roof membrane, roof ductwork and HVAC vibration installation; nearly complete installation of bathroom fixtures (95%), acoustic ceiling system (80%), HVAC electrical connections (90%), piping for HVAC and plumbing equipment (95%), and rooftop ductwork (99%).  In addition, substantial materials have been procured and/or fabricated and are ready for installation pending completion of other items, such as first and second floor flooring, corridor carpeting, millwork (wall and ceiling panels, pool bar), passenger elevators, fire sprinklers, egress and accent lighting, pool equipment, guest room doors, locks and closures, bathroom fixtures, and rooftop HVAC equipment.

5.    In late 2019, Evertrust refused to issue the remaining $4 million of the Loan, claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to provide the final $4 million of financing, the Debtor was forced to cease construction activities. However, the Debtor believes strongly that, had Evertrust funded the final $4 million as expected, construction of the Hotel would have been completed, as the Debtor believes that its contractors would have carried fifty percent of the cost overrun and the Debtor would have covered the remaining fifty percent of the overrun.

6.    The Debtor immediately and actively sought to refinance the Loan and was able to reach agreement for refinancing for a total of $42 million through a new lender named Hall Structured Finance ("Hall").  Although the Debtor was ready to execute the refinancing agreement with Hall, in March 2020, Hall put an indefinite hold on such refinancing due to the effects of the COVID-19 pandemic.

7.    Between March 2020 and December 2020, the Debtor engaged in active forbearance negotiations with Evertrust to be able to allow the Hotel to recover from the effects of the COVID-19 pandemic, to obtain refinancing or additional investments, and ultimately to recommence construction of the Hotel.  During the course of such negotiations, and in light of the effects of the COVID-19 pandemic, the Debtor requested that Evertrust convert the Loan (in the funded amount of approximately $25 million) into a two-year term loan, and even offered to set

aside one year's worth of loan payments as assurance of repayment of such two-year term loan. Evertrust declined the Debtor's offer.

8. Instead, in December 2020, Evertrust sold its interests in the Loan to Shady Bird Lending, LLC ("Shady Bird") at a significant discount, for a reported purchase price of approximately $19 million. Prior to Shady Bird's acquisition of the Loan, representations were repeatedly made to the Debtor by Ed Choi, the loan broker working with Ronald N. Richards of Shady Bird and Michael Schlesinger of Cambra Realty, that Mr. Richards would sell Shady Bird's interests in the Loan back to the Debtor in two years for $24-25 million, and that the Debtor would be provided with a new loan for $10-14 million by Mr. Schlesinger in the meantime so that the Debtor could complete construction of the Hotel. Even though Mr. Richards repeatedly represented to the Debtor that Shady Bird would provide the Debtor with this two-year period within which to complete the construction of the Hotel, when the Debtor refused to commence a chapter 11 bankruptcy case to eliminate the junior liens held by the EB-5 lenders (as Mr. Richards suggested), Shady Bird immediately took steps to foreclose on the Hotel and issued a Notice of a Trustee's Sale for the Hotel to be held on March 1, 2021.

9. On February 8, 2021, Shady Bird filed a complaint against the Debtor in the Superior Court of the State of California for the County of Orange ("Superior Court") for (i) specific performance and appointment of a receiver, and (ii) waste, thereby commencing the Superior Court action bearing the case number 30-2021-01183489-CU-OR-CJC (the "State Court Action"). Shortly after filing such complaint, Shady Bird filed an *ex parte* application for an order appointing a receiver and other related relief. On or about February 17, 2021, the Superior Court entered an order in the State Court Action appointing Bellann Raile as receiver ("Receiver") to, among other things, take possession of the Hotel and all goods, furniture, fixtures, and equipment attached and/or related to the Hotel.

10. As a result of all of the foregoing, the Debtor sought chapter 11 bankruptcy protection on the Petition Date in order to prevent the impending foreclosure of the Hotel (which is the Debtor's primary asset), to preserve the equity in the Hotel for the benefit of all creditors (not

just Shady Bird), to obtain refinancing or investments to enable the Debtor to complete construction of the Hotel, and to be afforded a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion.

**B.    The Utility Companies.**

11.    Although there is currently no active construction activity occurring at the Hotel, the Debtor receives electricity and telephone services from certain utility companies (each a "Utility Company," and collectively, the "Utility Companies") which are necessary to preserve and maintain the Hotel.  Therefore, it is crucial that the means of providing adequate assurance to the Utility Companies that provide utility services to the Debtor be determined promptly so that there is no interruption in the services provided.

12.    Attached as **Exhibit "1"** to the Declaration of Donald Chae annexed hereto and incorporated herein by reference (the "Chae Declaration") is a list which sets forth the name and address of each Utility Company that is currently providing utility services to the Hotel, the type of utility provided by each Utility Company, the account number(s) associated with each Utility Company, and the amount of the cash deposit proposed to be paid to each Utility Company as adequate assurance of payment (collectively, the "Cash Deposits," and individually, a "Cash Deposit").  The Debtor requests authority to pay the proposed Cash Deposits to the Utility Companies for the utility accounts reflected in Exhibit "1" to the Chae Declaration annexed hereto.

13.    The total aggregate amount of the Cash Deposits proposed to be paid by the Debtor to the Utility Companies is approximately $1,950.00.  Generally, the Debtor is proposing to provide each Utility Company with a Cash Deposit an amount equal to the average monthly payment based on payments historically made on the utility account(s) (as determined by the last three monthly payments made on such utility accounts).

14.    In addition to the Cash Deposits, the Utility Companies will be kept current on all post-petition amounts payable to such Utility Companies.

15.    The source of the funds to be used to pay the Cash Deposits to the Utility Companies will be the proceeds of unsecured post-petition financing proposed to be provided to

the Debtor by the Debtor's Manager, M + D Properties ("M+D").  Accordingly, concurrently

herewith, the Debtor has filed a motion seeking the entry of an order authorizing the Debtor to

obtain unsecured post-petition financing from M+D to allow the Debtor to maintain utility services

at the Hotel so that the Debtor may preserve and maintain the Hotel.  Since the source of the funds

proposed to be used to pay the Cash Deposits is unsecured post-petition financing from M+D,

approval to pay the Cash Deposits to the Utility Companies will not render the Debtor's

bankruptcy estate administratively insolvent.

16.    11 U.S.C. § 366 permits the Utility Companies to discontinue service to the Debtor

based on the commencement of the Debtor's bankruptcy case or the failure of the Debtor to pay a

pre-petition debt for utility services provided if the Debtor does not furnish adequate assurance of

payment in the form of cash deposits (or other security) within the first thirty (30) days after the

Petition Date (*i.e.*, by Sunday, March 28, 2021).  To ensure that the amount of each Cash Deposit

is approved by the Court and delivered to the respective Utility Company before Sunday, March

28, 2021, **the** Debtor has filed concurrently herewith an application for an order setting the hearing

on the Motion on shortened notice, pursuant to which **the Debtor is seeking to have the Motion**

**heard on or before Wednesday, March 24, 2021**.

## II.    DISCUSSION

Pursuant to 11 U.S.C. § 366, a utility may not alter, refuse, or discontinue services to, or

discriminate against, a debtor solely on the basis of the commencement of the bankruptcy case or

the debtor's failure to pay a prepetition debt, unless the debtor fails to furnish adequate assurance

of payment for postpetition services, in the form of a deposit or "other security."  Specifically, 11

U.S.C. § 366 provides as follows:

> "(a) Except as provided in subsections (b) and (c) of this section, a
> utility may not alter, refuse, or discontinue service to, or discriminate
> against, . . . the debtor solely on the basis of the commencement of a
> case under this title or that a debt owed by the debtor to such utility
> for services rendered before the order for relief was not paid when
> due.
> . . .

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date.  On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."

(c)(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor . . . adequate assurance of payment for the utility service that is satisfactory to the utility.

(3)(A) On request of a party in interest and after notice and a hearing, the court may order the modification of the amount of an assurance of payment under paragraph (2)."

11 U.S.C. § 366.

Section 366 of the Bankruptcy Code is intended to apply to entities providing electricity, natural gas, water, and/or telephone services, as well as any other entity that supplies services that cannot be readily obtained or replaced elsewhere, or which has a monopoly with respect to the services it provides the debtor.  As explained by the legislative history,

[Section 366] is intended to cover utilities that have some special position with respect to the debtor, such as electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility.

H.R. Rep. No. 95-595, at 350 (1977); S. Rep. No. 95-989, at 60 (1978); *see In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986) (landlord for Brooklyn Navy Yard "occupies a special position with respect to the debtor in its role as [the debtor's] utility supplier").

Pursuant to Section 366(c)(2) of the Bankruptcy Code, during the first thirty (30) days following the commencement of a voluntary Chapter 11 bankruptcy case, a utility may not alter, refuse, or discontinue service to, or discriminate against, a debtor solely on the basis of the

commencement of the case or the failure of the debtor to pay a pre-petition debt for utility services provided.[1]  Following the foregoing 30-day period, however, utility companies may alter, refuse or discontinue service if the debtor does not furnish adequate "assurance of payment" of post-petition utility service obligations that is satisfactory to the relevant utility.

Section 366(c)(1)(A) of the Bankruptcy Code provides that a debtor must provide "assurance of payment" in the form of a cash deposit, a letter of credit, a certificate of deposit, a surety bond, a prepayment of utility consumption, or another form of security that is mutually agreed on between the utility and the debtor.  11 U.S.C. § 366(c)(1)(A).

Under Section 366(c) of the Bankruptcy Code, this Court has exclusive responsibility for determining what constitutes adequate assurance of payment of post-petition utility charges and is not bound by local or state regulations.  *See, e.g. Begley v. Philadelphia Elec. Co. (In re Begley)*, 41 B.R. 402, 405-06 (Bankr. E.D. Pa. 1984); *Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel Co.)*, 35 B.R. 188, 195 (Bankr. D. Ohio 1983) (pre-BAPCPA case finding that determinations of adequate assurance under section 366 are fully within the Court's discretion).

In the case herein, the Debtor proposes to provide adequate "assurance of payment" to the Utility Companies providing services to the Hotel in the form of the Cash Deposits, as authorized by Section 366(c)(1)(A)(i) of the Bankruptcy Code, in the amounts set forth in **Exhibit "1"** to the Chae Declaration annexed hereto.  The Debtor requests authority to pay the proposed Cash Deposits to the Utility Companies for the utility accounts reflected in Exhibit "1" to the Chae Declaration.  The total amount of the Cash Deposits proposed to be paid is approximately $1,950.00.  As noted above, the Debtor is generally proposing to provide each Utility Company with a Cash Deposit in an amount equal to the average monthly cost based on the historical utility costs incurred on the utility account(s), as determined by the last three

---

[1] While Section 366(b) suggests that a utility may alter, refuse, or discontinue utility services to a debtor if the debtor fails to furnish adequate assurance of payment for postpetition services within 20 days after the petition date, Section 366(c)(2) provides that, with respect to a case filed under Chapter 11 of the Bankruptcy Code, a utility may alter, refuse, or discontinue utility services to a debtor if the debtor fails to furnish adequate assurance of payment for postpetition services within 30 days after the petition date.

12

monthly invoice amounts for such utility accounts.  In addition to the Cash Deposits, the Utility Companies will be kept current on all post-petition amounts payable to such Utility Companies.

The source of the funds to be used to pay the Cash Deposits to the Utility Companies will be the proceeds of unsecured post-petition financing proposed to be provided to the Debtor by M+D (the Debtor's Manager and affiliate).  Accordingly, concurrently herewith, the Debtor has filed a motion seeking the entry of an order authorizing the Debtor to obtain unsecured post-petition financing from M+D to allow the Debtor to pay the Cash Deposits to the Utility Companies and to pay certain critical expenses required to maintain and preserve the Hotel. Since the source of the funds proposed to be used to pay the Cash Deposits is unsecured post-petition financing from M+D, approval to pay the Cash Deposits to the Utility Companies will not render the Debtor's bankruptcy estate administratively insolvent.

### III.    CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order:

(1)    granting the Motion in its entirety;

(2)    authorizing the Debtor to provide adequate "assurance of payment" to the Utility Companies in the form of Cash Deposits in the amounts proposed in the Motion, pursuant to the terms and conditions set forth therein;

(3)    deeming the Cash Deposits to constitute adequate "assurance of payment" pursuant to 11 U.S.C. § 366(c);

(4)    requiring the Utility Companies that receive Cash Deposits under an order of the Court granting the Motion to return such Cash Deposits to the Debtor within ten (10) business days if, and when, such Utility Companies' services are terminated by the Debtor; and

/ / /

/ / /

/ / /

/ / /

/ / /

1    (5)    granting such other and further relief as the Court deems just and proper.

2    Dated:  March 11, 2021                              THE SOURCE HOTEL, LLC

3

4

5                                                          By:_____

6                                                               RON BENDER
                                                               JULIET Y. OH
7                                                               LEVENE, NEALE, BENDER, YOO
                                                                  & BRILL L.L.P.
8                                                               Proposed Attorneys for Chapter 11 Debtor
                                                               and Debtor-in-Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF DONALD CHAE**

I, Donald Chae, hereby declare as follows:

1.      I am the Manager and a member of DMC Investment Holdings, LLC, which is the sole member of The Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-possession herein (the "Debtor"), and I am therefore familiar with the business operations and financial records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.      I make this declaration in support of that certain *Notice Of Motion And Motion For Entry Of Order Authorizing Debtor To Provide Adequate Assurance Of Future Payment To Utility Companies Pursuant To 11 U.S.C. § 366* (the "Motion"), to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

3.      The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on February 26, 2021 (the "Petition Date").  The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

4.      The Debtor is a limited liability company that was organized in November, 2012 in the State of California.  DMC Investment Holdings, LLC is the sole member of the Debtor.  My brother, Min S. Chae, and I are the members and principals of DMC Investment Holdings, LLC.

5.      Since 2014, the Debtor has been developing a full-service seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which includes conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services.  The Hotel is part of a larger 12.8-acre mixed-use development project (the "Master Development"), which includes a 400,000 square-foot retail center and a 50,000 square-foot seven-story office building which were completed in 2016.  The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property with the

1  Debtor's affiliate, The Source at Beach, LLC (of which I am also a principal).

2         6.     Construction of the Hotel began in 2016.  To finance the construction of the Hotel,

3  on May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from

4  Evertrust Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling

5  $25 million.  Through October 2019, approximately 85% of the Hotel construction had been

6  completed, including: substantial completion of the core and shell, exterior painting, porte cochère,

7  street lighting, ceiling framing, kitchen framing and glass block installation, food storages, all glass

8  storefronts, electrical wiring and switchgear, guestroom flooring, ceiling fixtures, pool bar canopy

9  structure, deck drains, window washing system, roof membrane, roof ductwork and HVAC

10  vibration installation; nearly complete installation of bathroom fixtures (95%), acoustic ceiling

11  system (80%), HVAC electrical connections (90%), piping for HVAC and plumbing equipment

12  (95%), and rooftop ductwork (99%).  In addition, substantial materials have been procured and/or

13  fabricated and are ready for installation pending completion of other items, such as first and second

14  floor flooring, corridor carpeting, millwork (wall and ceiling panels, pool bar), passenger elevators,

15  fire sprinklers, egress and accent lighting, pool equipment, guest room doors, locks and closures,

16  bathroom fixtures, and rooftop HVAC equipment.

17         7.     In late 2019, Evertrust refused to issue the remaining $4 million of the Loan,

18  claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to

19  provide the final $4 million of financing, the Debtor was forced to cease construction activities.

20  However, I believe strongly that, had Evertrust funded the final $4 million as expected,

21  construction of the Hotel would have been completed, as I believe that the Debtor's contractors

22  would have carried fifty percent of the cost overrun and the Debtor would have covered the

23  remaining fifty percent of the overrun.

24         8.     The Debtor immediately and actively sought to refinance the Loan and was able to

25  reach agreement for refinancing for a total of $42 million through a new lender named Hall

26  Structured Finance ("Hall").  Although the Debtor was ready to execute the refinancing agreement

27  with Hall, in March 2020, Hall put an indefinite hold on such refinancing due to the effects of the

28

COVID-19 pandemic.

9.    Between March 2020 and December 2020, the Debtor engaged in active forbearance negotiations with Evertrust to be able to allow the Hotel to recover from the effects of the COVID-19 pandemic, to obtain refinancing or additional investments, and ultimately to recommence construction of the Hotel.  During the course of such negotiations, and in light of the effects of the COVID-19 pandemic, the Debtor requested that Evertrust convert the Loan (in the funded amount of approximately $25 million) into a two-year term loan, and even offered to set aside one year's worth of loan payments as assurance of repayment of such two-year term loan. Evertrust declined the Debtor's offer.

10.    Instead, in December 2020, Evertrust sold its interests in the Loan to Shady Bird Lending, LLC ("Shady Bird") at a significant discount, for a reported purchase price of approximately $19 million.  Prior to Shady Bird's acquisition of the Loan, representations were repeatedly made to me by Ed Choi, the loan broker working with Ronald N. Richards of Shady Bird and Michael Schlesinger of Cambra Realty, that Mr. Richards would sell Shady Bird's interests in the Loan back to the Debtor in two years for $24-25 million, and that the Debtor would be provided with a new loan for $10-14 million by Mr. Schlesinger in the meantime so that the Debtor could complete construction of the Hotel.  Even though Mr. Richards repeatedly represented to the Debtor that Shady Bird would provide the Debtor with this two-year period within which to complete the construction of the Hotel, when the Debtor refused to commence a chapter 11 bankruptcy case to eliminate the junior liens held by the EB-5 lenders (as Mr. Richards suggested), Shady Bird immediately took steps to foreclose on the Hotel and issued a Notice of a Trustee's Sale for the Hotel to be held on March 1, 2021.

11.    On February 8, 2021, Shady Bird filed a complaint against the Debtor in the Superior Court of the State of California for the County of Orange ("Superior Court") for (i) specific performance and appointment of a receiver, and (ii) waste, thereby commencing the Superior Court action bearing the case number 30-2021-01183489-CU-OR-CJC (the "State Court Action").  Shortly after filing such complaint, Shady Bird filed an *ex parte* application for an order

appointing a receiver and other related relief.  On or about February 17, 2021, the Superior Court entered an order in the State Court Action appointing Bellann Raile as receiver ("Receiver") to, among other things, take possession of the Hotel and all goods, furniture, fixtures, and equipment attached and/or related to the Hotel.

12.    As a result of all of the foregoing, the Debtor sought chapter 11 bankruptcy protection on the Petition Date in order to prevent the impending foreclosure of the Hotel (which is the Debtor's primary asset), to preserve the equity in the Hotel for the benefit of all creditors (not just Shady Bird), to obtain refinancing or investments to enable the Debtor to complete construction of the Hotel, and to be afforded a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion.

13.    Although there is currently no active construction activity occurring at the Hotel, the Debtor receives electricity and telephone services from certain utility companies (each a "Utility Company," and collectively, the "Utility Companies") which are necessary to preserve and maintain the Hotel.  Therefore, it is crucial that the means of providing adequate assurance to the Utility Companies that provide utility services to the Debtor be determined promptly so that there is no interruption in the services provided.

14.    Attached as **Exhibit "1"** hereto and incorporated herein by reference is a list which sets forth the name and address of each Utility Company that is currently providing utility services to the Hotel, the type of utility provided by each Utility Company, the account number(s) associated with each Utility Company, and the amount of the cash deposit proposed to be paid to each Utility Company as adequate assurance of payment (collectively, the "Cash Deposits," and individually, a "Cash Deposit").  The Debtor requests authority to pay the proposed Cash Deposits to the Utility Companies for the utility accounts reflected in Exhibit "1" hereto.

15.    The total aggregate amount of the Cash Deposits proposed to be paid by the Debtor to the Utility Companies is approximately $1,950.00.  Generally, the Debtor is proposing to provide each Utility Company with a Cash Deposit an amount equal to the average monthly payment based on payments historically made on the utility account(s) (as determined by the last

18

1    three monthly payments made on such utility accounts).

2        16.    In addition to the Cash Deposits, the Utility Companies will be kept current on all

3    post-petition amounts payable to such Utility Companies.

4        17.    The source of the funds to be used to pay the Cash Deposits to the Utility

5    Companies will be the proceeds of unsecured post-petition financing proposed to be provided to

6    the Debtor by the Debtor's Manager and affiliate, M + D Properties ("M+D").  Accordingly,

7    concurrently herewith, the Debtor has filed a motion seeking the entry of an order authorizing the

8    Debtor to obtain unsecured post-petition financing from M+D to allow the Debtor to maintain

9    utility services at the Hotel and pay other critical expenses so that the Debtor may preserve and

10   maintain the Hotel.

11       18.    I am advised and believe that the Bankruptcy Code permits the Utility Companies

12   to discontinue service to the Debtor based on the commencement of the Debtor's bankruptcy case

13   or the failure of the Debtor to pay a pre-petition debt for utility services provided if the Debtor does

14   not furnish adequate assurance of payment in the form of cash deposits (or other security) within

15   the first thirty (30) days after the Petition Date (*i.e.*, by Sunday, March 28, 2021).  To ensure that

16   the amount of each Cash Deposit is approved by the Court and delivered to the respective Utility

17   Company before Sunday, March 28, 2021, the Debtor has filed concurrently herewith an

18   application for an order setting the hearing on the Motion on shortened notice, pursuant to which

19   the Debtor is seeking to have the Motion heard on or before Wednesday, March 24, 2021.

20       I declare under penalty of perjury under the laws of the United States of America that the

21   foregoing is true and correct.

22       Executed this 10th day of March, 2021, at Buena Park, California.

24   _____

25   DONALD CHAE

26

27

28

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

| Utility Name and Address | Utility Type | Account No(s). | Monthly Bill No. 1 | Monthly Bill No. 2 | Monthly Bill No. 3 | Ave. Monthly Utility Cost | Proposed Cash Deposit |
|---|---|---|---|---|---|---|---|
| AT&T<br>P.O. Box  5025<br>Carol Stream, IL 60197-5025 | Telephone | 714-994-4005 | 218.64 | 219.72 | 345.10 | 261.15 | 261.15 |
| So. Cal. Edison<br>P.O. Box 6400<br>Rancho Cucamonga, CA 91729-6400 | Electricity | 2-38-485-7116 | 1,813.63 | 1,526.77 | 1,700.95 | 1,680.45 | 1,680.45 |
| So. Cal. Edison<br>P.O. Box 6400<br>Rancho Cucamonga, CA 91729-6400 | Electricity | 2-40-746-0195 | 13.23 | 14.54 | 13.77 | 13.85 | 13.85 |
| **TOTAL:** | | | | | | **1,941.60** | **1,941.60** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PAYMENT TO UTILITY COMPANIES PURSUANT TO 11 U.S.C. § 366; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD CHAE IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 12, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Nancy S Goldenberg    nancy.goldenberg@usdoj.gov**
- **Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com**
- **Grant A Nigolian    grant@gnpclaw.com, process@gnpclaw.com;grant.nigolian@gmail.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ho-El Park    hpark@hparklaw.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.    SERVED BY UNITED STATES MAIL**: On **March 12, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 12, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

***Served via Attorney Service***
The Honorable Erithe A. Smith
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

☒ Service List served by Overnight Mail on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 12, 2021 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

The Source Hotel, LLC
OUST, Secured, Top 20, RSN, Utilities

*Counsel to Evertrust Bank*
Michael Fletcher, Esq.
Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, 19th Floor
Los Angeles, CA 90017-2427

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

**Secured Creditors:**

3D Design - Millwork
8152 Indianapolis Ave.
Huntington Beach, CA 92646

Aragon Construction, Inc.
5440 Arrow Highway
Montclair, CA 91763

Beach Orangethorpe II, LLC
P.O. Box 489
Buena Park, CA 90621

Beach Orangethorpe III, LLC
P.O. Box 489
Buena Park, CA 90621

Beach Orangethorpe, LLC
P.O. Box 489
Buena Park, CA 90621

Beachamp Distributing Co.
1911 South Santa Fe Avenue
Compton, CA 90221

Best Quality Painting
818 N. Pacific Ave., #C
Glendale, CA 91203

Certified Tile
14557 Calvert St.
Van Nuys, CA 91411

Evergreen Electric Construction
629 Grove View Lane
La Canada, CA 91011

Iron Mechanical
721 North B Street
Suite 100
Sacramento, CA 95811

KS Steel Corp.
1748 Industrial Way
Los Angeles, CA 90023

Nemo & Rami
1930 W. Holt Ave.
Pomona, CA 91768

Northstar
404 North Berry Street
Brea, CA 92821-3104

Pan Pacific
18250 Euclid Street
Fountain Valley, CA 92708

PDG Wallcoverings
26492 Via Juanita
Mission Viejo, CA 92691

Prime Concrete Coatings
6127 James Alan St.
Cypress, CA 90630

Resco Electric Inc.
2431 W. Washington Blvd. Suite B
Los Angeles, CA 90018

Retrolock Corp
17915 Railroad Street
City of Insdustry, CA 91748

Salamander Fire Protection, Inc
6103 Tyrone Street
Van Nuys, CA 91401

Shady Bird Lending, LLC
c/o Law Offices of Ronald Richards
P.O. Box 11480
Beverly Hills, CA 90213

Solid Construction
883 Crenshaw Blvd.
Los Angeles, CA 90005

Sunbelt Controls, Inc.
888 E. Walnut Street
Pasadena, CA 91101

Grant Nigolian, P.C.
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626

Hunt Ortmann Palffy Nieves et al.
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101-1807

Law Office of Ho-El Park, P.C.
333 City Blvd. West, Suite 1700
Orange, CA 92868

Law Office of Michael N. Berke
25001 The Old Road
Santa Clara, CA 91381

Law Offices of Dennis G. Cosso
345 Oxford Drive
Arcadia, CA 91007

Porter Law Group, Inc.
7801 Folsom Blvd., Suite 101
Sacramento, CA 95826

Robinson & Robinson, LLP
2301 Dupont Drive, Sute 530
Irvine, CA 92612-7502

Shady Bird Lending, LLC
c/o Law Offices of Geoffrey Long
1601 N. Sepulveda Blvd., No. 729
Manhattan Beach, CA 90266

Splinter & Thai, LLP
25124 Narbonne Ave., Suite 106
Lomita, CA 90717-2140

**Top 20 Unsecured Creditors:**

Newgens, Inc.
14241 Foster Rd.
La Mirada, CA 90638

Cabrillo Hoist
P.O. Box 3179
Rancho Cucamonga, CA 91729

WESCO Distribution Inc.
6251 Knott Ave.
Buena Park, CA 90620

Harbor All Glass & Mirror, Inc.
1926 Placentia Ave.
Costa Mesa, CA 92627

Diablo Consulting
13200 Crossroads Parkway N
Ste. 115
City of Industry, CA 91746

Ace Tek Roofing Co.
747 S. Ardmore Ave., Suite 405
Los Angeles, CA 90005

Morrow Meadows
231 Benton Court
City of Industry, CA 91789

Chefs Toys
18430 Pacific Street
Fountain Valley, CA 92708

Stumbaugh & Associates, Inc.
3303 N. San Fernando Blvd
Burbank, CA 91504

HBA Procurement, Inc.
3216 Nebraska Ave.
Santa Monica, CA 90404

OJ Insulation LP
600 S Vincent Ave.
Azusa, CA 91702

DKY Architects
15375 Barranca Pkwy.
Suite A-210
Irivne, CA 92618

Master Glass
2225 W. Pico Blvd, Unit C
Los Angeles, CA 90006

Universal Flooring Systems
15573 Commerce Lane
Huntington Beach, CA 92649

L2 Specialties
3613 W. Macarthur Blvd., #611
Santa Ana, CA 92704

Ficcadenti Waggoner
16969 Von Karman Avenue
Suite 240
Irivne, CA 92606

Retrolock Corp
17915 Railroad Street
City of Industry, CA 91748

American Engineering Laboratories Inc.
PO Box 1816
Whittier, CA 90609

**Utilities List:**

AT&T
P.O. Box  5025
Carol Stream, IL 60197-5025

So. Cal. Edison
P.O. Box 6400
Rancho Cucamonga, CA 91729-6400