| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Daniel A. Lev (CA Bar No. 129622)<br>**Sulmeyer**Kupetz, A Professional Corporation<br>333 S. Grand Avenue, Suite 3400<br>Los Angeles, California 90071<br>Telephone:  213.626.2311<br>Facsimile:  213.629.4520<br>Email:  dlev@sulmeyerlaw.com<br><br>and<br><br>Ronald Richards (CA Bar No. 176246)<br>Law Offices of Ronald Richards & Associates, APC<br>P.O. Box 11480<br>Beverly Hills, California 90213<br>Telephone:  310.556.1001<br>Facsimile:  310.277.325<br>Email:  ron@ronaldrichards.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

</div>

| In re:<br><br>THE SOURCE HOTEL, LLC,<br><br><br><br><br><br><div align="right">Debtor(s).</div> | CASE NO.:  8:21-bk-10525-ES<br>CHAPTER:  11<br><br><div align="center">**NOTICE OF MOTION AND MOTION<br>FOR RELIEF FROM THE AUTOMATIC<br>STAY UNDER 11 U.S.C. § 362<br>(with supporting declarations)<br>(REAL PROPERTY)**</div><br><br>DATE:      April 22, 2021<br>TIME:      10:00 a.m.<br>COURTROOM:    5A |
|---|---|
| **Movant:**  SHADY BIRD LENDING, LLC | |

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012          ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys *(if any),* and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1 .RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 1                    **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion. The hearing on the Motion shall be conducted remotely, using ZoomGov video and audio. Parties in interest and members of the public may connect to the video and audio feeds, free of charge, using the connection information provided below. Individuals may participate by ZoomGov video and audio using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device (such as an iPhone or Android phone). Individuals may opt to participate by audio only using a telephone (standard telephone charges may apply). Neither a Zoom nor a ZoomGov account is necessary to participate and no pre-registration is required. The audio portion of each hearing will be recorded electronically by the Court and constitutes its official record. Meeting URL: https://cacb.zoomgov.com/j/1613356013. Meeting ID: 161 335 6013. Password: 078356. Telephone conference lines: 1-(669)-254-5252 or 1-(646)-828-7666.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1 (d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 4-1-2021 _____

**Sulmeyer**Kupetz, A Professional Corporation
Printed name of law firm (if applicable)

Daniel A. Lev
Printed name of individual Movant or attorney for Movant

/s/ *Daniel A. Lev*
Signature of individual Movant or attorney for Movant

American LegalNet, Inc.
www.FormsWorkFlow.com

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1.  **Movant is the:**

    ☒  Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐  Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☒  Other *(specify)*: **Movant is the holder of and beneficiary under all rights, title, interest, and remedies in and to the loan agreement, promissory note, deed of trust, guaranty, and all related security agreements and other loan documents, as assignee of the former holder and beneficiary, Evertrust Bank.  See Supplemental Declaration of Ronald Richards ("Supplemental Richards Declaration"), <u>Exhibit 1</u> through <u>Exhibit 12</u>.**

2.  **The Property at Issue (Property):**

    a.  Address:

        *Street address:*
        *Unit/suite number*:
        *City, state, zip code*:

    b.  Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as <u>Exhibit 3</u>):  **Real property lots and improvements are more particularly described in the loan agreement (attached to the Supplemental Richards Declaration), and bear the following Assessor Parcel Nos.:  (i) 276-361-20 and (ii) 276-361-22.  See also, Deed of Trust (Supplemental Richards Declaration, <u>Exhibit 3</u>).**

3.  **Bankruptcy Case History:**

    a.  A ☒ voluntary ☐ involuntary bankruptcy petition under chapter    ☐ 7  ☒ 11 ☐ 12 ☐ 13 was filed on *(date)* <u>2-26-2021</u>.

    b.  ☐ An order to convert this case to chapter  ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on *(date)* _____.

    c.  ☐ A plan, if any, was confirmed on *(date)* _____.

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 3                          **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

4. **Grounds for Relief from Stay**:

a.  ☒  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

(1)  ☒  Movant's interest in the Property is not adequately protected.

(A)  ☒  Movant's interest in the Property is not protected by an adequate equity cushion.

(B)  ☒  The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

(C)  ☐  Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

(2)  ☐  The bankruptcy case was filed in bad faith.

(A)  ☐  Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

(B)  ☐  The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C)  ☐  A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D)  ☐  Other bankruptcy cases have been filed in which an interest in the Property was asserted.

(E)  ☐  The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(F)  ☐  Other *(see attached continuation page)*.

(3)  ☐  *(Chapter 12 or 13 cases only)*

(A)  ☐  All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

(B)  ☐  Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4)  ☐  The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5)  ☐  The Movant regained possession of the Property on *(date)* _____

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                Page 4                                **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

which is ☐ prepetition. ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to
§ 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or
30 days after the court determined that the Property qualifies as "single asset real estate" as defined in
11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay,
hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or
court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have
been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed
with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ___.

c. ☐ Other *(specify):*

6. **Evidence in Support of Motion:** *(Declaration(s) MUST be signed under penalty of perjury and attached to this
motion)*

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set
forth in Debtor's case commencement documents. **See Memorandum of Points and Authorities attached
to Motion.**

d. ☒ Other: **Supplemental Richards Declaration, Declaration of Bellann R. Raile, and Declaration of Brent
Little, and the Exhibits thereto, affixed to Memorandum of Points and Authorities attached to Motion.**

7. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                Page 5                                **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☒ Confirmation that there is no stay in effect. **Movant seeks such relief in connection with enforcement of rights against non-debtor Guarantors.**

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☒ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☒ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☒ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☒ See attached continuation page for other relief requested.

Date: 4-1-2021

**Sulmeyer**Kupetz, A Professional Corporation
Printed name of law firm *(if applicable)*
Daniel A. Lev
Printed name of individual Movant or attorney for Movant

*/s/ Daniel A. Lev*
Signature of individual Movant or attorney for Movant

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 6                                    **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

# REAL PROPERTY DECLARATION

I, *(print name of Declarant)* Ronald Richards_____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because *(specify)*:

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as *(state title and capacity):*

   c. ☒ Other *(specify):*    **I am the non-member, manager of the Movant**.

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property in question. I have personally worked on the books, records, and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records, and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions, or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other *(see attached):*

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/endorsements, is attached as **Exhibit 2, and Exhibit 10 through Exhibit 12 to Supplemental Richards Declaration.**

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g. ,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as **Exhibit 3, and Exhibit 10 through Exhibit 11 to Supplemental Richards Declaration.**

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.
      ☐ Beneficiary.

   d. ☒ Other *(specify):*  **Movant is the holder of and beneficiary under all rights, title, interest, and remedies in and to the loan agreement, promissory note, deed of trust, guaranty, and all related security agreements and other loan documents, as assignee of the former holder and beneficiary, Evertrust Bank.  See Supplemental Richards Declaration, Exhibit 1 through Exhibit 12.**

4. a. The address of the Property is:

   *Street address:*
   *Unit/suite no.:*
   *City, state, zip code:*

---

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                   Page 7                                   **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:  **Real property lots and improvements are more particularly described in the loan agreement (attached to the Supplemental Richards Declaration), and bear the following Assessor Parcel Nos.:  (i) 276-361-20 and (ii) 276-361-22.  See also, Deed of Trust (Supplemental Richards Declaration, <u>Exhibit 3</u>).**

5.  Type of property *(check all applicable boxes):*

a. ☐  Debtor's principal residence            b. ☐  Other residence
c. ☐  Multi-unit residential                  d. ☒  Commercial
e. ☐  Industrial                              f. ☐  Vacant land
g. ☒  Other *(specify):*  **Partially constructed 7 story, 178-room hotel.**

6.  Nature of the Debtor's interest in the Property:

a. ☒  Sole owner

b. ☐  Co-owner(s) *(specify):*

c. ☐  Lienholder *(specify):*

d. ☐  Other *(specify):*

e. ☐  The Debtor ☒ did ☐ did not list the Property in the Debtor's schedules.

f. ☐  The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.

The deed was recorded on *(date)* _____.  **Debtor is party to a "Memorandum of Ground Lease".**

7.  Movant holds a  ☒ deed of trust ☐ judgment lien ☐ other *(specify)* _____
that encumbers the Property.

a. ☒  A true and correct copy of the document as recorded is attached as **<u>Exhibit 3</u> (Supplemental Richards Declaration).**

b. ☒  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as **<u>Exhibit 2</u> and <u>Exhibit 12</u> (Supplemental Richards Declaration).**

c. ☒  A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as **<u>Exhibit 10</u> through <u>Exhibit 12</u> (Supplemental Richards Declaration).**

8.  Amount of Movant's claim with respect to the Property (as of March 1, 2021):

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $29,979,095.56 | $ | $ |
| b. | Accrued interest: | $852,743.71 | $ | $ |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $117,000 | $ | $ |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of *(date)*: 3-1-2021 | $30,948,839.27 | $ | $ |

h. ☒ Loan is all due and payable because it matured on *(date)* <u>11-1-2019</u>

9.  Status of Movant's foreclosure actions relating to the Property *(fill the date or check the box confirming no such action has occurred):*

a.  Notice of default recorded on *(date)* <u>7-27-2020</u>  or ☐ none recorded.

b.  Notice of sale recorded on *(date)* <u>2-3-2021</u>  or ☐ none recorded.

c.  Foreclosure sale originally scheduled for *(date)*  <u>3-1-2021</u>  or ☐ none scheduled.

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 8                          **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

   d.  Foreclosure sale currently scheduled for *(date)* _____ or ☐ none scheduled.

   e.  Foreclosure sale already held on *(date)* _____ or ☒ none held.

   f.  Trustee's deed upon sale already recorded on *(date)* _____ or ☒ none recorded.

10. Attached *(optional)* as Exhibit ___ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒  *(chapter 7 and 11 cases only)* Status of Movant's loan:

   a.  Amount of current monthly payment as of the date of this declaration: $ _matured 11-1-2019___ for the month of _____20_.

   b.  Number of payments that have come due and were not made: ___. Total amount: $ _____

   c.  Future payments due by time of anticipated hearing date *(if applicable)*:

      An additional payment of $ _____will come due on *(date)* _____, and on the ___ day of each month thereafter. If the payment is not received within ___ days of said due date, a late charge of $ _____will be charged to the loan.

   d.  The fair market value of the Property is $ _____, established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit ___.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit ___.

      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit ___.

      (4) ☐ Other *(specify):*

   e.  **Calculation of equity/equity cushion in Property:**

      Based upon ☐ a preliminary title report ☒ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor *(if any)* | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Shady Bird Lending, LLC | $ 30,719,919.39 | $ 30,948,839.27 |
| 2nd deed of trust: | Beach Orangethorpe Hotel, LLC | $ 10,000,000 | $ |
| 3rd deed of trust: | Beach Orangethorpe Hotel II, LLC | $ 11,500,000 | $ |
| Judgment liens: | Numerous Mechanic's Liens | $ 2,920,278.05 | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** 55,140,197.44 | | | |

   f.  Evidence establishing the existence of these deed(s) of trust and lien(s) ___ consists of:

      (1) ☐ Preliminary title report.

      (2) ☒ Relevant portions of the Debtor's schedules.

      (3) ☐ Other *(specify):*

   g.  ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
      I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ _____ and is _____% of the fair market value

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 9                                    **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

of the Property.

h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ _____.

i. ☐ Estimated costs of sale: $ _____ (estimate based upon ___ % of estimated gross sales price)

j. ☒ The fair market value of the Property is declining because: **See Declarations of Bellann R. Raile and Brent Little.**

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
A plan was confirmed on the following date *(if applicable)*: _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit ___.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:          $
*(For details of type and amount, see Exhibit ___)*

e. Attorneys' fees and costs:          $
*(For details of type and amount, see Exhibit ___)*

f. Less suspense account or partial paid balance:          $[                    ]

TOTAL POSTPETITION DELINQUENCY:          $

g. Future payments due by time of anticipated hearing date *(if applicable):* _____.
An additional payment of $ _____ will come due on _____ , and on the ___ day of each month thereafter. If the payment is not received by the ___ day of the month, a late charge of $ _____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$ _____     received on *(date)* _____
$ _____     received on *(date)* _____

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 10                                    **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

$ _____    received on *(date)* _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit ___. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan *(attach LBR form F 4001-1.DEC.AGENT. TRUSTEE).*

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on *(date)* _____that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit ___.

16. ☐ Movant regained possession of the Property on *(date)*_____, which is  ☐ prepetition  ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other *(specify):*

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property include:

1. Case name: _____
   Chapter: _____  Case number: _____
   Date dismissed: _____  Date discharged:_____  Date filed: _____
   Relief from stay regarding the Property ☐ was  ☐ was not granted.

2. Case name: _____
   Chapter: _____  Case number: _____
   Date dismissed: _____  Date discharged:_____  Date filed: _____
   Relief from stay regarding the Property ☐ was  ☐ was not granted.

3. Case name: _____
   Chapter: _____  Case number: _____
   Date dismissed: _____  Date discharged:_____  Date filed: _____
   Relief from stay regarding the Property ☐ was  ☐ was not granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                              Page 11                                              **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ___.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4-1-2021 | Ronald Richards | /s/ Ronald Richards |
| --- | --- | --- |
| *Date* | *Printed name* | *Signature* |

DAL 2710697v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*    Page 12    **F 4001-1.RFS.RP.MOTION**

American LegalNet, Inc.
www.FormsWorkFlow.com

## **CONTINUATION PAGE**

Continuation page for "Notice of Motion and Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362 (with supporting declarations) (Real Property)" (the "Motion"), Prayer for Relief, ¶ 14:

In addition to the forms of relief set forth in the Motion, Movant seeks the following additional relief:

(A)  An order confirming that the automatic stay under 11 U.S.C. § 362(a) does not apply to Movant's right to exercise, or enforce, any and all rights and remedies under or pursuant to that certain Guaranty by and between Evertrust Bank (Movant's assignee) and Donald Chae and Min Chae guarantying the Debtor's loan payment, performance, and other obligations under the Loan Agreement; or

(B)  In the alternative, an order lifting the automatic stay to permit Movant to engage in any and all such acts.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2       Shady Bird Lending, LLC ("Shady Bird"), hereby submits the following

3   memorandum of points and authorities in support of the foregoing "Notice of Motion and

4   Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362 (with supporting

5   declarations) (Real Property)" (the "Motion").[1]

6                                          I.

7                              **PREFATORY STATEMENT**

8       After defaulting on Shady Bird's fully-matured, nearly $31,000,000 secured

9   claim, The Source Hotel, LLC (the "Debtor"), commenced this bankruptcy case to block

10  Shady Bird's impending foreclosure sale.  The Debtor filed chapter 11, presumably, to

11  pursue an unattainable plan to refinance the secured debt and finish construction of its

12  dilapidated, partially built 178-room, seven story hotel building located in Buena Park,

13  California (the "Project").[2]  But with no demonstrated means to finance further

14  construction of the Project, let alone repay Shady Bird's secured debt and the millions of

15  dollars of debt owed to numerous mechanic's lien claimants, and with no ability to provide

16  Shady Bird any form of adequate protection due to the Project's declining value, the

17  automatic stay must be lifted to permit Shady Bird to exercise its rights and protect its

18  interests.

19      In its attempt to extend the protections of the automatic stay and further

20  stave off the inevitable foreclosure, the Debtor surely will point to a completely bogus

21  valuation of the Project to contend that Shady Bird enjoys an enormous equity cushion.

22  That valuation, however, is wildly excessive, unsupportable, defies credulity, and is

23  premised on a fully-constructed and operating hotel.  The Debtor's "hotel," however, is

24  anything but a hotel in the traditional sense.

25      It is not permitted for occupancy and is not generating a single dollar of

26  _____

27  [1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

28  [2] The Project sits on two lots, bearing APN Nos. 276-361-20 and 276-361-22, which are not owned by the Debtor.  Instead, the Debtor is party to a 99-year ground lease with The Source at Beach, LLC, a California

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1  income.  There are no rooms for let, there is no electricity, there is no running water,

2  there are no functioning systems for HVAC or fire-life safety, there are no restaurants,

3  there are no bars, there are no gift shops, there are no retail stores, there are no pools or

4  spas, there are no ballrooms, there is no fitness or business center, and there is no

5  convention space.  In other words, this is not a functioning hotel; it is an idled

6  construction project saddled with enormous debt and plagued by serious issues of waste

7  and disrepair.  Even the permits for completion of the Project have expired, again

8  underscoring the inescapable conclusion that this Project will never be completed by the

9  Debtor.

10          If the unfinished Project truly had a value remotely close to the Debtor's

11  illusory valuation set forth in its schedules, the Debtor would have refinanced and repaid

12  Shady Bird long ago, and avoided this entire charade of a case altogether.  Yet, despite

13  the benefits of an extended maturity date, multiple forbearance agreements, and now the

14  automatic stay, the Debtor still struggles to secure any construction financing.  Notably,

15  when the Debtor needed funds to simply keep the Project insured and maintain utility

16  services, its only path was to obtain an unsecured line of credit in the sum of $100,000

17  from its non-member Manager, M+D Properties, a California corporation ("M+D").

18          The Debtor's demonstrated inability to procure any refinancing by now (or

19  ever) is not surprising given the neglected state and depreciating value of the Project (as

20  well as the Debtor's principals' history of misconduct and mismanagement of other real

21  estate projects).  And with the Debtor concededly not operating any business beyond

22  mere ownership of the Project, nor generating any income, the Debtor indisputably has

23  no means of protecting Shady Bird's interest in the Project through adequate protection

24  payments or otherwise.  Under such circumstances, relief from stay is required under

25  section 362(d)(1).

26          Irrespective of whether or not the Court allows the automatic stay to remain

27  in place as to the Debtor and the Project, the Court should confirm that no stay exists to

28

limited liability company, an affiliated non-debtor.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1    shield Donald and Min Chae (collectively, the "Chae's" or "Guarantors") as the non-debtor

2    guarantors of Shady Bird's debt.  By definition, the protections of the automatic stay

3    extend solely to the Debtor and its property, which would not be implicated by Shady

4    Bird's enforcement of its rights against the Chae's, as guarantors.  Nevertheless, strictly

5    out of an abundance of caution, Shady Bird seeks a comfort order confirming that no stay

6    exists to block the exercise of any such rights and remedies.

7         For these and other reasons discussed below, the Court should grant the

8    Motion.

9                                         **II.**

10                              **RELEVANT FACTS**

11         Shady Bird is owed in excess of $30,000,000 by the Debtor who not only is

12   in default, but is not protecting and securing the property that serves as Shady Bird's

13   collateral.  In fact, after learning that the ill-fated Project and improvements were in a

14   state of disrepair and were being damaged, Shady Bird was notified by the Debtor that it

15   was no longer providing any security for the Project.  To make matters worse, the Debtor

16   refused to grant Shady Bird access to allow it to inspect, protect, and secure the Project.

17   The Debtor also refused to provide Shady Bird with proof of insurance, in further breach

18   of its obligations under the deed of trust and loan agreement.

19         Presented with a Project which was deteriorating and was uninsured,

20   Shady Bird had no choice but to seek the *ex parte* appointment of a receiver to prevent

21   irreparable harm and immediate danger to its collateral and to ensure that it was insured

22   against further loss, damage, and destruction.  The state court agreed, and Bellann R.

23   Raile (the "Receiver") was appointed receiver nine days before the petition was filed.  As

24   the Receiver herself attests, the hotel is in a complete state of disarray and is a

25   depreciating asset mandating relief from stay for "cause."

26        **A.    The Loan, Loan Documents, and Deed of Trust**

27             **1.    The Loan and Loan Agreement**

28                  On or about May 24, 2016, Evertrust Bank (the "Original Lender") and the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1  Debtor entered into a construction loan (the "Loan") in the principal amount of

2  $24,988,808.[3]  The Loan was made pursuant to a "Construction Loan Agreement" (the

3  "Loan Agreement") dated May 24, 2016, between the Debtor and Original Lender.  The

4  purpose of the Loan was for the development and construction of a 178-room, 7 story

5  hotel project (the "Project").  In addition to the Project, the Debtor is the ground lessee

6  under a 99-year "Memorandum of Ground Lease" (the "Ground Lease") with ground

7  lessor, The Source at Beach, LLC (the "Ground Lessor").  Although the Ground Lease

8  was terminated on February 16, 2021, by Ground Lessor, not surprisingly, the termination

9  was just recently rescinded.

10            **2.        The Note**

11            In furtherance of the Loan Agreement, as evidence of the Loan, and for

12  value received in the maximum principal amount of $29,500,000 by the Debtor from

13  Original Lender, the Debtor executed and delivered to Original Lender a "Promissory

14  Note" (the "Note").  According to the Note, the Debtor agreed to make monthly payments

15  of interest commencing on July 1, 2016, until the Note's original maturity date of

16  December 1, 2017 (the "Original Maturity Date").  Upon the Original Maturity Date, the

17  entire unpaid principal, all accrued interest, and other costs and fees were due and

18  payable without demand or notice.  As explained below, pursuant to five extension

19  agreements, the Original Maturity Date was extended to November 1, 2019 (the "Maturity

20  Date").  An event of default under the Note is defined as any event of default under the

21  Loan Agreement.

22            **3.        The Deed of Trust**

23            To secure repayment and performance of the Debtor's obligations under,

24  *inter alia,* the Loan Agreement and Note, the Debtor executed and delivered to Original

25  _____

26  [3] The history of the Loan Agreement and its assignment to Shady Bird is detailed in the accompanying
supplemental declaration of Ronald Richards (the "Supplemental Richards Declaration").  Copies of the
27  Loan Agreement, the Note, the Deed of Trust, and other security agreements and documents relating to
the Loan (collectively, the "Loan Documents"), all rights to, and title and interests in, were assigned to
28  Shady Bird, are attached to the Supplemental Richards Declaration, affixed hereto.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Lender a "Construction Deed of Trust, Assignment of Rents, Security Agreement and

2    Fixture Filing (Leasehold)" (the "Deed of Trust") pursuant to which, *inter alia,* Original

3    Lender was granted a first priority lien against the Debtor's rights in the Project and the

4    Ground Lease.[4]  Specifically, the Deed of Trust grants Original Lender, and Shady Bird,

5    as its assignee, a first priority security interest and lien in the Debtor's leasehold interest

6    in the Project; all right, title, and interest in and to the Ground Lease; rents, income and

7    profits arising from or pursuant to the Ground Lease; and the use, occupancy, and

8    enjoyment of the Project along with all other real and personal property described in the

9    Deed of Trust.  The Deed Trust further grants, transfers, and assigns to Shady Bird, as

10   assignee, all of the Debtor's right, title, and interest in and to any building, improvements,

11   fixtures, structures, and equipment located or erected on the Project (collectively, the

12   "Improvements").

13        The Deed of Trust also requires the Debtor to maintain insurance on the

14   Project (as defined therein) and to protect Shady Bird's security interest in the Project

15   against loss or damage by fire and other risks.  As assignee, Shady Bird also shall be

16   named as the primary loss payee under all of the insurance policies and the Debtor is

17   required to assure that Shady Bird receives a certificate from each insurance company

18   that acknowledges Shady Bird's position as loss payee and that states that the insurance

19   policy cannot be terminated as to Shady Bird except upon 30-days prior written notice.

20        The Deed of Trust further requires the Debtor to maintain and preserve the

21   Project, including, *inter alia*: (i) keeping the Project in good condition and repair; (ii) using

22   commercially reasonable efforts to complete or restore promptly and in good and

23   workmanlike manner the Project, or any part thereof, which may be damaged or

24   destroyed; (iii) not committing or permitting material physical waste of the Project or any

25   portion thereof; and (iv) doing all other acts which from the character or use of the Project

26   _____

27   [4] The Ground Lessor consented to the Loan, the encumbrance of the Debtor's interest in the Ground
     Lease, and the Deed of Trust by entering into a "Ground Lessor's Consent, Estoppel Certificate and Fee
28   Mortgage Agreement" (the "Ground Lessor's Consent").

1  may be reasonably necessary to maintain, preserve, and enhance its value and

2  otherwise performing such appropriate upkeep and maintenance to the Project to ensure

3  that the Project, and each part thereof, is maintained in a first-class manner and retains

4  at all times a first-class appearance and condition.

5  According to the Deed of Trust, Shady Bird is provided the right to inspect

6  the Project for purposes of ensuring the Debtor's compliance with its obligations under

7  the Deed of Trust.  Finally, the Deed of Trust not only gives Shady Bird the right to

8  perform various acts in the event of the Debtor's failure to perform in order to protect the

9  collateral, but it also allows Shady Bird to bring an action for specific performance or for

10  appointment of a receiver to take possession of the Project and operate the business of

11  the Debtor, if any, being conducted on the Project.

12  **4.    The Extension Agreements**

13  The Loan and Note originally matured on the Original Maturity Date of

14  December 1, 2017.  Thereafter, at the request of the Debtor and the Chae's, as

15  guarantors of the Loan and Note, the Debtor, Guarantors, and Original Lender entered

16  into a "First Extension Agreement" dated December 22, 2017 (the "First Extension"),

17  whereby, *inter alia*, pursuant to the terms therein, (i) the Original Maturity Date was

18  extended to June 1, 2018, and (ii) the completion date of the Project was extended to

19  June 1, 2018.  Thereafter, pursuant to a "Second Extension Agreement," "Third

20  Extension Agreement," "Fourth Extension Agreement," and "Fifth Extension Agreement"

21  (collectively, the "Extension Agreements"), the Original Maturity Date of the Loan, Loan

22  Agreement, and Note, and the completion date of the Project, were extended to

23  November 1, 2019 (the "Maturity Date").

24  **B.    Assignment of Loan, Loan Agreement, Note, Deed of Trust, and Other**

25  **Loan Documents to Shady Bird**

26  As noted, Shady Bird is the assignee of all of Original Lender's right, title,

27  and interest in and to, *inter alia,* the Loan, Loan Agreement, Note, and Deed of Trust.  In

28  this regard, in exchange for good and valuable consideration and in furtherance of a

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1   "Non-Recourse Loan Sale Agreement and Joint Escrow Instructions" (the "Loan Sale

2   Agreement") and an "Assignment of Loan Documents" (the "Assignment of Loan

3   Documents") dated December 29, 2020, Original Lender executed and delivered to

4   Shady Bird an "Assignment of Deed of Trust" (the "Deed of Trust Assignment") dated

5   December 29, 2020, and recorded on January 4, 2021, whereby Original Lender

6   assigned and transferred to Shady Bird all of Original Lender's right, title, and interest in

7   and to the Loan Agreement, the Note, and Deed of Trust.  As such, Shady Bird is the

8   lawful owner and holder of the Note and the Loan Agreement and is the beneficiary of the

9   Deed of Trust.  Moreover, pursuant to an "Allonge" (the "Allonge") to the Note dated

10  December 29, 2020, all amounts due and owing on the Note by the Debtor are now

11  payable to Shady Bird.

12  **C.**      **The Debtor's Multiple and Continuing Defaults and Waste Resulting in**

13          **the Appointment of the Receiver**

14          Due to the Debtor's defaults under the Loan Agreement, Note, and Deed of

15  Trust for the following undisputed reasons, Shady Bird was left with no alternative but to

16  exercise its rights to not only commence a non-judicial foreclosure sale, but to seek the

17  appointment of a receiver.  Specifically, the following defaults warranted such drastic

18  relief:

19          •       The Debtor's failure to make the payment of interest due under the

20  Note on October 1, 2019;

21          •       The Debtor's failure to repay the total indebtedness on the Loan,

22  Note, and Loan Agreement by the Maturity Date;

23          •       The Debtor's failure to complete the construction of the Project by

24  the Maturity Date;

25          •       The Debtor's failure to timely pay its contractors and other third

26  parties resulting in multiple mechanic's being recorded against the Project and the

27  Debtor's failure to furnish a sufficient bond causing such liens to be released or giving

28  other satisfactory indemnity within ten days of recording;

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  •  The Debtor's failure to take reasonable measures to maintain,

2 protect, and secure the Project under the Deed of Trust;

3  •  The Debtor's failure to prevent the Project from becoming

4 vandalized, damaged, destroyed, and deteriorated;

5  •  The Debtor's failure to prevent material physical waste of the Project;

6  •  The Debtor's failure to allow Shady Bird to enter upon and inspect

7 the Project;

8  •  The Debtor's failure to provide evidence of and certificates of

9 insurance to Shady Bird upon request;

10  •  The Debtor's failure to allow inspections by the City of Buena Park

11 and ceasing communications with the City, negatively affecting the permitting process

12 and the ability to complete the Project;

13  •  The Debtor's failure to maintain various systems and improvements

14 on the Project such as the elevator, electrical, HVAC, and plumbing;

15  •  The Debtor's failure to provide any security for the Project and

16 improvements; and

17  •  The Debtor's failure to timely test the fire-life safety systems which

18 could completely destroy the Project.

19  Compounding the Project's serious problems, on February 16, 2021, the

20 day before the Receiver's appointment, Shady Bird received a "Notice of Default Under,

21 and Exercise of Option to Terminate, Ground Lease" from the Ground Lessor, advising

22 Shady Bird that the Ground Lease was being immediately terminated.[5]  As detailed in the

23 termination notice, the Ground Lease was terminated due to a number of defaults,

24 including "[the Debtor's] failure to construct or cause to be constructed to substantial

25 completion upon the Hotel Complex Premises all Improvements on or prior to December

26 1, 2019 in violation of Article 11.1, as amended" and "[Ground] Lessor has received

27 

28 [5] A true and correct copy of the termination notice is attached hereto as <u>Exhibit 15</u> and incorporated herein by reference.

1  copies of Notices of Lis Pendens, copies attached, reflecting the commencement of

2  foreclosures of numerous mechanic's liens, a violation of Article 20.1(c)."  In order to

3  escape the ramifications of the termination, the Ground Lessor rescinded the termination

4  on March 22, 2021, however, the defaults that first occasioned the termination remain.[6]

5        As a result of the foregoing defaults, the principal sum of not less than

6  $30,948,839.27 is due and owing to Shady Bird.[7]  Hence, Original Lender, and now

7  Shady Bird as assignee, initiated a non-judicial foreclosure under the Deed of Trust, and

8  a foreclosure sale was scheduled for March 1, 2021.  Shady Bird also exercised its

9  remedies under the Deed of Trust by seeking the *ex parte* appointment of a receiver.  As

10  highlighted, on February 17, 2021, the state court granted Shady Bird's request and the

11  Receiver was appointed.[8]  The Receiver assumed immediate control of the Project, but

12  due to the chapter 11 filing, the March 1, 2021, foreclosure sale did not proceed.[9]

13  **D.**    **The Inspection Report Commissioned By the Receiver Demonstrates**

14        **Why Relief From Stay Must Be Granted**

15        As highlighted earlier, the Receiver commissioned an inspection report from

16

17  [6] Shockingly, Donald Chae, who directed the Ground Lessor to terminate the Ground Lease the day before
the hearing to appoint the Receiver, filed schedules under penalty of perjury which scheduled the Ground

18  Lease as an asset.  Only after Shady Bird pointed out the pre-petition termination of the Ground Lease in
its "Omnibus Response of Shady Bird Lending, LLC to (1) Motion for Entry of An Order: (A) Requiring

19  Turnover of Estate Cash By Evertrust Bank; (B) Authorizing Debtor to Use Cash Collateral; and (C)
Authorizing Debtor to Obtain Post-Petition Financing From M+D Properties On An Unsecured Basis, and

20  (2) Motion for Entry of Order Authorizing Debtor to Provide Adequate Assurance of Future Payment to
Utility Companies Pursuant to 11 U.S.C. § 366; Declaration of Ronald Richards in Support Thereof"

21  [Docket No. 39] did Mr. Chae then direct the Ground Lessor to rescind the termination.  This further
supports a finding that the Debtor's management is not only grossly incompetent, but is engaging in

22  dishonest behavior, to the point where the schedules actually contained knowingly false statements.  This
is the type of gamesmanship this Debtor's operator is capable of, and demonstrates why the Project has no
chance of survival under his leadership.

23

24  [7] The Debtor and the Guarantors also are liable for additional amounts on the Note, Loan Agreement, and
Guaranty for interest, default interest, late fees, and costs and attorneys' fees incurred by Original Lender

25  and Shady Bird in connection with collection and enforcement of the Note, Loan Agreement, and Guaranty.
These amounts are preserved by Shady Bird, and are not waived in any action or proceeding as a result of
this case.

26  [8] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial
notice of the February 17, 2021, order, a true and correct copy of which is attached hereto as <u>Exhibit 16</u>

27  and incorporated herein by reference.

28  [9] The events occurring since her appointment (including true and correct copies of photographs detailing
the current declining state of the Project) are detailed in the declaration of Bellann R. Raile, affixed hereto.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

-9-

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Urban Advisory to provide her an analysis of the Project's current physical condition.

2  Urban Advisory' conclusions (as detailed in the report which is supported by additional

3  photographs) are quite troubling.  The report details the following:

4  •  The hotel is an idled construction project, which is roughly 70%

5  complete

6  •  There are substantial roof issues which currently permit the intrusion

7  of water into the structure

8  •  The construction assemblies on the roof are incomplete and create

9  an opportunity for water infiltration

10  •  The fire sprinkler system is not currently capable of providing life-

11  safety protection for the Project

12  •  Due to neglect and exposure to UV rays, the pool deck will need

13  substantial repair

14  •  The pool has an accumulation of water and trash making it a

15  breeding ground for mosquitos, which may carry the West Nile Virus

16  •  Completed business finishes are not being protected and are

17  exposed to waste or damage

18  •  A potentially hazardous situation may exist if the building sewer

19  system is not connected to the public system

20  •  HVAC package units have been left unsecured and accessible to

21  thieves and vandals

22  •  There are hazardous and caustic chemical unsecured at the Project

23  As borne out by the Report, these are serious issues which quite obviously

24  are negatively affecting Shady Bird's collateral, and jeopardizing the rights of other

25  creditors.  See declaration of Brent Little, affixed hereto.  As the Receiver continues her

26  management and inspection, it is expected that even more serious issues will be

27  discovered, further jeopardizing Shady Bird's collateral.  The Debtor, who solely is

28  responsible for the shabby construction and outright neglect of the Project, can no longer

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1   be trusted to preserve the Project's declining value and relief from stay is warranted.[10]

2                                                      **III.**

3   <u>**THIS COURT SHOULD LIFT THE AUTOMATIC STAY TO ALLOW SHADY BIRD TO**</u>

4   <u>**EXERCISE ALL RIGHTS AND REMEDIES IN RESPECT OF THE LOAN AND THE**</u>

5                        <u>**DEBTOR'S RELATED OBLIGATIONS**</u>

6          Section 362(d) provides, in part:

7          On request of a party in interest . . . the court shall grant
       relief from the stay provided under subsection (a) of this
8          section . . .

9                  (1) for cause, including lack of adequate protection of
10      an interest in property of such party in interest;

11                 (2) with respect to a stay of an act against property
       under subsection (a) of this section if -

12                        (A) the debtor does not have an equity in such
       property; and
13
14                        (B) such property is not necessary to an
       effective reorganization.

15                 (3) with respect to a stay of an act against single
       asset real estate under subsection (a), by a creditor whose
16      claim is secured by an interest in such real estate, unless,
       not later than the date that is 90 days after the entry of the
17      order for relief (or such later date as the court may determine
       for cause by order entered within that 90-day period) or 30
18      days after the court determines that the debtor is subject to
       this paragraph, whichever is later -
19
20                        (A) the debtor has filed a plan of reorganization
       that has a reasonable possibility of being confirmed within a
21      reasonable time; or

22   _____

23   [10] In order to prevent further damage to the Project serving as Shady Bird's collateral, on March 25, 2021,
     Shady Bird caused to be filed its "Motion of Shady Bird Lending, LLC for Order Excusing State Court
24   Receiver From Turnover of Assets Pursuant to 11 U.S.C. § 543; Memorandum of Points and Authorities;
     Declarations of Ronald Richards, Bellann R. Raile, and Brent Little in Support Thereof" (the "Excuse
     Compliance Motion").  That same day, due to the Debtor's inexplicable failure to designate itself as a single
25   asset real estate case, Shady Bird also filed its "Motion of Shady Bird Lending, LLC for Order Designating
     Chapter 11 Case As Single Asset Real Estate Case Pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3);
26   Memorandum of Points and Authorities; Declarations of Ronald Richards, Bellann R. Raile, and Brent Little
     in Support Thereof" (the "SARE Motion"), through which Shady Bird seeks an order designating the
27   Debtor's chapter 11 case as a SARE case pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3).  Hearings on
     the Excuse Compliance Motion and SARE Motion are scheduled for April 15, 2021.  Due to the Debtor's
     pre and post-petition gross mismanagement, dishonesty, and incompetence, Shady Bird also anticipates
28   filing a separate motion seeking the appointment of a chapter 11 trustee.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

(B) the debtor has commenced monthly payments that -

2

3

(i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

4

5

6

7

(ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; . . .

8

11 U.S.C. § 362(d).

9

If any of the foregoing grounds for relief is present, a court must grant relief

10

from stay.  As one court explained:

11

Two threshold points should be made concerning these

12

provisions.  First, Section 362(d) is mandatory, not

13

permissive.  Congress has provided that "the

14

Court *shall* grant relief from the stay" . . . for any of the

15

reasons stated in the three subsections.  [Multiple citations

16

omitted].  Second, the grounds for relief from stay are

17

presented in subsections (1), (2) and (3) in the disjunctive;

18

thus, if any one subsection applies, the Court must grant a

19

motion for relief from stay.

20

In re Zeoli, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000) (emphasis in original).

21

In this case, section 362(d)(1) mandates relief from stay for "cause."  11

22

U.S.C. § 362(d)(1).[11]  Although the Bankruptcy Code does not define the term "cause,"

23

courts hold it "is a broad and flexible concept that permits a bankruptcy court, as a court

24

of equity, to respond to inherently fact-sensitive situations."  In re A Partners, LLC, 344

25

B.R. 114, 127 (Bankr. E.D. Cal. 2006).  Put another way, cause must be determined on a

26

27

28

[11] If the Court, as expected, grants the SARE Motion on April 15, Shady Bird reserves the right to file a separate motion for relief from stay under the independent grounds of 11 U.S.C. § 362(d)(3).

025

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    case-by-case basis.  See In re Conejo Enters., 96 F.3d 346, 352 (9th Cir. 1996).

2          The Bankruptcy Code explicitly lists "the lack of adequate protection of an

3    interest in property" as an example of "cause."  11 U.S.C. § 362(d)(1).  Therefore, a party

4    with a security interest in collateral is entitled to relief from the stay pursuant to section

5    362(d)(1) if its security interest is not adequately protected.  See 11 U.S.C. § 362(d)(1); In

6    re Arnold, 806 F.2d 937, 939 (9th Cir. 1986); In re 405 N. Bedford Dr. Corp., 778 F.2d

7    1374, 1378 (9th Cir. 1985); In re Barry, 201 B.R. 820, 826 (C.D. Cal. 1996).

8          Just as "cause" is not specifically defined in the Bankruptcy Code, so too,

9    no comprehensive definition of "adequate protection" has been provided by Congress.

10   Nevertheless, the Bankruptcy Code identifies examples of proper forms of adequate

11   protection to include a cash payment or periodic cash payments.  See 11 U.S.C. §

12   361(1)-(2).  "The 'adequate protection' basis establishes that the stay is not intended, and

13   cannot by itself be applied, so as to deprive a secured creditor of the value of collateral in

14   which the creditor has a perfected security interest . . . .  To the extent the automatic stay

15   threatens such a security interest, relief from stay *must* be granted under Section

16   362(d)(1)."  In re Park at Dash Point L.P., 121 B.R. 850, 858 (Bankr. W.D. Wash. 1990)

17   (emphasis added).

18         In other words, for a secured creditor to establish a *prima facie* case of

19   cause for relief from the automatic stay due to a lack of adequate protection, only two

20   things must be shown.  First, the secured creditor must prove it holds a valid claim

21   against the debtor, with a properly perfected security interest in the collateral securing the

22   claim.  See In re Harris, 115 B.R. 376, 377 (Bankr. M.D. Fla. 1990); In re Rogers, 239

23   B.R. 883, 887 (Bankr. E.D. Tex. 1999).  Second, there must be a decline, or threatened

24   decline, in the value of the collateral securing the debt combined with debtor's failure to

25   provide adequate protection of the creditor's interest.  In re Howery, 275 B.R. 852, 854

26   (Bankr. S.D. Ohio 2002).

27         Once a creditor establishes its perfected security interest securing a valid

28   claim, the burden shifts to the debtor to prove that the creditor's interest in the collateral is

1  adequately protected.  See 11 U.S.C. § 362(g); In re Executive House Assoc., 99 B.R.

2  266, 279 (Bankr. E.D. Pa. 1989); La Jolla Mortg. Fund v. Rancho El Cajon Assoc., 18

3  B.R. 283, 288 (Bankr. S.D. Cal. 1982).  As highlighted, a "secured creditor lacks

4  adequate protection if the value of its collateral is declining as a result of the stay.  It

5  must, therefore, prove this decline in value - or the threat of a decline - in order to

6  establish a *prima facie* case."  In re Sun Valley Ranches, Inc., 823 F.2d 1373, 1376 (9th

7  Cir. 1987).  See also In re Marion Street Partnership, 108 B.R. 218, 225 (Bankr. D. Minn.

8  1989); In re Raymond, 99 B.R. 819, 821-22 (Bankr. S.D. Ohio 1989).

9       As established below, Shady Bird is entitled to relief from stay for "cause"

10  under section 362(d)(1) because the Project is either appreciably declining in value or, at

11  a minimum, there is a real threat of a decline in value due to its state of disrepair and

12  neglect.

13      A.    **Shady Bird Holds a Properly Perfected Lien On the Project**

14       No dispute exists that Shady Bird holds a valid, properly perfected lien on

15  the Project, as evidenced by the Deed of Trust and all related documents to secure the

16  Debtor's (and the Chae's) obligations under the Loan Documents.  See Supplemental

17  Richards Declaration, Exhibit 1 through Exhibit 12.  Those documents, including, but not

18  limited to, the recorded assignment of the Loan Documents and Deed of Trust to Shady

19  Bird, as well as the Allonge, reflect the transfer of all rights and interest in and to the

20  Deed of Trust, the Loan Agreement, Note, Guaranty, and all related security agreements

21  to Shady Bird, and confirm Shady Bird's perfected lien and interest in the Project.  In fact,

22  the Debtors actually concede Shady Bird's lien in its Schedules.[12]

23       As such, Shady Bird has demonstrated a *prima facie* case for relief from the

24  automatic stay.

25  _____

26  [12] The Debtor's Schedules filed on March 12, 2021 [Docket No. 32] lists Shady Bird as the holder of a
secured claim in the amount of $30,719,919.39.  Although the Debtor contends that the claim is "disputed"

27  there is no basis for such a contention.  While there may be a dispute as to the amount of the claim, there
can be no dispute that Shady Bird holds a properly perfected lien against the Project.  Moreover, the

28  Debtor's Schedules identify total secured claims totaling $55,140,197 against an artificially inflated value of
$50,000,000.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.**    **Shady Bird's Interest is Not - and Never Will Be - Adequately Protected
Under the Present Circumstances**

Although it is not Shady Bird's burden to show a lack of adequate
protection, no other conclusion is possible.  There simply is no form of adequate
protection the Debtor conceivably could offer, especially when the Project's value is in a
precipitous state of decline due to the Debtor's poor management.

To start, the Debtor is completely incapable of making any amount of
adequate protection payments to Shady Bird.  The Debtor expressly concedes that the
hotel is non-operational and, other than limited funds it just received from Original Lender
and M+D, it has no cash reserves or other sources of income.  Hence, no evidence exists
to establish the Debtor's ability to make any payments to Shady Bird (and certainly not in
amounts that would qualify for adequate protection).  In fact, with both the Project and the
Chae's saddled with enormous debt, the evidence proves the opposite.

The Debtor also cannot credibly contend Shady Bird is protected by a
sufficient equity cushion.  No equity cushion, let alone an adequate cushion, exists.  The
Debtor's mythical $50,000,000 value is entirely unreliable and not based on the current
physical condition of this half-built hotel.  The Debtor itself concedes that even at a
$50,000,000 valuation, the secured claims exceed $55,000,000.  And since Shady Bird
has absolutely no faith in the Debtor's valuation, it believes it is severely undersecured.

So while this case may still be in its infancy, the evidence demonstrates that
the Project is at a crossroads and, under the circumstances, it makes little sense to delay
the inevitable.  Maintaining the stay and barring Shady Bird from protecting its interest in
the Project under the present situation only serves the inequitable purpose of forcing
Shady Bird to bear the entire risk of this doomed case.  For example, in In re Hickory
Ridge, LLC, 2012 Bankr. LEXIS 1131 (Bankr. N.D. Va. April 26, 2010), the court lifted the
stay under section 362(d)(1) after recognizing the inequitable consequences of leaving
the secured creditors alone to bear the risk of the case:

Hickory Ridge [the debtor] is not an operating business and

1    is not generating any income.  The value of the property is

2    declining by virtue of BB&T's accruing interest, fees and

3    charges on its three notes secured by the properties.

4    Hickory Ridge has not suffered any risk of non-payment to

5    BB&T; all risks in this case have shifted to BB&T and

6    Hickory Ridge's other secured lenders.  This is inequitable.

7  Id., at *5-6.

8    Similarly, here (i) the Debtor is not operating a business and generates no

9  income; (ii) the value of the Project is declining not only due to its present run-down state,

10  but also by virtue of Shady Bird's quickly accruing interest, fees, and other charges, and

11  the millions of dollars of mechanic's liens; (iii) the Debtor is suffering no risk from its

12  nonpayment of Shady Bird's debt; and (iv) the Debtor cannot provide any evidence that it

13  has any realistic prospects of refinancing the debt or actually completing construction of

14  the Project at any time, let alone within a reasonable timeframe.[13]

15    As noted, there presently is a complete lack of income, let alone sufficient

16  income, to fund a successful reorganization.  The Debtor has been in default of its

17  obligations under the Loan since November 1, 2019.  Since that time, there has been no

18  refinancing of Shady Bird's debt, and a complete lack of any evidence showing that either

19  take out financing or additional construction financing has been (or will be) secured.  In

20  fact, construction came to a halt due to the simple fact that the Debtor lacks the funds to

21  carry out even the most basic construction projects.  Given the plight and continuing

22  deterioration of the Project, there is no basis to assume that anything will change in the

23  short term.  And, during this time, the Project will continue to deteriorate as its

24  infrastructure remains subject to the elements and ongoing vandalism, which already has

25  occurred.

26  _____

27  [13] The Debtor's anticipated argument that it intends to file a plan of reorganization is irrelevant.  The plan most likely will merely reinforce the pipe-dream that all creditors will be paid once an undefined and

28  undisclosed refinancing transaction is in place, leaving the timing of the transaction up in the air, perhaps for years to come.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Second, the Project already has suffered dramatically during the Debtor's

2    ownership and its embarrassing attempt at construction, and it will continue to suffer the

3    longer it remains in the Debtor's hands.  The Debtor lacks the ability to cure the existing

4    loan default or service Shady Bird's debt, and it has no ability to restart, much less

5    complete, construction, which could cost at least $20 million to finish.  Importantly, many

6    of the construction permits issued by the City of Buena Park have expired, further

7    complicating any future construction efforts.[14]  This says nothing of the Debtor's inability

8    to compensate the multitude of vendors and contractors who are owed millions of dollars,

9    many of whom have filed mechanic's liens and *lis pendens* against the Project.  All the

10    while, Shady Bird's debt will continue to increase unabated.

11    Finally, the evidence of mismanagement and negligence is overwhelming.

12    The events surrounding the pre-petition termination and post-petition resuscitation of the

13    Ground Lease more than demonstrates the Debtor's dishonesty.  In addition, the fact that

14    the Receiver was appointed further establishes that the state court agreed with Shady

15    Bird's concerns that the current state of disrepair and lack of insurance warranted the

16    drastic remedy of appointing a receiver to assume control over the Project.  The report

17    prepared by Urban Advisory only reinforces why the appointment of a receiver was

18    desperately needed and why there is a real threat to Shady Bird's collateral the longer

19    the stay remains in effect and the Debtor is shielded from any risk.

20    Typically, cause is shown under section 362(d)(1) by presenting evidence

21    of a threat to a decline in a collateral's value, the increasing amount of the secured debt

22    through interest accruals or otherwise, the non-payment of taxes or other senior liens,

23    failure to insure the property, failure to maintain the property or keep the property in a

24    good state of repair, or other factors that may jeopardize the creditor's present position.

25    See In re Anthem Communities/RBG, LLC, 267 B.R. 867, 871 (Bankr. D. Colo. 2001); In

26    re Panther Mountain Land Dev., LLC, 438 B.R. 169, 189-90 (Bankr. E.D. Ark. 2010); In re

27    _____

28    [14] A true and correct copy of a March 26, 2021, summary prepared by the City of Buena Park evidencing
that numerous permits have expired is attached hereto as Exhibit 17 and incorporated herein by reference.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1    Brown, 78 B.R. 499, 503 (Bankr. S.D. Ohio 1987).  The threats to the value of Shady

2    Bird's collateral, as pointed out by the court in Anthem Communities, have readily been

3    established here.

4        Making matters worse is the Chae's long, disreputable history as

5    developers.  Not only is this Project suffering at their hands, but so are other projects.

6    For instance, as a result of the Chae's defaults, their membership interests in an entity

7    called Plamex Investments, LLC, whose principal asset is known as "Plaza Mexico," is

8    the subject of a public auction by the lender.[15]  In other words the Chae's have a history

9    of development projects that either are not adequately capitalized or are burdened with

10   numerous construction issues and millions of dollars in outstanding debt and liens.

11       In sum, the present situation leaves Shady Bird substantially at risk and

12   with no source or degree of protection to guard itself against the decline in value and the

13   diminution in adequate protection caused by the passage of time, lack of payment of the

14   Debtor's obligations, depreciation, and risk.  The continued presence of the automatic

15   stay precludes Shady Bird from taking the appropriate steps to protect its interests, and

16   the Debtor has not, and cannot, adequately protect Shady Bird's interests.  As a result,

17   Shady Bird is entitled to relief from stay for "cause" under section 362(d)(1).[16]

18                              **IV.**

19   **THE AUTOMATIC STAY DOES NOT BAR SHADY BIRD FROM EXERCISING ITS**

20   **RIGHTS AND REMEDIES AGAINST THE CHAE'S**

21       The Chase's, as non-debtor guarantors, are separately and independently

22   liable to Shady Bird on account of the Loan Agreement.  Therefore, in addition to seeking

23   the right to continue with its foreclosure proceedings, Shady Bird seeks to enforce all

24   rights and remedies available to it under the Chae's Guaranty.  Shady Bird does not

25   _____

26   [15] A true and correct copy of the "Terms of Sale for Public Auction" is attached hereto as Exhibit 18 and
     incorporated herein by reference.

27   [16] If the Court disagrees, and believes adequate protection can be provided to protect Shady Bird's senior
     lien, at a minimum, the Court must require that the post-petition real property taxes, and any penalties for

28   late payments, including those which are due on April 10, 2021, be paid.  The Debtor, as the ground

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1   believe the provisions of section 362(a) prohibit such enforcement remedies, however,

2   solely out of an abundance of caution, to ensure Shady Bird does not run afoul of the

3   automatic stay, Shady Bird seeks an order confirming that the automatic stay does not

4   apply to such actions.  The Court should issue such a comfort order.

5        Generally, the automatic stay only applies to protect a debtor, its

6   bankruptcy estate, and its property.  See In re Advanced Ribbons & Office Products, Inc.,

7   125 B.R. 259, 263 (B.A.P. 9th Cir. 1991) ("The automatic stay of section 362(a) protects

8   only the debtor, property of the debtor or property of the estate").  None of those criteria

9   exists here.

10       First, neither of the Chae's are debtors in this case.  Second, the Chae's

11  personal property is not property of the Debtor or its bankruptcy estate; they belong

12  solely to the Chae's.  In light of the foregoing, the automatic stay does not prevent Shady

13  Bird from enforcing its rights against the Chae's.[17]  In In re Advanced Ribbons and Office

14  Products, Inc., 125 B.R. 259 (B.A.P. 9th Cir. 1991), the Bankruptcy Appellate Panel

15  explained the limitations of the stay as follows:

16       The automatic stay of section 362(a) protects only the

17       debtor, property of the debtor or property of the estate.  See,

18       e.g., In re Casgul of Nevada, Inc., 22 Bankr. 65, 66 (9th Cir.

19       BAP 1982).  It does not protect non-debtor parties or their

20       property.  See, e.g., Credit Alliance Corp. v. Williams, 851

21       F.2d 119, 121-22 (4th Cir. 1988); Casgul of Nevada, 22

22

23  lessee, is obligated to pay these and other taxes pursuant to Article 5 of the Ground Lease.

24  [17] Shady Bird already has received writs of attachments against each of the Chae's.  Specifically, on March
    26, 2021, the Superior Court for the State of California, County of Los Angeles, entered its "Writ of
    Attachment After Hearing" (the "Donald Chae Writ") against Donald Chae in the action styled Evertrust

25  Bank v. Donald Chae, et al., bearing Case No. 30-2020-01153205-CU-BC-CJC, in the amount of
    $28,665,523.22.  On March 26, 2021, the Superior Court for the State of California, County of Los Angeles,

26  also entered its "Writ of Attachment After Hearing" (the "Min Chae Writ") against Min Chae in the action
    styled Evertrust Bank v. Donald Chae, et al., bearing Case No. 30-2020-01153205-CU-BC-CJC, in the

27  amount of $28,665,523.22.  The Min Chae Writ and Donald Chae Writ allow Shady Bird the right to attach
    all property of the Chae's as described in the respective writs of attachment.  Pursuant to Rule 201 of the
    Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the Min Chae Writ

28  and the Donald Chae Writ, true and correct copies of which are attached hereto as Exhibit 19 and

1  Bankr. at 66. *Thus, section 362(a) does not stay actions*

2  *against guarantors, sureties, corporate affiliates, or other*

3  *nondebtor parties liable on the debts of the debtor*. See,

4  e.g., Ingersoll-Rand Financial Corp. v. Miller Mining Co., 817

5  F.2d 1424, 1427 (9th Cir. 1987) (guarantors); In re Lockard,

6  884 F.2d 1171 (9th Cir. 1989) (automatic stay did not

7  prevent an action against a surety on a contractor's bond);

8  see also 2 Collier on Bankruptcy, para. 362.02[1] at 362-28-

9  29 (15th ed. 1990). *Similarly, the automatic stay does not*

10  *protect the property of parties such as officers of the debtor*,

11  see, e.g. Casgul of Nevada, 22 Bankr. at 66, even if the

12  property in question is stock in the debtor corporation.  See

13  In re Calamity Jane's, Inc., 22 Bankr. 5 (Bankr. D. N.J.

14  1982).

15  Id., at 263 (emphasis added).

16  Since the Chae's are not debtors, and Shady Bird's enforcement of its

17  rights against the Chae's are not subject to, and would not violate, the automatic stay,

18  relief from stay is warranted.  See In re Chugach Forest Prods., Inc., 23 F.3d 241, 246

19  (9th Cir. 1994) (noting that bankruptcy "does not stay actions against guarantors"); In re

20  Johnson, 209 B.R. 499 (Bankr. D. Neb. 1997) (creditor is permitted to sue a guarantor or

21  a co-debtor and to collect from property of a third party that is pledged to secure debts of

22  the debtor without fear of violating automatic stay); In re The Russell Corp., 156 B.R. 347,

23  350 (Bankr. N.D. Ga. 1993) (refusing to extend the automatic stay to guarantors, noting

24  that "Congress intended the automatic stay of section § 362 to protect the debtor . . . . It

25  was not designed to benefit third parties . . . . Congress did not enact a codebtor stay in

26  Chapters 7 and 11").

27  The Court should confirm this unassailable conclusion.

28  

incorporated herein by reference.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

**V.**

2

**CONCLUSION**

3          Once a moving party carries its initial burden under section 362(d)(1), the

4   Bankruptcy Code places squarely on the debtor's shoulders the burden of proving the

5   absence of "cause," in other words, either that there is no actual or threatened decline in

6   the collateral's value or that the secured creditor is adequately protected.  In re Elmira

7   Litho, Inc., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).  Here, Shady Bird has established

8   beyond any doubt that it holds a claim secured by a valid, perfected lien on the Project,

9   and there is a threatened decline in the value of its collateral due to the Debtor's gross

10  mismanagement and incompetence which has resulted in a property riddled with serious

11  issues of disrepair, waste, and neglect.  Since the Debtor will be unable to offer any form

12  of adequate protection, Shady Bird is entitled to relief from stay under section 362(d)(1).

13  DATED: April 1, 2021              **Sulmeyer**Kupetz
                                     A Professional Corporation

14

15

16                                   By: /s/ Daniel A. Lev
                                        Daniel A. Lev

17                                      Attorneys for Shady Bird Lending, LLC

18  DATED: April 1, 2021              Law Offices of Ronald Richards & Associates, APC

19

20                                   By: /s/ Ronald Richards

21                                      Ronald Richards
                                        Attorneys for Shady Bird Lending, LLC

22

23

24

25

26

27

28

1

## SUPPLEMENTAL DECLARATION OF RONALD RICHARDS[18]

2          I, Ronald Richards, declare and state as follows:

3          1.      At all times relevant hereto, I have been the non-member, manager

4    for Shady Bird Lending, LLC, a California limited liability company ("Shady Bird").  In this

5    capacity, I have personal knowledge of the facts set forth in this declaration, and if called

6    as a witness for this purpose, I could and would testify competently under oath to them.

7          2.      I make and execute this declaration in support of Shady Bird's

8    "Notice of Motion and Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362

9    (with supporting declarations) (Real Property)" (the "Motion").

10         3.      I am not a member or owner of Shady Bird, but I am the only one

11   who is authorized to execute settlements or act on behalf of the entity.

12         4.      Shady Bird is the assignee of that certain construction loan (the

13   "Loan") entered into on or about May 24, 2016, by and between Evertrust Bank (the

14   "Original Lender") and the Debtor, in the principal amount of $24,988,808.  The Loan was

15   made pursuant to a "Construction Loan Agreement" (the "Loan Agreement") dated May

16   24, 2016, between the Debtor and Original Lender.  A true and correct copy of the Loan

17   Agreement is attached hereto as <u>Exhibit 1</u>.  The purpose of the Loan was for the

18   development and construction of a 178-room, 7 story hotel project.  In addition to the

19   Project, the Debtor is the ground lessee under a 99-year "Memorandum of Ground

20   Lease" (the "Ground Lease") with ground lessor, The Source at Beach, LLC (the "Ground

21   Lessor").  Although the Ground Lease was terminated on February 16, 2021, by Ground

22   Lessor, not surprisingly, the termination was just rescinded.  However, the defaults which

23   caused the termination notice to be sent still remain.

24         5.      In furtherance of the Loan Agreement, as evidence of the Loan, and

25   for value received in the maximum principal amount of $29,500,000 by the Debtor from

26   Original Lender, the Debtor executed and delivered to Original Lender a "Promissory

27   _____

28   [18] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the foregoing
     memorandum of points and authorities.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

Note" (the "Note").  A true and correct copy of the Note is attached hereto as <u>Exhibit 2</u>.

According to the Note, the Debtor agreed to make monthly payments of interest

commencing on July 1, 2016, until the Note's original maturity date of December 1, 2017

(the "Original Maturity Date").  Upon the Original Maturity Date, the entire unpaid

principal, all accrued interest, and other costs and fees were due and payable without

demand or notice.  As explained below, pursuant to five extension agreements, the

Original Maturity Date was extended to November 1, 2019 (the "Maturity Date").  An

event of default under the Note is defined as any event of default under the Loan

Agreement.

6.　　　To secure repayment and performance of the Debtor's obligations

under, *inter alia,* the Loan Agreement and Note, the Debtor executed and delivered to

Original Lender a "Construction Deed of Trust, Assignment of Rents, Security Agreement

and Fixture Filing (Leasehold)" (the "Deed of Trust") pursuant to which, *inter alia,* Original

Lender was granted a first priority lien against the Debtor's rights in the Project and the

Ground Lease.  A true and correct copy of the Deed of Trust is attached hereto as <u>Exhibit</u>

<u>3</u>.  Specifically, the Deed of Trust grants Original Lender, and Shady Bird, as its

assignee, a first priority security interest and lien in the Debtor's leasehold interest in the

Project; all right, title, and interest in and to the Ground Lease; rents, income and profits

arising from or pursuant to the Ground Lease; and the use, occupancy, and enjoyment of

the Project along with all other real and personal property described in the Deed of Trust.

The Deed Trust further grants, transfers, and assigns to Shady Bird, as assignee, all of

the Debtor's right, title, and interest in and to any building, improvements, fixtures,

structures, and equipment located or erected on the Project (collectively, the

"Improvements").

7.　　　The Deed of Trust also requires the Debtor to maintain insurance on

the Project (as defined therein) and to protect Shady Bird's security interest in the Project

against loss or damage by fire and other risks.  As assignee, Shady Bird also shall be

named as the primary loss payee under all of the insurance policies and the Debtor is

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   required to assure that Shady Bird receives a certificate from each insurance company

2   that acknowledges Shady Bird's position as loss payee and that states that the insurance

3   policy cannot be terminated as to Shady Bird except upon 30-days prior written notice.

4         8.    The Deed of Trust further requires the Debtor to maintain and

5   preserve the Project, including, *inter alia*: (i) keeping the Project in good condition and

6   repair; (ii) using commercially reasonable efforts to complete or restore promptly and in

7   good and workmanlike manner the Project, or any part thereof, which may be damaged

8   or destroyed; (iii) not committing or permitting material physical waste of the Project or

9   any portion thereof; and (iv) doing all other acts which from the character or use of the

10  Project may be reasonably necessary to maintain, preserve, and enhance its value and

11  otherwise performing such appropriate upkeep and maintenance to the Project to ensure

12  that the Project, and each part thereof, is maintained in a first-class manner and retains

13  at all times a first-class appearance and condition.

14        9.    According to the Deed of Trust, Shady Bird is provided the right to

15  inspect the Project for purposes of ensuring the Debtor's compliance with its obligations

16  under the Deed of Trust.  Finally, the Deed of Trust not only gives Shady Bird the right to

17  perform various acts in the event of the Debtor's failure to perform in order to protect the

18  collateral, but it also allows Shady Bird to bring an action for specific performance or for

19  appointment of a receiver to take possession of the Project and operate the business of

20  the Debtor, if any, being conducted on the Project.

21        10.    As mentioned, the Debtor is the ground lessee under the Ground

22  Lease Ground Lessor.  In this regard, on June 3, 2016, a "Ground Lessor's Consent,

23  Estoppel Certificate and Fee Mortgagee Agreement" (the "Ground Lessor's Consent")

24  between Original Lender, the Debtor, and other third parties, was duly recorded.  A true

25  and correct copy of the Ground Lessor's Consent is attached hereto as <u>Exhibit 4</u>.

26        11.    The Loan and Note originally matured on the Original Maturity Date

27  of December 1, 2017.  Thereafter, at the request of the Debtor and the guarantors of the

28  Loan and Note, namely, Donald Chae and Min Chae (collectively, the "Guarantors"), the

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

Debtor, Guarantors, and Original Lender entered into a "First Extension Agreement" dated December 22, 2017 (the "First Extension"), whereby, *inter alia*, pursuant to the terms therein, (i) the Original Maturity Date was extended to June 1, 2018, and (ii) the completion date of the Project was extended to June 1, 2018.  Thereafter, pursuant to a "Second Extension Agreement," "Third Extension Agreement," "Fourth Extension Agreement," and "Fifth Extension Agreement" (collectively, the "Extension Agreements"), the Original Maturity Date of the Loan, Loan Agreement, and Note, and the completion date of the Project, were extended to November 1, 2019 (the "Maturity Date").  True and correct copies of the First Extension Agreement, Second Extension Agreement, Third Extension Agreement, Fourth Extension Agreement, and Fifth Extension Agreement are attached hereto as Exhibit 5, Exhibit 6, Exhibit 7, Exhibit 8, and Exhibit 9, respectively.

12.    As noted, Shady Bird is the assignee of all of Original Lender's right, title, and interest in and to, *inter alia,* the Loan, Loan Agreement, Note, and Deed of Trust.  In this regard, in exchange for good and valuable consideration and in furtherance of a "Non-Recourse Loan Sale Agreement and Joint Escrow Instructions" (the "Loan Sale Agreement") and an "Assignment of Loan Documents" (the "Assignment of Loan Documents") dated December 29, 2020, Original Lender executed and delivered to Shady Bird an "Assignment of Deed of Trust" (the "Deed of Trust Assignment") dated December 29, 2020, and recorded on January 4, 2021, whereby Original Lender assigned and transferred to Shady Bird all of Original Lender's right, title, and interest in and to the Loan Agreement, the Note, and Deed of Trust.  True and correct copies of the Assignment of Loan Documents and Deed of Trust Assignment are attached hereto as Exhibit 10 and Exhibit 11, respectively.  As such, Shady Bird is the lawful owner and holder of the Note and the Loan Agreement and is the beneficiary of the Deed of Trust.  Moreover, pursuant to an "Allonge" (the "Allonge") to the Note dated December 29, 2020, all amounts due and owing on the Note by the Debtor are now payable to Shady Bird.  A true and correct copy of the Allonge is attached hereto as Exhibit 12.

13.    As a result of the Debtor's defaults under the Loan Agreement by,

1  among other things, failing to pay the total indebtedness due and owing to Original

2  Lender under the Note and Loan Agreement, on June 18, 2020, Original Lender

3  delivered its "Notice of Default for Payment" (the "Default Notice") to the Debtor and the

4  Chae's, as guarantors.  A true and correct copy of the Default Notice is attached hereto

5  as Exhibit 13.

6          14.    As a result of the Debtor's defaults, on July 27, 2020, Original Lender

7  recorded a "Notice of Default and Election to Sell Under Deed of Trust" (the "Notice of

8  Default").  A true and correct copy of the Notice of Default is attached hereto as Exhibit

9  14.  A foreclosure sale was scheduled for March 1, 2021.

10         15.    Due to the Debtor's defaults under the Loan Agreement, Note, and

11  Deed of Trust for the following undisputed reasons, Shady Bird was left with no

12  alternative but to exercise its rights to not only commence a non-judicial foreclosure sale,

13  but to seek the appointment of a receiver.  Specifically, the following defaults warranted

14  such drastic relief:

15         •      The Debtor's failure to make the payment of interest due under the

16  Note on October 1, 2019;

17         •      The Debtor's failure to repay the total indebtedness on the Loan,

18  Note, and Loan Agreement by the Maturity Date;

19         •      The Debtor's failure to complete the construction of the Project by

20  the Maturity Date;

21         •      The Debtor's failure to timely pay its contractors and other third

22  parties resulting in multiple mechanic's being recorded against the Project and the

23  Debtor's failure to furnish a sufficient bond causing such liens to be released or giving

24  other satisfactory indemnity within ten days of recording;

25         •      The Debtor's failure to take reasonable measures to maintain,

26  protect, and secure the Project under the Deed of Trust;

27         •      The Debtor's failure to prevent the Project from becoming

28  vandalized, damaged, destroyed, and deteriorated;

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

039

1   • The Debtor's failure to prevent material physical waste of the Project;

2   • The Debtor's failure to allow Shady Bird to enter upon and inspect

3 the Project;

4   • The Debtor's failure to provide evidence of and certificates of

5 insurance to Shady Bird upon request;

6   • The Debtor's failure to allow inspections by the City of Buena Park

7 and ceasing communications with the City, negatively affecting the permitting process

8 and the ability to complete the Project;

9   • The Debtor's failure to maintain various systems and improvements

10 on the Project such as the elevator, electrical, HVAC, and plumbing;

11   • The Debtor's failure to provide any security for the Project and

12 improvements; and

13   • The Debtor's failure to timely test the fire-life safety systems which

14 could completely destroy the Project.

15  16. On February 16, 2021, one day prior to the hearing to appoint a

16 receiver, Shady Bird received a "Notice of Default Under, and Exercise of Option to

17 Terminate, Ground Lease" (the "Ground Lease Termination") from Ground Lessor,

18 advising Shady Bird that the Ground Lease was being immediately terminated.  A true

19 and correct copy of the Ground Lease Termination is attached hereto as <u>Exhibit 15</u>.  On

20 March 22, 2021, Shady Bird received a notice of recission from the Ground Lessor,

21 however, the defaults that first occasioned the termination remain.

22  17. On February 17, 2021, the state court granted Shady Bird's request

23 and Bellann R. Raile (the "Receiver") was appointed receiver for the Project.  A true and

24 correct copy of the February 17, 2021, order is attached hereto as <u>Exhibit 16</u>.  The

25 Receiver assumed immediate control of the Project, but, due to the chapter 11 filing, the

26 March 1, 2021, foreclosure sale did not proceed.

27  18. In order to determine the status of the Project, I obtained a written

28 report from the City of Buena Park that summarizes the Project and the status of permits

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

040

1    for construction.  As evidenced by the March 26, 2021, summary, numerous

2    constructions permits have expired.  A true and correct copy of the March 26, 2021,

3    summary prepared by the City of Buena Park is attached hereto as <u>Exhibit 17</u>.  I also

4    discovered that, as a result of the Chae's defaults, their membership interests in an entity

5    called Plamex Investments, LLC, whose principal asset is a known as "Plaza Mexico," is

6    the subject of a public auction by the lender.  A true and correct copy of the "Terms of

7    Sale for Public Auction" is attached hereto as <u>Exhibit 18</u>.

8            19.      As a result of the foregoing defaults, the principal sum of not less

9    than $30,948,839.27 is due and owing to Shady Bird by the Debtor and the Chae's, as

10   guarantors.  The Debtor and the Chae's, as guarantors, also are liable for additional

11   amounts on the Note, Loan Agreement, and Guaranty for interest, default interest, late

12   fees, and costs and attorneys' fees incurred by Original Lender and Shady Bird in

13   connection with collection and enforcement of, *inter alia*, the Note, Loan Agreement, and

14   Guaranty.  These amounts are preserved by Shady Bird, and are not waived in any

15   action or proceeding as a result of these cases.

16            *[Remainder of page intentionally left blank]*

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

20.    As a result of the Debtor's and the Chae's defaults, Shady Bird requested and obtained writs of attachments against each of the Chae's.  Specifically, on March 26, 2021, the Superior Court for the State of California, County of Los Angeles, entered its "Writ of Attachment After Hearing" (the "Donald Chae Writ") against Donald Chae in the action styled Evertrust Bank v. Donald Chae, et al., bearing Case No. 30-2020-01153205-CU-BC-CJC, in the amount of $28,665,523.22.  On March 26, 2021, the Superior Court for the State of California, County of Los Angeles, also entered its "Writ of Attachment After Hearing" (the "Min Chae Writ") against Min Chae in the action styled Evertrust Bank v. Donald Chae, et al., bearing Case No. 30-2020-01153205-CU-BC-CJC, in the amount of $28,665,523.22.  The Min Chae Writ and Donald Chae Writ allow Shady Bird the right to attach all property of the Chae's as described in the respective writs of attachment.  True and correct copies of the Min Chae Writ and the Donald Chae Writ are attached hereto as Exhibit 19.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of April, 2021, at Los Angeles, California.

/s/ Ronald Richards
Ronald Richards

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

## <u>DECLARATION OF BELLANN R. RAILE</u>

2       I, Bellann R. Raile, declare and state as follows:

3       1.    I am over the age of eighteen and am the duly appointed, qualified,

4   and acting state court receiver for the real property bearing APN Nos. 276-361-20 and

5   276-361-22, consisting of a partially constructed 178-room, seven story hotel building

6   located in Buena Park, California (the "Project") owned by the debtor The Source Hotel,

7   LLC (the "Debtor").  The facts stated herein are true of my own personal knowledge and I

8   could and would competently testify thereto as follows.

9       2.    I make and execute this declaration in support of Shady Bird's

10  "Notice of Motion and Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362

11  (with supporting declarations) (Real Property)" (the "Motion").

12      3.    After my appointment as receiver on February 17, 2021, I

13  immediately undertook those duties imposed on me by the operative order and applicable

14  state law.  I have personally viewed and inspected the Project, have ordered an

15  inspection report from Urban Advisory and Building Group, LLC ("Urban Advisory"), and

16  have attempted to gain an understanding of the financial position and structure of the

17  Debtor.  Although I was only appointed on February 17, 2021, it is clear to me that there

18  are no substantial business operations being performed by the Debtor at the Project and

19  the Project is in a state of disrepair and decline which threatens the value of Shady Bird's

20  collateral.

21      4.    Specifically, the Debtor's hotel is only partially constructed and is

22  completely non-operational.  For instance, the hotel is not permitted for occupancy and is

23  not generating a single dollar of income.  There are no rooms for let, there is no

24  electricity, there is no running water, there are no functioning systems for HVAC or fire-

25  life safety, there are no restaurants, there are no bars, there are no gift shops, there are

26  no retail stores, there are no pools or spas, there are no ballrooms, there is no fitness or

27  business center, and there is no convention space.  In other words, this is not a

28  functioning hotel.  More troubling are the conclusions of Urban Advisory as contained in

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1    its "Property Inspection Report for The Source OC Hilton Hotel," dated March 10, 2021

2    (the "Report").  The Report details the serious issues of neglect, waste, and disrepair at

3    the Project.

4              5.      As further evidence of this fact, I commissioned a series of

5    photographs to be taken of the Project, showing its current state of construction and

6    disrepair as of the date of my appointment.  True and correct copies of a series of

7    photographs I commissioned are attached hereto as Exhibit 20.

8              I declare under penalty of perjury under the laws of the United States of

9    America that the foregoing is true and correct.

10             Executed this 1st day of April, 2021, at Irvine, California.

11

12                                            Bellann Raile
                                              Bellann Raile

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

## DECLARATION OF BRENT LITTLE

2      I, Brent Little, declare and state as follows:

3      1.    I am over the age of eighteen and am a principal of Urban Advisory

4   and Building Group, LLC ("Urban Advisory").  I am a licensed general contractor and hold

5   a bachelor of arts degree in Geography from California State University, Fullerton, with

6   an emphasis in urban planning.  I have been the principal of several construction,

7   development, and consulting firms for the past twenty-five years.  The facts stated herein

8   are true of my own personal knowledge and I could and would competently testify thereto

9   as follows.

10      2.    I make and execute this declaration in support of Shady Bird's

11   "Notice of Motion and Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362

12   (with supporting declarations) (Real Property)" (the "Motion").

13      3.    Recently, Urban Advisory was retained by Bellann R. Raile (the

14   "Receiver"), who I understand is duly appointed, qualified, and acting state court receiver

15   for the Project owned by the Debtor.  Urban Advisory specifically was retained by the

16   Receiver to provide her with an analysis and written report of the current physical

17   condition of the Project.

18      4.    In this regard, Steve Cienfuegos, a licensed general contractor

19   employed by Urban Advisory, and I conducted two on-site inspections of the Project, the

20   first on March 3, and the second on March 9, 2021.  In addition to our personal

21   inspection, we also reviewed various stamped approved plans and interviewed several

22   individuals either familiar with the Project or a particularly relevant building system.  As a

23   result of our on-site inspections and analysis, we prepared and sent to the Receiver a

24   "Property Inspection Report for The Source OC Hilton Hotel," dated March 10, 2021 (the

25   "Report").  A true and correct copy of the Report is attached hereto as <u>Exhibit 21</u>.

26      5.    In sum, and as detailed in the Report, the hotel is an idled

27   construction project which is roughly 70% complete.  Crucially, there are significant

28   issues of neglect, potential hazardous situations, and safety and environmental concerns

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   at the Project.  Among the areas of concern are the following:  (i) there are substantial

2   roof issues which currently permit the intrusion of water into the structure, (ii) the

3   construction assemblies on the roof are incomplete and create an opportunity for water

4   infiltration, (iii) the fire sprinkler system is not currently capable of providing life-safety

5   protection for the Project, (iv) due to neglect and exposure to UV rays, the pool deck will

6   need substantial repair, (v) the pool has an accumulation of water and trash making it a

7   breeding ground for mosquitos, which may carry the West Nile Virus, (vi) completed

8   business finishes are not being protected and are exposed to waste or damage, (vii) a

9   potentially hazardous situation may exist if the building sewer system is not connected to

10   the public system, (viii) HVAC package units have been left unsecured and accessible to

11   thieves and vandals, and (ix) there are hazardous and caustic chemicals unsecured at

12   the Project.  As noted, these are merely some of the highlights of the Report.

13          6.      Therefore, in my opinion, it is clear to me that there are no

14   substantial business operations being performed by the Debtor at the Project and the

15   Project is in a state of disrepair and decline which threatens the value of Shady Bird's

16   collateral.

17          I declare under penalty of perjury under the laws of the United States of

18   America that the foregoing is true and correct.

19          Executed this 1st day of April, 2021, at Los Angeles, California.

20

21          Brent Little

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520