RON BENDER (SBN 143364)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  RB@LNBYB.COM; JYO@LNBYB.COM

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE SOURCE HOTEL, LLC, a California limited liability company,<br><br>    Debtor and Debtor in  Possession. | Case No.: 8:21-bk-10525-ES<br><br>Chapter 11<br><br>**DEBTOR'S CHAPTER 11 STATUS REPORT; DECLARATION OF DONALD CHAE IN SUPPORT THEREOF**<br><br>Status Conference:<br>Date:    May 6, 2021<br>Time:    10:30 a.m.<br>Place:    ZoomGov |

1

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, ALL SECURED CREDITORS, TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE IN THIS CASE:**

The Source Hotel, LLC, a California limited liability company and the chapter 11 debtor and debtor-in-possession herein (the "Debtor"), hereby files this status report (the "Status Report") in compliance with this Court's *Order: (1) Setting Hearing On Status Of Chapter 11 Case; And (2) Requiring Report On Status Of Chapter 11 Case* [Doc. No. 6] (the "Status Conference Order") and in advance of the Chapter 11 status conference scheduled on May 6, 2021.

**I.**

**DESCRIPTION OF DEBTOR AND ITS PRINCIPAL ASSETS AND LIABILITIES**

The Debtor filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on February 26, 2021 (the "Petition Date"). The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

Since at least 2014, Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which upon completion will include conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services. The Hotel is part of a larger 12.8-acre mixed-use development project (the "Master Development"), which includes a 400,000 square-foot retail center and a 50,000 square-foot seven-story office building which were completed in 2016. The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property (the "Ground Lease") with the Debtor's affiliate, The Source at Beach, LLC.

1    Construction of the Hotel began in 2016.  To finance the construction of the Hotel, on

2    May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from Evertrust

3    Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling $35.5

4    million.  The Debtor's obligations under the Loan are secured by liens against substantially all of

5    the Debtor's assets, including the Hotel and the Debtor's leasehold interest in the real property

6    that is the subject of the Ground Lease (the "Leasehold Interest").  The original maturity date for

7    the Loan was December 1, 2017, but was extended to November 1, 2019 pursuant to written

8    extension agreements entered into by the parties.

9    Through October 2019, approximately 85% of the Hotel construction had been

10    completed, including: substantial completion of the core and shell, exterior painting, porte

11    cochère, street lighting, ceiling framing, kitchen framing and glass block installation, food

12    storages, all glass storefronts, electrical wiring and switchgear, guestroom flooring, ceiling

13    fixtures, pool bar canopy structure, deck drains, window washing system, roof membrane, roof

14    ductwork and HVAC vibration installation; nearly complete installation of bathroom fixtures

15    (95%), acoustic ceiling system (80%), HVAC electrical connections (90%), piping for HVAC

16    and plumbing equipment (95%), and rooftop ductwork (99%).  In addition, substantial materials

17    have been procured and/or fabricated and are ready for installation pending completion of other

18    items, such as first and second floor flooring, corridor carpeting, millwork (wall and ceiling

19    panels, pool bar), passenger elevators, fire sprinklers, egress and accent lighting, pool equipment,

20    guest room doors, locks and closures, bathroom fixtures, and rooftop HVAC equipment.

21    The approximately 15% of the Hotel construction which remains outstanding consists of

22    mostly "finish work" such as the installation of flooring and carpeting, lighting, appliances, trade

23    fixtures, furniture, furnishings and equipment already purchased by the Debtor (collectively,

24    "FF&E").

25    The Debtor's primary assets consist of the Hotel, the Leasehold Interest, and a substantial

26    amount of FF&E.  The Debtor believes that the current value of the Hotel in "as is" condition is

27

28

at least $50,000,000 and that its fair market value upon completion will be at least $60,000,000.[1] The Debtor also believes that the total value of the FF&E (calculated at cost, excluding fabrication labor costs) is approximately $2,700,000.

The Debtor's primary secured creditor is Shady Bird Lending, LLC ("Shady Bird"), who acquired the Loan from Evertrust in December, 2020. Shady Bird contends that the outstanding balance of the Loan was $30,948,839.27 as of March 1, 2021. As noted above, the Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel, the Leasehold Interest, and the FF&E.

There are a number of subcontractors that have recorded mechanics' liens against the Debtor and/or Hotel. As reflected in the Debtor's Schedules of Assets and Liabilities filed in this case [Doc. No. 32] (the "Schedules"), the Debtor believes that the total amount of the mechanics' liens recorded against the Debtor and/or Hotel is approximately $2,900,000. However, some of these recorded mechanics' liens appear to have expired or have not been properly perfected, or are otherwise disputed by the Debtor.

The Debtor also received three tranches of EB-5 loans from Beach Orangethorpe Hotel, LLC, Beach Orangethorpe Hotel II, LLC, and Beach Orangethorpe Hotel III, LLC (collectively, the "EB-5 Investors," or individually, an "EB-5 Investor"). The Debtor's obligations under the loans from two of the EB-5 Investors (*i.e.*, Beach Orangethorpe Hotel, LLC and Beach Orangethorpe Hotel II, LLC), in the total principal sum of $21,500,000, are secured by junior liens against the Hotel and the Leasehold Interest. The Debtor's obligations under the loan from the third EB-5 Investor, Beach Orangethorpe Hotel III, LLC, in the principal sum of $14,500,000, are unsecured.

In addition to the unsecured loan from Beach Orangethorpe Hotel III, LLC, the Debtor believes it has other general unsecured debt totaling approximately $2,150,000.

---

[1] HVS Consulting & Valuation previously prepared an appraisal report for the Hotel, which reflected an "as is" value of $40,900,000 for the Hotel as of October 14, 2019. The Debtor and its Manager are in the process of obtaining an updated appraisal of the Hotel.

## II.

## EVENTS LEADING TO DEBTOR'S BANKRUPTCY FILING

In late 2019, Evertrust refused to issue the remaining $4 million of the Loan, claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to provide the final $4 million of the Loan, the Debtor was forced to cease construction activities.  However, the Debtor believes strongly that, had Evertrust funded the final $4 million as expected, construction of the Hotel would have been completed, as the Debtor believes that its contractors would have carried fifty percent of the cost overrun and the Debtor and its affiliates would have covered the remaining fifty percent of the overrun.

When Evertrust refused to issue the remaining $4 million of the Loan, the Debtor immediately and actively sought to refinance the Loan.  The Debtor began discussions with a new lender named Hall Structured Finance ("Hall") in the fall of 2019 and was ultimately able to reach an agreement with Hall for refinancing in the total sum of $42 million.  During the course of the Debtor's refinancing discussions with Hall, the Debtor kept Evertrust apprised of all developments, and even provided Evertrust with a copy of the loan commitment letter from Hall in early 2020.  The Debtor and Hall were on the verge of closing on the refinancing, with a target closing date of March 20, 2020, when local, county, and State officials issued lockdown orders as a result of the COVID-19 pandemic.  At that point, Hall put an indefinite hold on the closing of the refinancing with the Debtor.

As a result, the Debtor went back to Evertrust and, between March 2020 and December 2020, engaged in active forbearance negotiations with Evertrust to obtain a further extension of the Loan maturity date so that the Hotel could recover from the effects of the COVID-19 pandemic, and the Debtor could obtain refinancing or additional construction financing and ultimately recommence construction of the Hotel.

In the summer of 2020, while the Debtor and Evertrust were still engaged in forbearance negotiations, Evertrust commenced litigation against the guarantors of the Loan, Donald Chae and Min Chae, and recorded a Notice of Default against the Hotel.

Subsequently, in December 2020, Shady Bird purchased Evertrust's interests in the Loan at a significant discount, for a reported purchase price of approximately $19 million.  While the Debtor engaged in discussions and negotiations with Shady Bird to attempt to reach a consensual resolution of the parties' disputes, such discussions and negotiations were ultimately unsuccessful.

On February 8, 2021, Shady Bird filed a complaint against the Debtor in the Superior Court of the State of California for the County of Orange ("Superior Court") for (i) specific performance and appointment of a receiver, and (ii) waste, thereby commencing the Superior Court action bearing the case number 30-2021-01183489-CU-OR-CJC (the "State Court Action").  Shady Bird also took steps to immediately foreclose on the Hotel and issued a Notice of a Trustee's Sale for the Hotel to be held on March 1, 2021.

Shortly after filing its complaint to initiate the State Court Action, Shady Bird filed an ex parte application for an order appointing a receiver and other related relief.  On February 17, 2021, the Superior Court entered an order in the State Court Action appointing Bellann R. Raile as Receiver to, among other things, take possession of the Hotel and all goods, furniture, fixtures, and equipment attached and/or related to the Hotel.

As a result of the foregoing, the Debtor sought chapter 11 bankruptcy protection on the Petition Date (*i.e.*, February 26, 2021) in order to prevent the impending foreclosure of the Hotel, to regain possession of the Hotel and related assets and obtain refinancing or investments to enable the Debtor to complete construction of the Hotel, and to obtain a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion.

**III.**

**ISSUES WHICH WILL NEED TO BE ADDRESSED IN THE DEBTOR'S CASE
TO SUCCESSFULLY REORGANIZE**

On March 25, 2021, Shady Bird filed that certain *Motion Of Shady Bird Lending, LLC For Order Designating Chapter 11 Case As Single Asset Real Estate Case Pursuant To 11 U.S.C. §§ 101(51B) And 362(d)(3)* [Doc. No. 49] (the "SARE Motion"), pursuant to which

1    Shady Bird sought the entry of a Court order designating the Debtor's chapter 11 bankruptcy

2    case as a "single asset real estate" case pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3).  On

3    April 1, 2021, the Debtor filed its opposition to the SARE Motion [Doc. No. 64] and, on April 8,

4    2021, Shady Bird filed its reply to the Debtor's opposition to the SARE Motion [Doc. No. 73].

5    At the hearing on the SARE Motion held on April 15, 2021, the Court denied the SARE Motion.

6    Accordingly, the Debtor's bankruptcy case is not deemed to be a "single asset real estate" case.

7        As noted above, the Receiver was appointed by the Superior Court shortly before the

8    Petition Date.  On March 25, 2021, Shady Bird filed that certain *Motion Of Shady Bird Lending,*

9    *LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C.*

10   *§ 543* [Doc. No. 51] (the "Receiver Motion"), pursuant to which Shady Bird sought the entry of a

11   Court order excusing the Receiver from complying with the requirements of 11 U.S.C. § 543,

12   specifically, the requirement to deliver to the Debtor all property belonging to the Debtor over

13   which the Receiver currently has possession, custody or control.  On April 1, 2021, the Debtor

14   filed its opposition to the Receiver Motion [Doc. No. 65] and, on April 8, 2021, Shady Bird filed

15   its reply to the Debtor's opposition to the Receiver Motion [Doc. No. 72].  At the hearing on the

16   Receiver Motion held on April 15, 2021, the Court granted the Receiver Motion on an interim

17   basis only, to permit the Receiver to make certain repairs and perform certain work on the Hotel

18   with funds "gifted" to the Debtor's estate by Shady Bird (up to $200,000), pending a continued

19   hearing on the Receiver Motion to be held on June 3, 2021.

20       On April 1, 2021, Shady Bird filed that certain *Notice Of Motion And Motion For Relief*

21   *From The Automatic Stay Under 11 U.S.C. § 363 (Real Property)* [Doc. No. 62] (the "RFS

22   Motion"), pursuant to which Shady Bird seeks relief from the automatic stay so that it may

23   foreclose on the Hotel.  On April 8, 2021, the Debtor filed its opposition to the RFS Motion

24   [Doc. No. 74] and, on April 15, 2021, Shady Bird filed its reply to the Debtor's opposition to the

25   RFS Motion [Doc. No. 81].  A hearing on the RFS Motion is set for April 22, 2021 at 10:00 a.m.

26   If the Court grants the RFS Motion, and Shady Bird is permitted to foreclose upon the Hotel and

27   the Debtor's other assets, there will be no reason for this bankruptcy case to proceed.  However,

28

if the Court denies the RFS Motion, the Debtor will proceed with its efforts to obtain debtor-in-possession, takeout, or exit financing so that it may complete the construction of the Hotel and bring the Hotel into operation, and to propose and seek confirmation of a plan of reorganization which restructures its debts in an orderly fashion.

The Debtor has been, and continues to be, engaged in active discussions with numerous prospective lenders regarding the terms for debtor-in-possession and/or exit financing, which will provide the Debtor with the funding necessary to complete the construction of the Hotel, service debt, operate the Hotel until operations can be stabilized, and potentially fund a feasible plan of reorganization in the Debtor's case. The Debtor believes that it can successfully complete the construction of the Hotel and satisfy valid mechanic's liens recorded against the Hotel if the Debtor obtains additional financing of approximately $12,000,000 - $16,000,000. The Debtor also believes that the construction of the Hotel can be completed and a certificate of occupancy obtained within 9-12 months from the date of restarting construction. If the Debtor ultimately proceeds with debtor-in-possession financing (instead of exit financing), the Debtor will file a motion for Court approval of such financing as soon as it is in a position to do so. If the Debtor proceeds with exit financing, the Debtor will likely propose a plan of reorganization, in conjunction with its proposed lender and plan supporter, which provides for the restructuring and/or repayment of the Debtor's secured debt, and provides for a recovery to the Debtor's general unsecured creditors who would otherwise receive nothing.

Although the Debtor has had only preliminary discussions with certain of the EB-5 Lenders, the Debtor is optimistic that the secured EB-5 Lenders will support the Debtor's efforts to restructure its debts and bring the Hotel into operation and, to that end, may be willing to convert their secured claims into equity in the reorganized debtor entity.

## IV.

## POST-PETITION ADMINISTRATION AND CASH COLLATERAL USE

As of the Petition Date, the Debtor had cash totaling approximately $63,000 in bank accounts with Evertrust and Preferred Bank. The Debtor took steps immediately after the

Petition Date to close its pre-petition bank accounts at Evertrust and Preferred Bank, and to withdraw all funds contained in those pre-petition accounts so that such funds could be deposited into the Debtor's newly-established debtor-in-possession bank accounts at Axos Bank.

All of the cash that the Debtor was holding as of the Petition Date was from pre-petition advances made to the Debtor by its non-member Manager, M+D Properties, a California corporation ("M+D"). Although none of the Debtor's cash was derived from the rental or other use of the Hotel (or any of the Debtor's other assets), and therefore none of the cash that the Debtor was holding as of the Petition Date constituted Shady Bird's property or collateral, in an abundance of caution, the Debtor filed a motion seeking Court authority to use its cash on hand to pay expenses related to the maintenance and preservation of the Hotel. Specifically, on March 12, 2021, the Debtor filed the *Debtor's Notice Of Motion And Motion For Entry Of An Order: (A) Requiring Turnover Of Estate Cash By Evertrust Bank; (B) Authorizing Debtor To Use Cash Collateral; And (C) Authorizing Debtor To Obtain Post-Petition Financing From M+D Properties On An Unsecured Basis* [Doc. No. 21] (the "CC/Financing Motion"). Pursuant to the CC/Financing Motion, the Debtor sought the entry of a Court order (i) requiring Evertrust to turn over and deliver to the Debtor cash held in the Debtor's pre-petition bank accounts at Evertrust (as Shady Bird would not consent to the turnover of such cash until after the Debtor filed the CC/Financing Motion); (ii) authorizing the Debtor to use cash collateral in accordance with the Debtor's proposed 13-week operating budget (the "Budget"); and (iii) authorizing the Debtor to obtain post-petition unsecured financing up to $100,000 (the "DIP Loan") from the Debtor's manager, M+D. The Budget provides for the payment of expenses critical to the maintenance and preservation of the Hotel, including insurance premiums, utility expenses, post-petition utility deposits, and real property taxes.

On March 23, 2021, the Court entered an order granting the CC/Financing Motion on an interim basis, pending a final hearing scheduled on May 6, 2021, subject to certain minor modifications agreed to by the Debtor and set forth in such order [Doc. No. 46] (the "Interim Order"). The final hearing on the CC/Financing Motion will be held on May 6, 2021 at 10:30

1    a.m. (on the same date and at the same time as the chapter 11 status conference in this case).

2         The Debtor has paid the expenses set forth in the Budget, including secured real property

3    taxes which came due in April, 2021, in accordance with the terms of the Interim Order.

4    **V.**

5    **COMPLIANCE WITH REPORTING REQUIREMENTS**

6         The Debtor believe that it is in substantial compliance with all of its duties under 11

7    U.S.C. §§ 521, 1106 and 1107, and all applicable guidelines of the Office of the United States

8    Trustee ("OUST").

9         The Debtor filed its 7-Day Package with the OUST on a timely basis on March 5, 2021.

10   On March 17, 2021, the Debtor filed a supplement to its 7-Day Package to include a recorded

11   copy of its Voluntary Petition.

12        The Debtor filed its Schedules and Statement of Financial Affairs on a timely basis on

13   March 12, 2021.

14        On March 15, 2021, the Debtor attended the Initial Debtor Interview conducted by the

15   OUST.  Thereafter, on April 9, 2021, the Debtor attended its Section 341(a) meeting of creditors,

16   which was also conducted by the OUST.

17        The Debtor has filed its first monthly operating report (covering the post-petition period

18   of February 26-28, 2021) with the Court, and anticipates filing its monthly operating report for

19   the month of March, 2021 shortly.

20   **VI.**

21   **EMPLOYMENT OF PROFESSIONALS**

22        On March 10, 2021, the Debtor filed its application to employ Levene, Neale, Bender,

23   Yoo & Brill L.L.P. ("LNBYB") as its bankruptcy counsel [Doc. No. 16].  The Court entered an

24   order approving the Debtor's application to employ LNBYB as its bankruptcy counsel on March

25   31, 2021 [Doc. No. 61].

26

27

28

The Debtor does not intend to employ any other professionals at this time. However, should the foregoing change, the Debtor will promptly file applications to employ such professionals with the Court.

**VII.**

**OTHER INFORMATION REQUIRED BY STATUS CONFERENCE ORDER**

**A.    Proposed Deadlines For Filing Proofs Of Claim And Objections To Claims.**

The Debtor respectfully requests that the Court establish a deadline for creditors to file proofs of claim in the Debtor's bankruptcy case ("Claims Bar Date") so that the Debtor may understand the total amount and types of claims that its creditors are asserting, and which claims will ultimately need to be accounted for in any plan of reorganization formulated and filed by the Debtor in this case. The Debtor requests that the Court establish Friday, July 9, 2021 as the Claims Bar Date in this case so that the Debtor may provide at least sixty (60) days' written notice of the Claims Bar Date to all creditors and parties in interest.

The Debtor anticipates that its plan of reorganization will provide for a deadline by which objections to claims must be filed and, therefore, requests that the Court not establish a deadline for filing objections to claims at this time. However, if the Court requires that such a deadline be set now, the Debtor respectfully requests that the deadline be set approximately 180 days after the Claims Bar Date.

**B.    Proposed Deadline For Filing Plan And Disclosure Statement.**

Although the Debtor hopes to be in a position to file a plan of reorganization and disclosure statement within its current plan filing exclusivity period (*i.e.*, by June 25, 2021), in the event that the Debtor determines it requires additional time to do so (which will be the case if the Debtor files a motion seeking Court approval of debtor-in-possession financing in the meantime), the Debtor will file a motion seeking the entry of a Court order extending the exclusivity periods for the Debtor to file and solicit a plan of reorganization pursuant to 11 U.S.C. § 1121(d).

1    Based on the foregoing, the Debtor respectfully requests that the Court not set deadlines for

2    the filing of a disclosure statement and plan of reorganization at this time, or alternatively, requests

3    that the Court establish deadlines for doing so no earlier than September 30, 2021.

4    **C.      Significant Unexpired Leases And Executory Contracts.**

5    The Debtor is the lessee under the Ground Lease with its affiliate, The Source at Beach,

6    LLC.  The Ground Lease is for a term of 99 years, with approximately 93 years of such term

7    remaining, and relates to the real property (the "dirt") upon which the Hotel has been

8    constructed.  The Ground Lease remains fully effective, and the Debtor intends to assume the

9    Ground Lease through its bankruptcy case.

10    The Debtor is not a party to any real property leases other than the Ground Lease.

11    As reflected in the Schedules, the Debtor is a party to a number of construction related

12    services agreements as well as a third-party hotel management agreement.  It is possible that

13    some of these agreements have expired by their own terms or have been terminated by the

14    counterparties to such agreements but, generally, such agreements have been held in abeyance

15    since Hotel construction activities ceased in late 2019.

16    Dated:  April 21, 2021                THE SOURCE HOTEL, LLC

17

18

19                                        By:_____

20                                            RON BENDER
                                            JULIET Y. OH
21                                            LEVENE, NEALE, BENDER, YOO
                                                & BRILL L.L.P.
22                                            Attorneys for Chapter 11 Debtor and
                                            Debtor-in-Possession

23

24

25

26

27

28

### DECLARATION OF DONALD CHAE

I, Donald Chae, hereby declare as follows:

1.      I am the Manager and a member of DMC Investment Holdings, LLC, which is the sole member of The Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-possession herein (the "Debtor"), and I am therefore familiar with the business operations and financial records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.      I make this declaration in support of the Debtor's status report (the "Status Report") to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Status Report.

3.      The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 26, 2021 (the "Petition Date").  The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession.

4.      Since at least 2014, Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which upon completion will include conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services.  The Hotel is part of a larger 12.8-acre mixed-use development project (the "Master Development"), which includes a 400,000 square-foot retail center and a 50,000 square-foot seven-story office building which were completed in 2016.  The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property (the "Ground Lease") with the Debtor's affiliate, The Source at Beach, LLC.

5.      The Ground Lease is for a term of 99 years, with approximately 93 years of such term remaining, and relates to the real property (the "dirt") upon which the Hotel has been constructed.  The Ground Lease remains fully effective, and the Debtor intends to assume the Ground Lease through its bankruptcy case.

6.      Construction of the Hotel began in 2016.  To finance the construction of the Hotel, on May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from Evertrust Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling $35.5 million.  The Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel and the Debtor's leasehold interest in the real property that is the subject of the Ground Lease (the "Leasehold Interest").  The original maturity date for the Loan was December 1, 2017, but was extended to November 1, 2019 pursuant to written extension agreements entered into by the parties.

7.      Through October 2019, approximately 85% of the Hotel construction had been completed, including: substantial completion of the core and shell, exterior painting, porte cochère, street lighting, ceiling framing, kitchen framing and glass block installation, food storages, all glass storefronts, electrical wiring and switchgear, guestroom flooring, ceiling fixtures, pool bar canopy structure, deck drains, window washing system, roof membrane, roof ductwork and HVAC vibration installation; nearly complete installation of bathroom fixtures (95%), acoustic ceiling system (80%), HVAC electrical connections (90%), piping for HVAC and plumbing equipment (95%), and rooftop ductwork (99%).  In addition, substantial materials have been procured and/or fabricated and are ready for installation pending completion of other items, such as first and second floor flooring, corridor carpeting, millwork (wall and ceiling panels, pool bar), passenger elevators, fire sprinklers, egress and accent lighting, pool equipment, guest room doors, locks and closures, bathroom fixtures, and rooftop HVAC equipment.

8.      The approximately 15% of the Hotel construction which remains outstanding consists of mostly "finish work" such as the installation of flooring and carpeting, lighting, appliances, trade fixtures, furniture, furnishings and equipment already purchased by the Debtor (collectively, "FF&E").

9.      The Debtor's primary assets consist of the Hotel, the Leasehold Interest, and a substantial amount of FF&E.  I believe that the current value of the Hotel in "as is" condition is at least $50,000,000 and that the fair market value of the Hotel upon completion will be at least

$60,000,000.  HVS Consulting & Valuation previously prepared an appraisal report for the Hotel, which reflected an "as is" value of $40,900,000 for the Hotel as of October 14, 2019.  The Debtor and its Manager are in the process of obtaining an updated appraisal of the Hotel.

10.     I believe that the total value of the Debtor's FF&E (calculated at cost, excluding fabrication labor costs) is approximately $2,700,000.

11.     The Debtor's primary secured creditor is Shady Bird Lending, LLC ("Shady Bird"), who I understand acquired the Loan from Evertrust in December, 2020.  Shady Bird contends that the outstanding balance of the Loan was $30,948,839.27 as of March 1, 2021.

12.     I understand and believe that there are a number of subcontractors that have recorded mechanics' liens against the Debtor and/or Hotel.  As reflected in the Debtor's Schedules of Assets and Liabilities filed in this case (the "Schedules"), I believe that the total amount of the mechanics' liens recorded against the Debtor and/or Hotel is approximately $2,900,000.  However, some of these recorded mechanics' liens appear to have expired or have not been properly perfected, or are otherwise disputed by the Debtor.

13.     The Debtor also received three tranches of EB-5 loans from Beach Orangethorpe Hotel, LLC, Beach Orangethorpe Hotel II, LLC, and Beach Orangethorpe Hotel III, LLC (collectively, the "EB-5 Investors," or individually, an "EB-5 Investor").  The Debtor's obligations under the loans from two of the EB-5 Investors (i.e., Beach Orangethorpe Hotel, LLC and Beach Orangethorpe Hotel II, LLC), in the total principal sum of $21,500,000, are secured by junior liens against the Hotel and the Leasehold Interest.  The Debtor's obligations under the loan from the third EB-5 Investor, Beach Orangethorpe Hotel III, LLC, in the principal sum of $14,500,000, are unsecured.

14.     In addition to the unsecured loan from Beach Orangethorpe Hotel III, LLC, I believe that the debtor has other general unsecured debt totaling approximately $2,150,000.

15.     In late 2019, Evertrust refused to issue the remaining $4 million of the Loan, claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to provide the final $4 million of the Loan, the Debtor was forced to cease construction activities.

However, I believe strongly that, had Evertrust funded the final $4 million as expected, construction of the Hotel would have been completed, as I believe that the Debtor's contractors would have carried fifty percent of the cost overrun and the Debtor and its affiliates would have covered the remaining fifty percent of the overrun.

16.     When Evertrust refused to issue the remaining $4 million of the Loan, the Debtor immediately and actively sought to refinance the Loan.  The Debtor began discussions with a new lender named Hall Structured Finance ("Hall") in the fall of 2019 and was ultimately able to reach an agreement with Hall for refinancing in the total sum of $42 million.  During the course of the Debtor's refinancing discussions with Hall, the Debtor kept Evertrust apprised of all developments, and even provided Evertrust with a copy of the loan commitment letter from Hall in early 2020. The Debtor and Hall were on the verge of closing on the refinancing, with a target closing date of March 20, 2020, when local, county, and State officials issued lockdown orders as a result of the COVID-19 pandemic.  At that point, Hall put an indefinite hold on the closing of the refinancing with the Debtor.

17.     As a result, the Debtor went back to Evertrust and, between March 2020 and December 2020, engaged in active forbearance negotiations with Evertrust to obtain a further extension of the Loan maturity date so that the Hotel could recover from the effects of the COVID-19 pandemic, and the Debtor could obtain refinancing or additional construction financing and ultimately recommence construction of the Hotel.

18.     In the summer of 2020, while the Debtor and Evertrust were still engaged in forbearance negotiations, Evertrust commenced litigation against the guarantors of the Loan, Donald Chae and Min Chae, and recorded a Notice of Default against the Hotel.

19.     Subsequently, in December 2020, Shady Bird purchased Evertrust's interests in the Loan at a significant discount, for a reported purchase price of approximately $19 million.  While the Debtor engaged in discussions and negotiations with Shady Bird to attempt to reach a consensual resolution of the parties' disputes, such discussions and negotiations were ultimately unsuccessful.

20.     On February 8, 2021, Shady Bird filed a complaint against the Debtor in the Superior Court of the State of California for the County of Orange ("Superior Court") for (i) specific performance and appointment of a receiver, and (ii) waste, thereby commencing the Superior Court action bearing the case number 30-2021-01183489-CU-OR-CJC (the "State Court Action"). Shady Bird also took steps to immediately foreclose on the Hotel and issued a Notice of a Trustee's Sale for the Hotel to be held on March 1, 2021.

21.     Shortly after filing its complaint to initiate the State Court Action, Shady Bird filed an ex parte application for an order appointing a receiver and other related relief.  On February 17, 2021, the Superior Court entered an order in the State Court Action appointing Bellann R. Raile as Receiver to, among other things, take possession of the Hotel and all goods, furniture, fixtures, and equipment attached and/or related to the Hotel.

22.     As a result of the foregoing, the Debtor sought chapter 11 bankruptcy protection on the Petition Date (*i.e.*, February 26, 2021) in order to prevent the impending foreclosure of the Hotel, to regain possession of the Hotel and related assets and obtain refinancing or investments to enable the Debtor to complete construction of the Hotel, and to obtain a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion.

23.     Currently pending before the Court in the Debtor's bankruptcy case is a motion filed by Shady bird for relief from the automatic stay so that Shady Bird may proceed with the foreclosure of the Hotel (the "RFS Motion").  The Debtor has filed an opposition to the RFS Motion.  A hearing on the RFS Motion is set for April 22, 2021 at 10:00 a.m.  If the Court grants the RFS Motion, and Shady Bird is permitted to foreclose upon the Hotel and the Debtor's other assets, I do not believe there is any reason for the Debtor's bankruptcy case to proceed.  However, if the Court denies the RFS Motion, the Debtor will proceed with its efforts to obtain debtor-in-possession, takeout, or exit financing so that it may complete the construction of the Hotel and bring the Hotel into operation, and to propose and seek confirmation of a plan of reorganization which restructures its debts in an orderly fashion.

24.    The Debtor has been, and continues to be, engaged in active discussions with numerous prospective lenders regarding the terms for debtor-in-possession and/or exit financing, which will provide the Debtor with the funding necessary to complete the construction of the Hotel, service debt, operate the Hotel until operations can be stabilized, and potentially fund a feasible plan of reorganization in the Debtor's case.

25.    Based upon my 30 years plus of real estate development, construction, and management experience, I believe that the Debtor can successfully complete the construction of the Hotel and satisfy valid mechanic's liens recorded against the Hotel if the Debtor obtains additional financing of approximately $12,000,000 - $16,000,000.  I also believe that the construction of the Hotel can be completed and a certificate of occupancy obtained within 9-12 months from the date of restarting construction.  If the Debtor ultimately proceeds with debtor-in-possession financing (instead of exit financing), the Debtor will file a motion for Court approval of such financing as soon as it is in a position to do so.  If the Debtor proceeds with exit financing, the Debtor will likely propose a plan of reorganization, in conjunction with its proposed lender and plan supporter, which provides for the restructuring and/or repayment of the Debtor's secured debt, and provides for a recovery to the Debtor's general unsecured creditors who would otherwise receive nothing.

26.    Although the Debtor has had only preliminary discussions with certain of the EB-5 Lenders, I am optimistic that the secured EB-5 Lenders will support the Debtor's efforts to restructure its debts and bring the Hotel into operation and, to that end, may be willing to convert their secured claims into equity in the reorganized debtor entity.

27.    As of the Petition Date, the Debtor had cash totaling approximately $63,000 in bank accounts with Evertrust and Preferred Bank.  The Debtor took steps immediately after the Petition Date to close its pre-petition bank accounts at Evertrust and Preferred Bank, and to withdraw all funds contained in those pre-petition accounts so that such funds could be deposited into the Debtor's newly-established debtor-in-possession bank accounts at Axos Bank.

28.    All of the cash that the Debtor was holding as of the Petition Date was from pre-petition advances made to the Debtor by its non-member Manager, M+D Properties, a California corporation ("M+D"), of which I am also the principal.  Although none of the Debtor's cash was derived from the rental or other use of the Hotel (or any of the Debtor's other assets), and therefore none of the cash that the Debtor was holding as of the Petition Date constituted Shady Bird's property or collateral, in an abundance of caution, the Debtor filed a motion seeking Court authority to use its cash on hand to pay expenses related to the maintenance and preservation of the Hotel.  Specifically, on March 12, 2021, the Debtor filed its motion the ("CC/Financing Motion") seeking the entry of a Court order (i) requiring Evertrust to turn over and deliver to the Debtor cash held in the Debtor's pre-petition bank accounts at Evertrust (as Shady Bird would not consent to the turnover of such cash until after the Debtor filed the CC/Financing Motion); (ii) authorizing the Debtor to use cash collateral in accordance with the Debtor's proposed 13-week operating budget (the "Budget"); and (iii) authorizing the Debtor to obtain post-petition unsecured financing up to $100,000 (the "DIP Loan") from the Debtor's manager, M+D.  The Budget provides for the payment of expenses critical to the maintenance and preservation of the Hotel, including insurance premiums, utility expenses, post-petition utility deposits, and real property taxes.

29.    I am advised and believe that, on March 23, 2021, the Court entered an order granting the CC/Financing Motion on an interim basis, pending a final hearing scheduled on May 6, 2021, subject to certain minor modifications agreed to by the Debtor and set forth in such order (the "Interim Order").  I am further advised and believe that the final hearing on the CC/Financing Motion will be held on May 6, 2021 at 10:30 a.m. (on the same date and at the same time as the chapter 11 status conference in the Debtor's case).

30.    The Debtor has paid the expenses set forth in the Budget, including secured real property taxes which came due in April, 2021, in accordance with the terms of the Interim Order

31.    I believe that the Debtor is in substantial compliance with all of its duties under the Bankruptcy Code and all applicable guidelines of the Office of the United States Trustee ("OUST").

32.    The Debtor filed its 7-Day Package with the OUST on a timely basis on March 5, 2021.  On March 17, 2021, the Debtor filed a supplement to its 7-Day Package to include a recorded copy of its Voluntary Petition.

33.    The Debtor filed its Schedules and Statement of Financial Affairs on a timely basis on March 12, 2021.

34.    On March 15, 2021, I, on behalf of the Debtor, attended the Initial Debtor Interview conducted by the OUST.  Thereafter, on April 9, 2021, I, on behalf of the Debtor, attended the Debtor's Section 341(a) meeting of creditors.

35.    The Debtor has filed its first monthly operating report (covering the post-petition period of February 26-28, 2021) and its monthly operating report for the month of March, 2021.

36.    The Debtor has obtained Court authority to employ Levene, Neale, Bender, Yoo & Brill L.L.P. as its bankruptcy counsel in this case.

37.    The Debtor does not intend to employ any other professionals at this time. However, should the foregoing change, the Debtor will promptly file applications to employ such professionals with the Court.

38.    The Debtor is not a party to any real property leases other than the Ground Lease.

39.    As reflected in the Schedules, the Debtor is a party to a number of construction related services agreements as well as a third-party hotel management agreement.  It is possible that some of these agreements have expired by their own terms or have been terminated by the counterparties to such agreements but, generally, such agreements have been held in abeyance since Hotel construction activities ceased in late 2019.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of April, 2021, at Buena Park, California.

_____
DONALD CHAE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S CHAPTER 11 STATUS REPORT; DECLARATION OF DONALD CHAE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 22, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com**
- **Amir Gamliel    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com**
- **Nancy S Goldenberg    nancy.goldenberg@usdoj.gov**
- **Peter F Jazayeri    peter@jaz-law.com**
- **Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com**
- **Grant A Nigolian    grant@gnpclaw.com, process@gnpclaw.com;grant.nigolian@gmail.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ho-El Park    hpark@hparklaw.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On **April 22, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 22, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 22, 2021 | Stephanie Reichert | */s/ Stephanie Reichert* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

The Source Hotel, LLC
OUST, Secured, Top 20, RSN

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

**Secured Creditors:**

3D Design - Millwork
8152 Indianapolis Ave.
Huntington Beach, CA 92646

Aragon Construction, Inc.
5440 Arrow Highway
Montclair, CA 91763

Beach Orangethorpe II, LLC
P.O. Box 489
Buena Park, CA 90621

Beach Orangethorpe III, LLC
P.O. Box 489
Buena Park, CA 90621

Beach Orangethorpe, LLC
P.O. Box 489
Buena Park, CA 90621

Beachamp Distributing Co.
1911 South Santa Fe Avenue
Compton, CA 90221

Best Quality Painting
818 N. Pacific Ave., #C
Glendale, CA 91203

Certified Tile
14557 Calvert St.
Van Nuys, CA 91411

Evergreen Electric Construction
629 Grove View Lane
La Canada, CA 91011

Iron Mechanical
721 North B Street
Suite 100
Sacramento, CA 95811

KS Steel Corp.
1748 Industrial Way
Los Angeles, CA 90023

Nemo & Rami
1930 W. Holt Ave.
Pomona, CA 91768

Northstar
404 North Berry Street
Brea, CA 92821-3104

Pan Pacific
18250 Euclid Street
Fountain Valley, CA 92708

PDG Wallcoverings
26492 Via Juanita
Mission Viejo, CA 92691

Prime Concrete Coatings
6127 James Alan St.
Cypress, CA 90630

Resco Electric Inc.
2431 W. Washington Blvd. Suite B
Los Angeles, CA 90018

Retrolock Corp
17915 Railroad Street
City of Insdustry, CA 91748

Salamander Fire Protection, Inc
6103 Tyrone Street
Van Nuys, CA 91401

Shady Bird Lending, LLC
c/o Law Offices of Ronald Richards
P.O. Box 11480
Beverly Hills, CA 90213

Solid Construction
883 Crenshaw Blvd.
Los Angeles, CA 90005

Sunbelt Controls, Inc.
888 E. Walnut Street
Pasadena, CA 91101

Grant Nigolian, P.C.
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626

Hunt Ortmann Palffy Nieves et al.
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101-1807

Law Office of Ho-El Park, P.C.
333 City Blvd. West, Suite 1700
Orange, CA 92868

Law Office of Michael N. Berke
25001 The Old Road
Santa Clara, CA 91381

Law Offices of Dennis G. Cosso
345 Oxford Drive
Arcadia, CA 91007

Porter Law Group, Inc.
7801 Folsom Blvd., Suite 101
Sacramento, CA 95826

Robinson & Robinson, LLP
2301 Dupont Drive, Sute 530
Irvine, CA 92612-7502

Shady Bird Lending, LLC
c/o Law Offices of Geoffrey Long
1601 N. Sepulveda Blvd., No. 729
Manhattan Beach, CA 90266

Splinter & Thai, LLP
25124 Narbonne Ave., Suite 106
Lomita, CA 90717-2140

**Top 20 Unsecured Creditors:**

Newgens, Inc.
14241 Foster Rd.
La Mirada, CA 90638

Cabrillo Hoist
P.O. Box 3179
Rancho Cucamonga, CA 91729

WESCO Distribution Inc.
6251 Knott Ave.
Buena Park, CA 90620

Harbor All Glass & Mirror, Inc.
1926 Placentia Ave.
Costa Mesa, CA 92627

Diablo Consulting
13200 Crossroads Parkway N
Ste. 115
City of Industry, CA 91746

Ace Tek Roofing Co.
747 S. Ardmore Ave., Suite 405
Los Angeles, CA 90005

Morrow Meadows
231 Benton Court
City of Industry, CA 91789

Chefs Toys
18430 Pacific Street
Fountain Valley, CA 92708

Stumbaugh & Associates, Inc.
3303 N. San Fernando Blvd
Burbank, CA 91504

HBA Procurement, Inc.
3216 Nebraska Ave.
Santa Monica, CA 90404

OJ Insulation LP
600 S Vincent Ave.
Azusa, CA 91702

DKY Architects
15375 Barranca Pkwy.
Suite A-210
Irivne, CA 92618

Master Glass
2225 W. Pico Blvd, Unit C
Los Angeles, CA 90006

Universal Flooring Systems
15573 Commerce Lane
Huntington Beach, CA 92649

L2 Specialties
3613 W. Macarthur Blvd., #611
Santa Ana, CA 92704

Ficcadenti Waggoner
16969 Von Karman Avenue
Suite 240
Irivne, CA 92606

Retrolock Corp
17915 Railroad Street
City of Industry, CA 91748

American Engineering Laboratories Inc.
PO Box 1816
Whittier, CA 90609