1  RON BENDER (SBN 143364)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email:  RB@LNBYB.COM; JYO@LNBYB.COM

6  Attorneys for Chapter 11 Debtor and
7  Debtor-in-Possession

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                 **SANTA ANA DIVISION**

11

12

13  In re:                                    Case No.: 8:21-bk-10525-ES

14  THE SOURCE HOTEL, LLC, a                  Chapter 11
15  California limited liability company,
                                             **NOTICE OF MOTION AND MOTION FOR**
16        Debtor and Debtor in  Possession.  **ORDER      EXTENDING      DEBTOR'S**
                                             **EXCLUSIVE PERIODS TO FILE PLAN OF**
17                                           **REORGANIZATION     AND     OBTAIN**
                                             **ACCEPTANCES              THEREOF;**
18                                           **MEMORANDUM     OF   POINTS    AND**
                                             **AUTHORITIES;    DECLARATION    OF**
19                                           **DONALD CHAE IN SUPPORT THEREOF**
20
                                             Hearing:
21                                           Date:     June 10, 2021
                                             Time:     10:30 a.m.
22                                           Place:    ZoomGov
23

24

25

26

27

28

1

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.................................................5

I.      STATEMENT OF FACTS .............................................................................5

        A.      Background.................................................................................5

        B.      Events Leading To Debtor's Bankruptcy Filing .............................7

        C.      Description Of The Debtor's Assets And Debts .............................9

        D.      Current Posture Of The Debtor's Bankruptcy Case.....................10

        E.      The Need For An Extension Of The Debtor's Exclusive Periods To File
                A Plan And Obtain Acceptances Thereof .....................................14

II.     DISCUSSION ...........................................................................................15

        A.      The Court Has Authority To Extend The Debtor's Exclusive Periods
                To File A Plan Of Reorganization And Obtain Acceptances Thereof .....15

                1.      The size and complexity of the case...................................17

                2.      The necessity of sufficient time to permit the debtor to
                        negotiate a plan of reorganization and prepare adequate
                        information ......................................................................17

                3.      The existence of good faith progress toward reorganization .........18

                4.      The fact that the debtor is paying its bills as they become due......18

                5.      Whether the debtor has demonstrated reasonable prospects
                        for filing a viable plan.....................................................19

                6.      Whether the debtor has made progress in negotiations with its
                        creditors .........................................................................19

                7.      The amount of time which has elapsed in the case .........................20

                8.      Whether the debtor is seeking an extension of exclusivity in
                        order to pressure creditors to submit to the debtor's
                        reorganization demands ..................................................20

                9.      Whether an unresolved contingency exists.......................20

**B.**      **Progress Towards Reorganization And Proper Motives Warrant An
Extension Of The Debtor's Plan Exclusivity Periods**................................. 21

**III.**     **CONCLUSION**.......................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re AmKo Plastics, Inc.*,
    197 B.R. 74 (Bankr. S.D. Ohio 1996)..................................................................16

*In re Dow Corning Corp.*,
    208 B.R. 661 (Bankr. E.D. Mich. 1997) ................................................16, 17, 21

*In re Gibson & Cushman Dredging Corp.*,
    101 B.R. 405 (Bankr. E.D.N.Y. 1989) ...........................................................16

*In re Pine Run Trust, Inc.*,
    67 B.R. 432 .............................................................................................16, 20

*In re Public Service Company of New Hampshire*,
    88 B.R. 521 (Bankr. D.N.H. 1988) ...............................................................16

*In re Trainer's, Inc.*,
    17 B.R. 246 (Bankr. E.D. Pa. 1982) ..............................................................21

**Federal Statutes**

11 U.S.C. § 101 et seq...................................................................... passim

11 U.S.C. § 101(51B) ................................................................................11

11 U.S.C. § 341(a) ....................................................................................10

11 U.S.C. § 362(d)(3) ...............................................................................11

11 U.S.C. § 363 ...................................................................................12, 13

11 U.S.C. § 543 .....................................................................................9, 12

11 U.S.C. § 1112(b) ...................................................................................2

11 U.S.C. § 1121 .................................................................................3, 16

11 U.S.C. § 1121(b) ..................................................................................15

11 U.S.C. § 1121(c) ..................................................................................15

11 U.S.C. § 1121(d) ........................................................................2, 14, 15

11 U.S.C. § 1107 .........................................................................................5

11 U.S.C. § 1108 ...................................................................................................................5

**Other Authorities**

Fed.R.Bankr.P. 9013-1 .........................................................................................................3

Fed.R.Evid. 201 ........................................................................................6, 9, 10, 18

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) .......................................16

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL KNOWN SECURED CREDITORS, TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

**PLEASE TAKE NOTICE** that a hearing will be held on June 10, 2021 at 10:30 a.m., before the Honorable Erithe A. Smith, United States Bankruptcy Judge for the Central District of California, Santa Ana Division, in Courtroom "5A" located at 411 West Fourth Street, Santa Ana, California 92701, for the Court to consider the motion (the "Motion") filed by The Source Hotel, LLC, a California limited liability company and the Chapter 11 debtor and debtor-in-possession herein (the "Debtor"), pursuant to 11 U.S.C. § 1112(b), for the entry of an order extending the Debtor's exclusive periods to file a plan of reorganization ("Plan") and obtain acceptances thereof pursuant to 11 U.S.C. § 1121(d). The complete relief requested and the bases for this Motion are set forth in the Memorandum of Points and Authorities and the Declaration of Donald Chae annexed hereto (the "Chae Declaration").

The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") on February 26, 2021 (the "Petition Date"). Since at least 2014, the Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which upon completion will include conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services. The construction of the Hotel is approximately 85% complete, with the approximately 15% of construction which remains outstanding consisting of mostly "finish work" such as the installation of flooring and carpeting, lighting, appliances, trade fixtures, furniture, furnishings and equipment already purchased by the Debtor.

The Debtor's exclusive periods to file a Plan and obtain acceptances thereof under Bankruptcy Code § 1121(d) will expire on June 26, 2021 and August 25, 2021, respectively. By this Motion, and for the reasons set forth in the Memorandum of Points and Authorities annexed hereto, the Debtor seeks an order extending the exclusive periods to file a Plan and obtain

acceptances thereof for approximately 90 days, to and including September 27, 2021 and November 29, 2021, respectively. The Debtor seeks the foregoing extensions without prejudice to its right to seek further extensions of its exclusivity periods.

The Motion is based upon 11 U.S.C. § 1121, Local Bankruptcy Rule 9013-1, this Notice of Motion and Motion, the attached Memorandum of Points and Authorities and the Chae Declaration, the entire record in the Debtor's bankruptcy case, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to the Motion must be in writing, filed with the Court and served upon the United States Trustee as well as counsel for the Debtor at the address set forth in the upper left-hand corner of the first page of this Notice and Motion by no later than fourteen (14) days before the date of the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(h), the failure to file and serve a timely opposition to the Motion may be deemed by the Court to constitute consent to the granting of the relief requested in the Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(1)    granting the Motion in its entirety;

(2)    extending the Debtor's exclusive periods to file a Plan and obtain acceptances thereof for approximately 90 days, to and including September 27, 2021 and November 29, 2021, respectively, without prejudice to the Debtor's right to seek further extensions of such periods; and

///

///

///

///

///

(3)    granting such further relief as the Court deems just and proper.

Dated:  May 19, 2021                    THE SOURCE HOTEL, LLC

By: _____
       RON BENDER
       JULIET Y. OH
       LEVENE, NEALE, BENDER, YOO
         & BRILL L.L.P.
       Attorneys for Chapter 11 Debtor and
       Debtor-in-Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

**A.     Background.**

1.      On February 26, 2021 (the "Petition Date"), The Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor is a limited liability company that was organized in November, 2012 in the State of California.  DMC Investment Holdings, LLC ("DMC") is a member of the Debtor which holds 100 units (or 100%) of Series 1 membership units in the Debtor.  Donald Chae and Min S. Chae, who are brothers, are the members and principals of DMC.  In addition to the Series 1 membership units held by DMC, an EB-5 investor entity called Beach Orangethorpe Hotel III, LLC ("BOH3") holds 29 units (or 100%) of Series 2 preferred membership units in the Debtor.

3.      Since at least 2014, the Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which upon completion will include conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services.  The Hotel is part of a larger 12.8-acre mixed-use development project (the "Master Development"), which includes a 400,000 square-foot retail center and a 50,000 square-foot seven-story office building which were completed in 2016.  The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property (the "Ground Lease") with the Debtor's affiliate, The Source at Beach, LLC.

4.      Construction of the Hotel began in 2016.  To finance the construction of the Hotel, on May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from Evertrust Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling

$35.5 million, including the EB-5 investment by BOH3 in the sum of $14,500,000, for which BOH3 acquired preferred membership units in the Debtor.  The Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel and the Debtor's leasehold interest in the real property that is the subject of the Ground Lease (the "Leasehold Interest"), pursuant to the parties' Commercial Security Agreement and the Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Leasehold) recorded in the County of Orange on June 3, 2016 as Document No. 2016000252446 (the "Deed of Trust").[1]  The original maturity date for the Loan was December 1, 2017, but was extended to November 1, 2019 pursuant to written extension agreements entered into by the parties.

5.      Through October 2019, approximately 85% of the Hotel construction had been completed, including: substantial completion of the core and shell, exterior painting, porte cochère, street lighting, ceiling framing, kitchen framing and glass block installation, food storages, all glass storefronts, electrical wiring and switchgear, guestroom flooring, ceiling fixtures, pool bar canopy structure, deck drains, window washing system, roof membrane, roof ductwork and HVAC vibration installation; nearly complete installation of bathroom fixtures (95%), acoustic ceiling system (80%), HVAC electrical connections (90%), piping for HVAC and plumbing equipment (95%), and rooftop ductwork (99%).  In addition, substantial materials have been procured and/or fabricated and are ready for installation pending completion of other items, such as first and second floor flooring, corridor carpeting, millwork (wall and ceiling panels, pool bar), passenger elevators, fire sprinklers, egress and accent lighting, pool equipment, guest room doors, locks and closures, bathroom fixtures, and rooftop HVAC equipment.

---

[1] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae filed in support of (and annexed to) that certain *Notice Of Motion And Motion For Entry Of An Order: (A) Requiring Turnover Of Estate Cash By Evertrust Bank; (B) Authorizing Debtor To Use Cash Collateral; And (C) Authorizing Debtor To Obtain Post-Petition Financing From M+D Properties On An Unsecured Basis* filed by the Debtor on March 12, 2021 [Doc. No. 21] (the "First CC/Financing Motion Declaration"), specifically Exhibit "C" and Exhibit "F" thereto, which include copies of the pre-petition loan and collateral documents with Evertrust.

6.      The approximately 15% of the Hotel construction which remains outstanding consists of mostly "finish work" such as the installation of flooring and carpeting, lighting, appliances, trade fixtures, furniture, furnishings and equipment already purchased by the Debtor (collectively, "FF&E").

**B.      Events Leading To Debtor's Bankruptcy Filing.**

7.      In late 2019, Evertrust refused to issue the remaining $4 million of the Loan, claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to provide the final $4 million of the Loan, the Debtor was forced to cease construction activities.  However, the Debtor believes strongly that, had Evertrust funded the final $4 million as expected, construction of the Hotel would have been completed, as the Debtor believes that its contractors would have carried fifty percent of the cost overrun and the Debtor and its affiliates would have covered the remaining fifty percent of the overrun.

8.      When Evertrust refused to issue the remaining $4 million of the Loan, the Debtor immediately and actively sought to refinance the Loan.  The Debtor began discussions with a new lender named Hall Structured Finance ("Hall") in the fall of 2019 and was ultimately able to reach an agreement with Hall for refinancing in the total sum of $42 million.  During the course of the Debtor's refinancing discussions with Hall, the Debtor kept Evertrust apprised of all developments, and even provided Evertrust with a copy of the loan commitment letter from Hall in early 2020.  The Debtor and Hall were on the verge of closing on the refinancing, with a target closing date of March 20, 2020, when local, county, and State officials issued lockdown orders as a result of the COVID-19 pandemic.  At that point, Hall put an indefinite hold on the closing of the refinancing with the Debtor.

9.      As a result, the Debtor went back to Evertrust and, between March 2020 and December 2020, engaged in active forbearance negotiations with Evertrust to obtain a further extension of the Loan maturity date so that the Hotel could recover from the effects of the COVID-19 pandemic, and the Debtor could obtain refinancing or additional construction financing and ultimately recommence construction of the Hotel.

10.     In the summer of 2020, while the Debtor and Evertrust were still engaged in forbearance negotiations, Evertrust commenced litigation against the guarantors of the Loan, Donald Chae and Min Chae, and recorded a Notice of Default against the Hotel.

11.     Subsequently, in December 2020, Shady Bird purchased Evertrust's interests in the Loan at a significant discount, for a reported purchase price of approximately $19 million.  While the Debtor engaged in discussions and negotiations with Shady Bird to attempt to reach a consensual resolution of the parties' disputes, such discussions and negotiations were ultimately unsuccessful.

12.     On February 8, 2021, Shady Bird filed a complaint against the Debtor in the Superior Court of the State of California for the County of Orange ("Superior Court") for (i) specific performance and appointment of a receiver, and (ii) waste, thereby commencing the Superior Court action bearing the case number 30-2021-01183489-CU-OR-CJC (the "State Court Action").  Shady Bird also took steps to immediately foreclose on the Hotel and issued a Notice of a Trustee's Sale for the Hotel to be held on March 1, 2021.

13.     Shortly after filing its complaint to initiate the State Court Action, Shady Bird filed an ex parte application for an order appointing a receiver and other related relief.  On February 17, 2021, the Superior Court entered an order in the State Court Action appointing Bellann R. Raile as Receiver to, among other things, take possession of the Hotel and all goods, furniture, fixtures, and equipment attached and/or related to the Hotel.

14.     As a result of the foregoing, the Debtor sought chapter 11 bankruptcy protection on the Petition Date (*i.e.*, February 26, 2021) in order to prevent the impending foreclosure of the Hotel, to regain possession of the Hotel and related assets and obtain refinancing or investments to enable the Debtor to complete construction of the Hotel, and to obtain a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion.

**C.      Description Of The Debtor's Assets And Debts.**

15.     The Debtor's primary assets consist of the Hotel, the Leasehold Interest, and a substantial amount of FF&E.  The Debtor believes that the current value of the Hotel in "as is" condition is at least $50,000,000 and that its fair market value upon completion will be at least $60,000,000.[2]  The Debtor also believes that the total value of the FF&E (calculated at cost, excluding fabrication labor costs) is approximately $2,700,000.

16.     The Debtor's primary secured creditor is Shady Bird Lending, LLC ("Shady Bird"), who acquired the Loan from Evertrust in December, 2020.  Shady Bird contends that the outstanding balance of the Loan was $30,948,839.27 as of March 1, 2021.  As noted above, the Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel, the Leasehold Interest, and the FF&E.

17.     The Debtor also received two tranches of EB-5 loans from Beach Orangethorpe Hotel, LLC and Beach Orangethorpe Hotel II, LLC (together, the "EB-5 Lenders," or individually, an "EB-5 Lender").  The Debtor's obligations under the loans from the EB-5 Lenders, in the total principal sum of $21,500,000, are secured by junior liens against the Hotel and the Leasehold Interest.[3]

18.     There are a number of subcontractors that have recorded mechanics' liens against the Debtor and/or Hotel.  As reflected in the Debtor's Schedules of Assets and Liabilities filed in this case [Doc. No. 32], the Debtor believes that the total amount of the mechanics' liens recorded

---

[2] HVS Consulting & Valuation previously prepared an appraisal report for the Hotel, which reflected an "as is" value of $40,900,000 for the Hotel as of October 14, 2019.  In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae in support of that certain *Opposition To Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* [Doc. No. 65], specifically Exhibit "4" thereto, which includes a true and correct copy of the foregoing appraisal report.

[3] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae in support of the First CC/Financing Motion, specifically Exhibit "H" thereto, which includes copies of the Deeds of Trust recorded against the Hotel by the two EB-5 Lenders.

against the Debtor and/or Hotel is approximately $2,900,000.[4]  However, some of these recorded mechanics' liens appear to have expired or have not been properly perfected, or are otherwise disputed by the Debtor.

**D.    Current Posture Of The Debtor's Bankruptcy Case.**

19.    Following the Petition Date, the Debtor was required to address the various substantial administrative matters attendant to the commencement of its bankruptcy case.  These matters included the preparation of the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, which the Debtor timely filed on March 12, 2021 [Doc. No. 32].

20.    Additionally, immediately after the Petition Date, the Debtor prepared and submitted materials required by the Office of the United States Trustee (the "OUST").  On March 5, 2021, the Debtor timely submitted its initial 7-Day Packages to the OUST.  Thereafter, on March 17, 2021, the Debtor submitted it supplement to the initial 7-Day Package.  The Debtor also attended the initial debtor's interview and the meeting of creditors required under 11 U.S.C. § 341(a), both of which were conducted by the OUST.  The Debtor has also prepared and filed with the Court its monthly operating reports due to date, other than its monthly operating report for the month of April, 2021, which the Debtor will file shortly.

21.    On March 12, 2021, the Debtor filed the *Debtor's Notice Of Motion And Motion For Entry Of An Order: (A) Requiring Turnover Of Estate Cash By Evertrust Bank; (B) Authorizing Debtor To Use Cash Collateral; And (C) Authorizing Debtor To Obtain Post-Petition Financing From M+D Properties On An Unsecured Basis* [Doc. No. 21] (the "CC/Financing Motion"), pursuant to which the Debtor sought the entry of a Court order (i) requiring Evertrust to turn over and deliver to the Debtor cash held in the Debtor's pre-petition bank accounts at Evertrust; (ii) authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget (the "Initial Budget"); and (iii) authorizing the Debtor to obtain post-

---

[4] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae in support of the First CC/Financing Motion, specifically Exhibit "G" thereto, which includes a list of asserted mechanic's liens prepared by the Debtor as well as a preliminary title report for the Hotel dated December 22, 2020.

petition unsecured financing up to $100,000 (the "<u>Initial DIP Loan</u>") from the Debtor's manager, M+D. The Initial Budget provided for the payment of expenses critical to the maintenance and preservation of the Hotel, including insurance premiums, utility expenses, post-petition utility deposits, and real property taxes.

22. On March 23, 2021, the Court entered an order granting the CC/Financing Motion on an interim basis, pending a final hearing scheduled on May 6, 2021, subject to certain minor modifications agreed to by the Debtor and set forth in such order [Doc. No. 46] (the "<u>Interim Order</u>"). On May 12, 2021, the Court entered a final order granting the CC/Financing Motion [Doc. No. 118] (the "<u>Final Order</u>").

23. The Debtor has paid the expenses set forth in the Initial Budget, including secured real property taxes which came due in April, 2021, in accordance with the terms of the Interim Order and Final Order. The Debtor received Initial DIP Loan advances totaling $61,424.91 from M+D during the period covered by the Initial Budget.

24. In addition to the foregoing matters, shortly after the Petition Date, Shady Bird filed three separate motions in the Debtor's bankruptcy case, which have required the Debtor and its counsel to spend a significant amount of time and resources to address.

25. ***SARE Motion.*** The first of these motions is that certain *Motion Of Shady Bird Lending, LLC For Order Designating Chapter 11 Case As Single Asset Real Estate Case Pursuant To 11 U.S.C. §§ 101(51B) And 362(d)(3)* [Doc. No. 49] (the "<u>SARE Motion</u>") filed by Shady Bird on March 25, 2021. Pursuant to the SARE Motion, Shady Bird sought the entry of a Court order designating the Debtor's chapter 11 bankruptcy case as a "single asset real estate" case pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3). On April 1, 2021, the Debtor filed its opposition to the SARE Motion [Doc. No. 64] and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the SARE Motion [Doc. No. 73]. At the hearing on the SARE Motion held on April 15, 2021, the Court denied the SARE Motion. The Court entered a written order denying the SARE Motion on April 28, 2021 [Doc. No. 97] (the "<u>SARE Order</u>"). Accordingly, the Debtor's bankruptcy case is not deemed to be a "single asset real estate" case.

26.     On April 28, 2021, Shady Bird filed a notice of appeal of the SARE Order, thereby initiating an appeal (the "SARE Appeal") before the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals ("BAP").  On May 3, 2021, the Debtor filed a statement electing to have the SARE Appeal heard by the United States District Court for the Central District of California (the "District Court") instead of the BAP.  Thereafter, the SARE Appeal was transferred to the District Court and bears the case number 8:21-cv-00824-FLA.

27.     On May 7, 2021, Shady Bird filed a motion seeking to expedite the SARE Appeal in the District Court.  The hearing on such motion, which the Debtor will oppose, is set for June 18, 2021 at 1:30 p.m.

28.     ***Receiver Motion.***     The second motion filed by Shady Bird in the Debtor's bankruptcy case is that certain *Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* [Doc. No. 51] (the "Receiver Motion") filed by Shady Bird on March 25, 2021.  Pursuant to the Receiver Motion, Shady Bird sought the entry of a Court order excusing the Receiver from complying with the requirements of 11 U.S.C. § 543, specifically, the requirement to deliver to the Debtor all property belonging to the Debtor over which the Receiver currently has possession, custody or control.  On April 1, 2021, the Debtor filed its opposition to the Receiver Motion [Doc. No. 65] and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the Receiver Motion [Doc. No. 72]. At the hearing on the Receiver Motion held on April 15, 2021, the Court continued the hearing on the Receiver Motion to June 3, 2021 at 2:00 p.m. and granted the Receiver Motion on an interim basis to permit the Receiver to make certain repairs and perform certain work on the Hotel with funds "gifted" to the Debtor's estate by Shady Bird up to $200,000 (the "Gifted Advances").

29.     ***RFS Motion.***     The third motion filed by Shady Bird in the Debtor's bankruptcy case is that certain *Notice Of Motion And Motion For Relief From The Automatic Stay Under 11 U.S.C. § 363 (Real Property)* [Doc. No. 62] (the "RFS Motion") filed by Shady Bird on April 1, 2021.  Pursuant to the RFS Motion, Shady Bird seeks relief from the automatic stay so that it may foreclose on the Hotel.  On April 8, 2021, the Debtor filed its opposition to the RFS Motion [Doc.

No. 74] and, on April 15, 2021, Shady Bird filed its reply to the Debtor's opposition to the RFS Motion [Doc. No. 81].  At the hearing on the RFS Motion held on April 22, 2021, the Court continued the hearing on the RFS Motion to June 3, 2021 at 2:00 p.m., to be held concurrently with the hearing on the Receiver Motion.

30.    At the Debtor's initial chapter 11 status conference conducted on May 6, 2021, the Court established July 12, 2021 as the bar date for the filing of proofs of claim in the Debtor's bankruptcy case (the "Claims Bar Date").  On May 7, 2021, the Debtor filed and served a notice of the Claims Bar Date on all of its creditors [Doc. No. 112].

31.    The Debtor has been, and continues to be, engaged in active discussions with prospective lenders and investors regarding the terms for debtor-in-possession and/or exit financing, which will provide the Debtor with the funding necessary to complete the construction of the Hotel, service debt, operate the Hotel until operations can be stabilized, and potentially fund a feasible plan of reorganization in the Debtor's case.  The Debtor believes that it can successfully complete the construction of the Hotel and satisfy valid mechanic's liens recorded against the Hotel if the Debtor obtains additional financing of approximately $12,000,000 - $16,000,000.  The Debtor also believes that the construction of the Hotel can be completed and a certificate of occupancy obtained within 9-12 months from the date of restarting construction.  If the Debtor ultimately proceeds with debtor-in-possession financing (instead of exit financing), the Debtor will file a motion for Court approval of such financing as soon as it is in a position to do so.  If the Debtor proceeds with exit financing, the Debtor will likely propose a plan of reorganization, in conjunction with its proposed lender and plan supporter, which provides for the restructuring and/or repayment of the Debtor's secured debt, and provides for a recovery to the Debtor's general unsecured creditors who would otherwise receive nothing.

32.    In addition, and on a parallel path to the Debtor's efforts to obtain debtor-in-possession and/or exit financing to propose a plan of reorganization, the Debtor is also currently evaluating a process for marketing and selling the Hotel through a Section 363 sale.  The Debtor

intends to discuss such marketing and sale process with Shady Bird in the hopes of reaching an agreement regarding such process.

**E.    The Need For An Extension Of The Debtor's Exclusive Periods To File A Plan And Obtain Acceptances Thereof.**

33.    Pursuant to 11 U.S.C. § 1121(d), the Debtor's exclusive periods to file a plan of reorganization ("Plan") and obtain acceptances thereof will expire, without extension, on June 26, 2021 and August 25, 2021, respectively.

34.    As noted above, the Debtor was required to devote a substantial amount of time during the three-month period following the Petition Date to comply with numerous Chapter 11 administrative requirements, to address the various motions filed by Shady Bird in the Debtor's bankruptcy case, and to engage in discussions with prospective lenders and investors regarding the terms for debtor-in-possession and/or exit financing and plan sponsorship (and to address the myriad of due diligence requests from such prospective lenders and investors in conjunction with such discussions).  As a result, the Debtor has not had adequate time to focus on preparing its plan of reorganization.

35.    The Debtor anticipates being able to focus on identifying and implementing an exit strategy for its case and preparing a plan after the Receiver Motion and RFS Motion have been adjudicated on or about June 3, 2021.  Given this timing, the Debtor does not believe it will be in a position to finalize its exit strategy and to prepare and file a plan of reorganization by the current exclusivity deadline of June 26, 2021.

36.    The Debtor also requires additional time to allow the Claims Bar Date (which the Court has established as July 12, 2021) to pass so that the Debtor may carefully analyze the amount, validity, and extent of the claims asserted against the Debtor and formulate plan terms which are feasible and fully address the universe of claims asserted against it in this case.

37.    Given the foregoing, the Debtor believes it would be premature to file a Plan at this time.  A premature plan will likely lead to further delays in the plan confirmation process and will

serve only to increase the administrative costs of this case as any plan filed now would likely need to be amended or modified.

38.    Accordingly, by this Motion, the Debtor seeks an order extending its exclusive periods to file a Plan and obtain acceptances thereof for approximately 90 days, to and including September 27, 2021 and November 29, 2021, respectively.   The Debtor seeks the foregoing extensions without prejudice to its right to seek further extensions of exclusivity.

**II.**

**DISCUSSION**

**A.    The Court Has Authority To Extend The Debtor's Exclusive Periods To File A Plan Of Reorganization And Obtain Acceptances Thereof.**

Pursuant to Sections 1121(b) and (c)  of the Bankruptcy Code, a Chapter 11 debtor has the exclusive right to file a plan of reorganization for a period of 120 days following the filing of the petition and an additional 60 days thereafter to solicit acceptances to any plan so filed.   11 U.S.C. §§ 1121(b) and (c).

Section 1121(d) of the Bankruptcy Code allows the Court to extend or reduce these time periods "for cause."   Section 1121(d) of the Bankruptcy Code provides, in pertinent part, as follows:

> "(d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and
>
> (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>   (2)(A)  The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>      (B)  The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter."

11 U.S.C. § 1121(d)(1) and (2).

The decision of whether to grant a request to extend or shorten the exclusivity periods

1   lies within the sound discretion of the bankruptcy judge.  *In re AmKo Plastics, Inc.,* 197 B.R. 74,

2   77 (Bankr. S.D. Ohio 1996); *In re Gibson & Cushman Dredging Corp.,* 101 B.R. 405, 409

3   (Bankr. E.D.N.Y. 1989).  The "cause" standard referred to in Section 1121 has been referred to

4   as a general standard that allows the bankruptcy court "maximum flexibility to suit various types

5   of reorganization proceedings."  *In re Public Service Company of New Hampshire*, 88 B.R. 521,

6   534 (Bankr. D.N.H. 1988).

7           The Bankruptcy Code does not define "cause" or establish formal criteria for extensions

8   of the exclusivity periods. Consistent with a balanced, integrated approach to reorganizations

9   under chapter 11, Congress contemplated that bankruptcy courts would apply the exclusivity

10  provisions flexibly so as to promote the orderly, consensual and successful reorganization of a

11  debtor's affairs.  *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) [hereinafter

12  "House Report"].  Appropriate "cause" justifying extensions of the exclusivity periods should be

13  interpreted in the context of the overall purposes of chapter 11 and the means Congress

14  established for accomplishing them.  Congress recognized that a debtor must have a reasonable

15  time to formulate and negotiate a plan of reorganization.  Denying a debtor an exclusive period

16  to propose and confirm a plan could dissuade a debtor from choosing chapter 11 and encourage

17  creditors to act unilaterally.  House Report at 231-32.  *See also, In re Pine Run Trust, Inc.*, 67

18  B.R. 432, 434 (Bankr. E.D. Pa. 1936) (exclusivity determinations should balance creditor and

19  debtor interests in favor of reorganization).

20          In determining whether "cause" exists to extend a debtor's exclusivity periods,

21  bankruptcy courts often consider the following so-called *Dow Corning* factors: (1) the size and

22  complexity of the case; (2) the necessity of sufficient time to permit the debtor to negotiate a

23  plan of reorganization and prepare adequate information; (3) the existence of good faith progress

24  toward reorganization; (4) the fact that the debtor is paying its bills as they become due; (5)

25  whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether

26  the debtor has made progress in negotiations with its creditors; (7) the amount of time which has

27  elapsed in the case; (8) whether the debtor is seeking an extension of exclusivity in order to

28

1   pressure creditors to submit to the debtor's reorganization demands; and (9) whether an

2   unresolved contingency exists. *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D.

3   Mich. 1997).

4       The Debtor respectfully submits that an evaluation of the circumstances of this case

5   demonstrates that most, if not all, of the *Dow Corning* factors weigh in favor of an extension of

6   the Debtor's exclusivity periods.

7       1.    ***The size and complexity of the case***.

8       The Debtor's bankruptcy case involves a partially (85%) completed full-service, seven-

9   story Hotel which, upon completion, will include 178 guest rooms, conference rooms, an executive

10  lounge, fitness center, restaurant, bars, and cleaning services, among other amenities, and which

11  has a current "as is" market value of at least $40,900,000 (and in the Debtor's view, significantly

12  higher market value).   In addition to the secured debt owed to Shady Bird (which Shady Bird

13  contends exceeds $30,000,000), there are a number of mechanics' liens that have been recorded

14  against the Debtor and/or Hotel totaling approximately $2,900,000 (some of which appear to have

15  expired or have not been properly perfected, or are otherwise disputed by the Debtor).   Given the

16  aggregate value of the Hotel and FF&E, the current state of construction for the Hotel, and the

17  amount of claims asserted against the Debtor, the Debtor's bankruptcy case is neither a small nor

18  simple chapter 11 bankruptcy case.   This is particularly true, given the amount of litigation

19  currently pending between the Debtor and Shady Bird, including, without limitation, the pending

20  Receiver Motion, RFS Motion, and SARE Appeal.    Based on the foregoing, the Debtor

21  respectfully submits that this factor weighs in favor of an extension of the Debtor's exclusivity

22  periods.

23      2.    ***The necessity of sufficient time to permit the debtor to negotiate a plan of***

24      ***reorganization and prepare adequate information***.

25      The Debtor's bankruptcy case has only been pending for three (3) months.  An objective

26  evaluation of the facts and circumstances of the Debtor's case reflects that the Debtor has not had

27  sufficient time to permit the Debtor to formulate and negotiate a plan or prepare adequate

28

information in connection with such plan.  The Debtor requires additional time to analyze all of the claims that have been asserted against the Debtor (once the Claims Bar Date has passed) before the Debtor can finalize the terms of a feasible plan of reorganization and negotiate plan terms with its creditors and BOH3, and prepare all of the information required to be submitted in connection with a plan.  Given the foregoing, the Debtor's request for additional time to negotiate a Plan and prepare adequate information in connection with such plan is both reasonable and warranted.  Accordingly, this factor weighs in favor of an extension of the Debtor's exclusivity periods.

        3.      ***The existence of good faith progress toward reorganization***.

The Debtor submits that it has been working, and will continue to work, in good faith and with diligence to progress towards a successful reorganization in this case. The Debtor first had to address its reporting and other compliance requirements after the filing of its bankruptcy case, and has been focused on responding to the numerous motions filed by Shady Bird in the Debtor's bankruptcy case.  Notwithstanding such pressures, the Debtor has been, and continues to be, engaged in active discussions with prospective lenders and investors regarding the terms for debtor-in-possession and/or exit financing, which will provide the Debtor with the funding necessary to complete the construction of the Hotel, service debt, operate the Hotel until operations can be stabilized, and potentially fund a feasible plan of reorganization in the Debtor's case.  The Debtor anticipates that it will now be able to focus on identifying and implementing an exit strategy for its case and preparing a plan, particularly after the Receiver Motion and RFS Motion have been adjudicated on or about June 3, 2021.  Accordingly, the Debtor respectfully submits that this factor also weighs in favor of an extension of the Debtor's exclusivity periods.

        4.      ***The fact that the debtor is paying its bills as they become due***.

As reflected in the monthly operating reports that have been filed by the Debtor to date[5], the Debtor has been paying, and will continue to pay, its post-petition operating expenses,

---

[5] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Monthly Operating Reports filed by the Debtor for the months of February, 2021 [Doc. No. 40] and March, 2021 [Doc. No. 92].  The Debtor anticipates filing its Monthly Operating Report for the month of April, 2021 well before the hearing on this Motion.

1    including the real property taxes due under the terms of the Ground Lease, as they become due.

2    Based on the foregoing, the Debtor respectfully submits that this factor weighs in favor of an

3    extension of the Debtor's exclusivity periods.

4         5.      *Whether the debtor has demonstrated reasonable prospects for filing a viable*

5              *plan*.

6         As noted above, the Debtor believes that it can successfully complete the construction of

7    the Hotel and satisfy valid mechanic's liens recorded against the Hotel if the Debtor obtains

8    additional financing of approximately $12,000,000 - $16,000,000.  The Debtor also believes that

9    the construction of the Hotel can be completed and a certificate of occupancy obtained within 9-12

10   months from the date of restarting construction.  If the Debtor ultimately proceeds with debtor-in-

11   possession financing (instead of exit financing), the Debtor will file a motion for Court approval of

12   such financing as soon as it is in a position to do so.  If the Debtor proceeds with exit financing, the

13   Debtor will likely propose a plan of reorganization, in conjunction with its proposed lender and

14   plan supporter, which provides for the restructuring and/or repayment of the Debtor's secured debt,

15   and provides for a recovery to the Debtor's general unsecured creditors who would otherwise

16   receive nothing.  Given the estimated fair market value of the Hotel (even in "as is" condition),

17   there is substantial equity in the Hotel which supports the Debtor's efforts to obtain post-petition

18   financing to complete the construction of the Hotel and to propose a feasible plan of

19   reorganization.  Based on the foregoing, the Debtor believes it has demonstrated reasonable

20   prospects for filing a viable Plan which will provide for a recovery to its creditors.  Thus, the

21   Debtor respectfully submits that this factor weighs in favor of an extension of the Debtor's

22   exclusivity periods.

23        6.      *Whether the debtor has made progress in negotiations with its creditors*.

24        The Debtor has been working diligently and in good faith since the Petition Date to take the

25   actions necessary to be in a position to formulate the terms of a feasible Plan in this case.  This

26   includes defending against the RFS Motion and Receiver Motion filed by Shady Bird.  The Debtor

27   continues to engage in active discussions with prospective lenders and investors regarding the

28

terms for debtor-in-possession/exit financing and/or a plan of reorganization, which the Debtor believes is a necessary first step before the Debtor can realistically formulate and implement an exit strategy in its case.  The Debtor intends to engage in discussions with the major constituents in its case, including Shady Bird, the EB-5 Lenders, and BOH2, in the hopes of reaching agreement regarding a consensual plan (or at least a partially consensual plan).  Accordingly, the Debtor respectfully submits that this factor also weighs in favor of an extension of the Debtor's exclusivity periods.

7.    ***The amount of time which has elapsed in the case***.

This is the Debtor's first request to extend its plan exclusivity periods.  The Debtor's bankruptcy case has been pending for only three (3) months.  Based on the foregoing, the Debtor respectfully submits that this factor weighs in favor of an extension of the Debtor's exclusivity periods.

8.    ***Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands***.

Courts have found cause to justify an extension of a chapter 11 debtor's exclusivity periods where there is no evidence that an extension is being sought for purposes of pressuring creditors into acceding to a debtor's reorganization demands.  *See In re Pine Run Trust, Inc., supra*.  The Debtor's request for extensions of its plan exclusivity periods in this case – its first request – is being made in good faith and is not being made for the purpose of pressuring creditors into acceding to certain plan terms.  On the contrary, the Debtor is motivated by its desire to pursue a consensual plan of reorganization, for the benefit of all of its creditors, in an orderly fashion and with minimal expense to the estate.  Accordingly, the Debtor respectfully submits that this factor also weighs in favor of an extension of the Debtor's exclusivity periods.

9.    ***Whether an unresolved contingency exists***.

The RFS Motion is an unresolved contingency which must be resolved before the Debtor can realistically take steps to formulate and implement an exit strategy in this case.  If the Court grants the RFS Motion, and Shady Bird is permitted to foreclose upon the Hotel and the Debtor's

other assets, there will be no reason for this bankruptcy case to proceed.  However, if the Court denies the RFS Motion, the Debtor will proceed with its efforts to obtain debtor-in-possession, takeout, or exit financing (and/or obtain a plan sponsor) so that it may complete the construction of the Hotel and bring the Hotel into operation, and to propose and seek confirmation of a plan of reorganization which restructures its debts in an orderly fashion.  The Debtor is also currently evaluating whether it should pursue a parallel path to market and sell the Property.  In addition, the Debtor believes that it would be prudent to wait until the Claims Bar Date (*i.e.*, July 12, 2021) has passed to determine the universe of claims that will need to be accounted for in a plan. Accordingly, the Debtor believes it would be premature to file a Plan at this time.  A premature Plan will likely lead to further delays in the plan confirmation process and will serve only to increase the administrative costs of this case as any Plan filed now would likely need to be amended or modified. Based on the foregoing, the Debtor respectfully submits that this factor weighs in favor of an extension of the Debtor's exclusivity periods.

As the analysis of the *Dow Corning* factors above demonstrates, all of the factors weigh in favor of a further extension of the Debtor's exclusivity periods.  The Motion to extend the Debtor's exclusivity periods should therefore be granted.

**B.**     **Progress Towards Reorganization And Proper Motives Warrant An Extension Of The Debtor's Plan Exclusivity Periods.**

Courts have recognized that the diligence of management and proper administration of the case are yet additional factors supporting an extension of the exclusivity periods.  *See In re United Press International, supra; In re Trainer's, Inc.*, 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982).  The Debtor is properly administering its Chapter 11 case in that it has complied with all of the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and is in substantial compliance with the requirements of the Office of the United States Trustee applicable to debtors in possession. Under these circumstances, the Court may extend the Debtor's exclusivity periods for filing a Plan and obtaining acceptances thereof with the confidence that the Debtor is in substantial compliance with the requirements that are a condition

1    to the Debtor's maintaining control of its bankruptcy case.

2 **III.**

3 **CONCLUSION**

4      Based upon all of the foregoing, the Debtor respectfully requests that this Court enter an

5 order:

6      (1)     granting the Motion;

7      (2)     extending the Debtor's exclusive periods to file a Plan and obtain acceptances

8 thereof for approximately 90 days, to and including September 27, 2021 and November 29,

9 2021, respectively, without prejudice to the Debtor's right to seek further extensions of such

10 periods; and

11      (3)     granting such further relief as the Court deems just and proper.

12 Dated:  May 19, 2021              THE SOURCE HOTEL, LLC

13

14

15                    By:_____

16                        RON BENDER
                       JULIET Y. OH

17                        LEVENE, NEALE, BENDER, YOO
                         & BRILL L.L.P.

18                        Proposed Attorneys for Chapter 11 Debtor
                       and Debtor-in-Possession

19

20

21

22

23

24

25

26

27

28

22

**DECLARATION OF DONALD CHAE**

I, Donald Chae, hereby declare as follows:

1.      I am the Manager and a member of DMC Investment Holdings, LLC ("_DMC_"), which is a member of The Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-possession herein (the "_Debtor_"), and I am therefore familiar with the business operations and financial records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.      I make this declaration in support of that certain _Notice Of Motion And Motion For Order Extending Debtor's Exclusive Periods To File Plan Of Reorganization And Obtain Acceptances Thereof_ (the "_Motion_"), to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

**A.    Background**

3.      On February 26, 2021 (the "_Petition Date_"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession.

4.      The Debtor is a limited liability company that was organized in November, 2012 in the State of California.  DMC is a member of the Debtor which holds 100 units (or 100%) of Series 1 membership units in the Debtor.  My brother, Min S. Chae, and I are the members and principals of DMC.  In addition to the Series 1 membership units held by DMC, an EB-5 investor entity called Beach Orangethorpe Hotel III, LLC ("_BOH3_") holds 29 units (or 100%) of Series 2 preferred membership units in the Debtor.

5.      Since at least 2014, the Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "_Hotel_"), which upon completion will include conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services.  The Hotel is part of a larger 12.8-acre mixed-use development project (the "_Master Development_"), which includes a 400,000 square-foot retail center and a 50,000 square-foot seven-story office building which were completed in 2016.  The

Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property (the "Ground Lease") with the Debtor's affiliate, The Source at Beach, LLC.

6.      Construction of the Hotel began in 2016.  To finance the construction of the Hotel, on May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from Evertrust Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling $35.5 million, including the EB-5 investment by BOH3 in the sum of $14,500,000, for which BOH3 acquired preferred membership units in the Debtor.  The Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel and the Debtor's leasehold interest in the real property that is the subject of the Ground Lease (the "Leasehold Interest"), pursuant to the parties' Commercial Security Agreement and the Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Leasehold) recorded in the County of Orange on June 3, 2016 as Document No. 2016000252446 (the "Deed of Trust").  The original maturity date for the Loan was December 1, 2017, but was extended to November 1, 2019 pursuant to written extension agreements entered into by the parties.

7.      Through October 2019, approximately 85% of the Hotel construction had been completed, including: substantial completion of the core and shell, exterior painting, porte cochère, street lighting, ceiling framing, kitchen framing and glass block installation, food storages, all glass storefronts, electrical wiring and switchgear, guestroom flooring, ceiling fixtures, pool bar canopy structure, deck drains, window washing system, roof membrane, roof ductwork and HVAC vibration installation; nearly complete installation of bathroom fixtures (95%), acoustic ceiling system (80%), HVAC electrical connections (90%), piping for HVAC and plumbing equipment (95%), and rooftop ductwork (99%).  In addition, substantial materials have been procured and/or fabricated and are ready for installation pending completion of other items, such as first and second floor flooring, corridor carpeting, millwork (wall and ceiling panels, pool bar), passenger elevators, fire sprinklers, egress and accent lighting, pool equipment, guest room doors, locks and closures,

bathroom fixtures, and rooftop HVAC equipment.

8.     The approximately 15% of the Hotel construction which remains outstanding consists of mostly "finish work" such as the installation of flooring and carpeting, lighting, appliances, trade fixtures, furniture, furnishings and equipment already purchased by the Debtor (collectively, "FF&E").

**B.     Events Leading To Debtor's Bankruptcy Filing.**

9.     In late 2019, Evertrust refused to issue the remaining $4 million of the Loan, claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to provide the final $4 million of the Loan, the Debtor was forced to cease construction activities.  However, I believe strongly that, had Evertrust funded the final $4 million as expected, construction of the Hotel would have been completed, as I believe that the Debtor's contractors would have carried fifty percent of the cost overrun and the Debtor and its affiliates would have covered the remaining fifty percent of the overrun.

10.     When Evertrust refused to issue the remaining $4 million of the Loan, the Debtor immediately and actively sought to refinance the Loan.  The Debtor began discussions with a new lender named Hall Structured Finance ("Hall") in the fall of 2019 and was ultimately able to reach an agreement with Hall for refinancing in the total sum of $42 million.  During the course of the Debtor's refinancing discussions with Hall, the Debtor kept Evertrust apprised of all developments, and even provided Evertrust with a copy of the loan commitment letter from Hall in early 2020.  The Debtor and Hall were on the verge of closing on the refinancing, with a target closing date of March 20, 2020, when local, county, and State officials issued lockdown orders as a result of the COVID-19 pandemic.  At that point, Hall put an indefinite hold on the closing of the refinancing with the Debtor.

11.     As a result, the Debtor went back to Evertrust and, between March 2020 and December 2020, engaged in active forbearance negotiations with Evertrust to obtain a further extension of the Loan maturity date so that the Hotel could recover from the effects of the COVID-19 pandemic, and the Debtor could obtain refinancing or additional construction financing and

1  ultimately recommence construction of the Hotel.

2      12.    In the summer of 2020, while the Debtor and Evertrust were still engaged in

3  forbearance negotiations, Evertrust commenced litigation against the guarantors of the Loan, my

4  brother, Min Chae, and me, and recorded a Notice of Default against the Hotel.

5      13.    Subsequently, in December 2020, Shady Bird purchased Evertrust's interests in the

6  Loan at a significant discount, for a reported purchase price of approximately $19 million.  While

7  the Debtor engaged in discussions and negotiations with Shady Bird to attempt to reach a

8  consensual resolution of the parties' disputes, such discussions and negotiations were ultimately

9  unsuccessful.

10     14.    On February 8, 2021, Shady Bird filed a complaint against the Debtor in the

11  Superior Court of the State of California for the County of Orange ("Superior Court") for (i)

12  specific performance and appointment of a receiver, and (ii) waste, thereby commencing the

13  Superior Court action bearing the case number 30-2021-01183489-CU-OR-CJC (the "State Court

14  Action").  Shady Bird also took steps to immediately foreclose on the Hotel and issued a Notice of

15  a Trustee's Sale for the Hotel to be held on March 1, 2021.

16     15.    Shortly after filing its complaint to initiate the State Court Action, Shady Bird filed

17  an ex parte application for an order appointing a receiver and other related relief.  On February 17,

18  2021, the Superior Court entered an order in the State Court Action appointing Bellann R. Raile as

19  Receiver to, among other things, take possession of the Hotel and all goods, furniture, fixtures, and

20  equipment attached and/or related to the Hotel.

21     16.    As a result of the foregoing, the Debtor sought chapter 11 bankruptcy protection on

22  the Petition Date (i.e., February 26, 2021) in order to prevent the impending foreclosure of the

23  Hotel, to regain possession of the Hotel and related assets and obtain refinancing or investments to

24  enable the Debtor to complete construction of the Hotel, and to obtain a reasonable opportunity to

25  restructure its financial affairs and repay its debts in an orderly fashion.

26  ///

27  ///

28

26

**C.    Description Of The Debtor's Assets And Debts.**

17.    The Debtor's primary assets consist of the Hotel, the Leasehold Interest, and a substantial amount of FF&E.    Based on a prior appraisal of the Hotel performed by HVS Consulting & Valuation, which resulted in an "as is" value of $40,900,000 as of October 14, 2019, and based upon my decades of commercial real estate experience and knowledge, I believe that the current value of the Hotel in "as is" condition is at least $50,000,000 and that its fair market value upon completion will be at least $60,000,000.    I also believe that the total value of the Debtor's FF&E (calculated at cost, excluding fabrication labor costs) is approximately $2,700,000.

18.    The Debtor's primary secured creditor is Shady Bird Lending, LLC ("Shady Bird"), who acquired the Loan from Evertrust in December, 2020.    I am advised and believe that Shady Bird contends that the outstanding balance of the Loan was $30,948,839.27 as of March 1, 2021.

19.    To the best of my knowledge, there are a number of subcontractors that have recorded mechanics' liens against the Debtor and/or Hotel.    As reflected in the Debtor's Schedules of Assets and Liabilities filed in its case, I believe that the total amount of the mechanics' liens recorded against the Debtor and/or Hotel is approximately $2,900,000.    However, some of these recorded mechanics' liens appear to have expired or have not been properly perfected, or are otherwise disputed by the Debtor.    While the holders of these mechanics' liens may hold valid and properly perfected liens against the Hotel and the Debtor's Leasehold Interest, it is my understanding and believe that they have not filed UCC-1 financing statements against the Debtor and therefore do not hold valid, properly perfected liens against the Debtor's cash.

20.    The Debtor also received two tranches of EB-5 loans from Beach Orangethorpe Hotel, LLC and Beach Orangethorpe Hotel II, LLC (together, the "EB-5 Lenders," or individually, an "EB-5 Lender").    I am advised and believe that the Debtor's obligations under the loans from the EB-5 Lenders, in the total principal sum of $21,500,000, are secured by junior liens against the Hotel and the Leasehold Interest.

**D.    Current Posture Of The Debtor's Bankruptcy Case.**

21.    Following the Petition Date, the Debtor was required to address the various

substantial administrative matters attendant to the commencement of its bankruptcy case.  These matters included the preparation of the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, which the Debtor timely filed on March 12, 2021.

22.    Additionally, immediately after the Petition Date, the Debtor prepared and submitted materials required by the Office of the United States Trustee (the "OUST"). On March 5, 2021, the Debtor timely submitted its initial 7-Day Packages to the OUST.  Thereafter, on March 17, 2021, the Debtor submitted it supplement to the initial 7-Day Package.  The Debtor also attended the initial debtor's interview and the meeting of creditors required under 11 U.S.C. § 341(a), both of which were conducted by the OUST.  The Debtor has also prepared and filed with the Court its monthly operating reports due to date, other than its monthly operating report for the month of April, 2021, which the Debtor will file shortly.

23.    On March 12, 2021, the Debtor filed the *Debtor's Notice Of Motion And Motion For Entry Of An Order: (A) Requiring Turnover Of Estate Cash By Evertrust Bank; (B) Authorizing Debtor To Use Cash Collateral; And (C) Authorizing Debtor To Obtain Post-Petition Financing From M+D Properties On An Unsecured Basis* (the "CC/Financing Motion"), pursuant to which the Debtor sought the entry of a Court order (i) requiring Evertrust to turn over and deliver to the Debtor cash held in the Debtor's pre-petition bank accounts at Evertrust; (ii) authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget (the "Initial Budget"); and (iii) authorizing the Debtor to obtain post-petition unsecured financing up to $100,000 (the "Initial DIP Loan") from the Debtor's manager, M+D. The Initial Budget provided for the payment of expenses critical to the maintenance and preservation of the Hotel, including insurance premiums, utility expenses, post-petition utility deposits, and real property taxes.

24.    I am advised and believe that, on March 23, 2021, the Court entered an order granting the CC/Financing Motion on an interim basis, pending a final hearing scheduled on May 6, 2021, subject to certain minor modifications agreed to by the Debtor and set forth in such order (the "Interim Order").  I am further advised and believe that, on May 12, 2021, the Court entered a

final order granting the CC/Financing Motion (the "<u>Final Order</u>").

25.    The Debtor has paid the expenses set forth in the Initial Budget, including secured real property taxes which came due in April, 2021, in accordance with the terms of the Interim Order and Final Order.  The Debtor received Initial DIP Loan advances totaling $61,424.91 from M+D during the period covered by the Initial Budget.

26.    In addition to the foregoing matters, shortly after the Petition Date, Shady Bird filed three separate motions in the Debtor's bankruptcy case, which have required the Debtor and its counsel to spend a significant amount of time and resources to address.

27.    ***<u>SARE Motion.</u>***    The first of these motions is that certain *Motion Of Shady Bird Lending, LLC For Order Designating Chapter 11 Case As Single Asset Real Estate Case Pursuant To 11 U.S.C. §§ 101(51B) And 362(d)(3)* (the "<u>SARE Motion</u>") filed by Shady Bird on March 25, 2021.  Pursuant to the SARE Motion, Shady Bird sought the entry of a Court order designating the Debtor's chapter 11 bankruptcy case as a "single asset real estate" case.  On April 1, 2021, the Debtor filed its opposition to the SARE Motion and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the SARE Motion.  At the hearing on the SARE Motion held on April 15, 2021, which I attended, the Court denied the SARE Motion.  I am advised and believe that the Court entered a written order denying the SARE Motion on April 28, 2021 (the "<u>SARE Order</u>").

28.    I am advised and believe that, on April 28, 2021, Shady Bird filed a notice of appeal of the SARE Order, thereby initiating an appeal (the "<u>SARE Appeal</u>") before the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals ("<u>BAP</u>").  On May 3, 2021, the Debtor filed a statement electing to have the SARE Appeal heard by the United States District Court for the Central District of California (the "<u>District Court</u>") instead of the BAP.  I am advised and believe that the SARE Appeal was transferred to the District Court and bears the case number 8:21-cv-00824-FLA.

29.    On May 7, 2021, Shady Bird filed a motion seeking to expedite the SARE Appeal in the District Court.  The hearing on such motion, which the Debtor will oppose, is set for June 18, 2021 at 1:30 p.m.

30.    ***Receiver Motion.***    The second motion filed by Shady Bird in the Debtor's bankruptcy case is that certain *Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* (the "Receiver Motion") filed by Shady Bird on March 25, 2021.  Pursuant to the Receiver Motion, Shady Bird sought the entry of a Court order excusing the Receiver from complying with the requirements of Bankruptcy Code Section 543, specifically, the requirement to deliver to the Debtor all property belonging to the Debtor over which the Receiver currently has possession, custody or control.  On April 1, 2021, the Debtor filed its opposition to the Receiver Motion and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the Receiver Motion.  At the hearing on the Receiver Motion held on April 15, 2021, which I attended, the Court continued the hearing on the Receiver Motion to June 3, 2021 at 2:00 p.m. and granted the Receiver Motion on an interim basis to permit the Receiver to make certain repairs and perform certain work on the Hotel with funds "gifted" to the Debtor's estate by Shady Bird up to $200,000 (the "Gifted Advances").

31.    ***RFS Motion.***    The third motion filed by Shady Bird in the Debtor's bankruptcy case is that certain *Notice Of Motion And Motion For Relief From The Automatic Stay Under 11 U.S.C. § 363 (Real Property)* (the "RFS Motion") filed by Shady Bird on April 1, 2021.  Pursuant to the RFS Motion, Shady Bird seeks relief from the automatic stay so that it may foreclose on the Hotel.  On April 8, 2021, the Debtor filed its opposition to the RFS Motion and, on April 15, 2021, Shady Bird filed its reply to the Debtor's opposition to the RFS Motion.  At the hearing on the RFS Motion held on April 22, 2021, which I attended, the Court continued the hearing on the RFS Motion to June 3, 2021 at 2:00 p.m., to be held concurrently with the hearing on the Receiver Motion.

32.    I am advised and believe that, at the Debtor's initial chapter 11 status conference conducted on May 6, 2021, the Court established July 12, 2021 as the bar date for the filing of proofs of claim in the Debtor's bankruptcy case (the "Claims Bar Date").  I am further advised and believe that, on May 7, 2021, counsel for the Debtor filed and served a notice of the Claims Bar Date on all of the Debtor's creditors.

33.     The Debtor has been working, and will continue to work, in good faith and with diligence to progress towards a successful reorganization in its case. The Debtor first had to address its reporting and other compliance requirements after the filing of its bankruptcy case, and has been focused on responding to the numerous motions filed by Shady Bird in the Debtor's bankruptcy case.   Notwithstanding such pressures, the Debtor has been, and continues to be, engaged in active discussions with prospective lenders and investors regarding the terms for debtor-in-possession and/or exit financing, which I believe will provide the Debtor with the funding necessary to complete the construction of the Hotel, service debt, operate the Hotel until operations can be stabilized, and potentially fund a feasible plan of reorganization in the Debtor's case.  I believe that the Debtor can successfully complete the construction of the Hotel and satisfy valid mechanic's liens recorded against the Hotel if the Debtor obtains additional financing of approximately $12,000,000 - $16,000,000.  I also believe that the construction of the Hotel can be completed and a certificate of occupancy obtained within 9-12 months from the date of restarting construction.

34.     If the Debtor ultimately proceeds with debtor-in-possession financing (instead of exit financing), the Debtor will file a motion for Court approval of such financing as soon as it is in a position to do so.  If the Debtor proceeds with exit financing, the Debtor will likely propose a plan of reorganization, in conjunction with its proposed lender and plan supporter, which provides for the restructuring and/or repayment of the Debtor's secured debt, and provides for a recovery to the Debtor's general unsecured creditors who would otherwise receive nothing.  I believe that the conclusion of the Debtor's discussions with prospective lenders and investors is a necessary first step before the Debtor can realistically formulate and implement an exit strategy in its case.  I anticipate that the Debtor will now be able to focus on doing so, particularly after the Receiver Motion and RFS Motion have been adjudicated on or about June 3, 2021.

/ / /

/ / /

/ / /

35.     In addition, and on a parallel path to the Debtor's efforts to obtain debtor-in-possession and/or exit financing to propose a plan of reorganization, the Debtor is also currently evaluating a process for marketing and selling the Hotel through a Section 363 sale.  The Debtor intends to discuss such marketing and sale process with Shady Bird in the hopes of reaching an agreement regarding such process.

36.     The Debtor's request for extensions of its plan exclusivity periods in this case – its first request – is being made in good faith and is not being made for the purpose of pressuring creditors into acceding to certain plan terms.  On the contrary, the Debtor is motivated by its desire to pursue a consensual plan of reorganization, for the benefit of all of its creditors, in an orderly fashion and with minimal expense to the estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of May, 2021, at Buena Park, California.


_____
DONALD CHAE

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER EXTENDING DEBTOR'S EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD CHAE IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 19, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Christopher G. Cardinale    ccardinale@agclawfirm.com, mgonzalez@agclawfirm.com**
- **Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com**
- **Amir Gamliel    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com**
- **Nancy S Goldenberg    nancy.goldenberg@usdoj.gov**
- **Peter F Jazayeri    peter@jaz-law.com**
- **Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com**
- **Grant A Nigolian    grant@gnpclaw.com, process@gnpclaw.com;grant.nigolian@gmail.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ho-El Park    hpark@hparklaw.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On **May 19, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service List continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 19, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 19, 2021 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

The Source Hotel, LLC
OUST, Secured, Top 20, RSN

*Counsel to Evertrust Bank*
Michael Fletcher, Esq.
Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, 19th Floor
Los Angeles, CA 90017-2427

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

**Secured Creditors:**

3D Design - Millwork
8152 Indianapolis Ave.
Huntington Beach, CA 92646

Aragon Construction, Inc.
5440 Arrow Highway
Montclair, CA 91763

Beach Orangethorpe II, LLC
P.O. Box 489
Buena Park, CA 90621

Beach Orangethorpe III, LLC
P.O. Box 489
Buena Park, CA 90621

Beach Orangethorpe, LLC
P.O. Box 489
Buena Park, CA 90621

Beachamp Distributing Co.
1911 South Santa Fe Avenue
Compton, CA 90221

Best Quality Painting
818 N. Pacific Ave., #C
Glendale, CA 91203

Certified Tile
14557 Calvert St.
Van Nuys, CA 91411

Evergreen Electric Construction
629 Grove View Lane
La Canada, CA 91011

Iron Mechanical
721 North B Street
Suite 100
Sacramento, CA 95811

KS Steel Corp.
1748 Industrial Way
Los Angeles, CA 90023

Nemo & Rami
1930 W. Holt Ave.
Pomona, CA 91768

Northstar
404 North Berry Street
Brea, CA 92821-3104

Pan Pacific
18250 Euclid Street
Fountain Valley, CA 92708

PDG Wallcoverings
26492 Via Juanita
Mission Viejo, CA 92691

Prime Concrete Coatings
6127 James Alan St.
Cypress, CA 90630

Resco Electric Inc.
2431 W. Washington Blvd. Suite B
Los Angeles, CA 90018

Retrolock Corp
17915 Railroad Street
City of Insdustry, CA 91748

Salamander Fire Protection, Inc
6103 Tyrone Street
Van Nuys, CA 91401

Shady Bird Lending, LLC
c/o Law Offices of Ronald Richards
P.O. Box 11480
Beverly Hills, CA 90213

Solid Construction
883 Crenshaw Blvd.
Los Angeles, CA 90005

Sunbelt Controls, Inc.
888 E. Walnut Street
Pasadena, CA 91101

Grant Nigolian, P.C.
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626

Hunt Ortmann Palffy Nieves et al.
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101-1807

Law Office of Ho-El Park, P.C.
333 City Blvd. West, Suite 1700
Orange, CA 92868

Law Office of Michael N. Berke
25001 The Old Road
Santa Clarita, CA 91381

Law Offices of Dennis G. Cosso
345 Oxford Drive
Arcadia, CA 91007

Porter Law Group, Inc.
7801 Folsom Blvd., Suite 101
Sacramento, CA 95826

Robinson & Robinson, LLP
2301 Dupont Drive, Sute 530
Irvine, CA 92612-7502

Shady Bird Lending, LLC
c/o Law Offices of Geoffrey Long
1601 N. Sepulveda Blvd., No. 729
Manhattan Beach, CA 90266

Splinter & Thai, LLP
25124 Narbonne Ave., Suite 106
Lomita, CA 90717-2140

**Top 20 Unsecured Creditors:**

Newgens, Inc.
14241 Foster Rd.
La Mirada, CA 90638

Cabrillo Hoist
P.O. Box 3179
Rancho Cucamonga, CA 91729

WESCO Distribution Inc.
6251 Knott Ave.
Buena Park, CA 90620

Harbor All Glass & Mirror, Inc.
1926 Placentia Ave.
Costa Mesa, CA 92627

Diablo Consulting
13200 Crossroads Parkway N
Ste. 115
City of Industry, CA 91746

Ace Tek Roofing Co.
747 S. Ardmore Ave., Suite 405
Los Angeles, CA 90005

Morrow Meadows
231 Benton Court
City of Industry, CA 91789

Chefs Toys
18430 Pacific Street
Fountain Valley, CA 92708

Stumbaugh & Associates, Inc.
3303 N. San Fernando Blvd
Burbank, CA 91504

HBA Procurement, Inc.
3216 Nebraska Ave.
Santa Monica, CA 90404

OJ Insulation LP
600 S Vincent Ave.
Azusa, CA 91702

DKY Architects
15375 Barranca Pkwy.
Suite A-210
Irivne, CA 92618

Master Glass
2225 W. Pico Blvd, Unit C
Los Angeles, CA 90006

Universal Flooring Systems
15573 Commerce Lane
Huntington Beach, CA 92649

L2 Specialties
3613 W. Macarthur Blvd., #611
Santa Ana, CA 92704

Ficcadenti Waggoner
16969 Von Karman Avenue
Suite 240
Irivne, CA 92606

Retrolock Corp
17915 Railroad Street
City of Industry, CA 91748

American Engineering Laboratories Inc.
PO Box 1816
Whittier, CA 90609