1 | RON BENDER (SBN 143364)
2 | JULIET Y. OH (SBN 211414)
  | LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3 | 10250 Constellation Boulevard, Suite 1700
  | Los Angeles, California 90067
4 | Telephone: (310) 229-1234
  | Facsimile: (310) 229-1244
5 | Email: RB@LNBYB.COM; JYO@LNBYB.COM
6 |
  | Attorneys for Chapter 11 Debtor and
7 | Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE SOURCE HOTEL, LLC, a California limited liability company,<br><br>    Debtor and Debtor in Possession. | Case No.: 8:21-bk-10525-ES<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; AND (B) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING FROM M+D PROPERTIES ON AN UNSECURED BASIS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD CHAE IN SUPPORT THEREOF**<br><br><u>Hearing:</u><br>Date:    June 10, 2021<br>Time:    10:30 a.m.<br>Place:    ZoomGov |

1

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**................................................**4**

**I.      STATEMENT OF FACTS** .............................................................................. **4**

      **A.      Background**...............................................................................................**4**

      **B.      Events Leading To Debtor's Bankruptcy Filing** ...............................**6**

      **C.      Description Of The Debtor's Assets And Debts** ...............................**7**

      **D.      Post-Petition Cash Collateral Use And Case Administration** .......**9**

      **E.      The Need For Continued Use Of Cash Collateral And Additional
           Post-Petition Financing** .......................................................................**11**

**II.     DISCUSSION** ................................................................................................. **13**

      **A.      The Debtor Should Be Authorized To Use Cash Collateral**.........**13**

      **B.      The Debtor Should Be Authorized To Obtain The Proposed DIP
           Loan From M+D To Cover Any Shortfalls In The Budget**.........**16**

      **C.      The Debtor Has Satisfied The Procedural Requirements Regarding
           Approval Of The Proposed DIP Loan** .............................................**19**

**III.    CONCLUSION**.............................................................................................. **20**

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Ames Department Stores, Inc.*,
    115 B.R. 34 (Bankr. S.D.N.Y. 1990) ......................................................................................18

*In re Antico Mfg. Co.*,
    31 B.R. 103 (Bankr. E.D.N.Y. 1983) ......................................................................................17

*In re Aqua Assoc.*,
    123 B.R. 192 (Bankr. E.D.Pa. 1991) ......................................................................................17

*In re Crouse Group, Inc.*,
    71 B.R. 544 (Bankr. E.D.Pa. 1987) ........................................................................................17

*In re Defender Drug Stores*,
    126 B.R. 76 (Bankr. D. Ariz. 1991), <u>aff'd</u> 145 B.R. 312 (Bankr. 9th Cir. 1992) ....................17

*In re Ellingsen MacLean Oil Co.*,
    834 F.2d 599 (6th Cir. 1987) ..................................................................................................17

*In re McCombs Properties VI, Ltd.*,
    88 B.R. 261 (Bankr. C.D. Cal. l988) ......................................................................................15

*In re McGowan*,
    6 B.R. 241 (Bankr. E.D. Pa. 1980) .........................................................................................15

*In re Mellor*,
    734 F.2d 1396 (9th Cir. 1984) ................................................................................................15

*In re O'Connor*,
    808 F.2d 1393 (10th Cir. 1987) ..............................................................................................15

*In re Oak Glen R-Vee*,
    8 B.R. 213 (Bankr. C.D. Cal. 1981).........................................................................................14

*In re Opelika Manufacturing Corporation*,
    66 B.R. 444 (Bankr. N.D. Ill. 1986) .......................................................................................15

*In re Photo Promotion Associates, Inc.*,
    87 B.R. 835 (Bankr. S.D.N.Y. 1988), *aff'd*, 881 F.2d 6 (2d. Cir. 1989) ..........................16, 17

*Richmond Leasing Co. v. Capital Bank N.A.*,
    762 F.2d 1303 (5th Cir. 1985) ................................................................................................18

*In re Rogers Development Corp.*,
 2 B.R. 679 (Bankr. E.D. Vir. 1980) ...................................................................15

*In re T.M. Sweeney & Sons LTL Services, Inc.*,
 131 B.R. 984 (Bankr.N.D.Ill.1991) ..................................................................17

*In re Tucson Industrial Partners*,
 129 B.R. 614 (9th Cir. BAP 1991)....................................................................14

*United Savings Association v. Timbers of Inwood Forest Associates*,
 108 S.Ct. 626 (1988) ........................................................................................15

**Federal Statutes**

11 U.S.C. § 101 *et seq.*......................................................................................... *passim*

11 U.S.C. § 361 ......................................................................................................15

11 U.S.C. § 363 ........................................................................................2, 11, 13

11 U.S.C. § 363(a) ..................................................................................................13

11 U.S.C. § 363(c)(l) ..............................................................................................13

11 U.S.C. § 363(c)(2)................................................................................13, 14, 16

11 U.S.C. § 364 ...........................................................................................16, 17, 18

11 U.S.C. § 364(b) ...............................................................................13, 16, 17, 18

11 U.S.C. § 364(c) ..................................................................................................17

11 U.S.C. § 364(d) ..................................................................................................17

11 U.S.C. § 364(e) ..................................................................................................18

11 U.S.C. § 543 ...................................................................................................8, 10

11 U.S.C. § 1107....................................................................................................4, 13

11 U.S.C. § 1108.......................................................................................................4

**Federal Rules**

Fed.R.Bankr.P. 4001 ................................................................................................2

Fed.R.Bankr.P. 4001(c) .........................................................................................19

Fed.R.Bankr.P. 4001(c)(1)(B) ...............................................................................19

Fed.R.Bankr.P. 4001-2 ..................................................................................................2, 19

Fed.R.Bankr.P. 9013-1 ........................................................................................................2

Fed.R.Bankr.P. 9013-1(f) .....................................................................................................2

Fed.R.Bankr.P. 9013-1(h) .....................................................................................................3

Fed.R.Bankr.P. 9014 ............................................................................................................2

Fed.R.Evid. 201 .............................................................................................................5, 8, 9

iv

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL KNOWN SECURED CREDITORS, TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

**PLEASE TAKE NOTICE** that a hearing will be held on June 10, 2021 at 10:30 a.m., before the Honorable Erithe A. Smith, United States Bankruptcy Judge for the Central District of California, Santa Ana Division, in Courtroom "5A" located at 411 West Fourth Street, Santa Ana, California 92701, for the Court to consider the motion (the "Motion") filed by The Source Hotel, LLC, a California limited liability company and the Chapter 11 debtor and debtor-in-possession herein (the "Debtor"), for the entry of an order: (A) authorizing the Debtor to use cash collateral in accordance with the Debtor's proposed operating budget covering the approximately four month period from May 29, 2021 through and including October 1, 2021 (the "Budget"), a true and correct copy of which is attached as **Exhibit "1"** to the Declaration of Donald Chae (the "Chae Declaration") annexed hereto; and (B) authorizing the Debtor to obtain post-petition financing up to $80,000 on a general unsecured basis from the Debtor's affiliate and non-member Manager, M+D Properties, a California corporation ("M+D"), on an as-needed basis to cover any shortfalls in the Budget.  The full basis for the Motion are set forth in detailed in the attached Memorandum of Points and Authorities and the Chae Declaration attached hereto.

The Motion is based upon 11 U.S.C. § 363, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules 4001-2 and 9013-1, the supporting Memorandum of Points and Authorities and the Chae Declaration attached hereto, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to the Motion must be in writing, filed with the Court and served upon the United States Trustee as well as counsel for the Debtor at the address set forth in the upper left-

hand corner of the first page of this Notice and Motion by no later than fourteen (14) days before the date of the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(h), the failure to file and serve a timely opposition to the Motion may be deemed by the Court to constitute consent to the granting of the relief requested in the Motion.

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order, in substantially the form attached as **Exhibit "2"** to the Chae Declaration annexed hereto:

(1)    granting the Motion;

(2)    authorizing the Debtor to use cash collateral to (i) pay all of the expenses set forth in the Budget, with authority to deviate from the line items contained in the Budget by up to 10%, on both a line item and aggregate basis, with any unused portions to be carried over into the following week(s); and (ii) pay all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court;

(3)    authorizing the Debtor to obtain the DIP Loan from M+D in an amount up to $80,000, at the discretion of M+D, to cover any shortfalls in the Debtor's Budget; and

(4)    granting such further relief as the Court deems just and proper.

Dated: May 19, 2021                    THE SOURCE HOTEL, LLC

By:_____
                                       RON BENDER
                                       JULIET Y. OH
                                       LEVENE, NEALE, BENDER, YOO
                                            & BRILL L.L.P.
                                       Attorneys for Chapter 11 Debtor and
                                       Debtor-in-Possession

3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    Background.**

1.    On February 26, 2021 (the "Petition Date"), The Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    The Debtor is a limited liability company that was organized in November, 2012 in the State of California.  DMC Investment Holdings, LLC ("DMC") is a member of the Debtor which holds 100 units (or 100%) of Series 1 membership units in the Debtor.  Donald Chae and Min S. Chae, who are brothers, are the members and principals of DMC.  In addition to the Series 1 membership units held by DMC, an EB-5 investor entity called Beach Orangethorpe Hotel III, LLC ("BOH3") holds 29 units (or 100%) of Series 2 preferred membership units in the Debtor.

3.    Since at least 2014, the Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which upon completion will include conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services.  The Hotel is part of a larger 12.8-acre mixed-use development project (the "Master Development"), which includes a 400,000 square-foot retail center and a 50,000 square-foot seven-story office building which were completed in 2016.  The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property (the "Ground Lease") with the Debtor's affiliate, The Source at Beach, LLC.

4.    Construction of the Hotel began in 2016.  To finance the construction of the Hotel, on May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from Evertrust Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling

$35.5 million, including the EB-5 investment by BOH3 in the sum of $14,500,000, for which BOH3 acquired preferred membership units in the Debtor.  The Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel and the Debtor's leasehold interest in the real property that is the subject of the Ground Lease (the "Leasehold Interest"), pursuant to the parties' Commercial Security Agreement and the Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Leasehold) recorded in the County of Orange on June 3, 2016 as Document No. 2016000252446 (the "Deed of Trust").[1]  The original maturity date for the Loan was December 1, 2017, but was extended to November 1, 2019 pursuant to written extension agreements entered into by the parties.

5.    Through October 2019, approximately 85% of the Hotel construction had been completed, including: substantial completion of the core and shell, exterior painting, porte cochère, street lighting, ceiling framing, kitchen framing and glass block installation, food storages, all glass storefronts, electrical wiring and switchgear, guestroom flooring, ceiling fixtures, pool bar canopy structure, deck drains, window washing system, roof membrane, roof ductwork and HVAC vibration installation; nearly complete installation of bathroom fixtures (95%), acoustic ceiling system (80%), HVAC electrical connections (90%), piping for HVAC and plumbing equipment (95%), and rooftop ductwork (99%).  In addition, substantial materials have been procured and/or fabricated and are ready for installation pending completion of other items, such as first and second floor flooring, corridor carpeting, millwork (wall and ceiling panels, pool bar), passenger elevators, fire sprinklers, egress and accent lighting, pool equipment, guest room doors, locks and closures, bathroom fixtures, and rooftop HVAC equipment.

---

[1] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae filed in support of (and annexed to) that certain *Notice Of Motion And Motion For Entry Of An Order: (A) Requiring Turnover Of Estate Cash By Evertrust Bank; (B) Authorizing Debtor To Use Cash Collateral; And (C) Authorizing Debtor To Obtain Post-Petition Financing From M+D Properties On An Unsecured Basis* filed by the Debtor on March 12, 2021 [Doc. No. 21] (the "First CC/Financing Motion Declaration"), specifically Exhibit "C" and Exhibit "F" thereto, which include copies of the pre-petition loan and collateral documents with Evertrust.

6.      The approximately 15% of the Hotel construction which remains outstanding consists of mostly "finish work" such as the installation of flooring and carpeting, lighting, appliances, trade fixtures, furniture, furnishings and equipment already purchased by the Debtor (collectively, "FF&E").

**B.      Events Leading To Debtor's Bankruptcy Filing.**

7.      In late 2019, Evertrust refused to issue the remaining $4 million of the Loan, claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to provide the final $4 million of the Loan, the Debtor was forced to cease construction activities. However, the Debtor believes strongly that, had Evertrust funded the final $4 million as expected, construction of the Hotel would have been completed, as the Debtor believes that its contractors would have carried fifty percent of the cost overrun and the Debtor and its affiliates would have covered the remaining fifty percent of the overrun.

8.      When Evertrust refused to issue the remaining $4 million of the Loan, the Debtor immediately and actively sought to refinance the Loan.  The Debtor began discussions with a new lender named Hall Structured Finance ("Hall") in the fall of 2019 and was ultimately able to reach an agreement with Hall for refinancing in the total sum of $42 million.  During the course of the Debtor's refinancing discussions with Hall, the Debtor kept Evertrust apprised of all developments, and even provided Evertrust with a copy of the loan commitment letter from Hall in early 2020. The Debtor and Hall were on the verge of closing on the refinancing, with a target closing date of March 20, 2020, when local, county, and State officials issued lockdown orders as a result of the COVID-19 pandemic.  At that point, Hall put an indefinite hold on the closing of the refinancing with the Debtor.

9.      As a result, the Debtor went back to Evertrust and, between March 2020 and December 2020, engaged in active forbearance negotiations with Evertrust to obtain a further extension of the Loan maturity date so that the Hotel could recover from the effects of the COVID-19 pandemic, and the Debtor could obtain refinancing or additional construction financing and ultimately recommence construction of the Hotel.

10.     In the summer of 2020, while the Debtor and Evertrust were still engaged in forbearance negotiations, Evertrust commenced litigation against the guarantors of the Loan, Donald Chae and Min Chae, and recorded a Notice of Default against the Hotel.

11.     Subsequently, in December 2020, Shady Bird purchased Evertrust's interests in the Loan at a significant discount, for a reported purchase price of approximately $19 million.  While the Debtor engaged in discussions and negotiations with Shady Bird to attempt to reach a consensual resolution of the parties' disputes, such discussions and negotiations were ultimately unsuccessful.

12.     On February 8, 2021, Shady Bird filed a complaint against the Debtor in the Superior Court of the State of California for the County of Orange ("Superior Court") for (i) specific performance and appointment of a receiver, and (ii) waste, thereby commencing the Superior Court action bearing the case number 30-2021-01183489-CU-OR-CJC (the "State Court Action").  Shady Bird also took steps to immediately foreclose on the Hotel and issued a Notice of a Trustee's Sale for the Hotel to be held on March 1, 2021.

13.     Shortly after filing its complaint to initiate the State Court Action, Shady Bird filed an ex parte application for an order appointing a receiver and other related relief.  On February 17, 2021, the Superior Court entered an order in the State Court Action appointing Bellann R. Raile as Receiver to, among other things, take possession of the Hotel and all goods, furniture, fixtures, and equipment attached and/or related to the Hotel.

14.     As a result of the foregoing, the Debtor sought chapter 11 bankruptcy protection on the Petition Date (*i.e.*, February 26, 2021) in order to prevent the impending foreclosure of the Hotel, to regain possession of the Hotel and related assets and obtain refinancing or investments to enable the Debtor to complete construction of the Hotel, and to obtain a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion.

**C.     Description Of The Debtor's Assets And Debts.**

15.     The Debtor's primary assets consist of the Hotel, the Leasehold Interest, and a substantial amount of FF&E.  The Debtor believes that the current value of the Hotel in "as is"

condition is at least $50,000,000 and that its fair market value upon completion will be at least $60,000,000.[2]   The Debtor also believes that the total value of the FF&E (calculated at cost, excluding fabrication labor costs) is approximately $2,700,000.

16.    The Debtor's primary secured creditor is Shady Bird Lending, LLC ("Shady Bird"), who acquired the Loan from Evertrust in December, 2020.   Shady Bird contends that the outstanding balance of the Loan was $30,948,839.27 as of March 1, 2021.   As noted above, the Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel, the Leasehold Interest, and the FF&E.

17.    There are a number of subcontractors that have recorded mechanics' liens against the Debtor and/or Hotel.   As reflected in the Debtor's Schedules of Assets and Liabilities filed in this case [Doc. No. 32], the Debtor believes that the total amount of the mechanics' liens recorded against the Debtor and/or Hotel is approximately $2,900,000.[3]   However, some of these recorded mechanics' liens appear to have expired or have not been properly perfected, or are otherwise disputed by the Debtor.   While the holders of these mechanics' liens may hold valid and properly perfected liens against the Hotel and the Debtor's Leasehold Interest, they have not filed UCC-1 financing statements against the Debtor and therefore do not hold valid, properly perfected liens against the Debtor's cash.

18.    The Debtor also received two tranches of EB-5 loans from Beach Orangethorpe Hotel, LLC and Beach Orangethorpe Hotel II, LLC (together, the "EB-5 Lenders," or individually, an "EB-5 Lender").   The Debtor's obligations under the loans from the EB-5 Lenders, in the total

---

[2] HVS Consulting & Valuation previously prepared an appraisal report for the Hotel, which reflected an "as is" value of $40,900,000 for the Hotel as of October 14, 2019.  In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae in support of that certain *Opposition To Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* [Doc. No. 65], specifically Exhibit "4" thereto, which includes a true and correct copy of the foregoing appraisal report.

[3] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae in support of the First CC/Financing Motion, specifically Exhibit "G" thereto, which includes a list of asserted mechanic's liens prepared by the Debtor as well as a preliminary title report for the Hotel dated December 22, 2020.

principal sum of $21,500,000, are secured by junior liens against the Hotel and the Leasehold Interest.[4]  Neither of the EB-5 Lenders has filed a UCC-1 financing statement against the Debtor and therefore neither of the EB-5 Lenders holds a valid, properly perfected lien against the Debtor's cash.

19.    There are no parties other than Shady Bird (as the successor-in-interest to Evertrust) that holds a properly perfected lien against the Debtor's cash.[5]

20.    The Debtor is also advised that Hirsch Bedner Associates Procurement Procurement and/or FDH Warehouse (together, the "Warehouse"), which is currently storing at least one container of FF&E belonging to the Debtor with an estimated aggregate market value of at least $100,000, asserts a warehouseman's lien against the stored FF&E.  The Debtor is advised that the outstanding balance of the storage fees owed to the Warehouse is $8,285.42, with an additional $637.34 to accrue on June 7, 2021, for a total of $8,922.76.  The Warehouse has advised the Debtor that it will seek to dispose of the Debtor's stored FF&E if the Debtor does not promptly pay the accrued storage fees.

21.    In addition to the foregoing secured debts, the Debtor believes it has general unsecured debts totaling approximately $2,150,000.

**D.    Post-Petition Cash Collateral Use And Case Administration.**

22.    On March 12, 2021, the Debtor filed the First CC/Financing Motion, pursuant to which the Debtor sought the entry of a Court order (i) requiring Evertrust to turn over and deliver to the Debtor cash held in the Debtor's pre-petition bank accounts at Evertrust; (ii) authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget (the "Initial Budget"); and (iii) authorizing the Debtor to obtain post-petition unsecured financing up to

---

[4] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae in support of the First CC/Financing Motion, specifically Exhibit "H" thereto, which includes copies of the Deeds of Trust recorded against the Hotel by the two EB-5 Lenders.

[5] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Juliet Y. Oh filed in support of First CC/Financing Motion, specifically Exhibit "F" thereto, which includes the results of a UCC search for the Debtor.

$100,000 (the "Initial DIP Loan") from the Debtor's manager, M+D.  The Initial Budget provided for the payment of expenses critical to the maintenance and preservation of the Hotel, including insurance premiums, utility expenses, post-petition utility deposits, and real property taxes.

23.    On March 23, 2021, the Court entered an order granting the CC/Financing Motion on an interim basis, pending a final hearing scheduled on May 6, 2021, subject to certain minor modifications agreed to by the Debtor and set forth in such order [Doc. No. 46] (the "Interim Order").  On May 12, 2021, the Court entered a final order granting the CC/Financing Motion [Doc. No. 118] (the "Final Order").

24.    The Debtor has paid the expenses set forth in the Initial Budget, including secured real property taxes which came due in April, 2021, in accordance with the terms of the Interim Order and Final Order.  The Debtor received Initial DIP Loan advances totaling $61,424.91 from M+D during the period covered by the Initial Budget.

25.    As noted above, the Receiver was appointed by the Superior Court shortly before the Petition Date.  On March 25, 2021, Shady Bird filed that certain *Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* [Doc. No. 51] (the "Receiver Motion") in the Debtor's bankruptcy case, pursuant to which Shady Bird sought the entry of a Court order excusing the Receiver from complying with the requirements of 11 U.S.C. § 543, specifically, the requirement to deliver to the Debtor all property belonging to the Debtor over which the Receiver currently has possession, custody or control.  On April 1, 2021, the Debtor filed its opposition to the Receiver Motion [Doc. No. 65] and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the Receiver Motion [Doc. No. 72].

26.    At the hearing on the Receiver Motion held on April 15, 2021, the Court granted the Receiver Motion on an interim basis only, to permit the Receiver to make certain repairs and perform certain work on the Hotel with funds up to $200,000 "gifted" to the Debtor's estate by Shady Bird (the "Gifted Advances"), pending a continued hearing on the Receiver Motion to be held on June 3, 2021.

27.    The Debtor has been, and continues to be, engaged in active discussions with prospective lenders and investors regarding the terms for debtor-in-possession and/or exit financing, which will provide the Debtor with the funding necessary to complete the construction of the Hotel, service debt, operate the Hotel until operations can be stabilized, and potentially fund a feasible plan of reorganization in the Debtor's case.  The Debtor believes that it can successfully complete the construction of the Hotel and satisfy valid mechanic's liens recorded against the Hotel if the Debtor obtains additional financing of approximately $12,000,000 - $16,000,000.  The Debtor also believes that the construction of the Hotel can be completed and a certificate of occupancy obtained within 9-12 months from the date of restarting construction.  If the Debtor ultimately proceeds with debtor-in-possession financing (instead of exit financing), the Debtor will file a motion for Court approval of such financing as soon as it is in a position to do so.  If the Debtor proceeds with exit financing, the Debtor will likely propose a plan of reorganization, in conjunction with its proposed lender and plan supporter, which provides for the restructuring and/or repayment of the Debtor's secured debt, and provides for a recovery to the Debtor's general unsecured creditors who would otherwise receive nothing.

28.    In addition, and on a parallel path to the Debtor's efforts to obtain debtor-in-possession and/or exit financing to propose a plan of reorganization, the Debtor is also currently evaluating a process for marketing and selling the Hotel through a Section 363 sale.  The Debtor intends to discuss such marketing and sale process with Shady Bird in the hopes of reaching an agreement regarding such process.

**E.    The Need For Continued Use Of Cash Collateral And Additional Post-Petition Financing.**

29.    As reflected in the Debtor's proposed operating budget covering the approximately four month period from May 29, 2021 through and including October 1, 2021 (the "Budget"), a true and correct copy of which is attached as **Exhibit "1"** to the Declaration of Donald Chae annexed hereto (the "Chae Declaration"), the Debtor requires the continued use of its cash to pay expenses which are critical to the maintenance and preservation of the Hotel, such

as utility expenses and insurance premiums, as well as all quarterly fees payable to the Office of the United States Trustee, and all expenses payable to the Clerk of the Bankruptcy Court. The Debtor also seeks authority to deviate from the line items contained in the Budget by not more than 10%, on both a line item and aggregate basis, with any unused portions to be carried over into the following week(s), which is consistent with the variances approved in the Interim Order and Final Order.

30.    The Debtor must be able to use its cash, in accordance with the Budget, to pay expenses which are critical to the maintenance and preservation of the Hotel. If the Debtor does not obtain authority to use its cash collateral, the Debtor's estate will suffer potentially irreparable harm, including, without limitation, the termination of utility services at the Hotel and the termination of insurance coverage for the Hotel, which in turn will jeopardize the value of the Hotel and the FF&E which are maintained at the Hotel.

31.    In the event that the Receiver Motion is denied at the continued hearing on June 3, 2021, and the Receiver is required to turn over possession and control of the Debtor's assets (including the Hotel) to the Debtor, the Debtor will need to spend cash to secure, maintain, and if appropriate make repairs to the Hotel. Accordingly, the Budget provides for the payment of expenses necessary to secure, maintain, and make any appropriate repairs to the Hotel, in the estimated sum of $5,000 every two weeks.

32.    In addition, the Budget provides for the payment of the outstanding balance of the storage fees owed by the Debtor to the Warehouse (which the Debtor estimates will total almost $9,000 by mid-June, 2021 and for which the Warehouse has asserted a warehouseman's lien), to secure the release of the FF&E that is currently being stored at the Warehouse.

33.    As reflected in the Budget, the Debtor's current cash is not sufficient to pay all of the expenses set forth in the Budget, including those critical expenses required to be paid to secure, maintain and preserve the Hotel. The Debtor therefore requires post-petition funding to pay such expenses.

34.    Fortunately, M+D (the Debtor's non-member Manager) has agreed to provide the

Debtor with post-petition financing in an amount up to $100,000 on a general unsecured basis and on an as-needed basis, subject to the discretion of M+D (the "<u>DIP Loan</u>").  The DIP Loan has been offered by M+D on an interest-free basis.  Any advance made to the Debtor by M+D shall be deemed an allowed general unsecured claim against the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 364(b).

35.    As reflected by the Budget, the Debtor believes that the proposed DIP Loan from M+D will provide the Debtor with sufficient funds to pay all of the expenses reflected in the Budget during the period covered by the Budget.

**II.**

**<u>DISCUSSION</u>**

**A.    <u>The Debtor Should Be Authorized To Use Cash Collateral.</u>**

The Debtor's use of property of its bankruptcy estate is governed by Section 363 of the Bankruptcy Code.  Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(l).

A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  *See* 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ."  11 U.S.C. §363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(l) if:

> (A) each entity that has an interest in such cash collateral consents; or

13

(B)    the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

*See* 11 U. S.C. § 363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Industrial Partners*, 129 B.R. 614 (9th Cir. BAP 1991).

The critical expenses that the Debtor must be able to pay to maintain and preserve the Hotel and the Debtor's other assets are set forth in the Budget attached as Exhibit "1" to the Chae Declaration.  The Debtor must be able to use its cash collateral to pay such expenses, which include utility expenses, insurance premiums, security and maintenance expenses, and secured storage fees which must be paid to obtain the release of certain of the Debtor's FF&E.  The Debtor's inability to pay such expenses would result in the cessation of utility services to the Hotel, the termination of insurance coverage for the Hotel and related assets, potential disrepair to the Hotel, and the potential dissipation of certain of the Debtor's FF&E, thereby causing irreparable harm to the Debtor's bankruptcy estate.  The preservation and maximization of the Debtor's assets are of the utmost significance and will facilitate a successful reorganization of the Debtor through this Chapter 11 case.

In addition to the expenses set forth in the Budget, the Debtor seeks authority to use cash collateral to pay all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court.  To provide the Debtor with reasonable flexibility in the event that the actual amounts of the Debtor's expenses are higher than projected, the Debtor also seeks authority to deviate from the line items contained in the Budget by not more than 10%, on both a line item and aggregate basis, with any unused portions to be carried over into the following week(s).

Pursuant to Section 363(c)(2), the Court may authorize a debtor in possession to use a secured creditor's cash collateral if the secured creditor consents to the use of cash collateral or is

adequately protected.  *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984).  *See also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. l988) ("*McCombs*").

Even if Shady Bird, which is the only creditor that holds a valid and properly perfected lien in the Debtor's cash, does not consent to the Debtor's use of cash collateral, the Debtor submits that the value of Shady Bird's interests in the Debtor's cash and other assets will be adequately protected by a substantial equity cushion.

Pursuant to the Supreme Court case of *United Savings Association v. Timbers of Inwood Forest Associates*, 108 S.Ct. 626, 629 (1988) ("*Timbers*") and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim.  *Timbers*, 108 S.Ct. at 630.  *See also McCombs, supra*, at 266.  Section 506(a) "limit[s] the secured status of a creditor (*i.e.*, the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral."  *McCombs* at 266.

The Ninth Circuit made clear in *Mellor*, *Id.* at 1401, that an equity cushion of 20% is considered clear adequate protection of a secured creditor's interest in cash collateral.  *See also In re McGowan,* 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding a 10% cushion is sufficient to be adequate protection); *In re Rogers Development Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Vir. 1980) (court decided that an equity cushion of approximately 15% to 20% was sufficient adequate protection to the creditor, even though the debtors had no equity in the property).

Furthermore, in determining whether a secured creditor has equity in property, the Court should consider the "entire security package" not just a portion thereof.  *In re Opelika Manufacturing Corporation*, 66 B.R. 444, 447-48 (Bankr. N.D. Ill. 1986).

Both as of the Petition Date and the date of the filing of this Motion, the Debtor was (and is) holding the following assets: (i) the Hotel, which was appraised for an "as is" value of $40,900,000 in October, 2019; and (ii) FF&E with an estimated value (at cost, excluding

fabrication labor costs) of $2,700,000.  Based on the foregoing, the current aggregate value of the Debtor's assets is estimated to be $43,600,000.

Shady Bird contends in its motion for relief from the automatic stay filed in the Debtor's bankruptcy case [Doc. No. 62] that the outstanding balance of the Loan was $30,948,839.27 as of March 1, 2021.  Given the aggregate value of the Debtor's assets (*i.e.*, approximately $43,600,000), and the total estimated amount currently owed to Shady Bird (*i.e.*, approximately $31,000,000), Shady Bird is adequately protected by an equity cushion of more than 40%, which far exceeds the 20% range that the Ninth Circuit has indicated constitutes clear adequate protection of a secured creditor's interest in cash collateral.

As additional protection for the Debtor's use of cash collateral, the Debtor proposes to provide Shady Bird with a valid, enforceable, non-avoidable and fully perfected first priority replacement lien on, and security interest in, the Debtor's post-petition assets, including cash, to the extent of any diminution in value of Shady Bird's interest in the Debtor's pre-petition collateral, and to the same extent, validity, and priority of Shady Bird's pre-petition lien.  Such replacement lien will provide Shady Bird with further adequate protection.

Given the foregoing forms of adequate protection being provided to Shady Bird for the Debtor's use of cash collateral, the Debtor submits that the requirements of Bankruptcy Code Section 363(c)(2) have been satisfied and that the Debtor should be authorized to use cash collateral in accordance with the terms set forth in this Motion.

**B.**     **The Debtor Should Be Authorized To Obtain The Proposed DIP Loan From M+D To Cover Any Shortfalls In The Budget.**

Pursuant to Section 364(b) of the Bankruptcy Code, the Debtor requests authority to obtain the proposed DIP Loan from its Manager, M+D, on a general unsecured basis, in a sum up to $80,000, as necessary and at the discretion of M+D, to cover any shortfalls in the Budget.

Section 364 of the Bankruptcy Code is structured with an escalating series of inducements which a debtor in possession may offer to attract credit during the post-petition period.  *In re Photo Promotion Associates, Inc.*, 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), *aff'd*,

881 F.2d 6 (2d. Cir. 1989).  Therefore, where a trustee or debtor in possession cannot otherwise

obtain unsecured post-petition credit, such credit may be obtained under certain carefully

proscribed conditions.  *In re T.M. Sweeney & Sons LTL Services, Inc.*, 131 B.R. 984, 989

(Bankr.N.D.Ill.1991).  For example, if creditors are unwilling to extend unsecured credit to a

debtor in possession, further inducements are offered, with court approval after notice and a

hearing, including, without limitation, liens equal to or senior to existing liens on encumbered

property in accordance with 11 U.S.C. § 364(d).  *In re Photo Promotion Associates, Inc.,* 87 B.R.

at 839.

Section 364(c) of the Bankruptcy Code also enumerates certain incentives that a court

may grant to post-petition lenders.  The Section 364(c) list, however, is not exhaustive.  Courts

frequently have authorized the use of inducements not specified in the statute.  *See, e.g., In re

Ellingsen MacLean Oil Co.*, 834 F.2d 599 (6th Cir. 1987) (affirming financing order which

prohibited any challenges to the validity of already existing liens); *In re Defender Drug Stores*,

126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to post-petition lender), aff'd

145 B.R. 312, 316 (Bankr. 9th Cir. 1992) ("[b]ankruptcy courts . . . have regularly authorized

postpetition financial arrangements containing lender incentives beyond the explicit priorities

and liens specified in section 364"); *In re Antico Mfg. Co.,* 31 B.R. 103 (Bankr. E.D.N.Y. 1983)

(authorizing lien on pre-petition collateral to secure post-petition indebtedness).

Two factors courts consider in determining whether to authorize post-petition financing

which contemplates the granting of a security interest in favor of the lender are (1) whether the

debtor is unable to obtain unsecured credit per 11 U.S.C. § 364(b), *i.e.*, by allowing a lender only

an administrative claim per 11 U.S.C. § 364(b)(1)(A); and (2) whether the terms of the

transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and

the proposed lender.  *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D.Pa. 1987); *see also

In re Aqua Assoc.*, 123 B.R. 192, 195 (Bankr. E.D.Pa. 1991).

M+D, the Debtor's non-member Manager, has agreed to provide the DIP Loan to the

Debtor on a general unsecured basis, so the Debtor does not need to grant any liens to secure

1    such DIP Loan.  While 11 U.S.C. § 364(b) permits a lender to be allowed an administrative

2    claim for unsecured post-petition financing, M+D has agreed to assert only a general unsecured

3    claim (rather than an administrative claim) against the Debtor's estate for the amount of the DIP

4    Loan.

5         While in determining whether to approve such a transaction, a Court is authorized to act

6    in its informed discretion, *In re Ames Department Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y.

7    1990), the Court should give broad deference to the business decision of a Chapter 11 debtor,

8    particularly with respect to a debtor's business judgment regarding the need for and proposed use

9    of funds.  *Richmond Leasing Co. v. Capital Bank N.A.,* 762 F.2d 1303, 1311 (5th Cir. 1985).  As

10   the Court noted in *In re Ames Dept. Stores Inc., supra*, "the court's discretion under section 364

11   is to be utilized on the grounds that permit the reasonable business judgment [of the Debtor] to

12   be exercised . . ."  *In re Ames Department Stores, Inc.,* 115 B.R. at 40.

13        The Debtor, in the exercise of its business judgment, has concluded that obtaining the

14   proposed DIP Loan from its affiliate, M+D, is in the clear best interests of the Debtor's estate

15   because, without such funds, the Debtor will be unable to pay the expenses set forth in the

16   Budget, which are critical to the maintenance and preservation of the Hotel and FF&E.  The

17   Debtor believes that it is fortunate that M+D has agreed to provide the DIP Loan to the Debtor

18   on a general unsecured basis under the circumstances.

19        The Debtor respectfully submits that (i) the terms and conditions of the DIP Loan are fair

20   and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its

21   fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the

22   DIP Loan has been negotiated in good faith between the Debtor and M+D, and (iii) any DIP

23   Loan advances to be made to the Debtor by M+D will be made in "good faith" within the

24   meaning of 11 U.S.C. § 364(e).

25        In the absence of the proposed DIP Loan, the Debtor's estate would suffer irreparable

26   harm, including, without limitation, damage to the Hotel (which is the Debtor's primary asset)

27   due to the Debtor's inability to pay expenses critical to the maintenance and preservation of the

28

Hotel. Such harm would, in turn, negatively impact the Debtor's ability to successfully reorganize in this case. The Debtor submits that the preservation and maintenance of the Hotel and the Debtor's other assets are critical to a successful restructuring in this case.

**C.    The Debtor Has Satisfied The Procedural Requirements Regarding Approval Of The Proposed DIP Loan.**

Rule 4001(c) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") sets forth procedural requirements for obtaining post-petition financing. There are three general procedural requirements. The Debtor submits that it has complied with these procedural requirements. First, the Motion must contain a copy of any financing agreement and the proposed form of order granting the Motion. There is no written financing agreement between the Debtor and M+D, so no such agreement has been attached hereto. However, the proposed form of order granting the Motion is attached as **Exhibit "2"** to the Chae Declaration. Second, the Motion must provide a concise statement of the relief requested, which was done above. Third, the Motion is required to be served on any committee appointed or the twenty largest unsecured creditors if there is no committee, and on such other parties as the Court directs. Here, the Debtor has served a copy of the Motion and all supportive papers upon the Office of the United States Trustee, all known secured creditors, the twenty largest unsecured creditors of the Debtor, and parties requesting special notice. Accordingly, the Motion complies with the requirements of Bankruptcy Rule 4001(c).

In addition, in compliance with Bankruptcy Rule 4001(c)(1)(B) and Local Bankruptcy Rule 4001-2, the Debtor has filed concurrently herewith the mandatory Court-approved Form F4001-2 (Statement Regarding Cash Collateral Or Debtor In Possession Financing), which discloses whether the proposed order granting the motion and authorizing the Debtor to obtain the proposed DIP Loan from M+D contains certain provisions of findings of fact. Accordingly, the Motion complies with the procedural requirements of Local Bankruptcy Rule 4001-2.

### III.

### <u>CONCLUSION</u>

Based upon all of the foregoing, the Debtor respectfully requests that this Court enter an Order, in substantially the form attached as **<u>Exhibit "2"</u>** to the Chae Declaration annexed hereto:

(1)    granting the Motion;

(2)    authorizing the Debtor to use cash collateral to (i) pay all of the expenses set forth in the Budget, with authority to deviate from the line items contained in the Budget by up to 10%, on both a line item and aggregate basis, with any unused portions to be carried over into the following week(s); and (ii) pay all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court;

(3)    authorizing the Debtor to obtain the DIP Loan from M+D in an amount up to $80,000, at the discretion of M+D, to cover any shortfalls in the Debtor's Budget; and

(4)    granting such further relief as the Court deems just and proper.

Dated: May 19, 2021                THE SOURCE HOTEL, LLC

By:_____
                    RON BENDER
                    JULIET Y. OH
                    LEVENE, NEALE, BENDER, YOO
                        & BRILL L.L.P.
                    Proposed Attorneys for Chapter 11 Debtor
                    and Debtor-in-Possession

# DECLARATION OF DONALD CHAE

I, Donald Chae, hereby declare as follows:

1.      I am the Manager and a member of DMC Investment Holdings, LLC ("DMC"), which is a member of The Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-possession herein (the "Debtor"), and I am therefore familiar with the business operations and financial records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.      I make this declaration in support of that certain *Notice Of Motion And Motion For Entry Of An Order: (A) Authorizing Debtor To Use Cash Collateral; And (B) Authorizing Debtor To Obtain Post-Petition Financing From M+D Properties On An Unsecured Basis* (the "Motion"), to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

## A.    Background

3.      On February 26, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession.

4.      The Debtor is a limited liability company that was organized in November, 2012 in the State of California.  DMC is a member of the Debtor which holds 100 units (or 100%) of Series 1 membership units in the Debtor.  My brother, Min S. Chae, and I are the members and principals of DMC.  In addition to the Series 1 membership units held by DMC, an EB-5 investor entity called Beach Orangethorpe Hotel III, LLC ("BOH3") holds 29 units (or 100%) of Series 2 preferred membership units in the Debtor.

5.      Since at least 2014, the Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which upon completion will include conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services.  The Hotel is part of a larger 12.8-acre mixed-use development project (the "Master Development"), which includes a 400,000 square-foot retail

center and a 50,000 square-foot seven-story office building which were completed in 2016.  The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property (the "Ground Lease") with the Debtor's affiliate, The Source at Beach, LLC.

6.    Construction of the Hotel began in 2016.  To finance the construction of the Hotel, on May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from Evertrust Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling $35.5 million, including the EB-5 investment by BOH3 in the sum of $14,500,000, for which BOH3 acquired preferred membership units in the Debtor.  The Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel and the Debtor's leasehold interest in the real property that is the subject of the Ground Lease (the "Leasehold Interest"), pursuant to the parties' Commercial Security Agreement and the Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Leasehold) recorded in the County of Orange on June 3, 2016 as Document No. 2016000252446 (the "Deed of Trust").  The original maturity date for the Loan was December 1, 2017, but was extended to November 1, 2019 pursuant to written extension agreements entered into by the parties.

7.    Through October 2019, approximately 85% of the Hotel construction had been completed, including: substantial completion of the core and shell, exterior painting, porte cochère, street lighting, ceiling framing, kitchen framing and glass block installation, food storages, all glass storefronts, electrical wiring and switchgear, guestroom flooring, ceiling fixtures, pool bar canopy structure, deck drains, window washing system, roof membrane, roof ductwork and HVAC vibration installation; nearly complete installation of bathroom fixtures (95%), acoustic ceiling system (80%), HVAC electrical connections (90%), piping for HVAC and plumbing equipment (95%), and rooftop ductwork (99%).  In addition, substantial materials have been procured and/or fabricated and are ready for installation pending completion of other items, such as first and second floor flooring, corridor carpeting, millwork (wall and ceiling panels, pool bar), passenger elevators,

1    fire sprinklers, egress and accent lighting, pool equipment, guest room doors, locks and closures,

2    bathroom fixtures, and rooftop HVAC equipment.

3        8.    The approximately 15% of the Hotel construction which remains outstanding

4    consists of mostly "finish work" such as the installation of flooring and carpeting, lighting,

5    appliances, trade fixtures, furniture, furnishings and equipment already purchased by the Debtor

6    (collectively, "FF&E").

7    **B.    Events Leading To Debtor's Bankruptcy Filing.**

8        9.    In late 2019, Evertrust refused to issue the remaining $4 million of the Loan,

9    claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to

10   provide the final $4 million of the Loan, the Debtor was forced to cease construction activities.

11   However, I believe strongly that, had Evertrust funded the final $4 million as expected,

12   construction of the Hotel would have been completed, as I believe that the Debtor's contractors

13   would have carried fifty percent of the cost overrun and the Debtor and its affiliates would have

14   covered the remaining fifty percent of the overrun.

15       10.    When Evertrust refused to issue the remaining $4 million of the Loan, the Debtor

16   immediately and actively sought to refinance the Loan.  The Debtor began discussions with a new

17   lender named Hall Structured Finance ("Hall") in the fall of 2019 and was ultimately able to reach

18   an agreement with Hall for refinancing in the total sum of $42 million.  During the course of the

19   Debtor's refinancing discussions with Hall, the Debtor kept Evertrust apprised of all developments,

20   and even provided Evertrust with a copy of the loan commitment letter from Hall in early 2020.

21   The Debtor and Hall were on the verge of closing on the refinancing, with a target closing date of

22   March 20, 2020, when local, county, and State officials issued lockdown orders as a result of the

23   COVID-19 pandemic.  At that point, Hall put an indefinite hold on the closing of the refinancing

24   with the Debtor.

25       11.    As a result, the Debtor went back to Evertrust and, between March 2020 and

26   December 2020, engaged in active forbearance negotiations with Evertrust to obtain a further

27   extension of the Loan maturity date so that the Hotel could recover from the effects of the COVID-

28

19 pandemic, and the Debtor could obtain refinancing or additional construction financing and ultimately recommence construction of the Hotel.

12.    In the summer of 2020, while the Debtor and Evertrust were still engaged in forbearance negotiations, Evertrust commenced litigation against the guarantors of the Loan, my brother, Min Chae, and me, and recorded a Notice of Default against the Hotel.

13.    Subsequently, in December 2020, Shady Bird purchased Evertrust's interests in the Loan at a significant discount, for a reported purchase price of approximately $19 million. While the Debtor engaged in discussions and negotiations with Shady Bird to attempt to reach a consensual resolution of the parties' disputes, such discussions and negotiations were ultimately unsuccessful.

14.    On February 8, 2021, Shady Bird filed a complaint against the Debtor in the Superior Court of the State of California for the County of Orange ("Superior Court") for (i) specific performance and appointment of a receiver, and (ii) waste, thereby commencing the Superior Court action bearing the case number 30-2021-01183489-CU-OR-CJC (the "State Court Action"). Shady Bird also took steps to immediately foreclose on the Hotel and issued a Notice of a Trustee's Sale for the Hotel to be held on March 1, 2021.

15.    Shortly after filing its complaint to initiate the State Court Action, Shady Bird filed an ex parte application for an order appointing a receiver and other related relief. On February 17, 2021, the Superior Court entered an order in the State Court Action appointing Bellann R. Raile as Receiver to, among other things, take possession of the Hotel and all goods, furniture, fixtures, and equipment attached and/or related to the Hotel.

16.    As a result of the foregoing, the Debtor sought chapter 11 bankruptcy protection on the Petition Date (i.e., February 26, 2021) in order to prevent the impending foreclosure of the Hotel, to regain possession of the Hotel and related assets and obtain refinancing or investments to enable the Debtor to complete construction of the Hotel, and to obtain a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion.

**C.      Description Of The Debtor's Assets And Debts.**

17.      The Debtor's primary assets consist of the Hotel, the Leasehold Interest, and a substantial amount of FF&E.  Based on a prior appraisal of the Hotel performed by HVS Consulting & Valuation, which resulted in an "as is" value of $40,900,000 as of October 14, 2019, and based upon my decades of commercial real estate experience and knowledge, I believe that the current value of the Hotel in "as is" condition is at least $50,000,000 and that its fair market value upon completion will be at least $60,000,000.  I also believe that the total value of the Debtor's FF&E (calculated at cost, excluding fabrication labor costs) is approximately $2,700,000.

18.      The Debtor's primary secured creditor is Shady Bird Lending, LLC ("Shady Bird"), who acquired the Loan from Evertrust in December, 2020.  I am advised and believe that Shady Bird contends that the outstanding balance of the Loan was $30,948,839.27 as of March 1, 2021.

19.      To the best of my knowledge, there are a number of subcontractors that have recorded mechanics' liens against the Debtor and/or Hotel.  As reflected in the Debtor's Schedules of Assets and Liabilities filed in its case, I believe that the total amount of the mechanics' liens recorded against the Debtor and/or Hotel is approximately $2,900,000.  However, some of these recorded mechanics' liens appear to have expired or have not been properly perfected, or are otherwise disputed by the Debtor.  While the holders of these mechanics' liens may hold valid and properly perfected liens against the Hotel and the Debtor's Leasehold Interest, it is my understanding and believe that they have not filed UCC-1 financing statements against the Debtor and therefore do not hold valid, properly perfected liens against the Debtor's cash.

20.      The Debtor also received two tranches of EB-5 loans from Beach Orangethorpe Hotel, LLC and Beach Orangethorpe Hotel II, LLC (together, the "EB-5 Lenders," or individually, an "EB-5 Lender").  I am advised and believe that he Debtor's obligations under the loans from the EB-5 Lenders, in the total principal sum of $21,500,000, are secured by junior liens against the Hotel and the Leasehold Interest.  To the best of my knowledge, neither of the EB-5 Lenders has filed a UCC-1 financing statement against the Debtor and therefore neither of the EB-5 Lenders holds a valid, properly perfected lien against the Debtor's cash.

21.    To the best of my knowledge, there are no parties other than Shady Bird (as the successor-in-interest to Evertrust) that holds a properly perfected lien against the Debtor's cash.

22.    The Debtor has been advised that Hirsch Bedner Associates Procurement Procurement and/or FDH Warehouse (together, the "Warehouse"), which is currently storing at least one container of FF&E belonging to the Debtor with an estimated aggregate market value of at least $100,000, asserts a warehouseman's lien against the stored FF&E.  The Debtor has been advised that the outstanding balance of the storage fees owed to the Warehouse is $8,285.42, with an additional $637.34 to accrue on June 7, 2021, for a total of $8,922.76.  The Warehouse has advised that it will seek to dispose of the Debtor's stored FF&E if the Debtor does not promptly pay the accrued storage fees.

23.    In addition to the foregoing secured debts, I believe that the Debtor has general unsecured debts totaling approximately $2,150,000.

**D.    Post-Petition Cash Collateral Use And Case Administration.**

24.    On March 12, 2021, the Debtor filed the First CC/Financing Motion, pursuant to which the Debtor sought the entry of a Court order (i) requiring Evertrust to turn over and deliver to the Debtor cash held in the Debtor's pre-petition bank accounts at Evertrust; (ii) authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget (the "Initial Budget"); and (iii) authorizing the Debtor to obtain post-petition unsecured financing up to $100,000 (the "Initial DIP Loan") from the Debtor's manager, M+D.  The Initial Budget provided for the payment of expenses critical to the maintenance and preservation of the Hotel, including insurance premiums, utility expenses, post-petition utility deposits, and real property taxes.

25.    I am advised and believe that, on March 23, 2021, the Court entered an order granting the CC/Financing Motion on an interim basis, pending a final hearing scheduled on May 6, 2021, subject to certain minor modifications agreed to by the Debtor and set forth in such order (the "Interim Order").  I am further advised and believe that, on May 12, 2021, the Court entered a final order granting the CC/Financing Motion (the "Final Order").

26.     The Debtor has paid the expenses set forth in the Initial Budget, including secured real property taxes which came due in April, 2021, in accordance with the terms of the Interim Order and Final Order.  The Debtor received Initial DIP Loan advances totaling $61,424.91 from M+D during the period covered by the Initial Budget.

27.     As noted above, the Receiver was appointed by the Superior Court shortly before the Petition Date.  On March 25, 2021, Shady Bird filed that certain *Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* (the "Receiver Motion") in the Debtor's bankruptcy case, pursuant to which Shady Bird sought the entry of a Court order excusing the Receiver from complying with the requirements of 11 U.S.C. § 543, specifically, the requirement to deliver to the Debtor all property belonging to the Debtor over which the Receiver currently has possession, custody or control.  On April 1, 2021, the Debtor filed its opposition to the Receiver Motion and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the Receiver Motion.

28.     At the hearing on the Receiver Motion held on April 15, 2021, which I attended, the Court granted the Receiver Motion on an interim basis only, to permit the Receiver to make certain repairs and perform certain work on the Hotel with funds up to $200,000 "gifted" to the Debtor's estate by Shady Bird (the "Gifted Advances"), pending a continued hearing on the Receiver Motion to be held on June 3, 2021.

29.     The Debtor has been, and continues to be, engaged in active discussions with prospective lenders and investors regarding the terms for debtor-in-possession and/or exit financing, which will provide the Debtor with the funding necessary to complete the construction of the Hotel, service debt, operate the Hotel until operations can be stabilized, and potentially fund a feasible plan of reorganization in the Debtor's case.  I believe that the Debtor can successfully complete the construction of the Hotel and satisfy valid mechanic's liens recorded against the Hotel if the Debtor obtains additional financing of approximately $12,000,000 - $16,000,000.  I also believe that the construction of the Hotel can be completed and a certificate of occupancy obtained within 9-12 months from the date of restarting construction.

30.    If the Debtor ultimately proceeds with debtor-in-possession financing (instead of exit financing), the Debtor will file a motion for Court approval of such financing as soon as it is in a position to do so.  If the Debtor proceeds with exit financing, the Debtor will likely propose a plan of reorganization, in conjunction with its proposed lender and plan supporter, which provides for the restructuring and/or repayment of the Debtor's secured debt, and provides for a recovery to the Debtor's general unsecured creditors who would otherwise receive nothing.

31.    In addition, and on a parallel path to the Debtor's efforts to obtain debtor-in-possession and/or exit financing to propose a plan of reorganization, the Debtor is also currently evaluating a process for marketing and selling the Hotel through a Section 363 sale.  The Debtor intends to discuss such marketing and sale process with Shady Bird in the hopes of reaching an agreement regarding such process.

**E.    The Need For Continued Use Of Cash Collateral And Additional Post-Petition Financing.**

32.    As reflected in the Debtor's proposed operating budget covering the approximately four month period from May 29, 2021 through and including October 1, 2021 (the "Budget"), a true and correct copy of which is attached as **Exhibit "1"** hereto, the Debtor requires the continued use of its cash to pay expenses which are critical to the maintenance and preservation of the Hotel, such as utility expenses and insurance premiums, as well as all quarterly fees payable to the Office of the United States Trustee, and all expenses payable to the Clerk of the Bankruptcy Court.  The Debtor also seeks authority to deviate from the line items contained in the Budget by not more than 10%, on both a line item and aggregate basis, with any unused portions to be carried over into the following week(s), which is consistent with the variances approved in the Interim Order and Final Order.

33.    The Debtor must be able to use its cash, in accordance with the Budget, to pay expenses which are critical to the maintenance and preservation of the Hotel.  If the Debtor does not obtain authority to use its cash collateral, the Debtor's estate will suffer potentially irreparable harm, including, without limitation, the termination of utility services at the Hotel and the

termination of insurance coverage for the Hotel, which in turn will jeopardize the value of the Hotel and the FF&E which are maintained at the Hotel.

34.    In the event that the Receiver Motion is denied at the continued hearing on June 3, 2021, and the Receiver is required to turn over possession and control of the Debtor's assets (including the Hotel) to the Debtor, the Debtor will need to spend cash to secure, maintain, and if appropriate make repairs to the Hotel.  Accordingly, the Budget provides for the payment of expenses necessary to secure, maintain, and make any appropriate repairs to the Hotel, in the estimated sum of $5,000 every two weeks.

35.    In addition, the Budget provides for the payment of the outstanding balance of the storage fees owed by the Debtor to the Warehouse (which the Debtor estimates will total almost $9,000 by mid-June, 2021 and for which the Warehouse has asserted a warehouseman's lien), to secure the release of the FF&E that is currently being stored at the Warehouse.

36.    As reflected in the Budget, the Debtor's current cash is not sufficient to pay all of the expenses set forth in the Budget, including those critical expenses required to be paid to secure, maintain and preserve the Hotel.  The Debtor therefore requires post-petition funding to pay such expenses.

36.    Fortunately, M+D (the Debtor's non-member Manager), of which I am also a principal, has agreed to provide the Debtor with post-petition financing in an amount up to $100,000 on a general unsecured basis and on an as-needed basis, subject to the discretion of M+D (the "DIP Loan").  The DIP Loan has been offered by M+D on an interest-free basis.  Any advance made to the Debtor by M+D shall be deemed an allowed general unsecured claim against the Debtor's bankruptcy estate.

37.    As reflected by the Budget, I believe that the proposed DIP Loan from M+D will provide the Debtor with sufficient funds to pay all of the expenses reflected in the Budget during the period covered by the Budget.

38.    I believe that the terms and conditions of the DIP Loan are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty and are supported by reasonably equivalent value and fair consideration.  The DIP Loan has been negotiated in good faith between the Debtor and M+D, with the Debtor being represented by able counsel.

39.    I believe that, in the absence of the proposed DIP Loan, the Debtor's estate would suffer irreparable harm, including, without limitation, damage to the Hotel (which is the Debtor's primary asset) due to the Debtor's inability to pay expenses critical to the maintenance and preservation of the Hotel.  I believe such harm would, in turn, negatively impact the Debtor's ability to successfully reorganize in this case since the preservation and maintenance of the Hotel and the Debtor's other assets are critical to a successful restructuring in this case.

40.    A proposed form of order granting the Motion is attached as **Exhibit "2"** hereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of May, 2021, at Buena Park, California.

_____
DONALD CHAE

# EXHIBIT "1"

The Source Hotel, LLC - Debtor in Possession
18-Week Cash Flow Projection

|  |  |  |  |  |  |  |  |  | WEEK ENDING |  |
|---|---|---|---|---|---|---|---|---|---|---|
| Week ending========> | 6/4/2021 | 6/11/2021 | 6/18/2021 | 6/25/2021 | 7/2/2021 | 7/9/2021 | 7/16/2021 | 7/23/2021 | 7/30/2021 | 8/6/2021 |
| **BEGINNING CASH BALANCE** | $ 9,422.46 | $ 18,222.46 | $ 18,208.46 | $ 9,208.46 | $ 2,683.57 | $ 6,483.57 | $ 6,469.57 | $ 6,469.57 | $ 6,069.57 | $ 14,944.68 |
| **RECEIPTS:** |  |  |  |  |  |  |  |  |  |  |
| Current bank balances, 5/10/2021: |  |  |  |  |  |  |  |  |  |  |
| Operating acct = $17,797.35 |  |  |  |  |  |  |  |  |  |  |
| Tax acct = $0 |  |  |  |  |  |  |  |  |  |  |
| Unsecured Advances from M+D | 10,000.00 |  | 5,000.00 |  | 10,000.00 |  | 5,000.00 |  | 20,000.00 |  |
| *Total Receipts* | *10,000.00* | *-* | *5,000.00* | *-* | *10,000.00* | *-* | *5,000.00* | *-* | *20,000.00* | *-* |
| **DISBURSEMENTS:** |  |  |  |  |  |  |  |  |  |  |
| Insurance |  |  |  | 6,124.89 |  |  |  |  | 6,124.89 |  |
| Utilities | 1,200.00 | 14.00 |  | 400.00 | 1,200.00 | 14.00 |  | 400.00 |  | 1,200.00 |
| Property Taxes |  |  |  |  |  |  |  |  |  |  |
| Security, Maintenance, Repairs |  |  | 5,000.00 |  | 5,000.00 |  | 5,000.00 |  | 5,000.00 |  |
| HBA/FDH storage fee (est) |  |  | 9,000.00 |  |  |  |  |  |  |  |
| *Total Disbursements* | *1,200.00* | *14.00* | *14,000.00* | *6,524.89* | *6,200.00* | *14.00* | *5,000.00* | *400.00* | *11,124.89* | *1,200.00* |
| *Net Change in Cash Position* | *8,800.00* | *(14.00)* | *(9,000.00)* | *(6,524.89)* | *3,800.00* | *(14.00)* | *-* | *(400.00)* | *8,875.11* | *(1,200.00)* |
| **ENDING CASH POSITION** | $ 18,222.46 | $ 18,208.46 | $ 9,208.46 | $ 2,683.57 | $ 6,483.57 | $ 6,469.57 | $ 6,469.57 | $ 6,069.57 | $ 14,944.68 | $ 13,744.68 |

| 8/13/2021 | 8/20/2021 | 8/27/2021 | 9/3/2021 | 9/10/2021 | 9/17/2021 | 9/24/2021 | 10/1/2021 |
|---|---|---|---|---|---|---|---|
| $ 13,744.68 | $ 13,730.68 | $ 13,730.68 | $ 7,205.79 | $ 16,005.79 | $ 10,991.79 | $ 15,991.79 | $ 4,466.90 |
| 5,000.00 |  | 5,000.00 | 10,000.00 |  | 5,000.00 |  | 5,000.00 |
| *5,000.00* | *-* | *5,000.00* | *10,000.00* | *-* | *5,000.00* | *-* | *5,000.00* |
|  |  | 6,124.89 |  |  |  | 6,124.89 |  |
| 14.00 |  | 400.00 | 1,200.00 | 14.00 |  | 400.00 | 1,200.00 |
| 5,000.00 |  | 5,000.00 |  | 5,000.00 |  | 5,000.00 |  |
| *5,014.00* | *-* | *11,524.89* | *1,200.00* | *5,014.00* | *-* | *11,524.89* | *1,200.00* |
| *(14.00)* | *-* | *(6,524.89)* | *8,800.00* | *(5,014.00)* | *5,000.00* | *(11,524.89)* | *3,800.00* |
| $ 13,730.68 | $ 13,730.68 | $ 7,205.79 | $ 16,005.79 | $ 10,991.79 | $ 15,991.79 | $ 4,466.90 | $ 8,266.90 |

| | | |
|---|---|---|
| Verification: | Beg Balance | $ 9,422.46 |
| | Funding | 80,000.00 |
| | Disbursements | (81,155.56) |
| | Ending Balance | $ 8,266.90 |

# EXHIBIT "2"

RON BENDER (SBN 143364)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  RB@LNBYB.COM; JYO@LNBYB.COM

Proposed Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE SOURCE HOTEL, LLC, a California limited liability company,<br><br>     Debtor and Debtor in  Possession. | Case No.: 8:21-bk-10525-ES<br><br>Chapter 11<br><br>**ORDER GRANTING MOTION FOR ENTRY OF AN ORDER: (A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; AND (B) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING FROM M+D PROPERTIES ON AN UNSECURED BASIS**<br><br>Hearing:<br>Date:    June 10, 2021<br>Time:    10:30 a.m.<br>Place:    ZoomGov |

1

1    A hearing was held on June 10, 2021 at 10:30 a.m. (the "Hearing"), before the Honorable

2    Erithe A. Smith, United States Bankruptcy Judge for the Central District of California, Los

3    Angeles Division, in Courtroom "5A" located at 411 West Fourth Street, Santa Ana, California

4    92701 (via ZoomGov), to consider final approval of the motion (the "Motion") filed by The

5    Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-

6    possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), for the entry of a

7    final order: (A) authorizing the Debtor to use cash collateral in accordance with the Debtor's

8    proposed operating budget covering the approximately four-month period from May 29, 2021

9    through and including October 1, 2021 (the "Budget"), a true and correct copy of which is

10   attached as Exhibit "1" to the Declaration of Donald Chae (the "Chae Declaration") annexed to

11   the Motion; and (B) authorizing the Debtor to obtain post-petition financing up to $80,000 on a

12   general unsecured basis (the "DIP Loan") from the Debtor's affiliate and non-member Manager,

13   M+D Properties, a California corporation ("M+D"), on an as-needed basis to cover any shortfalls

14   in the Budget.  Appearances at the Hearing were made as set forth on the record of the Court.

15       The Court, having considered the Motion and all papers filed by the Debtor in support of

16   the Motion, the oral arguments, statements and representations of counsel made at the Hearing

17   on the Motion, and all matters of record in the Debtor's Chapter 11 bankruptcy case, proper and

18   adequate notice of the Hearing on the Motion having been provided, and other good cause

19   appearing therefor,

20       IT IS HEREBY ORDERED AS FOLLOWS:

21       A.    The Motion is granted.

22       B.    The Debtor is authorized to use cash collateral, on a final basis, to pay (i) all of

23   the expenses set forth in the Budget, with authority to deviate from the line items contained in

24   the Budget by up to 10%, on both a line item and aggregate basis, with any unused portions to be

25   carried over into the following week(s) and (ii) all quarterly fees owing to the Office of the

26   United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court.

27

28

C.     As adequate protection to Shady Bird on account of the Debtor's use of cash collateral, Shady Bird shall be granted a valid, enforceable, non-avoidable and fully perfected first priority replacement lien on, and security interest in, the Debtor's post-petition assets, including cash ("Replacement Lien"), to the extent of any diminution in value of Shady Bird's interest in the Debtor's pre-petition collateral, and to the same extent, validity, scope and priority of Shady Bird's pre-petition lien.

D.     This Order is without prejudice to the request of Shady Bird for any modification of, or further or different, adequate protection, nor to the right of the Debtor to oppose any such request.

E.     The Debtor is authorized to obtain the DIP Loan from M+D in an amount up to $80,000, at the discretion of M+D, to cover any shortfalls in the Debtor's Budget.

IT IS SO ORDERED.

###

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; AND (B) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING FROM M+D PROPERTIES ON AN UNSECURED BASIS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD CHAE IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 19, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Christopher G. Cardinale    ccardinale@agclawfirm.com, mgonzalez@agclawfirm.com**
- **Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com**
- **Amir Gamliel    amir-gamliel-9554@ecf.pacerpro.com,**
  **cmallahi@perkinscoie.com;DocketLA@perkinscoie.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com**
- **Nancy S Goldenberg    nancy.goldenberg@usdoj.gov**
- **Peter F Jazayeri    peter@jaz-law.com**
- **Daniel A Lev    dlev@sulmeyerlaw.com,**
  **ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com**
- **Grant A Nigolian    grant@gnpclaw.com,**
  **process@gnpclaw.com;grant.nigolian@gmail.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ho-El Park    hpark@hparklaw.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On **May 19, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service List continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 19, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 19, 2021 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

The Source Hotel, LLC
OUST, Secured, Top 20, RSN

*Counsel to Evertrust Bank*
Michael Fletcher, Esq.
Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, 19th Floor
Los Angeles, CA 90017-2427

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

**Secured Creditors:**

3D Design - Millwork
8152 Indianapolis Ave.
Huntington Beach, CA 92646

Aragon Construction, Inc.
5440 Arrow Highway
Montclair, CA 91763

Beach Orangethorpe II, LLC
P.O. Box 489
Buena Park, CA 90621

Beach Orangethorpe III, LLC
P.O. Box 489
Buena Park, CA 90621

Beach Orangethorpe, LLC
P.O. Box 489
Buena Park, CA 90621

Beachamp Distributing Co.
1911 South Santa Fe Avenue
Compton, CA 90221

Best Quality Painting
818 N. Pacific Ave., #C
Glendale, CA 91203

Certified Tile
14557 Calvert St.
Van Nuys, CA 91411

Evergreen Electric Construction
629 Grove View Lane
La Canada, CA 91011

Iron Mechanical
721 North B Street
Suite 100
Sacramento, CA 95811

KS Steel Corp.
1748 Industrial Way
Los Angeles, CA 90023

Nemo & Rami
1930 W. Holt Ave.
Pomona, CA 91768

Northstar
404 North Berry Street
Brea, CA 92821-3104

Pan Pacific
18250 Euclid Street
Fountain Valley, CA 92708

PDG Wallcoverings
26492 Via Juanita
Mission Viejo, CA 92691

Prime Concrete Coatings
6127 James Alan St.
Cypress, CA 90630

Resco Electric Inc.
2431 W. Washington Blvd. Suite B
Los Angeles, CA 90018

Retrolock Corp
17915 Railroad Street
City of Insdustry, CA 91748

Salamander Fire Protection, Inc
6103 Tyrone Street
Van Nuys, CA 91401

Shady Bird Lending, LLC
c/o Law Offices of Ronald Richards
P.O. Box 11480
Beverly Hills, CA 90213

Solid Construction
883 Crenshaw Blvd.
Los Angeles, CA 90005

Sunbelt Controls, Inc.
888 E. Walnut Street
Pasadena, CA 91101

Grant Nigolian, P.C.
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626

Hunt Ortmann Palffy Nieves et al.
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101-1807

Law Office of Ho-El Park, P.C.
333 City Blvd. West, Suite 1700
Orange, CA 92868

Law Office of Michael N. Berke
25001 The Old Road
Santa Clarita, CA 91381

Law Offices of Dennis G. Cosso
345 Oxford Drive
Arcadia, CA 91007

Porter Law Group, Inc.
7801 Folsom Blvd., Suite 101
Sacramento, CA 95826

Robinson & Robinson, LLP
2301 Dupont Drive, Sute 530
Irvine, CA 92612-7502

Shady Bird Lending, LLC
c/o Law Offices of Geoffrey Long
1601 N. Sepulveda Blvd., No. 729
Manhattan Beach, CA 90266

Splinter & Thai, LLP
25124 Narbonne Ave., Suite 106
Lomita, CA 90717-2140

**Top 20 Unsecured Creditors:**

Newgens, Inc.
14241 Foster Rd.
La Mirada, CA 90638

Cabrillo Hoist
P.O. Box 3179
Rancho Cucamonga, CA 91729

WESCO Distribution Inc.
6251 Knott Ave.
Buena Park, CA 90620

Harbor All Glass & Mirror, Inc.
1926 Placentia Ave.
Costa Mesa, CA 92627

Diablo Consulting
13200 Crossroads Parkway N
Ste. 115
City of Industry, CA 91746

Ace Tek Roofing Co.
747 S. Ardmore Ave., Suite 405
Los Angeles, CA 90005

Morrow Meadows
231 Benton Court
City of Industry, CA 91789

Chefs Toys
18430 Pacific Street
Fountain Valley, CA 92708

Stumbaugh & Associates, Inc.
3303 N. San Fernando Blvd
Burbank, CA 91504

HBA Procurement, Inc.
3216 Nebraska Ave.
Santa Monica, CA 90404

OJ Insulation LP
600 S Vincent Ave.
Azusa, CA 91702

DKY Architects
15375 Barranca Pkwy.
Suite A-210
Irivne, CA 92618

Master Glass
2225 W. Pico Blvd, Unit C
Los Angeles, CA 90006

Universal Flooring Systems
15573 Commerce Lane
Huntington Beach, CA 92649

L2 Specialties
3613 W. Macarthur Blvd., #611
Santa Ana, CA 92704

Ficcadenti Waggoner
16969 Von Karman Avenue
Suite 240
Irivne, CA 92606

Retrolock Corp
17915 Railroad Street
City of Industry, CA 91748

American Engineering Laboratories Inc.
PO Box 1816
Whittier, CA 90609