RON BENDER (SBN 143364)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYB.COM; JYO@LNBYB.COM

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:21-bk-10525-ES |
| THE SOURCE HOTEL, LLC, a California limited liability company, | Chapter 11 |
| Debtor and Debtor in Possession. | **DEBTOR'S SUPPLEMENTAL OPPOSITION TO:**<br>**(A) MOTION OF SHADY BIRD LENDING, LLC FOR ORDER EXCUSING STATE COURT RECEIVER FROM TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. § 543; AND**<br>**(B) NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 363 (REAL PROPERTY)**<br><br>[SUPPLEMENTAL DECLARATION OF DONALD CHAE AND DECLARATION OF MATTHEW L. SAMS FILED CONCURRENTLY HEREWITH]<br><br>Hearing:<br>Date:    June 3, 2021<br>Time:   2:00 p.m.<br>Place:   ZoomGov |

1

The Source Hotel, LLC, a California limited liability company and the chapter 11 debtor and debtor-in-possession herein (the "Debtor"), hereby files this supplemental opposition (the "Supplemental Opposition") to (A) the *Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* [Doc. No. 51] (the "Receiver Motion"), and (B) the *Notice Of Motion And Motion For Relief From The Automatic Stay Under 11 U.S.C. § 363 (Real Property)* [Doc. No. 62] (the "RFS Motion," and together with the Receiver Motion, the "Motions") filed by Shady Bird Lending, LLC ("Shady Bird") in the Debtor's bankruptcy case.

**Summary Of The Motions**

Pursuant to the Receiver Motion, Shady Bird seeks the entry of a Court order excusing Bellann R. Raile (the "Receiver"), who was appointed as receiver over the Debtor's assets pursuant to an ex parte order entered by the Los Angeles Superior Court on February 17, 2021, from complying with the requirements of 11 U.S.C. § 543, specifically, the requirement to deliver to the Debtor all property belonging to the Debtor over which the Receiver currently has possession, custody or control, including, without limitation, the Debtor's 85% completed seven-story full-service hotel located in the City of Buena Park, County of Orange, State of California (the "Hotel").

Pursuant to the RFS Motion, Shady Bird contends that cause exists under 11 U.S.C. § 362(d)(1) to grant relief from the automatic stay to permit Shady Bird to foreclose on the Hotel because its interest in the Hotel is allegedly not adequately protected. Specifically, Shady Bird contends that its interest in the Hotel is not protected by an adequate equity cushion, and that the fair market value of the Hotel is declining due to the Debtor's purported failure to adequately maintain, protect, and secure the Hotel.

Both the Receiver Motion and the RFS Motion rely largely upon allegations that the Debtor has failed to adequately maintain, protect and secure the Hotel (which allegations the Debtor disputes). Shady Bird's allegations are supported by a declaration from Brent Little, a principal of Urban Advisory and Building Group, LLC ("Urban Advisory"), a consultant who was retained by the Receiver to conduct an inspection of the Hotel, and a written property

2

inspection report prepared by Urban Advisory (the "Urban Advisory Report") at the Receiver's request.  The Urban Advisory Report notes a number of maintenance and repair issues related to the Hotel, based on two Hotel site visits made by Urban Advisory on March 3, 2021 and March 9, 2021, and contends that the construction of the Hotel is only 70% complete.

Shady Bird argues that, based on the issues described in the Urban Advisory Report, the value of the Hotel has been negatively affected (without any specific quantification of such negative effect), and that the Debtor cannot be trusted to maintain and preserve the value of the Hotel.  Based on the foregoing, Shady Bird requests that the Receiver be excused from compliance with the turnover requirements of the Bankruptcy Code and that Shady Bird be granted relief from the automatic stay to foreclose on the Hotel.

## **The Debtor's Oppositions To The Motions**

The Debtor filed its opposition to the Receiver Motion on April 1, 2021 [Doc. No. 65] (the "Receiver Opposition").

The Debtor filed its opposition to the Receiver Motion on April 8, 2021 [Doc. No. 74] (the "RFS Opposition," and together with the Receiver Opposition, the "Oppositions").

As set forth in the Oppositions, the Debtor believes that the allegations made by Shady Bird regarding the Debtor's purported failure to adequately maintain, protect and secure the Hotel are false, greatly exaggerated, and/or misleading.  As the party who has invested a significant amount of time, money, and resources into the development and construction of the Hotel, the Debtor has every incentive to preserve and maximize the value of the Hotel for the benefit of its creditors and equity holders.  As described in detail in the Oppositions and the supporting Declaration of Robert "Charlie" Cervantes (who is an employee of M+D Properties and oversaw the maintenance of the Hotel until the Receiver was appointed), the Debtor and its manager, M+D Properties, took pains to maintain, secure and protect the Hotel after construction halted in late 2019, and the Hotel has been maintained as well as it can be under the circumstances.

As also noted in the Receiver Opposition, at the time that the Receiver Opposition was filed, it did not appear that the Receiver had taken any affirmative steps since her appointment in

1  mid-February 2021 to address the purported maintenance and repair issues raised in the Urban
2  Advisory Report.  Given the foregoing, Shady Bird could not demonstrate that the interests of
3  creditors were better served by having the Receiver remain in place, particularly where, as here,
4  the Debtor has the historical knowledge and experience to identify and address any maintenance
5  and repair issues related to the Hotel.  Under these circumstances, the Debtor submitted that
6  Shady Bird had not met its burden of proving that it was in the best interests of all creditors to
7  keep the Receiver in place and to have the Receiver excused from compliance with the turnover
8  requirements of 11 U.S.C. § 543, and requested that the Receiver Motion be denied.

9  Further, as noted in the RFS Opposition, the "as is" value of the Hotel was estimated to
10  be at least $40,900,000 in October 2019 (when construction halted) by HVS Consulting &
11  Valuation, a highly regarded, internationally recognized hotel valuation and consulting company.
12  Based on the appraised value of the Hotel, Shady Bird's interest in the Hotel is adequately
13  protected by a substantial equity cushion, well in excess of the 20% range that the Ninth Circuit
14  has indicated constitutes clear adequate protection of a secured creditor's interest in property.
15  Although Shady Bird has argued that, as a result of maintenance issues, the value of the Hotel
16  has declined, Shady Bird does not explain (or provide any evidence to demonstrate) how and in
17  what amount the value of the Hotel has purportedly declined since the Petition Date.  Without
18  such information or evidence, no cause has been demonstrated to warrant relief from the
19  automatic stay under 11 U.S.C. § 362(d)(1).

20  **Shady Bird's Replies To The Debtor's Oppositions And The Hearings On The Motions**

21  On April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the Receiver
22  Motion [Doc. No. 72] (the "Receiver Reply").

23  On April 15, 2021, Shady Bird filed its reply to the Debtor's opposition to the RFS
24  Motion [Doc. No. 81] (the "RFS Reply," and together, with the Receiver Reply, the "Replies").

25  In support of the Replies, Shady Bird submitted substantially similar supplemental
26  declarations from Mr. Little of Urban Advisory seeking to respond to the statements made by
27  Mr. Cervantes regarding the maintenance of the Hotel in his declaration in support of the
28  Oppositions.  Shady Bird also submitted substantially similar declarations from another

4

consultant retained by the Receiver, Andrew Trost of Carine Consulting ("Carine"), who performed a second evaluation of the Hotel property. Mr. Trost noted a number of maintenance and repair issues related to the Hotel (many of which mirrored the issues discussed by Mr. Little of Urban Advisory in his declarations), and estimated that the hard construction costs necessary to complete construction of the Hotel ranged between $8,000,000 to $9,000,000, plus the costs of installing furniture, fixtures and equipment ("FF&E") and other "soft" costs.

At the initial hearing on the Receiver Motion held on April 15, 2021, the Court indicated that it was inclined to deny the Receiver Motion. However, during the course of such hearing, Shady Bird offered to "gift" funds up to $200,000 (the "Gifted Funds"), which Gifted Funds would not be added to the Debtor's loan balance or otherwise be asserted as an administrative or general unsecured claim against the Debtor and its bankruptcy estate, to permit the Receiver to make certain repairs and perform certain maintenance work on the Hotel. In light of the offer made by Shady Bird to provide the Gifted Funds, the Debtor consented to keep the Receiver in place on an interim basis, through June 3, 2021 (the continued hearing date for the Receiver Motion).

Thereafter, the Court continued the hearing on the RFS Motion to June 3, 2021, to be heard concurrently with the Receiver Motion. In connection with the continued hearings on the Motions, the Court permitted parties to file supplemental briefs, declarations or reports in support of or in opposition to the Motions by May 20, 2021.

**Work Proposals Entered Into By Receiver**

The Receiver has kept the Debtor apprised of the work that she has commissioned for the Hotel and the terms of the proposals that she has entered into with third party contractors for such work. Set forth below is a summary of such proposals and work, which reflects that the Receiver has spent approximately $95,000 to perform work on the Hotel since the initial hearing on the Receiver Motion:

| Contractor/Vendor | Proposed Work | Proposed Cost |
|---|---|---|
| Lakewood Glass & Screen | Repair/replacement of broken and loose glass window | $25,823.00 |

5

| | | |
|---|---|---|
| American Integrated Resources, Inc. | Moisture testing and water intrusion inspection | $15,882.00 |
| Best Incorporated | Roof repairs and maintenance, capping on balconies | $31,650.00 |
| Contractors Door Supply | Installation of temporary doors on the openings on the fourth floor (fire authorities were fine with temporary doors that are not fire rated at this time) | $4,700.00 |
| Iron Mechanical | Construction shutdown/safe off for plumbing and mechanical systems | $16,800.00 |
| | Total: | $94,855 |

True and correct copies of the foregoing proposals are collectively attached as **Exhibit 1** to the Supplemental Declaration of Donald Chae filed concurrently herewith (the "Supplemental Chae Declaration").

The Receiver also provided the Debtor with a copy of the moisture testing and water intrusion inspection report commissioned from American Integrated Resources Inc. (the "Moisture Testing Report"), a true and correct copy of which is attached as **Exhibit 2** to the Supplemental Chae Declaration. As noted in the Moisture Testing Report, "[n]o moisture levels were found to be elevated in any of the areas tested in this investigation."

### **Debtor's Expert Property Inspection And Evaluation Report**

Following the initial hearing on the Receiver Motion, the Debtor obtained its own property inspection and evaluation report from Matthew L. Sams of SC Wright Group ("SCW"). A true and correct copy of the report prepared by SCW (the "SCW Report") is attached as **Exhibit A** to the Declaration of Matthew L. Sams filed concurrently herewith (the "Sams Declaration"). SCW is a highly regarded forensic construction firm which provides expert forensic construction services to a wide range of clients, including developers, owners, general contractors, insurance companies and attorneys, throughout the United States. As an active and experienced construction firm for over two decades, SCW's services are enhanced by SCW's "real life" knowledge of construction, which in turn makes SCW uniquely capable of accurately

determining the costs of repair, construction and reconstruction on a wide range of projects. Mr. Sams is the Senior Vice President of SCW, is a licensed general building contractor in the states of California, Montana and Nebraska, and has been consistently involved in the construction industry for over 44 years, including the last 25 years specializing in forensic construction services. A true and correct copy of Mr. Sams' professional biography is attached as **Exhibit B** to the Sams Declaration.

In short, the SCW Report confirms the Debtor's estimate of the completion of construction of the Hotel (at 85%), confirms the Debtor's estimates of the costs and time required to complete construction of the Hotel, confirms that the allegations made by Shady Bird regarding the Debtor's purported failure to adequately maintain, protect and secure the Hotel are exaggerated, and confirms that the Hotel property has been adequately maintained and is in good condition (particularly after the work that has been performed by the Receiver using some of the Gifted Funds from Shady Bird). In connection with its inspection of the Hotel and preparation of the SCW Report, SCW evaluated, among many other documents, the Urban Advisory Report submitted by Shady Bird, the declarations submitted by Mr. Little and Mr. Trost in connection with the Motions, and the work proposals entered into by the Receiver and third party contractors to perform work on the Hotel following the initial hearing on the Receiver Motion on April 15, 2021.

Although a complete copy of the SCW Report is attached as Exhibit A to the Sams Declaration, the following are the highlights from such report:

- ***Completion of Construction.*** Based on detailed and systematic 20-item inspection criteria utilized by SCW, which focused on major milestones in 20 categories of construction, and its visual inspection of each category of construction, SCW has determined that the advancement of construction for the Hotel stands at 85% complete [*see* pages 3-5 of the SCW Report]. SCW's conclusion is consistent with the Debtor's estimate that the Hotel is approximately 85% complete, and is well above the 70% completion rate concluded by Urban Advisory.

- ***Estimated Cost to Complete Construction.*** SCW projects that the cost to complete

the construction of the Hotel will range between $4,030,000 to $6,055,000. A detailed breakdown of such estimated cost is set forth on page 10 of the SCW Report.

- ***Estimated Timing to Complete Construction.*** SCW projects a construction duration to complete the Hotel, starting from the re-start of construction to obtaining a Certificate of Occupancy, to be nine (9) months.

- ***Property Maintenance and Condition.*** As discussed in detail in the SCW Report, SCW generally disagrees with the conclusions set forth in the Urban Advisory Report and the declarations of Mr. Little and Mr. Trost submitted by Shady Bird, regarding maintenance and repairs related to the stoppage of construction for the Hotel. While SCW noted isolated items and/or anomalies present at the Hotel, SCW concluded that the Hotel has been left in "an organized and professional condition…that will require little effort by the construction team to begin construction activities once permitted to proceed." *See* pages 5-10 of the SCW Report. A summary of SCW's responses to the maintenance and repair issues raised by Shady Bird and its experts is summarized below:

|   | **Raised Maintenance Issue** | **Response by SCW** |
|---|---|---|
| 1 | Substantial roof issues which currently permit the intrusion of water into the structure. | It is not uncommon for some of the welds in the PVC membrane on the Hotel roof to be incomplete or require post-installation attention. Any such issues are typically identified and addressed during "punch list" which occurs after the rooftop mechanical equipment is in place. SCW identified one area of the interior structure (Unit 738) where possible water intrusion due to roofing may exist, but the work performed at the Receiver's behest by Best Incorporated appears to have addressed this issue. Moreover, the Moisture Testing Report obtained by the Receiver confirmed that there were no elevated moisture levels found in the areas tested (including the 7th floor). |
| 2 | The construction assemblies on the roof are incomplete and create an | SCW observed that a portion of the metal cap flashing at the southwest architectural |

8

|   | **Raised Maintenance Issue** | **Response by SCW** |
|---|---|---|
|   | opportunity for water infiltration. | projection was incomplete, but no evidence of water migration into the structure was seen as a result of the incomplete metal cap flashing. The work performed by Best Incorporated has addressed the incomplete work to the point where SCW can now project the completion of this issue at 100%. |
| 3 | The fire sprinkler system is not currently capable of providing life-safety protection for the project. | Historically, construction projects to not commission the fire sprinkler system until just prior to the temporary certificate of occupancy. This has been confirmed by the Receiver who, after meeting with contractors, advised the Debtor that it is not practical for her to complete the fire sprinkler system due to the current state of construction as such system will not be operational until the controls, smoke detectors and drywall are installed. |
| 4 | Due to neglect and exposure to UV rays, the pool deck will need substantial repair. | The Hotel pool deck consists of a fluid applied membrane, which requires periodic maintenance and adjustment. SCW observed that the membrane was in good condition with isolated locations requiring minor attention. |
| 5 | The pool has an accumulation of water and trash making it a breeding ground for mosquitos, which may carry the West Nile Virus. | SCW observed that the pool was dry during its visual inspection. |
| 6 | Completed business finishes are not being protected and are exposed to waste or damage. | SCW observed that construction materials and equipment on site were neatly stored, including plastic protection at installed light fixtures and plastic wrap at staged equipment pending installation. |
| 7 | Potential hazardous situation may exist if the building sewer system is not connected to the public system. | SCW did not conduct a full evaluation of the sewer system but during its visual inspection, occasional sewer odors were noted, particularly in locations where non-flushed toilets were present. However, as previously noted by the Debtor, the Hotel sewer system is connected to the public |

9

|   | **Raised Maintenance Issue** | **Response by SCW** |
|---|---|---|
|   |   | system. |
| 8 | HVAC package units have been left unsecured and accessible to thieves and vandals. | SCW observed that the HVAC package units are being stored in a remote portion in the lower level of the attached parking structure, with vehicular barriers in place to prevent traffic from entering the storage location, which have and continue to prevent thieves and vandals. |
| 9 | Hazardous and caustic chemicals unsecured at the Project. | The only potentially hazardous chemical observed by SCW is a single 1-gallon jug of muriatic acid located in the bathroom cabinet at Unit 725, which is stored in the manufactured container with the sale on the cap intact. |

In sum, the SCW Report confirms the Debtor's belief that the Hotel property has been adequately maintained and is in good condition, and that any potential maintenance and repair issues at the Hotel have now been addressed by the work performed at the Receiver's behest using the Gifted Funds from Shady Bird. The Debtor is more than capable of ensuring the continued security and maintenance of the Hotel, and has filed a motion seeking to use cash collateral and unsecured financing from M+D Properties through October 1, 2021 to ensure that it has adequate funds to do so.

Under these circumstances, the Debtor submits that Shady Bird has failed to meet its burden of affirmatively demonstrating that it is in the best interests of all creditors to keep the Receiver in place and to have the Receiver excused from compliance with the turnover requirements of 11 U.S.C. § 543. "Turnover is the general rule, however, and excuse from compliance is the exception. Therefore a party opposing turnover must demonstrate affirmatively how creditors will be better served if the receiver is retained." *In re Bryant Manor, LLC*, 422 B.R. 278, 289 (Bankr. D. Kan. 2010) (quoting *In re Poplar Springs Apartments of Atlanta, Ltd.*, 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989)).

10

Similarly, the Debtor submits that, in light of the SCW Report, there is no indication or evidence that the value of the Hotel has declined since the Petition Date. Shady Bird and its interest in the Hotel and the Debtor's other assets are in no worse position than it was prior to the Petition Date and imposition of the automatic stay, particularly where, as here, the Receiver has been in sole possession and control of the Hotel since the Petition Date. In fact, given the work performed at the Hotel at the Receiver's behest in the last few weeks, the value of the Hotel has arguably improved since the Petition Date. Shady Bird's interest in the Hotel and the Debtor's other assets is therefore adequately protected and no "cause" exists to grant relief from the automatic stay under 11 U.S.C. § 362(d)(1).

For all of the reasons set forth above and in the Oppositions to the Motions, the Debtor respectfully requests that both Motions be denied.

Dated: May 20, 2021                              THE SOURCE HOTEL, LLC

By: _____
RON BENDER
JULIET Y. OH
LEVENE, NEALE, BENDER, YOO
    & BRILL L.L.P.
Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S SUPPLEMENTAL OPPOSITION TO: (A) MOTION OF SHADY BIRD LENDING, LLC FOR ORDER EXCUSING STATE COURT RECEIVER FROM TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. § 543; AND (B) NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 363 (REAL PROPERTY)** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 20, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender**    rb@lnbyb.com
- **Christopher G. Cardinale**    ccardinale@agclawfirm.com, mgonzalez@agclawfirm.com
- **Michael G Fletcher**    mfletcher@frandzel.com, sking@frandzel.com
- **Amir Gamliel**    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Nancy S Goldenberg**    nancy.goldenberg@usdoj.gov
- **Peter F Jazayeri**    peter@jaz-law.com
- **Daniel A Lev**    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- **Grant A Nigolian**    grant@gnpclaw.com, process@gnpclaw.com;grant.nigolian@gmail.com
- **Juliet Y Oh**    jyo@lnbrb.com, jyo@lnbrb.com
- **Ho-El Park**    hpark@hparklaw.com
- **Ronald N Richards**    ron@ronaldrichards.com, morani@ronaldrichards.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **May 20, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Nancy S Goldenberg
Office of the United States Trustee
411 W Fourth St Ste 7160
Santa Ana, CA 92701-8000

☐ Service List continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 20, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served by Overnight Mail***
The Honorable Erithe A. Smith
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5040
Santa Ana, CA 92701

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 20, 2021 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                      F 9013-3.1.PROOF.SERVICE