1  Christopher G. Cardinale (SBN 274453)    **(NO FEE - GOVERNMENT CODE SECTION 6103)**
   ccardinale@agclawfirm.com
2  **ALVAREZ-GLASMAN & COLVIN**
   13181 Crossroads Parkway North
3  Suite 400 – West Tower
   City of Industry, CA  91746
4  562.699.5500 – Office
   562.692.2244 – Facsimile
5
   Attorneys for Party in Interest CITY OF
6  BUENA PARK

7              **UNITED STATES BANKRUPTCY COURT**

8        **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

9  In re:                              | **Case No.: 8:21-BK-10525-ES**

10 THE SOURCE HOTEL, LLC,              | **Chapter 11**

11         Debtor.                      | **OPPOSITION BY THE CITY OF BUENA**
                                        | **PARK TO SHADY BIRD LENDING, LLC'S**
12                                      | **MOTION FOR RELIEF FROM THE**
                                        | **AUTOMATIC STAY UNDER 11 U.S.C. § 362;**
13                                      | **DECLARATION OF CHRISTOPHER G.**
                                        | **CARDINALE IN SUPPORT THEREOF**
14
15                                      | Hearing:
16                                      | Date:      June 3, 2021
                                        | Time:      2:00 p.m.
17                                      | Place:     ZoomGov

18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTORY STATEMENT ........................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................................ 2

    A.    The Beach Orangethorpe Mixed Use Specific Plan; the Development Agreement ........ 2

    B.    The Consolidated Redevelopment Project Area; Disposition and Development
          Agreement between the Community Redevelopment Agency and the Source at Beach
          LLC; Public Assistance to Mixed Use Project .................................................................. 4

    C.    BP RDA Dissolved By Operation of Law; City Takes Over As Party to DDA ............. 5

    D.    Construction Status and Building Permits for the Hotel Project ...................................... 6

III. GRANTING SHADY BIRD'S MOTION COULD HARM THE VALUE OF

    THE ESTATE AND CREDITORS' INTERESTS ............................................................. 7

IV. CONCLUDING COMMENTS ........................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*In re A Partners, LLC,*
    344 B.R. 114, 127 (Bankr. E.D. Cal. 2006) ................................................................. 1

**Statutes**

11 U.S.C. § 362 ................................................................................................................ 1
Cal Gov't Code § 65000 ................................................................................................... 2
Cal Gov't Code § 65450 ................................................................................................... 2
Cal Gov't Code § 65864 ................................................................................................... 3
Cal Gov't Code § 65868.5 ................................................................................................ 3
Cal. Health & Saf. Code § 34170 .................................................................................... 5
Cal. Health & Saf. Code § 34173(b) ............................................................................... 5

1  The City of Buena Park, a municipal corporation organized and existing pursuant to its charter

2  and California law (the "City" or "Buena Park"), hereby files this opposition (the "Opposition")

3  to that certain *Motion For Order Relief from the Automatic Stay Under 11 U.S.C. § 362* [Doc

4  No. 62] (the "Motion") filed by Shady Bird Lending, LLC ("Shady Bird").

**I.**

**INTRODUCTORY STATEMENT**

7  As noted in Shady Bird's Motion, 11 U.S.C section 362(1) allows relief from the

8  automatic bankruptcy stay for "cause," with cause being "a broad a flexible concept that permits

9  a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." In re

10  A Partners, LLC, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006). But Shady Bird's Motion includes

11  little discussion of the inequities that could result to other creditors if the stay is lifted. The City

12  shares Shady Bird's frustration with Debtor's failed performance and the present condition of the

13  property; but is equally concerned with the prospect of Shady Bird's rushed foreclosure.

14  The "Hotel Project" that serves as security for Shady Bird's interest is part of a much

15  larger "Mixed Use Project" that occupies an entire city block (nearly 13 acres) at the corner of

16  Beach Boulevard and Orangethorpe Avenue in the City of Buena Park (the "Project Site"). The

17  entire Project Site is governed by and subject to two (2) agreements with the City, both of which

18  are recorded on the Project Site senior to the interests of The Source Hotel, LLC (the "Debtor")

19  and Shady Bird. These agreements require the Hotel Project to be completed and operated as a

20  high-quality establishment, and in exchange provide for the City's payment of taxpayer revenues

21  to the property owner to support and incentivize the hotel's completion.

22  Importantly, a foreclosure by Shady Bird on its security interest, which is clearly its

23  intent should the Motion be granted, would trigger a default of these agreements; thereby

24  entitling the City to terminate this ongoing financial assistance as well as corresponding land use

25  approvals. The City respectfully believes this and other unique facts and circumstances described

26  below are relevant for the Court's consideration.

27

28

**OPPOSITION BY THE CITY OF BUENA PARK TO SHADY BIRD LENDING, LLC'S MOTION FOR
RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF
CHRISTOPHER G. CARDINALE IN SUPPORT THEREOF**

## II.

## STATEMENT OF FACTS

The Project Site – and therefore the Hotel Project and larger Mixed Use Project – are subject to and governed by specific zoning regulations, contractual commitments, and recorded covenants that bear significantly on the Parties' interests and value of the Leased Property.

### A.    The Beach Orangethorpe Mixed Use Specific Plan; the Development Agreement

From a land use perspective, the Project Site is located within and governed by the *Beach Orangethorpe Mixed Use Specific Plan* (the "BOSP"), which was approved by the Buena Park City Council on October 8, 2008 pursuant to and in accordance with California's Planning and Land Use Law (Cal Gov't Code § 65000 *et seq.*, hereinafter "California Planning Law"; see also Gov't Code § 65450 *et seq.* [specific plans].) The BOSP generally allows (or restricts) the Project Site to be developed with a mix of upscale retail, restaurant, residential, entertainment, hotel, and office uses.[1]

At the time it was approved by the City Council, the "Guarantors" (identified in Shady Bird's Motion as Donald Chae and/or Min Chae) owned or controlled (directly or through affiliated entities) a significant portion of the real property located within the BOSP, and the BOSP is the result of the cooperative planning efforts of City and Guarantors for the Project Site.

On October 8, 2008 (the same day the BOSP was approved), the parties' efforts were memorialized in that certain *Development Agreement No. DA08-003, Concerning Property Located At 6940 Beach Boulevard, Buena Park, California* (the "Development Agreement" and attached hereto as Exhibit "A"), by and between City and 6940 Beach, LLC".[2] The Development Agreement was recorded on the Project Site as of November 17, 2008 (Instrument No. 200800537057 of Official Records, Orange County), and allows – as relevant here – the Project Site to be developed with large-scale "Mixed Use Project" with two (2) components:

(1) A multi-story building and "outdoor mall" providing in excess of 450,000 square feet

---

[1] The Specific Plan also allows a high-density residential development on a portion of the Project Site; but that portion of the development is not implicated in this dispute.
[2] 6940 Beach, LLC was / is owned and controlled by Guarantors.

OPPOSITION BY THE CITY OF BUENA PARK TO SHADY BIRD LENDING, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF CHRISTOPHER G. CARDINALE IN SUPPORT THEREOF

1    of retail and professional office space; and

2    (2) A 300-room hotel with conference facilities to be located in an adjoining landmark

3    building.[3]

4    The Development Agreement is binding on owners of the Project Site and any

5    successors-in-interest; including Debtor and Shady Bird. (Cal Gov't Code § 65864; Cal Gov't

6    Code § 65868.5 ["From and after the date of…recordation, the [development] agreement shall

7    impart such notice thereof as is afforded by the recording laws of this state. The burdens of the

8    agreement shall be binding upon, and the benefits of the agreement shall inure to, all successors

9    in interest to the parties to the agreement."].) Section 4 of the Development Agreement states:

10    "Developer hereby subjects the Project[4] and [Project Site]…to the covenants,
reservations and restrictions as set forth in this Agreement. The City and
11    Developer hereby declare their specific intent that the covenants, reservations and
restrictions as set forth herein shall be deemed covenants running with the land
12    and shall pass to and be biding upon Developer's successors and assigns in title or
13    interest to the Project. Each and every contract, deed or other instrument
hereinafter executed, covering or conveying the Project or any portion thereof
14    shall conclusively be held to have been executed, delivered and accepted subject
to the covenants, reservations and restrictions expressed in this Agreement,
15    regardless of whether such covenants, reservations and restrictions are set forth in
such contract, deed or other instrument. [¶] The City and Developer hereby
16    further declare their understanding and intent that the benefit of such covenants
touch and concern the land by enhancing and increasing the enjoyment and use of
17    the Development by Developer and the future occupants of the Project, the
18    intended beneficiaries of such covenants, reservations and restrictions, and by
furthering the public purposes for which this Agreement is adopted."
19

20    Section 19 of the Development Agreement defines the rights of secured lenders on the

21    Project Site, which have the right to do anything required under the Development Agreement and

22    otherwise realize their security interest by acquiring or transferring the Project Site. Secured

23    lenders are also required to cure any defaults and keep and perform the terms, covenants, and

24    conditions of the Development Agreement.

25    The Development Agreement remains in full force and effect and is scheduled to remain

26    so until approximately December 2028.

27
_____
[3] The Development Agreement also includes a residential component that is immaterial here.
28    [4] "Project" is defined by the Development Agreement in Section 1(d) with reference to the Project Area – which
includes the Property – and the "Development Plan" attached as Exhibit B to the Development Agreement.

-3-

**OPPOSITION BY THE CITY OF BUENA PARK TO SHADY BIRD LENDING, LLC'S MOTION FOR
RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF
CHRISTOPHER G. CARDINALE IN SUPPORT THEREOF**

**B. The Consolidated Redevelopment Project Area; Disposition and Development Agreement between the Community Redevelopment Agency and the Source at Beach LLC; Public Assistance to Mixed Use Project**

The Project Site is located within the Consolidated Redevelopment Project Area ("Redevelopment Area") of the Buena Park Redevelopment Agency ("BP RDA"), and at one time the BP RDA owned 0.84 acres of the Project Site ("BP RDA Properties"). To facilitate and incentivize development of the Mixed Use Project, on October 26, 2010, the BP RDA entered into a Disposition and Development Agreement (the "DDA" and attached as Exhibit "B" hereto) with The Source at Beach, LLC (identified in Shady Bird's Motion as "Ground Lessor"). A memorandum thereof (attached as Exhibit "C" hereto was recorded on the Project Site as of October 9, 2012 (Instrument No.2012000609611 in Official Records, Orange County), and the DDA is binding on heirs and successors thereto.

As relevant here the DDA includes three (3) main components:

First, the DDA provided for the BP RDA's sale of the BP RDA Properties to Ground Lessor for inclusion in the Project Site. No money was paid to the BP RDA in exchange, but rather the return consideration was to be public benefits resulting from the Mixed-Use Project (e.g. local jobs, amenities, tax revenue generation).

Second, the DDA expanded and modified the Mixed-Use Project from that described in the Development Agreement. Specifically, the DDA requires Ground Lessor to develop a three-phased Mixed Use Project as follows:

Phase 1:     428,000 square feet of retail space with a movie theatre, spa, entertainment uses, retail stores, and parking;

Phase II:    193,220 square feet of office space; and

Phase III:   a Mobil 3-5 star or AAA 3-5 diamond full-service hotel and parking (the "Hotel Project").

Third, to assist and incentivize Ground Lessor's performance of the DDA (and the securing of a high-quality franchise for the Hotel Project) the BP RDA provided two (2) forms of ongoing financial assistance to the Mixed-Use Project: the return of any increased property tax

-4-

**OPPOSITION BY THE CITY OF BUENA PARK TO SHADY BIRD LENDING, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF CHRISTOPHER G. CARDINALE IN SUPPORT THEREOF**

revenues generated by the Project Site by virtue of the Mixed-Use Project (the "<u>Property Tax Amount</u>"), and; sales tax revenues generated by the Mixed Use Project in excess of a specified threshold (the "<u>Sales Tax Amount</u>").

The Property Tax Amount is expected to return approximately $1,000,000 to Ground Lessor in Fiscal Year 2020-21, and this amount will increase over time, and is scheduled to expire in Fiscal Year 2029-2030. The Sales Tax Amount has a term of thirty (30) years but the Mixed Use Project has not yet generated sufficient revenues to trigger the contributions.

Section 4.5 of the DDA allows for early termination of the Property Tax Amount and the Sales Tax Amount upon a default by Ground Lessor:

> "The Agency's obligation to make payments of the Sales Tax Amount and Property Tax Amount to Developer shall terminate upon…a Default by Develop under Section 7.1 below…"

Section 7.2 declares that the "Agency and the City shall…have the right to terminate this Agreement in the event of a Default by Developer." Section 7.1 of the DDA (more accurately Section 7.1.5) defines "Events of Default" or a "Default" as including:

> "Filing of a petition in bankruptcy by or against any Party or appointment of a receiver or trustee of any property of any Party, or an assignment by any Party for the benefit of creditors, or adjudication that such Party is insolvent by a court, and in the case of a filing against a Partner, the failure of such Party to cause the applicable petition, appointment, or assignment to be removed or discharged within one hundred and twenty (120) days."

## C.    BP RDA Dissolved By Operation of Law; City Takes Over As Party to DDA

In February 2012, the BP RDA was dissolved by the California Legislature (Cal. Health & Saf. Code § 34170 *et seq*.), and the City was appointed and now serves as the "Buena Park Successor Agency" with ownership and control of the former BP RDAs' assets and liabilities. As a matter of law the City (or the Buena Park Successor Agency) now "stands in the shoes" of the BP RDA with respect to the DDA. (See, *e.g.* Cal. Health & Saf. Code § 34173(b) ["…all authority, rights, powers, and obligations previously vested with the former redevelopment agencies…are hereby vested in the successor agencies."].)

### D.      Construction Status and Building Permits for the Hotel Project

There are five (5) main building permits issued for the Hotel Project which also overlap or authorize work associated with the Mixed-Use Project. Only one of these permits (for interiors of the Hotel Project) was issued to Debtor, and the interconnected design and operation of the Mixed Use Project will require significant assistance and cooperation from Ground Lessor if the Hotel Project is to be completed and successful. More specifically the main building permits are:

- *B13-1388*: Foundations for Building B (or Phase 1.5) which houses both a portion of the retail and the hotel portion of the Mixed-Use Project. This permit was issued as of 7.11.2014 and was complete as of 3.27.2018. Permit owner is the Ground Lessor.

- *B13-1389*: Shell retail work, various retail components, and hotel lobby. This permit was issued as of 1.29.2015 and is still open. The last inspection was conducted on 12.6.2016 meaning the permit has now expired. Permit owner is the Ground Lessor.

- *B13-1391*: Shell for Hotel Tower, Floors 4-7, Elevators, Stairwells, etc. This permit was issued on 1.19.2016 and remains open. The last inspection was 1.10.2020 meaning the permit has now expired. Permit owner is the Ground Lessor.

- *B15*-2102: Enclosed 3rd-Floor walkway between retail and hotel portions of Mixed-Use Project. This permit was issued on 2.10.2016 and is still open. The last inspection was conducted on 7.13.2016 meaning the permit has now expired. Permit owner is the Ground Lessor.

- *B13-2294*: Hotel interior tenant improvements. This permit was issued on 5.26.2017 and remains open. The last inspection was 7.2.2019 meaning the permit has now expired. Permit owner is the Debtor.

Various sub-building permits have been issued which authorize a specific scope of work. The status of the sub-permits mirror that of the main permit under which it was issued, meaning any outstanding sub-permits for the Hotel Project have now also expired.

**OPPOSITION BY THE CITY OF BUENA PARK TO SHADY BIRD LENDING, LLC'S MOTION FOR
RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF
CHRISTOPHER G. CARDINALE IN SUPPORT THEREOF**

### III.

### GRANTING SHADY BIRD'S MOTION COULD HARM THE VALUE OF THE

### ESTATE AND CREDITORS' INTERESTS

The City's objective for the Project Site has long-been and remains for the Hotel Project to be completed. The City (and its residents) were promised and have contributed public resources towards a high quality Hilton-brand Hotel, and the City has no desire for the Leased Property to be acquired by speculative investors, and thereafter rendered vacant indefinably or converted to less-desirable use inconsistent with the Mixed Use Project.

To that end the City desires to highlight certain equitable considerations implicated by Shady Bird's Motion:

The City's Interest in this Action.    As detailed above, the City and its residents have contributed significantly to the Project Site by: (a) transferring the BP RDA Properties to Guarantor without payment; and (b) providing millions in taxpayer funds in the form of the Property Tax Pledge and Sales Tax Pledge in exchange for the promised Hotel Project. Given the current status of construction, and the existing land use covenants, restrictions, and regulations that govern the Leased Property, the City questions whether any alternative land use or development is viable. Thus the City believes the best course towards maximizing the value of the Lease Property, and therefore ensuring all creditors' interests are secured, is to complete construction of the Hotel Project.

While the City also questions Debtors' capacity to do so, Debtor's expressed intent is to obtaining financing and complete construction, and the automatic stay provides Debtor with an opportunity to do so. In contrast, Shady Bird has expressed no intent or capacity to proceed with completing the Hotel Project following foreclosure on the Leased Property; and according the City must oppose the Motion.

City's Right to Declare Default.    The filing of this Action, together with the previous appointment of the Receiver, gives clear grounds for the City to terminate the DDA together with the Property Tax Pledge and Sales Tax Pledge. The same is true if the Lease Property (and Hotel Project) were assigned or transferred to Shady Bird to satisfy its security interest.

OPPOSITION BY THE CITY OF BUENA PARK TO SHADY BIRD LENDING, LLC'S MOTION FOR
RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF
CHRISTOPHER G. CARDINALE IN SUPPORT THEREOF

1    The City has a fiduciary and legal responsibility to terminate the ongoing commitment of

2    public funds unless and until the Hotel Project is completed and operated pursuant to the terms of

3    the DDA and Development Agreement. Doing so would deprive the entire Mixed-Use Project of

4    this assistance moving forward, and require the new owners of the Lease Property (potentially

5    Shady Bird) to apply for and obtain City approval of new discretionary land use approvals. Both

6    results would be detrimental to the value of the Leased Property against which Shady Bird is

7    secured.

8    The City has deferred declaring default until more clarity is provided in these

9    proceedings, and more specifically until the parties declare their intent relative to completing the

10   Hotel Project. However, on May 14, 2021, the City provided notice reserving its right to do so,

11   and of the City's intent to withhold payment of future revenues from the Property Tax Pledge

12   and Sales Tax Pledge pending its completion. (See Cardinale Declaration, Exhibit "D".) Shady

13   Bird's proceeding with foreclosure on the Leased Property is likely to make this decision

14   permanent.

15   <u>Value of Hotel Project</u>.      As detailed above, the Leased Property may only be used

16   for completion and operation of the Hotel Project; at least without violating the DDA and

17   Development Agreement. An alternative project would also require discretionary land use

18   approvals from the City, and environmental clearance under California's Environmental Quality

19   Act. For this reason, an alternative use or development of the Lease Property is speculative,

20   would be time consuming and costly to process, and unlikely to maximize value of the Leased

21   Property. Unless Shady Bird intends to complete the Hotel Project following its planned

22   foreclosure, Shady Bird's foreclosure might actually reduce its value; and therefore undermine

23   the security the Leased Property provides to creditors.

24   <u>Difficulties Completing Construction</u>.      The Hotel Project is designed and

25   structurally connected with the Mixed Use Project, as is evidenced by the building permits issued

26   to different entities. The capital improvements required to successfully complete and operate the

27   Hotel Project are not entirely confined within the Leased Property, and the satisfaction of all

28   conditions necessary to complete the Hotel Project are not within the control of the Leased

**OPPOSITION BY THE CITY OF BUENA PARK TO SHADY BIRD LENDING, LLC'S MOTION FOR
RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF
CHRISTOPHER G. CARDINALE IN SUPPORT THEREOF**

Property owner. Accordingly completing the Hotel Project will require significant cooperation and coordination with the Ground Lessor. Absent this coordination, the value and utility of the Leased Property could be severely impacted. Shady Bird's foreclosure of the Leased Property would divide ownership of the Project Site, and is unlikely to simplify the construction process.

## IV.

## CONCLUDING COMMENTS

The City appreciates the Court's willingness to consider these matters. The City would prefer the parties work cooperatively towards facilitating funding to complete construction of the Hotel Project, as opposed to litigating the dispute and racing for title without a clear plan forward. The City remains willing and available to work with the parties to that end, but opposes any request or action by the parties that is not consistent with delivering the Hotel Project to the City and its residents. The City respectfully believes that denying the Motion and keeping the stay in place might compel the parties to finally explore negotiated outcomes that could be beneficial for all interested parties.

DATED:  May 20, 2021               ALVAREZ-GLASMAN & COLVIN


                              By:   /s/ Christopher G. Cardinale
                                    _____
                                    Christopher G. Cardinale
                                    Attorneys for City of Buena Park, a California
                                    charter city and municipal corporation

## DECLARATION OF CHRISTOPHER G. CARDINALE

I, Christopher G. Cardinale, declare and state as follows:

1.      I am an attorney licensed to practice in the State of California and this Court, and am a Senior Partner in the law firm of Alvarez-Glasman & Colvin. Since September 2018, I have been and currently serve as the appointed City Attorney for the City of Buena Park, and as General Counsel for the Buena Park Successor Agency. I have personal knowledge of the facts set forth herein, and if called would testify to their accuracy under oath.

2.      I serve as the City's senior legal advisor and am responsive for advising and providing guidance to the Buena Park City Council (and Buena Park Successor Agency Governing Board) on all legal matters involving the City. In this capacity I am familiar with the general facts and circumstances surrounding the subject Project Site; though the approvals and agreements that govern it were all negotiated and approved before I was with the City. The majority of my personal knowledge associated with this matter was gained through a review of public records, my personal investigations into files and records, and communications with City staff. Given the length of this project's history, there are few (if any) staff members at the City with first hand personal knowledge of all applicable facts and circumstances.

3.      From a regulatory, contractual, and land use perspective, the "Hotel Project" defined above is one part of the larger "Mixed Use Project" that occupies the "Project Site". The Project Site – and therefore the Hotel Project – are subject to and governed by and subject to the following:

a.      The "Beach Orangethorpe Mixed Use Specific Plan" (the "BOSP"), which was approved by the Buena Park City Council on October 8, 2008 pursuant to and in accordance with California's Planning and Land Use Law (Cal Gov't Code § 65000 et seq., hereinafter "California Planning Law"; see also Gov't Code § 65450 et seq. [specific plans].) The BOSP limits the land uses that may be developed on the Project Site, which include generally includes a mix of upscale retail, restaurant, entertainment, hotel, and office uses.

b.      The "Development Agreement No. DA08-003, Concerning Property Located At 6940 Beach Boulevard, Buena Park, California (the "Development Agreement," by

1    and between City and  6940 Beach, LLC". A true and correct copy of the "Development

2    Agreement" as maintained in City files and records is attached hereto as Exhibit "A". As of the

3    date hereof the Development Agreement remains in full force and effect and is scheduled to

4    remain so until approximately December 2028.

5        c.    The "Disposition and Development Agreement" by and Between the

6    Buena Park Redevelopment Agency and The Source at Beach, LLC" (identified in Shady Bird's

7    Motion as "Ground Lessor"). A true and correct copy of the "DDA" as maintained in City files

8    and records is attached hereto as Exhibit "B". A true and correct copy of a memorandum thereof

9    reflecting its recordation on the Project Site is attached hereto as Exhibit "C".

10        4.    Based on my review of public records and communications with City staff, I am

11    informed and believe, and based thereon allege, that at the time the BOSP, Development

12    Agreement, and DDA were by the City Council, the "Guarantors" (identified in Shady Bird's

13    Motion as Donald Chae and/or Min Chae) owned or controlled, either directly or through

14    affiliated entities, a significant portion of the real property located within the BOSP, and the

15    BOSP is the result of the cooperative planning efforts of City and Guarantors for the Project Site.

16        5.    Based on my review of public records and communications with City staff, I am

17    informed and believe, and based thereon allege, that there are five (5) main building permits

18    issued for the Hotel Project. Only one of these permits (for interiors of the Hotel Project) was

19    issued to Debtor. More specifically the main building permits are as follows:

20        •    *B13-1388*: Foundations for Building B (or Phase 1.5) which houses both a

21    portion of the retail and the hotel portion of the Mixed-Use Project. This permit was issued as of

22    7.11.2014 and was complete as of 3.27.2018. Permit owner is the Ground Lessor.

23        •    *B13-1389*: Shell retail work, various retail components, and hotel lobby. This

24    permit was issued as of 1.29.2015 and is still open. The last inspection was conducted on

25    12.6.2016 meaning the permit has now expired. Permit owner is the Ground Lessor.

26        •    *B13-1391*: Shell for Hotel Tower, Floors 4-7, Elevators, Stairwells, etc. This

27    permit was issued on 1.19.2016 and remains open. The last inspection was 1.10.2020 meaning

28    the permit has now expired. Permit owner is the Ground Lessor.

-11-

**OPPOSITION BY THE CITY OF BUENA PARK TO SHADY BIRD LENDING, LLC'S MOTION FOR
RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF
CHRISTOPHER G. CARDINALE IN SUPPORT THEREOF**

1     • *B15*-2102: Enclosed 3rd-Floor walkway between retail and hotel portions of

2    Mixed-Use Project. This permit was issued on 2.10.2016 and is still open. The last inspection

3    was conducted on 7.13.2016 meaning the permit has now expired. Permit owner is the Ground

4    Lessor.

5     • *B13-2294*: Hotel interior tenant improvements. This permit was issued on

6    5.26.2017 and remains open. The last inspection was 7.2.2019 meaning the permit has now

7    expired. Permit owner is the Debtor.

8         Additionally, various sub-building permits have been issued which authorize a specific

9    scope of work related to one of the above main permits. The status of the sub-permits mirror that

10   of the main permit under which it was issued; meaning any outstanding sub-permits for the Hotel

11   Project have now also expired.

12        6.    Based on my review of public records and communications with City staff,

13   including the Director of Finance, I am informed and believe, and based thereon allege, that the

14   Property Tax Amount required by the DDA was (or will be) valued in excess of $1,000,000 for

15   Fiscal Year 2020-2021, and that the Sales Tax Pledge required by the DDA has not yet been

16   triggered by virtue of the Mixed Use Project generating insufficient revenues.

17        7.    On May 14, 2021, I personally drafted and caused to be delivered the listed

18   addresses the Notice of Intent to Withhold Financial Assistance Payments to the Source at

19   Beach, LLC; Reservation of Rights, a true and correct copy of which is attached hereto as

20   Exhibit "D".

21

22   DATED: May 20, 2021          By:   /s/ Christopher G. Cardinale

23                                      Christopher G. Cardinale

24

25

26

27

28

-12-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 13181 Crossroad Parkway North, Suite 400, City of Industry, California 91746.

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION BY THE CITY OF BUENA PARK TO SHADY BIRD LENDING, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF CHRISTOPHER G. CARDINALE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **May 20, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **May 20, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Via Overnight Delivery***
The Honorable Erithe A. Smith
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 20, 2021 | Melissa L. Gonzalez | /s/ Melissa L. Gonzalez |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                     **F 9013-3.1.PROOF.SERVICE**

# <u>ADDITIONAL SERVICE INFORMATION</u>

<u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- Ron Bender on behalf of Debtor The Source Hotel, LLC
  rb@lnbyb.com

- Christopher G. Cardinale on behalf of Interested Party City of Buena Park
  ccardinale@agclawfirm.com, mgonzalez@agclawfirm.com

- Juliet Y. Oh on behalf of Debtor The Source Hotel, LLC
  jyo@lnbrb.com

- Michael G. Fletcher on behalf of Creditor Evertrust Bank
  mfletcher@frandzel.com, sking@frandzel.com

- Robert P. Goe on behalf of Creditor Westranco, Inc.
  kmurphy@goeforlaw.com, rgoe@goeforlaw.com, goeforecf@gmail.com

- Nancy S. Goldenberg on behalf of U.S. Trustee United States Trustee (SA)
  Nancy.goldenber@usdoj.gov

- United States Trustee (SA)
  Ustpregion16.sa.ecf@usdoj.gov

- Daniel A. Lev on behalf of Creditor Shady Bird Lending, LLC
  dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com, dlev@ecf.inforuptcy.com

- Ronald N. Richards on behalf of Shady Bird Lending, LLC
  ron@ronaldrichards.com, morani@ronaldrichards.com

- Grant A. Nigolian on behalf of Interested Party Courtesy NEF
  grant@gnpclaw.com, process@gnpclaw.com, grant.nigolian@gmail.com

- Ho-El Park on behalf of Interested Party Courtesy NEF
  hpark@hparklaw.com

- Peter F. Jazayeri on behalf of State Court Reciever Cordes & Company, LLC Through and by Bellann
  Raile
  peter@jaz-law.com

- Amir Gamliel
  amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com, docketla@perkinscoie.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**