Daniel A. Lev (CA Bar No. 129622)
  dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Ronald Richards (CA Bar No. 176246)
  ron@ronaldrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone:  310.556.1001
Facsimile:  310.277.3325

Attorneys for Shady Bird Lending, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>THE SOURCE HOTEL, LLC,<br><br>           Debtor. | Case No. 8:21-bk-10525-ES<br><br>Chapter 11<br><br>**OPPOSITION OF SHADY BIRD LENDING, LLC TO MOTION FOR ORDER EXTENDING DEBTOR'S EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RONALD RICHARDS IN SUPPORT THEREOF**<br><br>DATE:  June 10, 2021<br>TIME:   10:30 a.m.<br>PLACE: Courtroom "5A" |

DAL 2712208v1

Shady Bird Lending, LLC ("Shady Bird") hereby submits its "Opposition of Shady Bird Lending, LLC to Motion for Order Extending Debtor's Exclusive Periods to File Plan of Reorganization and Obtain Acceptances Thereof; Memorandum of Points and Authorities; Declaration of Ronald Richards in Support Thereof" (the "Opposition"), in response to the "Notice of Motion and Motion for Order Extending Debtor's Exclusive Periods to File Plan of Reorganization and Obtain Acceptances Thereof; Memorandum of Points and Authorities; Declaration of Donald Chae in Support Thereof" (the "Motion"), filed by the debtor and debtor in possession, The Source Hotel, LLC (the "Debtor"), and represents as follows:

## I.

## **PREFATORY STATEMENT**

The Debtor has been in chapter 11 for nearly four months. During that time, other than borrowing money from an affiliated entity, it has failed to do anything that should give this Court or creditors confidence in how it intends to emerge from this case. In derogation of the intricate balance Congress struck between the dual interests of debtors and creditors,[1] the Debtor provides little (if anything) to justify any extension, much less ninety days.

The Debtor attempts to substantiate its request by again shifting the blame for its procrastination to Shady Bird. According to the Debtor, since it was required to devote a "substantial" amount of time addressing Shady Bird's motions, it has not had "adequate" time to focus on preparing its plan of reorganization. This excuse rings hollow, since the Debtor has been in default of its loan since 2019 and has had ample time to secure debtor in possession or exit financing or identify a potential buyer for the hotel, especially based on the valuations it continues to tout. So although the Debtor's

---

[1] See In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R. 448, 450 (Bankr. W.D. Tex. 1987) (explaining that the Section 1121 exclusivity period "represents a compromise between the dual goals of giving the debtor time to reorganize and protecting the creditors' legitimate interests").

DAL 2712208v1

2

counsel certainly may have been somewhat occupied responding to motions and attending to the ministerial tasks required in chapter 11, this has no bearing on what the Debtor or the Chae's have been doing (or not doing) both prior to and during this chapter 11 case.

The fact remains that no appropriate grounds exist for the extension.

## II.

## THE DEBTOR'S FACTUAL RECITATION CONTAINS NUMEROUS ERRORS AND MISSTATEMENTS WHICH SHOULD BE DISREGARDED IN RESOLVING THE MOTION

Heeding the Court's concerns that the parties have been engaging in an unnecessary war of words, Shady Bird will not spend the time to correct the numerous inaccuracies and misrepresentations meant to perpetrate the myth that, but for the conduct of Shady Bird and its predecessor, Evertrust, the hotel would have been finished by now.[2] Shady Bird already has demonstrated the falsity of these accusations, as well as the representation that the hotel is basically complete, other that "finish work." The Court has seen detailed reports from the Receiver and her consultants undermining these statements.

As an important reminder, Shady Bird had Mr. Chae sign a pre-negotiation letter before there was ever a first meeting. This clearly removed any risk that the oral discussions between the lender and the borrower could turn into actionable claims. As such, the parties were free to talk without fear of claims against one another. Mr. Chae only has his lack of business management to blame for the Debtor's predicament, not the assignee who purchased a defaulted debt instrument.

---

[2] Unless otherwise stated, the use of capitalized terms herein shall have the meaning ascribed to them in the "Notice of Motion and Motion for Order Extending Debtor's Exclusive Periods to File Plan of Reorganization and Obtain Acceptances Thereof; Memorandum of Points and Authorities; Declaration of Donald Chae in Support Thereof" (the "Motion").

DAL 2712208v1

3

Instead of focusing on excuses and overly optimistic views of what the Debtor hopes to do in the future, the Court should focus on what the Debtor has failed to accomplish during the four months it has been in chapter 11, and whether it is deserving of any more time when Shady Bird stands ready to propose its own plan of reorganization. When the Court does so, it will agree with Shady Bird that the plan process must be opened up to other parties.

### III.

### NO VALID BASIS EXISTS TO EXTEND THE PLAN EXCLUSIVITY PERIODS

It is the Debtor's burden to clearly establish that "cause" exists for the granting of an extension of exclusivity.

> Debtor has the burden of proving that cause exists for the extension of the 120-day period for filing a plan of reorganization as provided in 11 U.S.C. § 1121(b), and the 180-day period for obtaining acceptances of the filed plan in accordance with 11 U.S.C. § 1121(c)(3). . . . The debtor must make a clear showing of 'cause' to support an extension of the exclusivity period.

In re Curry Corp., 148 B.R. 754, 755-756 (Bankr. S.D.N.Y. 1992) (citations omitted); In re Sharon Steel Corp., 78 B.R. 762, 765 (Bankr. W.D. Pa. 1987) (movant has the burden of proving sufficient cause exists to justify an extension of exclusivity).

Moreover, "a request to either extend or reduce the period of exclusivity is a serious matter" and "*should be granted neither routinely nor cavalierly*." In the Matter of All Seasons Indus., Inc., 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990) (internal quotation marks omitted) (emphasis added).

Here, the Debtor fails to identify sufficiently compelling grounds to satisfy its burden that "cause" exists under Section 1121(d) to warrant a 90-day extension. In re Dow Corning Corp., 208 B.R. 661, 663 (Bankr. E.D. Mich. 1997) (the "debtor bears the burden of proof when it requests an extension of its period of exclusivity … [and] can

DAL 2712208v1

4

obtain an extension only if it can show 'cause.'").[3] "[A]ffirmative answers to a number of the inquiries listed in Dow Corning [...] do not necessarily favor extending exclusivity." Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem. Hosp. (In re Henry Mayo Newhall Hosp.), 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002).  Although the Court refused to designate this case as a SARE, in all practicalities that is exactly what this case is, and the Debtor has had four months to accomplish what the Code requires a SARE debtor to accomplish in 90 days.

In short, the Debtor simply fails to satisfy its burden of demonstrating "cause" under the Dow Corning test it has embraced.  Moreover, even if the Debtor had shown cause, the circumstances of this case dictate that an extension not be granted.  There are two key operative phrases within § 1121(d).  The court 'may' and 'for cause' extend the exclusivity period.  The use of the term 'may' instead of 'shall' clearly allows the bankruptcy court great latitude in the exercise of its discretion whether or not to extend the exclusivity period.  In exercising its discretion, the court may extend the exclusivity period if sufficient cause is shown.  Conversely, the court may refuse to extend the exclusivity period even if there is a showing of cause.

The second operative phrase within § 1121(d), 'for cause' means that the court may only exercise its discretion after a

---

[3] The relevant inquiries under Dow Corning are: (1) the size and complexity of the case; (2) the necessity of sufficient time to negotiate and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) whether the debtor is paying its debts as they come due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiating with creditors; (7) the length of time the case has been pending; (8) whether the debtor is seeking the extension to pressure creditors; and (9) whether unresolved contingencies exist.  Dow Corning, 208 B.R. at 670.

> party in interest establishes sufficient cause.  The absence
> of an adequate definition of the phrase 'for cause' in this
> matter is significant.  In essence, Congress has left the
> meaning of the phrase 'for cause' to be determined by the
> facts and circumstances in each individual case.

<u>Sharon Steel</u>, 78 B.R. at 763-764.

The circumstances of this case which dictate that the Court deny the Debtor's request for an extension of exclusivity include, among other things, the following: (i) this is, for all intents and purposes, a single asset real estate case even if the Court did not choose to apply the SARE definition found in 11 U.S.C. § 101(51B); (ii) the Debtor has failed to move the plan process forward in this case on a diligent basis; (iii) denial of the Debtor's request for extension of exclusivity does not prejudice the Debtor's right to pursue confirmation of an appropriate plan, to seek DIP or exit financing, or to seek a sale; (iv) this is not an unusually large or complex case; and (v) the Debtor should not be allowed to use an extension of exclusivity as a tactical device to pressure creditors to accept the Debtor's contemplated plan when other parties, including Shady Bird, are willing to put a plan before the Court and creditors for confirmation.

Here, the lapse of exclusivity would also eliminate any concerns that the Debtor's request for an extension of exclusivity is designed to pressure creditors to submit to its reorganization demands.  <u>Dow Corning</u>, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (finding one factor to consider in determining whether to extend exclusivity is "whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands").  Even if the Debtor does not intend to use an extension of the 180-day exclusivity period as a tactical device to pressure creditors, this would be the consequence of granting an extension.

> [S]uch an extension would have the result of continuing to
> hold creditors hostage to the Chapter 11 process and
> pressuring them into accepting a plan they believe to be

> unsatisfactory. . . .  While the court does not believe that debtor filed its motion with this purpose in mind, it does appear that this will be or may be one of the unintended consequences of granting the request.

<u>All Seasons</u>, 121 B.R. at 1006.

The Debtor certainly will not be prejudiced by the lapse of its exclusivity. Whether or not exclusivity is in place, the Debtor can move forward, assuming that it is able to submit a disclosure statement containing adequate information and that it is able to submit a confirmable plan.  Denial of the Debtor's request to extend the 180-day exclusivity period will not in any way prevent the Debtor from pursuing confirmation of a plan (assuming adequate disclosure is provided), it will not prevent the Debtor from pursuing the host of exit strategies referenced in the Motion, and it will not prevent the Debtor from negotiating with creditors.  In fact, denial of the Motion would foster negotiations between the Debtor and its key constituents, such as Shady Bird, the City of Buena Park (the "City"), and mechanic's lien holders, who are concerned with the lack of progress since the loan went into default and the Debtor entered chapter 11.

This is especially true since, as mentioned, Shady Bird will fill the void and submit its own plan once exclusivity is denied.  Creditors are entitled to see what other parties have to offer in the absence of anything other than the Debtor's hopes and prayers.  As such, denial of the Motion will not impose a deadline on the Debtor for confirming a plan or even for proposing an acceptable plan but, in fact, it may actually result in the Debtor submitting a plan earlier if it knows that there will be a competing plan from Shady Bird.

Denial of the Motion, in other words, will not prejudice the legitimate interests of the Debtor to exit chapter 11.

> Denying an extension in this case does not affect the debtors' ongoing right to file a plan.  The fact that the debtors no longer have the exclusive right to file a plan does not affect

> their concurrent right to file a plan. . . .  By denying the extension, the Court does not prejudice the debtors' co-existent right, nor dilute the debtors' duty to file a plan.  The other parties are simply allowed to protect their interests by coming forward with alternative plans. . . .
>
> Section 1121 does not create a deadline for filing a plan.  The debtors may develop and file their plan or plans as they feel appropriate.  The risk that while the debtors are developing their plan, another party in interest may file a plan, is a risk that Congress intended, so as to preserve the balance between a debtors' needs and the legitimate interests of creditors. . . .  Further, if the debtors' concerns are correct, and the objecting creditors file a plan which would prevent the debtors from going forward with the pending lawsuit, the debtors and other creditors can object to confirmation on any number of grounds.  Filing such a plan does not guaranty confirmation.

In re Southwest Oil Company of Jourdanton, Inc., 84 B.R. 448, 454 (Bankr. W.D. Tex. 1987); see also All Seasons, 121 B.R. at 1005.

It is time that the Court open up the process in this case so that the parties will have a chance to work toward a confirmable plan of reorganization.

> [T]he playing field should be leveled so that all the players, including the debtor, will now have an even chance in proposing a reorganization plan which might be acceptable to the creditors in this case.  Accordingly, the debtor's motion to extend the plan exclusivity period is denied because the debtor has not satisfied its burden of establishing that cause exists for the requested extension.

In re General Bearing Corp., 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992). See also In re Eua Power Corporation, 130 B.R. 118, 118-119 (Bankr. D. N.H. 1991) ("[I]t is essential to open up the plan process in this case to competing plans to achieve a number of results that will foster hopefully a consensual reorganization or at any rate force movement towards a reorganization that might be confirmed by the court.").

As noted, the Debtor simply cannot meet its burden for receiving additional time under the Dow Corning test.

### A. The Debtor's Case is Neither Large Nor Complex

The Debtor claims that "[g]iven the aggregate value of the Hotel and FF&E, and the amount of claims asserted against the Debtor, the Debtor's bankruptcy case is neither a small nor simple chapter bankruptcy case." The opposite is true: nothing about the size and complexity of this case warrants an extension. Shady Bird does not dispute that courts have granted extensions of plan exclusivity periods (even serial extensions) based on the size and complexity of a case. Shady Bird disputes, however, that the Debtor's case is among those types of cases.

This is not a large conglomerate, like Texaco, or Dow Corning, or Johns-Manville, or any of the recent large retailers which were forced to file chapter 11 due to the COVID-19 pandemic. This is a single real estate project which has been in a state of partial construction for the past seven years, and has the typical debt associated with such a real estate enterprise, namely, secured debt, mechanic's liens, and trade debt.[4] Although certain courts have refused to limit extensions of plan exclusivity periods to

---

[4] The Debtor repeatedly states that it must allow the claims bar date to pass before it can finalize the terms of a feasible plan and negotiate plan terms with its creditors. This argument is nonsensical. The Debtor filed detailed schedules listing its secured and unsecured creditors which, presumably, were based on the Debtor's books and records. Therefore, while certain creditors may adjust their claims upwards or downwards, it is highly unlikely that any claim will differ dramatically from what the Debtor placed in its schedules. And since the notice of the claims bar date was only served on the creditors listed by the Debtor, it is equally unlikely that some mysterious creditor will emerge and file a claim that the Debtor was unaware of. The Debtor, therefore, has more than enough information regarding its claimholders with which to formulate and file a plan.

DAL 2712208v1

9

"mega cases," at least some form of complexity must be present. Nothing of the sort exists here.

### B. The Debtor Has Not Properly Utilized Its Time to Negotiate a Plan or Prepare Adequate Information, and Otherwise Has Not Made Sufficient Progress Towards Formulation of a Plan

Peppered throughout the Motion are the Debtor's claims that it has been unable to work diligently to fashion a chapter 11 plan and negotiate with creditors since it has been too busy responding to Shady Bird's motions. This excuse is just that, an excuse. Chapter 11 debtors are often confronted with numerous motions filed by affected parties, and the mere fact that Shady Bird filed three motions in the relatively early stages of the case has not prevented the Debtor or the Chae's from undertaking the steps necessary to develop a plan to exit chapter 11.

As a reminder, the chapter 11 filing was not a surprise. The Debtor defaulted on its loan in 2019, allowed numerous forbearance periods to lapse without addressing the debt or locating either new financing, investors, or a buyer, and only filed chapter 11 to stave off a noticed foreclosure sale. An additional four months has now passed and the Debtor still portrays itself as the victim. Only the Debtor is to blame for not having accomplished the necessary steps to complete construction or pay off its existing indebtedness. Shady Bird has actually enhanced, not harmed, the project and the estate, and the Debtor should not be permitted to benefit from the delay that it alone caused.

The Motion should be denied even if the Court accepts the Debtor's representations of alleged progress. First, as illustrated before, a denial of the Motion "does not sound a death knell for debtor[s'] reorganization." All Seasons, 121 B.R. at 1005. "Denying such a motion only affords creditors their right to file the plan; there is no negative effect upon the debtor[s'] co-existing right to file its plan." Id., at 1005. Second, and more importantly, the concomitant threat of other plans that a denial of the Motion brings will have the salutary effect of "caus[ing] the debtor to come forward more quickly

than he might otherwise." Mayo, 282 B.R. at 453. In other words, denial of the Motion likely will increase the speed at which the Debtor finalizes its exit strategy and related negotiations, and presents a plan.

### C. The Debtor Has Not Demonstrated Any Prospects for Filing a Viable Plan

To obtain an extension of the plan exclusivity periods a "debtor in a Chapter 11 case is also required to demonstrate that there is a reasonable probability that it will be able to propose a plan that will result in a successful reorganization within a reasonable time." Southwest Oil, 84 B.R. at 451-52; Mayo, 282 B.R. at 452. "A reasonable probability cannot be grounded solely on speculation." Southwest Oil, 84 B.R. at 451-52. The Debtor has not made any demonstration regarding its prospects for filing an appropriate plan, and its request for an extension is based solely on speculative efforts to obtain financing. The Motion does not even allege, much less establish, that the Debtor has any prospects for proposing a workable plan, other than vague and unverifiable references to searching for investors, DIP or exit financing, or a buyer. Indeed, the Motion is premised almost entirely on the notion that the Debtor has not had sufficient time to finalize the work it needs to do in order to ascertain whether it has a plan in the making. This is an excuse the Court should reject.

### D. The Remaining Dow Corning Factors Do Not Support Granting an Extension of the Exclusivity Periods

As highlighted earlier, other factors considered on requests for extension of plan exclusivity periods include: (i) the existence of good faith; (ii) whether the debtor is paying its bills timely; (iii) the amount of time that has elapsed in the case; (iv) whether the debtor is seeking an extension to pressure creditors to submit to demands; and (v) whether any unresolved contingencies exist. As briefly addressed, each of these factors either is neutral or otherwise does not support the Debtor's current request.

### 1.  The Existence of Good Faith

At this time, Shady Bird is not contending that the Debtor is not operating this case other than in good faith.  Shady Bird, however, notes the following issues of concern.  First, Shady Bird continues to press the Court to allow the hotel to remain in the Receiver's capable hands until the Debtor can locate sufficient exit financing, a buyer, or present a confirmable plan.  Merely stating that the Debtor has met with prospective lenders and investors is meaningless in the absence of a term sheet or commitment letter evidencing how the Debtor intends to extricate itself from chapter 11.

Shady Bird also has expressed its concerns with the Court regarding the quality and competency of the Debtor's management.  Shady Bird still has numerous questions regarding the Debtor's ability to secure any form of financing or locate construction financing, which is threatening the Debtor's underlying agreements with the City and places the hotel project in peril.  Permitting a competing plan to be filed will allow these serious issues to be addressed.

### 2.  Timely Payment of Bills

The undisputed fact that the Debtor is timely paying its bills is a non-issue, for the simple fact that there are few, if any, bills to be paid.  As a reminder, Shady Bird gifted $200,000 to the estate to ensure that immediate and necessary repairs to the project were made.  But for this advance, nothing would be happening at the project other than maintaining basic utility service and security.  In other words, it is Shady Bird and the Receiver, not the Debtor, who is ensuring that the bills are being paid timely.

### 3.  The Amount of Time That Has Elapsed

This case has been pending for nearly four months, which, when added to the length of time the Debtor has had since it defaulted, has provided the Debtor with a sufficient runway to obtain whatever investor or lender financing it needs to restart construction and resolve its sizable claims.  The Debtor has not shown what it can realistically accomplish if provided an extra ninety days, and how it will be prejudiced in any way if the Motion is denied and the plan process is opened up to other parties.

### 4. Pressure On Creditors

This factor considers whether a debtor's request for an extension is designed to put pressure on creditors to have them accede to the debtor's reorganization demands. Shady Bird is not aware of any overt attempts by the Debtor to use the Motion for that purpose. However, this may be simply because, at this time, the Debtor has yet to formulate a plan in order to make any such demands. In other words, this factor only further highlights the Debtor's lag in progressing towards reorganization.

### 5. There Are No Unresolved Contingencies

As far as Shady Bird is concerned, no unresolved contingencies exist. The fact that Shady Bird's relief from stay motion remains pending cannot possibly justify the Debtor sitting on its hands and letting its initial exclusivity period tick on by without availing itself of whatever avenues for exiting chapter 11 may exist. Even if it might be premature to file a plan, it certainly is not premature to prepare a plan that can be quickly disseminated if relief from stay is denied. Again, this is a lame excuse meant to place the blame for the Debtor's inaction squarely on Shady Bird's shoulders. Therefore, it would be entirely unjust to allow the Debtor to rely on a pending relief from stay motion to obtain the requested extension.

### 6. The Debtor Has No Support From the City

The Debtor certainly cannot tout that it has the unwavering support of the City, as the City has now withdrawn its "Opposition By the City of Buena Park to Shady Bird Lending, LLC's Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362."[5] The City, therefore, has no opposition to Shady Bird foreclosing on the project. The City has cancelled all contracts and permits with the Debtor, and the Debtor has supplied no evidence demonstrating that it will ever repair its relationship with the City. The Debtor

---

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the "Notice of Immediate Withdrawal of Opposition By the City of Buena Park to Shady Bird Lending, LLC's Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362" filed on May 26, 2021 [Docket No. 143].

also has provided no evidence that any "flag" hotel will continue to work with the Debtor on the project. The City's withdrawal shows implicitly that the only party that can save this project is Shady Bird, not the Debtor. Freeing up the plan process to allow Shady Bird to propose a plan will expedite the project's completion.

### 7. **Shady Bird Has $25,052,359.99 Available to Complete the Hotel**

As the declaration of Ronald Richards, affixed hereto, confirms, Shady Bird has committed $25,052,359.99 to complete the hotel and the funds are in its general operating account. The only way for this troubled asset to come to fruition is for Shady Bird to immediately start construction. This requires either that relief from stay be granted, or that Shady Bird be permitted to file a plan to achieve this result. The prejudice to the City and the other creditors is severe, and another six months could kill the market and result in nothing but an eyesore on the City's landscape. The Debtor's request for additional time to exclusively file a plan is, under the circumstances, an unreasonable request. The Debtor has no support from anyone to finish this project and none was listed in the Motion. The exclusivity period is a natural marker and the Debtor has not presented any justification to continue that period at all.

*[Remainder of page intentionally left blank]*

## IV.

## **CONCLUSION**

Since there is no credible evidence warranting an extension, the Court should deny the Motion and permit other vested creditors, such as Shady Bird, the opportunity to propose a plan which will accomplish what the Debtor simply is unable or unwilling to do - provide an end date with a meaningful distribution to each class of creditors.

DATED: May 27, 2021

**Sulmeyer**Kupetz
A Professional Corporation

By: /s/ *Daniel A. Lev*
    Daniel A. Lev
    Attorneys for Shady Bird Lending, LLC

DATED: May 27, 2021

Law Offices of Ronald Richards & Associates, APC

By: /s/ *Ronald Richards*
    Ronald Richards
    Attorneys for Shady Bird Lending, LLC

# DECLARATION OF RONALD RICHARDS

I, Ronald Richards, declare and state as follows:

1. At all times relevant hereto, I have been the non-member, manager for Shady Bird Lending, LLC, a California limited liability company ("Shady Bird"). In this capacity, I have personal knowledge of the facts set forth in this declaration, and if called as a witness for this purpose, I could and would testify competently under oath to them.

2. I make this declaration in support of the "Opposition of Shady Bird Lending, LLC to Motion for Order Extending Debtor's Exclusive Periods to File Plan of Reorganization and Obtain Acceptances Thereof; Memorandum of Points and Authorities; Declaration of Ronald Richards in Support Thereof" (the "Opposition") in response to the "Notice of Motion and Motion for Order Extending Debtor's Exclusive Periods to File Plan of Reorganization and Obtain Acceptances Thereof; Memorandum of Points and Authorities; Declaration of Donald Chae in Support Thereof" (the "Motion"), filed by the debtor and debtor in possession, The Source Hotel, LLC (the "Debtor").

3. I am not a member or owner of Shady Bird, but I am the only one who is authorized to execute settlements or act on behalf of the entity.

4. Based on recent discussions between Shady Bird and the City of Buena Park (the "City"), the City has withdrawn its "Opposition By the City of Buena Park to Shady Bird Lending, LLC's Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362." The City, therefore, has no opposition to Shady Bird foreclosing on the project. The City has cancelled all contracts and permits with the Debtor, and the Debtor has supplied no evidence demonstrating that it will ever repair its relationship with the City. The Debtor also has provided no evidence that any "flag" hotel will continue to work with the Debtor on the project. The City's withdrawal shows implicitly that the only party that can save this project is Shady Bird, not the Debtor. Freeing up the plan process to allow Shady Bird to propose a plan will expedite the project's completion.

5. In this regard, Shady Bird has committed $25,052,359.99, which is available in its general operating account, to complete construction of the hotel.

Conversely, the Debtor neither has the available funds nor support of the City to finish the project.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of May, 2021, at Los Angeles, California.

/s/ *Ronald Richards*
Ronald Richards

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION OF SHADY BIRD LENDING, LLC TO MOTION FOR ORDER EXTENDING DEBTOR'S EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RONALD RICHARDS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 27, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See Attached**

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) May 27, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Overnight Mail**
The Honorable Erithe A. Smith
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5040
Santa Ana, CA 92701

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 27, 2021 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 2710485v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                    F 9013-3.1.PROOF.SERVICE

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Ron Bender on behalf of Debtor The Source Hotel, LLC
rb@lnbyb.com

Christopher G. Cardinale on behalf of Creditor City Of Buena Park
ccardinale@agclawfirm.com

Michael G Fletcher on behalf of Creditor Evertrust bank
mfletcher@frandzel.com, sking@frandzel.com

Amir Gamliel on behalf of Interested Party Courtesy NEF
amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com

Robert P Goe on behalf of Creditor Westranco, Inc.
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Nancy S Goldenberg on behalf of U.S. Trustee United States Trustee (SA)
nancy.goldenberg@usdoj.gov

Peter F Jazayeri on behalf of Interested Party Cordes & Company, by and through Bellann Raile
peter@jaz-law.com

Peter F Jazayeri on behalf of Other Professional Cordes & Company, by and through Bellann Raile
peter@jaz-law.com

Daniel A Lev on behalf of Creditor Shady Bird Lending, LLC
dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

Grant A Nigolian on behalf of Interested Party Courtesy NEF
grant@gnpclaw.com, process@gnpclaw.com;grant.nigolian@gmail.com

Juliet Y Oh on behalf of Debtor The Source Hotel, LLC
jyo@lnbrb.com, jyo@lnbrb.com

Ho-El Park on behalf of Interested Party Courtesy NEF
hpark@hparklaw.com

Ronald N Richards on behalf of Creditor Shady Bird Lending, LLC
ron@ronaldrichards.com, morani@ronaldrichards.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, morani@ronaldrichards.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

CC 2710485v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**