RON BENDER (SBN 143364)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email:  RB@LNBYB.COM; JYO@LNBYB.COM

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No.: 8:21-bk-10525-ES |
| THE SOURCE HOTEL, LLC, a California limited liability company, | Chapter 11 |
| Debtor and Debtor in Possession. | **DEBTOR'S RESPONSE TO SHADY BIRD LENDING, LLC'S SUPPLEMENTAL STATEMENT RE (1) MOTION OF SHADY BIRD LENDING, LLC FOR ORDER EXCUSING STATE COURT RECEIVER FROM TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. § 543; AND (2) MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 363 (WITH SUPPORTING DECLARATIONS) (REAL PROPERTY); SUPPLEMENTAL DECLARATION OF MATTHEW L. SAMS IN SUPPORT THEREOF** |
| | Hearing:<br>Date:    June 3, 2021<br>Time:    2:00 p.m.<br>Place:    ZoomGov |

1

1      The Source Hotel, LLC, a California limited liability company and the chapter 11 debtor

2 and debtor-in-possession herein (the "Debtor"), hereby files this response to *Shady Bird Lending,*

3 *LLC's Supplemental Statement Re (1) Motion Of Shady Bird Lending, LLC For Order Excusing*

4 *State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543, And (2) Motion*

5 *For Relief From The Automatic Stay Under 11 U.S.C. § 363 (With Supporting Declarations)*

6 *(Real Property)* [Doc. No. 135] (the "Brief") filed by Shady Bird Lending, LLC ("Shady Bird")

7 in the Debtor's bankruptcy case.

8      As noted in the supplemental opposition filed by the Debtor [Doc. No. 130] (the

9 "Supplemental Opposition") to (i) the *Motion Of Shady Bird Lending, LLC For Order Excusing*

10 *State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* [Doc. No. 51] (the

11 "Receiver Motion"), and (ii) the *Notice Of Motion And Motion For Relief From The Automatic*

12 *Stay Under 11 U.S.C. § 363 (Real Property)* [Doc. No. 62] (the "RFS Motion," and together with

13 the Receiver Motion, the "Motions"), and the declarations submitted by the Debtor in support of

14 such Supplemental Opposition, the Debtor obtained its own property inspection and evaluation

15 report (the "SCW Report") from Matthew L. Sams of SC Wright Group ("SCW"). A true and

16 correct copy of the SCW Report is attached as **Exhibit A** to the Declaration of Matthew L. Sams

17 filed concurrently with the Supplemental Opposition.

18      The SCW Report confirms the Debtor's estimate (at 85%) of the completion of

19 construction of the Debtor's partially completed seven-story hotel property located in the City of

20 Buena Park, County of Orange, State of California (the "Hotel"), confirms the Debtor's estimates

21 of the costs and time required to complete construction of the Hotel, confirms that the allegations

22 made by Shady Bird regarding the Debtor's purported failure to adequately maintain, protect and

23 secure the Hotel are exaggerated, and confirms that the Hotel property has been adequately

24 maintained and is in good condition (particularly after the work that has been performed by the

25 Receiver to date using approximately $95,000 of the "gifted" funds offered by Shady Bird to the

26 Debtor's estate).

27      The Debtor and its expert, Mr. Sams, have reviewed the Brief filed by Shady Bird, as

28 well as the "Preconstruction Phase 2A Progress Report" prepared by Carine, Inc. at the request

of Shady Bird and/or the Receiver, Bellann Raile (the "Carine Report"), which is attached as Exhibit A to the Brief. The Debtor and Mr. Sams submit that the Brief and the Carine Report filed by Shady Bird further confirm that the allegations made by Shady Bird regarding the state of disrepair of the Hotel were largely exaggerated, that the Hotel property is in good (albeit incomplete) condition, and that any "urgent" repairs or maintenance issues required to be addressed at the Hotel have been addressed or are in the process of being addressed by the Receiver. There is certainly no basis to conclude, as Shady Bird has, that the Hotel is currently in a "neglected and dilapidated state" – in fact, the information provided in the various expert reports, including Shady Bird's own expert reports, conclude the opposite. The following are issues initially noted by the Receiver and Shady Bird in the Motions (and at the initial hearing on the Receiver Motion) as issues of immediate concern, which have ultimately proven not to be urgent or problematic issues:

- *Fire sprinkler system.* At the hearing on the Motions, the Receiver noted that the completion of the Hotel's fire sprinkler system was an issue of immediate concern. As the Receiver and Shady Bird appear to now acknowledge, it is not practical (nor industry practice) to complete the fire sprinkler system given the current state of construction as such system will not be operational until the controls, smoke detectors and drywall are installed and completed.

- *Moisture inspection and water intrusion.* The Receiver retained American Integrated Resources, Inc. ("AIRI") to conduct a moisture testing and water intrusion inspection at the Hotel, at a cost of $15,882. As noted in the report prepared by AIRI, a copy of which is attached as Exhibit 2 to the Debtor's Supplemental Opposition, "[n]o moisture levels were found to be elevated in any of the areas tested in this investigation." Given AIRI's findings that there were no elevated moisture levels, and the confirmation in the Carine Report that Carine, Inc. "did not observe any mold on visible surfaces [at the Hotel,]" there is no possibility of mold at the Hotel and there is no legitimate reason to obtain a mold inspection

3

report. Nevertheless, if the Receiver and Shady Bird wish to spend the gifted funds from Shady Bird to obtain such a report, the Debtor has no objection.

- ***Pool deck repairs.*** Shady Bird and the Receiver initially noted that the pool deck would require "substantial repair." However, as acknowledged in Shady Bird's brief, any potential issue with the pool deck can be addressed when construction resumes by applying a fresh coat of the fluid applied membrane noted by SCW in its report to the pool deck.

- ***Pool water accumulation.*** Shady Bird and the Receiver initially noted that the pool had an accumulation of water and trash which they surmised could make the pool a breeding ground for disease carrying mosquitos. As noted in the SCW Report, SCW observed that the pool was dry during its visual inspection. And as acknowledged in Shady Bird's Brief, the Receiver has been informed that "keeping the pool free of water is all that needs to be done at this time."

- ***Roof issues.*** Shady Bird and the Receiver initially noted that there were substantial roof issues which permit the intrusion of water into the structure. However, as noted in the SCW Report and in Shady Bird's Brief, the work performed by Best Incorporated at the Receiver's request appears to have fully addressed this issue. Moreover, as the report obtained by the Receiver from AIRI indicates, there were no elevated moisture levels found in the areas tested (including the top/7th floor, where the concerns about water intrusion were focused), so there are no outstanding roof issues at this time.

- ***Broken window.*** While the Debtor does not believe that the broken glass in one of the Hotel windows is an issue that required immediate attention nor one that compromised the integrity of the Hotel, the Debtor notes that the Receiver has now addressed this issue by retaining Lakewood Glass & Screen to replace the broken window and repair a loose glass window, at a cost of $25,823.

In its Brief, Shady Bird notes that the Receiver has provided "protective plastic membrane over carpeted floors in all hotel rooms." However, as noted by the Debtor's expert in

his supplemental declaration attached hereto, no more than 10% of the Hotel rooms have any carpet, so the Receiver's efforts in that regard are very limited in scope and therefore of correspondingly limited benefit to the Hotel. Shady Bird also expresses concern for the first time in its Brief (and in the Carine Report) about the certification of the wiring that has been installed at the Hotel. Any such concerns are speculative and premature. As noted by the Debtor's expert in his supplemental declaration attached hereto, it would be an extreme anomaly for an electrical/lighting subcontractor and the general contractor or construction manager (here, Swinerton Builders, who Shady Bird has apparently consulted with regarding the Hotel) to install wiring for a project of this scale without following the submittal process for certification. The certification of the wiring can be easily confirmed by obtaining copies of the submittals on the wiring installed by the electrical/lighting subcontractor. The Debtor has introduced the Receiver to Evergreen Electric Construction, which was the electrical subcontractor for the Hotel, so the Debtor presumes that the Receiver has received (or will receive shortly) confirmation of the foregoing from Evergreen Electric Construction.

Shady Bird relies primarily (if not solely) on its allegations that the Debtor has failed to adequately maintain, protect and secure the Hotel and that the Hotel is therefore in a state disrepair to request the relief it seeks in the Receiver Motion and the RFS Motion. However, as discussed above and in the Debtor's Supplemental Opposition, Shady Bird's allegations are belied by the numerous expert reports in the record before this Court. The expert reports confirm that the Hotel property is in good condition, and that any necessary maintenance work and repairs have now been performed by the Receiver. Given the Debtor's historical knowledge and experience with the Hotel project, the Debtor is more than capable of ensuring the continued security and maintenance of the Hotel while it seeks to reorganize its financial affairs through this bankruptcy case. Under these circumstances, the Debtor submits that Shady Bird has failed to meet its burden of affirmatively demonstrating that it is in the best interests of all creditors to keep the Receiver in place and to have the Receiver excused from compliance with the turnover requirements of 11 U.S.C. § 543.

Furthermore, Shady Bird has introduced no evidence to indicate that the value of the Hotel has declined since the Petition Date. Shady Bird and its interest in the Hotel and the Debtor's other assets are in no worse position than it was prior to the Petition Date and imposition of the automatic stay, particularly where, as here, the Receiver has been in sole possession and control of the Hotel since the Petition Date. In fact, given the work performed at the Hotel at the Receiver's behest in the last few weeks, the value of the Hotel has arguably improved since the Petition Date. Shady Bird's interest in the Hotel and the Debtor's other assets is therefore adequately protected and no "cause" exists to grant relief from the automatic stay under 11 U.S.C. § 362(d)(1).

As set forth in the Debtor's initial opposition to the RFS Motion, there is ample equity in the Hotel property, which will allow for a recovery to creditors other than just Shady Bird. The Debtor has been, and continues to be, engaged in active discussions with prospective lenders and investors regarding the terms for debtor-in-possession and/or exit financing, which will provide the Debtor with the funding necessary to complete the construction of the Hotel, service debt, operate the Hotel until operations can be stabilized, and potentially fund a feasible plan of reorganization in the Debtor's case. In addition, and on a parallel path to the Debtor's efforts to obtain debtor-in-possession and/or exit financing to propose a plan of reorganization, the Debtor intends to immediately retain a commercial real estate broker (subject, of course, to the approval of the Court) and commence a marketing and sale process for the Hotel. The Debtor submits that it is in the best interests of all creditors to deny the RFS Motion and permit the Debtor to pursue these parallel paths so that all creditors may benefit (not just Shady Bird).

///
///
///
///
///
///

For all of the reasons set forth above and in the Debtor's initial opposition and Supplemental Opposition to the Motions, the Debtor respectfully requests that both Motions be denied at this time.

Dated:  May 27, 2021

THE SOURCE HOTEL, LLC

By: *(signature)*
RON BENDER
JULIET Y. OH
LEVENE, NEALE, BENDER, YOO
    & BRILL L.L.P.
Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

**SUPPLEMENTAL DECLARATION OF MATTHEW L. SAMS**

I, Matthew L. Sams, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto. I am a Senior Vice President of SC Wright Group ("SCW"), a forensic construction firm which provides expert forensic construction services to a wide range of clients, including developers, owners, general contractors, insurance companies and attorneys, throughout the United States. As an active and experienced construction firm for over two decades, SCW's services are enhanced by SCW's "real life" knowledge of construction, which in turn makes SCW uniquely capable of accurately determining the costs of repair, construction and reconstruction on a wide range of projects. I am a licensed general building contractor in the states of California, Montana and Nebraska, and I have been consistently involved in the construction industry for over 44 years, including the last 25 years specializing in forensic construction services.

2. SCW and I were retained by counsel for M+D Properties, which I am advised and believe is the non-member manager of The Source Hotel, LLC, the debtor and debtor-in-possession herein (the "Debtor"), to inspect and evaluate the Debtor's partially completed seven-story full-service hotel located in the City of Buena Park, County of Orange, State of California (the "Hotel"), and to prepare a written property inspection and evaluation report for the Hotel. A true and correct copy of the property inspection and evaluation report prepared by SCW (the "SCW Report"), which I prepared, was previously submitted to the Court.

3. I submit this supplemental declaration in support of the Debtor's response (the "Response") to *Shady Bird Lending, LLC's Supplemental Statement Re (1) Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543, And (2) Motion For Relief From The Automatic Stay Under 11 U.S.C. § 363 (With Supporting Declarations) (Real Property)* (the "Brief") filed by Shady Bird Lending, LLC ("Shady Bird") in the Debtor's bankruptcy case. I have reviewed the Response to which this supplemental declaration is attached and I believe that the statements set forth therein of which I have personal knowledge are true and accurate. All capitalized terms not specifically defined herein shall have

the meanings ascribed to them in the Response.

4. I have reviewed the Brief filed by Shady Bird, as well as the "Preconstruction Phase 2A Progress Report" prepared by Carine, Inc. at the apparent request of Shady Bird and/or the Receiver, Bellann Raile (the "Carine Report"), which is attached as Exhibit A to the Brief.

5. I believe that the Brief and the Carine Report filed by Shady Bird confirm that the allegations that have been made by Shady Bird in its prior filings with the Court regarding the state of disrepair of the Hotel (which filings I have reviewed) were largely exaggerated, that the Hotel property is in good (albeit incomplete) condition, and that any "urgent" repairs or maintenance issues required to be addressed at the Hotel have been addressed or are in the process of being addressed by the Receiver. I do not believe there is any basis to conclude that the Hotel is currently in a "neglected and dilapidated state" as I understand Shady Bird contends. In fact, I believe that the information provided in the SCW Report and in the various expert reports submitted by Shady Bird's own experts conclude the opposite.

6. The following are issues which I am advised and understand were initially noted by the Receiver and Shady Bird in the Motions (and at the initial hearing on the Receiver Motion) as issues of immediate concern, which I believe are ultimately not urgent or problematic issues:

- *Fire sprinkler system.* It is not practical (nor industry practice) to complete the fire sprinkler system given the current state of construction as such system will not be operational until the controls, smoke detectors and drywall are installed and completed.

- *Moisture inspection and water intrusion.* I reviewed the moisture testing and water intrusion inspection report obtained by the Receiver from American Integrated Resources, Inc. ("AIRI"). The report prepared by AIRI stated that "[n]o moisture levels were found to be elevated in any of the areas tested in this investigation." I am a certified mold inspector and remediator. Based on my experience and knowledge with respect to mold inspections and remediation, there is no possibility of mold at the Hotel given AIRI's findings that there were no elevated moisture levels, the confirmation in the Carine Report that Carine, Inc.

"did not observe any mold on visible surfaces [at the Hotel,]" and my own visual inspections of the Hotel during which I did not observe any mold. Under these circumstances, I do not believe a mold inspection is necessary and would not recommend such an inspection to a client.

- *Pool deck repairs.* I do not believe that the pool deck requires "substantial repair." I believe that any potential issue with the pool deck can and will be addressed when construction resumes by applying a fresh coat of the fluid applied membrane (as noted in the SCW Report).

- *Pool water accumulation.* As noted in the SCW Report, I observed that the pool was dry during my visual inspections. I agree with the information provided to the Receiver, as acknowledged in Shady Bird's Brief, that "keeping the pool free of water is all that needs to be done at this time."

- *Roof issues.* I am advised that Shady Bird and the Receiver initially noted that there were substantial roof issues which permit the intrusion of water into the structure. As noted in the SCW Report and in Shady Bird's Brief, the work performed by Best Incorporated at the Receiver's request appears to have fully addressed this issue. Moreover, as the report obtained by the Receiver from AIRI indicates, there were no elevated moisture levels found in the areas tested (including the top/7th floor, where the concerns about water intrusion were focused), so there does not appear to be any outstanding roof issues at this time.

- *Broken window.* While I do not believe that the broken glass in one of the Hotel windows is an issue that required immediate attention nor one that compromised the integrity of the Hotel, I note that the Receiver has now addressed this issue by retaining Lakewood Glass & Screen to replace the broken window and repair a loose glass window, at a cost of $25,823.

7.    In its Brief, Shady Bird notes that the Receiver has provided "protective plastic membrane over carpeted floors in all hotel rooms." However, based upon my visual inspection of the Hotel, no more than 10% of the Hotel rooms have any carpet, so the Receiver's efforts in this regard are very limited in scope and therefore of correspondingly limited benefit.

8.    Shady Bird also expresses concern in its Brief (and in the Carine Report) about the certification of the wiring that has been installed at the Hotel. I believe that any such concerns are speculative and premature. It would be an extreme anomaly for an electrical/lighting subcontractor and the general contractor or construction manager (who I understand is Swinerton Builders for the Hotel) to install wiring for a project of this scale without following the submittal process for certification. The certification of the wiring can be easily confirmed by obtaining copies of the submittals on the wiring installed by the electrical/lighting subcontractor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of May 2021, at La Mesa, California.

_____
MATTHEW L. SAMS

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S RESPONSE TO SHADY BIRD LENDING, LLC'S SUPPLEMENTAL STATEMENT RE (1) MOTION OF SHADY BIRD LENDING, LLC FOR ORDER EXCUSING STATE COURT RECEIVER FROM TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. § 543; AND (2) MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 363 (WITH SUPPORTING DECLARATIONS) (REAL PROPERTY); SUPPLEMENTAL DECLARATION OF MATTHEW L. SAMS IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 27, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ron Bender    rb@lnbyb.com
- Christopher G. Cardinale    ccardinale@agclawfirm.com, mgonzalez@agclawfirm.com
- Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com
- Amir Gamliel    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- Peter F Jazayeri    peter@jaz-law.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Grant A Nigolian    grant@gnpclaw.com, process@gnpclaw.com;grant.nigolian@gmail.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Ho-El Park    hpark@hparklaw.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On **May 27, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

☐ Service List continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 27, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*Served via Overnight Mail*
Hon. Erithe A. Smith
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 27, 2021 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**