RON BENDER (SBN 143364)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  RB@LNBYB.COM; JYO@LNBYB.COM

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE SOURCE HOTEL, LLC, a California limited liability company,<br><br>     Debtor and Debtor in  Possession. | Case No.: 8:21-bk-10525-ES<br><br>Chapter 11<br><br>**DEBTOR'S REPLY TO OBJECTION OF SHADY BIRD LENDING, LLC TO APPLICATION OF DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY NAI CAPITAL COMMERCIAL, INC. AS REAL ESTATE BROKER PURSUANT TO 11 U.S.C. §§ 327 AND 328; SUPPLEMENTAL DECLARATION OF CHRIS JACKSON IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:     July 1, 2021<br>Time:    10:30 a.m.<br>Place:   ZoomGov |

1

1

2       The Source Hotel, LLC, a California limited liability company and the chapter 11 debtor

3   and debtor-in-possession herein (the "Debtor"), hereby files this reply to the objection [Doc. No.

4   162] (the "Objection") filed by Shady Bird Lending, LLC ("Shady Bird") to the Debtor's

5   application for Court approval of the Debtor's employment of NAI Capital Commercial, Inc. (the

6   "NAI Capital") as the Debtor's real estate broker [Doc. No. 151] (the "Application").[1]

7       Pursuant to its Objection, Shady Bird expresses concerns regarding (1) the qualifications

8   and experience of NAI Capital; (2) the purported lack of clarity and disclosure in the Listing

9   Agreement regarding, among other things, the listing price for the Hotel and the terms of any

10  purchase offer(s) that would be considered by the Debtor and its affiliates; (3) the potential

11  conflicts of interest raised by the concurrent marketing and sale of properties adjacent to the Hotel

12  which are owned by the Debtor's affiliates; and (4) the six-month term provided for in the Listing

13  Agreement.  As discussed below, the concerns expressed by Shady Bird in its Objection are

14  generally misguided and/or can be easily addressed, and should not prevent the Debtor from

15  retaining the professional real estate broker of its choice.

16      **A.  NAI Capital Is Eminently Qualified To Represent The Debtor**

17      NAI Capital is eminently qualified to represent the Debtor in connection with the

18  marketing and sale of the Hotel.  NAI Capital is the largest independently owned full-service

19  commercial real estate firm headquartered in Southern California, with approximately 223 brokers

20  working in 13 offices throughout Southern California.  NAI Capital is the largest member of NAI

21  Global, with access to more than 375 offices strategically located throughout North America, Latin

22  America, Europe, Africa and Asia Pacific, with over 6,000 local market professionals.  Annually,

23  NAI Global completes in excess of $20 billion in commercial real estate transactions throughout

24  the world.  By leveraging its local expertise with its global reach, NAI Capital offers innovative,

25  customized solutions and seamless service to owners, tenants, investors and developers throughout

26

27      [1] All capitalized terms not specifically defined herein shall have the meanings ascribed to
them in the Application.

28

2

Southern California.  NAI Capital is a dynamic growing commercial real estate company, which offers a full range of commercial real estate brokerage services, spanning a wide range of commercial and investment properties, to meet the needs of real estate owners, occupants and investors.   Additional information about NAI Capital is available on its website located at https://www2.naicapital.com.

Moreover, the two brokers who will primarily be responsible for NAI Capital's representation of the Debtor, Chris Jackson and Philip "Ted" Attalla, have impressive professional resumes with extensive experience and demonstrated success within the commercial real estate sector.  Mr. Jackson has 25 years of commercial real estate experience, and began his career at CB Richard Ellis and Grubb & Ellis.   Mr. Jackson is highly regarded in the industry for his transactional prowess and, over the course of his career, has won several accolades, including being named one of the Top 30 Brokers in the San Fernando Valley by the San Fernando Valley Business Journal.  Mr. Jackson currently serves as the Co-Chief Executive Officer of NAI Capital, is a founding member of NAI Capital's Investment Services Group, which specializes in investment properties throughout the United States, and personally handled investment sales and leasing transaction volumes of $325 million in the year 2020.   Mr. Attalla has 20 years of commercial and industrial real estate experience and has completed real estate transactions representing over ten million square feet of warehouse/distribution facilities in over 29 states through the United States.  In addition, Mr. Attalla has personal experience representing a client in connection with its purchase of a hotel portfolio, which included the Outrigger Hotel located in Waikiki, Hawaii (a 400-room budget hotel), for $45 million.    Subsequently, Mr. Attalla represented the same client in connection with its purchase of Ilikai Hotel Tower on Waikiki Beach in Hawaii (a 353-room hotel) for $140 million.   True and correct copies of the professional biographies of Mr. Jackson and Mr. Attalla are attached as **Exhibit A** to the Supplemental Declaration of Chris Jackson annexed hereto (the "Supplemental Jackson Declaration").

The Debtor selected NAI Capital after interviewing a number of prospective brokerage firms, including, without limitation, Cushman & Wakefield.  The Debtor selected NAI Capital due

1  to, among other reasons, NAI Capital's diligence in marketing the Hotel for sale (a process which

2  NAI Capital thoroughly discussed with the Debtor and has already implemented), NAI Capital's

3  responsiveness and attention to the concerns and goals of the Debtor in connection with the

4  marketing and sale of the Hotel, NAI Capital's familiarity with the bankruptcy process, and NAI

5  Capital's global network which includes its own proprietary database of over 5,600 investors.  The

6  Debtor's right to employ a professional of its choice should not be disturbed, particularly where, as

7  here, the professional (NAI Capital) has the requisite experience and qualifications to represent the

8  Debtor and there are no conflicts which bar such professional's employment by the Debtor.  *See In*

9  *re Christ's Church of the Golden Rule*, 165 F.2d 1007 (9th Cir. 1948) ("Only in the rarest cases

10  should the trustee be deprived of the privilege of selecting his own counsel") (quoting *In re*

11  *Mandell*, 69 F.2d 830 (2d Cir. 1934)); *see also* 3 *Collier on Bankruptcy* ¶ 327.04[1] (15th ed. rev.)

12  (In the absence of a legitimate or material conflict of interest, "failure to approve the trustee's

13  selection in the absence of good reason has been called an abuse of judicial discretion.").

14  NAI Capital has participated in multiple meetings and calls with the Debtor's management

15  and professionals, and has already listed the Hotel on the Real Capital Markets (RCM) platform,

16  which is a listing platform that NAI Capital and all of its competitors utilize to reach active

17  investors comprised of private investors, institutional funds, opportunity funds, pension

18  funds/advisors, REITs, and other investors.  The listing of the Hotel on the RCM platform will

19  reach those parties that NAI Capital believe are the most likely purchasers of the Hotel, including

20  hotel groups.  NAI Capital anticipates that the Hotel will be listed on Loopnet, Costar, and on NAI

21  Capital's and NAI Global's internal sites by Friday, June 25, 2021.  In short, NAI Capital

22  appreciates the timing pressures in the Debtor's bankruptcy case, has worked diligently with the

23  Debtor and its management to design a marketing process that is aimed at reaching the most likely

24  buyers (a process which NAI Capital submits would not be substantially different even with a

25  different brokerage firm), and has not hesitated to implement such marketing process for the Hotel.

26  ///

27  ///

28

## B.  The Listing Agreement Provides Sufficient Disclosure

Shady Bird takes issue with the fact that two of the exhibits to the Listing Agreement (*i.e.*, Exhibits B and C) were not included in the copy of the Listing Agreement filed with the Application.  Exhibit B to the Listing Agreement is a description of the properties proposed to be marketed by NAI Capital, including the Hotel, with corresponding addresses and parcel numbers, and has been – and will be – provided to any prospective purchaser who signs a nondisclosure agreement to access the "data room" information and documents relating to the properties proposed to be sold.  Given the foregoing, and given further that Shady Bird already has the property description, address and parcel number(s) relating to the Hotel, which is the only asset in which Shady Bird has any economic interest, the exclusion of Exhibit B in the Application is a "red herring."

Exhibit C to the Listing Agreement is a list of Excluded Persons with whom the Debtor had already communicated regarding a possible sale of the Hotel (prior to NAI Capital's involvement) and whose successful purchase of the Hotel would result in a lower commission rate being paid to NAI Capital.  The best chance of successfully selling the Hotel and maximizing the sale price for the Hotel is to foster a competitive bidding process.  The Debtor is therefore very sensitive to the possibility of prospective purchasers working together and colluding and/or of Shady Bird contacting prospective purchasers, which actions (inadvertently or otherwise) ultimately result in the depression of the sale price for the Hotel.  Therefore, and as noted in the Application, Exhibit C is being kept confidential and was excluded from the Application.  There is no prejudice to prospective purchasers or to Shady Bird by such exclusion, and Shady Bird fails to articulate any such possible prejudice in its Objection.

Finally, Shady Bird complains that there is no listing price for the Hotel set forth in the Listing Agreement.  As reflected in the Listing Agreement, the Hotel is being marketed for sale individually and/or as part of the entire "The Source" development project, which includes retail and office properties adjacent to the Hotel which are owned by the Debtor's affiliates (the "Non-Debtor Owned Properties").  NAI Capital believes that the concurrent marketing of the Hotel with

the Non-Debtor Owned Properties will maximize interest in all such properties by a much wider range of prospective purchasers.  Put simply, if there are more interested prospective purchasers, there are more opportunities to sell the Hotel at the highest price possible.  Since the Hotel and the Non-Debtor Owned Properties are being marketed both individually and jointly, it is impractical and cumbersome to list an initial listing price for any of the properties. Moreover, NAI Capital believes that listing a formal listing price for the Hotel may artificially establish a "threshold" price for the Hotel, and that allowing prospective purchasers to make their own initial offers will result in more competitive bidding and, ultimately, a higher purchase price for the Hotel.  Moreover, any serious prospective purchaser will access the information provided in the "data room" established by NAI Capital as well as the docket for the Debtor's bankruptcy case, and will be guided by the amount of secured debt asserted against the Hotel (as well as its own due diligence) to make an offer for the Hotel.  Accordingly, the fact that there is no formal listing price for the Hotel will not be an impediment to any serious prospective purchaser.

### C.  There Are No Conflicts Of Interest By NAI Capital's Concurrent Representation Of The Debtor's Affiliates

Shady Bird argues that the proposed joint employment of NAI Capital by the Debtor and its non-debtor affiliates, to market and sell the Hotel and the Non-Debtor Owned Properties concurrently, presents "potential conflicts of interest" between the Debtor and such affiliates. There is no potential or actual conflict as the interests of the Debtor and its non-debtor affiliates are aligned with respect to the marketing and sale of the properties.

As noted above, NAI Capital is marketing the Hotel both on an individual basis and as part of the entire "The Source" development project, which includes the Non-Debtor Owned Properties. NAI Capital believes that the concurrent marketing of the Hotel with the Non-Debtor Owned Properties will maximize interest in all such properties by a much wider range of prospective purchasers as it will not only garner interest from parties interested in acquiring just the hotel, but also from parties interested in acquiring "The Source" development as a whole.  Such added flexibility is indisputably in the best interests of the Debtor and its estate.

In its Objection, Shady Bird poses a number of other questions to illustrate the potential conflicts that may arise as a result of NAI's joint retention by the Debtor and its non-debtor affiliates. Those questions and the Debtor's responses thereto are set forth below:

1.     ***Is NAI only soliciting offers for the entire package of real estate?*** No. NAI is soliciting, and will continue to solicit, offers for the Hotel both on an individual basis and as part of the entire "The Source" development project, which includes the Non-Debtor Owned Properties.

2.     ***How does NAI intend to apportion the aggregate sales price among the three properties?*** In the event that any prospective purchaser makes an offer for the Hotel plus some or all of the Non-Debtor Owned Properties, such purchaser will be required to allocate its offer price among the properties so that it is clear how much consideration is being offered for the Hotel by that particular purchaser.

3.     ***What if NAI only receives an offer for the Project, but not the other properties? Will the Debtor seek approval of the offer even if no offer is received for the other non-debtor properties?*** If the only offer received is for the Hotel, and such offer is acceptable to the Debtor, the Debtor will seek Court approval of such offer. The sale of the Hotel is not contingent on the sale of the Non-Debtor Owned Properties.

4.     ***Will the non-debtors proceed with separate sales, and will NAI then be entitled to a commission from the Debtor even though the Project is not one of the properties being sold?*** Any sale(s) of the Non-Debtor Owned Properties will proceed outside of the Debtor's bankruptcy case as this Court has no jurisdiction over such properties. Any commission payable to NAI Capital in connection with the sale(s) of the Non-Debtor Owned Properties will be due from, and paid by, the respective non-debtor affiliates (not the Debtor and its estate). The only commission payable to NAI Capital by the Debtor will be the commission due on account of the sale of the Hotel (and only the Hotel). To the extent there is an offer to purchase the Hotel plus one or more of the Non-Debtor Owned Properties, the purchaser will be required to allocate its offer price among

7

1    the properties so that it is clear how much of the offer price is attributable to the Hotel and

2    how much of the commission payable to NAI Capital is due from the Debtor and its estate.

3        The proposed retention of NAI Capital is no different than if the Debtor had entered into a

4    separate stand-alone listing agreement for just the Hotel, with the Debtor's affiliates entering into a

5    different listing agreement for the Non-Debtor Owned Properties, which agreement would not be

6    subject to the review or approval of this Court.   The marketing of the Hotel and Non-Debtor

7    Owned Properties by one brokerage firm – NAI Capital – will result in much better synergy and

8    will be significantly more efficient and cost-effective for all parties involved (including prospective

9    purchasers).

10        **D.   The Proposed Term Of The Listing Agreement Is Typical And Reasonable**

11        As set forth in the Supplemental Jackson Declaration annexed hereto, a listing term of six

12    months is typical in the commercial real estate industry and is even more reasonable under the

13    circumstances herein, given that the Hotel is only partially completed and is the subject of a

14    pending bankruptcy case.   Shady Bird's argument that the Debtor is seeking to "lock up this case"

15    by agreeing to a six month listing term makes little sense.   The listing term is primarily intended to

16    protect the broker from investing time and resources into marketing and selling a property while

17    competing for such sale with another broker(s).   Since the Listing Agreement is between the

18    Debtor and NAI Capital, the approved listing term has no prejudicial effect on Shady Bird's rights

19    and remedies with respect to the Hotel.   For example, if Shady Bird were successful in obtaining

20    relief from the automatic stay with respect to the Hotel, the approved listing term would not stop

21    Shady Bird from enforcing any of its rights and remedies with respect to the Hotel (including to

22    foreclose on the Hotel).   Given the foregoing, there is no prejudice to Shady Bird, or any other

23    party, in approving a listing term of six months, which as noted above, is typical in the commercial

24    real estate industry.

25    ///

26    ///

27    ///

28

For all of the reasons set forth above and in the Application, the Debtor respectfully requests that this Court enter an order: (1) approving the Application; (2) authorizing the Debtor to employ NAI Capital as its real estate broker in accordance with the terms and conditions set forth in the Application and in the Listing Agreement; and (3) granting such further relief as the Court deems just and proper.

Dated: June 24, 2021                             THE SOURCE HOTEL, LLC


                                                 By:_____
                                                     RON BENDER
                                                     JULIET Y. OH
                                                     LEVENE, NEALE, BENDER, YOO
                                                        & BRILL L.L.P.
                                                     Attorneys for Chapter 11 Debtor and
                                                     Debtor-in-Possession

**SUPPLEMENTAL DECLARATION OF CHRIS JACKSON**

I, Chris Jackson, hereby declare as follows:

1.      I am the co-Chief Executive Officer of NAI Capital Commercial, Inc. (the "NAI Capital").

2.      I have personal knowledge of the facts stated herein, except where stated upon information and belief, and, as to such statements, I believe them to be true. I make this Declaration in support of the reply (the "Reply") of The Source Hotel, LLC, a California limited liability company and the Chapter 11 debtor and debtor-in-possession herein (the "Debtor"), to the objection (the "Objection") filed by Shady Bird Lending, LLC ("Shady Bird") to the Debtor's application for Court approval of the Debtor's employment of NAI Capital as the Debtor's real estate broker (the "Application").  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Reply.

3.      I have personally reviewed the Application, the Objection thereto filed by Shady Bird, and the Reply to which this Declaration is attached, and believe that the facts and statements set forth in the Reply are true and accurate to the best of my knowledge.

4.      NAI Capital is the largest independently owned full-service commercial real estate firm headquartered in Southern California, with approximately 223 brokers working in 13 offices throughout Southern California.  NAI Capital is the largest member of NAI Global, with access to more than 375 offices strategically located throughout North America, Latin America, Europe, Africa and Asia Pacific, with over 6,000 local market professionals.  Annually, NAI Global completes in excess of $20 billion in commercial real estate transactions throughout the world.  By leveraging its local expertise with its global reach, NAI Capital offers innovative, customized solutions and seamless service to owners, tenants, investors and developers throughout Southern California.  NAI Capital is a dynamic growing commercial real estate company, which offers a full range of commercial real estate brokerage services, spanning a wide range of commercial and investment properties, to meet the needs of real estate owners, occupants and investors.  Additional information about NAI Capital is available on its website located at https://www2.naicapital.com.

5.      I have 25 years of commercial real estate experience, and began my career at CB Richard Ellis and Grubb & Ellis.  Over the course of my career, I have won several accolades, including being named one of the Top 30 Brokers in the San Fernando Valley by the San Fernando Valley Business Journal.  I currently serve as the Co-Executive Officer Chief of NAI Capital, and I am a founding member of NAI Capital's Investment Services Group, which specializes in investment properties throughout the United States.  I personally handled investment sales and leasing transaction volumes of $325 million in the year 2020.  A true and correct copy of my professional biography is attached as **Exhibit A** hereto.

6.      My colleague, Philip "Ted" Attalla, and I are the brokers at NAI Capital who will be primarily responsible for the representation of the Debtor.  Mr. Attalla has 20 years of commercial and industrial real estate experience and has completed real estate transactions representing over ten million square feet of warehouse/distribution facilities in over 29 states through the United States.  In addition, Mr. Attalla has personal experience representing a client in connection with its purchase of a hotel portfolio, which included the Outrigger Hotel located in Waikiki, Hawaii (a 400-room budget hotel), for $45 million.  Subsequently, Mr. Attalla represented the same client in connection with its purchase of Ilikai Hotel Tower on Waikiki Beach in Hawaii (a 353-room hotel) for $140 million.  A true and correct copy of Mr. Attalla's professional biography is attached as **Exhibit A** hereto.

7.      I am advised and believe that the Debtor selected NAI Capital after interviewing a number of prospective brokerage firms, including, without limitation, Cushman & Wakefield.  I believe that NAI Capital is the ideal brokerage firm to represent the Debtor in this case, particularly given NAI Capital's diligence in marketing the Hotel for sale (a process which NAI Capital thoroughly discussed with the Debtor and has already implemented), NAI Capital's responsiveness and attention to the concerns and goals of the Debtor in connection with the marketing and sale of the Hotel, NAI Capital's familiarity with the bankruptcy process, and NAI Capital's global network which includes its own proprietary database of over 5,600 investors.

8.      NAI Capital has participated in multiple meetings and calls with the Debtor's management and professionals, and has already listed the Hotel on the Real Capital Markets (RCM) platform, which is a listing platform that NAI Capital and all of its competitors utilize to reach active investors comprised of private investors, institutional funds, opportunity funds, pension funds/advisors, REITs, and other investors.  The listing of the Hotel on the RCM platform will reach those parties that I believe are the most likely purchasers of the Hotel, including hotel groups.  I anticipate that the Hotel will be listed on Loopnet, Costar, and on NAI Capital's and NAI Global's internal sites by Friday, June 25, 2021.  In short, NAI Capital appreciates the timing pressures in the Debtor's bankruptcy case, has worked diligently with the Debtor and its management to design a marketing process that is aimed at reaching the most likely buyers (a process which I submit would not be substantially different even with a different brokerage firm), and has not hesitated to implement such marketing process for the Hotel.

9.      Exhibit B to the Listing Agreement is a description of the properties proposed to be marketed by NAI Capital, including the Hotel, with corresponding addresses and parcel numbers, and has been – and will be – provided to any prospective purchaser who signs a nondisclosure agreement to access the "data room" information and documents relating to the properties proposed to be sold.

10.     Exhibit C to the Listing Agreement is a list of Excluded Persons with whom the Debtor had advised it already communicated regarding a possible sale of the Hotel (prior to NAI Capital's involvement) and whose successful purchase of the Hotel would result in a lower commission rate being paid to NAI Capital.  I believe that the best chance of successfully selling the Hotel and maximizing the sale price for the Hotel is to foster a competitive bidding process. Accordingly, I appreciate the Debtor's sensitivity to the possibility of prospective purchasers working together and colluding and/or of Shady Bird contacting prospective purchasers, which actions (inadvertently or otherwise) ultimately result in the depression of the sale price for the Hotel.  Therefore, and as noted in the Application, Exhibit C is being kept confidential and was excluded from the Application.

11.     NAI Capital is marketing and soliciting offers for the Hotel individually and/or as part of the entire "The Source" development project, which includes retail and office properties adjacent to the Hotel which are owned by the Debtor's affiliates (the "Non-Debtor Owned Properties").  I believe that the concurrent marketing of the Hotel with the Non-Debtor Owned Properties will maximize interest in all such properties by a much wider range of prospective purchasers as it will not only garner interest from parties interested in acquiring just the hotel, but also from parties interested in acquiring "The Source" development as a whole.  Put simply, if there are more interested prospective purchasers, there are more opportunities to sell the Hotel at the highest price possible.  I believe that the marketing of the Hotel and Non-Debtor Owned Properties by one brokerage firm (whether that is NAI Capital or another firm) will result in much better synergy and will be significantly more efficient and cost-effective for all parties involved (including prospective purchasers).

12.     Since the Hotel and the Non-Debtor Owned Properties are being marketed both individually and jointly, I believe it is impractical and cumbersome to list an initial listing price for any of the properties. Moreover, I believe that listing a formal listing price for the Hotel may artificially establish a "threshold" price for the Hotel, and that allowing prospective purchasers to make their own initial offers will result in more competitive bidding and, ultimately, a higher purchase price for the Hotel.  Moreover, I believe that any serious prospective purchaser will access the information provided in the "data room" established by NAI Capital as well as the docket for the Debtor's bankruptcy case, and will be guided by the amount of secured debt asserted against the Hotel (as well as its own due diligence) to make an offer for the Hotel.  In short, I do not believe that the fact that there is no formal listing price for the Hotel will be an impediment to any serious prospective purchaser.

13.     In the event that any prospective purchaser makes an offer for the Hotel plus some or all of the Non-Debtor Owned Properties, such purchaser will be required to allocate its offer price among the properties so that it is clear how much consideration is being offered for the Hotel by that particular purchaser.

1      14.    The Debtor has advised NAI Capital that, if the only offer received is for the Hotel,

2  and such offer is acceptable to the Debtor, the Debtor will seek Court approval of such offer.  The

3  sale of the Hotel is not contingent on the sale of the Non-Debtor Owned Properties.

4      15.    I am advised and believe that any sale(s) of the Non-Debtor Owned Properties will

5  proceed outside of the Debtor's bankruptcy case, and any commission payable to NAI Capital in

6  connection with the sale(s) of the Non-Debtor Owned Properties will be due from, and paid by, the

7  respective non-debtor affiliates (not the Debtor).  I am advised and believe that the only

8  commission payable to NAI Capital by the Debtor will be the commission due on account of the

9  sale of the Hotel (and only the Hotel).  To the extent there is an offer to purchase the Hotel plus

10  one or more of the Non-Debtor Owned Properties, the purchaser will be required to allocate its

11  offer price among the properties so that it is clear how much of the offer price is attributable to the

12  Hotel and how much of the commission payable to NAI Capital is due from the Debtor.

13      16.    Based on my experience, a listing term of six months is typical in the commercial

14  real estate industry and is even more reasonable under the circumstances here, given that the Hotel

15  is only partially completed and is the subject of a pending bankruptcy case.  The listing term is

16  primarily intended to protect the broker from investing time and resources into marketing and

17  selling a property while competing for such sale with another broker(s).

18      I declare under penalty of perjury under the laws of the United States of America that the

19  foregoing is true and correct.

20      Executed this 24th day of June, 2021, at Encino, California.

23

24  CHRIS JACKSON

14

# EXHIBIT "A"





## Chris Jackson

Co-CEO

NAI Capital HQ - Encino

+1 818 933 2368

+1 818 802 2627

cjackson@naicapital.com

## Scope of Responsibilities

Christopher Jackson currently serves as Co-CEO with NAI Capital in Encino. As manager, he oversees more than 40 brokers at the Encino corporate branch and is focused on recruiting talented professionals to join the team. In 2019 he joined the NAI Capital management team to help with the company's growth. The selection of Chris as Executive Managing Director is clear indication of NAI Capital's dedication to its brokers and clients.

Chris remains committed to his clients and as a broker is active in the sale and leasing of industrial properties, and Investment. He is also a founding member of NAI Capital's Investment Services Group and specializes in investment properties throughout the United States.

## Background & Experience



Professional
**Profile**

Chris is highly regarded in the industry for his transactional prowess. He began his career in commercial real estate in 1997 when joined CB Richard Ellis as an assistant in the Industrial Division. After joining Grubb & Ellis in 1998, he won Rookie of the Year in 2001. Over the course of his career he has won several accolades, including being named one of the Top 30 Brokers in the San Fernando Valley by the San Fernando Valley Business Journal.

Christopher Jackson entered commercial real estate in 1997 when joined CB Richard Ellis as an assistant in the Industrial Division. In December of 1998 Chris joined Grubb & Ellis where he won Rookie of the Year in 2001. In 2004 Chris was named by the San Fernando Valley Business Journal as one of the Top 30 Brokers in the San Fernando Valley. In 2006 Chris joined NAI Capital and in 2007 Chris finished number Five in the company with total revenue in excess of $60 million. Since joining NAI Capital he has been a Capital Club Top Producer every year.

In August 2014 Chris Jackson's accepted promotion to Executive Managing Director to assume the mantle as Branch Manager of our Encino corporate HQ office. With his guidance in 2020, Chris led the successful sale of NAI Capital to its brokers and employees. This was a tremendous achievement for NAI Capital. The selection of Chris to be the Co-CEO is clear indication of NAI Capital's commitment to its brokers, clients and customers in Southern California.

Professional Affiliations & Designations





**Awards and Professional Affiliations:**

- American Industrial Real Estate Association (AIR)
- Capital Club 2020 Platinum Award
- Capital Club 2019 Gold Award
- Capital Club 2018 Platinum Award
- Capital Club 2017 Platinum Award
- Capital Club 2016 Gold Award
- Capital Club 2015 Silver Award
- Capital Club 2014 Gold Award
- Capital Club 2013 Gold Award
- Capital Club 2012 Gold Award
- Capital Club 2011 Platinum Award
- Capital Club 2010 Gold Award
- Capital Club 2009 Gold Award
- Capital Club 2008 Gold Award
- Capital Club 2007 Platinum Award
- Top 200 Most Influential Leaders - San Fernando Valley Business Journal, 2019
- Grubb & Ellis LA North: Top Producer Award, 2001- 2006
- Circle of Excellence: Grubb & Ellis nationwide for 2005
- Top 40 Under 40 for Brokers - San Fernando Valley Business Journal, 2004
- Top 30 Brokers - San Fernando Valley Business Journal, 2004
- Rookie of the Year 2001 – Grubb & Ellis Company

## Educational Background

Chris Jackson graduated from Woodbury University with a B.S. in Business Administration and a minor in International Business.

## Significant Transactions

Investment Sales and Leasing Transaction Volume

- 2020 $325 million
- 2019 $275 million
- 2018: $150 million
- 2017: $85 million
- 2016: $68 million





## Philip "Ted" Attalla

Executive Managing Director
NAI Capital - South Bay

+1 323 201 3608
13238062327

pattalla@naicapital.com

### Scope of Responsibilities

Philip T. Attalla has twenty years of professional experience representing corporations in the acquisition/disposition of industrial real estate. His client services focus on facilitation negotiations in order to achieve below-market rates; and on providing in-depth knowledge on government permitting and licensing processes. Mr. Attalla has completed real estate transactions representing over ten million square feet of warehouse/distribution facilities in over twenty-nine (29) states throughout the Continental U.S.

### Background & Experience

Mr. Attalla started his real estate career in 1989 with Travers Realty Corporation until leaving the firm to join NAI Capital. After joining the NAI Capital team in March 2006 he quickly became part of the NAI Global Logistics Council working with other NAI Global Industrial brokers around the continental United States. This includes major distribution facilities for Alberto Colver, Proctor & Gamble, Cartier, Syncreon Technology USA, and US Freightways (Divisions USF Distribution, USF Logistics, USF Reddaway, USF Processors, USF Worldwide, & USF Coast Consolidators) With extensive knowledge and experience in the cold storage real estate field, Mr. Attalla has completed over three (3) million square feet of cold storage/food processing real estate transactions. This includes the recent ground-up build to suit of a state of the art USDA food processing plant & Corporate headquarters for Reynaldo's Mexican Food Company.

### Professional Affiliations & Designations

• Active Member, American Industrial Real Estate Association (AIR) • 2005 & 2012 AIR Real Estate Forecast Speaker • 2007 RealShare Conference Moderator, • Boy Scouts of America (San Gabriel Valley), Board Member • Vernon Rotary Club, Past President • Los Angeles Athletic Club, Previous Member of the Board of Govenors • Vernon Chamber of Commerce, Board Member • Jonathan Club of Los Angeles, Member • President, St. Anthony's Greek Orthodox Church • CCIM Member • SIOR, Candidate Member • NAI Capital Industrial Council, Chairman • NAI Global Industrial Council, member • NAI Global Logistics Council, Director

### Educational Background





Mr. Attalla is a graduate of Pepperdine University with a double major, Bachelor of Arts in Economics and Bachelor of Science in Business Administration. His emphasis of study was Strategic Analysis and Finance. Mr. Attalla's ongoing real estate education includes short courses at the University of California at Los Angeles in "Legal Aspects of Commercial/Industrial Lease Transactions," "Commercial Property Appraisal," "Real Estate Practice," "Analysis of Commercial Leases," and "Real Estate Law."

## Significant Transactions

Armstrong Environmental Baby Guess Jeans, Inc. L.A. Laundry City National Bank Dynamic Builders Expressway Apparel Hale Street Development M & M Distributors Samson Electronics The Inter-American Group U.S. Freightways - Worldwide, Consolidators, Processors, Distribution, Reddaway & Logistics Divisions City of Vernon General Electric Cartier Alverto Colvert Kimberly Clark United Natural Foods Becton, Dickson & Company Intel C.C. Industries Proctor & Gamble Rebuild L.A. City of Industry CEG Construction Investment Development Services Reynaldo's Mexican Food Company Sweetner Products, Inc. Syncreon Technologies USA Penguin Foods Cacique USA Charlie's Pride Passport Foods Prologis CenterPoint Properties Duke Realty Panattoni Development Passport Foods Marge Carson

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S REPLY TO OBJECTION OF SHADY BIRD LENDING, LLC TO APPLICATION OF DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY NAI CAPITAL COMMERCIAL, INC. AS REAL ESTATE BROKER PURSUANT TO 11 U.S.C. §§ 327 AND 328; SUPPLEMENTAL DECLARATION OF CHRIS JACKSON IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 24, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Christopher G. Cardinale    ccardinale@agclawfirm.com, mgonzalez@agclawfirm.com**
- **Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com**
- **Amir Gamliel    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com**
- **Nancy S Goldenberg    nancy.goldenberg@usdoj.gov**
- **Peter F Jazayeri    peter@jaz-law.com**
- **Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com**
- **Kyle J Mathews    kmathews@sheppardmullin.com**
- **Grant A Nigolian    grant@gnpclaw.com, process@gnpclaw.com;grant.nigolian@gmail.com**
- **Juliet Y Oh    jyo@lnbyb.com, jyo@lnbrb.com**
- **Ho-El Park    hpark@hparklaw.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On **June 24, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*None.*

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 24, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*None.*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

1
2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

3

June 24, 2021      Stephanie Reichert        */s/ Stephanie Reichert*

*Date*               *Type Name*           *Signature*

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**