RON BENDER (SBN 143364)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  RB@LNBYB.COM; JYO@LNBYB.COM

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE SOURCE HOTEL, LLC, a California limited liability company,<br><br>      Debtor and Debtor in  Possession. | Case No.: 8:21-bk-10525-ES<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT WITH SHADY BIRD LENDING, LLC AND GUARANTORS, AS SET FORTH IN THAT CERTAIN *STIPULATION FOR RELIEF FROM THE AUTOMATIC STAY AND ANCILLARY RELIEF*, AND GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD CHAE IN SUPPORT THEREOF**<br><br><u>Hearing:</u><br>Date:     August 12, 2021<br>Time:    10:30 a.m.<br>Place:   ZoomGov |

1

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**......................................................**6**

**I.     STATEMENT OF FACTS** .............................................................**6**

    **A.     Background**.............................................................................**6**

    **B.     Events Leading To Debtor's Bankruptcy Filing** .............................**8**

    **C.     Litigation In The Debtor's Bankruptcy Case**.................................**10**

    **D.     Settlement Negotiations Resulting In the Stipulation**......................**13**

**II.    DISCUSSION** ..............................................................................**17**

    *1.     The probability of success in the litigation* ...................................**19**

    *2.     The difficulties in collection* ......................................................**20**

    *3.     The complexity of the litigation involved and the expense,*
       *inconvenience and delay attendant to it*.......................................**20**

    *4.     The interests of creditors*...........................................................**20**

**III.   CONCLUSION**............................................................................**21**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re A & C Properties*,
    784 F.2d 1377 (9th Cir. 1986)
    .................................................................................................. 17, 18, 21

*In re Blair*,
    538 F.2d 849 (9th Cir. 1976) ................................................................. 18

*Matter of Carla Leather, Inc.*,
    44 B.R. 457 (Bankr. S.D.N.Y. 1984) ...................................................... 18

*In re General Store of Beverly Hills*,
    11 B.R. 539 (B.A.P. 9th Cir. 1981)......................................................... 18

*Langnes v. Green*,
    282 U.S. 531 (1931) ............................................................................. 17

*Newman v. Stein*,
    464 F.2d 689 (2nd Cir. 1972).................................................................. 18

*In re W.T. Grant & Co.*,
    699 F.2d 599 (2nd Cir. 1983).................................................................. 18

*Matter of Walsh Const., Inc.*,
    669 F.2d 1325 (9th Cir. 1982) ............................................................... 18

*In re Woodson*,
    839 F.2d 610,620 (9th Cir. 1988) ........................................................... 17

**Federal Statutes**

11 U.S.C. § 101 *et seq*.............................................................................*passim*

11 U.S.C. § 362(d)(3) ............................................................................. 2, 10

11 U.S.C. § 363.......................................................................................3, 12

11 U.S.C. § 543.......................................................................................2, 11

11 U.S.C. § 1107......................................................................................... 6

11 U.S.C. § 1108......................................................................................... 6

**Federal Rules**

Fed.R.Bankr.P.  4001 ............................................................................................................. 4

Fed.R.Bankr.P.  4001(a)(3) ............................................................................................... 5, 21

Fed.R.Bankr.P.  9013-1 ........................................................................................................ 4

Fed.R.Bankr.P.  9019 ............................................................................................................ 4

Fed.R.Bankr.P.  9019(a) ...................................................................................................... 17

Fed.R.Evid.  201 ................................................................................................................ 7, 8

**PLEASE TAKE NOTICE** that The Source Hotel, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "<u>Debtor</u>"), hereby files this motion (the "<u>Motion</u>") for the entry of an order approving the terms and conditions of, and authorizing the Debtor to enter into and implement, a settlement reached by and among the Debtor, its secured lender, Shady Bird Lending, LLC ("<u>Shady Bird</u>"), and the guarantors of the Debtor's loan with Shady Bird, Donald Chae and Min Chae (together, the "<u>Guarantors</u>"), as set forth in that certain *Stipulation For Relief From The Automatic Stay And Ancillary Relief* (together with the related agreements attached thereto, the "<u>Stipulation</u>"), a true and correct copy of which was filed with the Court on July 19, 2021 as Docket Number 188 and is attached as **<u>Exhibit 1</u>** to the Declaration of Donald Chae annexed hereto (the "<u>Chae Declaration</u>"). The complete bases of the Motion are set forth in the Memorandum of Points and Authorities annexed hereto.

Briefly, the Stipulation reflects a global resolution of the various disputes by and among such parties, including, without limitation:

(i)     the disputes between the Debtor and Shady Bird relating to that certain *Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* [Doc. No. 51] (the "<u>Receiver Motion</u>"), the hearing on which has been continued to September 30, 2021;

(ii)    the disputes between the Debtor and Shady Bird relating to that certain *Motion Of Shady Bird Lending, LLC For Order Designating Chapter 11 Case As Single Asset Real Estate Case Pursuant To 11 U.S.C. §§ 101(51B) And 362(d)(3)* [Doc. No. 49] (the "<u>SARE Motion</u>") and this Court's order denying the SARE Motion (the "<u>SARE Order</u>")[1];

---

[1] As reflected in the Stipulation, the parties have agreed that the appeal of the SARE Order, which was filed by Shady Bird and which is currently pending before the United States District Court for the Central District of California (the "<u>District Court</u>"), will continue. However, in the event that the SARE Order is reversed by the District Court, it will have no effect whatsoever on the terms of the Stipulation, and it will not provide Shady Bird or any other party with any rights or claims that are not consistent with the terms of the Stipulation.

(iii)    the disputes between the Debtor and Shady Bird relating to that certain *Notice Of Motion And Motion For Relief From The Automatic Stay Under 11 U.S.C. § 363 (Real Property)* [Doc. No. 62] (the "RFS Motion"), the hearing on which has been continued to September 30, 2021; and

(iv)    the disputes between Shady Bird and the Guarantors raised in the action currently pending before the Superior Court of California, County of Orange, Central Justice Center, bearing the case number 30-2020-01153205-CU-BC-CJC (the "Guarantor Action"), pursuant to which Shady Bird is seeking recovery from the Guarantors based upon their guaranties of the debt owed by the Debtor to Shady Bird.

The parties have engaged in lengthy and extensive settlement discussions in an effort to reach a consensual resolution of their disputes. Such discussions have been fruitful and have resulted in the settlement described in the Stipulation, which, among other things, provides for a consensual marketing and sale process for the Debtor's partially completed seven-story hotel with 178 rooms located in the City of Buena Park, County of Orange, State of California (the "Hotel"), with a stipulation by the parties that Shady Bird may credit bid its full claim in connection with any sale of the Hotel and that Shady Bird will be granted relief from the automatic stay to proceed with a non-judicial foreclosure sale of the Hotel if a sale or other transaction is not consummated in accordance with the milestones and terms described in the Stipulation. The Stipulation also provides for the retention of the state court appointed Receiver during the marketing and sale process for the Hotel, and the establishment of a process for calculating the outstanding debt due and owing by the Debtor to Shady Bird.

With respect to the Guarantor Action, the Stipulation provides for the dismissal of all defendants other than the Guarantors from the Guarantor Action, the execution of a stipulation providing for the entry of a stipulated judgment in the Guarantor Action in favor of Shady Bird, a stay of the Guarantor Action and any actions by Shady Bird to enforce, collect upon, or execute upon the stipulated judgment (or otherwise collect from the Guarantors or their

respective relatives or properties), the tolling of certain statutes of limitation and the periods for the avoidance, dissolution, or termination of any liens obtained by Shady Bird against the Guarantors and/or their relatives or properties, and releases by Shady Bird of the Guarantors and certain other parties.

Given the risks (including, without limitation, the risk that Shady Bird will obtain relief from the automatic stay to proceed with a non-judicial foreclosure sale of the Hotel) and the substantial costs associated with further litigation among the parties in the Debtor's bankruptcy case and in the Guarantor Action, the Debtor believes that the proposed settlement with Shady Bird and the Guarantors, in accordance with the terms and conditions set forth in the Stipulation, is in the best interests of the Debtor's bankruptcy estate.

This Motion is based upon Rules 9019 and 4001 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 9013-1 and 4001-1, this Notice of Motion and Motion and the attached Memorandum of Points and Authorities and Chae Declaration, the entire record in the Debtor's bankruptcy case, the statements, arguments and representations of counsel and other parties in interest to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to the Motion must be in writing, filed with the Court and served upon the United States Trustee as well as counsel for the Debtor at the address set forth in the upper left-hand corner of the first page of this Notice and Motion by no later than fourteen (14) days before the date of the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(h), the failure to file and serve a timely opposition to the Motion may be deemed by the Court to constitute consent to the granting of the relief requested in the Motion.

/ / /

/ / /

/ / /

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order:

1.      granting the Motion in its entirety;

2.      approving the terms and conditions of, and authorizing the Debtor to enter into and implement, the Stipulation in the form attached as Exhibit 1 to the Chae Declaration annexed hereto;

3.      authorizing the Debtor to take all steps reasonably necessary to implement and consummate the terms and conditions of Stipulation;

4.      waiving the 14-day stay period set forth in Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure; and

5.      granting such other and further relief as may be necessary or appropriate under the circumstances.

Dated:  July 22, 2021                         THE SOURCE HOTEL, LLC


By:_____
                                              RON BENDER
                                              JULIET Y. OH
                                              LEVENE, NEALE, BENDER, YOO
                                                  & BRILL L.L.P.
                                              Attorneys for Chapter 11 Debtor and
                                              Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    Background.**

1.    On February 26, 2021 (the "Petition Date"), The Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    The Debtor is a limited liability company that was organized in November, 2012 in the State of California. DMC Investment Holdings, LLC ("DMC") is a member of the Debtor which holds 100 units (or 100%) of Series 1 membership units in the Debtor. Donald Chae and Min S. Chae, who are brothers, are the members and principals of DMC. In addition to the Series 1 membership units held by DMC, an EB-5 investor entity called Beach Orangethorpe Hotel III, LLC ("BOH3") holds 29 units (or 100%) of Series 2 preferred membership units in the Debtor.

3.    Since at least 2014, the Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which upon completion will include conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services. The Hotel is part of a larger 12.8-acre mixed-use development project (the "Master Development"), which includes a 400,000 square-foot retail center and a 50,000 square-foot seven-story office building which were completed in 2016. The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property (the "Ground Lease") with the Debtor's affiliate, The Source at Beach, LLC.

4.    Construction of the Hotel began in 2016. To finance the construction of the Hotel, on May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from

Evertrust Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling $35.5 million, including the EB-5 investment by BOH3 in the sum of $14,500,000, for which BOH3 acquired preferred membership units in the Debtor.  The Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel and the Debtor's leasehold interest in the real property that is the subject of the Ground Lease (the "Leasehold Interest"), pursuant to the parties' Commercial Security Agreement and the Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Leasehold) recorded in the County of Orange on June 3, 2016 as Document No. 2016000252446 (the "Deed of Trust").[2]  The original maturity date for the Loan was December 1, 2017, but was extended to November 1, 2019 pursuant to written extension agreements entered into by the parties.

5.    There are a number of subcontractors that have recorded mechanics' liens against the Debtor and/or Hotel.  As reflected in the Debtor's Schedules of Assets and Liabilities filed in this case [Doc. No. 32], the Debtor believes that the total amount of the mechanics' liens recorded against the Debtor and/or Hotel is approximately $2,900,000.[3]  However, some of these recorded mechanics' liens appear to have expired or have not been properly perfected, or are otherwise disputed by the Debtor.

6.    The Debtor also received two tranches of EB-5 loans from Beach Orangethorpe Hotel, LLC and Beach Orangethorpe Hotel II, LLC (together, the "EB-5 Lenders," or individually, an "EB-5 Lender").  The Debtor's obligations under the loans from the EB-5

---

[2] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae filed in support of (and annexed to) that certain *Notice Of Motion And Motion For Entry Of An Order: (A) Requiring Turnover Of Estate Cash By Evertrust Bank; (B) Authorizing Debtor To Use Cash Collateral; And (C) Authorizing Debtor To Obtain Post-Petition Financing From M+D Properties On An Unsecured Basis* filed by the Debtor on March 12, 2021 [Doc. No. 21] (the "First CC/Financing Motion Declaration"), specifically Exhibit "C" and Exhibit "F" thereto, which include copies of the pre-petition loan and collateral documents with Evertrust.

[3] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae in support of the First CC/Financing Motion, specifically Exhibit "G" thereto, which includes a list of asserted mechanic's liens prepared by the Debtor as well as a preliminary title report for the Hotel dated December 22, 2020.

Lenders, in the total principal sum of $21,500,000, are secured by junior liens against the Hotel and the Leasehold Interest.[4]

7.      Through October 2019, approximately 85% of the Hotel construction had been completed, including: substantial completion of the core and shell, exterior painting, porte cochère, street lighting, ceiling framing, kitchen framing and glass block installation, food storages, all glass storefronts, electrical wiring and switchgear, guestroom flooring, ceiling fixtures, pool bar canopy structure, deck drains, window washing system, roof membrane, roof ductwork and HVAC vibration installation; nearly complete installation of bathroom fixtures (95%), acoustic ceiling system (80%), HVAC electrical connections (90%), piping for HVAC and plumbing equipment (95%), and rooftop ductwork (99%).  In addition, substantial materials have been procured and/or fabricated and are ready for installation pending completion of other items, such as first and second floor flooring, corridor carpeting, millwork (wall and ceiling panels, pool bar), passenger elevators, fire sprinklers, egress and accent lighting, pool equipment, guest room doors, locks and closures, bathroom fixtures, and rooftop HVAC equipment.

8.      The approximately 15% of the Hotel construction which remains outstanding consists of mostly "finish work" such as the installation of flooring and carpeting, lighting, appliances, trade fixtures, furniture, furnishings and equipment already purchased by the Debtor (collectively, "FF&E").

**B.      Events Leading To Debtor's Bankruptcy Filing.**

9.      In late 2019, Evertrust refused to issue the remaining $4 million of the Loan, claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to provide the final $4 million of the Loan, the Debtor was forced to cease construction activities.

10.      When Evertrust refused to issue the remaining $4 million of the Loan, the Debtor immediately and actively sought to refinance the Loan.  The Debtor began discussions with a new

---

[4] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the Declaration of Donald Chae in support of the First CC/Financing Motion, specifically Exhibit "H" thereto, which includes copies of the Deeds of Trust recorded against the Hotel by the two EB-5 Lenders.

lender named Hall Structured Finance ("Hall") in the fall of 2019 and was ultimately able to reach an agreement with Hall for refinancing in the total sum of $42 million. The Debtor and Hall were on the verge of closing on the refinancing, with a target closing date of March 20, 2020, when local, county, and State officials issued lockdown orders as a result of the COVID-19 pandemic. At that point, Hall put an indefinite hold on the closing of the refinancing with the Debtor.

11. As a result, the Debtor went back to Evertrust and, between March 2020 and December 2020, engaged in active forbearance negotiations with Evertrust to obtain a further extension of the Loan maturity date so that the Hotel could recover from the effects of the COVID-19 pandemic, and the Debtor could obtain refinancing or additional construction financing and ultimately recommence construction of the Hotel.

12. On or about July 29, 2020, while the Debtor and Evertrust were still engaged in forbearance negotiations, Evertrust commenced a lawsuit against the guarantors of the Loan, Donald Chae and Min Chae (together, the "Guarantors") and certain other defendants in the Superior Court of California, County of Orange, Central Justice Center ("Superior Court"), bearing the case number 30-2020-01153205-CU-BC-CJC (the "Guarantor Action"), pursuant to which Evertrust sought recovery from the Guarantors based upon their guaranties of the Loan. In the summer of 2020, Evertrust also recorded a Notice of Default against the Hotel.

13. Subsequently, in December 2020, Shady Bird purchased Evertrust's interests in the Loan at a significant discount, for a reported purchase price of approximately $19 million. While the Debtor engaged in discussions and negotiations with Shady Bird to attempt to reach a consensual resolution of the parties' disputes, such discussions and negotiations were ultimately unsuccessful.

14. Following Shady Bird's purchase of the Loan, Shady Bird and Evertrust entered into a stipulation to substitute Evertrust with Shady Bird in the Guarantor Action. On or about January 25, 2021, the Superior Court entered an order approving the foregoing stipulation, thereby substituting Shady Bird in place of Evertrust as the plaintiff and real party in interest in the Guarantor Action.

15.     On February 8, 2021, Shady Bird filed a complaint against the Debtor in the Superior Court for (i) specific performance and appointment of a receiver, and (ii) waste, thereby commencing the Superior Court action bearing the case number 30-2021-01183489-CU-OR-CJC (the "State Court Action"). Shady Bird also recorded a Notice of a Trustee's Sale against the Hotel, which scheduled a trustee's sale for the Hotel on March 1, 2021.

16.     Shortly after filing its complaint to initiate the State Court Action, Shady Bird filed an ex parte application for an order appointing a receiver and other related relief. On February 17, 2021, the Superior Court entered an order in the State Court Action appointing Bellann R. Raile as Receiver to, among other things, take possession of the Hotel and all goods, furniture, fixtures, and equipment attached and/or related to the Hotel.

17.     The Debtor sought chapter 11 bankruptcy protection on the Petition Date (*i.e.*, February 26, 2021) in order to prevent the impending foreclosure of the Hotel, to attempt to regain possession of the Hotel and related assets and obtain refinancing or investments to enable the Debtor to complete construction of the Hotel, and to obtain a reasonable opportunity to restructure its financial affairs and repay its debts in an orderly fashion.

18.     Although the filing of the Debtor's bankruptcy case stayed the State Court Action, the Guarantor Action has not been stayed and is still pending.

**C.     Litigation In The Debtor's Bankruptcy Case.**

19.     Shortly after the Petition Date, Shady Bird filed three separate motions in the Debtor's bankruptcy case, all of which were opposed by the Debtor and have resulted in a substantial amount of litigation between the Debtor and Shady Bird.

20.     ***SARE Motion.*** The first of these motions is that certain *Motion Of Shady Bird Lending, LLC For Order Designating Chapter 11 Case As Single Asset Real Estate Case Pursuant To 11 U.S.C. §§ 101(51B) And 362(d)(3)* [Doc. No. 49] (the "SARE Motion") filed by Shady Bird on March 25, 2021. Pursuant to the SARE Motion, Shady Bird sought the entry of a Court order designating the Debtor's chapter 11 bankruptcy case as a "single asset real estate" case pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3). On April 1, 2021, the Debtor filed its

opposition to the SARE Motion [Doc. No. 64] and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the SARE Motion [Doc. No. 73]. At the hearing on the SARE Motion held on April 15, 2021, the Court denied the SARE Motion. The Court entered a written order denying the SARE Motion on April 28, 2021 [Doc. No. 97] (the "<u>SARE Order</u>"). Accordingly, the Debtor's bankruptcy case is not deemed to be a "single asset real estate" case.

21.      On April 28, 2021, Shady Bird filed a notice of appeal of the SARE Order, thereby initiating an appeal (the "<u>SARE Appeal</u>") before the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals ("<u>BAP</u>"). On May 3, 2021, the Debtor filed a statement electing to have the SARE Appeal heard by the United States District Court for the Central District of California (the "<u>District Court</u>") instead of the BAP. Thereafter, the SARE Appeal was transferred to the District Court and bears the case number 8:21-cv-00824-FLA.

22.      On May 7, 2021, Shady Bird filed a motion seeking to expedite the SARE Appeal in the District Court. On June 24, 2021, the District Court entered an order denying Shady Bird's motion to expedite the SARE Appeal.

23.      On June 25, 2021, Shady Bird filed its opening brief in the SARE Appeal. The Debtor will file its answering brief in the SARE Appeal on or before July 25, 2021.

24.      ***Receiver Motion.***    The second motion filed by Shady Bird in the Debtor's bankruptcy case is that certain *Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* [Doc. No. 51] (the "<u>Receiver Motion</u>") filed by Shady Bird on March 25, 2021. Pursuant to the Receiver Motion, Shady Bird sought the entry of a Court order excusing the Receiver from complying with the requirements of 11 U.S.C. § 543, specifically, the requirement to deliver to the Debtor all property belonging to the Debtor over which the Receiver currently has possession, custody or control. On April 1, 2021, the Debtor filed its opposition to the Receiver Motion [Doc. No. 65] and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the Receiver Motion [Doc. No. 72]. At the hearing on the Receiver Motion held on April 15, 2021, the Court continued the hearing on the Receiver Motion to June 3, 2021 at 2:00 p.m. and granted the Receiver Motion on

an interim basis to permit the Receiver to make certain repairs and perform certain work on the Hotel with funds "gifted" to the Debtor's estate by Shady Bird up to $200,000 (the "Gifted Advances").  The Court entered a written order granting the Receiver Motion on an interim basis on April 28, 2021 [Doc. No. 99] (the "First Receiver Order").

25.    ***RFS Motion.***    The third motion filed by Shady Bird in the Debtor's bankruptcy case is that certain *Notice Of Motion And Motion For Relief From The Automatic Stay Under 11 U.S.C. § 363 (Real Property)* [Doc. No. 62] (the "RFS Motion") filed by Shady Bird on April 1, 2021.  Pursuant to the RFS Motion, Shady Bird seeks relief from the automatic stay so that it may foreclose on the Hotel.  On April 8, 2021, the Debtor filed its opposition to the RFS Motion [Doc. No. 74] and, on April 15, 2021, Shady Bird filed its reply to the Debtor's opposition to the RFS Motion [Doc. No. 81].  At the hearing on the RFS Motion held on April 22, 2021, the Court continued the hearing on the RFS Motion to June 3, 2021 at 2:00 p.m., to be held concurrently with the hearing on the Receiver Motion.

26.    On May 20, 2021, Shady Bird filed its supplemental brief in support of the Receiver Motion and the RFS Motion [Doc. No. 135] (the "Shady Bird's Supp Brief").  The Receiver also filed a supplemental brief in support of the Receiver Motion [Doc. No. 136] on May 20, 2021.  That same day, the Debtor filed its supplemental brief in opposition to the Receiver Motion and the RFS Motion and certain declarations in support thereof [Doc. Nos. 130, 131, 132] (the "Debtor's Supp Brief").

27.    On May 27, 2021, Shady Bird filed its reply to the Debtor's Supp Brief [Doc. No. 146], and the Debtor filed its response to Shady Bird's Supp Brief [Doc. No. 149].

28.    At the request of Shady Bird at the hearings on the Receiver Motion and the RFS Motion held on June 3, 2021, the Court continued both hearings to June 10, 2021.  Thereafter, at the joint request of the Debtor and Shady Bird, the Court continued both hearings to June 17, 2021.

29.    At the hearings on the Receiver Motion and the RFS Motion held on June 17, 2021, the Court granted the Receiver Motion on a further interim basis through September 30,

2021, and further continued both hearings to September 30, 2021, with any supplemental briefs due on September 9, 2021, any oppositions to any supplemental briefs due on September 16, 2021, and any replies to any oppositions to any supplemental briefs due on September 23, 2021. The Court entered a written order granting the Receiver Motion on a further interim basis on July 1, 2021 [Doc. No. 180] (the "Second Receiver Order").

30.    ***Broker Employment Application***.    On June 2, 2021, the Debtor filed an application seeking to employ NAI Capital Commercial, Inc. ("NAI") as its real estate broker to market and sell the Hotel [Doc. No. 151] (the "NAI Application").    On June 15, 2021, Shady Bird filed an objection to the NAI Application [Doc. No. 162] and, on June 24, 2021, the Debtor filed its reply to Shady Bird's objection to the NAI Application [Doc. No. 173].

31.    At the hearing on the NAI Application held on July 1, 2021, the Court overruled the objection to the NAI Application filed by Shady Bird, and approved the NAI Application in its entirety.    The Court entered a written order approving the NAI Application on July 2, 2021 [Doc. No. 182].

**D.**    **Settlement Negotiations Resulting In the Stipulation.**

32.    Over a period of many weeks, the Debtor, Shady Bird, and the Guarantors engaged in extensive settlement discussions in an effort to reach a consensual resolution of their various disputes.    Such discussions have been fruitful and have resulted in the settlement described in the that certain *Stipulation For Relief From The Automatic Stay And Ancillary Relief* (together with the related agreements attached thereto, the "Stipulation"), a true and correct copy of which was filed with the Court on July 19, 2021 as Docket Number 188 and is attached as **Exhibit 1** to the Declaration of Donald Chae annexed hereto (the "Chae Declaration").

33.    The Stipulation provides for the consensual resolution of the RFS Motion, the Receiver Motion, and the Guarantor Action, in accordance with the terms and conditions set forth in the Stipulation, and provides for a consensual marketing and sale process for the Hotel.    The following is a summary of the principal terms of the Stipulation (but is not intended to be an comprehensive recitation of the terms of the Stipulation):

a.      **_Sale Motion_**.  The Debtor shall file a motion for authority to conduct an auction of the Hotel ("<u>Auction</u>"), or a sale of the Hotel by overbid if an acceptable stalking horse buyer is identified, for hearing on September 30, 2021 (or the first available hearing date thereafter).

b.      **_Bidding Procedures_**.  In order to be eligible to participate in the auction of the Hotel, bidders will need to be deemed financially qualified by NAI and provide a good faith deposit of at least 4% of the amount of the initial bid by no later than the date that is seven (7) days prior to the date of the Auction (the "<u>Bid Deadline</u>").  The deposit shall be deemed nonrefundable if the bidder is approved by the Court as the successful bidder and such bidder fails to close its purchase of the Hotel within fifty (50) calendar days following the date of entry of the order approving the sale (the "<u>Approval Order</u>") (such 50th calendar day, the "<u>Outside Closing Date</u>").  The Debtor is permitted from seeking Court approval of a stalking horse bidder provided that such approval is not inconsistent with the terms set forth in the Stipulation.

c.      **_Credit Bid by Shady Bird_**.  Shady Bird is automatically deemed a financially qualified bidder (but is not required to bid), is not required to post a deposit in order to be deemed a qualified bidder, and is permitted to credit bid up to the full amount of its claim (as calculated in Paragraph 8 of the Stipulation).

d.      **_No Communications with Other Bidders_**.  Shady Bird is prohibited from having any direct or indirect communication (whether oral or in writing) with any prospective buyers of the Hotel or any of their affiliates or representatives.

e.      **_Retention of Receiver_**.  The Receiver shall remain in place during the entire marketing and sale process for the Hotel, in accordance with the terms and conditions of the First Receiver Order, the Second Receiver Order, or any subsequent order entered by the Court, unless Shady Bird agrees otherwise in writing.  All reasonable fees and costs incurred by the Receiver in excess of the $200,000 previously gifted by Shady Bird shall be added to the Loan balance (and Shady Bird's claim against the

Debtor), with any dispute over the reasonableness of the Receiver's fees and costs, Shady Bird's attorneys' fees and costs, trustee fees, and other fees, charges and costs due under the Loan agreement to be resolved by the Court (collectively, the "Bankruptcy Court Determined Fees and Costs") in accordance with the terms set forth in Paragraph 5 of the Stipulation.

f.    **_Access to Hotel_**.  The Receiver shall continue to provide full and complete access to the Hotel to the Debtor and all prospective buyers upon not less than 24 hours prior notice being provided to the Receiver.

g.    **_Calculation of Shady Bird's Claim_**.  The Stipulation, at Paragraph 8, establishes a process for calculating the outstanding debt due and owing by the Debtor to Shady Bird, and the Debtor is providing Shady Bird with a release.  As set forth in the Stipulation, the amount of Shady Bird's claim as of June 18, 2021 (excluding the Bankruptcy Court Determined Fees and Costs) is deemed to be $31,761,606.82.  The foregoing claim amount shall increase based on simple, non-compound default interest at the rate of 13.5% per annum until September 30, 2021, at which point the claim shall be $32,926,074.66.

h.    **_Relief From Stay_**.  The Debtor stipulates to relief from the automatic stay to permit a non-judicial foreclosure sale of the Hotel to occur on a date (the "Foreclosure Date") that shall be after (i) the Auction date, if there is no financially qualified bidder by the Bid Deadline, or (ii) the Outside Closing Date, if there is at least one financially qualified bidder and provided a sale does not close on or before the Closing Date.  The Debtor and the Guarantors agree not to file any action to enjoin any non-judicial foreclosure sale by Shady Bird permitted by the terms of the Stipulation; provided, however, nothing in the Stipulation shall be deemed to prohibit either or both of the Guarantors from filing a bankruptcy case, which the parties agree would not stay any such non-judicial foreclosure against the Hotel.  The Debtor shall continue to have the right to

pay off its outstanding debt to Shady Bird in full, pending any sale and at any time up until the Foreclosure Date.

i.      ***SARE Appeal***.  As set forth in Paragraph 21 of the Stipulation, the parties have agreed that the SARE Appeal will continue without disruption or delays.  However, in the event that the SARE Order is reversed by the District Court, it shall have no effect whatsoever on the terms of the Stipulation, and it shall not provide Shady Bird or any other party with any rights or claims that are not consistent with the terms of the Stipulation, including, but not limited to, requiring the Debtor to file any plan of reorganization or to commence making any payments to Shady Bird, and it shall not provide Shady Bird with any additional relief from stay rights that are not otherwise provided in the Stipulation.

j.      ***Access Agreement***.  The Access Agreement dated June 30, 2021 entered into by the Debtor, Shady Bird, and others, and attached to the Stipulation, shall be deemed approved as part of the Stipulation.

k.      ***Stipulated Judgment in the Guarantor Action***.  Upon Court approval of the Stipulation, the Guarantors shall file with the Superior Court a mutually-agreeable stipulation providing for the entry of a stipulated judgment in the Guarantor Action in favor of Shady Bird (the "Stipulated Judgment"), in a form agreeable to the parties and in an amount to be calculated in accordance with Paragraph 12 of the Stipulation (the "Guaranty Amount").  The Stipulated Judgment shall provide for the Guarantor Action to be dismissed, without prejudice, as to any defendants other than the Guarantors.

l.      ***Stay of Guarantor Action and Tolling of Enforcement and Collection Activity***.  Pending the period commencing from June 18, 2021 and ending on the Foreclosure Date ("Tolling Period"), the Guarantor Action shall be stayed.  During the Tolling Period, any act to enforce, collect upon, or execute upon the Stipulated Judgment or to otherwise collect from the guarantors or their respective relatives or property is stayed.  As set forth in Paragraph 18 of the Stipulation, the period for the avoidance,

1   dissolution, or termination with respect to any liens created by, related or pursuant to, or

2   arising from the Right to Attach Orders and the Writs of Attachment obtained by Shady

3   Bird in the Guarantor Action, or any other enforcement steps or proceedings are tolled

4   during the Tolling Period and are extended through the Tolling Period. The terms of the

5   Tolling Agreement entered into by Shady Bird and the Guarantors, and the amendments

6   thereto, shall be deemed incorporated into the Stipulation and approved as part of the

7   Stipulation.

8           m.      ***Ground Lease***.  Pending the Sale Closing Date (as defined in Paragraph 17

9   of the Stipulation), the Guarantors agree not to cause The Source at Beach, LLC to cancel

10  or terminate the Ground Lease.

11          n.      ***Releases by Shady Bird***.  Shady Bird shall provide certain releases as

12  described in Paragraph 15 of the Stipulation.

## II.

## DISCUSSION

15          Rule 9019(a) of the Federal Rules of Bankruptcy Procedure states that "the court may

16  approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  The decision of whether a

17  compromise or settlement should be accepted or rejected lies within the sound discretion of the

18  Court.  *See, e.g., In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986).  Sound discretion is

19  judicial power exercised fairly and equitably.   As the Supreme Court noted, the term

20  "discretion" denotes the absence of a hard and fast rule:

21                  When invoked as a guide to judicial action, it means a sound
                    discretion, that is to say, a discretion exercised not arbitrarily or
22                  willfully, but with regard to what is right and equitable under the
                    circumstances and the law, and directed by the reasonableness and
23                  conscience of the judge to a just result.
24

25  *Langnes v. Green*, 282 U.S. 531, 541 (1931).

26          The Ninth Circuit has recognized that "the bankruptcy court has great latitude in

27  approving settlements." *In re Woodson*, 839 F.2d 610,620 (9th Cir. 1988); *see, also e.g., A & C*

28

17

1   *Properties*, 784 F.2d 1377 (9th Cir. 1986); *In re Blair*, 538 F.2d 849 (9th Cir. 1976).  It is well-

2   established that, as a matter of public policy, settlements are favored over continued litigation.

3   *See e.g., A & C Properties*, 784 F.2d at 1381 (9th Cir. 1986); *Blair*, 538 F.2d at 851.

4         The focus of inquiry in reviewing and approving compromises is whether the

5   settlement is reasonable under the particular circumstances of the case.  *See In re General Store*

6   *of Beverly Hills*, 11 B.R. 539 (B.A.P. 9th Cir. 1981).  A court should not substitute its own

7   judgment for the judgment of the trustee or the debtor in possession.  *Matter of Carla Leather,*

8   *Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984).  "It is sufficient that, after apprising itself of all

9   facts necessary for an intelligent and objective opinion concerning the claim's validity, the

10   court determines that either (1) the claim has a 'substantial foundation' and is not 'clearly

11   invalid as a matter of law,' or (2) the outcome of the claim's litigation is 'doubtful'."  *Matter of*

12   *Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982).  A court, in reviewing a proposed

13   settlement, "is not to decide the numerous questions of law and fact but rather to canvass the

14   issues and see whether the settlement 'fall[s] below the lowest point in the range of

15   reasonableness.'"  *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd Cir. 1983), *accord,*

16   *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972).  The court should not conduct a "mini-

17   trial" on the merits of the underlying cause of action.  *Matter of Walsh Const., Inc.*, 669 F.2d at

18   1328; *In re Blairu*, 538 F.2d 849 (9th Cir. 1976).

19         Among the factors to be considered in determining whether a settlement is fair,

20   equitable and reasonable are the following:

21           (1)     the probability of success in the litigation;

22           (2)     any impediments to collection;

23           (3)     the complexity, expense, inconvenience and delay of

24                 litigation; and

25           (4)     the interest of creditors with deference to their reasonable

26                 opinions.

27   *A & C Properties*, 784 F.2d at 1381.

28

An analysis of the foregoing factors in this case demonstrates that the Stipulation and the terms thereof are fair and equitable and well within the range of reasonableness.

### 1. *The probability of success in the litigation.*

Without the benefit of the Stipulation, the Debtor will be forced to continue litigating with Shady Bird in connection with the RFS Motion, the Receiver Motion, and other potential matters in the Debtor's bankruptcy case. Although the Debtor believes that it would prevail on the RFS Motion and the Receiver Motion, and that both motions would ultimately be denied by the Court, such outcomes are by no means certain. Moreover, without the benefit of the Stipulation, Shady Bird could file a new motion (or motions) seeking relief from the automatic stay, on different legal grounds or based upon new or additional information and evidence, which would then distract from and negatively impact the Debtor's efforts to market and sell the Hotel. This is particularly true if the SARE Appeal results in the reversal of the SARE Order, in which event Shady Bird could immediately seek relief from the automatic stay. In the absence of the Stipulation, the Debtor would be forced to incur administrative expenses for the legal fees and costs associated with the litigation of the RFS Motion, the Receiver Motion, and other potential matters in the Debtor's bankruptcy case, which fees and costs could be substantial.

In addition, while the Debtor is not a direct party to the Guarantor Action, the Debtor has been required to monitor the Guarantor Action and incur legal fees in connection with such monitoring (with no corresponding economic benefit to the Debtor's estate and creditors). The Stipulation provides for a stay of the Guarantor Action and a path to a consensual resolution of the Guarantor Action, which will eliminate the incurring of additional legal fees and costs to monitor the Guarantor Action and will facilitate a marketing and sale process for the Hotel, for the benefit of all of the Debtor's creditors.

Based on the foregoing, the Debtor respectfully submits that this factor weighs in favor of approving the Stipulation.

///

///

**2.      _The difficulties in collection_.**

Since the resolution or adjudication of the RFS Motion, the Receiver Motion and/or the Guarantor Action would not result in any affirmative recovery to the Debtor and its bankruptcy estate, this factor is not relevant herein.    However, if the Stipulation is not approved, the Debtor will be forced to litigate such matters and incur potentially substantial administrative expenses, including for legal fees.    Based on the foregoing, the Debtor respectfully submits that this factor is neutral or weighs slightly in favor of approving the Stipulation.

**3.      _The complexity of the litigation involved and the expense, inconvenience and delay attendant to it_.**

As noted above, without the benefit of the Stipulation, the Debtor will be forced to continue litigating with Shady Bird in connection with the RFS Motion, the Receiver Motion, and other potential matters in the Debtor's bankruptcy case.    Continuing such litigation would undoubtedly be costly and time-consuming, and would distract from and negatively impact the Debtor's efforts to market and sell the Hotel.    On the other hand, the Stipulation provides for the consensual resolution of the RFS Motion, the Receiver Motion, and the Guarantor Action, avoids the risks, expense and delay associated with further litigation, and will result in a consensual marketing and sale process for the Hotel, which if successful will facilitate the formulation and implementation of an exit strategy in the Debtor's case.    Based on the foregoing, the Debtor respectfully submits that this factor weighs strongly in favor of approving the Stipulation.

**4.      _The interests of creditors_.**

The Debtor believes that the interests of its creditors are best served by the approval of the Stipulation and the compromises set forth therein.    Without the benefit of the Stipulation, the Debtor will be forced to incur (potentially substantial) administrative legal fees and costs to continue litigating with Shady Bird.    While the Debtor believes that it would prevail on the RFS Motion and the Receiver Motion, and that both motions would ultimately be denied by the Court, it is possible that the Court may disagree with the Debtor's position on such motions and

rule in favor of Shady Bird. It is also possible that Shady Bird could file a new motion (or motions) seeking relief from the automatic stay, on different legal grounds or based upon new or additional information and evidence, which, if granted, would effectively end the Debtor's bankruptcy case and eliminate the possibility of any recovery for the Debtor's other creditors.

On the other hand, the Stipulation provides for a consensual marketing and sale process for the Hotel, which in turn will likely facilitate the formulation and implementation of an exit strategy in the Debtor's case. Therefore, the Debtor respectfully submits that this factor weighs strongly in favor of approving the Stipulation.

As noted above, all of the *A & C Properties* factors weigh in favor of approving the compromises set forth in the Stipulation. The Debtor submits that the Stipulation and the terms thereof are fair and equitable and well within the range of reasonableness, and should be approved by the Court.

## III.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order:

1. granting the Motion in its entirety;

2. approving the terms and conditions of, and authorizing the Debtor to enter into and implement, the Stipulation in the form attached as Exhibit 1 to the Chae Declaration annexed hereto;

3. authorizing the Debtor to take all steps reasonably necessary to implement and consummate the terms and conditions of Stipulation;

4. waiving the 14-day stay period set forth in Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure; and

/ / /

/ / /

/ / /

/ / /

1        5.    granting such other and further relief as may be necessary or appropriate under

2    the circumstances.

3    Dated:  July 22, 2021                    THE SOURCE HOTEL, LLC

4

5

6                                            By:_____

7                                               RON BENDER

8                                             JULIET Y. OH

9                                             LEVENE, NEALE, BENDER, YOO
                                             & BRILL L.L.P.
                                       Attorneys for Chapter 11 Debtor and

## DECLARATION OF DONALD CHAE

I, Donald Chae, hereby declare as follows:

1.     I am the Manager and a member of DMC Investment Holdings, LLC ("DMC"), which is a member of The Source Hotel, LLC, a California limited liability company and the debtor and debtor-in-possession herein (the "Debtor"), and I am therefore familiar with the business operations and financial records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.     I make this declaration in support of that certain *Notice Of Motion And Motion For Entry Of Order Approving Settlement With Shady Bird Lending, LLC And Guarantors, As Set Forth In That Certain Stipulation For Relief From The Automatic Stay And Ancillary Relief, And Granting Related Relief* (the "Motion"), to which this declaration is attached.   All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

3.     The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 26, 2021 (the "Petition Date").  The Debtor is continuing to manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession.

4.     The Debtor is a limited liability company that was organized in November, 2012 in the State of California.  DMC Investment Holdings, LLC ("DMC") is a member of the Debtor which holds 100 units (or 100%) of Series 1 membership units in the Debtor.   My brother, Min S. Chae, and I are the members and principals of DMC.  In addition to the Series 1 membership units held by DMC, an EB-5 investor entity called Beach Orangethorpe Hotel III, LLC ("BOH3") holds 29 units (or 100%) of Series 2 preferred membership units in the Debtor.

5.     Since at least 2014, the Debtor has been developing a full-service, seven-story hotel with 178 rooms in the City of Buena Park, County of Orange, State of California (the "Hotel"), which upon completion will include conference rooms, an executive lounge, fitness center, restaurant, bars, and cleaning services.  The Hotel is part of a larger 12.8-acre mixed-use development project (the "Master Development"), which includes a 400,000 square-foot retail

center and a 50,000 square-foot seven-story office building which were completed in 2016. The Debtor does not own the real property on which the Hotel is being constructed (which is located at the southeast corner of the Master Development), but is a lessee pursuant to a 99-year ground lease for such real property (the "Ground Lease") with the Debtor's affiliate, The Source at Beach, LLC (in which I have an ownership interest).

6.    Construction of the Hotel began in 2016. To finance the construction of the Hotel, on May 24, 2016, the Debtor obtained a $29.5 million construction loan (the "Loan") from Evertrust Bank ("Evertrust") as well as financing by three tranches of EB-5 investments totaling $35.5 million, including the EB-5 investment by BOH3 in the sum of $14,500,000, for which BOH3 acquired preferred membership units in the Debtor. The Debtor's obligations under the Loan are secured by liens against substantially all of the Debtor's assets, including the Hotel and the Debtor's leasehold interest in the real property that is the subject of the Ground Lease (the "Leasehold Interest"), pursuant to the parties' Commercial Security Agreement and the Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Leasehold) recorded in the County of Orange on June 3, 2016 as Document No. 2016000252446 (the "Deed of Trust"). The original maturity date for the Loan was December 1, 2017, but was extended to November 1, 2019 pursuant to written extension agreements entered into by the parties.

7.    I am advised and believe that there are a number of subcontractors that have recorded mechanics' liens against the Debtor and/or Hotel. As reflected in the Debtor's Schedules of Assets and Liabilities filed in this case, the Debtor believes that the total amount of the mechanics' liens recorded against the Debtor and/or Hotel is approximately $2,900,000. However, some of these recorded mechanics' liens appear to have expired or have not been properly perfected, or are otherwise disputed by the Debtor.

8.    The Debtor also received two tranches of EB-5 loans from Beach Orangethorpe Hotel, LLC and Beach Orangethorpe Hotel II, LLC (together, the "EB-5 Lenders," or individually, an "EB-5 Lender"). The Debtor's obligations under the loans from the EB-5

Lenders, in the total principal sum of $21,500,000, are secured by junior liens against the Hotel and the Leasehold Interest.

9.      Through October 2019, approximately 85% of the Hotel construction had been completed, including: substantial completion of the core and shell, exterior painting, porte cochère, street lighting, ceiling framing, kitchen framing and glass block installation, food storages, all glass storefronts, electrical wiring and switchgear, guestroom flooring, ceiling fixtures, pool bar canopy structure, deck drains, window washing system, roof membrane, roof ductwork and HVAC vibration installation; nearly complete installation of bathroom fixtures (95%), acoustic ceiling system (80%), HVAC electrical connections (90%), piping for HVAC and plumbing equipment (95%), and rooftop ductwork (99%).  In addition, substantial materials have been procured and/or fabricated and are ready for installation pending completion of other items, such as first and second floor flooring, corridor carpeting, millwork (wall and ceiling panels, pool bar), passenger elevators, fire sprinklers, egress and accent lighting, pool equipment, guest room doors, locks and closures, bathroom fixtures, and rooftop HVAC equipment.

10.     The approximately 15% of the Hotel construction which remains outstanding consists of mostly "finish work" such as the installation of flooring and carpeting, lighting, appliances, trade fixtures, furniture, furnishings and equipment already purchased by the Debtor (collectively, "FF&E").

11.     In late 2019, Evertrust refused to issue the remaining $4 million of the Loan, claiming a cost overrun on the construction of the Hotel.  As a result of Evertrust's refusal to provide the final $4 million of the Loan, the Debtor was forced to cease construction activities.

12.     When Evertrust refused to issue the remaining $4 million of the Loan, the Debtor immediately and actively sought to refinance the Loan.  The Debtor began discussions with a new lender named Hall Structured Finance ("Hall") in the fall of 2019 and was ultimately able to reach an agreement with Hall for refinancing in the total sum of $42 million.  The Debtor and Hall were on the verge of closing on the refinancing, with a target closing date of March 20,

2020, when local, county, and State officials issued lockdown orders as a result of the COVID-19 pandemic.  At that point, Hall put an indefinite hold on the closing of the refinancing with the Debtor.

13.    As a result, the Debtor went back to Evertrust and, between March 2020 and December 2020, engaged in active forbearance negotiations with Evertrust to obtain a further extension of the Loan maturity date so that the Hotel could recover from the effects of the COVID-19 pandemic, and the Debtor could obtain refinancing or additional construction financing and ultimately recommence construction of the Hotel.

14.    On or about July 29, 2020, while the Debtor and Evertrust were still engaged in forbearance negotiations, Evertrust commenced a lawsuit against the guarantors of the Loan, my brother, Min Chae, and me (together, the "Guarantors") and certain other defendants in the Superior Court of California, County of Orange, Central Justice Center ("Superior Court"), bearing the case number 30-2020-01153205-CU-BC-CJC (the "Guarantor Action"), pursuant to which Evertrust sought recovery from the Guarantors based upon their guaranties of the Loan. In the summer of 2020, Evertrust also recorded a Notice of Default against the Hotel.

15.    I am advised and believe that, in December 2020, Shady Bird purchased Evertrust's interests in the Loan at a significant discount, for a reported purchase price of approximately $19 million.  While the Debtor engaged in discussions and negotiations with Shady Bird to attempt to reach a consensual resolution of the parties' disputes, such discussions and negotiations were ultimately unsuccessful.

16.    Following Shady Bird's purchase of the Loan, Shady Bird and Evertrust entered into a stipulation to substitute Evertrust with Shady Bird in the Guarantor Action.  On or about January 25, 2021, the Superior Court entered an order approving the foregoing stipulation, thereby substituting Shady Bird in place of Evertrust as the plaintiff and real party in interest in the Guarantor Action.

17.    On February 8, 2021, Shady Bird filed a complaint against the Debtor in the Superior Court for (i) specific performance and appointment of a receiver, and (ii) waste,

1    thereby commencing the Superior Court action bearing the case number 30-2021-01183489-

2    CU-OR-CJC (the "State Court Action").  Shady Bird also recorded a Notice of a Trustee's Sale

3    against the Hotel, which scheduled a trustee's sale for the Hotel on March 1, 2021.

4         18.    Shortly after filing its complaint to initiate the State Court Action, Shady Bird

5    filed an ex parte application for an order appointing a receiver and other related relief.   On

6    February 17, 2021, the Superior Court entered an order in the State Court Action appointing

7    Bellann R. Raile as Receiver to, among other things, take possession of the Hotel and all goods,

8    furniture, fixtures, and equipment attached and/or related to the Hotel.

9         19.    The Debtor sought chapter 11 bankruptcy protection on the Petition Date (*i.e.*,

10   February 26, 2021) in order to prevent the impending foreclosure of the Hotel, to attempt to

11   regain possession of the Hotel and related assets and obtain refinancing or investments to enable

12   the Debtor to complete construction of the Hotel, and to obtain a reasonable opportunity to

13   restructure its financial affairs and repay its debts in an orderly fashion.

14        20.    Although the filing of the Debtor's bankruptcy case stayed the State Court

15   Action, the Guarantor Action has not been stayed and is still pending.

16        21.    Shortly after the Petition Date, Shady Bird filed three separate motions in the

17   Debtor's bankruptcy case, all of which were opposed by the Debtor and have resulted in a

18   substantial amount of litigation between the Debtor and Shady Bird.

19        22.    ***SARE Motion.***  The first of these motions is that certain *Motion Of Shady Bird*

20   *Lending, LLC For Order Designating Chapter 11 Case As Single Asset Real Estate Case*

21   *Pursuant To 11 U.S.C. §§ 101(51B) And 362(d)(3)* (the "SARE Motion") filed by Shady Bird

22   on March 25, 2021.   Pursuant to the SARE Motion, Shady Bird sought the entry of a Court

23   order designating the Debtor's chapter 11 bankruptcy case as a "single asset real estate" case

24   pursuant to the Bankruptcy Code.  On April 1, 2021, the Debtor filed its opposition to the SARE

25   Motion and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the SARE

26   Motion.   At the hearing on the SARE Motion held on April 15, 2021, which I personally

27

28

attended, the Court denied the SARE Motion.  I am advised and believe that the Court entered a written order denying the SARE Motion on April 28, 2021 (the "SARE Order").

23.    I am advised and believe that, on April 28, 2021, Shady Bird filed a notice of appeal of the SARE Order, thereby initiating an appeal (the "SARE Appeal") before the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals ("BAP").  On May 3, 2021, the Debtor filed a statement electing to have the SARE Appeal heard by the United States District Court for the Central District of California (the "District Court") instead of the BAP. Thereafter, the SARE Appeal was transferred to the District Court and bears the case number 8:21-cv-00824-FLA.

24.    On May 7, 2021, Shady Bird filed a motion seeking to expedite the SARE Appeal in the District Court.  On June 24, 2021, the District Court entered an order denying Shady Bird's motion to expedite the SARE Appeal.

25.    On June 25, 2021, Shady Bird filed its opening brief in the SARE Appeal.  The Debtor will file its answering brief in the SARE Appeal on or before July 25, 2021.

26.    ***Receiver Motion.***    The second motion filed by Shady Bird in the Debtor's bankruptcy case is that certain *Motion Of Shady Bird Lending, LLC For Order Excusing State Court Receiver From Turnover Of Assets Pursuant To 11 U.S.C. § 543* (the "Receiver Motion") filed by Shady Bird on March 25, 2021.  Pursuant to the Receiver Motion, Shady Bird sought the entry of a Court order excusing the Receiver from complying with the requirements of the Bankruptcy Code, specifically, the requirement to deliver to the Debtor all property belonging to the Debtor over which the Receiver currently has possession, custody or control.  On April 1, 2021, the Debtor filed its opposition to the Receiver Motion and, on April 8, 2021, Shady Bird filed its reply to the Debtor's opposition to the Receiver Motion.  At the hearing on the Receiver Motion held on April 15, 2021, which I personally attended, the Court continued the hearing on the Receiver Motion to June 3, 2021 at 2:00 p.m. and granted the Receiver Motion on an interim basis to permit the Receiver to make certain repairs and perform certain work on the Hotel with funds "gifted" to the Debtor's estate by Shady Bird up to $200,000 (the "Gifted Advances").  I

am advised and believe that the Court entered a written order granting the Receiver Motion on an interim basis on April 28, 2021 (the "<u>First Receiver Order</u>").

27. ***RFS Motion.*** The third motion filed by Shady Bird in the Debtor's bankruptcy case is that certain *Notice Of Motion And Motion For Relief From The Automatic Stay Under 11 U.S.C. § 363 (Real Property)* (the "<u>RFS Motion</u>") filed by Shady Bird on April 1, 2021. Pursuant to the RFS Motion, Shady Bird seeks relief from the automatic stay so that it may foreclose on the Hotel. On April 8, 2021, the Debtor filed its opposition to the RFS Motion and, on April 15, 2021, Shady Bird filed its reply to the Debtor's opposition to the RFS Motion. At the hearing on the RFS Motion held on April 22, 2021, which I personally attended, the Court continued the hearing on the RFS Motion to June 3, 2021 at 2:00 p.m., to be held concurrently with the hearing on the Receiver Motion.

28. On May 20, 2021, Shady Bird filed its supplemental brief in support of the Receiver Motion and the RFS Motion (the "<u>Shady Bird's Supp Brief</u>"). The Receiver also filed a supplemental brief in support of the Receiver Motion on May 20, 2021. That same day, the Debtor filed its supplemental brief in opposition to the Receiver Motion and the RFS Motion and certain declarations in support thereof (the "<u>Debtor's Supp Brief</u>").

29. On May 27, 2021, Shady Bird filed its reply to the Debtor's Supp Brief, and the Debtor filed its response to Shady Bird's Supp Brief.

30. I am advised and believe that, at the request of Shady Bird at the hearings on the Receiver Motion and the RFS Motion held on June 3, 2021, the Court continued both hearings to June 10, 2021. Thereafter, at the joint request of the Debtor and Shady Bird, the Court continued both hearings to June 17, 2021.

31. I am advised and believe that, at the hearings on the Receiver Motion and the RFS Motion held on June 17, 2021, the Court granted the Receiver Motion on a further interim basis through September 30, 2021, and further continued both hearings to September 30, 2021, with any supplemental briefs due on September 9, 2021, any oppositions to any supplemental briefs due on September 16, 2021, and any replies to any oppositions to any supplemental briefs

due on September 23, 2021.  I am advised and believe that the Court entered a written order

granting the Receiver Motion on a further interim basis on July 1, 2021 (the "Second Receiver

Order").

32.     ***Broker Employment Application***.   On June 2, 2021, the Debtor filed an

application seeking to employ NAI Capital Commercial, Inc. ("NAI") as its real estate broker to

market and sell the Hotel (the "NAI Application").  On June 15, 2021, Shady Bird filed an

objection to the NAI Application and, on June 24, 2021, the Debtor filed its reply to Shady

Bird's objection to the NAI Application.

33.     I am advised and believe that, at the hearing on the NAI Application held on

July 1, 2021, the Court overruled the objection to the NAI Application filed by Shady Bird, and

approved the NAI Application in its entirety.  I am further advised and believe that the Court

entered a written order approving the NAI Application on July 2, 2021.

34.     Over a period of many weeks, the Debtor, Shady Bird, and the Guarantors

engaged in extensive settlement discussions in an effort to reach a consensual resolution of their

various disputes.   Such discussions have been fruitful and have resulted in the settlement

described in the that certain *Stipulation For Relief From The Automatic Stay And Ancillary

Relief* (together with the related agreements attached thereto, the "Stipulation"), a true and

correct copy of which was filed with the Court on July 19, 2021 as Docket Number 188 and is

attached as **Exhibit 1** hereto.  In sum, the Stipulation provides for the consensual resolution of

the RFS Motion, the Receiver Motion, and the Guarantor Action, in accordance with the terms

and conditions set forth in the Stipulation, and provides for a consensual marketing and sale

process for the Hotel.

///

///

///

///

///

35.    Without the benefit of the Stipulation, the Debtor will be forced to continue litigating with Shady Bird in connection with the RFS Motion, the Receiver Motion, and other potential matters in the Debtor's bankruptcy case.  Although I believe that the Debtor would prevail on the RFS Motion and the Receiver Motion, and that both motions would ultimately be denied by the Court, such outcomes are by no means certain.  Moreover, I am advised and believe that, without the benefit of the Stipulation, Shady Bird could file a new motion (or motions) seeking relief from the automatic stay, on different legal grounds or based upon new or additional information and evidence.  This is particularly true if the SARE Appeal results in the reversal of the SARE Order, in which event Shady Bird could immediately seek relief from the automatic stay.  In the absence of the Stipulation, the Debtor would be forced to incur administrative expenses for the legal fees and costs associated with the litigation of the RFS Motion, the Receiver Motion, and other potential matters in the Debtor's bankruptcy case, which fees and costs could be substantial.

36.    On the other hand, the Stipulation provides for a consensual marketing and sale process for the Hotel, which in turn will likely facilitate the formulation and implementation of an exit strategy in the Debtor's case.

37.    While the Debtor is not a direct party to the Guarantor Action, the Debtor has been required to monitor the Guarantor Action and incur legal fees in connection with such monitoring (with no corresponding economic benefit to the Debtor's estate and creditors).  The Stipulation provides for a stay of the Guarantor Action and a path to a consensual resolution of the Guarantor Action, which will eliminate the incurring of additional legal fees and costs to monitor the Guarantor Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of July, 2021, at Buena Park, California.

(see signature attached)
Donald Chae, Declarant

31

35.     Without the benefit of the Stipulation, the Debtor will be forced to continue litigating with Shady Bird in connection with the RFS Motion, the Receiver Motion, and other potential matters in the Debtor's bankruptcy case.  Although I believe that the Debtor would prevail on the RFS Motion and the Receiver Motion, and that both motions would ultimately be denied by the Court, such outcomes are by no means certain.  Moreover, I am advised and believe that, without the benefit of the Stipulation, Shady Bird could file a new motion (or motions) seeking relief from the automatic stay, on different legal grounds or based upon new or additional information and evidence.  This is particularly true if the SARE Appeal results in the reversal of the SARE Order, in which event Shady Bird could immediately seek relief from the automatic stay.  In the absence of the Stipulation, the Debtor would be forced to incur administrative expenses for the legal fees and costs associated with the litigation of the RFS Motion, the Receiver Motion, and other potential matters in the Debtor's bankruptcy case, which fees and costs could be substantial.

36.     On the other hand, the Stipulation provides for a consensual marketing and sale process for the Hotel, which in turn will likely facilitate the formulation and implementation of an exit strategy in the Debtor's case.

37.     While the Debtor is not a direct party to the Guarantor Action, the Debtor has been required to monitor the Guarantor Action and incur legal fees in connection with such monitoring (with no corresponding economic benefit to the Debtor's estate and creditors).  The Stipulation provides for a stay of the Guarantor Action and a path to a consensual resolution of the Guarantor Action, which will eliminate the incurring of additional legal fees and costs to monitor the Guarantor Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of July, 2021, at Buena Park, California.

_____
Donald Chae, Declarant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

[Stipulation]

Daniel A. Lev (CA Bar No. 129622)
    dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Ronald Richards (CA Bar No. 176246)
    ron@ronaldrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone:  310.556.1001
Facsimile:  310.277.3325

Attorneys for Shady Bird Lending, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:21-bk-10525-ES |
| THE SOURCE HOTEL, LLC, | Chapter 11 |
| Debtor. | **STIPULATION FOR RELIEF FROM THE AUTOMATIC STAY AND ANCILLARY RELIEF**<br><br>DATE:<br>TIME:    [No Hearing Required]<br>PLACE: |

**WHEREAS,** Shady Bird Lending, LLC ("Shady Bird") is the holder of the

senior deed of trust on a ground lease for the real property bearing APN Nos. 276-361-20

and 276-361-22, consisting of a partially constructed 178-room, seven story hotel building

located in Buena Park, California (the "Property" or "Project") which debtor and debtor in

possession The Source Hotel, LLC (the "Debtor") leased under a ground lease dated

April 6, 2015 ("Ground Lease") from the lessor, The Source at Beach, LLC (the "Ground

Lessor").

**WHEREAS,** on February 8, 2021, Shady Bird filed a complaint against the

Debtor in the Superior Court of the State of California for the County of Orange (the

2875654.1

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    "Superior Court") for (i) specific performance for appointment of a receiver, and (ii) waste,

2    thereby commencing the Superior Court action bearing Case No. 30-2021-01183489-CU-

3    OR-CJC (the "State Court Action").

4        **WHEREAS,** shortly after filing the State Court Action, Shady Bird filed,

5    among other things, its "Ex Parte Application for:  (1) Order Appointing Receiver; (2)

6    Temporary Restraining Order; and (3) Order to Show Cause Re: Confirmation of

7    Appointment of Receiver and Preliminary Injunction in Aid of Receiver; Memorandum of

8    Points and Authorities in Support Thereof" (the "Receivership Application").

9        **WHEREAS,** on February 17, 2021, the Superior Court granted the

10   Receivership Application and entered its "Ex Parte Order Appointing Receiver and Order

11   to Show Cause and Temporary Restraining Order – Rents, Issues, and Profits" (the

12   "Receivership Order"), pursuant to which, among other things, Bellann R. Raile (the

13   "Receiver") was appointed receiver for the Project.

14       **WHEREAS,** a trustee's sale of the Debtor's interest in the Ground Lease

15   was scheduled for March 1, 2021.

16       **WHEREAS,** on or about July 29, 2020, Evertrust Bank ("Evertrust")

17   commenced a lawsuit against, *inter alia,* Donald Chae ("Donald") and Min Chae ("Min"

18   and together with Donald, the "Chaes") in the Superior Court of California, County of

19   Orange, Central Justice Center, filed as case number 30-2020-01153205-CU-BC-CJC

20   (the "Guarantor Action").

21       **WHEREAS,** in or about January 2021, Shady Bird and Evertrust entered

22   into a "Stipulation to Substitute Plaintiff Evertrust Bank with Shady Bird Lending, LLC as

23   Real Party In Interest" (the "Substitution Stipulation") in the Guarantor Action.  On or

24   about January 25, 2021, the state court entered an order approving the Substitution

25   Stipulation thereby substituting Shady Bird in place of Evertrust as the plaintiff and real

26   party in interest in the Guarantor Action.

27       **WHEREAS,** on February 26, 2021 (the "Petition Date"), the Debtor filed a

28   voluntary petition for relief under title 11 of the United States Code, commencing this

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

2875654.1                            2

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA, 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | chapter 11 case.

2 | **WHEREAS,** on or about March 10, 2021, Shady Bird obtained a right to

3 | attach order and order for issuance of writ of attachment after hearing against Donald

4 | and a right to attach order and order for issuance of writ of attachment after hearing

5 | against Min (collectively, the "Right to Attach Orders") in the Guarantor Action.

6 | Subsequently, writs of attachment were issued by the clerk of the court in the Guarantor

7 | Action (collectively, the "Writs of Attachment"), and Shady Bird asserts that it levied

8 | certain assets of the Chaes under the Right to Attach Orders and Writs of Attachment.

9 | **WHEREAS,** on March 25, 2021, Shady Bird filed its "Motion of Shady Bird

10 | Lending, LLC for Order Designating Chapter 11 Case As Single Asset Real Estate Case

11 | Pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3); Memorandum of Points and

12 | Authorities; Declarations of Ronald Richards, Bellann R. Raile, and Brent Little in Support

13 | Thereof" (the "SARE Motion").

14 | **WHEREAS,** on March 25, 2021, Shady Bird filed its "Motion of Shady Bird

15 | Lending, LLC for Order Excusing State Court Receiver From Turnover of Assets

16 | Pursuant to 11 U.S.C. § 543; Memorandum of Points and Authorities; Declarations of

17 | Ronald Richards, Bellann R. Raile, and Brent Little in Support Thereof" (the "Section 543

18 | Motion").

19 | **WHEREAS,** on April 1, 2021, Shady Bird filed its "Notice of Motion and

20 | Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362 (with supporting

21 | declarations) (Real Property)" (the "RFS Motion").

22 | **WHEREAS**, the Debtor filed oppositions to the SARE Motion, the Section

23 | 543 Motion, and the RFS Motion.

24 | **WHEREAS,** on April 28, 2021, the Bankruptcy Court entered its "Order

25 | Denying Motion of Shady Bird Lending, LLC for Order Designating Chapter 11 Case As

26 | Single Asset Real Estate Case Pursuant to 11 U.S.C. §§ 101(51B) and 362(d)(3)" (the

27 | "SARE Order").

28 | / / /

1    **WHEREAS,** on April 28, 2021, Shady Bird filed its "Notice of Appeal of

2    Order Denying Motion of Shady Bird Lending, LLC for Order Designating Chapter 11

3    Case As Single Asset Real Estate Case Pursuant to 11 U.S.C. §§ 101(51B) and

4    362(d)(3)" (the "SARE Appeal").

5    **WHEREAS,** the SARE Appeal is pending before the United States District

6    Court, Central District of California, Western Division, bearing Case No. 8:21-cv-00824-

7    FLA.

8    **WHEREAS,** on April 28, 2021, the Bankruptcy Court entered its "Order,

9    After Hearing, Granting, On An Interim Basis, Motion of Shady Bird Lending, LLC for

10   Order Excusing State Court Receiver From Turnover of Assets Pursuant to 11 U.S.C. §

11   543" (the "First Interim Receiver Order").

12   **WHEREAS,** on July 1, 2021, the Bankruptcy Court entered its "Second

13   Interim Order Regarding Motion of Shady Bird Lending, LLC for Order Excusing State

14   Court Receiver From Turnover of Assets Pursuant to 11 U.S.C. § 543" (the "Second

15   Interim Receiver Order").

16   **WHEREAS,** continued hearings on the RFS Motion and the Section 543

17   Motion are presently scheduled for September 30, 2021.

18   **WHEREAS,** on June 2, 2021, the Debtor filed its "Application of Debtor and

19   Debtor in Possession to Employ NAI Capital Commercial, Inc. As Real Estate Broker

20   Pursuant to 11 U.S.C. §§ 327 and 328; Declaration of Chris Jackson in Support Thereof"

21   (the "NAI Application").

22   **WHEREAS,** Shady Bird filed a motion in the Guarantor Action for summary

23   adjudication (the "MSA") against the Chaes on its first and second causes of action for

24   breach of guaranty agreements that was scheduled for hearing on June 9, 2021.

25   **WHEREAS,** the state court in the Guarantor Action issued a tentative ruling

26   to deny the MSA and ultimately continued the hearing on the MSA to July 28, 2021, for

27   further briefing.

28   / / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**WHEREAS,** on June 15, 2021, Shady Bird filed its "Objection of Shady Bird Lending, LLC to Application of Debtor and Debtor in Possession to Employ NAI Capital Commercial, Inc. As Real Estate Broker Pursuant to 11 U.S.C. §§ 327 and 328; Request for Hearing" (the "NAI Objection").

**WHEREAS,** a hearing on the NAI Application was held on July 1, 2021, at which time the Court overruled the NAI Objection and granted the NAI Application. The Court entered an order approving the Debtor's employment of NAI Capital Commercial, Inc. ("NAI") on July 2, 2021 (the "NAI Employment Order").

**WHEREAS,** as part of the agreement memorialized in this Stipulation, Shady Bird, the Debtor and others entered into that certain Access Agreement dated June 30, 2021, a true and correct copy of which is attached hereto as Exhibit "1" (the "Access Agreement").

**WHEREAS,** as part of the agreement memorialized in this Stipulation, Shady Bird and the Chaes entered into that certain "Tolling Agreement" dated July 2, 2021 (as amended, the "First Tolling Agreement"), tolling and extending to July 16, 2021 the respective 90-day periods in California Code of Civil Procedure § 493.030(b) and 11 U.S.C. § 547, with respect to any lien(s) arising from or created by either the Right to Attach Orders or the Writs of Attachment or created by levy pursuant to either the Right to Attach Orders or the Writs of Attachment.

**WHEREAS,** the Debtor and Shady Bird are mindful of the costs and risks associated with the Section 543 Motion, the RFS Motion, and the SARE Appeal, and have determined that it is in the best interests of the Debtor, the estate, and Shady Bird to enter into this Stipulation on the agreed-upon terms as described herein.

**NOW THEREFORE,** and upon entry of an order approving this Stipulation, the Debtor, Shady Bird, and the Chaes agree as follows:

1.      Shady Bird consents to the Debtor's employment of NAI as the Debtor's real estate broker as approved by the Bankruptcy Court in the NAI Employment Order and upon the terms and conditions set forth in the Listing Agreement attached to

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    the NAI Application.  Shady Bird waives any right to appeal or to otherwise challenge the

2    NAI Employment Order or the Debtor's employment of NAI.

3           2.      The Debtor shall file a motion seeking authority to conduct an

4    auction, or a sale by overbid if an acceptable stalking horse buyer is located, of the

5    Property (the "Auction") for hearing before the Bankruptcy Court on September 30, 2021,

6    or the first available Bankruptcy Court hearing date thereafter (the "Auction Date").  In

7    order to be eligible to participate in the Auction, bidders will need to be deemed

8    financially qualified by NAI and provide a deposit (the "Good Faith Deposit") of at least

9    4% of the amount of the initial bid by no later than the date that is seven (7) calendar

10    days prior to the Auction Date (the "Bid Deadline").  The Good Faith Deposit shall be

11    deemed non-refundable if the bidder is deemed by the Bankruptcy Court to be the

12    winning bidder (the "Successful Bidder") and the Successful Bidder fails to close its

13    purchase of the Property within fifty (50) calendar days following the date of entry of the

14    Bankruptcy Court's order approving the sale (the "Approval Order") (such 50th calendar

15    day, the "Outside Closing Date") for a reason other than a material default by the Debtor.

16    At the Auction, (i) Shady Bird shall automatically be deemed a financially qualified

17    overbidder, (ii) Shady Bird shall be authorized and allowed to credit bid as to any overbid

18    procedure up to the full amount of its claim as calculated in Paragraph 8 below, (iii)

19    Shady Bird's registration as a qualified overbidder shall not cause it to forfeit a four

20    percent (4%) credit against its claim, (iv) Shady Bird shall not be required to post a Good

21    Faith Deposit in order to be deemed a qualified overbidder, and (v) Shady Bird's

22    registration as a qualified overbidder shall not require it to bid.  Nothing herein prevents

23    the Debtor from seeking Bankruptcy Court approval of a stalking horse bidder provided

24    that such Bankruptcy Court approval of a stalking horse bidder is not inconsistent with

25    any of the foregoing, or unless otherwise agreed to by Shady Bird.

26           3.      Intentionally Omitted.

27           4.      The Receiver shall remain in place during the entirety of the

28    marketing/sale process in accordance with the terms and conditions of the First Interim

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA, 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Receiver Order, the Second Interim Receiver Order, or any subsequent order entered by

2   the Bankruptcy Court, unless Shady Bird agrees, in writing, in its sole and exclusive

3   discretion, otherwise.

4       5.      All reasonable fees and costs incurred by the Receiver in excess of

5   the $200,000 previously gifted by Shady Bird (the "Gifted Advance"), as detailed in the

6   First Interim Receiver Order and the Second Interim Receiver Order, shall be added to

7   the Debtor's outstanding debt and Shady Bird's claim against the Debtor, with any

8   dispute over the reasonableness of the Receiver's fees and costs, Shady Bird's

9   attorneys' fees and costs, trustee fees, and other fees, charges, and costs due under the

10  operative loan agreement, to be resolved by the Bankruptcy Court (collectively, the

11  "Bankruptcy Court Determined Fees and Costs").  The parties shall try to resolve, within

12  the next thirty (30) days from the date of the execution of this Stipulation, and prior to

13  involving the Bankruptcy Court, any disputes about Shady Bird's fees referenced herein

14  through informal settlement discussions.   If the Bankruptcy Court Determined Fees and

15  Costs have not been resolved prior to the disposition of the Property, a reserve from the

16  proceeds of a closed sale of the Property to cover Shady Bird's legal fees and expenses

17  in litigating any dispute with the Debtor regarding the Bankruptcy Court Determined Fees

18  and Costs shall be set aside.

19      6.      In accordance with the First Interim Receiver Order and the Second

20  Interim Receiver Order, the Receiver shall continue to provide full and complete access

21  to the Property to the Debtor and all prospective buyers upon not less than twenty-four

22  (24) hours prior notice being provided to the Receiver.

23      7.      Shady Bird shall be prohibited from having any direct or indirect

24  communication (whether oral or in writing) with any prospective buyers of the Property or

25  any of their affiliates or representatives.

26      8.      The outstanding debt owed by the Debtor to Shady Bird, excluding

27  the Bankruptcy Court Determined Fees and Costs, is $31,761,606.82 through June 18,

28  2021, and shall increase based on simple, non-compound default interest at the rate of

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    13.5% per annum until September 30, 2021, at which point such debt shall be

2    $32,926,074.66.  Shady Bird shall provide a payoff statement to the Debtor upon the

3    Debtor's request.  Subject to the foregoing, simple, non-compound default interest at the

4    rate of 13.5% and reasonable attorneys' fees and costs (as determined in accordance

5    with Paragraph 5 above) shall continue to accrue and be added to the outstanding debt

6    owed by the Debtor to Shady Bird until and if the loan is paid off or a foreclosure sale

7    occurs.  By this paragraph, the parties are establishing the means by which to calculate

8    the outstanding debt due and owing by the Debtor to Shady Bird, and the Debtor is

9    providing Shady Bird with a release.

10       9.  Shady Bird shall have the ability to credit bid its full claim on its debt,

11    as calculated herein, in connection with any sale and take free and clear title in that

12    manner if Shady Bird so desires and as permitted by order of the Bankruptcy Court

13    and/or applicable law.

14       10.  The Debtor stipulates to relief from stay to permit a non-judicial

15    foreclosure sale to occur on a date (the "Foreclosure Date") that shall be after (a) the

16    Auction Date, if there is no financially qualified bidder by the Bid Deadline, or (b) the

17    Outside Closing Date, if there is at least one financially qualified bidder and provided a

18    sale does not close on or before the Outside Closing Date.  Shady Bird shall provide the

19    Debtor, the Chaes, and their respective counsel with written notice by email of the

20    Foreclosure Date immediately upon such date being determined.  The "Tolling Period"

21    shall be defined herein to constitute the period commencing with June 18, 2021, and

22    ending on the Foreclosure Date.  The Chaes and the Debtor shall file not file any action,

23    including a state court action, to enjoin any non-judicial foreclosure sale by Shady Bird

24    permitted by this Stipulation; provided, however, nothing herein shall be interpreted to

25    prohibit either or both of the Chaes from filing a bankruptcy case, which the parties agree

26    would not stay any such non-judicial foreclosure against the Property.

27       11.  The Debtor shall continue to have the right to pay off its outstanding

28    debt to Shady Bird, in full, pending any sale and at any time up until the Foreclosure Date

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA, 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | provided such payment would not cause a material breach by the Debtor of a Bankruptcy

2 | Court approved sale agreement

3 |       12.    Upon the Bankruptcy Court's approval of this Stipulation, the Chaes,

4 | as guarantors of the Debtor's indebtedness to Shady Bird, shall execute a mutually-

5 | agreeable stipulation (the "Stipulation for Judgment") providing for entry of a stipulated

6 | judgment (the "Stipulated Judgment") in the Guarantor Action in favor of Shady Bird, in a

7 | form agreeable to Shady Bird and the Chaes, in the amount of $31,131,000.70 through

8 | July 28, 2021, (a) less (i) any and all proceeds or amounts received by Shady Bird in

9 | connection with any sale of the Property (including, without limitation, any forfeited Good

10 | Faith Deposit) or (ii) any credit bids by Shady Bird in connection with any sale of, or

11 | foreclosure upon, the Property, plus (b) interest on the outstanding amount of the

12 | Stipulated Judgment (after application of the preceding (a)) at the statutory rate of

13 | interest of ten percent (10%) per annum (the "Guaranty Amount").

14 |       13.    Upon the Bankruptcy Court's approval of this Stipulation, the

15 | Stipulation for Judgment shall be signed and filed in the Guarantor Action. If, after the

16 | expiration of the Tolling Period and the completion of the sale of the Property, including,

17 | without limitation, any foreclosure sale, there is any Guaranty Amount owing to Shady

18 | Bird, then the Stipulated Judgment shall be entered with the amount set forth in the

19 | Stipulated Judgment to be calculated at that time by the Chaes and Shady Bird in

20 | accordance with Paragraph 12 above. Pending the Tolling Period, the Guarantor Action

21 | shall be stayed. If, at any point, the Guaranty Amount is paid in full, the Chaes'

22 | obligations under the Stipulated Judgment shall be deemed satisfied in full and, if such

23 | payment occurs after entry of the Stipulated Judgment, then Shady Bird shall file a

24 | satisfaction of judgment in the Guarantor Action. Without limitation to any stay in the First

25 | Tolling Agreement or Second Tolling Agreement (defined below), during the Tolling

26 | Period, any act to enforce, collect upon, or execute upon the Stipulated Judgment or to

27 | otherwise collect from the Chaes or their respective relatives or property is stayed;

28 | provided, however, that upon the expiration of the Tolling Period and the entry of the

1    Stipulated Judgment, Shady Bird may enforce the Stipulated Judgment and all rights,

2    exemptions, remedies, and defenses of the Chaes to the enforcement of the Stipulated

3    Judgment are reserved, except the Chaes may not seek to set aside or appeal the

4    Stipulated Judgment or assert any defenses as to its validity.

5        14.    During the Tolling Period, Donald and Eun Hee Chae will not seek

6    (a) to expunge the lis pendens recorded with the Los Angeles County Recorder's Office

7    on August 13, 2020, as Document No. 20200941880 (the "Lis Pendens"), on the real

8    property located at 2200 Sherwood Road, San Marino, California 91108 (the "Sherwood

9    Property") in connection with the Guarantor Action, or (b) to transfer the Sherwood

10   Property.  Shady Bird shall cause, and the Stipulation for Judgment shall provide for, the

11   Guarantor Action to be dismissed, without prejudice, as to Eun Hee Chae and any

12   defendants therein other than the Chaes.  The statute of limitations for the fraudulent

13   transfer (Cal. Civil Code, §§ 3439 et seq.) and constructive trust causes of action pled in

14   the Guarantor Action against Donald Chae and Eun Hee Chae relating to the Sherwood

15   Property shall be tolled during the Tolling Period as to Shady Bird and such tolling shall

16   immediately cease, and such statutes of limitations shall continue to run again, upon the

17   expiration of the Tolling Period.  If, after the Tolling Period, Shady Bird re-files an action

18   to re-assert a claim to avoid the transfer of title of the Sherwood Property, then the Chaes

19   do not object to Shady Bird recording a lis pendens in connection therewith in

20   accordance with applicable law, and the rights, remedies and defenses of the Chaes and

21   Eun Hee Chae in response thereto are preserved, except for any defense that the lis

22   pendens was already filed and maintained on the property.  Upon the filing of a new lis

23   pendens as provided herein, Shady Bird shall cause the Lis Pendens to be released and

24   terminated.

25        15.    Other than the Stipulated Judgment and any claim to avoid the

26   transfer of title to the Sherwood Property, Shady Bird on behalf of itself and all those

27   claiming by, through, under, or on its behalf, including, but not limited to, all related and/or

28   connected persons, entities, parent companies, affiliated companies, subsidiary

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  companies, assigns, agents, representatives, employees, officers, directors, members,

2  managers, principals, partners, owners, joint venturers, attorneys, predecessors, and

3  successors, do hereby fully, finally, and forever, settle, release, relieve, acquit, and

4  discharge Young Mee Chae, Eun Hee Chae, Donald Chae, and Min Chae, and their

5  respective relatives, agents, attorneys, representatives, successors, assigns, and heirs

6  (collectively, the "Released Parties"), from any and all claims, demands, causes of action,

7  obligations, rights, suits, debts, expenses, damages, losses, attorneys' fees, costs,

8  liabilities, and/or remedies, of any nature or kind whatsoever, whether due or owing in the

9  past, present, or future, and whether based upon contract, tort, statute, or any other legal

10  or equitable theory of recovery, and whether known or unknown, suspected or

11  unsuspected, fixed or contingent, matured or not matured, including, without limitation,

12  any and all causes of action and matters (a) that were raised or could have been raised

13  in the Guarantor Action or (b) under, arising out of, or related to the Debtor's

14  indebtedness to Shady Bird or the guaranties thereof.

15       In furtherance of Shady Bird's intention that the releases provided herein shall

16  extend to all claims and remedies, whether known or unknown, suspected or unsuspected,

17  discovered or undiscovered, Shady Bird hereby relinquishes any and all rights conferred

18  upon it by Section 1542 of the California Civil Code which reads as follows:

19

20          **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
THAT THE CREDITOR OR RELEASING PARTY DOES NOT**

21          **KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
THE TIME OF EXECUTING THE RELEASE AND THAT, IF**

22          **KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR**

23          **OR RELEASED PARTY.**

24       Shady Bird expressly acknowledges and understands that the waiver of the

25  provisions of Section 1542 of the Civil Code was separately bargained for.  Shady Bird

26  agrees that the releases provided for in Paragraph 15 and this waiver of Section 1542 of

27  the Civil Code shall be given full force and effect in accordance with each and all of the

28  express terms and provisions of this Stipulation, including those terms and provisions

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA, 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  relating to unknown and unsuspected claims.  This waiver of Section 1542 of the Civil

2  Code does not apply to unknown and unsuspected claims for (1) corporate waste, (2)

3  conversion, (3) avoidance of a fraudulent transfer, (4) fraudulent concealment, fraud, or

4  intentional misrepresentation, or (5) trespass to chattel; provided, however, Shady Bird

5  cannot, under any circumstances or under any legal theory, collect from the Released

6  Parties more than the Guaranty Amount and, upon Shady Bird's receipt of the Guaranty

7  Amount, the claims set forth in nos. (1) through (5) of this sentence are released.

8  _____ *R R* (Shady Bird)

9      16.    Notwithstanding any case law to the contrary, including, without

10  limitation, <u>Butler America, LLC v. Aviation Assurance Company, LLC</u>, 55 Cal. App. 5th

11  136 (2020), Shady Bird agrees and acknowledges that, upon entry of the Stipulated

12  Judgment, there will be no merger of the releases set forth in Paragraph 15 above into

13  the Stipulated Judgment and that such releases will remain in full force (subject to the

14  exceptions expressly set forth therein).

15      17.    Pending the "Sale Closing Date" (as defined herein), the Chaes shall

16  not cause the Ground Lessor to cancel or terminate the "Ground Lease," pursuant to

17  which the Debtor is the ground lessee, any amendments thereto, or the "Memorandum of

18  Ground Lease" (collectively, the "Ground Lease").  Following the Sale Closing Date, the

19  restriction in the preceding sentence of this Paragraph 17 shall be of no further force or

20  effect and (a) Ground Lessor may exercise any and all of its rights, and enforce any and

21  all of its remedies, including termination or cancellation of the Ground Lease, and (b) the

22  Debtor, as the ground lessee under the Ground Lease, or any other ground lessee under

23  the Ground Lease, including, without limitation, any successor to the Debtor, shall be

24  subject to any and all obligations, rights and remedies of Ground Lessor, in, under, to,

25  and/or with respect to the Ground Lease.  The "Sale Closing Date" means (a) if there is

26  one or more financially qualified bidders prior to the Bid Deadline, then the Outside

27  Closing Date, and (b) if there is no financially qualified bidder by the Bid Deadline, then

28  the date that is ten (10) calendar days after the Foreclosure Date.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

2875654.1

18.     The periods for the avoidance, dissolution, or termination under California law or the Bankruptcy Code with respect to any liens created by, related or pursuant to, or arising from either the Right to Attach Orders, the Writs of Attachment, or any other enforcement steps or proceedings are tolled during the Tolling Period and are extended through the Tolling Period.  Concurrently with the execution of this Stipulation, Shady Bird shall execute the Tolling Agreement attached hereto as Exhibit "2" (the "Second Tolling Agreement") amending the First Tolling Agreement and tolling and extending the tolling period set forth therein through the Tolling Period, and the terms of the Second Tolling Agreement are incorporated herein by this express reference. Consequently, if either or both of Chaes file(s) bankruptcy(ies) during the Tolling Period, his/their rights with respect to the dissolution, termination, or avoidance of any liens created by, related to, or arising from either the Right to Attach Orders, the Writs of Attachment, or any other enforcement steps by Shady Bird would be the same as if he/they had filed for bankruptcy on June 18, 2021.  The Second Tolling Agreement shall be binding upon execution and shall be of full force and effect whether or not this Stipulation is approved by order of the Bankruptcy Court.

19.     By this Stipulation, the Parties request approval of the Access Agreement.

20.     Upon entry of an order approving this Stipulation, Shady Bird and the Debtor may proceed on the terms herein without further order of the Bankruptcy Court or any action by the parties.

21.     The SARE Appeal shall continue without disruption or delays. However, in the event the SARE Order is reversed, it shall have no effect whatsoever on the terms of this Stipulation, and it shall not provide Shady Bird or any other party with any rights or claims that are not consistent with the terms of this Stipulation, including, but not limited to, requiring the Debtor to file any plan of reorganization or to commence making any payments to Shady Bird, and it shall not provide Shady Bird with any additional relief from stay rights that are not otherwise provided in this Stipulation.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    22.    This Stipulation may be signed in counterparts and signatures may

2    be delivered by fax or email, each of which shall be deemed an original, but all of which

3    together shall constitute one and the same instrument.  Each person who executes this

4    Stipulation on behalf of a party hereto represents that he or she is duly authorized to

5    execute this Stipulation on behalf of such party.

6    23.    The Access Agreement, the Second Tolling Agreement, and this

7    Stipulation constitute the entire agreement between the parties in respect of the subject

8    matter hereof and shall not be modified, altered, amended, or vacated without the prior

9    written consent of each of the parties hereto.  No statement made or action taken in the

10    negotiation of this Stipulation may be used by any party for any purpose whatsoever.

11    24.    Each party represents and warrants to the other party that it (a)

12    made this Stipulation freely and voluntarily and with full knowledge of its significance; and

13    (b) has been represented by counsel of its own choice in the negotiations preceding the

14    execution of this Stipulation and in connection with the preparation and execution of this

15    Stipulation.

16    25.    Notwithstanding the possible applicability of Rules 6004, 7062, and

17    9014 of the Federal Rules of Bankruptcy Procedure, or otherwise, the terms and

18    conditions of this Stipulation are immediately effective and enforceable upon its entry.

19    26.    The Bankruptcy Court shall retain exclusive jurisdiction to hear any

20    matters or disputes arising from or relating to this Stipulation, the Access Agreement, and

21    the Second Tolling Agreement.  Any request for relief brought before the Bankruptcy Court

22    to resolve a dispute arising from or related to this Stipulation, the Access Agreement, and

23    the Second Tolling Agreement, and the matters agreed to herein, shall be brought on

24    proper notice and in accordance with the relevant Federal Rules of Bankruptcy Procedure

25    and the Local Bankruptcy Rules for the Central District of California.

26    27.    This Stipulation may be filed in any court of competent jurisdiction as

27    evidence that the automatic stay in the above-styled bankruptcy has been modified for

28    cause, as provided herein, under 11 U.S.C. § 362(d).

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA, 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DATED: July _15_, 2021        The Source Hotel, LLC

By: _____

Its: _____

DATED: July _16_, 2021        Shady Bird Lending, LLC

By: _____

Its: _____Manager_____

Approved as to Form:

DATED: July _19_, 2021        SulmeyerKupetz
                              A Professional Corporation

By: _____
    Daniel A. Lev
    Attorneys for Shady Bird Lending, LLC

DATED: July _16_, 2021        Law Offices of Ronald Richards & Associates, APC

By: _____
    Ronald Richards
    Attorneys for Shady Bird Lending, LLC

**(signatures continued on next page)**

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2875654.1                           15

1    DATED: July 16 , 2021                Levene, Neale, Bender, Yoo & Brill L.L.P.

2

3                                         By: _____

4                                             Ron Bender
                                              Juliet Y. Oh
5                                             Attorneys for The Source Hotel, LLC, Debtor
                                              and Debtor in Possession
6

7    DATED: July ___, 2021                Pachulski Stang Ziehl & Jones, LLP

8

9                                         By: _____

10                                            Steven Kahn
                                              Attorneys for Donald Chae and Min Chae
11

12   (signatures continued on next page)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

2875654.1                              16

DATED: July ____, 2021                    Levene, Neale, Bender, Yoo & Brill L.L.P.



                                          By: _____
                                              Ron Bender
                                              Juliet Y. Oh
                                              Attorneys for The Source Hotel, LLC, Debtor
                                              and Debtor in Possession

DATED: July 16, 2021                      Pachulski Stang Ziehl & Jones, LLP



                                          By: _____
                                              Steven Kahn
                                              Attorneys for Donald Chae and Min Chae

**(signatures continued on next page)**

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA, 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2875654.1

As to provisions involving the Chae:

DATED: July 15, 2021                     Min Chae

_____

DATED: July 15, 2021                     Donald Chae

_____

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# EXHIBIT 1

## ACCESS AGREEMENT

This Access Agreement (the "Agreement") dated this 2nd day of July 2021 (the "Agreement Date") regarding The Source Hotel, located at 6986 Beach Blvd., Buena Park, CA 90621 (the "Property" or "Hotel"), is entered into by and between Shady Bird Lending, LLC ("Shady Bird"), on the one hand, and M+D Properties, The Source Hotel, LLC, and Greenland Construction Services, LLC (collectively, the "Consenting Parties"), on the other hand.  Shady Bird and Consenting Parties may be collectively referred to individually as the "Party" and together as the "Parties."

The Consenting Parties hereby agree to do the following by June 30, 2021 to the extent it is within their respective control to provide the consent, information, and documents set forth below:

1. Consent to (a) Shady Bird contacting DKY Architects ("DKY") to obtain copies of all plans, specifications and costs as the Architect of Record in the possession of DKY (collectively, the "Plans") (b) direct communication between DKY and Shady Bird regarding the Plans, and (c) DKY providing copies of the Plans to Shady Bird.

2. Upon reasonable notice and during normal business hours, permit Shady Bird reasonable access to view the FF&E onsite at the Property, the five (5) rooms in retail areas, and the mechanical equipment in the Parking Garage, and consent to access to view the FF&E and equipment for the Property located offsite in storage, including, but not limited to, storage at Westransco in Corona and at Fairmont Designs in Buena Park.

3. Upon reasonable notice and during normal business hours, provide reasonable access to Shady Bird to walk and view the Hotel Property (as permitted by, and with the cooperation of, the receiver).

4. Provide Shady Bird with either electronic copies, or reasonable access to review onsite, the drawings for the Hotel located at the Hotel or in the construction office next to the Hotel.

2874300.1

5. Provide Shady Bird at no cost with a copy of the City permitted sets of plans for the Hotel.

6. Consent to the City of Buena Park providing to Shady Bird a copy of all permit packages and to Shady Bird discussing with all departments within the City of Buena Park and other agencies associated with project permitting (OC Health Dept., SCAQMD, OCFA, etc.)

Shady Bird consents to all of this same information and access being provided to all qualified potential bidders.  To the extent that this Agreement requires providing Shady Bird with copies of, or access to, documents, plans, permits, or other written information, providing Shady Bird or qualified bidders with a file share link to such documents, plans, permits or other written information shall be considered full compliance with such requirement.

On mutually agreeable day and time selected by the Parties, and with (i) a representative of The Source Hotel LLC present at all times and (ii) the consent and oversight of the receiver, the Consenting Parties consent to the receiver opening crates containing FF&E of The Source Hotel, LLC, for the sole and limited purpose of viewing such FF&E (where located) and in order to confirm that such FF&E is not damaged and such FF&E shall be immediately returned to its packaging and crate and the crate shall be re-sealed.  The foregoing shall be carried out with the utmost care and without damage to the FF&E and shall be done at the sole expense of Shady Bird (including receiver fees and costs) and without any expense or cost being added to the amount Shady Bird asserts is owing from The Source Hotel, LLC, or any guarantor thereof.  If and to the extent that the activities permitted by this paragraph result in any damage to FF&E, Shady Bird shall be responsible for such damage and shall compensate The Source Hotel, LLC, for such damage.

This Agreement is part of a larger settlement agreement(s) among Shady Bird, The Source Hotel, LLC, and others, as set forth in that settlement term sheet exchanged on June 23, 2021, and Shady Bird will continue with the documentation of such settlement agreement(s) in good faith.  If such settlement agreement(s) is/are not documented and executed by Tuesday, July 6, 2021 , then all rights of Shady Bird under this Agreement and the letter attached hereto as

2874300.1

Exhibit "A" (the "Consent Letter"), and all consents given by Consenting Parties under this Agreement or the Consent Letter, shall automatically terminate and the Consent Letter and all copies thereof, and any and all documents and copies obtained by Shady Bird hereunder, and the data, summaries, and information obtained or derived therefrom, shall not an cannot be used and shall be immediately returned to the Consenting Parties or destroyed.

Accepted, Acknowledged, and Agreed:

M+D Properties

By: _____

Its: _____PRESIDENT /CEO_____

The Source Hotel, LLC

By: _____

Its: _____PRESIDENT/CFD_____

Greenland Construction Services, LLC

By: _____

Its: _____PRESIDENT/CFD_____

Shady Bird Lending, LLC

By: _____

Its: _____

2874300.1

020

Exhibit "A" (the "Consent Letter"), and all consents given by Consenting Parties under this Agreement or the Consent Letter, shall automatically terminate and the Consent Letter and all copies thereof, and any and all documents and copies obtained by Shady Bird hereunder, and the data, summaries, and information obtained or derived therefrom, shall not an cannot be used and shall be immediately returned to the Consenting Parties or destroyed.

Accepted, Acknowledged, and Agreed:


M+D Properties

By:_____

Its:_____


The Source Hotel, LLC

By:_____

Its:_____

Greenland Construction Services, LLC

By:_____

Its:_____


Shady Bird Lending, LLC

By:_____

Its: Manager_____

Exhibit A

**To:**   Whom It May Concern

**From:** M+D Properties, The Source Hotel, LLC, and Greenland Construction
Services, LLC (collectively, the "Consenting Parties")

*RE:*        <u>The Source Hotel, 6986 Beach Blvd., Buena Park, CA 90621</u>

Pursuant to the terms of that Access Agreement dated June 30, 2021, and on the
terms and conditions thereof, the Consenting Parties consent to the following to
the extent it is within their respective control to provide the consent, information,
and documents set forth below:

1. Consent to (a) Shady Bird contacting DKY Architects ("DKY") to obtain copies of
   all plans, specifications and costs as the Architect of Record in the possession
   of DKY (collectively, the "Plans") (b) direct communication between DKY and
   Shady Bird regarding the Plans, and (c) DKY providing copies of the Plans to
   Shady Bird.

2. Upon reasonable notice and during normal business hours, permit Shady Bird
   reasonable access to view the FF&E onsite at the Property, the five (5) rooms
   in retail areas, and the mechanical equipment in the Parking Garage, and
   consent to access to view the FF&E and equipment for the Property located
   offsite in storage, including, but not limited to, storage at Westransco in
   Corona and at Fairmont Designs in Buena Park.

3. Upon reasonable notice and during normal business hours, provide reasonable
   access to Shady Bird to walk and view the Hotel Property (as permitted by, and
   with the cooperation of, the receiver).

4. Provide Shady Bird with either electronic copies, or reasonable access to
   review onsite, the drawings for the Hotel located at the Hotel or in the
   construction office next to the Hotel.

2874300.1

5. Provide Shady Bird at no cost with a copy of the City permitted sets of plans for the Hotel.

6. Consent to the City of Buena Park providing to Shady Bird a copy of all permit packages and to Shady Bird discussing with all departments within the City of Buena Park and other agencies associated with project permitting (OC Health Dept., SCAQMD, OCFA, etc.)

The Source Hotel, LLC

By: _____

Its: _____PRESIDENT/CEO_____

Greenland Construction Services, LLC

By: _____

Its: _____PRESIDENT/CEO_____

M+D Properties

By: _____

Its: _____PRESIDENT/CEO_____

2874300.1

023

EXHIBIT 2

## SECOND AMENDMENT TO TOLLING AGREEMENT

This Second Amendment to Tolling Agreement (the "Second Amendment") amends the Tolling Agreement dated June 24, 2021 (as amended by the Amendment to Tolling Agreement effective July 9, 2021, the "Tolling Agreement"), by and between Shady Bird Lending, LLC ("Shady Bird"), on the one hand, and Donald Chae and Min Chae, on the other hand. This Second Amendment is effective as of the 14th day of July, 2021. Capitalized terms that are not otherwise expressly defined herein shall have the meanings ascribed to them in the Tolling Agreement.

## RECITALS

A.      The Parties entered into that certain Tolling Agreement dated June 24, 2021. Under the Tolling Agreement, as originally drafted, the "Tolling Date and Time" as defined therein was July 9, 2021.

B.      By the Amendment to Tolling Agreement effective July 9, 2021, the Parties amended the Tolling Date and Time to be July 16, 2021.

C.      Concurrently with the execution of this Second Amendment, the Parties and others are executing that certain *Stipulation for Relief from the Automatic Stay and Ancillary Relief* (the "Stipulation") to be filed in the bankruptcy case of The Source Hotel, LLC, Case No. 8:21-bk-10525-ES.

D.      The Stipulation contemplates amending the Tolling Agreement and extending the Tolling Date and Time through the "Tolling Period" as defined in the Stipulation.

E.      As defined in the Stipulation, the "Tolling Period" is the period commencing June 18, 2021 and ending on the "Foreclosure Date" (as defined in the Stipulation).

F.      In exchange for good and valuable consideration, including such consideration set forth in the Stipulation, receipt of which is hereby acknowledged, the Parties amend the Tolling Agreement as set forth herein

## AMENDMENT

1.      Section 1(a) of the Tolling Agreement is amended as follows:

With respect to any lien arising from or created by either Right to Attach Order or the Writs of Attachment or created by levy pursuant to either Right to Attach Order or the Writs of Attachment, the 90-day periods set forth in 11 U.S.C. § 547 or CCP § 493.030(b) are tolled and extended during the Tolling Period and to and including 11:59 p.m. Pacific Standard Time on the Foreclosure Date (the "Tolling Date and Time").

2.      Section 1 of the Tolling Agreement is amended to include subsection "f." as follows:

2875738.1

f.    The terms "Tolling Period" and "Foreclosure Date" as used herein shall have the respective meanings ascribed to them in the *Stipulation for Relief from the Automatic Stay and Ancillary Relief* to be filed in the bankruptcy case of The Source Hotel, LLC, Case No. 8:21-bk-10525-ES.

3.    The term "Tolling Date and Time" as used in and throughout the Tolling Agreement shall have the meaning set forth in Section 1 of this Second Amendment.

4.    Except as amended herein, the Tolling Agreement and its terms remain unchanged and in full force and effect.

DATED: _7/16/2021_                    MIN CHAE

DATED: _7/16/2021_                    DONALD CHAE

DATED: _7/16/21_                    SHADY BIRD LENDING, LLC

                                    By: _____

                                    Its: _____Manager_____

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **STIPULATION FOR RELIEF FROM AUTOMATIC STAY AND ANCILLARY RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 19, 2021 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See Attached**

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  July 19, 2021 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Erithe A. Smith
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5040
Santa Ana, CA 92701

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 19, 2021 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 2710485v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

**1.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>**

Ron Bender on behalf of Debtor The Source Hotel, LLC
rb@lnbyb.com

Christopher G. Cardinale on behalf of Creditor City Of Buena Park
ccardinale@agclawfirm.com

Michael G Fletcher on behalf of Creditor Evertrust bank
mfletcher@frandzel.com, sking@frandzel.com

Amir Gamliel on behalf of Interested Party Courtesy NEF
amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com

Robert P Goe on behalf of Creditor Westranco, Inc.
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Nancy S Goldenberg on behalf of U.S. Trustee United States Trustee (SA)
nancy.goldenberg@usdoj.gov

Peter F Jazayeri on behalf of Interested Party Cordes & Company, by and through Bellann Raile
peter@jaz-law.com

Peter F Jazayeri on behalf of Other Professional Cordes & Company, by and through Bellann Raile
peter@jaz-law.com

Daniel A Lev on behalf of Creditor Shady Bird Lending, LLC
dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

Grant A Nigolian on behalf of Interested Party Courtesy NEF
grant@gnpclaw.com, process@gnpclaw.com;grant.nigolian@gmail.com

Juliet Y Oh on behalf of Debtor The Source Hotel, LLC
jyo@lnbrb.com, jyo@lnbrb.com

Ho-El Park on behalf of Interested Party Courtesy NEF
hpark@hparklaw.com

Ronald N Richards on behalf of Creditor Shady Bird Lending, LLC
ron@ronaldrichards.com, morani@ronaldrichards.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, morani@ronaldrichards.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

CC 2710485v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document **NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT WITH SHADY BIRD LENDING, LLC AND GUARANTORS, AS SET FORTH IN THAT CERTAIN** *STIPULATION FOR RELIEF FROM THE AUTOMATIC STAY AND ANCILLARY RELIEF,* **AND GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD CHAE IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 22, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Christopher G. Cardinale    ccardinale@agclawfirm.com, mgonzalez@agclawfirm.com**
- **Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com**
- **Amir Gamliel    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com**
- **Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com**
- **Nancy S Goldenberg    nancy.goldenberg@usdoj.gov**
- **Peter F Jazayeri    peter@jaz-law.com**
- **Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com**
- **Kyle J Mathews    kmathews@sheppardmullin.com**
- **Juliet Y Oh    jyo@lnbyb.com, jyo@lnbrb.com**
- **Ho-El Park    hpark@hparklaw.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.   SERVED BY UNITED STATES MAIL**: On **July 22, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service List continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 22, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*Served via Overnight Mail*
Hon. Erithe A. Smith
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 22, 2021 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**