# Exhibit A

## GROUND LEASE

by and between

### THE SOURCE AT BEACH, LLC,

a California limited liability company ("**Lessor**")

and

### THE SOURCE HOTEL, LLC,

a California limited liability company ("**Lessee**")

## TABLE OF CONTENTS

Page

**ARTICLE 1** LEASE OF PARCEL ................................................................................................................ - 1 -
**ARTICLE 2** TERM ....................................................................................................................................... - 2 -
**ARTICLE 3** RESERVED .............................................................................................................................. - 2 -
**ARTICLE 4** MINIMUM RENT .................................................................................................................... - 2 -
**ARTICLE 5** ADDITIONAL RENT/TAXES ................................................................................................ - 3 -
**ARTICLE 6** SECURITY DEPOSIT ............................................................................................................ - 4 -
**ARTICLE 7** POSSESSION AND USE ........................................................................................................ - 4 -
**ARTICLE 8** UTILITIES ............................................................................................................................... - 5 -
**ARTICLE 9** INDEMNITY; INSURANCE .................................................................................................. - 6 -
**ARTICLE 10** TITLE TO PREMISES .......................................................................................................... - 8 -
**ARTICLE 11** CONSTRUCTION OF IMPROVEMENTS ........................................................................... - 9 -
**ARTICLE 12** MECHANICS' LIENS ......................................................................................................... - 10 -
**ARTICLE 13** SIGNS .................................................................................................................................. - 10 -
**ARTICLE 14** PERSONAL PROPERTY ..................................................................................................... - 10 -
**ARTICLE 15** ASSIGNMENT AND SUBLETTING ................................................................................. - 11 -
**ARTICLE 16** NON-DISCRIMINATION AND NON-SEGREGATION COVENANT ............................... - 13 -
**ARTICLE 17** REPAIRS; MAINTENANCE .............................................................................................. - 13 -
**ARTICLE 18** RECONSTRUCTION .......................................................................................................... - 14 -
**ARTICLE 19** LEASEHOLD FINANCING ................................................................................................ - 15 -
**ARTICLE 20** BANKRUPTCY; INVOLUNTARY TRANSFERS .............................................................. - 18 -
**ARTICLE 21** DEFAULTS BY LESSEE; REMEDIES .............................................................................. - 19 -
**ARTICLE 22** DEFAULTS BY LESSOR; REMEDIES ............................................................................. - 20 -
**ARTICLE 23** CONDEMNATION .............................................................................................................. - 21 -
**ARTICLE 24** ATTORNEY FEES .............................................................................................................. - 22 -
**ARTICLE 25** SALE OR MORTGAGE BY LESSOR ................................................................................ - 23 -
**ARTICLE 26** MORTGAGE; SUBORDINATION; ATTORNMENT ......................................................... - 23 -
**ARTICLE 27** NOTICES ............................................................................................................................. - 24 -
**ARTICLE 28** MISCELLANEOUS ............................................................................................................. - 24 -

EXHIBIT "A-1" Legal Description of Parcel
EXHIBIT "A-2" Depiction of Parcel

# INDEX

Page(s)

Additional Rent ........................................................................................................................................................4
Affiliate ...................................................................................................................................................................13
Assignee ..................................................................................................................................................................22
Claims .......................................................................................................................................................................7
Condemnation ........................................................................................................................................................22
condemnation proceedings ....................................................................................................................................22
Depository ...............................................................................................................................................................16
Event of Default .....................................................................................................................................................20
Governmental Agencies ...........................................................................................................................................4
Hazardous Materials .................................................................................................................................................6
holder ......................................................................................................................................................................24
Improvements ...........................................................................................................................................................1
Interest Rate ............................................................................................................................................................27
Leasehold Mortgage ...............................................................................................................................................17
Lessee's Funds ........................................................................................................................................................16
Lessee's Signage .....................................................................................................................................................12
Minimum Rent ..........................................................................................................................................................3
mortgage .................................................................................................................................................................24
mortgagee ...............................................................................................................................................................24
New Lease ...............................................................................................................................................................18
Hotel Complex Premises ...........................................................................................................................................1
Permitted Uses ..........................................................................................................................................................5
Personal Property ....................................................................................................................................................12
Proceeds ..................................................................................................................................................................16
Rent ...........................................................................................................................................................................4
Rent Year ..................................................................................................................................................................3
Restoration ..............................................................................................................................................................23
Sale .........................................................................................................................................................................24
Special Causes of Loss .............................................................................................................................................8
Taking .....................................................................................................................................................................22
Taxes .........................................................................................................................................................................4
Transfer ...................................................................................................................................................................12
Utilities ......................................................................................................................................................................7
Vesting Date ...........................................................................................................................................................22
worth at the time of award ......................................................................................................................................21

## GROUND LEASE

This Ground Lease (this "**Lease**"), dated as of the 6th day of April, 2015 (the "**Effective Date**"), is made and entered into by and between **THE SOURCE AT BEACH, LLC**, a California limited liability company ("**Lessor**"), and **THE SOURCE HOTEL, LLC**, a California limited liability company ("**Lessee**").

## R E C I T A L S :

A.      Lessor is the owner of that certain real property located in the City of Buena Park, County of Orange, State of California, legally described on **Exhibit A-1** and generally depicted on **Exhibit A-2** attached hereto (the "**Parcel**"). The Parcel is a portion of Assessor's Parcel Nos. 276-361-20 and 276-361-22 (collectively the "**Tax Parcel**").

B.      Lessor desires to lease to Lessee the entire Parcel to enable Lessee to construct a hotel facility and related facilities and amenities (collectively, the "**Improvements**") on the Parcel, subject to the terms and conditions contained herein. The Parcel and the Improvements are collectively referred to herein as the "**Hotel Complex Premises**." The parties acknowledge that such Hotel Complex Premises are intended to be part of a world class mixed-use, retail lifestyle shopping center with an office tower, a residential complex and parking (the "**Development Project**") as further provided in the CC&Rs, as defined in Section 1.2.

NOW, THEREFORE, with reference to the foregoing Recitals and upon the terms and conditions contained herein, Lessor and Lessee hereby agree as follows:

## ARTICLE 1

## LEASE OF PARCEL

1.1     Lease of Parcel.  Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Parcel, together with all easements, rights and appurtenances relating thereto for the consideration and subject to the terms and conditions hereinafter set forth.

1.2     CC&Rs and Other Matters of Record.  Concurrently with the execution of this Lease, Lessor, Lessee and The Source Office, LLC have entered into that certain Amended and Restated Declaration of Covenants, Conditions, Restrictions and Reciprocal Easement Agreement (the "**CC&Rs**"). Except as expressly set forth in Article 26 (relating to subordination), Lessee's leasehold interest in the Parcel is subject to all mortgages, deeds of trust, covenants, conditions and restrictions, easements, rights-of-way and other matters of record covering the Parcel (collectively "**Matters of Record**").

1.3     Reservation of Oil, Gas and Mineral Rights.  Lessor reserves to itself the sole and exclusive right to all water rights, coal, oil, gas and other hydrocarbons, geothermal resources, precious metals ores, base metals ores, industrial-grade silicates and carbonates, fissionable minerals of every kind and character, metallic or otherwise, whether or not presently known to science or industry, now known to exist or hereafter discovered upon, within or underlying the surface of said land regardless of the depth below the surface at which any such substance may be found; however, Lessor or its successors and assigns, shall not have the right for any purpose whatsoever to enter upon, into or through the surface or the first five hundred (500) feet of the subsurface of the Parcel in connection therewith. Lessor covenants that Lessee shall not be disturbed in its quiet enjoyment and peaceful use of the Hotel Complex Premises by any drilling and production activities.

1.4     Lessee's Investigation.  Lessee accepts the Parcel "AS IS" without any representations or warranties, express or implied, or statutory, of any kind, except as expressly set forth in this Lease. Without limiting the foregoing, Lessee acknowledges that, except as set forth in this Lease, neither Lessor nor any other party has made any representations or warranties express or implied, on which Lessee is relating a to any matters, directly or indirectly concerning the Parcel, including but not limited to, the land, the square footage of the Parcel, improvements and infrastructure, if any, development rights and exactions, expenses associated with the Parcel, taxes, assessments, bonds, permissible uses, title exceptions, water or water rights, topography, utilities, zoning of the Parcel, soil, subsoil the purposes for which the Parcel is to be used, drainage, environmental or building laws, rules or regulations, toxic waste or Hazardous Materials (as defined in Section 7.3) or any other matters affecting or relating to the Parcel. Lessee acknowledges that: (i) Lessee has had the advice of such independent professional consultants and experts as it deems necessary in connection with its investigation and study of the Parcel; (ii) Lessee has, to the extent it has deemed necessary, independently investigated the condition of the Parcel, including the soils,

hydrology and seismology thereof, and the laws and regulations relating to the construction and operation of the Improvements, including environmental, zoning and other land use entitlement requirements; and (iii) Lessee has not relied upon any statement, representation or warranty of Lessor of any kind or nature in connection with its decision to execute and deliver this Lease and its agreement to perform the obligations of Lessee hereunder, except as expressly set forth in this Lease. Lessee acknowledges and agrees that any information provided or to be provided by or on behalf of Lessor with respect to the Hotel Complex Premises was obtained from a variety of sources and that Lessor has not made any independent investigation or verification of such information and makes no representation as to the accuracy or completeness of such information.

## ARTICLE 2

### TERM

2.1      Initial Term. The "Initial Term" of this Lease shall commence on the date of this Lease and shall continue for a period of ninety-nine (99) years, plus any partial calendar month in which the Initial Term commences (as hereinafter defined) occurs, unless sooner terminated as provided in this Lease.

2.2      Acceptance of the Parcel. Lessor hereby delivers to Lessee, and Lessee hereby accepts from Lessor, possession of the Parcel together with all easements, rights and appurtenances relating thereto, subject to the Permitted Exceptions, as defined in Section 10.1, and the CC&Rs. Lessee shall commence construction of the Improvements promptly and shall diligently prosecute such construction to completion and shall thereafter immediately open the Hotel Complex Premises for business.

2.3      Certificate of Occupancy. Within ten (10) days following the substantial completion of construction of Improvements, Lessee shall deliver to Lessor the original of the Certificate of Occupancy for the Hotel Complex Premises issued by the appropriate governmental agency, copies of all mechanics' lien releases or other lien releases on account of Lessee's Work, notarized and unconditional, in such form as Lessor shall have approved, copies of all building permits and inspection cards evidencing inspection and approval by the issuer of the work authorized in such permits, and an architect's certification that the Improvements are complete.

2.4      Surrender of the Hotel Complex Premises. Subject to Lessee's right to remove its Personal Property (as defined in Section 14.1) pursuant to the terms and conditions of Section 14.1, Lessee shall, upon the expiration of the Lease Term or the earlier termination of this Lease, surrender possession of the Hotel Complex Premises and deliver the same to Lessor in good order, condition and state of repair, ordinary wear and tear excepted. If Lessee remains in possession of the Hotel Complex Premises or any part thereof after the expiration or earlier termination of the Lease Term without the express written consent of Lessor, such occupancy shall in no event be deemed a renewal or extension of this Lease for any term whatsoever nor shall such occupancy be deemed to create a month-to-month tenancy notwithstanding any acceptance of Rent by Lessor but Lessee shall be deemed a tenant at sufferance subject to all of the terms and conditions of this Lease except that Lessee shall pay to Lessor for each month or portion of a month in which Lessee holds over in the Hotel Complex Premises, an amount equal to the Market Rent (as defined below), plus all Additional Rent payable in accordance with the terms of this Lease. Such amount shall be payable in advance on the first day of each and every calendar month. In no event shall any provision contained in this Lease be deemed to permit Lessee to retain possession of the Hotel Complex Premises after the expiration of the Lease Term or any earlier termination of this Lease. Nothing contained in this Section 2.4 shall deemed to limit or constitute a waiver of any other right or remedies Lessor may have under this Lease or at law or in equity. If Lessee fails to surrender the Hotel Complex Premises upon the expiration or sooner termination of the Lease Term, Lessee shall indemnify, defend (with counsel satisfactory to Lessor) and hold harmless Lessor from any and all loss, costs and expenses (including attorneys' fees and expenses) and liability arising from such failure, including, without limiting the generality of the foregoing, any claims made by any succeeding tenant arising out of such failure to surrender the Hotel Complex Premises and any lost profits and other consequential damages to Lessor resulting therefrom.

## ARTICLE 3
## RESERVED

## ARTICLE 4
## MINIMUM RENT

4.1 Initial Term Rent. On the date of this Lease, Lessee shall pay Lessor as "**Minimum Rent**" the amount of Five Million Dollars ($5,000,000.00), which is a lump sum payment of all Minimum Rent for the entire Initial Term and, without limitation, includes full payment for Lessee's parking rights for 222 parking stalls as set forth in the Declaration.

4.2 Payment of Minimum Rent. The Minimum Rent set forth above shall be payable by Lessee to Lessor in lawful money of the United States, without setoff, deduction, prior notice or demand.

## ARTICLE 5

## ADDITIONAL RENT/TAXES

5.1 Taxes. At all times during the Lease Term, Lessee agrees to pay, or cause to be paid, without setoff or deduction, as Additional Rent, a portion of the amount of all Taxes assessed for any reason and levied on the Tax Parcel (including land and improvements) equal to a fraction the numerator of which is number of square feet covered by the Improvements on the Parcel and the denominator of which is the number of square feet covered by all improvements on the Tax Parcel. Lessor shall provide Lessee a copy of the tax bill and notice of the amount owed at least thirty (30) days prior to the delinquency date, and Lessee shall pay the amount owed by Lessee pursuant to this Section 5.1 to Lessor within ten (10) days after such notice.

(a) Definition of Taxes. The term "**Taxes**" levied on the Tax Parcel or the improvements thereon shall mean any form of tax, special tax, assessment, lien, bond obligation, license fee, license tax, tax or excise on rent, possessory interest tax or any other levy, charge or expense, together with any statutory interest thereon, imposed or required at any time by any federal, state, county, city or quasi-governmental authority having jurisdiction, or any political subdivision thereof, or any school, agricultural, lighting, drainage or other improvement or special assessment district thereof (hereinafter individually and collectively referred to as "**Governmental Agencies**"), on any interest of Lessor or Lessee or both (including any legal or equitable interest of Lessor or its mortgagee, if any) in any land or improvement within the Tax Parcel including without limitation: (i) any impositions by Governmental Agencies (whether or not such impositions constitute tax receipts) or any other payments to Governmental Agencies (whether involuntarily imposed by any such Governmental Agencies or voluntarily agreed to by Lessor) in substitution, partially or totally, of any impositions now or previously included within the definition of real property taxes, including without limitation, those calculated to increase tax increments to Governmental Agencies and to pay for such services as fire protection, street, sidewalk and road maintenance, refuse removal or other governmental services formerly provided without charge to property owners or occupants; (ii) any impositions allocable to or measured by the area of the Parcel or the improvements thereon, or any rental payable hereunder, including, without limitation, any gross income tax or excise tax levied by the federal, state, county or city government, or any political subdivision thereof, with respect to the receipt of such rent, or upon or with respect to the possession, leasing, operation, management, maintenance, alteration, repair, use or occupancy by Lessee of the Hotel Complex Premises, or any portion thereof; (iii) any impositions upon this Lease or any document to which Lessee is a party, creating or transferring an interest or an estate in the Hotel Complex Premises; and (iv) any and all costs (including, without limitation, the fees of experts, tax consultants and attorneys) incurred by Lessor should Lessor elect to negotiate or contest the amount of said Taxes in formal or informal proceedings before the taxing Governmental Agency; provided, however, Taxes shall in no event include Lessor's general income, inheritance, estate or gift taxes.

5.2 Personal Property Taxes. Before delinquency, Lessee shall pay all taxes and assessments levied on all Personal Property (as defined in Section 14.1 below) located or installed on the Hotel Complex Premises by or on behalf of Lessee that are owned by Lessee; and Lessee shall provide Lessor with copies of receipts for payment of all such taxes and assessments on receipt of request therefor from Lessor. To the extent any such taxes are not separately assessed or billed to Lessee, Lessee shall pay the amount as invoiced by Lessor.

5.3 Additional Rent. All sums of money or charges required to be paid by Lessee under this Lease, with the exception of Minimum Rent, are collectively referred to in this Lease as "**Additional Rent.**" If such amounts or charges are not paid at the time provided in this Lease, they shall nevertheless be collectible as Additional Rent, but nothing herein contained shall be deemed to suspend or delay the payment of any amount of money or charge at the time the same becomes due and payable hereunder or to limit any other remedy of Lessor.

All amounts of Additional Rent payable in a given month (also collectively sometimes referred to in this Lease as "**Rent**") shall be deemed to comprise a single rental obligation of Lessee to Lessor.

5.4     Failure to Pay; Interest. If Lessee fails to pay, when due and payable, the Minimum Rent or any Additional Rent, such unpaid amounts shall bear interest at the Interest Rate, from the date due to the date of payment, compounded monthly, based upon actual days elapsed compared to a 360-day year.

5.5     Address for Payments. All Rent and other payments shall be paid by Lessee to Lessor at the address specified for notice to Lessor in Article 27, or at such other place as may from time to time be designated by Lessor in writing at least ten (10) days prior to the next ensuing payment date.

5.6     Lessee Responsible for All Costs. Lessor and Lessee acknowledge and agree that this is a triple-net lease and that all obligations relating to the Parcel and the Hotel Complex Premises, including, without limitation, all Minimum Rent, Additional Rent (including without limitation, Taxes), and assessments and costs of compliance with Lessee's obligations under the CC&Rs, together with all applicable Laws (as defined in Section 17.1) and any insurance underwriter's requirements, shall be the sole and exclusive obligation of Lessee, except as expressly otherwise provided in this Lease. Lessor shall not be responsible or liable for any expenses and upkeep of the Parcel or the Improvements, except as expressly otherwise provided in this Lease.

5.7     DDA Payments. Lessee acknowledges that Lessor will receive certain payments pursuant to that certain Disposition and Development Agreement dated October 26, 2010 between Lessor and the Community Redevelopment Agency of the City of Buena Park (the "**DDA Payments**"), including without limitation payments based in part on the amount of property tax revenue collected from the Development Project or portions thereof. Lessee further acknowledges that Lessee has no right, title or interest in or to any portion of the DDA Payments and that Lessor has no obligation to Lessee of any kind or character in connection with the DDA Payments.

# ARTICLE 6

## SECURITY DEPOSIT

### INTENTIONALLY OMITTED

# ARTICLE 7

## POSSESSION AND USE

7.1     Permitted Uses. Subject to the provisions of Section 7.2, Lessee shall use the Hotel Complex Premises for the Permitted Uses and for no other uses or purposes. "**Permitted Uses**" shall mean and consist of the construction of the Improvements and sublease thereof subject to the restrictions contained herein (including without limitation the use restrictions set forth in this Article 7) and those contained in the CC&Rs affecting the Hotel Complex Premises. At Lessee's sole expense, Lessee shall procure, maintain and hold available for Lessor's inspection any governmental licenses and permits required for the proper and lawful conduct of Lessee's business.

7.2     Duties and Prohibited Conduct. Throughout the Lease Term, Lessee shall perform all obligations of Lessee under the CC&Rs and shall abide by and comply with all easements, rights-of-way and other matters now or hereafter of record with respect to the Hotel Complex Premises. Lessee shall not use or permit any person or persons to use the Hotel Complex Premises in any way that competes with any use of the Development Project or for the sale or display of pornography, nudity, graphic violence, or drug paraphernalia. Lessee shall not use, or suffer or permit any person or persons to use, the Hotel Complex Premises or any part thereof as a massage parlor, adult bookstore or second-hand store or to conduct an auction, distress, fire, bankruptcy or going-out-of-business sale. Lessee shall not use the Hotel Complex Premises or Permit the use of the Hotel Complex Premises for any purpose or in any manner that violates any applicable Laws. Lessee shall not cause or permit waste to occur in the Hotel Complex Premises. Lessee shall not burn or permit the burning of trash or rubbish in or about the Hotel Complex Premises. Lessee shall cause trash receptacles at the Hotel Complex Premises to be emptied and trash removed at Lessee's expense with such frequency as may be necessary to avoid an unsightly or unhealthy accumulation of trash. Lessee shall keep the Hotel Complex Premises, and every part thereof, in a clean and wholesome condition, free from any objectionable noises, music volumes, odors or nuisances, and shall comply with all health and police regulations in all respects. Except as required to comply with laws, Lessee shall keep no live animals of any kind in the Hotel Complex Premises.

7.3     Hazardous Materials. Lessee shall not use, generate, manufacture, produce, store, treat, dispose or permit the escape on, under, about or from the Hotel Complex Premises, or any part thereof, any asbestos or any flammable, explosive, radioactive, hazardous, toxic, contaminating, polluting matter, waste, substance or related injurious materials, whether injurious by themselves or in combination with other materials (collectively, "**Hazardous Materials**"). Further, Lessee shall not use, generate, manufacture, produce, store, treat, dispose or permit the escape on, under, about or from the Hotel Complex Premises of any material, substance or chemical which is regulated by any Law (collectively "**Regulated Materials**"). Notwithstanding the foregoing, in the event Lessee's permitted use of the Hotel Complex Premises requires the use and/or storage of any Hazardous Materials and/or Regulated Materials on, under or about the Hotel Complex Premises, Lessee shall provide written notice to Lessor, prior to final execution of this Lease, of the description of such materials and Lessee's proposed plan for the use, storage and disposal of such materials. Such use, storage and disposal shall be subject to Lessor's approval, in Lessor's sole discretion. In the event Lessor approves the proposed use, storage and disposal of specific Hazardous Materials and/or Regulated Materials in the Hotel Complex Premises, Lessee may use and store upon the Hotel Complex Premises such approved materials. Lessee shall comply with all Laws with respect to such use and storage, including, without limitation, the removal and disposal of such Hazardous Materials and/or Regulated Materials at all times during and at the expiration or earlier termination of the Lease Term. Notwithstanding anything to the contrary contained in this Lease, in the event any of the equipment serving the Hotel Complex Premises such as, but not limited to, refrigerators, air conditioning systems, and supplemental HVAC systems, utilize refrigerants containing chlorofluorocarbons ("**CFCs**"), Lessor, in its sole discretion, shall have the option to require Lessee to remove such equipment at the expiration or earlier termination of the Lease Term. In addition, Lessee shall be responsible for compliance with all Laws with respect to such equipment and/or the use of CFCs which may include the removal and disposal of such equipment.

Lessee shall defend (by counsel reasonably acceptable to Lessor), indemnify, protect and hold Lessor and each of Lessor's partners, employees, agents, attorneys, successors and assigns, free and harmless from and against any and all claims, liabilities, penalties, forfeitures, losses (including diminution in value of the Hotel Complex Premises or the Parcel) or expenses (including attorney's fees), or death of or injury to any person or damage to any property whatsoever, arising from or caused in whole or in part, directly or indirectly by:

(a)     The presence in, on, under or about the Hotel Complex Premises, or discharge in or from the Hotel Complex Premises of any Hazardous Materials and/or Regulated Materials, or Lessee's use, analysis, storage, removal, transportation, disposal, release, threatened release, discharge or generation of Hazardous Materials and/or Regulated Materials to, in, on, under, about or from the Hotel Complex Premises, or;

(b)     Lessee's failure to comply with any federal, state, county, municipal, local or other law, rule, ordinance and regulation now or hereafter in effect relating to the industrial hygiene, environmental protection, use, analysis, generation, manufacture, purchase, transportation, storage, removal and disposal of Hazardous Materials and/or Regulated Materials.

Lessee's obligations hereunder shall include, without limitation and whether foreseeable or unforeseeable, all costs of any required or necessary testing, repair, cleanup, removal costs, detoxification or decontamination of the Hotel Complex Premises and the preparation and implementation of any closure, remedial action, site assessment costs or other required plans in connection therewith. In addition, upon request from Lessor at any time during the Lease Term, Lessee shall execute affidavits, representations, and any other similar documents concerning Lessee's best knowledge and belief regarding the presence of Hazardous Materials and/or Regulated Materials on, under or about the Hotel Complex Premises. Further, Lessee's obligations hereunder shall survive the expiration or earlier termination of this Lease. For purposes of this Section 7.3, any acts or omissions of Lessee whereby employees, agents, assignees, contractors or subcontractors of Lessee or others are acting for or on behalf of Lessee (whether or not they are negligent, intentional, willful or unlawful), will be strictly attributable to Lessee.

## ARTICLE 8
## UTILITIES

8.1     Utilities. Lessee shall pay or cause to be paid, all charges (including, without limitation, meter fees, connection fees, impact fees and/or any other fees or assessments) for water, gas, electrical power, telephone, sewer, trash collection and all other utilities and services supplied to or for the Hotel Complex Premises (hereinafter referred to as "**Utilities**") from and after the Effective Date, and agrees to hold Lessor harmless with respect to any charges for said Utilities. If any such charges are not paid when due, Lessor may, but shall not be required to, pay

-- 514

the same, and any amount so paid by Lessor shall immediately thereafter become due to Lessor from Lessee as Additional Rent.

Lessee shall also procure, or cause to be procured, without cost to Lessor, any and all necessary permits, licenses or other authorizations required for the lawful and proper installation and maintenance upon the Hotel Complex Premises of wires, pipes, conduits, tubes and other equipment and appliances for use in supplying any Utilities to and upon the Hotel Complex Premises. If required by the applicable utility company, Lessor, upon request of Lessee, and at the sole expense and liability of Lessee, will join with Lessee in any application required for obtaining or continuing any Utilities.

8.2     No Liability. Lessor shall not be liable in damages or otherwise for any discontinuance, failure or interruption of Utility service to the Hotel Complex Premises. No such discontinuance, failure or interruption shall be deemed a constructive eviction of Lessee or entitle Lessee to terminate this Lease or withhold payment of any Rent due under this Lease.

8.3     Consent to Districts. Lessee hereby acknowledges that the Hotel Complex Premises may be subject to special assessment and/or utility districts (e.g., water districts), and acknowledges that its use and occupancy of the Hotel Complex Premises shall comply with any requirements of the same.

## ARTICLE 9

### INDEMNITY; INSURANCE

9.1     Indemnity by Lessee. Lessee shall indemnify, protect, defend, and hold Lessor (and Lessor's partners, joint venturers, shareholders, mortgagees, affiliates, and property managers, and their respective officers, directors, employees, and agents) (collectively "**Lessor Parties**") harmless from and against any and all claims, demands, investigations, proceedings, actions, suits, judgments, awards, fines, liens, loss, damage, expense, charge or cost of any kind or character and liability (including reasonable attorney fees and court costs) (collectively, "**Claims**") arising out of or in connection with loss of life, personal injury, property damage or otherwise arising from (a) the construction, use, occupation, improvement or maintenance of the Hotel Complex Premises or any work or activity in or about the Hotel Complex Premises by Lessee or its assignees or subtenants or their respective agents, employees, contractors, licensees or invitees, (b) any activity, condition or occurrence in or about the Hotel Complex Premises, (c) the filing or potential filing of any mechanics' or materialmen's liens against the Hotel Complex Premises in connection with any work done or caused to be done by Lessee, (d) any breach or failure to perform any obligation imposed on Lessee under this Lease, or (e) any act or omission of Lessee or its assignees or subtenants or their respective agents, contractors, employees, customers, invitees or licensees. Upon notice from any of the Lessor Parties, Lessee shall, at Lessee's sole expense and by counsel satisfactory to Lessor, defend any action or proceeding brought against Lessor Parties, or any of them, by reason of any such Claim. If any of the Lessor Parties is made a party to any litigation commenced by or against Lessee, then Lessee shall indemnify, protect, defend, and hold each of such Lessor Parties harmless from and against any and all Claims arising out of, incurred or paid by any such person in connection with such litigation. The obligations of this Section 9.1 shall survive the expiration or earlier termination of this Lease.

9.2     Lessee's Insurance Obligations. Lessee further covenants and agrees that it will carry and maintain insurance, at its sole cost and expense, (1) of the types and in the amounts as set forth in this Section 9.2 from and after the Effective Date, and (2) as reasonably determined, from time to time, by an insurance consultant that regularly provides insurance consulting services to institutional lenders and is approved by Lessor's Mortgagees. The following requirements will remain in force throughout the term of this Lease, or as otherwise specified herein; provided, however, that if any required insurance coverage cannot reasonably be obtained or maintained because of insurance market, legislative or other factors, then Lessee may substitute therefor a suitable alternative form of insurance or other risk management technique, subject to the approval of Lessor's Mortgagees, which approval will not be unreasonably withheld, conditioned or delayed. Lessee shall directly implement the insurance requirements or cause them to be implemented to protect Lessee's and Lessor's interests as described herein.

(a)     Public Liability. Commercial general liability insurance for bodily injury, death, personal injury and property damage (including contingent liability, completed operations and broad form contractual liability coverage) with coverage limits of not less than Five Million Dollars ($5,000,000.00) combined single limit, per occurrence, in the aggregate, insuring against any and all liability of the insured with respect to the Hotel

Complex Premises or arising out of the maintenance, use or occupancy thereof and shall specifically include liquor liability insurance covering consumption of alcoholic beverages, if the sale of alcoholic beverages is a Permitted Use hereunder. All such personal injury liability insurance and property damage liability insurance shall specifically insure the performance by Lessee of that part of the indemnity agreement contained in Section 9.1 relating to liability for injury to or death of persons and damage to property and shall name Lessor, its successors and assigns as an additional insured.

(b)    Workers' Compensation. Statutory amount of workers' compensation insurance required by the state in which the Hotel Complex Premises are located for the benefit of Lessee's employees. During construction of the Improvements, Lessee shall cause its contractors to maintain workers' compensation insurance with limits of liability as required by the state in which the Hotel Complex Premises are located and employer's liability insurance with limits of liability of at least One Million Dollars ($1,000,000.00), each containing a waiver of subrogation executed by the insurance company, if the same can be obtained, in favor of Lessor.

(c)    Plate Glass. Insurance covering the full replacement cost of all plate glass on the Hotel Complex Premises. Lessee shall have the option either to insure commercially or to self-insure this risk.

(d)    Equipment. Machinery insurance on all air conditioning equipment and systems serving the Hotel Complex Premises. If said equipment and the damage it may cause are not covered by Lessee's property insurance (as specified in subparagraph (e), below), then the insurance specified in this subparagraph (d) shall be in an amount not less than the full replacement cost of such equipment and systems. If Lessee requires boilers or other pressure vessels to serve the Hotel Complex Premises, they shall also be insured in the amount required by this subparagraph (d).

(e)    Improvements; Personal Property and Merchandise.    Insurance covering (1) the Improvements, (2) the Personal Property, and (3) Lessee's merchandise, from time to time, in, on or upon the Hotel Complex Premises, in an amount not less than one hundred percent (100%) of their full replacement cost from time to time, providing protection against any peril included within the classification "**Special Causes of Loss**" including, without limitation, coverage for sprinkler and flood damage and theft and earthquake coverage. During remodeling or construction of the Improvements, Lessee shall maintain builder's risk insurance covering the Improvements for fire, lightning, extended coverage perils, vandalism, malicious mischief and sprinkler leakage, in an amount not less than one hundred percent (100%) of their projected replacement cost. Any policy proceeds shall be used for the repair or replacement of the property damaged or destroyed, unless this Lease shall cease and terminate under the provisions of Article 18.

(f)    Business Interruption. Business interruption insurance in such an amount as will cover Lessee's Rent obligations hereunder and reimburse Lessee for loss of direct or indirect earnings attributable to all perils insured against as required by Section 9.2(e) above or attributable to prevention of access to the Hotel Complex Premises as the result of such perils for a period of at least twelve (12) months.

(g)    Automobile Liability. Comprehensive automobile liability insurance with employer's non-ownership liability endorsement, with a combined single limit (for both bodily injury and property damage) of not less than Three Million Dollars ($3,000,000.00).

(h)    Additional Insurance. Lessee shall carry and maintain during the Lease Term such other types of insurance coverage and in such amounts covering the Hotel Complex Premises and Lessee's operations therein as may be reasonably required by Lessor from time to time. In addition, the limits of liability for the insurance required under subparagraphs (a), (b) and (g) above shall be subject to increase from time to time as may be reasonably required by Lessor.

(i)    Construction Defect Insurance.    Lessee shall maintain or cause to be maintained construction defect insurance in accordance with the CC&Rs.

All policies of insurance provided for herein shall be issued by insurance companies with a general policyholder's rating of not less than "A" and a financial rating of not less than "VIII" as rated in the most current available "Best's" Insurance Reports, and qualified to do business in the state where the Hotel Complex Premises are located. The policy of insurance under subparagraph (a) above shall contain a cross-liability endorsement and the policies of insurance under subparagraphs (a) and (g) above shall name Lessor, Lessor's Mortgagees, property managers, and such other individuals or entities as Lessor may from time to time designate as "additional insureds." In addition, the insurance under subparagraphs (d), (e) and (i) above shall name Lessor and/or Lessor's Mortgagees as loss-

payee. Executed copies of all policies of insurance required hereunder or certificates thereof shall be delivered to Lessor (i) with regard to the public liability insurance identified in Section 9.2(a), within five (5) days following Lessee's execution and delivery of this Lease to Lessor, (ii) with regard to the construction insurance identified in Section 9.2(e), on or before Lessee's commencement of construction of the Improvements, and (iii) with regard to the remaining insurance required under this Section 9.2, on or before the completion of construction of such Improvements, and thereafter executed copies of renewal policies or certificates thereof shall be delivered to Lessor within thirty (30) days prior to the expiration of the term of each such policy. As often as any policy shall expire or terminate, renewal or additional policies shall be procured and maintained by Lessee in like manner and to like extent. All policies of insurance delivered to Lessor must contain a provision that the company writing said policy will give to Lessor (and any other additional insureds) thirty (30) days' advance written notice of any cancellation, lapse, reduction or other adverse change respecting such insurance. All public liability, property damage or other casualty policies shall be written as primary policies, not contributing with or secondary to coverage which Lessor may carry.

Lessee's obligations to carry the insurance provided for above may be satisfied by inclusion of the Hotel Complex Premises within the coverage of a so-called blanket policy or policies of insurance carried and maintained by Lessee; provided, however, that Lessor and those persons or entities identified in the preceding paragraph shall be named as additional insureds or loss-payees thereunder as their interests may appear and that the coverage afforded Lessor will not be reduced or diminished by reason of the use of such blanket policies of insurance, and provided further that the requirements set forth herein are otherwise satisfied. Lessee agrees to permit Lessor at all reasonable times to inspect any policies of insurance of Lessee which Lessee has not delivered to Lessor.

9.3      Waiver of Rights. Lessee (for itself and its insurer) hereby waives any rights, including rights of subrogation, that Lessee may have against Lessor for compensation of any loss or damage occasioned to Lessee with regard to its property and the Hotel Complex Premises arising from any peril generally covered by the insurance Lessee is required to carry and maintain under Sections 9.2(c), (d), (e) and (f).

9.4      Exemption of Lessor from Liability. Lessee, as a material part of the consideration to Lessor, assumes all risk of damage to property, including, but not limited to, Improvements, fixtures, equipment, furniture, and alterations or injury to persons in, on, under or about the Hotel Complex Premises, arising from any cause, and Lessee expressly releases Lessor and waives all claims in respect thereof against Lessor, except only such claims that are caused solely by the gross negligence or willful misconduct of Lessor and it Authorized Representatives, subject to Section 9.3. Lessee agrees that Lessor shall not be liable for injury to Lessee's business or any loss of income therefrom or for any damage to the property of Lessee, or injury or death or illness of Lessee, Lessee's Authorized Representative, invitees, customers, or any other person in or about the Hotel Complex Premises, whether such damage, illness, or injury is caused by fire, steam, electricity, gas, water, or rain, or from the breakage, leakage, or other defects of sprinklers, wires, appliances, plumbing, ventilation, air conditioning, or lighting fixtures, or from any other cause, and whether such damage, illness or injury results from conditions arising on the Hotel Complex Premises, or from other sources or places, and regardless of whether the cause of such damage, illness or injury or the means of repairing the same is inaccessible to Lessee, excepting only damage, illness or injury caused solely by the gross negligence or willful misconduct of Lessor and its Authorized Representatives, subject to Section 9.3. Lessor shall not be liable for any damages arising from any act or neglect of any other tenant, if any, or Lessor's failure to enforce the terms of any agreement with parties other than Lessee.

## ARTICLE 10

### TITLE TO PREMISES

10.1     Real Property. Lessee acknowledges that Lessor's title to the Parcel is subject to: (a) the effect of any and all Matters of Record; (b) the effect of any applicable Laws, including without limitation zoning, building and other land-use laws of the city, county and state where the Hotel Complex Premises are located; (c) general and special Taxes not delinquent; (d) all matters discoverable by physical inspection of the Hotel Complex Premises; and (e) all matters known to Lessee of which Lessee has notice constructive or otherwise (collectively, the "Permitted Exceptions"). As to its leasehold estate, Lessee and all persons in possession of the Hotel Complex Premises will conform to and will not violate any of the foregoing.

10.2     Personal Property. All of Lessee's and its subtenants' Personal Property must be new when installed in, or attached to, the Hotel Complex Premises by Lessee or its subtenants and shall remain the property of Lessee and its subtenants.

10.3     Ownership and Removal of Improvements. Lessor and Lessee hereby acknowledge and agree that all Improvements constructed upon the Parcel and any of Lessee's trade fixtures or other property that is permanently affixed to the Hotel Complex Premises such that they are an integral part of the Improvements shall be deemed Improvements as defined in this Lease. Lessee shall be the owner of all Improvements constructed on the Parcel, as the same may be altered, expanded and/or improved from time to time. Lessee shall retain all rights to depreciation deductions and tax credits arising from its ownership of the Improvements. On expiration or earlier termination of this Lease, all such Improvements shall automatically vest in, revert to, and become the property of Lessor without compensation to, or requirement of consent or other act of Lessee and without the necessity of executing a deed, bill of sale, conveyance or other act or agreement of Lessee, and without any payment of any kind or nature by Lessor to Lessee or to any other person, including any leasehold mortgagee or other lender who has a lien against all or any portion of Lessee's interest in this Lease. Lessee shall thereafter have no further rights or interest therein. On or at any time after the date of expiration of this Lease, if requested by Lessor, Lessee shall, without charge to Lessor, promptly execute, acknowledge and deliver to Lessor a deed and bill of sale (in form and content acceptable to Lessor) which conveys all of Lessee's right, title, and interest in and to the Improvements and any modifications thereto. In addition, at any time after the expiration or earlier termination of this Lease, if so requested by Lessor, Lessee shall, without charge to Lessor, promptly execute, acknowledge and deliver to Lessor an assignment (in form and content acceptable to Lessor) which (i) conveys all of Lessee's right, title and interest in and to the Hotel Complex Premises; (ii) assigns all contracts designated by Lessor, relating to the operation, management or maintenance of the Hotel Complex Premises or any part thereof; and (iii) conveys or assigns, as the case may be, all plans, records, registers, permits, and all other papers and documents which may be necessary or appropriate for the proper operation and management of the Hotel Complex Premises.

## ARTICLE 11

### CONSTRUCTION OF IMPROVEMENTS

11.1     Improvements. After commencement of construction of the Improvements shall have occurred, Lessee's construction of the Improvements shall, subject to force majeure events, be prosecuted continuously and diligently to completion. Lessee agrees to construct or cause to be constructed to substantial completion upon the Hotel Complex Premises on or prior to June 30, 2017 all Improvements, which Improvements shall be constructed in accordance with plans and specifications first approved in writing by Lessor. Lessee covenants and agrees that Lessee shall obtain all approvals required under applicable Laws before constructing the Improvements. In no event shall the gross building area of the Improvements exceed the maximum square footage allowed pursuant to applicable zoning, governmental requirements and applicable law. Lessor agrees that Lessor shall, at no material cost to Lessor, cooperate with Lessee in obtaining any approvals required for the initial Improvements under applicable Laws.

11.2     Alteration of Improvements. In no event shall any structural or exterior alterations, additions, changes or improvements (collectively "**Alterations**") be made to the Hotel Complex Premises, without obtaining the prior written approval of Lessor, which approval shall not be unreasonably withheld, conditioned or delayed. Lessee agrees to reimburse Lessor for all actual costs and expenses (including, without limitation, any architect and/or engineer fees) reasonably incurred by Lessor in approving or disapproving Lessee's plans for Improvements or any alterations, additions or changes thereto.

11.3     Construction and Maintenance Requirements. All Improvements and Alterations shall be performed in accordance with all applicable Laws, insurance underwriter's requirements, the CC&Rs and other Matters of Record by duly licensed contractors under the supervision of a qualified architect or licensed structural engineer. Work shall not commence until Lessee (a) has obtained and delivered to Lessor a copy of all legally required permits and approvals and (b) has complied with the requirements of Section 12.5 below. All work with respect to any Improvements must be performed in a good and workmanlike manner and diligently prosecuted to completion to the end that the Hotel Complex Premises shall at all times be a complete unit except during the period of work. Lessee shall deliver to Lessor, prior to commencement of said work, a copy of the building permit with respect thereto.

## ARTICLE 12

### MECHANICS' LIENS

12.1    Lessee's Covenants.  Lessee agrees that it will pay, or cause to be paid, all costs of labor, services and/or materials supplied in the prosecution of any work, done, or caused to be done, on the Hotel Complex Premises, and Lessee will keep the Hotel Complex Premises free and clear of all mechanics' liens and other liens on account of work done for Lessee or persons claiming under Lessee.

12.2    Contest of Lien.  If Lessee desires to contest any mechanics' lien claim it shall (a) either (i) post a mechanics' lien release bond issued by a responsible corporate surety in an amount and in a manner sufficient to satisfy statutory requirements for the release of such mechanics' lien in the state where the Hotel Complex Premises are located or (ii) furnish Lessor with adequate security for the amount of the claim plus estimated costs and interest, and (b) promptly pay or cause to be paid all sums awarded to the claimant on its suit.

12.3    Lessor's Right to Cure.  If Lessee shall be in default of any of its covenants in this Article 12 by failing to provide security for or satisfaction of any mechanics' lien, then Lessor, in addition to any other rights or remedies it may have, may (but shall not be obligated to) discharge said lien by (a) paying the claimant an amount sufficient to settle and discharge the claim, (b) posting a mechanics' lien release bond, or (c) taking such action as Lessor shall deem appropriate, in which event Lessee shall pay, as Additional Rent, on Lessor's demand, all costs (including reasonable attorneys' fees) incurred by Lessor in settling and discharging said lien together with interest thereon in accordance with Section 5.5, from the date of Lessor's payment of said costs.  Lessor's payment of said costs shall not waive any default of Lessee under this Article 12.

12.4    Notice of Lien.  Lessee shall forthwith notify Lessor in writing of any claim or lien filed against the Hotel Complex Premises or the commencement of any action affecting the title thereto.

12.5    Notice of Non-responsibility.  Lessor or its representatives shall have the right to go upon and inspect the Hotel Complex Premises at all reasonable times and shall have the right to post and keep posted thereon notices of non-responsibility or such other notices which Lessor may deem to be proper for the protection of Lessor's interest in the Hotel Complex Premises.  Before the commencement of any work which might result in any such lien, Lessee shall give to Lessor (at least ten (10) business days' written notice of its intention to do so in sufficient time to enable Lessor to post such notices.  Lessee shall also notify Lessor on the day when such work is actually commenced.

## ARTICLE 13

### SIGNS

13.1    Lessee's Signage.  Lessee be permitted, at Lessee's sole cost and expense and subject to the remaining provisions of this Section 13.1, to install (a) on the façade of the Hotel Complex Premises building, the maximum signage allowed by applicable code, any applicable permits and all other requirements of the applicable governmental entities, (b) a pylon sign on the Parcel in a location to be mutually, reasonably determined by Lessor and Lessee, (c) interior signage in such building (which interior signage may, at times, be illuminated and/or visible from the exterior of such building) so long as such interior signage is of a first-class nature and complies with all applicable codes and other governmental requirements, and all applicable requirements of the CC&Rs.  Lessee agrees, at Lessee's sole cost and expense, to maintain, in good condition and repair at all times, any such pylon, sign, awning, canopy, decoration, lettering or advertising matter (collectively, "**Lessee's Signage**").  Lessee's Signage shall be installed prior to Lessee's opening for business.  If Lessee fails to maintain any Lessee's Signage in accordance with the terms of this Article 13, Lessor may do so and Lessee shall reimburse Lessor for such cost plus a twenty percent (20%) overhead fee.  Upon the expiration or earlier termination of this Lease, Lessee shall, at its expense, remove Lessee's signs and repair any damage resulting from the installation or removal thereof.

## ARTICLE 14

### PERSONAL PROPERTY

14.1    Removal and Replacement.  All of Lessee's trade fixtures, furniture, furnishings, signs, merchandise, inventory and other personal property not permanently affixed to the Hotel Complex Premises (hereinafter collectively referred to as "**Personal Property**") must be new when installed in, or attached to, the Hotel Complex Premises by Lessee.  Subject to the provisions of Section 14.2, any such Personal Property shall

remain the property of Lessee. Provided Lessee is not in default under the terms of this Lease, Lessee shall have the right to remove any or all of its Personal Property which it may have stored or installed in the Hotel Complex Premises, including, without limitation, counters, shelving, showcases, mirrors and other movable Personal Property, so long as Lessee shall immediately replace the same with similar Personal Property of comparable or better quality, except Lessee shall not be obligated to replace such Personal Property at the expiration or earlier termination of this Lease. Lessee shall, at its expense, immediately repair any damage occasioned to the Hotel Complex Premises by reason of the removal of any such Personal Property.

14.2    Improvements. Any of Lessee's trade fixtures, furniture, furnishings or other property which is permanently affixed to the Hotel Complex Premises shall be deemed Improvements as defined in this Lease.

14.3    Personal Property Taxes. In addition to Lessee's obligations set forth in Section 5.3, Lessee shall pay before delinquency all taxes (including sales and use taxes), assessments, license fees and public charges levied, assessed or imposed upon its business operations as well as upon its Personal Property. No taxes, assessments, fees or charges referred to in this Section shall be considered as Taxes under the provisions of Section 5.3.

## ARTICLE 15

## ASSIGNMENT AND SUBLETTING

15.1    Assignment and Subletting. Lessee shall not sublet or assign this Lease or any interest herein (hereinafter, a "**Transfer**") without the prior written consent of Lessor, which consent will not be unreasonably withheld, subject to the conditions set forth in Section 15.2 and Lessor's rights under Section 15.6. A consent by Lessor to one Transfer, whether by operation of law or otherwise, shall not be deemed to be a consent to any subsequent Transfer. Any Transfer made contrary to the terms of this Section shall, at Lessor's election, be void. For purposes of this Lease, the term "Transfer" shall also include (a) the transfer, whether voluntary, involuntary or by operation of law, of fifty percent (50%) or more of the ownership or voting interest of Lessee in the aggregate through one transfer or a series of transfers, or (b) the dissolution, merger, consolidation or other reorganization of Lessee.

15.2    Restrictions. By way of example and without limitation, the parties agree it shall be reasonable for Lessor to withhold its consent if any of the following situations exist or may exist:

(a)    The transferee's contemplated use of the Hotel Complex Premises following the proposed Transfer conflicts with the use restrictions set forth in Article 7 hereof;

(b)    In Lessor's reasonable business judgment, the transferee has failed to demonstrate sufficient business reputation, skill or experience to manage a successful development and project of the type and quality permitted under this Lease and consistent with the types and quality of businesses anticipated by Lessor in the Development Project as a whole;

(c)    In Lessor's reasonable business judgment, the present net worth of the transferee is less than the greater of Lessee's net worth as of the date Lessor and Lessee entered into this Lease or Lessee's net worth at the date of Lessee's request for consent;

(d)    The proposed Transfer would breach any covenant of Lessor respecting radius, location, use or exclusivity in any other lease, financing agreement, CC&Rs or any other agreement to which Lessor is bound;

(e)    Lessor has given notice of election to purchase pursuant to Section 15.6.

15.3    Condition Precedent. Lessee shall not have the right or power to request or effect a Transfer at any time an Event of Default shall exist.

15.4    Procedures. Should Lessee desire to effect a Transfer, Lessee shall give notice thereof to Lessor by requesting in writing Lessor's consent to such Transfer at least sixty (60) days before the effective date thereof and shall provide Lessor with the following:

(a)    The full particulars of the proposed transaction, including its nature, effective date, and terms and conditions including the purchase price and payment terms of the purchase price. Such documentation shall include, without limitation, copies of any offers, draft agreements, subleases, letters of commitment or intent, and other documents pertaining to such proposed transaction;

(b)      A description of the identity, net worth and previous business experience of the transferee, including, without limitation, copies of such transferee's latest income statement, balance sheet and statement of cash flows (with accompanying notes and disclosures of all material changes thereto) in audited form, if available, and certified as accurate by the transferee along with a written statement authorizing Lessor or its designated representative(s) to investigate such transferee's business experience, credit and financial responsibility;

(c)      A statement that Lessee intends to consummate the transaction if Lessor consents thereto; and

(d)      Any further information relevant to the transaction which Lessor shall reasonably request.

A proposed Transfer which has not complied with the notice provisions set forth in this Section 15.4 shall be of no force or effect until Lessor's consent has been obtained in accordance with this Article 15. Within thirty (30) days after receipt of Lessee's written request for consent in accordance with this Section 15.4, Lessor shall respond to the request for consent to the proposed Transfer.

15.5      Documentation and Expenses. Each Transfer made by Lessee shall be evidenced by an instrument acceptable to Lessor, which shall be executed by Lessor, Lessee and the transferee. By such instrument, the transferee shall assume and promise to perform the terms, covenants and conditions of this Lease which are obligations of Lessee. Lessee shall remain fully liable throughout the remainder of the Lease Term to perform its duties under this Lease following the Transfer. Lessee shall, promptly following receipt of an invoice therefor, reimburse Lessor for Lessor's reasonable costs, including legal fees, incurred in obtaining advice and preparing documentation for each Transfer.

15.6      Lessor's Option to Acquire. Except with respect to any Transfer that does not require Lessor's consent pursuant to Section 15.7, Lessor shall have the right to elect to purchase Lessee's interest in this Lease, or the applicable portion thereof, by giving notice of such election to Lessee within thirty (30) days after Lessor receives Lessee's notice of a proposed Transfer and all information required under Section 15.4. The purchase price and terms and conditions for Lessee's purchase shall be the same as specified in the information provided by Lessee pursuant to Section 15.4, except that the purchase price and other consideration to be paid or given by Lessor shall not exceed fair market value, as determined by a qualified independent appraiser selected by Lessor and approved by Lessee, which approval shall not be unreasonably withheld. If and to the extent that it is not feasible for Lessor to perform as contemplated in the terms provided by Lessee pursuant to Section 15.4 (such as because such terms provide for a transfer of property owned by the proposed transferee), a commercially reasonable term that is feasible for Lessor to perform shall be substituted.

15.7      Transfers That Do Not Require Lessor's Consent. Notwithstanding anything to the contrary contained in this Lease, Lessee shall not be required to obtain Lessor's consent to the following transactions:

(a)      Exempt Transfers. Lessee may Transfer all or any part of its interest in this Lease to an entity which directly or indirectly, through one or more intermediaries, is controlled by, controls or is under common control with Lessee, as "control" is defined hereafter (an "**Affiliate**"), provided that such Transfer is not a subterfuge by Lessee to avoid its obligations under this Lease. For purposes of this Section 15.7, "control" of an entity shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management or policies of such entity.

(b)      Subleases. Lessee may, subject to the terms and conditions of Section 15.8, enter into subleases, concession agreements, license agreements and/or other occupancy agreements with respect to space in the Improvements (each a "**Sublease**") without Lessor's consent, provided that Lessee shall not enter into any Sublease on terms that violate or are incompatible with this Lease (including without limitation the use restrictions set forth in Article 7) or any CC&Rs affecting the Hotel Complex Premises.

(c)      Leasehold Mortgages. Subject to the provisions of Article 19, Lessee may enter into a Leasehold Mortgage or Leasehold Mortgages without Lessor's consent, and Leasehold Mortgages may be enforced or foreclosed in accordance with Article 19, including, without limitation, the Transfer of Lessee's interest in this Lease in connection with foreclosure proceedings as provided in Article 19.

15.8      Subletting and Occupancy Agreements.

(a)      Permitted Subleases; Conditions. Lessee shall not be required to obtain Lessor's prior written consent with respect to any Sublease unless (i) Lessee requests that Lessor execute a subordination,

nondisturbance and attornment agreement ("SNDA") pursuant to Section 15.8(b), or (ii) the proposed Sublease is not an arm's-length Sublease entered into in the ordinary course of Lessee's business on commercially reasonable terms for occupancy by the Subtenant, hereafter defined. Lessee further agrees for the benefit of Lessor that each Sublease (A) shall state that it is subject to the terms and provisions of this Lease, and (B) shall require that the subtenant or other party under the Sublease ("**Subtenant**") attorn to and accept the Lessor as the sublessor or other party to the Sublease in the event this Lease is terminated and Lessor requests such attornment. Notwithstanding the fact that Lessee shall not be required to obtain Lessor's prior written consent to Subleases, Lessor understands that Lessee may request that Lessor affirmatively approve or consent to certain Subleases, which approval or consent may be for the benefit of Lessee or the Subtenant. In such instances, Lessor agrees that its approval or consent to such Subleases shall not be withheld as long as such Subleases comply with the requirements of this Section 15.8. Lessor shall notify Lessee of its approval or disapproval of a proposed Sublease within thirty (30) days after its receipt of Lessee's written request for approval.

(b)      Nondisturbance Agreement.  If Lessee requests that Lessor enter into an SNDA for a particular Sublease and Lessor approves the proposed Subtenant and the proposed Sublease, Lessor, Lessee and the proposed Subtenant shall negotiate the terms and conditions of the SNDA in good faith.

15.9      Nullity.  Any purported Transfer consummated in violation of the provisions of this Article 15 shall be, at Lessor's election, null and void and of no force or effect.

## ARTICLE 16

### NON-DISCRIMINATION AND NON-SEGREGATION COVENANT

16.1      Lessee's Covenant.  Lessee herein covenants for itself, its successors and assigns and all persons and entities claiming under or through Lessee, and this Lease is made and accepted upon the following conditions:

(a)      There shall be no discrimination against or segregation of any person or group of persons on account of any basis listed in Subdivision (a) or (d) of Section 12955 of the Government Code, as those bases are defined in Sections 12926, 12926.1, subdivision (m) and paragraph (1) of subdivision (p) of Section 12955, and Section 12955.2 of the Government Code, in the leasing, subleasing, transferring, use, occupancy, tenure or enjoyment of the land herein leased, nor shall the lessee, himself or herself, or any person or entity claiming under or through him or her, establish or permit any such practice or practices of discrimination or segregation with reference to the selection, location, number, use or occupancy or tenants, lessees, subleases, subtenants or vendees in the land herein leased.

(b)      Notwithstanding paragraph (a), with respect to familial status, paragraph (a) shall not be construed to apply to housing for older persons, as defined in Section 12955.9 of the Government Code. With respect to familial status, nothing in paragraph (a) shall be construed to affect Sections 51.2, 51.3, 51.4, 51.10, 51.11 and 799.5 of the California Civil Code, relating to housing for senior citizens. Subdivision (d) of Section 512 and Section 1360 of the California Civil Code and subdivision (n), (o) and (p) of Section 12955 of the Government Code shall apply to paragraph (a).

16.2      Inclusion of Covenant in Subleases and Other Agreements.  All Subleases and any other document evidencing the Transfer of Lessee's leasehold interest herein or any part thereof, shall contain and be subject to the same or substantially the same non-discrimination and non-segregation clauses as those set forth in this Article 16.

## ARTICLE 17

### REPAIRS; MAINTENANCE

17.1      Repairs and Maintenance.  Lessor shall have no obligation of any kind to maintain, repair, alter, construct, replace, or improve the Hotel Complex Premises or to comply with any applicable Laws or with any other legal or insurance requirement concerning the condition or repair of the Hotel Complex Premises.  At all times Lessee, at no cost to Lessor, shall (a) maintain the Hotel Complex Premises in compliance with the requirements of applicable Laws, applicable mortgages, deeds of trust, insurance policies and CC&Rs affecting the Hotel Complex Premises, and (b) perform all repairs and replacements required to keep the Hotel Complex Premises in a structurally sound, sanitary, safe and first-class condition. Lessee agrees at all times from and after delivery of the Hotel Complex Premises, at its own cost and expense, to repair, maintain in good and tenantable condition and

replace and improve, as necessary, the Hotel Complex Premises and every part thereof, whether or not such items are structural or non-structural, including, without limitation, the following: all Improvements, ancillary components, pavement, sidewalks, curbs, gutters, exterior lighting, all meters, pipes, conduits, equipment, components and facilities (whether or not within or outside of any building which is part of the Improvements) that supply the Hotel Complex Premises with Utilities (except to the extent the appropriate utility company has assumed these duties); all equipment installed in the Hotel Complex Premises; all exterior and interior glass installed in the Hotel Complex Premises; all elevators installed in the Hotel Complex Premises; the storefront(s); all signs, locks and closing devices; all window sashes, casements and frames; doors and door frames; floor coverings, including carpeting, terrazzo or other special flooring; and all such items of repair, maintenance, alteration, improvement, replacement or reconstruction as may be required at any time or from time to time to keep the Hotel Complex Premises in first class condition and repair and to comply with all applicable laws, ordinances, rules or regulations of any public authority, the requirements of any insurance underwriter or any similar body now existing or which may become applicable in the future (collectively "**Laws**"). Lessee's obligations under this Section 17.1 shall include, without limitation, any of the foregoing which are required because of (i) the enforcement of or any change in any applicable Law, (ii) any act or omission of Lessee or (iii) to comply with any requirements of any governmental or quasi-governmental agency or any insurer. All replacements made by Lessee in accordance with this Section shall be of like size, kind and quality to the items replaced as they existed when originally installed.

17.2 Lessee's Failure to Maintain. If Lessee refuses or neglects to comply with any of its obligations in Section 17.1 in a manner reasonably satisfactory to Lessor, without waiving Lessee's default and in addition to its other rights and remedies, Lessor shall have the right (but not the obligation), upon giving Lessee reasonable written notice of its election to do so (except that no notice will be required in the event of an emergency), to take such actions on behalf of and for the account of Lessee. In such event, Lessee shall pay the cost of such work as Additional Rent promptly upon receipt of an invoice therefor. Lessor shall have no liability for interference with any business conducted on the Hotel Complex Premises or any other injury, loss, liability, or damage as a consequence of such entry or repairs. Lessee expressly waives (i) all defenses to its maintenance obligations under this Lease; (ii) the right to require Lessor to make repairs; (iii) any right to make repairs at the expense of Lessor; (iv) the right to reduce or offset rent as a consequence of the condition of the Hotel Complex Premises or the Improvements; (v) the benefits of California Civil Code Sections 1932, 1941 and 1942, as amended, or common law principles similar thereto, now or hereafter in effect or otherwise inconsistent with the provisions of this Lease.

17.3 Right to Enter. Lessee agrees to permit Lessor, or its authorized representatives, to enter the Hotel Complex Premises at all times during usual business hours upon giving Lessee reasonable written notice (except that no notice will be required in the event of an emergency) to inspect the same and to perform any work therein that (a) may be necessary to comply with any applicable Laws or conditions, covenants and restrictions, or (b) Lessor may deem necessary to prevent waste or deterioration in connection with the Hotel Complex Premises. Nothing herein contained shall imply any duty on the part of Lessor to do any such work which, under any provision of this Lease, Lessee is required to do, nor shall Lessor's performance of any work on behalf of Lessee constitute a waiver of Lessee's default in failing to do the same. No exercise by Lessor of any rights herein reserved shall entitle Lessee to any compensation, damages or abatement of Rent from Lessor for any injury or inconvenience occasioned thereby. If Lessor makes or causes any such repairs to be made or performed, as provided for herein, Lessee shall pay the cost thereof to Lessor, as Additional Rent, promptly upon receipt of an invoice therefor.

## ARTICLE 18

### RECONSTRUCTION

18.1 Obligations of Lessee. Except as hereinafter otherwise provided and subject to the provisions of Section 18.4 below, in case of damage to or destruction of the Improvements or any part of the Hotel Complex Premises by fire or other cause, Lessee, at Lessee's sole cost and expense, whether or not the insurance proceeds, if any, shall be sufficient for the purpose, and irrespective of the amount of any loss, shall restore, repair, replace, rebuild or alter the same as nearly as possible to their value, condition and character immediately prior to such damage or destruction or with such changes or alterations as may be made at Lessee's election in accordance with and subject to the conditions of Article 11 hereof. Such restoration, repairs, replacements, rebuilding or alterations shall be commenced within thirty (30) days following the occurrence of such damage or destruction (or, if Section 18.4 is applicable, within thirty (30) days after Lessor waives its right to terminate under Section 18.4 or such right expires by the terms of Section 18.4) and prosecuted to completion with due diligence and in good faith. Lessee shall continue the operation of its business on the Hotel Complex Premises to the extent reasonably practicable from

the standpoint of prudent business management, and the obligation of Lessee to pay Rent shall remain in full force and effect regardless of whether Lessee is able to operate its business. Lessee shall not be entitled to any compensation or damages from Lessor for loss of use of the whole or any part of the Hotel Complex Premises or Lessee's Personal Property located on the Hotel Complex Premises or for any inconvenience or annoyance occasioned by such damage.

18.2    Disbursement of Insurance Proceeds. All property insurance proceeds recovered on account of damage or destruction to the Improvements (the "**Proceeds**") shall be applied to the payment of the cost of repairing and replacing the Improvements so damaged; provided, however, that if this Lease terminates pursuant to Section 18.4, the Proceeds shall be disbursed in accordance with Section 18.4. Except for reconstruction that is reasonably expected to cost less than One Hundred Thousand Dollars ($100,000.00), all proceeds shall be deposited with a depository acceptable to Lessor and Lessee (the "**Depository**"). If the Proceeds are insufficient to cover the anticipated cost of reconstruction, Lessee shall deposit with the Depository prior to the commencement of reconstruction funds in the amount of such deficiency ("**Lessee's Funds**"). The Depository shall disburse the Proceeds and Lessee Funds, if applicable, during the course of reconstruction in accordance with customary construction disbursements, including a ten percent (10%) retention. If, after the reconstruction has been completed in accordance with the terms of this Lease, there are remaining funds held by the Depository, then such funds (after first deducting from such funds the fees and expenses of the Depository) shall be delivered to Lessee. If there are not sufficient funds remaining to pay for the Depository's fees and expenses, Lessee shall be responsible for the payment of same.

18.3    Destruction Not A Release. Except as expressly provided for in this Lease, no destruction of or damage to the Improvements located on the Hotel Complex Premises or any part thereof by fire or any other cause shall permit Lessee to terminate this Lease or shall relieve Lessee from its obligation to pay the full Rent under this Lease or from any of its other obligations under this Lease, and, except as otherwise expressly set forth herein, Lessee waives any rights now or hereafter conferred upon it by statute or otherwise to quit or surrender this Lease or the Hotel Complex Premises or any suspension, diminution, abatement or reduction of Rent on account of any such destruction or damage.

18.4    Termination of Lease. Notwithstanding anything contained in this Article 18 to the contrary, in the event that Substantial Damage, hereafter defined, of the Improvements occurs during the last five (5) years of the Initial Term, Lessee may, at any time within six (6) months from the date of such damage or destruction, upon thirty (30) days' written notice to Lessor of its intention to do so, terminate this Lease. Such option may be exercised by serving such notice upon Lessor, without any liability on the part of either party except for the payment of the Rent and all additional sums required to be paid by Lessee under the terms of this Lease up to the date of such termination and full performance by Lessee, at its sole cost and expense, of the work of demolition and removal of the remaining portions of the Improvements located on the Hotel Complex Premises so damaged or destroyed and removal of all debris from the Hotel Complex Premises; provided, however, that any available insurance proceeds shall be applied, to the extent such funds are available for demolition and removal, to payment of the cost of such demolition and removal. For the purposes of this Section, "Substantial Damage" shall mean damage to or destruction of the Improvements such that the estimated cost of restoring same as nearly as possible to their value, condition and character immediately prior to such damage or destruction is fifty percent (50%) or more of the estimated total replacement cost of the Improvements.

In the event this Lease shall be terminated pursuant to the provisions of this Section, Lessee shall (prior to and as a condition precedent to any termination) contribute to the insurance proceeds hereinafter mentioned a sum equal to the amount, if any, deducted from such insurance payment under any deductible, retention or co-insurance provisions, by Law or otherwise, and such contributed sum and the insurance proceeds recovered on account of such damage or destruction (after deducting all reasonable expenses incurred by Lessee in connection with the adjustment or collection of such loss and the costs of demolition and removal of the Improvements, as provided above) shall be allocated and distributed first to satisfy any Leasehold Mortgage and any remaining proceeds shall be allocated and distributed to Lessor.

## ARTICLE 19

## LEASEHOLD FINANCING

19.1    Non-Subordination. Lessor shall not be required to subject its fee estate and interest in the Property to the lien of any leasehold financing or mortgage sought or obtained by Lessee.

19.2      Lessee's Right to Encumber. Lessee is hereby given the right (exercisable at any time and from time to time) by Lessor, in addition to any other rights herein granted, without Lessor's prior written consent, approval or authorization, to hypothecate, pledge, encumber or mortgage its interest in this Lease, the leasehold estate in the Hotel Complex Premises created hereby, or any part or parts thereof or interest therein, and/or its interest in any Sublease(s), under one or more leasehold mortgage(s) ("**Leasehold Mortgage**"), and to assign such interest in this Lease, the leasehold estate in the Hotel Complex Premises created hereby, or any part or parts thereof or interest therein, and/or in any Sublease(s), as collateral security for such Leasehold Mortgage(s) (or to assign its interest in the same in connection with an assignment and leaseback transaction). Such rights to encumber are expressly conditioned upon the following conditions: (a) all rights acquired under such Leasehold Mortgage(s) shall, except as expressly provided in this Article 19, be subject to each and all of the CC&Rs affecting the Hotel Complex Premises, and to all rights and interests of Lessor herein, and (b) no such Leasehold Mortgage shall be cross-defaulted with any other loan or encumber this Lease in connection with any blanket encumbrance or cross-collateralization covering properties other than Lessee's interest in this Lease. None of such CC&Rs are or shall be waived by Lessor by reason of the right given to mortgage such interest in this Lease. The holder of any Leasehold Mortgage upon the leasehold estate created by this Lease shall be referred to herein as the "**Leasehold Mortgagee**" and shall be entitled to the rights and benefits as provided herein.

19.3      Notices. Provided that Leasehold Mortgagee shall have notified Lessor in writing of its status as a Leasehold Mortgagee and its name and address, Lessor thereafter shall give to such Leasehold Mortgagee a copy of each notice of default at the same time as any such notice shall be given by Lessor to Lessee, such copy to be addressed to Leasehold Mortgagee at the address last furnished to Lessor as hereinabove provided. Lessor shall not serve a notice of cancellation or termination upon Lessee unless a copy of any prior notice of default shall have been given to Leasehold Mortgagee as hereinabove provided and the time as hereinafter specified for the curing of such default shall have expired without the same having been cured, and no such notice of default shall be effective as to such Leasehold Mortgagee not receiving actual notice thereof. Lessor agrees to notify Leasehold Mortgagee in writing of the failure of Lessee to cure a default within any applicable grace period and of the curing of any default by Lessee. The performance by Leasehold Mortgagee of any condition or agreement on the part of Lessee to be performed hereunder will be deemed to have been performed with the same force and effect as though performed by Lessee.

19.4      Right to Cure. Lessor will accept performance by Leasehold Mortgagee within the following periods of any obligation to be performed by Lessee hereunder, with the same force and effect as though timely performed by Lessee:

(a)      as to any Rent and other sums payable hereunder, within (10) days after written notice from Lessor to Leasehold Mortgagee that Lessee has not cured such default within the period provided in Article 21;

(b)      as to all other defaults which by their nature can be cured, within forty-five (45) days after written notice from Lessor to Leasehold Mortgagee of Lessee's failure to perform, or, if within such period such failure to perform cannot be cured, to commence to so cure within such period and diligently and continuously proceed therewith to completion provided such cure is complete in no more than ninety (90) days after the initial notice to Leasehold Mortgagee.

19.5      Exercise of Remedies. With respect to any default that cannot be cured by Leasehold Mortgagee or that reasonably requires Leasehold Mortgagee to be in possession of the Hotel Complex Premises to effect a cure, Lessor shall not exercise its right to terminate this Lease during the time that Leasehold Mortgagee shall reasonably require to complete its remedies under its Leasehold Mortgage, if Leasehold Mortgagee has informed Lessor in writing that Leasehold Morgagee will proceed under this Section 19.5 and:

(a)      Leasehold Mortgagee proceeds, promptly and with due diligence, to exercise the remedies under its Leasehold Mortgage necessary to obtain possession of the Hotel Complex Premises and thereafter prosecutes and completes the same with all due diligence; and

(b)      Leasehold Mortgagee pays or causes to be paid to Lessor the Rent and all other charges required to be paid by Lessee hereunder which have accrued and those which shall become due and payable during said period and performs or causes to be performed all obligations of Lessee that can reasonably be performed by Leasehold Mortgagee without possession of the Hotel Complex Premises.

Upon the completion of any foreclosure proceedings or acquisition of Lessee's interest in this Lease by Leasehold Mortgagee, any default not susceptible of being cured by Leasehold Mortgagee shall be deemed waived by Lessor as to Leasehold Mortgagee, any purchaser at a foreclosure sale, and their respective successors and assigns, upon payment to Lessor of an amount equal to all losses, claims, liabilities, expenses and reasonable attorneys' fees incurred by Lessor in connection with such default.

19.6     Cancellation. Lessor shall also be obligated to give any notice of cancellation and termination to Leasehold Mortgagee, simultaneously with such notice given to Lessee. No such notice to Lessee shall be effective with respect to termination of this Lease unless Leasehold Mortgagee shall also have been so notified. Leasehold Mortgagee shall then have the right to notify Lessor in writing, within thirty (30) days after receipt by Leasehold Mortgagee of such notice of cancellation and termination, that (a) Leasehold Mortgagee, or any designee or nominee which Leasehold Mortgagee may designate or name in such notice, elects to lease the Hotel Complex Premises from the date of termination of this Lease for the remainder of the term of this Lease, at the Rent and other charges herein reserved and otherwise upon the same terms, covenants and conditions as are herein set forth, with the same relative priority in time and in right as this Lease (to the extent possible) and having the benefit of and vesting in Leasehold Mortgagee, or the nominee, of all the rights, title, interest, powers and privileges of the Lessee hereunder (the "New Lease"), and (b) Leasehold Mortgagee or the nominee further obligates itself to (and in fact does) within ten (10) days after delivery to Lessor of such election:

(i)     cure the default upon which such termination was based, or with respect to any default not capable of being cured within such ten (10) day period, or which cannot be cured without entry into possession, proceed and effect cure with due diligence following delivery of possession;

(ii)     pay to Lessor all Rent and other sums due under this Lease up to and including the date of commencement of the term of such New Lease less any net rental income received by Lessor for such period; and

(iii)     pay to Lessor all costs, claims, liabilities, expenses and reasonable attorneys' fees incurred by Lessor in connection with any such default and the preparation, execution and delivery of such New Lease.

19.7     New Lease Terms. After such cancellation and termination of this Lease and upon compliance with the provisions of Section 19.6 by Leasehold Mortgagee, or the approved nominee, within such time, Lessor shall thereupon execute and deliver such New Lease to Leasehold Mortgagee or the approved nominee, having the same relative priority in time and right as this Lease (to the extent reasonably possible) and having the benefit of all of the right, title, interest, powers and privileges of Lessee hereunder in and to the Hotel Complex Premises.

19.8     Title to Improvements. Upon execution and delivery of the New Lease, title to the Improvements shall automatically vest in the Leasehold Mortgagee or the approved nominee until the expiration or earlier termination of the term of the New Lease.

19.9     Assignment. In the event that Leasehold Mortgagee exercises its right under Section 19.6 to enter into a New Lease (or to designate its approved nominee to enter into a New Lease), a Transfer of such New Lease shall be subject to the conditions of said New Lease governing any such Transfers which conditions shall be as set forth in Article 15 of this Lease.

19.10     No Modifications. Anything herein contained to the contrary notwithstanding, Lessor and Lessee mutually agree that so long as there exists an unpaid Leasehold Mortgage on the leasehold estate of Lessee, this Lease or any renewal thereof shall not be modified, amended or altered and Lessor shall not accept a surrender of the Hotel Complex Premises or a cancellation of this Lease (provided Leasehold Mortgagee remedies any default and keeps this Lease current, all as provided above) prior to the expiration or sooner termination thereof, without the prior written consent of Leasehold Mortgagee.

19.11     No Merger. So long as any debt secured by a Leasehold Mortgage upon the leasehold created by this Lease shall remain unpaid, unless Leasehold Mortgagee shall otherwise consent in writing, the fee title to the Hotel Complex Premises and the leasehold estate in the Hotel Complex Premises shall not merge but shall always be kept separate estates, notwithstanding the union of such estates either in Lessor or in Lessee or in a third party by purchase or otherwise.

19.12     Estoppel Certificate. Lessor agrees for the benefit of any Leasehold Mortgagee that at any time, and from time to time, upon not less than twenty (20) days' prior notice from Lessee or from Leasehold Mortgagee, to deliver a certificate to Lessee and to Leasehold Mortgagee stating that this Lease is unmodified (or, if there have

been modifications, setting them forth) and in full force and effect, the dates to which Rent and other charges have been paid, and that either Lessee is not in default in the performance of any of the terms or provisions of this Lease or, if there are defaults, specifying the nature thereof with sufficient particularity that Lessee and Leasehold Mortgagee will know the nature of the acts which must be performed and the amounts of the payments which must be made to cure any such default, it being agreed that any such certificate delivered pursuant to this Section 19.12 may be relied upon by any prospective assignee of Lessee's interest in this Lease or by any Leasehold Mortgagee or prospective Leasehold Mortgagee.

19.13   Assignment of Revenue. Lessor consents to a provision in any Leasehold Mortgage or otherwise for an assignment of rents and income from Subleases, or other revenue from the Hotel Complex Premises to the Leasehold Mortgagee, effective on any conditions defined under any Leasehold Mortgage, and to any customary "lock box" payment arrangement that may be applicable, subject however to Leasehold Mortgagee's written agreement in form and content reasonably satisfactory to Lessor to comply with and be bound by the provisions of Article 4 and Section 5.1 hereof to the extent that funds are deposited by Lessee for the applicable period.

19.14   Consent of Lessor to Foreclosure Not Required. The foreclosure of a Leasehold Mortgage, or any sale thereunder, whether by judicial proceedings or by virtue of any power contained in any Leasehold Mortgage, or any conveyance of the leasehold estate created hereby from Lessee by any Leasehold Mortgagee or its Affiliate through, or in lieu of, foreclosure or other appropriate proceedings in the nature thereof, shall not breach any provision of or constitute a default under this Lease, and upon such foreclosure, sale or conveyance Lessor shall recognize any Leasehold Mortgagee or such Affiliate or designee of any Leasehold Mortgagee, or any purchaser at such foreclosure sale, as Lessee hereunder.

19.15   No Conflict. In the event of a default under the Leasehold Mortgage, such Leasehold Mortgagee may exercise with respect to the Hotel Complex Premises any right, power, or remedy under the Leasehold Mortgage that is not in conflict with the provisions of this Lease.

19.16   Amendments. Lessor shall consider and respond in good faith with respect to any proposed amendments to this Lease that are reasonably requested by a Leasehold Mortgagee; provided, however, that Lessor shall have no obligation to consider any proposed amendments to the description of the Hotel Complex Premises, Term, Rent, or any other amendments that would materially change the rights or obligations of Lessor under this Lease.

19.17   Lessor's Right to Cure. Lessee agrees that it shall obtain from any Leasehold Mortgagee an agreement to the effect that (i) such Leasehold Mortgagee shall notify Lessor of any default by Lessee under the Leasehold Mortgage in favor of such Leasehold Mortgagee at the time that Leasehold Mortgagee serves upon Lessee any notice of such default, (ii) Lessor shall have the right, but not the obligation, to cure any default under such Leasehold Mortgage on Lessee's behalf within the time permitted for Lessee to cure such default and for a period of thirty (30) days thereafter, and (iii) if Lessor recovers possession of the Hotel Complex Premises by reason of a default by Lessee under this Lease, such Leasehold Mortgagee shall not take any action to foreclose upon its Leasehold Mortgage so long as Lessor shall cure any default thereunder within the time permitted for Lessee to cure such default and shall thereafter timely satisfy the obligations of Lessee under such Leasehold Mortgage as they accrue.

## ARTICLE 20

## BANKRUPTCY; INVOLUNTARY TRANSFERS

20.1   Right of Termination. Subject to a Leasehold Mortgagee's rights pursuant to Article 19, should any of the following events occur, Lessor may terminate this Lease and any interest of Lessee herein, effective with the commencement of the event: (a) The making by Lessee of any assignment or arrangement for the benefit of creditors; (b) the filing by or against Lessee of a petition to have Lessee adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Lessee, the same is dismissed within sixty (60) days); (c) the appointment of a trustee or receiver to take possession of substantially all of Lessee's assets located at the Hotel Complex Premises or of Lessee's interest in this Lease; (d) the attachment, execution or other judicial seizure of at least fifty percent (50%) in value of Lessee's assets located at the Hotel Complex Premises or of Lessee's interest in this Lease; or (e) Lessee becoming a "debtor" as defined in 11 U.S.C. § 101 or any successor statute thereto (unless, in the case of a petition filed against Lessee, the same is dismissed within sixty (60) days); provided, however, in the event that any provision of this subsection is contrary to

any applicable law, such provision shall be of no force or effect and shall not affect the validity of the remaining provisions.

20.2    Request for Information. Within ten (10) days after Lessor's request therefor, Lessee shall provide Lessor and Lessor's mortgagee or proposed mortgagee, as Lessor shall specify, such financial, legal and business information concerning any of the events described in Section 20.1 as Lessor shall request.

## ARTICLE 21

### DEFAULTS BY LESSEE; REMEDIES

21.1    Events of Default. The occurrence of any of the following shall constitute an "Event of Default" by Lessee:

(a)    Any failure by Lessee to pay Minimum Rent, Additional Rent or any other Rent or other payment required to be made by Lessee hereunder, where such failure continues for ten (10) days after written notice thereof by Lessor to Lessee;

(b)    A failure by Lessee to observe and perform any provision of this Lease to be observed or performed by Lessee (other than those specified in subsections (a), (c), (d), (e) and (f) of this Section 21.1), where such failure continues for thirty (30) days after written notice thereof by Lessor to Lessee; provided, however, that if the nature of such default is such that the same cannot reasonably be cured within such thirty (30) day period, Lessee shall not be deemed to be in default if Lessee shall within such period commence such cure and at all times thereafter diligently prosecute the same to completion;

(c)    Entering into a Transfer contrary to the provisions of Article 15;

(d)    Violating the provisions of Article 16;

(e)    The occurrence of any of the events specified in Article 20;

(f)    The failure or refusal of Lessee to execute, acknowledge and deliver to Lessor any estoppel certificate referred to in Article 26 within the time period required by Article 26; or

(g)    The foreclosure of any mechanic's lien.

Notwithstanding anything to the contrary contained in this Lease regarding notice and cure periods, in the event of a failure by Lessee to pay the Rent or any other payment required to be made hereunder on the due date, said sum shall bear interest from and after such due date at the Interest Rate from the due date until paid. Any notice and cure periods provided for herein shall be in lieu of, and not in addition to, any applicable time periods prescribed by applicable state law as a condition precedent to the commencement of legal action against Lessee for possession of the Hotel Complex Premises.

21.2    Rights of Lessor. Subject to the provisions of Article 19, following an Event of Default by Lessee, then in addition to any other remedies available to Lessor at law or in equity, Lessor shall have the immediate option to terminate this Lease and all rights of Lessee hereunder by giving written notice to Lessee of such intention to terminate. In the event that Lessor so terminates this Lease, then Lessor may recover from Lessee:

(a)    The worth at the time of award of any unpaid Rent which had been earned at the time of such termination; plus

(b)    The worth at the time of award of the amount by which the unpaid Rent which would have been earned after termination until the time of award exceeds the amount of such Rent loss Lessee proves could have been reasonably avoided; plus

(c)    The worth at the time of award of the amount by which the unpaid Rent for the balance of the Lease Term after the time of award exceeds the amount of such Rent loss that Lessee proves could be reasonably avoided; plus

(d)    Any other amount necessary to compensate Lessor for all the detriment proximately caused by Lessee's failure to perform its obligations under this Lease or which in the ordinary course of events would be likely to result therefrom including, without limitation, all costs and expenses incurred by Lessor in (i) retaking possession of the Hotel Complex Premises, including reasonable attorney's fees, (ii) maintaining or

00905865.6                                        --128

preserving the Hotel Complex Premises, (iii) preparing the Hotel Complex Premises for a new Lessee, including repairs or alterations to the Hotel Complex Premises, and (iv) leasing commissions; plus

(e)     Such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by applicable state law.

As used in subsections (a) and (b) above, the **"worth at the time of award"** is computed by allowing interest at the Interest Rate. As used in subsection (c) above, the **"worth at the time of award"** is computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%).

21.3     Lessor's Right of Re-Entry. Following an Event of Default by Lessee, Lessor shall also have the right, with or without terminating this Lease, to re-enter the Hotel Complex Premises pursuant to legal proceedings and to eject all parties in possession therefrom following issuance of an order of a court of competent jurisdiction allowing such entry and ejection. Lessor may, at any time and from time to time following an Event of Default, enforce its rights under 1951.4 of the California Civil Code, to collect rent from Lessee as it becomes due and, in such case, this Lease shall continue in full force and effect.

21.4     No Automatic Termination. No reentry or taking possession of the Hotel Complex Premises by Lessor pursuant to Section 21.3 shall be construed as an election to terminate this Lease or Lessee's liability for the payment of Rent or other charges due or accruing hereunder, or as an acceptance of Lessee's surrender of the Hotel Complex Premises, unless a written notice of such intention is given to Lessee or unless the termination thereof is decreed by a court of competent jurisdiction.

21.5     Personal Property. Upon the occurrence of an Event of Default, all of Lessee's merchandise and Personal Property shall remain on the Hotel Complex Premises and, continuing during the length of said Event of Default, Lessor shall have the right to take exclusive possession of same and to use the same free of rent or charge until all defaults have been cured or, at its option, to require Lessee to remove the same forthwith.

21.6     No Waiver. The waiver by Lessor of any breach of any term, covenant or condition contained in this Lease shall not be deemed a waiver of such term, covenant or condition of any subsequent breach thereof, or of any other term, covenant or condition contained in this Lease. Lessor's subsequent acceptance of partial Rent or performance by Lessee shall not be deemed to be an accord and satisfaction or a waiver of any preceding breach by Lessee of any term, covenant or condition of this Lease or of any right of Lessor to a forfeiture of this Lease by reason of such breach, regardless of Lessor's knowledge of such preceding breach at the time of Lessor's acceptance. No term, covenant or condition of this Lease shall be deemed to have been waived by Lessor unless such waiver is in writing and signed by Lessor.

21.7     Right to Cure. If Lessee fails, refuses or neglects to perform any obligation under this Lease in the time and manner required herein, Lessor shall have the right, but not the obligation, to do the same at the expense and for the account of Lessee. The amount of money so expended or obligation so incurred by Lessor, together with interest thereon at the Interest Rate, shall be repaid to Lessor as Additional Rent within five (5) days of Lessee's receipt of written notice thereof. Lessor's performance of such obligations shall not waive any default by Lessee hereunder.

## ARTICLE 22

## DEFAULTS BY LESSOR; REMEDIES

22.1     Defaults. If Lessor or any of Lessor's agents shall neglect or fail to perform or observe any of the terms, covenants or conditions contained in this Lease on its part to be performed or observed within thirty (30) days after written notice of default or, when more than thirty (30) days shall be required because of the nature of the default, if Lessor shall fail to proceed diligently to cure such default after written notice thereof, then Lessor shall be liable to Lessee for any and all actual damages sustained by Lessee as a result of Lessor's breach; provided, however, it is expressly understood and agreed that (a) any money judgment resulting from any default or other claim arising under this Lease shall be satisfied only out of Lessor's interest in the Parcel (but in no event shall any such recovery exceed an amount equal to twenty percent (20%) of the fair market value of Lessor's interest in the Parcel at the time of the judgment), (b) no other real, personal or mixed property of Lessor, wherever located, shall be subject to levy on any such judgment obtained against Lessor, (c) if Lessor's interest in the Parcel is insufficient to satisfy such judgment, Lessee will not institute any further action, suit, claim or demand, in law or in equity,

against Lessor or any of Lessor's agents, officers, directors, employees, partners, members or affiliates (collectively **"Lessor Parties"**) for or on the account of such deficiency, (d) such neglect or failure shall not constitute consent by Lessor for Lessee to perform or observe such terms, covenants or conditions at Lessor's expense, and (e) Lessee shall not have the right to terminate this Lease as a result of any such default. Lessee hereby waives, to the extent permitted by law, any right to satisfy said money judgment against Lessor or any of the Lessor Parties, except from Lessor's interest in the Parcel, as limited above. In no event shall Lessor or any of the Lessor Parties be liable to the Lessee, in tort, contract or otherwise, except to the extent set forth in this Section 22.1 and in no event shall any of them be liable to Lessee for special, extraordinary, consequential or punitive damages.

22.2     Notice to Lenders. If the Hotel Complex Premises or any part thereof are at any time subject to any mortgage or deed of trust and this Lease or the Rent due from Lessee hereunder are assigned to such mortgagee, trustee or beneficiary (called **"Assignee"** for purposes of this Article 22 only) and Lessee is given written notice thereof, including the post office address of such Assignee, then Lessee shall give written notice to such Assignee, specifying the default in reasonable detail, and affording such Assignee a reasonable opportunity to cure such default for and on behalf of Lessor. If and when such Assignee has performed on behalf of Lessor, such default shall be deemed cured.

## ARTICLE 23

### CONDEMNATION

23.1     Definitions. Whenever used in this Section, the following words shall have the following respective meanings:

(a)     **"Condemnation"** or "condemnation proceedings" shall mean any action or proceeding brought by competent authority for the purpose of any taking of the Hotel Complex Premises or any part thereof as a result of the exercise of the power of eminent domain, including a voluntary sale to such authority either under threat of or in lieu of condemnation or while such action or proceeding is pending.

(b)     **"Taking"** shall mean the event of vesting of title to the Hotel Complex Premises or any part thereof in such competent authority pursuant to condemnation.

(c)     **"Vesting Date"** shall mean the date of the Taking.

23.2     Total Taking. In case of a Taking of all of the Hotel Complex Premises, this Lease shall terminate as of the Vesting Date and the Rent under this Lease shall abate as of, and be apportioned to the date of termination.

23.3     Partial Taking. In case of a Taking of less than all of the Hotel Complex Premises (other than for a temporary use), Lessor and Lessee shall mutually determine, within sixty (60) days after the Vesting Date, whether the remaining portion of the Hotel Complex Premises after **"Restoration"** (as hereinafter defined) can economically and feasibly be used by Lessee.

If it is determined that the remaining portion of the Hotel Complex Premises cannot be economically and feasibly used by Lessee, either Lessor or Lessee may, at its option, terminate this Lease by delivery of written notice to the other within thirty (30) days after such determination. Upon any such termination, the Rent shall be apportioned to the date of termination, which date, for purposes of apportioning rental, shall be determined by mutual agreement of the parties.

If neither party elects to terminate this Lease within the period aforementioned, this Lease shall continue in full force and effect as to the remaining portion of the Hotel Complex Premises.

23.4     Allocation of Award: Total Taking. If this Lease shall terminate pursuant to the provisions of Section 23.2 or 23.3, the total award in the condemnation proceedings shall be apportioned and paid, to the extent available, in the following order of priority:

(a)     Lessor, Lessee and any Leasehold Mortgagee shall be entitled to their expenses and charges, including, without limitation, reasonable attorneys' fees incurred in connection with the Taking.

(b)     Any Leasehold Mortgagee shall be entitled to satisfy its Leasehold Mortgage (but in no event greater than the value of the Improvements).

(c)     Lessor shall next be entitled to that portion of the award which represents the sum of: (i) the value of the Parcel, encumbered by this Lease, together with all surface or subsurface Utility installations,

(ii) the value of Lessor's reversionary interest in the Improvements and (iii) the "bonus value" of the leasehold estate created by this Lease.

(d)    The balance of the award, including any portion of the award attributable to Lessee's Personal Property, shall be paid to Lessee.

23.5    Allocation of Award; Partial Taking. If this Lease shall not terminate as provided in Section 23.3, Lessee, at its expense, shall commence and proceed with reasonable diligence to repair or reconstruct the remaining Improvements to a complete architectural unit or units. All such repair, reconstruction and work shall hereinafter in this Section be referred to as "**Restoration.**"

The total award in the condemnation proceedings, in the event of such partial taking, shall be apportioned and paid, to the extent available, in the following order of priority:

(a)    Lessee shall first be entitled to an amount equal to the cost of Restoration.

(b)    Lessor, and to the extent available Lessee, shall next be entitled to their expenses and charges, including, without limitation, reasonable attorneys' fees incurred in connection with the Taking.

(c)    Lessor shall be entitled to a portion of the award based on the then-value of the portion of the Parcel subject to the partial taking (which shall be deemed to be zero if no Renal reduction occurs pursuant to Section 23.3 above).

(d)    The balance of the award shall be paid to Lessor, excluding any portion of the award attributable to Lessee's Personal Property, which shall be paid to Lessee.

23.6    Temporary Taking. In the event of a Taking of all or any portion of the Hotel Complex Premises for temporary use, the foregoing provisions of this Article shall be inapplicable thereto, this Lease shall continue in full force and effect without reduction or abatement of Rent and Lessee, alone, shall be entitled to make claim for, recover and retain any award recoverable in respect of such temporary use whether in the form of Rent or otherwise. If the award is made in a lump sum covering a period beyond the expiration of the Lease Term, Lessor also shall be entitled to make claim for and participate in the award proportionately.

If any portion of the award for such temporary use is intended to cover the cost of Restoration of the Improvements located on the Hotel Complex Premises to the condition they were in prior to such temporary use or to make repairs occasioned by or resulting from such temporary use, such portion shall be used by Lessee to cover the cost of such Restoration and repair, and any balance remaining shall belong to and be paid to Lessee.

23.7    Settlement. Lessor shall not make any settlement with the condemning authority or convey any portion of the Hotel Complex Premises to such authority in lieu of condemnation or consent to any Taking without the consent of Lessee.

23.8    Waiver. Except as otherwise expressly set forth herein, Lessee waives any rights now or hereafter conferred upon it by statute otherwise to quit or surrender this Lease or the Hotel Complex Premises or any suspension, diminution, abatement or reduction of Rent on account of any Taking.

## ARTICLE 24

### ATTORNEY FEES

If either Lessor or Lessee institutes any action or proceeding against the other relating to the provisions of this Lease or any default hereunder, the non-prevailing party in such action or proceeding shall reimburse the prevailing party for the reasonable expenses of attorney fees and all costs and disbursements incurred therein by the prevailing party, including, without limitation, any such fees, costs or disbursements incurred on any appeal from such action or proceeding. Subject to the provisions of local law, the prevailing party shall recover all such fees, costs or disbursements as costs taxable by the court or arbiter in the action or proceeding itself without the necessity for a cross-action by the prevailing party.

## ARTICLE 25

### SALE OR MORTGAGE BY LESSOR

Lessor may, at any time, without the consent of Lessee, contract to and/or perform any of the following transactions with respect to an interest in Lessor, this Lease or the Hotel Complex Premises: sale, purchase, exchange, transfer, assignment, lease or conveyance (collectively referred to as a "**Sale**"). From and after a Sale, Lessor shall be released from all liability toward Lessee and Lessee's successors and assigns arising from this Lease except for any liability that accrued prior to such Sale.

## ARTICLE 26

### MORTGAGE; SUBORDINATION; ATTORNMENT

As used in this Lease, all references to a "**mortgage**" shall be deemed to include a deed of trust and a lease in an assignment and leaseback transaction, and all references to the "**holder**" of a mortgage or to a "**mortgagee**" shall be deemed to include the beneficiary and/or trustee under a deed of trust and the lessor in an assignment and leaseback transaction. Concurrently with the execution and delivery of this Lease, Lessor, Lessee, the Leasehold Mortgagee and Beach Orangethorpe, LLC, Beach Orangethorpe II, LLC, Beach Orangethorpe Ventures, LLC and Beach Orangethorpe Source, LLC (the "**Lessor's Mortgagees**") have entered into that certain Ground Lessor's Consent, Estoppel Certificate and Fee Mortgagee Agreement dated as of the date hereof. Upon written request of Lessor, or an existing or prospective mortgagee of Lessor, Lessee will subordinate, pursuant to such document(s) as the mortgagee may require, its rights hereunder to any mortgage, CC&Rs or amendments thereto.

In the event any proceedings are brought for foreclosure, or in the event of the exercise of the power of sale under any mortgage or deed of trust made by Lessor covering the Hotel Complex Premises, Lessee shall attorn to the purchaser upon any such foreclosure, sale or lease termination and recognize such purchaser as Lessor under this Lease, provided that the purchaser shall acquire and accept the Hotel Complex Premises subject to this Lease. Lessee shall execute and deliver to Lessor such document(s) required by a mortgagee to confirm Lessee's agreement to so attorn within twenty (20) days following written request therefor.

Lessee agrees at any time and from time to time and within twenty (20) days after written request from Lessor, to execute, acknowledge and deliver to Lessor an estoppel certificate in such form as Lessor may reasonably request, (a) certifying that this Lease represents the entire agreement between Lessor and Lessee, and is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect) and the dates to which the Rent and other charges are paid in advance, if any; (b) certifying the commencement and termination dates of the Lease Term; (c) certifying that there has been no assignment or other transfer by Lessee of this Lease, or any interest therein; (d) acknowledging that there are not, to Lessee's knowledge, any uncured defaults on the part of Lessor hereunder and that Lessee has no right of offset, counterclaim or deduction against Rent, or specifying such defaults if any are claimed together with the amount of any offset, counterclaim or deduction alleged by Lessee; and (e) certifying or acknowledging such other matters as Lessor may reasonably request. Lessee's failure to deliver such estoppel certificate within such time shall be conclusive and binding upon Lessee that this Lease is in full force and effect, without modification except as may be represented by Lessor, that there are no uncured defaults in Lessor's performance and that Lessee has no right of offset, counterclaim or deduction against Rent and that no more than one month's Rent has been paid in advance, it being understood, however, that such certification based on failure to deliver shall not relieve Lessee from its obligations under this paragraph. It is intended that any estoppel certificate or statement that becomes conclusive and binding on Lessee pursuant to this Section may be relied upon by any prospective purchaser or mortgagee of Lessor's interest in the Hotel Complex Premises or as Lessor under this Lease. If any such certification by Lessee shall allege nonperformance by Lessor, the nature and extent of such nonperformance shall, insofar as actually known by Lessee, be summarized therein.

## ARTICLE 27

### NOTICES

All notices, approvals, requests, demands and other communications submitted or required to be given under this Lease shall be in writing and shall be personally delivered or sent by a recognized overnight courier service or by certified mail and shall deemed duly served or given when actually delivered or refused. Such notices shall be sent with all charges and postage paid by the sender and shall be addressed to the parties as set forth below:

| | |
|---|---|
| To Lessor: | The Source at Beach, LLC<br>3100 E. Imperial Highway<br>Lynwood, CA 90262<br>Attention: Min Chae and Donald Chae |
| with a copy to: | Lim, Ruger & Kim, LLP<br>1055 West Seventh Street, Suite 2800<br>Los Angeles, CA 90017<br>Attention: Real Estate Department |
| To Lessee: | The Source Hotel, LLC<br>3100 E. Imperial Highway<br>Lynwood, CA 90262<br>Attention: Min Chae and Donald Chae |
| with a copy to: | Lim, Ruger & Kim, LLP<br>1055 West Seventh Street, Suite 2800<br>Los Angeles, CA 90017<br>Attention: Real Estate Department |

Either party may change such address by providing written notice to the other. The foregoing method of service shall be exclusive and Lessee hereby waives, to the fullest extent permitted under law, the right to any other method of service required by any statute or law now or hereafter in force. Whenever a party is served with a notice both personally and by mail, such party's time to perform any covenant, cure any default, or make any response shall not be extended by operation of law because of such service by mail beyond the time period prescribed in such notice.

## ARTICLE 28

### MISCELLANEOUS

28.1    Relationship of the Parties. Nothing contained in this Lease shall be deemed or construed as creating a partnership, joint venture, principal-agent, or employer-employee relationship between Lessor and any other person or entity (including, without limitation, Lessee) or as causing Lessor to be responsible in any way for the debts or obligations of such other person or entity.

28.2    Severability. It is agreed that, if any provision of this Lease shall be determined to be void by any court of competent jurisdiction, then such determination shall not affect any other provision of this Lease and all such other provisions shall remain in full force and effect. It is the intention of the parties hereto that, if any provision of this Lease is capable of two (2) constructions, one of which would render the provision void and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid.

28.3    Warranty of Authority. If Lessee is an entity, the person or persons executing this Lease on behalf of Lessee represent, covenant and warrant to Lessor as of the date Lessee executes and delivers this Lease that: (a) Lessee is duly constituted and in good standing and qualified to do business in the state where the Hotel Complex Premises are located, (b) Lessee has paid all applicable taxes, (c) Lessee will file when due all forms,

reports, fees and other documents necessary to comply with applicable laws, and (d) the signatories signing on behalf of Lessee have the requisite authority to bind Lessee.

28.4    Entire Agreement. It is understood that there are no oral or written agreements or representations between the parties hereto affecting this Lease, and that this Lease supersedes and cancels any and all previous negotiations, arrangements, representations, brochures, displays, projections, estimates, agreements and understandings, if any, made by or between Lessor and Lessee with respect to the subject matter thereof, and none shall be used to interpret, construe, supplement or contradict this Lease. This Lease, and all amendments thereto, is and shall be considered to be the only agreement between the parties hereto and their representatives and agents. All negotiations and oral agreements acceptable to both parties have been merged into and are included in this Lease. There are no other representations, covenants or warranties between the parties and all reliance with respect to representations is solely upon the express representations, covenants and warranties contained in this Lease. Although the printed provisions of this Lease were drawn by Lessor, the parties hereto agree that this circumstance alone shall not create any presumption, canon of construction or implication favoring the position of either Lessor or Lessee. The parties agree that any deletion of language from this Lease prior to its mutual execution by Lessor and Lessee shall not be construed to have any particular meaning or to raise any presumption, canon of construction or implication, including, without limitation, any implication that the parties intended thereby to state the converse, obverse or opposite of the deleted language.

28.5    Governing Law. The laws of the State of California shall govern the validity, performance and enforcement of this Lease.

28.6    Waiver or Consent Limitation. A waiver of any given breach or default shall not be a waiver of any other breach or default. Lessor's consent to or approval of any act by Lessee requiring Lessor's consent or approval shall not be deemed to waive or render unnecessary Lessor's consent to or approval of any subsequent similar act by Lessee.

28.7    Force Majeure. "Excusable delay" shall mean a temporary prevention of a party's performance by reason of forces without the fault and beyond the reasonable control of such party (excluding financial inability) such as the following: strike, lockout or other labor disturbance, civil disturbance, act of the public enemy, war, riot, sabotage, blockade, embargo, inability to secure customary materials, supplies or labor through ordinary sources, regulation or order of any government or regulatory body, severe weather, earthquake, fire, storm, hurricane, tornado, flood, washout or explosion. Any prevention of performance due to an excusable delay shall excuse the performance of the party affected for a period of time equal to any such prevention, provided that the party claiming the excusable delay notifies the other party of the excusable delay within a reasonable time (not to exceed ten (10) business days) after the commencement of the excusable delay; and provided, further, that if notice is not given within such reasonable time (not to exceed ten (10) business days), the extension of time shall not begin until the date on which written notice of the excusable delay is given by the party claiming the excusable delay to the other party.

28.8    Waiver of Rights of Redemption. Lessee hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event Lessee is evicted or dispossessed for any cause or in the event Lessor obtains possession of the Hotel Complex Premises by reason of the violation by Lessee of any of the terms, covenants and conditions of this Lease or otherwise. The rights given to Lessor herein are in addition to any rights that may be given to Lessor by any statute or otherwise.

28.9    Amendments. To be effective and binding on Lessor and Lessee, any amendment, modification, addition or deletion to the provisions of this Lease must be made in writing and executed by both parties in the same manner as this Lease.

28.10    Right to Enter. Lessor and/or its authorized representatives shall have the right to enter the Hotel Complex Premises at all reasonable times for the purpose of showing the Hotel Complex Premises to prospective purchasers or lenders.

28.11    Time of Essence. Time is of the essence in the performance of all covenants and conditions in this Lease for which time is a factor.

28.12    Rate of Interest. The rate of interest to be charged under the provisions of this Lease (the "Interest Rate"), unless expressly stated otherwise, shall be four percent (4%) above the annualized rate of interest publicly announced from time to time by Bank of America National Trust and Savings Association (or its

successor), as its "prime rate" (or if such bank no longer announces or publishes a prime rate, then whatever rate is then currently being published or announced by such bank in lieu of publishing or announcing a prime rate). Such interest shall be computed on the basis of a 360-day year and actual days elapsed and shall compound monthly. If any law limits the maximum rate of interest which may be charged on a particular amount payable with interest at the Interest Rate hereunder, then the Interest Rate shall, for such purposes, be limited to the maximum lawful rate of interest which may be charged on such amount.

28.13    Nonmerger of Fee and Leasehold Estates.    If both Lessor's and Lessee's estates in the Hotel Complex Premises, or any portions thereof, become vested in the same owner, this Lease shall not be extinguished by application of the doctrine of merger except at the express election of the owner and with the express written consent of the beneficiary or beneficiaries under all trust deeds affecting the Hotel Complex Premises and Lessee's leasehold estate.

28.14    Waiver of Trial by Jury.    To the extent permitted by applicable Laws, Lessor and Lessee hereby waive any and all rights to a trial by jury in any action, proceeding or counterclaim (including any claim for injury or damage and any emergency and other statutory remedy in respect thereof) brought by either against the other on any matter arising out of or in any way connected with this Lease, the relationship of Lessor and Lessee, and/or Lessee's use or occupancy of the Hotel Complex Premises.

28.15    Captions.    The captions of the Articles and Sections of this Lease are for convenience only, are not operative parts of this Lease and do not in any way limit or amplify the terms and provisions of this Lease.

28.16    Multiple Parties.    If two (2) or more persons or corporations execute this Lease as Lessee, then and in such event the word "Lessee" as used in this Lease shall refer to all such persons or corporations, and the liability of such persons or corporations for compliance with and performance of all of the terms, covenants and conditions of this Lease shall be joint and several. The masculine pronoun used herein shall include the feminine or the neuter, as the case may be, and the use of the singular shall include the plural.

28.17    Successors and Assigns.    The parties hereto agree that all the provisions of this Lease are to be construed as covenants and agreements and, except as otherwise specified, that said provisions shall bind and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

28.18    Consent of Lessor and Lessee.    Wherever in this Lease consent or approval is required, such consent or approval shall be given in writing and shall not be unreasonably withheld, unless otherwise provided (including without limitation where a different standard, such as "good faith" or "sole and absolute discretion," is provided). Lessor shall not be deemed to have withheld its consent unreasonably where Lessor's right to give its consent is conditioned on Lessor obtaining the consent of any person, agency or authority with the right to withhold its consent pursuant to any agreement, Law or tax, as described in Article 10 and such person, agency or authority reasonably or unreasonably withholds its consent.

If Lessor or Lessee fails to give any such consent, the other party hereto shall be entitled to specific performance and shall have such other remedies as are reserved to it under this Lease, but in no event shall Lessor or Lessee be responsible for monetary damages or be entitled to terminate this Lease as a result of such failure to give consent (including any right to damages or termination under applicable Laws).

28.19    Memorandum of Lease.    Neither Lessee nor Lessor shall record this Lease. However, Lessee may record a memorandum of this Lease in form and substance acceptable to Lessor at any time during the Lease Term, if required by any Leasehold Mortgagee. In the event a Lessee's Leasehold Mortgagee requires the recordation of a memorandum of this Lease, (i) all costs arising out of the recordation of the memorandum shall be borne solely by Lessee and (ii) Lessee shall deliver to Lessor a quitclaim deed for the Hotel Complex Premises upon the expiration or earlier termination of this Lease.

28.20    Brokers.    Each party hereto shall indemnify and hold harmless the other party hereto from and against any all Claims that may be asserted against such other party by any real estate broker, finder or intermediary arising from any acts of the indemnifying party in connection with this Lease.

[*signature page immediately follows*]

IN WITNESS WHEREOF, the parties hereto have executed this Lease upon the day and year first above written.

"LESSOR"

**THE SOURCE AT BEACH, LLC,**
a California limited liability company

By:   M + D Properties, a California corporation
Its:   Manager

By:   _____

Donald Chae, President

"LESSEE"

**THE SOURCE HOTEL, LLC,**
a California limited liability company

By:   M + D Properties, a California corporation
Its:   Manager

By:   _____

Donald Chae, President

**EXHIBIT "A-1"**

**LEGAL DESCRIPTION OF PARCEL**

# EXHIBIT_____

SHT 1 OF 7 SHTS

# LEGAL DESCRIPTION

# HOTEL AIRSPACE PARCEL

## LEGAL DESCRIPTION OF AIRSPACE PARCEL 4 OF PRELIMINARY PARCEL MAP NO. 2014—173, IN THE CITY OF BUENA PARK

THAT PORTION OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 TO 52 INCLUSIVE, OF MISCELLANEOUS MAPS, AND THOSE PORTIONS OF LOTS 5 TO 9 INCLUSIVE OF TRACT NO. 1756, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF MISCELLANEOUS MAPS, ALL IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

### PARCEL 4A (LEVEL 1 — GROUND FLOOR LOBBY & ENTRANCE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N0°27'49"E 215.36 FEET;   THENCE LEAVING SAID CENTERLINE N89°32'11"W 45.77 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE S00°00'02"W 86.05 FEET, THENCE N89°59'59"W 22.68 FEET, THENCE S00°01'05"W 13.56 FEET, THENCE S89°59'59"E 22.57 FEET, THENCE S00°00'02"W 8.22 FEET, THENCE N89°59'58"W 0.77 FEET, THENCE S00°00'02"W 34.16, THENCE N89°59'58"W 110.62 FEET, THENCE N00°00'02"E 34.17 FEET, THENCE N89°59'58"W 30.58 FEET, THENCE N00°00'02"E 107.52 FEET, THENCE N89°59'58"W 0.83 FEET, THENCE N00°00'02"E 8.95 FEET, THENCE S89°59'58"E 24.08 FEET, THENCE N46°29'04"E 12.47 FEET, THENCE N00°00'02"E 16.97 FEET, THENCE S89°59'58"E 18.12 FEET, THENCE N00°00'02"E 5.22 FEET, THENCE N89°57'39"E 30.73 FEET, THENCE N00°00'02"E 32.17 FEET, THENCE N89°59'58"W 11.92 FEET, THENCE N00°00'02"E 1.00 FEET, THENCE S89°59'58"E 0.50 FEET, THENCE N00°00'02"E 14.21 FEET, THENCE S89°59'58"E 39.78 FEET, THENCE S00°00'02"W 86.82 FEET, THENCE S89°59'58"E 32.58 FEET, TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 77.76 FEET.

CONTAINING 23,584 SQUARE FEET, MORE OR LESS.

| | |
|---|---|
| DATE: SEPT 29, 2015 | |
| THOM. GDE: 767—H2 | |
| FILE:2898HTLBLDG.DWG | |
| PROJECT NO: 2898 | |

**HENNON**
Surveying & Mapping, Inc.

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA   91207
(818)243-0640
FAX: (818)243-0650

SHT 2 OF 7 SHTS

## PARCEL 4B (LEVEL 1 — GROUND FLOOR STAIRS ON ORANGETHORPE AVE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF ORANGETHORPE AVENUE AS SHOWN ON SAID MAP S89°27'51"E 199.02 FEET;   THENCE LEAVING SAID CENTERLINE N0°32'09"E 60.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL;   THENCE N0°00'02"E 36.96 FEET; THENCE S89°59'58"E 14.74 FEET;   THENCE S0°00'02"W TO A POINT ON SAID PARALLEL LINE;   THENCE ALONG SAID PARALLEL LINE N89°27'51"W 14.74 TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 77.76 FEET.

CONTAINING 546 SQUARE FEET, MORE OR LESS.

## PARCEL 4C (LEVEL 1 — GROUND FLOOR STAIRS ON BRENNER AVE.)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N0°27'49"E 339.38 FEET;   THENCE LEAVING SAID CENTERLINE N89°32'11"W 46.71 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL;   THENCE WEST 23.40 FEET;   THENCE SOUTH 7.24 FEET; THENCE WEST 5.88 FEET;   THENCE SOUTH 6.55 FEET;   THENCE WEST 29.28 FEET;   THENCE NORTH 13.79 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 77.76 FEET.

CONTAINING 361 SQUARE FEET, MORE OR LESS.

DATE: SEPT 29, 2015
THOM. GDE: 767–H2
FILE: 2898HTLBLDG.DWG
PROJECT NO: 2898

HENNON
Surveying & Mapping, Inc.

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA  91207
(818)243–0640
FAX: (818)243–0650

SHT 3 OF 7 SHTS

## PARCEL 4D (LEVEL 2 — SECOND FLOOR HOTEL PARCEL)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N0°27'49"E 223.82 FEET;   THENCE LEAVING SAID CENTERLINE N89°32'11"W 36.00 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE S00°27'49"W 94.43 FEET; THENCE N89°59'59"W 31.75 FEET;   THENCE S00°01'05"W 13.56 FEET; THENCE S89°59'59"E 31.65 FEET; THENCE S00°27'49"W 36.79 FEET; THENCE S45°29'59"W 26.85 FEET; THENCE N89°27'51"W 110.52 FEET; THENCE N00°00'02"E 36.98 FEET; THENCE N89°59'58"W 19.37 FEET; THENCE S00°00'02"W 25.13 FEET; THENCE N89°59'58"W 12.81 FEET; THENCE N00°00'02"E 90.73 FEET; THENCE S89°59'58"E 62.50 FEET; THENCE N00°00'00"E 30.00 FEET; THENCE S89°59'58"E 15.42 FEET; THENCE N00°00'02"E 29.98 FEET; THENCE S89°59'58"E 85.09 FEET; TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET.

CONTAINING 20,780 SQUARE FEET, MORE OR LESS.


## PARCEL 4E (LEVEL 2 — SECOND FLOOR STAIRS ON BRENNER AVE.)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N0°27'49"E 339.38 FEET;   THENCE LEAVING SAID CENTERLINE N89°32'11"W 46.71 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL;   THENCE WEST 23.40 FEET;   THENCE SOUTH 7.24 FEET; THENCE WEST 5.88 FEET;   THENCE SOUTH 6.55 FEET;   THENCE WEST 29.28 FEET;   THENCE NORTH 13.79 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET.

CONTAINING 361 SQUARE FEET, MORE OR LESS.

DATE: SEPT 29, 2015
THOM. GDE: 767–H2
FILE:2898HTLBLDG.DWG
PROJECT NO: 2898

HENNON
Surveying & Mapping, Inc.

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA   91207
(818)243–0640
FAX: (818)243–0650

## PARCEL 4F  (LEVEL 3 — THIRD FLOOR STAIRS ON BRENNER AVE.)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N0°27'49"E 339.38 FEET;   THENCE LEAVING SAID CENTERLINE N89°32'11"W 46.71 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL;   THENCE WEST 23.40 FEET;   THENCE SOUTH 7.24 FEET; THENCE WEST 5.88 FEET;   THENCE SOUTH 6.55 FEET;   THENCE WEST 29.28 FEET;   THENCE NORTH 13.79 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 150.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET.

CONTAINING 361 SQUARE FEET, MORE OR LESS.

## PARCEL 4G  (LEVEL 3 — THIRD FLOOR STAIRS ON BRENNER AVE.)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N0°27'49"E 186.84 FEET; THENCE LEAVING SAID CENTERLINE N89°32'11"W 45.54 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE WEST 22.05 FEET; THENCE SOUTH 9.15 FEET; THENCE EAST 5.84 FEET; THENCE SOUTH 10.38 FEET; THENCE WEST 1.58 FEET; THENCE SOUTH 4.17 FEET; THENCE EAST 9.81 FEET; THENCE SOUTH 10.37 FEET; THENCE EAST 12.08 FEET; THENCE NORTH 9.62 FEET; THENCE EAST 1.44 FEET; THENCE NORTH 24.44 FEET TO THE SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 150.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET.

CONTAINING 738 SQUARE FEET, MORE OR LESS.

## PARCEL 4H (LEVEL 3 — THIRD FLOOR STAIRS ON ORANGETHORPE AVE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF ORANGETHORPE AVENUE AS SHOWN ON   SAID MAP S89°27'51"E 199.02 FEET; THENCE LEAVING SAID CENTERLINE N0°32'09"E 60.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE N0°00'02"E 36.96 FEET; THENCE S89°59'58"E 14.74 FEET; THENCE S0°00'02"W TO A POINT ON SAID PARALLEL LINE; THENCE ALONG SAID PARALLEL LINE N89°27'51"W 14.74 TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 150.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET.

CONTAINING 546 SQUARE FEET, MORE OR LESS.

SHT 5 OF 7 SHTS

## PARCEL 4I (LEVEL 4 – FOURTH FLOOR HOTEL PARCEL INCLUDING DECK)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE
AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO.
1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN
ON SAID MAP N0°27'49"E 353.11 FEET;  THENCE LEAVING SAID CENTERLINE
N89°32'11"W 36.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND
36.00 FEET WESTERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID
CENTERLINE OF BRENNER AVENUE, AND THE TRUE POINT OF BEGINNING OF
THE HEREIN DESCRIBED PARCEL;  THENCE WEST 72.90 FEET;
THENCE SOUTH 13.76 FEET;  THENCE WEST 18.27 FEET;  THENCE
SOUTH 114.50 FEET;  THENCE WEST 92.89 FEET;  THENCE SOUTH 130.52
FEET;  THENCE EAST 12.99 FEET;  THENCE SOUTH 32.75 FEET TO A
POINT ON A LINE PARALLEL WITH AND 60.00 FEET NORTHERLY OF,
MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE
AVENUE;  THENCE ALONG SAID PARALLEL LINE S89°27'51"E 143.94
FEET;  THENCE N45°29'59"E 26.85 FEET TO A POING ON SAID
PARALLEL LINE WITH THE CENTERLINE OF BRENNER AVENUE;  THENCE
ALONG LAST SAID PARALLEL LINE N0°27'49"E 274.06 FEET TO SAID
TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE
HAVING AN ELEVATION OF 161.18 FEET AND ABOVE A HORIZONTAL PLANE
HAVING AN ELEVATION OF 150.76 FEET.

CONTAINING 40,480 SQUARE FEET, MORE OR LESS.

## PARCEL 4J (LEVEL 5 – FIFTH FLOOR HOTEL PARCEL)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE
AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756;
THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID
MAP N0°27'49"E 353.11 FEET;  THENCE LEAVING SAID CENTERLINE
N89°32'11"W 36.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND
36.00 FEET WESTERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID
CENTERLINE OF BRENNER AVENUE, AND THE TRUE POINT OF BEGINNING
OF THE HEREIN DESCRIBED PARCEL;  THENCE WEST 72.90 FEET;
THENCE SOUTH 165.38 FEET;  THENCE WEST 6.81 FEET;  THENCE
SOUTH 20.33 FEET;  THENCE EAST 6.81 FEET;  THENCE SOUTH 28.65
FEET;  THENCE WEST 105.43 FEET;  THENCE SOUTH 44.42 FEET;
THENCE EAST 12.99 FEET; THENCE SOUTH 32.75 FEET TO A
POINT ON A LINE PARALLEL WITH AND 60.00 FEET NORTHERLY OF,
MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE
AVENUE;  THENCE ALONG SAID PARALLEL LINE S89°27'51"E 143.94
FEET;  THENCE N45°29'59"E 26.85 FEET TO A POING ON SAID
PARALLEL LINE WITH THE CENTERLINE OF BRENNER AVENUE;  THENCE
ALONG LAST SAID PARALLEL LINE N0°27'49"E 274.06 FEET TO SAID
TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE
HAVING AN ELEVATION OF 171.60 FEET AND ABOVE A HORIZONTAL PLANE
HAVING AN ELEVATION OF 161.18 FEET.

CONTAINING 28,699 SQUARE FEET, MORE OR LESS.

## PARCEL 4K (LEVEL 6 – SIXTH FLOOR HOTEL PARCEL)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N0°27'49"E 353.11 FEET;   THENCE LEAVING SAID CENTERLINE N89°32'11"W 36.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 36.00 FEET WESTERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF BRENNER AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL;   THENCE WEST 72.90 FEET; THENCE SOUTH 165.38 FEET;   THENCE WEST 6.81 FEET;   THENCE SOUTH 20.33 FEET;   THENCE EAST 6.81 FEET;   THENCE SOUTH 28.65 FEET;   THENCE WEST 105.43 FEET;   THENCE SOUTH 44.42 FEET; THENCE EAST 11.33 FEET; THENCE SOUTH 32.75 FEET TO A POINT ON A LINE PARALLEL WITH AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE AVENUE;   THENCE ALONG SAID PARALLEL LINE S89°27'51"E 145.60 FEET;   THENCE N45°29'59"E 26.85 FEET TO A POING ON SAID PARALLEL LINE WITH THE CENTERLINE OF BRENNER AVENUE;   THENCE ALONG LAST SAID PARALLEL LINE N0°27'49"E 274.06 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 182.02 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 171.60 FEET.

CONTAINING 28,753 SQUARE FEET, MORE OR LESS.

## PARCEL 4L (LEVEL 7 – SEVENTH FLOOR & ROOF HOTEL PARCEL)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N0°27'49"E 353.11 FEET;   THENCE LEAVING SAID CENTERLINE N89°32'11"W 36.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 36.00 FEET WESTERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF BRENNER AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL;   THENCE WEST 72.90 FEET; THENCE SOUTH 165.38 FEET;   THENCE WEST 6.81 FEET;   THENCE SOUTH 20.33 FEET;   THENCE EAST 6.81 FEET;   THENCE SOUTH 28.65 FEET;   THENCE WEST 105.43 FEET;   THENCE SOUTH 44.42 FEET; THENCE EAST 12.99 FEET; THENCE SOUTH 32.75 FEET TO A POINT ON A LINE PARALLEL WITH AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE AVENUE;   THENCE ALONG SAID PARALLEL LINE S89°27'51"E 143.94 FEET;   THENCE N45°29'59"E 26.85 FEET TO A POING ON SAID PARALLEL LINE WITH THE CENTERLINE OF BRENNER AVENUE;   THENCE ALONG LAST SAID PARALLEL LINE N0°27'49"E 274.06 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 210.00 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 182.02 FEET.

CONTAINING 28,699 SQUARE FEET, MORE OR LESS.

SHT 7 OF 7 SHTS

ELEVATIONS STATED HEREON ARE BASED ON THE NORTH AMERICAN
VERTICAL DATUM OF 1988 (NAVD88) PER THE YEAR 2005 ADJUSTMENT
BY THE ORANGE COUNTY SURVEYOR, USING THE FOLLOWING BENCHMARK:

OCS BM 404−31−05   ELEV.=80.151 FEET (NAVD88, YEAR 2005 LEVELED)
STATION IS AN OCS ALUMINUM DISK STAMPED 404−31−05 SET IN THE SE'LY
CORNER OF A 15 FT. X 4.5 FT. CONCRETE CATCH BASIN, LOCATED IN NE'LY
PORTION OF INTERSECTION OF STANTON AVE. & ARTESIA BLVD., 28 FT. N'LY
OF THE CENTERLINE OF ARTESIA BLVD. & 81 FT. E'LY OF THE CENTERLINE
OF STANTON AVENUE.   MONUMENT IS LEVEL WITH THE SIDEWALK

SEE ATTACHED "AIRSPACE PARCEL 4 EXHIBIT MAP"
FOR INFORMATIONAL PUPOSES MADE A PART HEREOF BY REFERENCE HEREON.

THIS LEGAL DESCRIPTION IS INTENDED TO DESCRIBE AIRSPACE PARCEL 4
OF PRELIMINARY PARCEL MAP NO. 2014−173, IN THE CITY OF BUENA
PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, SAID PARCEL MAP
NOT YET RECORDED.

THIS LEGAL DESCRIPTION WAS PREPARED BY ME OR UNDER MY DIRECTION
IN CONFORMANCE WITH THE LAND SURVEYORS' ACT OF THE STATE OF
CALIFORNIA.   THIS LEGAL DESCRIPTION IS NOT TO BE USED FOR THE FEE
TITLE CONVEYANCE OF REAL PROPERTY IN VIOLATION OF THE SUBDIVISION
MAP ACT OF THE STATE OF CALIFORNIA.

ROBERT D. HENNON, PLS 5573
LICENSE EXPIRES 9/30/2017

| DATE: SEPT 29, 2015 | **HENNON** | 601 E. GLENOAKS BLVD., SUITE 208 |
|---|---|---|
| THOM. GDE: 767−H2 | | GLENDALE, CALIFORNIA  91207 |
| FILE:2898HTLBLDG.DWG | Surveying & Mapping, Inc. | (818)243−0640 |
| PROJECT NO: 2898 | | FAX: (818)243−0650 |



# AIRSPACE PARCEL 4 EXHIBIT MAP
SHT. 1 OF 9 SHTS

## PARCEL 4
## LEVEL 1 — GROUND FLOOR

PARCEL LEVEL 1 – GROUND FLOOR
U.E.=95.76 FT.
L.E.=77.76 FT.

TRACT 1756
MM 60/20–21

PARCEL 4C TRUE
PT. OF BEGINNING
LEVEL1 – GROUND
FLOOR BUILDING LINE

SCALE: 1"=50'

LEGEND:
L.E.=LOWER ELEVATION LIMIT
U.E.=UPPER ELEVATION LIMIT

PROJECT BENCHMARK:
ELEVATIONS SHOWN HEREON ARE BASED ON THE NORTH AMERICAN
VERTICAL DATUM OF 1988 (NAVD88) PER THE YEAR 2005 ADJUSTMENT
BY THE ORANGE COUNTY SURVEYOR, USING THE FOLLOWING BENCHMARK:

OCS BM 404-31-05  ELEV=80.151 FEET (NAVD88, YEAR 2005
LEVELED) STATION IS AN OCS ALUMINUM DISK STAMPED 404-31-05 SET
IN THE SE'LY CORNER OF A 15 FT. X 4.5 FT. CONCRETE CATCH BASIN,
LOCATED IN NE'LY CORNER OF THE INTERSECTION OF STANTON AVE. &
ARTESIA BLVD., 28 FT. N'LY OF THE CENTERLINE OF ARTESIA BLVD. &
81 FT. E'LY OF THE CENTERLINE OF STANTON AVENUE. MONUMENT IS
LEVEL WITH THE SIDEWALK

EXISTING
TRACT LINE

N90°00'00"W   23.40'
N0°00'00"W    7.24'
N90°00'00"E   5.88'
N0°00'00"W    6.55'

AREA=361 SQ. FT.

S89°59'58"E   39.78'

N0°00'02"E   14.21'
S89°59'58"E   0.50'
N0°00'02"E   1.00'
N89°59'58"W   11.92'
N0°00'02"E   32.17'
N89°57'39"E   30.73'

N0°00'02"E   16.97'

N0°00'02"E   5.22'
S89°59'58"E   18.12'

N46°29'04"E   12.47'
S89°59'58"E   24.08'

N0°00'02"E   8.95'

S89°59'58"E   32.58'

N89°59'58"W   0.83'

PARCEL 4A
PT. OF BEGINNING
AREA=23,584 SQ. FT.

# AIRSPACE
# PARCEL 4
LEGAL DESCRIPTION
PARCEL 4A
N89°59'59"W   22.67'
S0°01'05"W   13.56'
N89°59'58"W   30.58'
S89°59'59"E   22.57'
N89°59'58"W   0.77'

S0°00'02"W   34.16'

N0°00'02"E   34.17'
N89°59'58"W   110.62'

POR LOT 2
BLOCK 61

MRLA 18/50-52

LEVEL1 –
GROUND FLOOR
BUILDING LINE

N0°00'02"E   107.52'

S89°59'58"E   14.74'

AREA=546 SQ. FT.

LOT LINE
LOT 2 OF PM

LEVEL 1 – GROUND
FLOOR BUILDING LINE

N0°00'02"E   36.96'

S0°00'02"W   37.10'

N89°27'51"W

PARCEL 4B TRUE
PT. OF BEGINNING

N89°27'51"W

S0°00'02"W   86.82'
N90°00'00"E   29.28'
N0°00'00"E   13.79'

S0°00'02"W   86.05'

S0°00'02"W   8.22'

137.20'

567.88'
FEE BOUNDARY LINE

N89°27'51"W   14.74'

N0°27'49"E

N32°09'E   60.00'

N0°32'11"W   46.71'
N89°32'11"W   45.77'

LOT LINE
LOT 2 OF PM

EXISTING
P/L

6.00'
N89°32'11"W

809.33'

567.33'

124.02'

# B R E N N E R   A V E N U E

BRENNER AVE.

N0°27'49"E   215.36'

6.00'

24.03'
N45°29'59"E

POINT OF
COMMENCEMENT

O R A N G E T H O R P E   A V E.

N89°27'51"W   1319.52'

199.02'

DATE: SEPT 29, 2015
THOM. GDE: 767 H2
FILE: 2898-HOTEL-EX
PROJECT NO: 2898

# HENNON
Surveying & Mapping, Inc.

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA  91207
(818)243-0640
EMAIL: HENNON@AOL.COM
WEB: HENNON.COM

45



SHT.  2   OF 9 SHTS

PARCEL 4
LEVEL 2 - SECOND FLOOR

PARCEL LEVEL 2 - SECOND FLOOR
U.E.=113.76 FT.
L.E.=95.76 FT.

TRACT 1756
MM 60/20-21

PARCEL 4E TRUE
PT. OF BEGINNING
LEVEL 2 - SECOND
FLOOR BUILDING LINE

EXISTING
TRACT LINE

0'    25'   50'        100'

SCALE:  1"=50'

N90°00'00"W   23.40'
N0°00'00"W   7.24'
N90°00'00"E   5.88'
N0°00'00"W   6.55'

N90°00'00"E   29.28'

AREA=361 SQ. FT.

N89°32'11"W
46.71'

30'

6.00'

809.33'

N0°00'00"E
13.79'

A V E N U E

LOT 2 PRELIMINARY
PARCEL  MAP 2014-173

POR LOT 2

BLOCK 61

MRLA 18/50-52

PARCEL 4D TRUE
PT. OF BEGINNING
LEVEL 2 -
SECOND FLOOR
BUILDING LINE

N89°32'11"W
36.00'

85.09'

N89°59'58"W
S0°00'02"W
29.98'

N89°59'58"W
15.42'

S0°00'00"E
30.00'

AREA=20,780 SQ. FT.

AIRSPACE
PARCEL 4D

94.43'

EXISTING
P/L

B R E N N E R

62.50'
N89°59'58"W

S0°00'02"W 90.73'

N0°00'02"E
25.13'

A

A

LEGAL DESCRIPTION PARCEL 4D
S89°59'59"E   31.75'
N0°01'05"E   13.56'
S89°59'58"E   19.37'
N89°59'59"W   31.65'
N0°27'49"E   36.79'
N45°29'59"E   26.85'
S0°00'02"W   36.98'
S89°27'51"E   110.52'

6.00'

N0°27'49"E   567.33'

N0°27'49"E

223.82'

LOT LINE
LOT 2 OF PM

S89°59'58"E   12.81'

N89°27'51"W

N0°32'09"E
71.55'

567.88'

FEE BOUNDARY LINE

24.03'

N45°29'59"E

60'

POINT OF
COMMENCEMENT

O R A N G E T H O R P E   A V E.

N89°27'51"W

197.87'

1319.52'

LOT LINE
LOT 2 OF PM

BRENNER AVE.

115.56'

LOT LINE
LOT 2 OF PM

DATE: SEPT 29, 2015
THOM. GDE: 767 H2
FILE: 2898-HOTEL-EX
PROJECT NO: 2898

HENNON
Surveying & Mapping, Inc.

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA  91207
(818)243-0640
EMAIL: HENNON@AOL.COM
WEB: HENNON.COM



SHT. 3 OF 9 SHTS

TRACT 1756
MM 60/20-21

## PARCEL 4
## LEVEL 3 – THIRD FLOOR

PARCEL PARCEL LEVEL 3 – THIRD FLOOR
U.E.=150.76 FT.
L.E.=113.76 FT.

0'  25'  50'  100'

SCALE: 1"=50'

EXISTING
TRACT LINE

PARCEL 4F TRUE
PT. OF BEGINNING
LEVEL 3 – THIRD FLOOR
BUILDING LINE

N90°00'00"W  23.40'
N0°00'00"W  7.24'
N90°00'00"E  5.88'
N0°00'00"W  6.55'

N90°00'00"E  29.28'

AREA=361 SQ. FT.

N89°32'11"W
46.71'

6.00'

30'

809.33'

N0°00'00"W
13.79'

LOT LINE
LOT 2 OF PM

EXISTING P/L

567.33'

## LOT 2 PRELIMINARY
## PARCEL MAP 2014-173

BRENNER AVE.

N0°27'49"E    152.54'

POR LOT 2

BLOCK 61

MRLA 18/50-52

PARCEL 4G TRUE
PT. OF BEGINNING

N89°32'11"W
45.54'

N90°00'00"W  29.17'
LEVEL 3 – THIRD FLOOR
BUILDING LINE

N0°00'00"W  9.15'
N90°00'00"E  5.84'
N90°00'00"W  10.38'
N90°00'00"W  1.58'

N0°00'00"W  4.17'
N90°00'00"E  11.40'
N0°00'00"W  10.37'

AREA=738 SQ. FT.

N90°00'00"E  12.08'

N0°00'00"W
24.44'
N90°00'00"E
1.44'
N0°00'00"W
9.62'

AREA=546 SQ. FT.

S89°59'58"E
14.74'

S0°00'02"W
37.10'

N0°00'02"E
36.96'

LOT LINE
LOT 2 OF PM
LEVEL 3 – THIRD FLOOR
BUILDING LINE

N89°27'51"W

PARCEL 4H TRUE
PT. OF BEGINNING

N89°27'51"W

60.00'

N0°32'09"E

N89°27'51"W
14.74'

137.20'

567.88'

N45°29'59"E
26.85'

6.00'

24.03'

N45°29'59"E

N45°29'59"E

186.84'

N0°27'49"E

POINT OF
COMMENCEMENT

## O R A N G E T H O R P E   A V E.

N89°27'51"W

60'

199.02'

1319.52'

DATE: SEPT 29, 2015

THOM. GDE: 767 H2

FILE: 2898-HOTEL-EX

PROJECT NO: 2898

HENNON
Surveying & Mapping, Inc.

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA  91207
(818)243-0640
EMAIL: HENNON@AOL.COM
WEB: HENNON.COM

BRENNER AVENUE

47



SHT.  4   OF 9 SHTS

PARCEL 4
LEVEL 4 – FOURTH FLOOR

PARCEL LEVEL 4 – FOURTH FLOOR
U.E.=161.18 FT.
L.E.=150.76 FT.

TRACT 1756
MM 60/20-21

B

N90°00'00"W  18.27'
13.76'
S0°00'00"E

809.33'

30'
6.00'
72.90'
N90°00'00"W

0'    25'    50'    100'
SCALE:  1"=50'

EXISTING
TRACT LINE

LOT 2 PRELIMINARY
PARCEL  MAP  2014-173

114.50'
S0°00'00"W

AIRSPACE PARCEL 4
LEGAL DESCRIPTION PARCEL 4I

PARCEL 4I TRUE
PT. OF BEGINNING

N89°32'11"W
36.00'
LOT LINE
LOT 2 OF PM

EXISTING P/L

N0°27'49"E  567.33'

N0°27'49"E  274.06'

B R E N N E R    A V E N U E

353.11'

LEVEL 4 – FOURTH
FLOOR BUILDING LINE

92.89'
N90°00'00"W

130.52'
S0°00'00"E

A

POR LOT 2

BLOCK 61

MRLA 18/50-52

BRENNER AVE.

6.00'

A
N0°27'49"E

AREA=40,480 SQ. FT.

N90°00'00"E
18.75'

32.75'
S0°00'00"E

LOT LINE
LOT 2 OF PM

N89°27'51"W

143.94'

FEE BOUNDARY LINE

24.03'
N45°29'59"E

567.88'

B

60.00'
N0°32'09"E

O R A N G E T H O R P E    A V E.

60'

POINT OF
COMMENCEMENT

N89°27'51"W

1319.52'
199.02'

| DATE: SEPT 29, 2015 |
| THOM. GDE: 767 H2 |
| FILE: 2898-HOTEL-EX |
| PROJECT NO: 2898 |

HENNON
Surveying & Mapping, Inc.

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA  91207
(818)243-0640
EMAIL: HENNON@AOL.COM
WEB: HENNON.COM







# PARCEL 4
# LEVEL 5 – FIFTH FLOOR

**PARCEL LEVEL 5 – FIFTH FLOOR**
U.E.=171.60 FT.
L.E.=161.18 FT.

| | |
|---|---|
| DATE: SEPT 29, 2015 | HENNON Surveying & Mapping, Inc. |
| THOM. GDE: 767 H2 | 601 E. GLENOAKS BLVD., SUITE 208 GLENDALE, CALIFORNIA 91207 |
| FILE: 2898-HOTEL-EX | (818)243-0640 |
| PROJECT NO: 2898 | EMAIL: HENNON@AOL.COM WEB: HENNON.COM |

| | |
|---|---|
| DATE: SEPT 29, 2015 | HENNON Surveying & Mapping, Inc. |
| THOM. GDE: 767 H2 | 601 E. GLENOAKS BLVD., SUITE 208 GLENDALE, CALIFORNIA 91207 |
| FILE: 2898-HOTEL-EX | (818)243-0640 |
| PROJECT NO: 2898 | EMAIL: HENNON@AOL.COM WEB: HENNON.COM |

SHT. 7 OF 9 SHTS

PARCEL 4
LEVEL 7 – SEVENTH
FLOOR & ROOF

PARCEL LEVEL 7 – SEVENTH
FLOOR & ROOF
U.E.=210.00 FT.
L.E.=182.02 FT.

SCALE: 1"=50'

LOT 2 PRELIMINARY
PARCEL MAP 2014-173

AREA=28,699 SQ. FT.

HENNON
Surveying & Mapping, Inc.

DATE: SEPT 29, 2015
THOM. GDE: 767 H2
FILE: 2898-HOTEL-EX
PROJECT NO: 2898

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA  91207
(818)243-0640
EMAIL: HENNON@AOL.COM
WEB: HENNON.COM



SHT. 8 OF 9 SHTS

ELEV= 210.00'

U.E.=210.00 FT.

27.98'

**PAR. 4 LEVEL 7 — SEVENTH FLOOR & ROOF**

ELEV= 182.02'

L.E.=182.02 FT.

U.E.=182.02 FT.

10.42'

**PAR. 4 LEVEL 6 — 6TH FLOOR**

L.E.=171.60 FT.

ELEV= 171.60'

U.E.=171.60 FT.

10.42'

**PAR. 4 LEVEL 5 — 5TH FLOOR**

L.E.=161.18 FT.

ELEV= 161.18'

U.E.=161.18 FT.

10.42'

**PAR. 4 LEVEL 4 — 4TH FLOOR**

L.E.=150.76 FT.

ELEV= 150.76'

U.E.= 150.76 FT.

U.E.=150.76 FT.

37.00'

**PAR. 4 LEVEL 3 — SECOND FLOOR**

**PAR. 4 LEVEL 3 — SECOND FLOOR**

L.E.= 113.76 FT.

L.E.=113.76 FT.

ELEV= 113.76'

U.E.=113.76 FT.

18.00'

**PAR. 4 LEVEL 2 — SECOND FLOOR**

L.E.=95.76 FT.

ELEV= 95.76'

U.E.=95.76 FT.

18.00'

**PAR. 4 LEVEL 1 — GROUND FLOOR**

L.E.=77.76 FT.

ELEV= 77.76'

PARCEL MAP BOUNDARY

AVENUE

BRENNER AVE

6'

BRENNER

# SECTION A—A
NO SCALE

DATE: SEPT 29, 2015

THOM. GDE: 767 H2

FILE: 2898–HOTEL–EX

PROJECT NO: 2898

**HENNON**

Surveying & Mapping, Inc.

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA  91207
(818)243-0640
EMAIL: HENNON@AOL.COM
WEB: HENNON.COM

52



SHT.  9   OF 9 SHTS

SECTION B-B

NO SCALE

ORANGETHORPE AVE.

PARCEL MAP BOUNDARY

ELEV=210.00'    U.E.=210.00 FT.
27.98'
PAR. 4 LEVEL 7 — SEVENTH FLOOR & ROOF

ELEV=182.02'    L.E.=182.02 FT.
U.E.=182.02 FT.
10.42'
PAR. 4 LEVEL 6 — 6TH FLOOR

ELEV=171.60'    L.E.=171.60 FT.
U.E.=171.60 FT.
10.42'
PAR. 4 LEVEL 5 — 5TH FLOOR

ELEV=161.18'    L.E.=161.18 FT.
U.E.=161.18 FT.
10.42'
PAR. 4 LEVEL 4 — 4TH FLOOR

ELEV=150.76'    L.E.=150.76 FT.
U.E.=150.76 FT.    U.E.=150.76 FT.    U.E.=150.76 FT
37.00'
PAR. 4 LEVEL 3 — THIRD FLOOR    PAR. 4 LEVEL 3 — THIRD FLOOR    PAR. 4 LEVEL 3 — THIRD FLOOR

L.E.=113.76 FT.    L.E.=113.76 FT.    L.E.=113.76 FT.

U.E.=113.76 FT.    U.E.=113.76 FT
18.00'
PAR. 4 LEVEL 2 — SECOND FLOOR    PAR. 4 LEVEL 2 SECOND FLOOR

ELEV=95.76'    L.E.=95.76 FT.    L.E.=95.76 FT
U.E.=95.76 FT.
18.00'
PAR. 4 LEVEL 1 — GROUND FLOOR    PAR. 4 LEVEL 1 GROUND FLOOR
U.E.=95.76 FT

ELEV=77.76'    L.E.=77.76 FT.    L.E.=77.76 FT.

DATE: SEPT 29, 2015
THOM. GDE: 767 H2
FILE: 2898-HOTEL-EX
PROJECT NO: 2898

HENNON
Surveying & Mapping, Inc.

601 E. GLENOAKS BLVD., SUITE 208
GLENDALE, CALIFORNIA   91207
(818)243-0640
EMAIL: HENNON@AOL.COM
WEB: HENNON.COM

53

**EXHIBIT "A-2"**

**DEPICTION OF PARCEL**

00905865.6



# Exhibit B-1

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||    **78.00**

**2011000306739 02:23pm 06/23/11**

93 401 D11 A36 S02 20

0.00 0.00 0.00 0.00 57.00 0.00 0.00 0.00 0.00

**RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:**

BEACH ORANGETHORPE, LLC
3100 E. Imperial Hwy.
Lynwood, California 90302

3ᔕ9580

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this "**Deed of Trust**") is made to be effective as of June 23, 2011, by THE SOURCE AT BEACH, LLC, a California limited liability company ("**Trustor**"), whose address is 3100 East Imperial Highway, Lynwood, California 90302, to CHICAGO TITLE COMPANY, as Trustee ("**Trustee**"), for the benefit of BEACH ORANGETHORPE, LLC, a California limited liability company, as Beneficiary ("**Lender**" or "**Beneficiary**"). Paragraph 13 of the Rights and Duties of the Parties section of this Deed of Trust contains important provisions regarding the effect on this Deed of Trust of the subsequent recordation of a deed of trust and/or other financing-related instrument in connection with construction financing to be obtain by Trustor.

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.  TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

GRANT IN TRUST:

Trustor irrevocably grants, transfers, warrants and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in the County of Los Angeles, California, described as:

SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE.

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "**Land**");

P110615003                                           -1-

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**"; the Land and Improvements being hereinafter sometimes collectively referred to as the "**Premises**");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:  Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:  Any claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:  Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH:  Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH:  All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH: All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, rights to receive refunds, including utility and real estate tax refunds, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and

P110615003                                                 -2-

interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH:  All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH:  All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined);

TOGETHER WITH:  All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive.  It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "**Property**." As used herein, the term "**Fixtures**" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "**Personalty**" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

P110615003

-3-

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

FOR THE PURPOSE OF SECURING:

(1)     Payment of the sum of Forty Million and No/100 Dollars ($40,000,000.00), or such portion thereof as is advanced to Trustor pursuant to the Agreement, hereafter defined, together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note, in the maximum principal amount of Forty Million and No/100 Dollars ($40,000,000.00), executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (individually and collectively, the "**Note**");

(2)     Performance of each and every term, covenant and condition of that certain Loan Agreement, by and between Trustor and Lender, and all modifications, renewals or extensions thereof (the "**Agreement**");

(3)     Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(4)     Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust);

(5)     Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES.**

**1.     Payment And Performance By Trustor.**  Trustor shall promptly: (a) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust; (b) pay when due the Note; and (c) pay when due any future advances.

**2.     Payment By Trustor Of Taxes And Other Impositions.**  The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or

P110615003                                    -4-

based in whole or in part upon the obligations secured hereby. The term **"Other Impositions"** shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder. Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least fifteen (15) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least ten (10) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

3.    **Trustor To Pay Senior Obligations and Other Obligations**. Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded, and/or to which this Deed of Trust may be subordinate. Trustor shall pay at or prior to maturity any and all liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

4.    **Trustor To Maintain Insurance**. (a) Trustor shall maintain insurance covering the Property against loss or damage by fire and other risks customarily included in an "all risk" insurance policy. The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment. Lender shall be named as an additional insured. (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing the Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

5.    **Condemnation Proceeds**. (a) All settlements, awards, damages and proceeds received by Trustor or any other person in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) (collectively **"Awards"**) shall be applied by Trustor to reduce the principal balance of the Note or any other obligation secured by this Deed of Trust and/or to replace, restore or reconstruct the Property to a condition

P110615003    -5-

reasonably satisfactory to Lender. Any remaining portion of the Award shall be released to Trustor.

6.    **Maintenance And Preservation Of The Property**. Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair; (ii) not remove or demolish the Property, or any part thereof, except as may be commercially reasonable under the circumstances; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed, to the extent that it is commercially reasonable to do so; (iv) comply with (A) any and all applicable and legally valid laws, ordinances, governmental rules, regulations, standards and orders; (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; and (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

7.    **Lender's Rights To Inspect The Property**. Lender and its agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust.

8.    **Substitution Of Trustee**. From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute Trustee or Trustees in place of the Trustee named in this Deed of Trust. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee named in this Deed of Trust shall be discharged and the new Trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph 8 shall be conclusive proof of the proper substitution of such new Trustee.

9.    **Miscellaneous Powers Of Lender And Trustee**. In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

P110615003                                                -6-

62

**10.     Assignment And Collection Of Rents**. (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor (as defined in paragraph 14 of this Deed of Trust), being retained by Trustor. (b) Upon any default by Trustor under paragraph 14 of this Deed of Trust, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and reasonable attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**11.     Reconveyance Of The Property**. (a) Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. (b) If the I-829 petitions of any investor members of Beneficiary have not been finally determined, Trustor shall have the right to obtain a reconveyance of this Deed of Trust by depositing cash collateral into an escrow account reasonably satisfactory to Beneficiary. Such cash collateral, which shall be in an amount equal to the outstanding balance of principal and interest payable under the Note plus any other amounts owed by Trustor pursuant to the Loan Documents, shall be payable to Beneficiary upon the final determination of the I-829 petitions of Beneficiary's investor members. (c) The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

**12.     Change Of Lender's Records**. In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a commercially reasonable fee not to exceed $100 prescribed by the Lender to so change its records.

13.    **Subordination**. This Deed of Trust shall be subject to Section 3.11.1 and 3.11.6 of the Agreement. Notwithstanding any provision of this Deed of Trust to the contrary, Trustor shall have the right to cause to be recorded a deed of trust and/or other financing documents in connection with a loan to be procured by Trustor from Beach Orangethorpe II, LLC, a California limited liability company (each, a "**Pari Passu Lien**"). All Pari Passu Liens shall be on a pari passu basis with this Deed of Trust.

## ACCELERATION AND DEFAULT.

14.    **Conditions Under Which Lender May Declare A Default By Trustor**. A "default" under this Deed of Trust shall occur in the event that any of the following shall occur, after any applicable notice period and beyond any applicable cure period:  (a) an Event of Default (as defined in the Note) under the Note occurs; (b) any sum the payment of which is required or secured by this Deed of Trust is not made when due; (c) Trustor fails in any material respect to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (d) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (e) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed from such application by Trustor; or (f) an Event of Default (as defined in the Agreement) under the Agreement occurs.

15.    **Lender's Right To Require Immediate Payment In Full**. In the event of a default (as defined in paragraph 14) under this Deed of Trust, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable.

16.    **Lender's Right To Perform Acts Trustor Fails To Perform; Indemnification**.

        (a)    In the event of a default by Trustor under this Deed of Trust, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such commercially reasonable manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Subject to the foregoing, Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which is prior or superior to the lien of this Deed of Trust. In exercising the above powers, Lender and Trustee may pay reasonably necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay reasonable fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph 16, with payment of such amounts being secured by this Deed of Trust.

P110615003                                    -8-

(b)    Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "**Indemnitees**") from and against: (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action, except with respect to both (i) and (ii) to the extent that matters arise from the negligence, breach of contract or wrongful conduct of Trustor or Lender. The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

17.    **Trustee's Rights And Duties To Sell The Property**. (a) In the event of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Trust, including, without limitation, cost of

evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

18. **Other Remedies If Trustor Defaults**. (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

19. **Trustor's Obligations And Lender's Rights Not Waived**. By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

20. **Successors In Interest**. The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

21. **Statements Concerning The Status Of The Loan**. From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning

P110615003                                    -10-

the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements a commercially reasonable amount prescribed by Lender.

22. **Trustee's Obligations**. The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

23. **Obligations Of Trustor Are Joint And Several; Gender And Number**. If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

24. **No Offsets**. No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

25. **Beneficiary Not Responsible**. Under no circumstances shall Beneficiary have any duty to produce rents from the Property. Regardless of whether or not Beneficiary, in person or by agent, takes actual possession of the Premises and Improvements, unless Beneficiary agrees in writing to the contrary, Beneficiary is not and shall not be deemed to be:

(a) A "mortgagee in possession" for any purpose; or

(b) Responsible for performing any of the obligations of the lessor under any lease; or

(c) Responsible for any waste committed by lessees or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair or control of the Property; or

(d) Except in cases of Beneficiary's gross negligence or willful misconduct, liable in any manner for the Property or the use, occupancy, enjoyment or operation of all or any part of it.

**26.    Representations and Warranties**. Trustor represents and warrants that:

(a)    Subject to the Permitted Exceptions (as defined in the Loan Agreement), Trustor lawfully possesses and holds fee simple title to all of the Premises and Improvements;

(b)    Trustor has the full and unlimited power, right and authority to encumber the Property and assign the rents; and

(c)    This Deed of Trust, when properly recorded in the appropriate records, creates a first and prior lien on the Property, subject only to the Permitted Exceptions (as defined in the Agreement) and any mechanics' liens insured against by a tile policy in accordance with Section 2.14 of the Agreement.

**27.    Subrogation**. Beneficiary shall be subrogated to the liens of all encumbrances, whether released of record or not, which are discharged in whole or in part by Beneficiary in accordance with this Deed of Trust or with the proceeds of any loan secured by this Deed of Trust.

**28.    Postponement of Trustee's Sale**. Trustee may postpone the sale of all or any portion of the Property in accordance with California Civil Code §2924g, by public announcement at the time and place of sale, and from time to time thereafter Trustee may postpone such sale by public announcement at the time fixed by the preceding postponement or as otherwise allowed by said statute.

**29.    Governing Law**. The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder. The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

**30.    Agreement Changed Only By Writing**. This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

**31.    Time**. Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

**32.    Notice**. Except for any notice required under applicable law to be given in another manner:

(a)    any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph 32(c),

P110615003

-12-

(b)     any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

> Backoffice Services Group
> Quintus Investment Management (Hong Kong) Limited
> 43F Lippo Centre Tower 1
> 89 Queensway
> Admiralty
> Hong Kong
> Facsimile:  852 2537-6933
> Email:  boffice@quintuscap.com
>
> With a copy to:
> SNR Denton US LLP
> 233 South Wacker Drive
> Suite 7800
> Chicago, IL  60606
> Attention:  Steven R. Davidson, Esq.
> Fascimile:  (312) 876-7934
> Email:  steven.davidson@snrdenton.com

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph 32(c);

(c)     Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing mailed, telegraphed, delivered, or sent by telex, facsimile, cable or other form of electronic written communication to the appropriate party at its respective address.  Any notice given by telegram, telex, facsimile, cable or other form of electronic written communication must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address.  If any notice is given by mail it will be effective when deposited in the mails with first-class or airmail postage prepaid; if given by telegraph or cable, when delivered to the telegraph company with charges prepaid; if given by telex, facsimile or other form of electronic written communication, when sent; or if given by personal delivery, when delivered.

**33.     Titles, Captions, And Headings**. The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

**34.     Severability Of Provisions**.  If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

P110615003                                              -13-

**35.** **Acknowledgment Of Trustor's Understanding Of Deed Of Trust**. The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

**36.** **Lender's Reliance**. The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

**37.** **Security Agreement**.

(a)    Security Interest. This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements. Trustor shall deliver to Lender, in form and substance satisfactory to Lender, such financing statements and further assurances as Lender may, from time to time, require to create, perfect, and preserve Lender's security interest herein granted, and Lender may cause such financing statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

(c)    Remedies on Default. Upon default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

(d)    Fixture Filing. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph 32 above, subject to change as therein provided.

P110615003

-14-

**38.     Sale Of Interest**.  Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties.  The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

**39.     Separate Property**.  Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

**40.     Books And Records**.  Trustor shall keep and maintain copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein.  Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, from time to time, at reasonable times after five (5) days notice to Trustor.

**41.     Inspection, Appraisal, And Assessments**.  Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default, (a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto.  If Trustor in then in default under this Deed of Trust, all costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust.

**42.     WAIVER**.  FURTHER, TRUSTOR AND LENDER, TO THE EXTENT PERMITTED BY LAW, EACH HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS DEED OF TRUST, THE NOTE OR ANY CONDUCT, ACT OR OMISSION OF LENDER OR TRUSTOR, OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, MANAGERS, MEMBERS, TRUSTEES, EMPLOYEES OR AGENTS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER OR TRUSTOR, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

**43.     Definitions**.  All terms not defined herein shall be defined as set forth in the Agreement.

**44.     7861 Melrose Street**.  Notwithstanding anything to the contrary in this Deed of Trust or the Agreement, Trustor shall the right, but not the obligation, at any time to obtain a reconveyance with respect to that portion of the real property subject to this Deed of Trust located at 7861 Melrose Street, Buena Park, CA 90621(and all such Property, Fixtures and Personalty related thereto) by doing either of the following:  (1) making a prepayment under the

Note in the amount of Four Hundred Twenty Thousand Dollars and No/100 Dollars ($420,000), or (2) providing Beneficiary cash collateral as substitution in the amount of Four Hundred Twenty Thousand Dollars and No/100 Dollars ($420,000). Beneficiary, by accepting this Deed of Trust, agrees to execute any documents necessary to give effect to the intent of this paragraph.

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

[SIGNATURE PAGE FOLLOWS]

P110615003

-16-

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing as of the date first above written.

**TRUSTOR:**

THE SOURCE AT BEACH, LLC,
a California limited liability company

By:  M+D Properties, a California
corporation, its Manager,

By:  _____

Name:  _____Min Seok Chae_____

Title:  _____Secretary_____

## (ALL SIGNATURES MUST BE ACKNOWLEDGED)

STATE OF CALIFORNIA          )
                             ) ss:
COUNTY OF LOS ANGELES        )

On  6-20-2011  , before me,  Daniel G. Gonzalez  , personally appeared  Min Seok Chae  , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

DANIEL G. GONZALEZ
Commission # 1853845
Notary Public - California
Los Angeles County
My Comm. Expires Jul 5, 2013

Notary Public

My Commission expires: 07-05-2013

P110615003

-17-

# LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Orange, and described as follows:**

**PARCEL 1:**

THE EAST 50 FEET OF LOT 21 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**PARCEL 2:**

LOT 20 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**PARCEL 3:**

LOT 17 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

**PARCEL 4:**

THE WEST 250 FEET OF THE SOUTH 170.00 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP THEREOF RECORDED IN BOOK 18, PAGES 50 TO 52 INCLUSIVE, MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA.

EXCEPT THEREFROM THE NORTH 70.00 FEET OF THE WEST 200.00 FEET THEREOF.

ALSO EXCEPT THEREFROM THE SOUTH 100.00 FEET OF THE WEST 156.00 FEET THEREOF.

ALSO EXCEPT THEREFROM THE EAST 20.00 FEET OF THE WEST 176.00 FEET OF THE SOUTH 100.00 FEET THEREOF.

**PARCEL 4A:**

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS AND VEHICULAR TRAFFIC OVER THE EAST 20.00 FEET OF THE WEST 176.00 FEET OF THE SOUTH 100.00 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP THEREOF RECORDED IN BOOK 18, PAGE 50, MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA.

File Number: 389580A

Page 3 of 26

**PARCEL 5:**

LOT 6 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**PARCEL 6:**

THAT PORTION OF LOT 2 IN BLOCK 61 OF "BUENA PARK", IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGE 50 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2, SAID POINT BEING IN THE EAST LINE OF GRAND AVENUE (BEING 108 FEET WIDE); AND RUNNING THENCE EASTERLY ALONG THE NORTH LINE OF SAID LOT 2, 225 FEET; THENCE SOUTHERLY ALONG A LINE PARALLEL TO THE EAST LINE OF SAID GRAND AVENUE, 140 FEET; THENCE WESTERLY ALONG A LINE PARALLEL TO SAID NORTHERLY LINE 225 FEET; THENCE NORTHERLY ALONG THE EAST LINE OF GRAND AVENUE, 140 FEET TO THE POINT OF BEGINNING, TOGETHER WITH THE SOUTH 30 FEET OF THE WEST 225 FEET OF STREET ADJOINING ON THE NORTH ABANDONED BY ORDER OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, CALIFORNIA, AUGUST 2, 1911, ADJOINING SAID LOT 2.

**PARCEL 7:**

LOT 15 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

**PARCEL 8:**

THAT PORTION OF LOT 4 IN BLOCK 60 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18, PAGE 50 OF MISCELLANEOUS RECORDS OF ORANGE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF SAID LOT 4, SAID POINT BEING THE SOUTHEAST CORNER OF LOT 12 OF TRACT NO. 551, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, RUNNING THENCE EAST ALONG THE EASTERLY PROLONGATION OF THE SOUTH LINE OF SAID LOT 12, 135 FEET; THENCE NORTHERLY PARALLEL TO THE WEST LINE OF SAID LOT 4, 125 FEET, MORE OR LESS, TO THE NORTH LINE OF THE EASEMENT CONVEYED TO THE ORANGE COUNTY FLOOD DISTRICT BY DEED RECORDED OCTOBER 17, 1939 IN BOOK 1012, PAGE 560 OF OFFICIAL RECORDS, AND AS SHOWN ON A MAP FILED IN BOOK 17, PAGE 29 OF RECORD OF SURVEYS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE WESTERLY ALONG SAID NORTHERLY LINE TO ITS INTERSECTION

WITH THE WESTERLY LINE OF SAID LOT 4; THENCE SOUTHERLY ALONG SAID WESTERLY LINE TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEEDS OF RECORD.

**PARCEL 9:**

**PARCEL A:**

LOT 13 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**PARCEL B:**

THAT PORTION OF THE EAST 15 FEET OF THE WEST 330 FEET OF LOT 1 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE 50 ET SEQ. OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, CALIFORNIA, INCLUDED WITHIN THE EASTERLY PROLONGATION OF THE NORTH AND SOUTH LINE OF LOT 13 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**PARCEL 10:**

The south 100 feet of the west 156 feet of Lot 2, in Block 61 of Buena Park, in the City of Buena Park, County of Orange, State of California, as per map recorded in book 18, pages 50, 51 and 52 of Miscellaneous Maps, in the office of the County Recorder of said County.

(End of Legal Description)

File Number: 389580A

Page 5 of 26

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

BEACH ORANGETHORPE, LLC
3100 E. Imperial Hwy.
Lynwood, California 90302

*398770*

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||    **15.00**

**2011000458073 03:56pm 09/15/11**

47 412 A18 4

0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## AMENDMENT TO
## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Amendment is made to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 23, 2011, executed by THE SOURCE AT BEACH, LLC, as Borrower and Trustor, with BEACH ORANGETHORPE, LLC, as Lender and Beneficiary, and recorded on June 23, 2011 in the Official Records of Orange County, as Instrument number 2011000306739 ("the **Deed of Trust**")

Said Deed of Trust is hereby amended to add that certain real property located in the County of Orange, California and described as per EXHIBIT "B" attached hereto and incorporated herein by this reference, as additional security encumbered by the Deed of Trust.

IN WITNESS WHEREOF, Beneficiary and Trustor have executed this Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing as of September 14, 2011.

**TRUSTOR:**
THE SOURCE AT BEACH, LLC,
a California limited liability company

By:  M+D Properties,
a California corporation, its Manager,


By: _Ronald Chae_

Name: _Donald Chae_

Title: _President_

**BENEFICIARY:**
BEACH ORANGETHORPE, LLC,
a California limited liability company

By:  M&D Regional Center, LLC,
its Class A Manager,

By:  M+D Properties,
a California corporation, its Manager

By: _Ronald Chae_

Name: _Donald Chae_

Title: _President_

## (ALL SIGNATURES MUST BE ACKNOWLEDGED)

{00670487.DOC}

-1-

STATE OF CALIFORNIA        )
                                  ) ss:

COUNTY OF LOS ANGELES     )

On   _09/13/2011_   , before me, _Daniel G Gonzalez Notary Public_ personally appeared
_Donald Chae_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Daniel G Gonzalez_
Notary Public

My Commission expires:   _07/05/2013_



DANIEL G. GONZALEZ
Commission # 1853845
Notary Public - California
Los Angeles County
My Comm. Expires Jul 5, 2013

{00670487.DOC}                         -2-

## EXHIBIT "B"
### LEGAL DESCRIPTION

**PARCEL 11:**

ASSESSOR'S PARCEL NO.: 276-361-16

LOT 4 AND THE SOUTH 5 FEET OF LOT 3 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**PARCEL 12:**

PARCEL A:

LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGES 50 TO 52 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, CALIFORNIA, TOGETHER WITH THE SOUTH 30 FEET OF THE STREET ADJOINING SAID LOT ON THE NORTH ABANDONED BY ORDER OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ON AUGUST 2, 1911.

EXCEPT THEREFROM THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET THEREOF.

ALSO EXCEPT THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 2, SAID POINT BEING IN THE EAST LINE OF BEACH BOULEVARD (FORMERLY GRANT AVENUE) 108 FEET IN WIDTH AND RUNNING; THENCE NORTHERLY ALONG SAID EAST LINE, 30 FEET TO THE NORTH LINE OF THE SOUTH 30 FEET OF THE ABANDONED STREET HEREINBEFORE MENTIONED; THENCE EASTERLY ALONG SAID NORTH LINE 225 FEET; THENCE SOUTHERLY PARALLEL WITH THE EAST LINE OF BEACH BOULEVARD 170 FEET; THENCE WESTERLY PARALLEL WITH THE NORTH LINE OF SAID LOT 2, A DISTANCE OF 225 FEET TO THE EAST LINE OF BEACH BOULEVARD; THENCE NORTHERLY ALONG SAID EAST LINE, 140 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THEREFROM THE WEST 250 FEET OF THE SOUTH 259.21 FEET TO LOT 2 IN BLOCK 61 OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18 PAGES 50 TO 52 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

{00670487.DOC}                    -3-

PARCEL B:

LOTS 7, 8 AND 9 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF
ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20
AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

** END OF LEGAL DESCRIPTION **

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|| ||||||| ||||||||||||||||||||||| |||| || ||   **21.00**

**2011000544533 04:30pm 10/28/11**
217 406 A17 S02 A36 2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

**RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:**

BEACH ORANGETHORPE, LLC
3100 E. Imperial Hwy.
Lynwood, California 90302

393001

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**SECOND AMENDMENT TO
DEED OF TRUST, ASSIGNMENT OF RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

This Amendment is made to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 23, 2011, executed by THE SOURCE AT BEACH, LLC, as Borrower and Trustor ("**Trustor**"), with BEACH ORANGETHORPE, LLC, as Lender and Beneficiary ("**Beneficiary**"), and recorded on June 23, 2011 in the Official Records of Orange County, as Instrument number 2011000306739, as amended by that certain Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated September 14, 2011, executed by Trustor and Beneficiary, and recorded on September 15, 2011 in the Official Records of Orange County, as Instrument number 2011000458073 ("the **Deed of Trust**").

The Deed of Trust is hereby amended as follows:

1. The section of the Deed of Trust entitled "FOR THE PURPOSE OF SECURING:" shall be amended by incorporating the following:

   (6) Performance of each and every term, covenant and condition of any Unrelated Document (as defined in the Agreement).

2. EXHIBIT "A' of the Deed of Trust shall be amended to add, as additional security encumbered by the Deed of Trust, that certain real property located in the County of Orange, California and more particularly described as follows:

   ASSESSOR'S PARCEL NO.: 276-361-15

   LOT 5 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

3. Except as hereby amended, the Deed of Trust shall remain in full force and effect.

**[remainder of page intentionally left blank]**

{00675251.DOC}                                          1

IN WITNESS WHEREOF, Beneficiary and Trustor have executed this Second Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing as of _October 21_, 2011.

**TRUSTOR:**
THE SOURCE AT BEACH, LLC,
a California limited liability company

By:  M+D Properties,
a California corporation, its Manager,


By: _[signature: Donald Chae]_
   Donald Chae, President

**BENEFICIARY:**
BEACH ORANGETHORPE, LLC,
a California limited liability company

By:  M&D Regional Center, LLC,
its Class A Manager,

By:  M+D Properties,
a California corporation, its Manager


By: _[signature: Donald Chae]_
   Donald Chae, President

## (ALL SIGNATURES MUST BE ACKNOWLEDGED)


STATE OF CALIFORNIA     )
                        ) ss:
COUNTY OF LOS ANGELES   )

On October 19, 2011, before me, Cydnee L. Freedland, a Notary Public, personally appeared **DONALD CHAE**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_[signature]_
Notary Public

My Commission expires:  April 18, 2014

CYDNEE L. FREEDLAND
Commission # 1883796
Notary Public - California
Los Angeles County
My Comm. Expires Apr 18, 2014

RECORDING REQUESTED BY
STEWART TITLE

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

||||||||||||||||||||||||||||||||||||||||||||  33.00
* $ R 0 0 0 5 2 3 8 9 9 5 $ *

2012000625295 2:05 pm 10/15/12
117 408 A18 A36 S02    6
0.00 0.00 0.00 0.00 15.00 0.00 0.00 0.00

**RECORDING REQUESTED BY**
**AND WHEN RECORDED, MAIL TO:**

BEACH ORANGETHORPE, LLC
3100 E. Imperial Hwy.
Lynwood, California 90302

with a copy to:

SNR DENTON US LLP
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606
Attention: Steven R. Davidson

484231

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### THIRD AMENDMENT TO
### DEED OF TRUST, ASSIGNMENT OF RENTS,
### SECURITY AGREEMENT AND FIXTURE FILING AND
### SUBSTITUTION OF TRUSTEE

This Third Amendment is made October 8, 2012 with reference to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 23, 2011, executed by THE SOURCE AT BEACH, LLC, as Borrower and Trustor ("**Trustor**"), with BEACH ORANGETHORPE, LLC, as Lender and Beneficiary ("**Beneficiary**"), and recorded on June 23, 2011 in the Official Records of Orange County, as Instrument number 2011000306739, as amended by that certain Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated September 14, 2011, executed by Trustor and Beneficiary, and recorded on September 15, 2011 in the Official Records of Orange County, as Instrument number 2011000458073, and amended by that certain to Second Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated October 21, 2011, executed by Trustor and Beneficiary, and recorded on October 28, 2011 in the Official Records of Orange County, as Instrument number 2011000544533 (the "**Deed of Trust**").

The Deed of Trust is hereby amended as follows:

1.  Section 13 of the Deed of Trust entitled "Subordination" shall be amended and restated in its entirety to read as follows:

    "This Deed of Trust shall be subject to Paragraph 2 of the First Amendment to Amended and Restated Loan Agreement between Trustor and Lender dated October 8, 2012.  Notwithstanding any provision of this Deed of Trust to the contrary, the lien recorded under the deed of trust and/or other financing documents in connection with the loans procured by Trustor from Beach Orangethorpe II, LLC, a California limited liability company, and Beach Orangethorpe Ventures, LLC, a California limited liability company, shall be on a pari passu basis with this Deed of Trust."

{00749076.DOC}                    1

2. The following Section 45 shall be added to the Deed of Trust in its entirety and shall read as follows:

"45. Partial Reconveyance. This Deed of Trust is given subject to the rights and obligations of Trustor and Beneficiary under Paragraph 6.3 of the First Amendment to Loan Agreement between Trustor and Lender dated October 8, 2012, which requires Beneficiary to partially reconvey this Deed of Trust under the circumstances specified in said Paragraph 6.3."

3. The Deed of Trust shall be amended to add, as additional security encumbered by the Deed of Trust, those certain real properties located in the County of Orange, State of California and more particularly described on Exhibit A attached hereto and incorporated herin by this reference.

4. The Deed of Trust shall be amended to substitute STEWART TITLE OF CALIFORNIA, INC., as the new Trustee in the place and stead of Chicago Title Insurance Company, the original Trustee.

Except as hereby amended, the Deed of Trust shall remain in full force and effect.

**[remainder of page intentionally left blank]**

IN WITNESS WHEREOF, Beneficiary and Trustor have executed this Third Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing as of the date first written above.

**TRUSTOR:**

THE SOURCE AT BEACH, LLC,
a California limited liability company

    By:  M+D Properties,
         a California corporation,
         its Manager

    By:  _____
         Donald Chae, CEO

**BENEFICIARY:**

BEACH ORANGETHORPE, LLC,
a California limited liability company

    By:  M&D Regional Center, LLC,
         its Class A Manager

      By: M+D Properties,
         a California corporation,
         its Manager

      By:  _____
          Donald Chae, CEO

**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

STATE OF CALIFORNIA          )
                             ) ss:
COUNTY OF LOS ANGELES        )

On _October 4 2012_, 2012, before me, _Christina Diane Edwards-Cong_, a Notary Public, personally appeared **DONALD CHAE**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



CHRISTINA DIANE EDWARDS-CONG
Commission # 1977829
Notary Public - California
Los Angeles County
My Comm. Expires May 11, 2016

Notary Public

My Commission expires: May 11, 2016

{00749076.DOC}

86

## EXHIBIT A
## LEGAL DESCRIPTION

**PARCEL 14**

THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

SAID LAND IS ALSO SHOWN ON A LICENSED SURVEYOR'S MAP FILED IN BOOK 15, PAGE 27 OF RECORDS OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF ORANGE COUNTY, STATE OF CALIFORNIA.

EXCEPTING THEREFROM THE NORTHERLY 20.00 FEET OF THE SOUTHERLY 30.00 FEET OF THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, AS SHOWN ON A MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

APN: 276-361-10

**PARCEL 15**

LOT 3 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP  RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTH 5 FEET THEREOF. -

APN: 276-361-17

**PARCEL 16**

LOT 1 OF TRACT 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-14

**PARCEL 17**

LOT 18 OF TRACT 551, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGE 43 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-07

{00749076.DOC}                              Exhibit A

**PARCEL 18**

THE WEST 6 FEET OF LOT 21 AND THE EAST 40 FEET OF LOTS 22, 23 AND 24 OF TRACT 551, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGE 43 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-03

**PARCEL 19**

LOT 2 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-18

**PARCEL 20**

THE WEST 250.00 FEET OF THE SOUTH 259.21 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 50, 51 AND 52 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THE SOUTH 170.00 FEET THEREOF.

APN: 276-361-04

**PARCEL 21**

THE NORTHERLY 70.00 FEET OF THE SOUTHERLY 170.00 FEET OF THE WESTERLY 200 FEET OF LOT 2, BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18 PAGE(S) 50, OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL WATER RIGHTS, CLAIMS OR TITLE TO WATER, WHETHER OR NOT SHOWN BY THE PUBLIC RECORDS.

APN: 276-361-05

**PARCEL 22**

THE EAST 20 FEET OF THE WEST 176 FEET OF THE SOUTH 100 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, AS SHOWN ON A MAP RECORDED IN BOOK 18 PAGE(S) 50 OF MISCELLANEOUS RECORDS, OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

APN: 276-361-07

{00749076.DOC}                      Exhibit A

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

RECORDING REQUESTED BY

First American Title Insurance Company

AND WHEN RECORDED MAIL TO

First American Title Insurance Company
4380 La Jolla Village Drive
Suite 110
San Diego, CA  92122

|| ||||| ||| |||||| ||||| ||| ||||| ||| ||||| |||| |||| 12.00
* $ R 0 0 0 9 7 2 1 1 8 1 $ *
2017000507822 8:00 am 11/27/17
37 411 S15 F13   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

_____

Space above this line for recorder's use only

Trustee Sale No. 876521    Loan No.    Title Order No.

## SUBSTITUTION OF TRUSTEE

WHEREAS, The Source at Beach, LLC, was the original Trustor, Chicago Title Company, was the original Trustee, and Beach Orangethorpe, LLC, was the original Beneficiary under that certain Deed of Trust dated 06/23/2011, recorded on June 23, 2011 as Document Number 2011000306739 of official records in the office of the Recorder of Orange County, California, and

WHEREAS, Beach Orangethorpe, LLC, the undersigned, is the present Beneficiary under said Deed of Trust, and,

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and stead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes First American Title Insurance Company, 4380 La Jolla Village Drive, Suite 110, San Diego, CA  92122, as Trustee of Said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

DATE: ___11/1/2017___

Beach Orangethorpe, LLC


_____
John Zheng

1

89

Trustee Sale No. 876521
Loan No.
Title Order No.

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfullness,
accuracy, or validity of that document.

STATE OF _California_

COUNTY OF _Los Angeles_

On _November, 2017 01 Day of_ before me, ___Hong Yim___, a Notary Public in and for said county,
personally appeared , _John Zheng_, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

_____
Notary Public in and for said County and State

HONG YIM
COMM. # 2057429
NOTARY PUBLIC•CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. February 10, 2018

2

RECORDING REQUESTED BY
STEWART TITLE GUARANTY COMPANY

RECORDING REQUESTED BY
STEWART TITLE GUARANTY COMPANY
18000480712

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Attention: Steven R. Davidson

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

273.00

*$R0010352286$*

2018000338553 3:55 pm 09/14/18

63 406 D11 A36 S02 U08   5
0.00 0.00 0.00 0.00 12.00 0.00 0.000.00225.00 12.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## FOURTH AMENDMENT TO
## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Fourth Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this "**Amendment**") is made to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of June 23, 2011, executed by THE SOURCE AT BEACH, LLC, as Borrower and Trustor ("**Trustor**"), with BEACH ORANGETHORPE, LLC, as Lender and Beneficiary ("**Beneficiary**"), and recorded on June 23, 2011 in the Official Records of Orange County, as Instrument number 2011000306739, as amended by (a) that certain Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of September 14, 2011 and recorded on September 15, 2011 in the Official Records of Orange County, as Instrument number 2011000458073, (b) that certain Second Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of October 21, 2011 and recorded on October 28, 2011 in the Official Records of Orange County, as Instrument number 2011000544533, and (c) that certain Third Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing and Substitution of Trustee dated as of October 8, 2012 and recorded on October 15, 2012 in the Official Records of Orange County, as Instrument number 2012000625295 (the "**Deed of Trust**").

The Deed of Trust is hereby amended as follows:

1. Clause (1) of "FOR THE PURPOSE OF SECURING" of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

   "(1) Payment of the sum of $43,741,527.78, as such amount may from time to time be increased pursuant to the terms of the Agreement, hereafter defined, together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Second Amended and Restated Promissory Note, in the principal amount of $43,741,527.78, executed by Trustor and payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (individually and collectively, the "**Note**");"

2. Clause (2) of "FOR THE PURPOSE OF SECURING" of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

   "(2) Performance of each and every term, covenant and condition of that certain Second Amended and Restated Loan Agreement, dated as of September 14, 2018, by and between Trustor and Lender, and all modifications, renewals or extensions thereof (the

107631227\V-1

"**Agreement**");"

3.  Section 32(b) of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

    "(b)  any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

    Beach Orangethorpe, LLC
    c/o Quintus Investment Management (Hong Kong) Limited
    1704A, 17/F, Tower 2, Admiralty Centre
    18 Harcourt Road, Admiralty
    Hong Kong
    Email: boffice@quintuscap.com

    with a copy to:

    Dentons US LLP
    233 South Wacker Drive, Suite 5900
    Chicago, Illinois 60606
    Attention: Steven R. Davidson
    Facsimile:  312-876-7934
    Email:  steven.davidson@dentons.com

    and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph 32(c);"

4.  Section 45 of the Deed of Trust is hereby deleted in its entirety.

Except as hereby amended, the Deed of Trust shall remain in full force and effect.

[SIGNATURE PAGE FOLLOWS]

107631227\V-1

92

IN WITNESS WHEREOF, Beneficiary and Trustor have executed this Amendment as of _____, 2018.

TRUSTOR:

THE SOURCE AT BEACH, LLC,
a California limited liability company

By:    M+D Properties,
a California corporation,
its Manager

By: _____
Name: Donald Chae
Title:  CEO

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

STATE OF _____ )
) ss:
COUNTY OF _____ )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

Fourth Amendment to the Deed of Trust

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                    )
County of _LOS ANGELES_                                )

On __9/12/2018__ before me, __JUAN JOSE ENCISO__ ,
　　　　　　*Date*　　　　　　　　　　　*Here Insert Name and Title of the Officer*

personally appeared __DONALD CHAE__ .
　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JUAN JOSE ENCISO
Commission # 2128912
Notary Public - California
Los Angeles County
My Comm. Expires Oct 24, 2019

Signature _____
　　　　　　　　*Signature of Notary Public*

　　　　　*Place Notary Seal Above*
───────────────── **OPTIONAL** ─────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _FOURTH AMENDMENT TO THE DEED OF TRUST_
Document Date: _9/12/2018_ _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

BENEFICIARY:

BEACH ORANGETHORPE, LLC
a California limited liability company

By: _____
Name: John Zheng
Title: Authorized Signatory

A notary public or other officer completing
this certificate verifies only the identity of the
individual who signed the document to
which this certificate is attached, and not
the truthfulness, accuracy, or validity
of that document.

STATE OF Californic        )
                           ) ss:
COUNTY OF Los Angeles      )

On 13 Day of August, 2018 before me, ___Hong Yim___, a Notary Public, personally appeared
___John Zheng___, who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or
the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

_____
Notary Public

HONG YIM
Notary Public – California
Los Angeles County
Commission # 2228744
My Comm. Expires Feb 10, 2022

Amendment to Deed of Trust

# Exhibit B-2

RECORDING REQUESTED BY
STEWART TITLE

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 96.00
* $ R 0 0 0 5 2 3 8 9 9 6 $ *

**2012000625296 2:05 pm 10/15/12**

117 408 D11 A36 S02    26
0.00 0.00 0.00 0.00 75.00 0.00 0.00 0.00

**RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:**

BEACH ORANGETHORPE II, LLC
3100 E. Imperial Hwy.
Lynnwood California 90302

with a copy to:

SNR DENTON US LLP
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606
Attention: Steven R. Davidson

484231

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this "**Deed of Trust**") is made as of October 8, 2012, by THE SOURCE AT BEACH, LLC, a California limited liability company ("**Trustor**"), whose address is 3100 East Imperial Highway, Lynwood, California 90302, to STEWART TITLE OF CALIFORNIA, INC., as Trustee ("**Trustee**"), for the benefit of BEACH ORANGETHORPE II, LLC, a California limited liability company, as Beneficiary ("**Lender**" or "**Beneficiary**"). Paragraph 13 of the Rights and Duties of the Parties section of this Deed of Trust contains important provisions regarding the effect on this Deed of Trust of the subsequent or concurrent recordation of a deed of trust and/or other financing-related instrument in connection with construction financing to be obtained by Trustor.

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.  TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

GRANT IN TRUST:

Trustor irrevocably grants, transfers, warrants and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in the County of Los Angeles, California, described as:

SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE.

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements,

hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "**Land**");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**"; the Land and Improvements being hereinafter sometimes collectively referred to as the "**Premises**");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:  Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:  Any claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:  Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH:  Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH:  All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH: All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, rights to receive refunds, including utility and real estate tax refunds, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH: All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH: All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined);

TOGETHER WITH: All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "**Property.**" As used herein, the term "**Fixtures**" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "**Personalty**" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit

accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

<u>FOR THE PURPOSE OF SECURING</u>:

(1)    Payment of the sum of Forty Million and No/100 Dollars ($40,000,000.00), or such portion thereof as is advanced to Trustor pursuant to the Agreement, hereafter defined, together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note, in the maximum principal amount of Forty Million and No/100 Dollars ($40,000,000.00), executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (individually and collectively, the "**Note**");

(2)    Performance of each and every term, covenant and condition of that certain Amended and Restated Loan Agreement, by and between Trustor and Lender, and all modifications, renewals or extensions thereof (the "**Agreement**");

(3)    Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(4)    Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust);

(5)    Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**<u>RIGHTS AND DUTIES OF THE PARTIES</u>.**

1.    **<u>Payment And Performance By Trustor</u>**.  Trustor shall promptly: (a) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust; (b) pay when due the Note; and (c) pay when due any future advances.

**2.**    **Payment By Trustor Of Taxes And Other Impositions**.  The term "**Taxes**" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "**Other Impositions**" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder.  Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least fifteen (15) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing.  Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least ten (10) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

**3.**    **Trustor To Pay Senior Obligations and Other Obligations**. Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded, and/or to which this Deed of Trust may be subordinate.  Trustor shall pay at or prior to maturity any and all liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

**4.**    **Trustor To Maintain Insurance**.  (a) Trustor shall maintain (i) insurance covering the Property against loss or damage by fire and other risks customarily included in an "all risk" insurance policy, and (ii) a policy of liability insurance for claims resulting from injury to or death of any person, or the damage to property belonging to any person, by reason of Trustor's ownership, use or occupancy of the Property or Beneficiary's interest hereunder.  The insurance policies shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment. Lender shall be named as an additional insured.  (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing the Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any

insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

5.    **Condemnation Proceeds**.  (a) All settlements, awards, damages and proceeds received by Trustor or any other person in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) (collectively "**Awards**") shall be applied by Trustor to reduce the principal balance of the Note or any other obligation secured by this Deed of Trust and/or to replace, restore or reconstruct the Property to a condition reasonably satisfactory to Lender.  Any remaining portion of the Award shall be released to Trustor.

6.    **Maintenance And Preservation Of The Property**.  Trustor shall:  (i) keep the Property, and every portion thereof, in good condition and repair; (ii) not remove or demolish the Property, or any part thereof, except as may be commercially reasonable under the circumstances; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed, to the extent that it is commercially reasonable to do so; (iv) comply with (A) any and all applicable and legally valid laws, ordinances, governmental rules, regulations, standards and orders; (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; and (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

7.    **Lender's Rights To Inspect The Property**.  Lender and its agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust.

8.    **Substitution Of Trustee**.  From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute Trustee or Trustees in place of the Trustee named in this Deed of Trust.  Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation.  Upon recordation of such instrument, the Trustee named in this Deed of Trust shall be discharged and the new Trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust.  An instrument recorded pursuant to the provisions of this paragraph 8 shall be conclusive proof of the proper substitution of such new Trustee.

9. **Miscellaneous Powers Of Lender And Trustee**. In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

10. **Assignment And Collection Of Rents**. (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor (as defined in paragraph 14 of this Deed of Trust), being retained by Trustor. (b) Upon any default by Trustor under paragraph 14 of this Deed of Trust, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and reasonable attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

11. **Reconveyance Of The Property**. (a) Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. (b) If the I-829 petitions of any investor members of Beneficiary have not been finally determined, Trustor shall have the right to obtain a reconveyance of this Deed of Trust by depositing cash collateral into an escrow account reasonably satisfactory to Beneficiary. Such cash collateral, which shall be in an amount equal to the outstanding balance of principal and interest payable under the Note plus any other amounts owed by Trustor pursuant to the Loan Documents, shall be payable to Beneficiary upon the final determination of the I-829 petitions of Beneficiary's investor members. (c) The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled

thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

**12.**    **Change Of Lender's Records**.  In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a commercially reasonable fee not to exceed $100 prescribed by the Lender to so change its records.

**13.**    **Subordination**.  This Deed of Trust shall be subject to Paragraph 2 of the First Amendment to Loan Agreement between Trustor and Lender dated as of even date hereof. Notwithstanding any provision of this Deed of Trust to the contrary, the lien recorded under the deed of trust and/or other financing documents in connection with the loans procured by Trustor from Beach Orangethorpe, LLC, a California limited liability company, and Beach Orangethorpe Ventures, LLC, a California limited liability company, shall be on a pari passu basis with this Deed of Trust.

## ACCELERATION AND DEFAULT.

**14.**    **Conditions Under Which Lender May Declare A Default By Trustor**.  A "default" under this Deed of Trust shall occur in the event that any of the following shall occur, after any applicable notice period and beyond any applicable cure period:  (a) an Event of Default (as defined in the Note) under the Note occurs; (b) any sum the payment of which is required or secured by this Deed of Trust is not made when due; (c) Trustor fails in any material respect  to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (d) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (e) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed from such application by Trustor; or (f) an Event of Default (as defined in the Agreement) under the Agreement occurs.

**15.**    **Lender's Right To Require Immediate Payment In Full**.  In the event of a default (as defined in paragraph 14) under this Deed of Trust, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable.

**16.**    **Lender's Right To Perform Acts Trustor Fails To Perform; Indemnification**.

(a)    In the event of a default by Trustor under this Deed of Trust, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such commercially reasonable manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust.  Subject to the foregoing, Lender and Trustee are

authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which is prior or superior to the lien of this Deed of Trust. In exercising the above powers, Lender or Trustee may pay reasonably necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay reasonable fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph 16, with payment of such amounts being secured by this Deed of Trust.

(b)    Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "**Indemnitees**") from and against: (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action, except with respect to both (i) and (ii) to the extent that matters arise from the negligence, breach of contract or wrongful conduct of Trustor or Lender. The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

**17.    Trustee's Rights And Duties To Sell The Property**. (a) In the event of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also

{00761943.DOC}

constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

**18.    Other Remedies If Trustor Defaults**.   (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust.   (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

**19.    Trustor's Obligations And Lender's Rights Not Waived**.   By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege

hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

**20.** **Successors In Interest**. The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

**21.** **Statements Concerning The Status Of The Loan**. From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements a commercially reasonable amount prescribed by Lender.

**22.** **Trustee's Obligations**. The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

**23.** **Obligations Of Trustor Are Joint And Several; Gender And Number**. If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**24.** **No Offsets**. No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

**25.** **Beneficiary Not Responsible.** Under no circumstances shall Beneficiary have any duty to produce rents from the Property. Regardless of whether or not Beneficiary, in person or by agent, takes actual possession of the Premises and Improvements, unless Beneficiary agrees in writing to the contrary, Beneficiary is not and shall not be deemed to be:

(a)     A "mortgagee in possession" for any purpose; or

      (b)     Responsible for performing any of the obligations of the lessor under any lease; or

      (c)     Responsible for any waste committed by lessees or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair or control of the Property; or

      (d)     Except in cases of Beneficiary's gross negligence or willful misconduct, liable in any manner for the Property or the use, occupancy, enjoyment or operation of all or any part of it.

    **26.**    **Representations and Warranties**. Trustor represents and warrants that:

      (a)     Subject to the Permitted Exceptions (as defined in the Loan Agreement), Trustor lawfully possesses and holds fee simple title to all of the Premises and Improvements;

      (b)     Trustor has the full and unlimited power, right and authority to encumber the Property and assign the rents; and

      (c)     This Deed of Trust, when properly recorded in the appropriate records, creates a first and prior lien on the Property, subject only to the Permitted Exceptions (as defined in the Agreement) and any mechanics' liens insured against by a tile policy in accordance with Section 2.14 of the Agreement.

    **27.**    **Subrogation**.  Beneficiary shall be subrogated to the liens of all encumbrances, whether released of record or not, which are discharged in whole or in part by Beneficiary in accordance with this Deed of Trust or with the proceeds of any loan secured by this Deed of Trust.

    **28.**    **Postponement of Trustee's Sale**.  Trustee may postpone the sale of all or any portion of the Property in accordance with California Civil Code §2924g, by public announcement at the time and place of sale, and from time to time thereafter Trustee may postpone such sale by public announcement at the time fixed by the preceding postponement or as otherwise allowed by said statute.

    **29.**    **Governing Law**.  The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder.  The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

    **30.**    **Agreement Changed Only By Writing**.  This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

    **31.**    **Time**.  Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

**32.** **Notice**. Except for any notice required under applicable law to be given in another manner:

(a)    any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph 32(c),

(b)    any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

> Beach Orangethorpe II, LLC
> 3100 E. Imperial Highway
> Lynwood, California 90302
> Attention: Min Chae and/or Donald Chae
> Telephone: 310-631-6789
>
> with a copy to:
>
> SNR Denton US LLP
> 233 South Wacker Drive, Suite 7800
> Chicago, Illinois 60606
> Attention: Steven R. Davidson
> Telephone: 312-876-8238

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph 32(c);

(c)    Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing mailed, telegraphed, delivered, or sent by telex, facsimile, cable or other form of electronic written communication to the appropriate party at its respective address. Any notice given by telegram, telex, facsimile, cable or other form of electronic written communication must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address. If any notice is given by mail it will be effective when deposited in the mails with first-class or airmail postage prepaid; if given by telegraph or cable, when delivered to the telegraph company with charges prepaid; if given by telex, facsimile or other form of electronic written communication, when sent; or if given by personal delivery, when delivered.

**33.** **Titles, Captions, And Headings**. The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

**34.** **Severability Of Provisions**. If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or

unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

**35.** **Acknowledgment Of Trustor's Understanding Of Deed Of Trust**. The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

**36.** **Lender's Reliance**. The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

**37.** **Security Agreement**.

(a)    Security Interest.  This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, subject to Paragraph 13 above, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures.  To this end, Trustor shall and hereby does grant to Lender, a first priority security interest, subject to Paragraph 13 above, in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements.  Trustor shall deliver to Lender, in form and substance satisfactory to Lender, such financing statements and further assurances as Lender may, from time to time, require to create, perfect, and preserve Lender's security interest herein granted, and Lender may cause such financing statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

(c)    Remedies on Default.  Upon default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines.  All of Lender's rights and remedies shall be cumulative and not exclusive.

{00761943.DOC}

(d)    Fixture Filing.  This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code.  Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph 32 above, subject to change as therein provided.

**38.    Sale Of Interest**.  Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties.  The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

**39.    Separate Property**.  Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

**40.    Books And Records**.  Trustor shall keep and maintain copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein.  Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, from time to time, at reasonable times after five (5) days notice to Trustor.

**41.    Inspection, Appraisal, And Assessments**.  Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default, (a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto.  If Trustor is then in default under this Deed of Trust, all costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust.

**42.    WAIVER**.  FURTHER, TRUSTOR AND LENDER, TO THE EXTENT PERMITTED BY LAW, EACH HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS DEED OF TRUST, THE NOTE OR ANY CONDUCT, ACT OR OMISSION OF LENDER OR TRUSTOR, OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, MANAGERS, MEMBERS, TRUSTEES, EMPLOYEES OR AGENTS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER OR TRUSTOR, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

**43.**    <u>**Definitions**</u>.    All terms not defined herein shall be defined as set forth in the Agreement.


THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

**44.**    <u>**Partial Reconveyance**</u>.    This Deed of Trust is given subject to the rights and obligations of Trustor and Beneficiary under Paragraph 6.3 of the First Amendment to Loan Agreement between Trustor and Beneficiary, dated the date hereof, which requires Beneficiary to partially reconvey this Deed of Trust under the circumstances specified in said Paragraph 6.3.


<div align="center">[SIGNATURE PAGE FOLLOWS]</div>

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing as of the date first above written.


**TRUSTOR:**

THE SOURCE AT BEACH, LLC,
a California limited liability company

By: M+D Properties,
    a California corporation,
    its Manager

By: _____
    Donald Chae, CEO


**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

S-1

{00761943.DOC}

STATE OF CALIFORNIA          )
                             ) ss:
COUNTY OF LOS ANGELES        )

On _October 1, 2012_ , before me, _Christina Diane Edwards-Cong_ , personally appeared _Donald Chae_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



Notary Public

My Commission expires: May 11 2016

## EXHIBIT "A"
### LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Orange, City of Buena Park, and described as follows:**

## PARCEL 1:

*Parcel 1A:*

THAT PORTION OF LOT 4 IN BLOCK 60 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18,PAGE 50 OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF SAID LOT 4, SAID POINT BEING THE SOUTHEAST CORNER OF LOT 12 OF TRACT NO. 551, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, RUNNING THENCE EAST ALONG THE EASTERLY PROLONGATION OF THE SOUTH LINE OF SAID LOT 12, 135 FEET; THENCE NORTHERLY PARALLEL TO THE WEST LINE OF SAID LOT 4, 125 FEET, MORE OR LESS, TO THE NORTH LINE OF THE EASEMENT CONVEYED TO THE ORANGE COUNTY FLOOD DISTRICT BY DEED RECORDED OCTOBER 17, 1939 IN BOOK 1012, PAGE 560 OF OFFICIAL RECORDS, AND AS SHOWN ON A MAP FILED IN BOOK 17, PAGE 29 OF RECORD OF SURVEYS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE WESTERLY ALONG SAID NORTHERLY LINE TO ITS INTERSECTION WITH THE WESTERLY LINE OF SAID LOT 4; THENCE SOUTHERLY ALONG SAID WESTERLY LINE TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEEDS OF RECORD.

APN: 276-322-16

*Parcel 1B:*

THE EAST 50 FEET OF LOT 21 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-4

*Parcel 1C:*

{00761943.DOC}

LOT 20 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-05

*Parcel 1D:*
LOT 17 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS. IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET. WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

APN: 276-323-08

*Parcel 1E:*
LOT 15 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

APN: 276-323-10

*Parcel 1F:*
LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, CALIFORNIA, TOGETHER WITH THE SOUTH 30 FEET OF THE STREET ADJOINING SAID LOT ON THE NORTH ABANDONED BY ORDER OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ON AUGUST 2, 1911.

EXCEPTING THEREFROM THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET THEREOF.

ALSO EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2, SAID POINT BEING IN THE EAST LINE OF BEACH BOULEVARD (FORMERLY GRANT AVENUE) 108 FEET IN WIDTH AND RUNNING; THENCE NORTHERLY ALONG SAID EAST LINE, 30 FEET TO THE NORTH LINE OF THE SOUTH 30 FEET OF THE ABANDONED STREET HEREINBEFORE MENTIONED; THENCE EASTERLY ALONG SAID NORTH LINE 225 FEET; THENCE SOUTHERLY PARALLEL WITH THE EAST LINE OF BEACH BOULEVARD 170 FEET; THENCE WESTERLY PARALLEL WITH THE NORTH LINE OF SAID LOT 2, A DISTANCE OF 225 FEET TO THE EAST LINE OF BEACH BOULEVARD; THENCE NORTHERLY ALONG SAID EAST LINE 140 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THE WEST 250 FEET OF THE SOUTH 259.21 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APNS: 276-361-02; 276-361-03 AND 276-361-09

*Parcel 1G:*
THE SOUTH 100 FEET OF THE WEST 156 FEET OF LOT 2, IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50, 51, AND 52 OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY.

APN: 276-361-06

*Parcel 1H-A:*
THE WEST 250 FEET OF THE SOUTH 170.00 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK. COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP THEREOF RECORDED IN BOOK 18, PAGES 50 TO 52 INCLUSIVE, MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

EXCEPT THEREFROM THE NORTH 70.00 FEET OF THE WEST 200.00 FEET THEREOF.

ALSO EXCEPT THEREFROM THE SOUTH 100.00 FEET OF THE WEST 156.00 FEET THEREOF.

ALSO EXCEPT THEREFROM THE EAST 20.00 FEET OF THE WEST 176.00 FEET OF THE SOUTH 100.00 FEET THEREOF.

APN: 276-361-08

{00761943.DOC}

*Parcel 1H-B:*
A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS AND VEHICULAR
TRAFFIC OVER THE EAST 20.00 FEET OF THE WEST 176.00 FEET OF THE SOUTH
100.00 FEET OF LOT 2 IN - BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA
PARK. COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP
THEREOF RECORDED IN BOOK 18, PAGE 50, MISCELLANEOUS RECORDS, IN THE
OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, STATE OF
CALIFORNIA.

*Parcel 1I:*
THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET OF LOT 2 IN BLOCK 61 OF
BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF
MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

SAID LAND IS ALSO SHOWN ON A LICENSED SURVEYOR'S MAP FILED IN BOOK 15,
PAGE 27 OF RECORDS OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF
ORANGE COUNTY, STATE OF CALIFORNIA.

EXCEPTING THEREFROM THE NORTHERLY 20.00 FEET OF THE SOUTHERLY 30.00
FEET OF THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET OF LOT 2 IN
BLOCK 61 OF BUENA PARK, AS SHOWN ON A MAP RECORDED IN BOOK 18, PAGES
50 TO 52, INCLUSIVE OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY,
STATE OF CALIFORNIA.

APN: 276-361-10

*PARCEL 1J:*
LOT 9 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20
AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

APN: 276-361-11

*PARCEL 1K:*
LOT 8 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20
AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

APN: 276-361-12

{00761943.DOC}

*PARCEL 1L:*
LOT 7 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-13

*PARCEL 1M:*
LOT 6 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-14

*PARCEL 1N:*
LOT 5 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-15

*PARCEL 1O:*
LOT 4 AND THE SOUTH 5 FEET OF LOT 3 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS. IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-16

*PARCEL 1P:*
LOT 3 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP  RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTH 5 FEET THEREOF. -

APN: 276-361-17

***PARCEL 1Q:***
LOT 2 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-18

***Parcel 1R:***
*PARCEL 1R-A:*

LOT 13 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

*PARCEL 1R-B:*
THAT PORTION OF THE EAST 15 FEET OF THE WEST 330 FEET OF LOT 1 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE 50 ET SEQ. OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA, INCLUDED WITHIN THE EASTERLY PROLONGATION OF THE NORTH AND SOUTH LINE OF LOT 13 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-362-04

**PARCEL 2:**

***Parcel 2A:***
THE WEST 6 FEET OF LOT 21 AND THE EAST 40 FEET OF LOTS 22, 23 AND 24 OF TRACT 551, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGE 43 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-03

***Parcel 2B:***
LOT 18 OF TRACT 551, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGE 43 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-07

*Parcel 2C:*
LOT 1 OF TRACT 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

APN: 276-323-14

## PARCEL 3:

*Parcel 3A:*
THE WEST 250.00 FEET OF THE SOUTH 259.21 FEET OF LOT 2 IN BLOCK 61 OF
BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 50, 51 AND 52 OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

EXCEPTING THEREFROM THE SOUTH 170.00 FEET THEREOF.

APN: 276-361-04

*Parcel 3B:*
THE NORTHERLY 70.00 FEET OF THE SOUTHERLY 170.00 FEET OF THE WESTERLY
200 FEET OF LOT 2, BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK,
COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED
IN BOOK 18 PAGE(S) 50, OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL WATER RIGHTS, CLAIMS OR TITLE TO WATER,
WHETHER OR NOT SHOWN BY THE PUBLIC RECORDS.

APN: 276-361-05

*Parcel 3C:*
THE EAST 20 FEET OF THE WEST 176 FEET OF THE SOUTH 100 FEET OF LOT 2 IN
BLOCK 61 OF BUENA PARK, AS SHOWN ON A MAP RECORDED IN BOOK 18 PAGE(S)
50 OF MISCELLANEOUS RECORDS, OF LOS ANGELES COUNTY, STATE OF
CALIFORNIA.

APN: 276-361-07

## PARCEL 4:

THAT PORTION OF LOT 2 IN BLOCK 61 OF "BUENA PARK", IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGE 50 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2, SAID POINT BEING IN THE EAST LINE OF GRAND AVENUE (BEING 108 FEET WIDE); AND RUNNING THENCE EASTERLY ALONG THE NORTH LINE OF SAID LOT 2, 225 FEET; THENCE SOUTHERLY ALONG A LINE PARALLEL TO THE EAST LINE OF SAID GRAND AVENUE, 140 FEET; THENCE WESTERLY ALONG A LINE PARALLEL TO SAID NORTHERLY LINE 225 FEET; THENCE NORTHERLY ALONG THE EAST LINE OF GRAND AVENUE, 140 FEET TO THE POINT OF BEGINNING, TOGETHER WITH THE SOUTH 30 FEET OF THE WEST 225 FEET OF STREET ADJOINING ON THE NORTH ABANDONED BY ORDER OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY. CALIFORNIA, AUGUST 2, 1911, ADJOINING SAID LOT 2.

APN: 276-361-01

3

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

RECORDING REQUESTED BY

First American Title Insurance Company

AND WHEN RECORDED MAIL TO

First American Title Insurance Company
4380 La Jolla Village Drive
Suite 110
San Diego, CA 92122

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖  12.00
* S R 0 0 0 9 7 2 1 1 8 3 $ *
**2017000507824 8:00 am 11/27/17**
37 411 S15 F13   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

---

Space above this line for recorder's use only

Trustee Sale No. 876522    Loan No.    Title Order No.

## SUBSTITUTION OF TRUSTEE

WHEREAS, <u>The Source at Beach, LLC</u>, was the original Trustor, <u>Stewart Title of California, Inc.</u>, was the original Trustee, and <u>Beach Orangethorpe II, LLC</u>, was the original Beneficiary under that certain Deed of Trust dated <u>10/08/2012, recorded on October 15, 2012 as Document Number 2012000625296</u> of official records in the office of the Recorder of <u>Orange</u> County, California, and

WHEREAS, Beach Orangethorpe II, LLC, the undersigned, is the present Beneficiary under said Deed of Trust, and,

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and stead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes First American Title Insurance Company, 4380 La Jolla Village Drive, Suite 110, San Diego, CA 92122, as Trustee of Said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

DATE:  11/1/2017

Beach Orangethorpe II, LLC

JOHN ZHENG

1

123

**Trustee Sale No. 876522**
**Loan No.**
**Title Order No.**

---

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfullness,
accuracy, or validity of that document.

---

STATE OF _____California_____

COUNTY OF _____Los Angeles_____

On _November, 2017_ before me, _____Hong Yim_____, a Notary Public in and for said county,
personally appeared _John Zheng_, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Notary Public in and for said County and State

HONG YIM
COMM. # 2057429
NOTARY PUBLIC·CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. February 10, 2018
GSM1

Hugh Nguyen, Clerk-Recorder

51.00

*$R0010352287$*

**2018000338554** 3:55 pm 09/14/18
63 406 D11 A36 S02 U08  6
0.00 0.00 0.00 0.00 15.00 0.00 0.000.000.00 12.00

RECORDING REQUESTED
AND WHEN RECORDED MAIL TO:

Dentons US LLP
233 S. Wacker Dr #5900
Chicago, IL 60606
Attn: Steven R. Davidson

*THIS SPACE IS FOR RECORDERS USE ONLY*

First Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing

(Title of Document)

*Per Government Code 27388.1 (a)(1)  "A fee of $75 dollars shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel or real property. The fee shall not exceed two hundred twenty-five dollars ($225)"*

Reason for Exemption:

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**Failure to include an exemption reason will result in the imposition of the $75.00 Building Homes and Job Act Fee.**

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(ADDITIONAL RECORDING FEE APPLIES)

12/29/17

RECORDING REQUESTED BY
STEWART TITLE GUARANTY COMPANY

18000480712

**RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:**

DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Attention: Steven R. Davidson

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**FIRST AMENDMENT TO
DEED OF TRUST, ASSIGNMENT OF RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

This First Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this **"Amendment"**) is made to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of October 8, 2012, executed by THE SOURCE AT BEACH, LLC, as Borrower and Trustor (**"Trustor"**), with BEACH ORANGETHORPE II, LLC, as Lender and Beneficiary (**"Beneficiary"**), and recorded on October 15, 2012 in the Official Records of Orange County, as Instrument number 2012000625296 (the **"Deed of Trust"**).

The Deed of Trust is hereby amended as follows:

1. Clause (1) of "FOR THE PURPOSE OF SECURING" of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

   "(1) Payment of the sum of $42,895,990.73, as such amount may from time to time be increased pursuant to the terms of the Agreement, hereafter defined, together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Second Amended and Restated Promissory Note, in the principal amount of $42,895,990.73, executed by Trustor and payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (individually and collectively, the **"Note"**);"

2. Clause (2) of "FOR THE PURPOSE OF SECURING" of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

   "(2) Performance of each and every term, covenant and condition of that certain Second Amended and Restated Loan Agreement, dated as of September 14, 2018, by and between Trustor and Lender, and all modifications, renewals or extensions thereof (the **"Agreement"**);"

3. Section 32(b) of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

107631227\V-1

126

"(b)  any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

Beach Orangethorpe II, LLC
c/o Quintus Investment Management (Hong Kong) Limited
1704A, 17/F, Tower 2, Admiralty Centre
18 Harcourt Road, Admiralty
Hong Kong
Email: boffice@quintuscap.com

with a copy to:

Dentons US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Attention: Steven R. Davidson
Facsimile:  312-876-7934
Email:  steven.davidson@dentons.com

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph 32(c);"

4.  Section 44 of the Deed of Trust is hereby deleted in its entirety.

Except as hereby amended, the Deed of Trust shall remain in full force and effect.

[SIGNATURE PAGE FOLLOWS]

107631227\V-I

IN WITNESS WHEREOF, Beneficiary and Trustor have executed this Amendment as of _____, 2018.

TRUSTOR:

THE SOURCE AT BEACH, LLC,
a California limited liability company

By:   M+D Properties,
a California corporation,
its Manager

By: _____
Name: Donald Chae
Title:  CEO

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

STATE OF _____   )
                       ) ss:
COUNTY OF _____   )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

First Amendment to the Deed of Trust

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

┌─────────────────────────────────────────────────────────────┐
│ A notary public or other officer completing this certificate verifies only the identity of the individual who signed the │
│ document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. │
└─────────────────────────────────────────────────────────────┘

State of California                )
County of LOS ANGELES              )

On 9/12/2018 _____ before me, JUAN JOSE ENCISO _____
       *Date*                              *Here Insert Name and Title of the Officer*
personally appeared _____ DONALD CHAE _____
                                  *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

JUAN JOSE ENCISO
Commission # 2128912
Notary Public - California
Los Angeles County
My Comm. Expires Oct 24, 2019

Signature _____
                *Signature of Notary Public*

*Place Notary Seal Above*
──────────────── **OPTIONAL** ────────────────
*Though this section is optional, completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: FIRST AMENDMENT TO THE DEED OF TRUST
Document Date: 9-12-2018 _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

BENEFICIARY:

BEACH ORANGETHORPE II, LLC
a California limited liability company

By: _____
Name: John Zheng
Title: Authorized Signatory

A notary public or other officer completing
this certificate verifies only the identity of the
individual who signed the document to
which this certificate is attached, and not
the truthfulness, accuracy, or validity
of that document.

STATE OF _California_ )
                       ) ss:
COUNTY OF _Los Angeles_ )

On 13 Day of August, 2018 before me, _____Hong Yim_____, a Notary Public, personally appeared
_John V Zheng_, who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or
the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

_____
Notary Public

HONG YIM
Notary Public – California
Los Angeles County
Commission # 2228744
My Comm. Expires Feb 10, 2022

Amendment to Deed of Trust

# Exhibit B-3

RECORDING REQUESTED BY
STEWART TITLE

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

99.00

2012000625297 2:05 pm 10/15/12
117 408 D11 A36 S02   27
0.00 0.00 0.00 0.00 78.00 0.00 0.00 0.00

**RECORDING REQUESTED BY**
**AND WHEN RECORDED, MAIL TO:**

BEACH ORANGETHORPE VENTURES, LLC
3100 E. Imperial Hwy.
Lynnwood California 90302

with a copy to:

SNR DENTON US LLP
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606
Attention: Steven R. Davidson

484231

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this "**Deed of Trust**") is made as of October 8, 2012, by THE SOURCE AT BEACH, LLC, a California limited liability company ("**Trustor**"), whose address is 3100 East Imperial Highway, Lynwood, California 90302, to STEWART TITLE OF CALIFORNIA, INC., as Trustee ("**Trustee**"), for the benefit of BEACH ORANGETHORPE VENTURES, LLC, a California limited liability company, as Beneficiary ("**Lender**" or "**Beneficiary**"). Paragraph 13 of the Rights and Duties of the Parties section of this Deed of Trust contains important provisions regarding the effect on this Deed of Trust of the subsequent or concurrent recordation of a deed of trust and/or other financing-related instrument in connection with construction financing to be obtained by Trustor.

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

GRANT IN TRUST:

Trustor irrevocably grants, transfers, warrants and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in the County of Los Angeles, California, described as:

SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE.

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements,

-1-

{00749015.DOC}

hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "**Land**");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**"; the Land and Improvements being hereinafter sometimes collectively referred to as the "**Premises**");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:  Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:  Any claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:  Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH:  Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH:  All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH:  All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, rights to receive refunds, including utility and real estate tax refunds, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH: All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH:  All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined);

TOGETHER WITH: All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive.  It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the **"Property."**  As used herein, the term **"Fixtures"** shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term **"Personalty"** shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit

{00749015.DOC}

accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

FOR THE PURPOSE OF SECURING:

(1)    Payment of the sum of Forty Million and No/100 Dollars ($40,000,000.00), or such portion thereof as is advanced to Trustor pursuant to the Agreement, hereafter defined, together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note, in the maximum principal amount of Forty Million and No/100 Dollars ($40,000,000.00), executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (individually and collectively, the "**Note**");

(2)    Performance of each and every term, covenant and condition of that certain Loan Agreement, by and between Trustor and Lender, and all modifications, renewals or extensions thereof (the "**Agreement**");

(3)    Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(4)    Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust);

(5)    Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES.**

1.    **Payment And Performance By Trustor**.  Trustor shall promptly: (a) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust; (b) pay when due the Note; and (c) pay when due any future advances.

**2.**     <u>Payment By Trustor Of Taxes And Other Impositions</u>.  The term "**Taxes**" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "**Other Impositions**" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder.  Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least fifteen (15) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing.  Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least ten (10) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

**3.**     <u>Trustor To Pay Senior Obligations and Other Obligations</u>. Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded, and/or to which this Deed of Trust may be subordinate. Trustor shall pay at or prior to maturity any and all liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

**4.**     <u>Trustor To Maintain Insurance</u>.  (a) Trustor shall maintain (i) insurance covering the Property against loss or damage by fire and other risks customarily included in an "all risk" insurance policy, and (ii) a policy of liability insurance for claims resulting from injury to or death of any person, or the damage to property belonging to any person, bu reason of Trustor's ownership, use or occupancy of the Property or Beneficiary's interest hereunder.  The insurance policies shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment. Lender shall be named as an additional insured.  (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing the Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any

insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

**5.    Condemnation Proceeds**.  (a) All settlements, awards, damages and proceeds received by Trustor or any other person in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) (collectively "**Awards**") shall be applied by Trustor to reduce the principal balance of the Note or any other obligation secured by this Deed of Trust and/or to replace, restore or reconstruct the Property to a condition reasonably satisfactory to Lender.  Any remaining portion of the Award shall be released to Trustor.

**6.    Maintenance And Preservation Of The Property**.  Trustor shall:  (i) keep the Property, and every portion thereof, in good condition and repair; (ii) not remove or demolish the Property, or any part thereof, except as may be commercially reasonable under the circumstances; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed, to the extent that it is commercially reasonable to do so; (iv) comply with (A) any and all applicable and legally valid laws, ordinances, governmental rules, regulations, standards and orders; (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; and (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

**7.    Lender's Rights To Inspect The Property**.  Lender and its agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust.

**8.    Substitution Of Trustee**.  From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute Trustee or Trustees in place of the Trustee named in this Deed of Trust.  Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation.  Upon recordation of such instrument, the Trustee named in this Deed of Trust shall be discharged and the new Trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust.  An instrument recorded pursuant to the provisions of this paragraph 8 shall be conclusive proof of the proper substitution of such new Trustee.

9.    **Miscellaneous Powers Of Lender And Trustee**.  In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person:  reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

10.    **Assignment And Collection Of Rents**.  (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor (as defined in paragraph 14 of this Deed of Trust), being retained by Trustor.  (b) Upon any default by Trustor under paragraph 14 of this Deed of Trust, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due.  If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents.  All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and reasonable attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

11.    **Reconveyance Of The Property**.  (a) Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. (b) If the I-829 petitions of any investor members of Beneficiary have not been finally determined, Trustor shall have the right to obtain a reconveyance of this Deed of Trust by depositing cash collateral into an escrow account reasonably satisfactory to Beneficiary. Such cash collateral, which shall be in an amount equal to the outstanding balance of principal and interest payable under the Note plus any other amounts owed by Trustor pursuant to the Loan Documents, shall be payable to Beneficiary upon the final determination of the I-829 petitions of Beneficiary's investor members. (c) The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts.  The grantee in such reconveyance may be described as "the person or persons legally entitled

thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

**12.    Change Of Lender's Records**.  In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a commercially reasonable fee not to exceed $100 prescribed by the Lender to so change its records.

**13.    Subordination**.   This Deed of Trust shall be subject to Section 3.17 of the Agreement.  Notwithstanding any provision of this Deed of Trust to the contrary, the lien recorded under the deed of trust and/or other financing documents in connection with the loans procured by Trustor from Beach Orangethorpe, LLC, a California limited liability company, and Beach Orangethorpe II, LLC, a California limited liability company, shall be on a pari passu basis with this Deed of Trust.

## ACCELERATION AND DEFAULT.

**14.    Conditions Under Which Lender May Declare A Default By Trustor**.  A "default" under this Deed of Trust shall occur in the event that any of the following shall occur, after any applicable notice period and beyond any applicable cure period:  (a) an Event of Default (as defined in the Note) under the Note occurs; (b) any sum the payment of which is required or secured by this Deed of Trust is not made when due; (c) Trustor fails in any  material respect  to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (d) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (e) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed from such application by Trustor; or (f) an Event of Default (as defined in the Agreement) under the Agreement occurs.

**15.    Lender's Right To Require Immediate Payment In Full**.  In the event of a default (as defined in paragraph 14) under this Deed of Trust, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable.

**16.    Lender's Right To Perform Acts Trustor Fails To Perform; Indemnification**.

(a)     In the event of a default by Trustor under this Deed of Trust, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such commercially reasonable manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust.  Subject to the foregoing, Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action

or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which is prior or superior to the lien of this Deed of Trust. In exercising the above powers, Lender or Trustee may pay reasonably necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay reasonable fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph 16, with payment of such amounts being secured by this Deed of Trust.

(b)    Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "**Indemnitees**") from and against:  (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action, except with respect to both (i) and (ii) to the extent that matters arise from the negligence, breach of contract or wrongful conduct of Trustor or Lender. The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

**17.    Trustee's Rights And Duties To Sell The Property**. (a) In the event of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by

-9-

Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

18.    **Other Remedies If Trustor Defaults**. (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

19.    **Trustor's Obligations And Lender's Rights Not Waived**. By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power,

right or privilege shall preclude other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

**20.** **Successors In Interest**. The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

**21.** **Statements Concerning The Status Of The Loan**. From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements a commercially reasonable amount prescribed by Lender.

**22.** **Trustee's Obligations**. The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

**23.** **Obligations Of Trustor Are Joint And Several; Gender And Number**. If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**24.** **No Offsets**. No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

**25.** **Beneficiary Not Responsible.** Under no circumstances shall Beneficiary have any duty to produce rents from the Property. Regardless of whether or not Beneficiary, in person or by agent, takes actual possession of the Premises and Improvements, unless Beneficiary agrees in writing to the contrary, Beneficiary is not and shall not be deemed to be:

(a)    A "mortgagee in possession" for any purpose; or

(b)    Responsible for performing any of the obligations of the lessor under any lease; or

(c)    Responsible for any waste committed by lessees or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair or control of the Property; or

(d)    Except in cases of Beneficiary's gross negligence or willful misconduct, liable in any manner for the Property or the use, occupancy, enjoyment or operation of all or any part of it.

26.    **Representations and Warranties**. Trustor represents and warrants that:

(a)    Subject to the Permitted Exceptions (as defined in the Loan Agreement), Trustor lawfully possesses and holds fee simple title to all of the Premises and Improvements;

(b)    Trustor has the full and unlimited power, right and authority to encumber the Property and assign the rents; and

(c)    This Deed of Trust, when properly recorded in the appropriate records, creates a first and prior lien on the Property, subject only to the Permitted Exceptions (as defined in the Agreement) and any mechanics' liens insured against by a tile policy in accordance with Section 2.14 of the Agreement.

27.    **Subrogation**.  Beneficiary shall be subrogated to the liens of all encumbrances, whether released of record or not, which are discharged in whole or in part by Beneficiary in accordance with this Deed of Trust or with the proceeds of any loan secured by this Deed of Trust.

28.    **Postponement of Trustee's Sale**.  Trustee may postpone the sale of all or any portion of the Property in accordance with California Civil Code §2924g, by public announcement at the time and place of sale, and from time to time thereafter Trustee may postpone such sale by public announcement at the time fixed by the preceding postponement or as otherwise allowed by said statute.

29.    **Governing Law**.  The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder.  The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

30.    **Agreement Changed Only By Writing**.  This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

31.    **Time**.  Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

**32.    Notice**. Except for any notice required under applicable law to be given in another manner:

(a)    any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph 32(c);

(b)    any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

> Beach Orangethorpe Ventures, LLC
> 3100 E. Imperial Highway
> Lynwood, California 90302
> Attention: Min Chae and/or Donald Chae
> Telephone: 310-631-6789
>
> with a copy to:
>
> SNR Denton US LLP
> 233 South Wacker Drive, Suite 7800
> Chicago, Illinois 60606
> Attention: Steven R. Davidson
> Telephone: 312-876-8238

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph 32(c);

(c)    Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing mailed, telegraphed, delivered, or sent by telex, facsimile, cable or other form of electronic written communication to the appropriate party at its respective address. Any notice given by telegram, telex, facsimile, cable or other form of electronic written communication must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address. If any notice is given by mail it will be effective when deposited in the mails with first-class or airmail postage prepaid; if given by telegraph or cable, when delivered to the telegraph company with charges prepaid; if given by telex, facsimile or other form of electronic written communication, when sent; or if given by personal delivery, when delivered.

**33.    Titles, Captions, And Headings**. The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

**34.    Severability Of Provisions**. If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so

{00749015.DOC}

construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

**35.    Acknowledgment Of Trustor's Understanding Of Deed Of Trust.**    The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor.  Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

**36.    Lender's Reliance**.    The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

**37.    Security Agreement**.

(a)    Security Interest.  This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, subject to Paragraph 13 above, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures.  To this end, Trustor shall and hereby does grant to Lender, a first priority security interest, subject to Paragraph 13 above, in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements.    Trustor shall deliver to Lender, in form and substance satisfactory to Lender, such financing statements and further assurances as Lender may, from time to time, require to create, perfect, and preserve Lender's security interest herein granted, and Lender may cause such financing statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

(c)    Remedies on Default.  Upon default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines.    All of Lender's rights and remedies shall be cumulative and not exclusive.

(d)    Fixture Filing.  This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code.  Lender's address from which information concerning

-14-

Lender's security interest can be obtained is set forth in paragraph 32 above, subject to change as therein provided.

**38.    Sale Of Interest**.  Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties.  The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

**39.    Separate Property**.  Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

**40.    Books And Records**.  Trustor shall keep and maintain copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein.  Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, from time to time, at reasonable times after five (5) days notice to Trustor.

**41.    Inspection, Appraisal, And Assessments**.  Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default, (a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto.  If Trustor is then in default under this Deed of Trust, all costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust.

**42.    WAIVER**.  FURTHER, TRUSTOR AND LENDER, TO THE EXTENT PERMITTED BY LAW, EACH HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS DEED OF TRUST, THE NOTE OR ANY CONDUCT, ACT OR OMISSION OF LENDER OR TRUSTOR, OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, MANAGERS, MEMBERS, TRUSTEES, EMPLOYEES OR AGENTS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER OR TRUSTOR, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

**43.    Definitions**.  All terms not defined herein shall be defined as set forth in the Agreement.

{00749015.DOC}

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

    **44.**    **Partial Reconveyance**.  This Deed of Trust is given subject to the rights and obligations of Trustor and Beneficiary under Section 3.18.3 of the Agreement, which requires Beneficiary to partially reconvey this Deed of Trust under the circumstances specified in said Section 3.18.3.

<div align="center">[SIGNATURE PAGE FOLLOWS]</div>

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing as of the date first above written.

**TRUSTOR:**

THE SOURCE AT BEACH, LLC,
a California limited liability company

By: M+D Properties,
    a California corporation,
    its Manager

By: _____
    Donald Chae, CEO

**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

S-1

STATE OF CALIFORNIA          )
                             ) ss:
COUNTY OF LOS ANGELES        )

On <u>October 1, 2012</u>, before me, <u>Christina Diane Edwards-Cong</u>,  personally appeared <u>Donald Chae</u>, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

CHRISTINA DIANE EDWARDS-CONG
Commission # 1977829
Notary Public - California
Los Angeles County
My Comm. Expires May 11, 2016

My Commission expires: May 11 2016

GOVERNMENT CODE SECTION 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL
ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED
READS AS FOLLOWS:

NAME OF NOTARY:            CHRISTINA DIANE EDWARDS-
CONG

DATE COMMISSION EXPIRES    MAY 11, 2016

COUNTY  COMMISSION FILED:  LOS ANGELES

COMMISSION NUMBER:         1977829

VENDOR NUMBER:             NNA1

PLACE OF EXECUTION:        IRVINE, CA

DATE:                      MAY 11, 2016

STEWART TITLE OF CALIFORNIA

BY: _____

JEFF PASCHAL

## EXHIBIT "A"
### LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Orange, City of Buena Park, and described as follows:**

<u>**PARCEL 1:**</u>

*Parcel 1A:*
THAT PORTION OF LOT 4 IN BLOCK 60 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18,PAGE 50 OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF SAID LOT 4, SAID POINT BEING THE SOUTHEAST CORNER OF LOT 12 OF TRACT NO. 551, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, RUNNING THENCE EAST ALONG THE EASTERLY PROLONGATION OF THE SOUTH LINE OF SAID LOT 12, 135 FEET; THENCE NORTHERLY PARALLEL TO THE WEST LINE OF SAID LOT 4, 125 FEET, MORE OR LESS, TO THE NORTH LINE OF THE EASEMENT CONVEYED TO THE ORANGE COUNTY FLOOD DISTRICT BY DEED RECORDED OCTOBER 17, 1939 IN BOOK 1012, PAGE 560 OF OFFICIAL RECORDS, AND AS SHOWN ON A MAP FILED IN BOOK 17, PAGE 29 OF RECORD OF SURVEYS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE WESTERLY ALONG SAID NORTHERLY LINE TO ITS INTERSECTION WITH THE WESTERLY LINE OF SAID LOT 4; THENCE SOUTHERLY ALONG SAID WESTERLY LINE TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEEDS OF RECORD.

APN: 276-322-16

*Parcel 1B:*
THE EAST 50 FEET OF LOT 21 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-4

*Parcel 1C:*

LOT 20 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-05

*Parcel 1D:*
LOT 17 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS. IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET. WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

APN: 276-323-08

*Parcel 1E:*
LOT 15 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

APN: 276-323-10

*Parcel 1F:*
LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, CALIFORNIA, TOGETHER WITH THE SOUTH 30 FEET OF THE STREET ADJOINING SAID LOT ON THE NORTH ABANDONED BY ORDER OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ON AUGUST 2, 1911.

EXCEPTING THEREFROM THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET THEREOF.

ALSO EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

{00749015.DOC}

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2, SAID POINT BEING IN THE EAST LINE OF BEACH BOULEVARD (FORMERLY GRANT AVENUE) 108 FEET IN WIDTH AND RUNNING; THENCE NORTHERLY ALONG SAID EAST LINE, 30 FEET TO THE NORTH LINE OF THE SOUTH 30 FEET OF THE ABANDONED STREET HEREINBEFORE MENTIONED; THENCE EASTERLY ALONG SAID NORTH LINE 225 FEET; THENCE SOUTHERLY PARALLEL WITH THE EAST LINE OF BEACH BOULEVARD 170 FEET; THENCE WESTERLY PARALLEL WITH THE NORTH LINE OF SAID LOT 2, A DISTANCE OF 225 FEET TO THE EAST LINE OF BEACH BOULEVARD; THENCE NORTHERLY ALONG SAID EAST LINE 140 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THE WEST 250 FEET OF THE SOUTH 259.21 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APNS: 276-361-02; 276-361-03 AND 276-361-09

*Parcel 1G:*
THE SOUTH 100 FEET OF THE WEST 156 FEET OF LOT 2, IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50, 51, AND 52 OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY.

APN: 276-361-06

*Parcel 1H-A:*
THE WEST 250 FEET OF THE SOUTH 170.00 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK. COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP THEREOF RECORDED IN BOOK 18, PAGES 50 TO 52 INCLUSIVE, MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

EXCEPT THEREFROM THE NORTH 70.00 FEET OF THE WEST 200.00 FEET THEREOF.

ALSO EXCEPT THEREFROM THE SOUTH 100.00 FEET OF THE WEST 156.00 FEET THEREOF.

ALSO EXCEPT THEREFROM THE EAST 20.00 FEET OF THE WEST 176.00 FEET OF THE SOUTH 100.00 FEET THEREOF.

APN: 276-361-08

**Parcel 1H-B:**
A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS AND VEHICULAR
TRAFFIC OVER THE EAST 20.00 FEET OF THE WEST 176.00 FEET OF THE SOUTH
100.00 FEET OF LOT 2 IN - BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA
PARK. COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP
THEREOF RECORDED IN BOOK 18, PAGE 50, MISCELLANEOUS RECORDS, IN THE
OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, STATE OF
CALIFORNIA.

**Parcel 1I:**
THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET OF LOT 2 IN BLOCK 61 OF
BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF
MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

SAID LAND IS ALSO SHOWN ON A LICENSED SURVEYOR'S MAP FILED IN BOOK 15,
PAGE 27 OF RECORDS OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF
ORANGE COUNTY, STATE OF CALIFORNIA.

EXCEPTING THEREFROM THE NORTHERLY 20.00 FEET OF THE SOUTHERLY 30.00
FEET OF THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET OF LOT 2 IN
BLOCK 61 OF BUENA PARK, AS SHOWN ON A MAP RECORDED IN BOOK 18, PAGES
50 TO 52, INCLUSIVE OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY,
STATE OF CALIFORNIA.

APN: 276-361-10

**PARCEL 1J:**
LOT 9 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20
AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

APN: 276-361-11

**PARCEL 1K:**
LOT 8 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20
AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

APN: 276-361-12

***PARCEL 1L:***
LOT 7 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-13

***PARCEL 1M:***
LOT 6 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-14

***PARCEL 1N:***
LOT 5 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-15

***PARCEL 1O:***
LOT 4 AND THE SOUTH 5 FEET OF LOT 3 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS. IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-16

***PARCEL 1P:***
LOT 3 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP  RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTH 5 FEET THEREOF. -

APN: 276-361-17

*PARCEL 1Q:*
LOT 2 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

APN: 276-361-18

*Parcel 1R:*
*PARCEL 1R-A:*

LOT 13 OF TRACT NO. 1756,  IN THE CITY OF BUENA PARK, COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

*PARCEL 1R-B:*
THAT PORTION OF THE EAST 15 FEET OF THE WEST 330 FEET OF LOT 1 IN BLOCK
61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE 50 ET SEQ. OF
MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA,
INCLUDED WITHIN THE EASTERLY PROLONGATION OF THE NORTH AND SOUTH
LINE OF LOT 13 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF
ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20
AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

APN: 276-362-04


**PARCEL 2:**

*Parcel 2A:*
THE WEST 6 FEET OF LOT 21 AND THE EAST 40 FEET OF LOTS 22, 23 AND 24 OF
TRACT 551, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 19 PAGE 43 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

APN: 276-323-03

*Parcel 2B:*
LOT 18 OF TRACT 551, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 19 PAGE 43 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

APN: 276-323-07

*Parcel 2C:*
LOT 1 OF TRACT 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

APN: 276-323-14

## PARCEL 3:

*Parcel 3A:*
THE WEST 250.00 FEET OF THE SOUTH 259.21 FEET OF LOT 2 IN BLOCK 61 OF
BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 50, 51 AND 52 OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

EXCEPTING THEREFROM THE SOUTH 170.00 FEET THEREOF.

APN: 276-361-04

*Parcel 3B:*
THE NORTHERLY 70.00 FEET OF THE SOUTHERLY 170.00 FEET OF THE WESTERLY
200 FEET OF LOT 2, BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK,
COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED
IN BOOK 18 PAGE(S) 50, OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL WATER RIGHTS, CLAIMS OR TITLE TO WATER,
WHETHER OR NOT SHOWN BY THE PUBLIC RECORDS.

APN: 276-361-05

*Parcel 3C:*
THE EAST 20 FEET OF THE WEST 176 FEET OF THE SOUTH 100 FEET OF LOT 2 IN
BLOCK 61 OF BUENA PARK, AS SHOWN ON A MAP RECORDED IN BOOK 18 PAGE(S)
50 OF MISCELLANEOUS RECORDS, OF LOS ANGELES COUNTY, STATE OF
CALIFORNIA.

APN: 276-361-07

**PARCEL 4:**

THAT PORTION OF LOT 2 IN BLOCK 61 OF "BUENA PARK", IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGE 50 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2, SAID POINT BEING IN THE EAST LINE OF GRAND AVENUE (BEING 108 FEET WIDE); AND RUNNING THENCE EASTERLY ALONG THE NORTH LINE OF SAID LOT 2, 225 FEET; THENCE SOUTHERLY ALONG A LINE PARALLEL TO THE EAST LINE OF SAID GRAND AVENUE, 140 FEET; THENCE WESTERLY ALONG A LINE PARALLEL TO SAID NORTHERLY LINE 225 FEET; THENCE NORTHERLY ALONG THE EAST LINE OF GRAND AVENUE, 140 FEET TO THE POINT OF BEGINNING, TOGETHER WITH THE SOUTH 30 FEET OF THE WEST 225 FEET OF STREET ADJOINING ON THE NORTH ABANDONED BY ORDER OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY. CALIFORNIA, AUGUST 2, 1911, ADJOINING SAID LOT 2.

APN: 276-361-01

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

2017000507826 8:00 am 11/27/17

37 411 S15 F13    2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

12.00

*$R0009721185$*

RECORDING REQUESTED BY

First American Title Insurance Company

AND WHEN RECORDED MAIL TO

First American Title Insurance Company
4380 La Jolla Village Drive
Suite 110
San Diego, CA 92122

---

Space above this line for recorder's use only

Trustee Sale No. 876523    Loan No.    Title Order No.

# SUBSTITUTION OF TRUSTEE

WHEREAS, The Source at Beach, LLC, was the original Trustor, Stewart Title of California, Inc., was the original Trustee, and Beach Orangethorpe Ventures, LLC, was the original Beneficiary under that certain Deed of Trust dated 10/08/2012, recorded on October 15, 2012 as Document Number 2012000625297 of official records in the office of the Recorder of Orange County, California, and

WHEREAS, Beach Orangethorpe Ventures, LLC, the undersigned, is the present Beneficiary under said Deed of Trust, and,

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and stead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes First American Title Insurance Company, 4380 La Jolla Village Drive, Suite 110, San Diego, CA 92122, as Trustee of Said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

DATE: ___11/1/2017___

Beach Orangethorpe Ventures, LLC

JOHN ZHENG

1

159

Trustee Sale No. 876523
Loan No.
Title Order No.

---

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfullness,
accuracy, or validity of that document.

---

STATE OF _California_

COUNTY OF _Los Angeles_

On _November, 2017_ before me, _Hong Yim_ , a Notary Public in and for said county,
personally appeared _John Zheng_ , who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Notary Public in and for said County and State

HONG YIM
COMM. # 2057429
NOTARY PUBLIC•CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. February 10, 2018
GSN1    GSN1

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

51.00

*$R00103522885*

2018000338555 3:55 pm 09/14/18

63 406 D11 A36 S02 U08   6
0.00 0.00 0.00 0.00 15.00 0.00 0.000.000.00 12.00

RECORDING REQUESTED
AND WHEN RECORDED MAIL TO:

Dentons US LLP
233 S. Wacker Dr #5900
Chicago, IL 60606
Attn: Steven R. Davidson

*THIS SPACE IS FOR RECORDERS USE ONLY*

First Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing

(Title of Document)

*Per Government Code 27388.1 (a)(1)  "A fee of $75 dollars shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel or real property. The fee shall not exceed two hundred twenty-five dollars ($225)"*

Reason for Exemption:

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**Failure to include an exemption reason will result in the imposition of the $75.00 Building Homes and Job Act Fee.**

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(ADDITIONAL RECORDING FEE APPLIES)                                  12/29/17

RECORDING REQUESTED BY
STEWART TITLE GUARANTY COMPANY

1800048071 2

**RECORDING REQUESTED BY**
**AND WHEN RECORDED, MAIL TO:**

DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Attention: Steven R. Davidson

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**FIRST AMENDMENT TO**
**DEED OF TRUST, ASSIGNMENT OF RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

This First Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this **"Amendment"**) is made to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of October 8, 2012, executed by THE SOURCE AT BEACH, LLC, as Borrower and Trustor (**"Trustor"**), with BEACH ORANGETHORPE VENTURES, LLC, as Lender and Beneficiary (**"Beneficiary"**), and recorded on October 15, 2012 in the Official Records of Orange County, as Instrument number 2012000625297 (the **"Deed of Trust"**).

The Deed of Trust is hereby amended as follows:

1. Clause (1) of "FOR THE PURPOSE OF SECURING" of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

    "(1) Payment of the sum of $42,281,131.13, as such amount may from time to time be increased pursuant to the terms of the Agreement, hereafter defined, together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Amended and Restated Promissory Note, in the principal amount of $42,281,131.13, executed by Trustor and payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (individually and collectively, the **"Note"**);"

2. Clause (2) of "FOR THE PURPOSE OF SECURING" of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

    "(2)  Performance of each and every term, covenant and condition of that certain Amended and Restated Loan Agreement, dated as of September 14, 2018, by and between Trustor and Lender, and all modifications, renewals or extensions thereof (the **"Agreement"**);"

3. Section 32(b) of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

"(b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

Beach Orangethorpe Ventures, LLC
c/o Quintus Investment Management (Hong Kong) Limited
1704A, 17/F, Tower 2, Admiralty Centre
18 Harcourt Road, Admiralty
Hong Kong
Email: boffice@quintuscap.com

with a copy to:

Dentons US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Attention: Steven R. Davidson
Facsimile: 312-876-7934
Email: steven.davidson@dentons.com

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph 32(c);"

4. Section 44 of the Deed of Trust is hereby deleted in its entirety.

Except as hereby amended, the Deed of Trust shall remain in full force and effect.

[SIGNATURE PAGE FOLLOWS]

107631227\V-1

IN WITNESS WHEREOF, Beneficiary and Trustor have executed this Amendment as of _____, 2018.

TRUSTOR:

THE SOURCE AT BEACH, LLC,
a California limited liability company

By:    M+D Properties,
a California corporation,
its Manager

By: _____
Name: Donald Chae
Title:  CEO

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

STATE OF _____   )
                    ) ss:
COUNTY OF _____  )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

First Amendment to the Deed of Trust

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California                                    )
County of _LOS ANGELES_                )

On _09-12-2018_ before me, _JUAN JOJE ENCISO_
_____ Date                                    Here Insert Name and Title of the Officer
personally appeared _DONALD CHAE_
_____
                                            Name(s) of Signer(s)

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JUAN JOSE ENCISO
Commission # 2128912
Notary Public - California
Los Angeles County
My Comm. Expires Oct 24, 2019

Signature _____
                    Signature of Notary Public

_Place Notary Seal Above_

——————————————— **OPTIONAL** ———————————————

_Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**
Title or Type of Document: _First Amendment to the Deed of Trust_
Document Date: _9-12-2018_ _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
| --- | --- |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

BENEFICIARY:

BEACH ORANGETHORPE VENTURES, LLC
a California limited liability company


By: _____
Name: John Zheng
Title: Authorized Signatory


> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California     )
                        ) ss:
COUNTY OF Los Angeles   )

On 13 Day of August, 2018, before me, ___Hong Yim___, a Notary Public, personally appeared ___John Zheng___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

> HONG YIM
> Notary Public – California
> Los Angeles County
> Commission # 2228744
> My Comm. Expires Feb 10, 2022

Amendment to Deed of Trust

Exhibit B-4

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

*$ R 0 0 0 6 6 6 3 8 2 8 $ *    81.00

2014000163784 4:30 pm 04/29/14
63 404 D11   26
0.00 0.00 0.00 0.00 75.00 0.00 0.00 0.00

RECORDING REQUESTED BY
STEWART TITLE

**RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:**

BEACH ORANGETHORPE SOURCE, LLC
3100 E. Imperial Hwy.
Lynnwood California 90302

with a copy to:

DENTONS US LLP
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606
Attention: Steven R. Davidson

O1180 ~ 101582

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**DEED OF TRUST, ASSIGNMENT OF RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this "**Deed of Trust**") is made as of January 6, 2014 by THE SOURCE AT BEACH, LLC, a California limited liability company ("**Trustor**"), whose address is 3100 East Imperial Highway, Lynwood, California 90302, to STEWART TITLE OF CALIFORNIA, INC., as Trustee ("**Trustee**"), for the benefit of BEACH ORANGETHORPE SOURCE, LLC, a California limited liability company, as Beneficiary ("**Lender**" or "**Beneficiary**").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

GRANT IN TRUST:

Trustor irrevocably grants, transfers, warrants and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in the County of Los Angeles, California, described as:

SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE.

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or

{00882024.DOC}

expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "**Land**");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**"; the Land and Improvements being hereinafter sometimes collectively referred to as the "**Premises**");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:  Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:  Any claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:  Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH:  Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH:  All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH:  All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, rights to receive refunds, including utility and real estate tax refunds, and other intangible property and rights now or hereafter relating to the foregoing property, or

-2-

the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH: All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH: All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined);

TOGETHER WITH: All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "**Property**." As used herein, the term "**Fixtures**" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "**Personalty**" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise

{00882024.DOC}

pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

FOR THE PURPOSE OF SECURING:

    (1)    Payment of the sum of Ten Million and No/100 Dollars ($10,000,000.00), or such portion thereof as is advanced to Trustor pursuant to the Agreement, hereafter defined, together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note, in the maximum principal amount of Ten Million and No/100 Dollars ($10,000,000.00), executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (individually and collectively, the "**Note**");

    (2)    Performance of each and every term, covenant and condition of that certain Loan Agreement, by and between Trustor and Lender, and all modifications, renewals or extensions thereof (the "**Agreement**");

    (3)    Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

    (4)    Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust);

    (5)    Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES.**

    **1.**    **Payment And Performance By Trustor**.  Trustor shall promptly: (a) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust; (b) pay when due the Note; and (c) pay when due any future advances.

    **2.**    **Payment By Trustor Of Taxes And Other Impositions**.  The term "**Taxes**" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a

substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "**Other Impositions**" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder.  Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least fifteen (15) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing.  Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least ten (10) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

     **3.**     <u>**Trustor To Pay Senior Obligations and Other Obligations**</u>. Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded, and/or to which this Deed of Trust may be subordinate.  Trustor shall pay at or prior to maturity any and all liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

     **4.**     <u>**Trustor To Maintain Insurance**</u>.  (a) Trustor shall maintain (i) insurance covering the Property against loss or damage by fire and other risks customarily included in an "all risk" insurance policy, and (ii) a policy of liability insurance for claims resulting from injury to or death of any person, or the damage to property belonging to any person, bu reason of Trustor's ownership, use or occupancy of the Property or Beneficiary's interest hereunder.  The insurance policies shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment.  Lender shall be named as an additional insured.  (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing the Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and

agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

**5.** **Condemnation Proceeds**. (a) All settlements, awards, damages and proceeds received by Trustor or any other person in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) (collectively "**Awards**") shall be applied by Trustor to reduce the principal balance of the Note or any other obligation secured by this Deed of Trust and/or to replace, restore or reconstruct the Property to a condition reasonably satisfactory to Lender. Any remaining portion of the Award shall be released to Trustor.

**6.** **Maintenance And Preservation Of The Property**. Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair; (ii) not remove or demolish the Property, or any part thereof, except as may be commercially reasonable under the circumstances; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed, to the extent that it is commercially reasonable to do so; (iv) comply with (A) any and all applicable and legally valid laws, ordinances, governmental rules, regulations, standards and orders; (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; and (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

**7.** **Lender's Rights To Inspect The Property**. Lender and its agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust.

**8.** **Substitution Of Trustee**. From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute Trustee or Trustees in place of the Trustee named in this Deed of Trust. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee named in this Deed of Trust shall be discharged and the new Trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph 8 shall be conclusive proof of the proper substitution of such new Trustee.

**9.** **Miscellaneous Powers Of Lender And Trustee**. In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed

of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person:  reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

10. **Assignment And Collection Of Rents**.  (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor (as defined in paragraph 14 of this Deed of Trust), being retained by Trustor.  (b) Upon any default by Trustor under paragraph 14 of this Deed of Trust, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due.  If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents.  All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and reasonable attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

11. **Reconveyance Of The Property**.  (a) Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust.  (b) If the I-829 petitions of any investor members of Beneficiary have not been finally determined, Trustor shall have the right to obtain a reconveyance of this Deed of Trust by depositing cash collateral into an escrow account reasonably satisfactory to Beneficiary. Such cash collateral, which shall be in an amount equal to the outstanding balance of principal and interest payable under the Note plus any other amounts owed by Trustor pursuant to the Loan Documents, shall be payable to Beneficiary upon the final determination of the I-829 petitions of Beneficiary's investor members.  (c)  The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to

such rents.  Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

**12.    Change Of Lender's Records**.  In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a commercially reasonable fee not to exceed $100 prescribed by the Lender to so change its records.

**13.    Pari Passu Liens**.  Notwithstanding any provision of this Deed of Trust to the contrary, the lien recorded under the deed of trust and/or other financing documents in connection with the loans procured by Trustor from Beach Orangethorpe, LLC, a California limited liability company (including without limitation that certain deed of trust recorded in the Official Records of Orange County on June 23, 2011 as Instrument No. 2011000306739), Beach Orangethorpe II, LLC, a California limited liability company (including without limitation that certain deed of trust recorded in the Official Records of Orange County on October 25, 2012 as Instrument No. 2012000625296), and Beach Orangethorpe Ventures, LLC, a California limited liability company (including without limitation that certain deed of trust recorded in the Official Records of Orange County on October 8, 2012 as Instrument No. 2012000625297) shall be on a pari passu basis with this Deed of Trust.

## ACCELERATION AND DEFAULT.

**14.    Conditions Under Which Lender May Declare A Default By Trustor**. A "default" under this Deed of Trust shall occur in the event that any of the following shall occur, after any applicable notice period and beyond any applicable cure period:  (a) an Event of Default (as defined in the Note) under the Note occurs; (b) any sum the payment of which is required or secured by this Deed of Trust is not made when due; (c) Trustor fails in any  material respect  to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (d) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (e) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed from such application by Trustor; or (f) an Event of Default (as defined in the Agreement) under the Agreement occurs.

**15.    Lender's Right To Require Immediate Payment In Full**.  In the event of a default (as defined in paragraph 14) under this Deed of Trust, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable.

**16.    Lender's Right To Perform Acts Trustor Fails To Perform; Indemnification**.

(a)    In the event of a default by Trustor under this Deed of Trust, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such

commercially reasonable manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Subject to the foregoing, Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which is prior or superior to the lien of this Deed of Trust. In exercising the above powers, Lender or Trustee may pay reasonably necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay reasonable fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph 16, with payment of such amounts being secured by this Deed of Trust.

(b)    Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "**Indemnitees**") from and against: (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action, except with respect to both (i) and (ii) to the extent that matters arise from the negligence, breach of contract or wrongful conduct of Trustor or Lender. The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

17.    **Trustee's Rights And Duties To Sell The Property**. (a) In the event of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or

{00882024.DOC}

cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

**18.    Other Remedies If Trustor Defaults**. (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

**19.    Trustor's Obligations And Lender's Rights Not Waived**. By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such

prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

**20.    Successors In Interest**. The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

**21.    Statements Concerning The Status Of The Loan**. From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements a commercially reasonable amount prescribed by Lender.

**22.    Trustee's Obligations**. The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

**23.    Obligations Of Trustor Are Joint And Several; Gender And Number**. If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**24.    No Offsets**. No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

**25.    Beneficiary Not Responsible.** Under no circumstances shall Beneficiary have any duty to produce rents from the Property. Regardless of whether or not Beneficiary, in person

or by agent, takes actual possession of the Premises and Improvements, unless Beneficiary agrees in writing to the contrary, Beneficiary is not and shall not be deemed to be:

(a) A "mortgagee in possession" for any purpose; or

(b) Responsible for performing any of the obligations of the lessor under any lease; or

(c) Responsible for any waste committed by lessees or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair or control of the Property; or

(d) Except in cases of Beneficiary's gross negligence or willful misconduct, liable in any manner for the Property or the use, occupancy, enjoyment or operation of all or any part of it.

26. **Representations and Warranties**. Trustor represents and warrants that:

(a) Subject to the Permitted Exceptions (as defined in the Loan Agreement), Trustor lawfully possesses and holds fee simple title to all of the Premises and Improvements;

(b) Trustor has the full and unlimited power, right and authority to encumber the Property and assign the rents; and

(c) This Deed of Trust, when properly recorded in the appropriate records, creates a first and prior lien on the Property, subject only to the Permitted Exceptions (as defined in the Agreement) and any mechanics' liens insured against by a tile policy in accordance with Section 2.14 of the Agreement.

27. **Subrogation**. Beneficiary shall be subrogated to the liens of all encumbrances, whether released of record or not, which are discharged in whole or in part by Beneficiary in accordance with this Deed of Trust or with the proceeds of any loan secured by this Deed of Trust.

28. **Postponement of Trustee's Sale**. Trustee may postpone the sale of all or any portion of the Property in accordance with California Civil Code §2924g, by public announcement at the time and place of sale, and from time to time thereafter Trustee may postpone such sale by public announcement at the time fixed by the preceding postponement or as otherwise allowed by said statute.

29. **Governing Law**. The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder. The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

30. **Agreement Changed Only By Writing**. This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

-12-

**31.**    __Time__.    Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

**32.**    __Notice__.    Except for any notice required under applicable law to be given in another manner:

(a)    any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph 32(c),

(b)    any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

>    Beach Orangethorpe Source, LLC
>    3100 E. Imperial Highway
>    Lynwood, California 90302
>    Attention: Min Chae and/or Donald Chae
>    Telephone: 310-631-6789
>
>    with a copy to:
>
>    Dentons US LLP
>    233 South Wacker Drive, Suite 7800
>    Chicago, Illinois 60606
>    Attention: Steven R. Davidson
>    Telephone: 312-876-8238

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph 32(c);

(c)    Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing mailed, telegraphed, delivered, or sent by telex, facsimile, cable or other form of electronic written communication to the appropriate party at its respective address.  Any notice given by telegram, telex, facsimile, cable or other form of electronic written communication must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address.  If any notice is given by mail it will be effective when deposited in the mails with first-class or airmail postage prepaid; if given by telegraph or cable, when delivered to the telegraph company with charges prepaid; if given by telex, facsimile or other form of electronic written communication, when sent; or if given by personal delivery, when delivered.

**33.**    __Titles, Captions, And Headings__. The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

34.    **Severability Of Provisions**.  If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

35.    **Acknowledgment Of Trustor's Understanding Of Deed Of Trust**.   The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor.  Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

36.    **Lender's Reliance**.  The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

37.    **Security Agreement**.

(a)    Security Interest.  This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, subject to Paragraph 13 above, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures.  To this end, Trustor shall and hereby does grant to Lender, a first priority security interest, subject to Paragraph 13 above, in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements.  Trustor shall deliver to Lender, in form and substance satisfactory to Lender, such financing statements and further assurances as Lender may, from time to time, require to create, perfect, and preserve Lender's security interest herein granted, and Lender may cause such financing statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

(c)    Remedies on Default.  Upon default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole

discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

(d)    **Fixture Filing**. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph 32 above, subject to change as therein provided.

**38.    Sale Of Interest**. Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties. The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

**39.    Separate Property**. Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

**40.    Books And Records**. Trustor shall keep and maintain copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein. Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, from time to time, at reasonable times after five (5) days notice to Trustor.

**41.    Inspection, Appraisal, And Assessments**. Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default, (a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto. If Trustor is then in default under this Deed of Trust, all costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust.

**42.    WAIVER**. FURTHER, TRUSTOR AND LENDER, TO THE EXTENT PERMITTED BY LAW, EACH HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS DEED OF TRUST, THE NOTE OR ANY CONDUCT, ACT OR OMISSION OF LENDER OR TRUSTOR, OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, MANAGERS, MEMBERS, TRUSTEES, EMPLOYEES OR AGENTS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER OR TRUSTOR, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

-15-

{00882024.DOC}

**43.** **Definitions**.    All terms not defined herein shall be defined as set forth in the Agreement.

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

**44.** **Partial Reconveyance**.    This Deed of Trust is given subject to the rights and obligations of Trustor and Beneficiary under Section 3.18.3 of the Agreement, which requires Beneficiary to partially reconvey this Deed of Trust under the circumstances specified in said Section 3.18.3.

[SIGNATURE PAGE FOLLOWS]

{00882024.DOC}

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing as of the date first above written.

**TRUSTOR:**

THE SOURCE AT BEACH, LLC,
a California limited liability company

By: M+D Properties,
    a California corporation,
    its Manager

By:_____
    Donald Chae, CEO

**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

STATE OF CALIFORNIA       )
                                         ) ss:

COUNTY OF LOS ANGELES   )

On _____, before me, _____, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



_____
Notary Public

My Commission expires: _____

# EXHIBIT "A"
## LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Orange, City of Buena Park, and described as follows:**

<u>**PARCEL 1:**</u>

*Parcel 1A:*
THAT PORTION OF LOT 4 IN BLOCK 60 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18,PAGE 50 OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF SAID LOT 4, SAID POINT BEING THE SOUTHEAST CORNER OF LOT 12 OF TRACT NO. 551, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, RUNNING THENCE EAST ALONG THE EASTERLY PROLONGATION OF THE SOUTH LINE OF SAID LOT 12, 135 FEET; THENCE NORTHERLY PARALLEL TO THE WEST LINE OF SAID LOT 4, 125 FEET, MORE OR LESS, TO THE NORTH LINE OF THE EASEMENT CONVEYED TO THE ORANGE COUNTY FLOOD DISTRICT BY DEED RECORDED OCTOBER 17, 1939 IN BOOK 1012, PAGE 560 OF OFFICIAL RECORDS, AND AS SHOWN ON A MAP FILED IN BOOK 17, PAGE 29 OF RECORD OF SURVEYS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE WESTERLY ALONG SAID NORTHERLY LINE TO ITS INTERSECTION WITH THE WESTERLY LINE OF SAID LOT 4; THENCE SOUTHERLY ALONG SAID WESTERLY LINE TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEEDS OF RECORD.

APN: 276-322-16

*Parcel 1B:*
THE EAST 50 FEET OF LOT 21 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-4

*Parcel 1C:*

{00882024.DOC}

LOT 20 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-05

*Parcel 1D:*
LOT 17 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS. IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET. WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

APN: 276-323-08

*Parcel 1E:*
LOT 15 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

APN: 276-323-10

*Parcel 1F:*
LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, CALIFORNIA, TOGETHER WITH THE SOUTH 30 FEET OF THE STREET ADJOINING SAID LOT ON THE NORTH ABANDONED BY ORDER OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ON AUGUST 2, 1911.

EXCEPTING THEREFROM THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET THEREOF.

ALSO EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

{00882024.DOC}

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2, SAID POINT BEING IN THE EAST LINE OF BEACH BOULEVARD (FORMERLY GRANT AVENUE) 108 FEET IN WIDTH AND RUNNING; THENCE NORTHERLY ALONG SAID EAST LINE, 30 FEET TO THE NORTH LINE OF THE SOUTH 30 FEET OF THE ABANDONED STREET HEREINBEFORE MENTIONED; THENCE EASTERLY ALONG SAID NORTH LINE 225 FEET; THENCE SOUTHERLY PARALLEL WITH THE EAST LINE OF BEACH BOULEVARD 170 FEET; THENCE WESTERLY PARALLEL WITH THE NORTH LINE OF SAID LOT 2, A DISTANCE OF 225 FEET TO THE EAST LINE OF BEACH BOULEVARD; THENCE NORTHERLY ALONG SAID EAST LINE 140 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THE WEST 250 FEET OF THE SOUTH 259.21 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APNS: 276-361-02; 276-361-03 AND 276-361-09

*Parcel 1G:*
THE SOUTH 100 FEET OF THE WEST 156 FEET OF LOT 2, IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50, 51, AND 52 OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY.

APN: 276-361-06

*Parcel 1H-A:*
THE WEST 250 FEET OF THE SOUTH 170.00 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK. COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP THEREOF RECORDED IN BOOK 18, PAGES 50 TO 52 INCLUSIVE, MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

EXCEPT THEREFROM THE NORTH 70.00 FEET OF THE WEST 200.00 FEET THEREOF.

ALSO EXCEPT THEREFROM THE SOUTH 100.00 FEET OF THE WEST 156.00 FEET THEREOF.

ALSO EXCEPT THEREFROM THE EAST 20.00 FEET OF THE WEST 176.00 FEET OF THE SOUTH 100.00 FEET THEREOF.

APN: 276-361-08

*Parcel 1H-B:*

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS AND VEHICULAR TRAFFIC OVER THE EAST 20.00 FEET OF THE WEST 176.00 FEET OF THE SOUTH 100.00 FEET OF LOT 2 IN - BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK. COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP THEREOF RECORDED IN BOOK 18, PAGE 50, MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

*Parcel 1I:*

THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

SAID LAND IS ALSO SHOWN ON A LICENSED SURVEYOR'S MAP FILED IN BOOK 15, PAGE 27 OF RECORDS OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF ORANGE COUNTY, STATE OF CALIFORNIA.

EXCEPTING THEREFROM THE NORTHERLY 20.00 FEET OF THE SOUTHERLY 30.00 FEET OF THE EASTERLY 65 FEET OF THE SOUTHERLY 120 FEET OF LOT 2 IN BLOCK 61 OF BUENA PARK, AS SHOWN ON A MAP RECORDED IN BOOK 18, PAGES 50 TO 52, INCLUSIVE OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA.

APN: 276-361-10

*PARCEL 1J:*

LOT 9 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-11

*PARCEL 1K:*

LOT 8 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-12

*PARCEL 1L:*

LOT 7 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-13

*PARCEL 1M:*

LOT 6 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-14

*PARCEL 1N:*

LOT 5 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-15

*PARCEL 1O:*

LOT 4 AND THE SOUTH 5 FEET OF LOT 3 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS. IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-16

*PARCEL 1P:*

LOT 3 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP  RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTH 5 FEET THEREOF. -

APN: 276-361-17

***PARCEL 1Q:***
LOT 2 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-361-18

***Parcel 1R:***
*PARCEL 1R-A:*

LOT 13 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

*PARCEL 1R-B:*
THAT PORTION OF THE EAST 15 FEET OF THE WEST 330 FEET OF LOT 1 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE 50 ET SEQ. OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA, INCLUDED WITHIN THE EASTERLY PROLONGATION OF THE NORTH AND SOUTH LINE OF LOT 13 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-362-04

**PARCEL 2:**

***Parcel 2A:***
THE WEST 6 FEET OF LOT 21 AND THE EAST 40 FEET OF LOTS 22, 23 AND 24 OF TRACT 551, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGE 43 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-03

***Parcel 2B:***
LOT 18 OF TRACT 551, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGE 43 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 276-323-07

*Parcel 2C:*
LOT 1 OF TRACT 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

APN: 276-323-14

## PARCEL 3:

*Parcel 3A:*
THE WEST 250.00 FEET OF THE SOUTH 259.21 FEET OF LOT 2 IN BLOCK 61 OF
BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 50, 51 AND 52 OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

EXCEPTING THEREFROM THE SOUTH 170.00 FEET THEREOF.

APN: 276-361-04

*Parcel 3B:*
THE NORTHERLY 70.00 FEET OF THE SOUTHERLY 170.00 FEET OF THE WESTERLY
200 FEET OF LOT 2, BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK,
COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED
IN BOOK 18 PAGE(S) 50, OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL WATER RIGHTS, CLAIMS OR TITLE TO WATER,
WHETHER OR NOT SHOWN BY THE PUBLIC RECORDS.

APN: 276-361-05

*Parcel 3C:*
THE EAST 20 FEET OF THE WEST 176 FEET OF THE SOUTH 100 FEET OF LOT 2 IN
BLOCK 61 OF BUENA PARK, AS SHOWN ON A MAP RECORDED IN BOOK 18 PAGE(S)
50 OF MISCELLANEOUS RECORDS, OF LOS ANGELES COUNTY, STATE OF
CALIFORNIA.

APN: 276-361-07

**PARCEL 4:**

THAT PORTION OF LOT 2 IN BLOCK 61 OF "BUENA PARK", IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGE 50 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2, SAID POINT BEING IN THE EAST LINE OF GRAND AVENUE (BEING 108 FEET WIDE); AND RUNNING THENCE EASTERLY ALONG THE NORTH LINE OF SAID LOT 2, 225 FEET; THENCE SOUTHERLY ALONG A LINE PARALLEL TO THE EAST LINE OF SAID GRAND AVENUE, 140 FEET; THENCE WESTERLY ALONG A LINE PARALLEL TO SAID NORTHERLY LINE 225 FEET; THENCE NORTHERLY ALONG THE EAST LINE OF GRAND AVENUE, 140 FEET TO THE POINT OF BEGINNING, TOGETHER WITH THE SOUTH 30 FEET OF THE WEST 225 FEET OF STREET ADJOINING ON THE NORTH ABANDONED BY ORDER OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY. CALIFORNIA, AUGUST 2, 1911, ADJOINING SAID LOT 2.

APN: 276-361-01

RECORDING REQUESTED BY

First American Title Insurance Company

AND WHEN RECORDED MAIL TO

First American Title Insurance Company
4380 La Jolla Village Drive
Suite 110
San Diego, CA  92122

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

||||||||||||||||||||||||||||||||||||||||||||||  12.00
* S R 0 0 0 9 7 2 1 1 8 7 $ *
**2017000507828 8:00 am 11/27/17**
37 411 S15 F13    2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

---

Trustee Sale No. 876524    Loan No.    Title Order No.

Space above this line for recorder's use only

## SUBSTITUTION OF TRUSTEE

WHEREAS, The Source at Beach, LLC, was the original Trustor, Stewart Title of California, Inc., was the original Trustee, and Beach Orangethorpe Source, LLC., was the original Beneficiary under that certain Deed of Trust dated 01/06/2014, recorded on April 29, 2014 as Document Number 2014000163784 of official records in the office of the Recorder of Orange County, California, and

WHEREAS, Beach Orangethorpe Source, LLC., the undersigned, is the present Beneficiary under said Deed of Trust, and,

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and stead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes First American Title Insurance Company, 4380 La Jolla Village Drive, Suite 110, San Diego, CA  92122, as Trustee of Said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

DATE: __11/1/2017__

Beach Orangethorpe Source, LLC

_JOHN ZHENG_

1

194

Trustee Sale No. 876524
Loan No.
Title Order No.

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfullness, accuracy, or validity of that document. |
|---|

STATE OF ___California___

COUNTY OF ___Los Angeles___

On _November, 2017_ before me, ___Hong Yim___, a Notary Public in and for said county, personally appeared _John Zheng_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public in and for said County and State

HONG YIM
COMM. # 2057429
NOTARY PUBLIC·CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. February 10, 2018
GSM1

Hugh Nguyen, Clerk-Recorder

51.00

*$R0010352289$*

**2018000338556  3:55 pm  09/14/18**
**63 406 D11 A36 S02 U08   6**
**0.00 0.00 0.00 0.00 15.00 0.00 0.000.000.00 12.00**

RECORDING REQUESTED
AND WHEN RECORDED MAIL TO:

Dentons US LLP
233 S. Wacker Dr #5900
Chicago, IL 60606
Attn: Steven R. Davidson

*THIS SPACE IS FOR RECORDERS USE ONLY*

First Amendment to Deed of Trust, Assignment
of Rents, Security Agreement and Fixture Filing

(Title of Document)

*Per Government Code 27388.1 (a)(1) "A fee of $75 dollars shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel or real property. The fee shall not exceed two hundred twenty-five dollars ($225)"*

Reason for Exemption:

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**Failure to include an exemption reason will result in the imposition of the $75.00 Building Homes and Job Act Fee.**

RECORDING REQUESTED BY
STEWART TITLE GUARANTY COMPANY

18000480712

**RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:**

DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Attention: Steven R. Davidson

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**FIRST AMENDMENT TO
DEED OF TRUST, ASSIGNMENT OF RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

This First Amendment to Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this **"Amendment"**) is made to that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of Janauary 6, 2014, executed by THE SOURCE AT BEACH, LLC, as Borrower and Trustor (**"Trustor"**), with BEACH ORANGETHORPE SOURCE, LLC, as Lender and Beneficiary (**"Beneficiary"**), and recorded on April 29, 2014 in the Official Records of Orange County, as Instrument number 2014000163784 (the **"Deed of Trust"**).

The Deed of Trust is hereby amended as follows:

1.  Clause (1) of "FOR THE PURPOSE OF SECURING" of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

    "(1) Payment of the sum of $10,211,098.59, as such amount may from time to time be increased pursuant to the terms of the Agreement, hereafter defined, together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Amended and Restated Promissory Note, in the principal amount of $10,211,098.59, executed by Trustor and payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms) (individually and collectively, the **"Note"**);"

2.  Clause (2) of "FOR THE PURPOSE OF SECURING" of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

    "(2)  Performance of each and every term, covenant and condition of that certain Amended and Restated Loan Agreement, dated as of September 14, 2018, by and between Trustor and Lender, and all modifications, renewals or extensions thereof (the **"Agreement"**);"

3.  Section 32(b) of the Deed of Trust is hereby amended and restated in its entirety to read as follows:

107631227\V-1

"(b)  any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

Beach Orangethorpe Source, LLC
c/o Quintus Investment Management (Hong Kong) Limited
1704A, 17/F, Tower 2, Admiralty Centre
18 Harcourt Road, Admiralty
Hong Kong
Email: boffice@quintuscap.com

with a copy to:

Dentons US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Attention: Steven R. Davidson
Telephone: 312-876-8238

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph 32(c);"

4.  Section 44 of the Deed of Trust is hereby deleted in its entirety.

Except as hereby amended, the Deed of Trust shall remain in full force and effect.

[SIGNATURE PAGE FOLLOWS]

107631227\V-1

IN WITNESS WHEREOF, Beneficiary and Trustor have executed this Amendment as of
_____, 2018.

TRUSTOR:

THE SOURCE AT BEACH, LLC,
a California limited liability company

By:    M+D Properties,
a California corporation,
its Manager

By: _____
Name: Donald Chae
Title:  CEO

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

STATE OF _____        )
                                ) ss:
COUNTY OF _____         )

On _____, before me, _____, a Notary Public, personally appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or
the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

_____
Notary Public

First Amendment to the Deed of Trust

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of _LOS ANGELES_____                      )

On _9/12/2018_____ before me, _JUAN JOSE ENCISO_____
       *Date*                  *Here Insert Name and Title of the Officer*

personally appeared _____DONALD CHAE_____
                              *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> JUAN JOSE ENCISO
> Commission # 2128912
> Notary Public - California
> Los Angeles County
> My Comm. Expires Oct 24, 2019

Signature _____
                  *Signature of Notary Public*

*Place Notary Seal Above*

――――――――――――――――― **OPTIONAL** ―――――――――――――――――
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _FIRST AMENDMENT TO THE DEED OF TRUST_
Document Date: _9/12/2018_____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

BENEFICIARY:

BEACH ORANGETHORPE SOURCE, LLC
a California limited liability company

By: _____
Name: John Zheng
Title: Authorized Signatory

---

A notary public or other officer completing
this certificate verifies only the identity of the
individual who signed the document to
which this certificate is attached, and not
the truthfulness, accuracy, or validity
of that document.

STATE OF _California_         )
                             ) ss:
COUNTY OF _Los Angeles_      )

On 13 Day of August 2018 before me, ___Hong Yim___, a Notary Public, personally appeared ___John Zheng___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/capacities, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

HONG YIM
Notary Public – California
Los Angeles County
Commission # 2228744
My Comm. Expires Feb 10, 2022

Amendment to Deed of Trust

201

# Exhibit C

# Chicago Title Company

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone: (213) 488-4300 ● Fax: (213) 488-4377

Issuing Policies of Chicago Title Insurance Company

ORDER NO.: **00157121-994-LT2-JC**

Chicago Title Company / Los Angeles
725 S. Figueroa St., Suite 200
Los Angeles, CA 90017
ATTN: Mike Slinger
Email: mike.slinger@ctt.com
REF:

Escrow/Customer Phone: **(213) 488-4300**

Title Officer: Jordan Curiel (LA/Comm)
Title Officer Phone: (213) 488-4371
Title Officer Fax: (213) 612-4171
Title Officer Email: UnitX23@ctt.com

PROPERTY:    **THE SOURCE AT BEACH, LLC, BUENA PARK, CA**

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, **Chicago Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a Florida corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Chicago Title Company

By:
    Authorized Signature

By:
Randy Quirk
President

ATTEST
Marjorie Nemzura
Corporate Secretary

# Chicago Title Company

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone:  (213) 488-4300  ●  Fax:  (213) 488-4377

## PRELIMINARY REPORT

---

**EFFECTIVE DATE:**          **August 12, 2021 at 7:30 a.m.**

**ORDER NO.:  00157121-994-LT2-JC**

The form of policy or policies of title insurance contemplated by this report is:

**ALTA Standard Loan Policy (6-17-06)**

1.      THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

**Fee Estate**

2.      TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS <u>VESTED IN:</u>

**THE SOURCE AT BEACH LLC, a California limited liability company**

3.      THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

**See Exhibit A attached hereto and made a part hereof.**

PRELIMINARY REPORT                                                                                 Chicago Title Company
YOUR REFERENCE:                                                                          ORDER NO.:  00157121-994-LT2-JC

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BUENA PARK, IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1: (APN: 276-323-04)

THE EAST 50 FEET OF LOT 21 OF TRACT NO. 551 IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

PARCEL 2: (APN: 276-323-05)

LOT 20 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 3: (APN: 276-323-08)

LOT 17 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

PARCEL 4: (APN 276-323-10)

LOT 15 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, GAS, MINERALS AND HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD. APN:

PARCEL 5: (APN: 276-322-16)

THAT PORTION OF LOT 4, IN BLOCK 60, OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 18, PAGES 50 THROUGH 52, INCLUSIVE, OF MISCELLANEOUS RECORDS IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF SAID LOT 4, SAID POINT BEING THE SOUTHEAST CORNER OF LOT 12 OF TRACT NO. 551, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE ORANGE COUNTY RECORDER, RUNNING THENCE EAST ALONG THE EASTERLY PROLONGATION OF THE SOUTH LINE OF SAID LOT 12, 135 FEET; THENCE NORTHERLY PARALLEL TO THE WEST LINE OF SAID LOT 4, 125 FEET, MORE OR LESS, TO THE NORTH LINE OF THE EASEMENT CONVEYED TO THE ORANGE COUNTY FLOOD DISTRICT BY DEED RECORDED OCTOBER 17, 1939 IN BOOK 1012, PAGE 560 OF OFFICIAL RECORDS, AND AS SHOWN ON A MAP FILED IN BOOK 17, PAGE 29 OF RECORD OF SURVEYS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE WESTERLY ALONG SAID NORTHERLY LINE TO ITS INTERSECTION WITH THE WESTERLY LINE OF SAID LOT 4; THENCE SOUTHERLY ALONG SAID WESTERLY LINE TO THE POINT OF BEGINNING.

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

## EXHIBIT A
### (Continued)

EXCEPTING THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEEDS OF RECORD.

PARCEL 6: (APN: 276-362-04)

(PARCEL A):

LOT 13 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

(PARCEL B):

THAT PORTION OF THE EAST 15 FEET OF THE WEST 330 FEET OF LOT 1, IN BLOCK 61, OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 ET SEQ. OF MISCELLANEOUS RECORDS OF LOS ANGELES COUNTY, STATE OF CALIFORNIA, INCLUDED WITHIN THE EASTERLY PROLONGATIONS OF THE NORTH AND SOUTH LINES OF SAID LOT 13 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 7: (APN: 276-323-14)

LOT 1 OF TRACT NO. 1756, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 60, PAGES 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 8: (APN: 276-323-07)

LOT 18 OF TRACT NO. 551, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 9: (APN: 276-323-03)

THE WEST 6 FEET OF LOT 21 AND THE EAST 40 FEET OF LOTS 22, 23 AND 24 OF TRACT NO. 551 IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 19, PAGE 43 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 10: (APNS: 276-361-50, 276-361-51, 276-371-53)

PARCEL 1 OF PARCEL MAP NO. 2014-173 FILED MAY 30, 2017, IN BOOK 391, PAGE 4 OF PARCEL MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 11: (APNS: 276-361-52, 276-361-54, 276-361-55, 276-361-58, 276-361-61)

PARCEL 2 OF PARCEL MAP NO. 2014-173 FILED MAY 30, 2017, IN BOOK 391, PAGE 4 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 12: (APNS 276-361-23, 276-361-24, 276-361-25, 276-361-26, 276-361-27, 276-361-28)

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

## EXHIBIT A
### (Continued)

PARCEL 3 OF PARCEL MAP NO. 2014-173 FILED MAY 30, 2017, IN BOOK 391, PAGE 4 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY,

PARCEL 13: (APNS 276-361-29, 276-361-30, 276-361-32, 276-361-33, 276-361-35 THRU 276-361-45, 276-361-56, 276-361-57, 276-361-59, 276-361-60)

PARCEL 4 OF PARCEL MAP NO. 2014-173 FILED MAY 30, 2017, IN BOOK 391, PAGE 4 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

A.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2021-2022.

B.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

C.  Supplemental taxes, including any personal property taxes and any assessments collected with taxes, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California, are as follows:

Tax Identification No.:   276-361-52 (underlying APN 276-361-46)
Fiscal Year:              2021-2022
1st Installment:          $6,231.04, Paid
Delinquent:               June 30, 2021
2nd Installment:          $6,231.04, Unpaid
Penalty:                  $646.10
Delinquent:               November 1, 2021
Code Area:                14-014
Supplemental Bill No.:    0200

1.  Water rights, claims or title to water, whether or not disclosed by the public records.

2.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:        Orange County Flood Control District, a public corporation
Purpose:           flood protection
Recording Date:    October 17, 1939
Recording No:      Book 1012, Page 560, Official Records
Affects:           that portion of said land described therein

Affects:           Parcel 5

3.  Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

Recording Date:    April 16, 1946
Recording No:      in Book 1407, Page 66 of Official Records

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

4.　　Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

　　　　Recording Date:　　　August 12, 1946
　　　　Recording No:　　　　in Book 1430, Page 449 of Official Records

5.　　Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

　　　　Recording Date:　　　March 24, 1948
　　　　Recording No:　　　　in Book 1741, Page 495 of Official Records

6.　　Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

　　　　Granted to:　　　　　County of Orange
　　　　Purpose:　　　　　　drainage pipeline
　　　　Recording Date:　　　January 8, 1952
　　　　Recording No:　　　　Book 2271, Page 594, Official Records
　　　　Affects:　　　　　　that portion of said land described therein

　　　　Affects:　　　　　　Parcel 5

7.　　Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

　　　　Granted to:　　　　　Pacific Telephone and Telegraph Company, a corporation
　　　　Purpose:　　　　　　public utilities
　　　　Recording No:　　　　Book 2938, Page 466, Official Records
　　　　Affects:　　　　　　that portion of said land described therein

8.　　Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

　　　　Granted to:　　　　　Pacific Telephone and Telegraph Company
　　　　Purpose:　　　　　　public utilities
　　　　Recording Date:　　　September 18, 1956
　　　　Recording No:　　　　125771, in Book 3648, Page 58 of Official Records
　　　　Affects:　　　　　　Portions of the Land, the exact location of which can be determined by examination of the above-mentioned instrument, which contains a complete legal description of the affected portions of said Land.

9.　　A non-exclusive easement for ingress and egress and vehicular traffic over the herein described land as disclosed by deed executed by Theresa J. Milt, a widow to Roger Burglin and Lois Jane Burglin, husband and wife, dated August 7, 1963 and recorded August 12, 1963 in Book 6670, Page 106 of Official Records, and in subsequent documents of record.

## EXCEPTIONS
### (Continued)

10.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

|  |  |
|---|---|
| Granted to: | Southern California Edison Company, a corporation |
| Purpose: | public utilities |
| Recording Date: | March 26, 1964 |
| Recording No: | Book 6978, Page 998, Official Records |
| Affects: | that portion of said land described therein |

        Affects:            Parcel 1

11.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

|  |  |
|---|---|
| Granted to: | Southern California Edison Company, a corporation |
| Purpose: | public utilities |
| Recording Date: | February 8, 1966 |
| Recording No: | Book 7834 Page 848, Official Records |
| Affects: | that portion of said land described therein |

        Affects:            Parcel 6

12.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

|  |  |
|---|---|
| Granted to: | Pacific Telephone and Telegraph Company, a corporation |
| Purpose: | public utilities |
| Recording Date: | March 29, 1966 |
| Recording No: | Book 7883, Page 449, Official Records |
| Affects: | that portion of said land described therein |

        Affects:            Parcel 6

13.    A notice that said Land is included within a project area of the Redevelopment Agency shown below, and that proceedings for the redevelopment of said project have been instituted under the Redevelopment Law (such redevelopment to proceed only after the adoption of the redevelopment plan) as disclosed by a document

|  |  |
|---|---|
| Recording Date: | November 17, 1981 |
| Recording No: | 18882, in Book 14293 Page 476, of Official Records |
| Redevelopment Agency: | City of Buena Park |

14.    A notice that said Land is included within a project area of the Redevelopment Agency shown below, and that proceedings for the redevelopment of said project have been instituted under the Redevelopment Law (such redevelopment to proceed only after the adoption of the redevelopment plan) as disclosed by a document

|  |  |
|---|---|
| Recording Date: | October 4, 1984 |
| Recording No: | 84-411958 of Official Records |
| Redevelopment Agency: | City of Buena Park |

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

## EXCEPTIONS
## (Continued)

15.     Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | Southern California Edison Company, a corporation |
| Purpose: | underground electrical supply systems and communication systems |
| Recording Date: | June 13, 1985 |
| Recording No: | 85-215346 of Official Records |
| Affects: | Portions of the Land, the exact location of which can be determined by examination of the above-mentioned instrument, which contains a complete legal description of the affected portions of said Land. |

16.     The Land described herein is included within a project area of the Redevelopment Agency shown below, and that proceedings for the redevelopment of said project have been instituted under the Redevelopment Law (such redevelopment to proceed only after the adoption of the Redevelopment Plan) as disclosed by a document.

| | |
|---|---|
| Recording Date: | April 20, 2007 |
| Recording No: | 2007000257354 of Official Records |
| Redevelopment Agency: | City of Buena Park |

17.     Matters contained in that certain document

| | |
|---|---|
| Entitled: | Development Agreement No. DA08-003, Concerning Property Located at 6940 Beach Boulevard, Buena Park, California |
| Recording Date: | November 17, 2008 |
| Recording No.: | 2008000537057 of Official Records |

Reference is hereby made to said document for full particulars.

# EXCEPTIONS
## (Continued)

18.     A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $40,000,000.00 |
| Dated: | June 23, 2011 |
| Trustor/Grantor | The Source at Beach, LLC, a California limited liability company |
| Trustee: | Chicago Title Company |
| Beneficiary: | Beach Orangethorpe, LLC, a California limited liability company |
| Recording Date: | June 23, 2011 |
| Recording No: | 2011000306739 of Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Executed by: | The Source at Beach, LLC and Beach Orangethorpe, LLC |
| Recording Date: | September 15, 2011 |
| Recording No: | 2011000458073 of Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Executed by: | The Source at Beach, LLC and Beach Orangethorpe, LLC |
| Recording Date: | October 28, 2011 |
| Recording No: | 2011000544533 of Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Executed by: | The Source at Beach, LLC and Beach Orangethorpe, LLC |
| Recording Date: | October 15, 2012 |
| Recording No: | 2012000625295 of Official Records |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | First American Title Insurance Company |
| Recording Date: | November 27, 2017 |
| Recording No: | 2017000507822, of Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Executed by: | The Source at Beach, LLC and Beach Orangethorpe, LLC |
| Recording Date: | September 14, 2018 |
| Recording No: | 2018000338553, of Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

## EXCEPTIONS
### (Continued)

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

19.     Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | Southern California Edison Company, a corporation |
| Purpose: | public utilities |
| Recording Date: | March 21, 2012 |
| Recording No: | 2012000162340, of Official Records |
| Affects: | Portions of the Land, the exact location of which can be determined by examination of the above-mentioned instrument, which contains a complete legal description of the affected portions of said Land. |
| | |
| Affects: | Parcel 9 |

20.     Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | Southern California Edison Company, a corporation |
| Purpose: | public utilities |
| Recording Date: | July 11, 2012 |
| Recording No: | 2012000392621 of Official Records |
| Affects: | Portions of the Land, the exact location of which can be determined by examination of the above-mentioned instrument, which contains a complete legal description of the affected portions of said Land. |

21.     Matters contained in that certain document

| | |
|---|---|
| Entitled: | License Agreement No. 2012-1 |
| Dated: | July 2, 2012 |
| Executed by: | City of Buena Park, a municipal corporation and Chevron Environmental Management Company |
| Recording Date: | July 19, 2012 |
| Recording No: | 2012000409615, Official Records |

Reference is hereby made to said document for full particulars.

22.     Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

| | |
|---|---|
| Entitled: | Disposition and Development Agreement |
| Recording Date: | September 11, 2012 |
| Recording No: | 2012000530408, of Official Records |
| | |
| and Re-Recording Date: | October 9, 2012 |
| and Re-Recording No: | 2012000609610, of Official Records |

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

23.    Matters contained in that certain document

Entitled:                Disposition and Development Agreement
Recording Date:          September 11, 2012
Recording No:            2012000530409 of Official Records

Reference is hereby made to said document for full particulars.

Re-Recording Date:       October 9, 2012
Re-Recording No:         2012000609611 of Official Records

24.    A deed of trust to secure an indebtedness in the amount shown below,

Amount:                  $40,000,000.00
Dated:                   October 8, 2012
Trustor/Grantor          The Source at Beach, LLC, a California limited liability company
Trustee:                 Stewart Title of California, Inc.
Beneficiary:             Beach Orangethorpe II, LLC, a California limited liability company
Recording Date:          October 15, 2012
Recording No:            2012000625296 of Official Records

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee:                 First American Title Insurance Company
Recording Date:          November 27, 2017
Recording No:            2017000507824, of Official Records

An agreement to modify the terms and provisions of said deed of trust as therein provided

Executed by:             The Source at Beach, LLC and Beach Orangethorpe II, LLC
Recording Date:          September 14, 2018
Recording No:            2018000338554, of Official Records

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.: 00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

25.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $40,000,000.00 |
| Dated: | October 8, 2012 |
| Trustor/Grantor | The Source at Beach, LLC, a California limited liability company |
| Trustee: | Stewart Title of California, Inc. |
| Beneficiary: | Beach Orangethorpe Ventures, LLC, a California limited liability company |
| Recording Date: | October 15, 2012 |
| Recording No: | 2012000625297 of Official Records |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | First American Title Insurance Company |
| Recording Date: | November 27, 2017 |
| Recording No: | 2017000507826, of Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Executed by: | The Source at Beach, LLC and Beach Orangethorpe Ventures, LLC |
| Recording Date: | September 14, 2018 |
| Recording No: | 2018000338555, of Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

26.    An unrecorded lease with certain terms, covenants, conditions and provisions set forth therein as disclosed by the document

    Entitled:                    Memorandum of Ground Lease
    Lessor:                     The Source at Beach, LLC, a California limited liability company
    Lessee:                     The Source Office, LLC, a California limited liability company
    Recording Date:        March 5, 2014
    Recording No:          201400084686, Official Records

    Ground Lessor's Consent, Estoppel Certificate and Fee Mortgagee Agreement

    Recording Date:        May 8, 2017
    Recording No:          2017000185901, Official Records

    Landlord's Release, Consent and Estoppel Certificate

    Recording Date:        September 23, 2019
    Recording No:          2019000364267, Official Records

    The present ownership of the leasehold created by said lease and other matters affecting the interest of the lessee are not shown herein.

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

27.     A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $10,000,000.00 |
| Dated: | January 6, 2014 |
| Trustor/Grantor | The Source at Beach, LLC |
| Trustee: | Stewart Title of California, Inc. |
| Beneficiary: | Beach Orangethorpe Source, LLC |
| Recording Date: | April 29, 2014 |
| Recording No: | 2014000163784 of Official Records |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | First American Title Insurance Company |
| Recording Date: | November 27, 2017 |
| Recording No: | 2017000507828, of Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Executed by: | The Source at Beach, LLC and Beach Orangethorpe Source, LLC |
| Recording Date: | September 14, 2018 |
| Recording No: | 2018000338556, of Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

28.     Reciprocal easements, for the purpose(s) shown below and rights incidental thereto as created by the
        following document:

        Document:               Declaration of Covenants, Conditions and Restrictions and Reciprocal Easement
                                Agreement
        Executed by:            The Source at Beach, LLC, and The Source Office, LLC
        Purpose:                As therein provided
        Recording Date:         March 5, 2014
        Recording No:           2014000084685 of Official Records
        Affects:                A portion of said land as more particularly described in said document.

        Amended and Restated Declaration of Covenants, Conditions and Restrictions and Reciprocal Easement
        Agreement

        Recording Date:         June 3, 2016
        Recording No:           2016000252445 of Official Records

        and Recording Date:     May 8, 2017
        and Recording No.:      2017000185903 of Official Records

29.     The matters contained in an instrument entitled "Intercreditor Agreement" dated January 6, 2014, by
        Beach Orangethorpe, LLC, a California limited liability company, Beach Orangethorpe II, LLC, a California
        limited liability company and Beach Orangethorpe Ventures, LLC, a California limited liability company
        upon the terms therein provided recorded April 29, 2014 as Instrument No. 2014000163785 of Official
        Records.

        Reference is hereby made to said document for full particulars.

30.     Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

        Granted to:             Southern California Edison Company, a corporation
        Purpose:                public utilities
        Recording Date:         June 25, 2014
        Recording No:           2014000249996 of Official Records
        Affects:                A portion of said land as more particularly described in said document

31.     Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

        Granted to:             Southern California Edison Company, a corporation
        Purpose:                public utilities
        Recording Date:         July 23, 2014
        Recording No:           2014000292902 of Official Records
        Affects:                A portion of said land as more particularly described in said document

32.     Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other matters shown
        on

        Map:                    Record of Survey
        Recording Date:         June 23, 2015
        Recording No:           in Book 277 Pages 37 and 38 of Record of Surveys

# EXCEPTIONS
## (Continued)

33.    The effect of the following:

The matters contained in an instrument entitled "Certificate of Completion" dated September 8, 2015, by and between The Successor Agency to the Community Redevelopment Agency of the City of Buena Park and The Source at Beach, LLC, a California limited liability company upon the terms therein provided recorded September 15, 2015 as Instrument No. 2015000477121 of Official Records.

34.    An unrecorded lease with certain terms, covenants, conditions and provisions set forth therein as disclosed by the document

| | |
|---|---|
| Entitled: | Memorandum of Ground Lease |
| Lessor: | The Source at Beach, LLC, a Delaware limited liability company |
| Lessee: | The Source Hotel, LLC, a California limited liability company |
| Recording Date: | May 16, 2016 |
| Recording No: | 2016000217348, Official Records |

Memorandum of the First Amendment to Ground Lease Agreement

| | |
|---|---|
| Recording Date: | July 5, 2018 |
| Recording No: | 2018000246367, Official Records |

Memorandum of The Second Amendment of Ground Lease Agreement

| | |
|---|---|
| Recording Date: | June 26, 2019 |
| Recording No: | 2019000225955, Official Records |

Ground Lessor's Consent, Estoppel Certificate And Fee Mortgagee Agreement

| | |
|---|---|
| Recording Date: | June 3, 2016 |
| Recording No: | 2016000252448, Official Records |

Amendment to Ground Lessor's Consent, Estoppel Certificate and Fee Mortgagee Agreement

| | |
|---|---|
| Recording Date: | July 5, 2018 |
| Recording No: | 2018000246364, Official Records |

Reference is hereby made to said document for full particulars.

The present ownership of the leasehold created by said lease and other matters affecting the interest of the lessee are not shown herein.

| | |
|---|---|
| Affects: | Parcel 13 |

## EXCEPTIONS
### (Continued)

35.     Matters contained in that certain document

Entitled:                    Development Agreement No. DA16-004, Concerning Billboards To Be Located at 6940 and 6555 Beach Boulevard, Buena Park, California
Recording Date:              December 9, 2016
Recording No:                2016000623941 of Official Records

Reference is hereby made to said document for full particulars.

Affects:                     The herein described Land and other land.

36.     Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:                  Southern California Edison Company, a corporation
Purpose:                     public utilities
Recording Date:              November 6, 2019
Recording No:                2019000440343 of Official Records
Affects:                     Portions of the Land, the exact location of which can be determined by examination of the above-mentioned instrument, which contains a complete legal description of the affected portions of said Land.

Affects:                     Parcel 1

37.     Easement(s) for the purpose(s) shown below and rights incidental thereto, as delineated on or as offered for dedication on

Map/Plat:                    Tract 1756
Recording No:                in Book 60, Pages 20 and 21 of Maps
Purpose:                     Public utilities and rights incidental thereto
Affects:                     that portion of said land designated and delineated thereon

38.     A claim of mechanic's lien or materialman's lien

Claimant:                    Solid Construction Company, Inc.
Amount:                      $700,000.00
Recording Date:              October 10, 2019
Recording No:                2019000396457 of Official Records

A Notice of Pending Action to foreclose said lien

County:                      Orange
Court:                       Superior
Case No.:                    30-2020-01166792-CU-OR-CJC
Recording Date:              November 2, 2020
Recording No:                2020000624988, of Official Records

39.     A claim of mechanic's lien or materialman's lien

Claimant:                    3D Design Industries Inc., dba Amc cabinetry
Amount:                      $113,974.57
Recording Date:              November 12, 2019
Recording No:                2019000449075 of Official Records

## EXCEPTIONS
## (Continued)

40.    A claim of mechanic's lien or materialman's lien

Claimant:              Resco Electric Inc.
Amount:                $84,305.87
Recording Date:        December 5, 2019
Recording No:          2019000508145 of Official Records

A Notice of Pending Action to foreclose said lien

County:                Orange
Court:                 Superior
Case No.:              30-2020-01135027-CU-OR-CJC
Recording Date:        March 3, 2020
Recording No:          20200000094236 of Official Records

41.    A claim of mechanic's lien or materialman's lien

Claimant:              Resco Electric Inc.
Amount:                $9,664.70
Recording Date:        January 27, 2020
Recording No:          2020000033753 of Official Records

A Notice of Pending Action to foreclose said lien

County:                Orange
Court:                 Superior
Case No.:              30-2020-01135027-CU-OR-CJC
Recording Date:        March 3, 2020
Recording No:          20200000094236 of Official Records

42.    A claim of mechanic's lien or materialman's lien

Claimant:              Resco Electric Inc.
Amount:                $6,046.10
Recording Date:        January 27, 2020
Recording No:          2020000033754 of Official Records

A Notice of Pending Action to foreclose said lien

County:                Orange
Court:                 Superior
Case No.:              30-2020-01135027-CU-OR-CJC
Recording Date:        March 3, 2020
Recording No:          20200000094236 of Official Records

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

43. A claim of mechanic's lien or materialman's lien

   | | |
   |---|---|
   | Claimant: | Resco Electric Inc. |
   | Amount: | $5,615.61 |
   | Recording Date: | January 27, 2020 |
   | Recording No: | 2020000033756 of Official Records |

   A Notice of Pending Action to foreclose said lien

   | | |
   |---|---|
   | County: | Orange |
   | Court: | Superior |
   | Case No.: | 30-2020-01135027-CU-OR-CJC |
   | Recording Date: | March 3, 2020 |
   | Recording No: | 20200000094236 of Official Records |

44. A claim of mechanic's lien or materialman's lien

   | | |
   |---|---|
   | Claimant: | Resco Electric Inc. |
   | Amount: | $8,231.54 |
   | Recording Date: | January 27, 2020 |
   | Recording No: | 2020000033757 of Official Records |

   A Notice of Pending Action to foreclose said lien

   | | |
   |---|---|
   | County: | Orange |
   | Court: | Superior |
   | Case No.: | 30-2020-01135027-CU-OR-CJC |
   | Recording Date: | March 3, 2020 |
   | Recording No: | 20200000094236 of Official Records |

45. A claim of mechanic's lien or materialman's lien

   | | |
   |---|---|
   | Claimant: | Resco Electric Inc. |
   | Amount: | $16,837.25 |
   | Recording Date: | January 27, 2020 |
   | Recording No: | 2020000033758 of Official Records |

   A Notice of Pending Action to foreclose said lien

   | | |
   |---|---|
   | County: | Orange |
   | Court: | Superior |
   | Case No.: | 30-2020-01135027-CU-OR-CJC |
   | Recording Date: | March 3, 2020 |
   | Recording No: | 20200000094236 of Official Records |

# EXCEPTIONS
## (Continued)

46.     A claim of mechanic's lien or materialman's lien

Claimant:              Resco Electric Inc.
Amount:               $6,177.03
Recording Date:        January 27, 2020
Recording No:          2020000033759 of Official Records

A Notice of Pending Action to foreclose said lien

County:                Orange
Court:                 Superior
Case No.:              30-2020-01135027-CU-OR-CJC
Recording Date:        March 3, 2020
Recording No:          20200000094236 of Official Records

47.     A claim of mechanic's lien or materialman's lien

Claimant:              Resco Electric Inc.
Amount:               $6,018.84
Recording Date:        January 27, 2020
Recording No:          2020000033760 of Official Records

A Notice of Pending Action to foreclose said lien

County:                Orange
Court:                 Superior
Case No.:              30-2020-01135027-CU-OR-CJC
Recording Date:        March 3, 2020
Recording No:          20200000094236 of Official Records

48.     A claim of mechanic's lien or materialman's lien

Claimant:              Resco Electric Inc.
Amount:               $3,543.26
Recording Date:        January 27, 2020
Recording No:          2020000033761 of Official Records

A Notice of Pending Action to foreclose said lien

County:                Orange
Court:                 Superior
Case No.:              30-2020-01135027-CU-OR-CJC
Recording Date:        March 3, 2020
Recording No:          20200000094236 of Official Records

## EXCEPTIONS
## (Continued)

49.     A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Resco Electric Inc. |
| Amount: | $7,282.23 |
| Recording Date: | January 27, 2020 |
| Recording No: | 2020000033762 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Orange |
| Court: | Superior |
| Case No.: | 30-2020-01135027-CU-OR-CJC |
| Recording Date: | March 3, 2020 |
| Recording No: | 20200000094236 of Official Records |

50.     A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Resco Electric Inc. |
| Amount: | $10,353.24 |
| Recording Date: | January 27, 2020 |
| Recording No: | 2020000033763 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Orange |
| Court: | Superior |
| Case No.: | 30-2020-01135027-CU-OR-CJC |
| Recording Date: | March 3, 2020 |
| Recording No: | 20200000094236 of Official Records |

51.     A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Solid Construction Company, Inc. |
| Amount: | $700,000.00 |
| Recording Date: | January 28, 2020 |
| Recording No: | 2020000036952 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Orange |
| Court: | Superior |
| Case No.: | 30-2020-01166792-CU-OR-CJC |
| Recording Date: | November 2, 2020 |
| Recording No: | 2020000624988, of Official Records |

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

52.    A claim of mechanic's lien or materialman's lien

Claimant:                Sunbelt Controls, Inc.
Amount:                  $234,653.00
Recording Date:          January 31, 2020
Recording No:            2020000043007 of Official Records

A Notice of Pending Action to foreclose said lien

County:                  Orange
Court:                   Superior
Case No.:                30-2020-01143598-CU-MC-CJC
Recording Date:          September 8, 2020
Recording No:            2020000471920 of Official Records

53.    A claim of mechanic's lien or materialman's lien

Claimant:                Iron Mechanical, Inc.
Amount:                  $88,182.00
Recording Date:          April 17, 2020
Recording No:            2020000174359 of Official Records

54.    A claim of mechanic's lien or materialman's lien

Claimant:                Iron Mechanical, Inc.
Amount:                  $773,230.09
Recording Date:          April 17, 2020
Recording No:            2020000174360 of Official Records

55.    A claim of mechanic's lien or materialman's lien

Claimant:                PDG Wallcoverings
Amount:                  $56,927.20
Recording Date:          May 28, 2020
Recording No:            2020000241399 of Official Records

A Notice of Pending Action to foreclose said lien

County:                  Orange
Court:                   Superior
Case No.:                30-2020-01156958-CU-OR-CJC
Recording Date:          September 15, 2020
Recording No:            2020000495783 of Official Records

56.    A claim of mechanic's lien or materialman's lien

Claimant:                Buchanan Company
Amount:                  $5,344.06
Recording Date:          July 14, 2020
Recording No:            2020000334241 of Official Records

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

57.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | 3D Design Industries Inc., dba Amc cabinetry |
| Amount: | $99,121.57 |
| Recording Date: | July 14, 2020 |
| Recording No: | 2020000334313, of Official Records |

58.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Solid Construction Company, Inc. |
| Amount: | $700,000.00 |
| Recording Date: | July 31, 2020 |
| Recording No: | 2020000374403 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Orange |
| Court: | Superior |
| Case No.: | 30-2020-01166792-CU-OR-CJC |
| Recording Date: | November 2, 2020 |
| Recording No: | 2020000624988, of Official Records |

59.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | EKO Karaoke Lounge, Inc. |
| Amount: | $233,437.67 |
| Recording Date: | August 4, 2020 |
| Recording No: | 2020000380265 of Official Records |

60.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Evergreen Electric Construction, Inc. |
| Amount: | $528,260.00 |
| Recording Date: | August 5, 2020 |
| Recording No: | 2020000382748 of Official Records |

61.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Best Quality Painting |
| Amount: | $80,000.00 |
| Recording Date: | August 5, 2020 |
| Recording No: | 2020000383728 of Official Records |

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.: 00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

62.    A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Iron Mechanical, Inc. |
| Defendant: | Greenland Construction Service, LLC, a California limited liability company; The Source Hotel, LLC, a California limited liability company; The Source at Beach LLC, a California limited liability company; Beach Orangethorpe Hotel, LLC, a California limited liability company; Beach Orangethorpe Hotel II, LLC, a California limited liability company; Evertrust Bank, a California corporation; and does 1 through 90, inclusive |
| County: | Orange |
| Court: | Superior Court |
| Case No.: | 30-2020-01146448-CU-BC-CJC |
| Nature of Action: | foreclosure of mechanics' lien |
| Recording Date: | August 13, 2020 |
| Recording No: | 2020000407548, of Official Records |

An examination of said proceedings has been ordered. Upon completion the Company reserves the right to except additional items and/or make additional requirements.

63.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Aragon Construction, Inc. |
| Amount: | $66,124.23 |
| Recording Date: | August 21, 2020 |
| Recording No: | 2020000426872 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Orange |
| Court: | Superior |
| Case No.: | 30-2020-01165129-CU-MC-CJC |
| Recording Date: | November 9, 2020 |
| Recording No: | 2020000641757 of Official Records |

64.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Northstar Demolition and Remediation, LP |
| Amount: | $53,948.00 |
| Recording Date: | September 23, 2020 |
| Recording No: | 2020000517005 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Orange |
| Court: | Superior |
| Case No.: | 30-2020-01166304-CI-BC-CJC |
| Recording Date: | October 29, 2020 |
| Recording No: | 2020000615345, of Official Records |

# EXCEPTIONS
## (Continued)

65.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | California Access Scaffold, LLC |
| Amount: | $7,051.40 |
| Recording Date: | September 25, 2020 |
| Recording No: | 2020000523369 of Official Records |

66.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | California Access Scaffold, LLC |
| Amount: | $12,174.00 |
| Recording Date: | September 25, 2020 |
| Recording No: | 2020000523381 of Official Records |

67.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Blazing Structure Steel Inc. |
| Amount: | $220,000.00 |
| Recording Date: | October 14, 2020 |
| Recording No: | 2020000571564 of Official Records |

68.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Best Quality Painting |
| Amount: | $80,000.00 |
| Recording Date: | November 10, 2020 |
| Recording No: | 2020000646955, of Official Records |

69.  Any rights of parties in possession of said land, based on any unrecorded leases as disclosed by various Notices of Non-Responsibility of record, one of which recorded:

| | |
|---|---|
| Recording Date: | November 17, 2020 |
| Recording No: | 2020000662741, of Official Records |

This company will require that full copies of all unrecorded leases be submitted to us, together with all supplements, assignments and amendments, before issuing any policy of title insurance.

70.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Western Concrete Pumping, Inc. |
| Amount: | $9,544.23 |
| Recording Date: | November 19, 2020 |
| Recording No: | 20200671386, of Official Records |

72.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | American Integrated Resources, Inc. |
| Amount: | $13,690.00 |
| Recording Date: | December 7, 2020 |
| Recording No: | 2020000715590, of Official Records |

PRELIMINARY REPORT                                                                                    Chicago Title Company
YOUR REFERENCE:                                                                            ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

73.  A claim of mechanic's lien or materialman's lien

Claimant:              Mirae Construction Co.
Amount:                $10,000.00
Recording Date:        December 10, 2020
Recording No:          2020000726764, of Official Records

74.  A claim of mechanic's lien or materialman's lien

Claimant:              Mirae Construction Co.
Amount:                $20,000.00
Recording Date:        December 10, 2020
Recording No:          2020000726765, of Official Records

75.  A pending court action as disclosed by a recorded notice:

Plaintiff:             3D Design Industries, Inc. dba AMC Cabinetry
Defendant:             Greenland Construction Service, LLC, a California limited liability company; MD
                       Properties, LLC, a Delaware limited liability company; Beach Orangethorpe
                       Hotel, LLC, a California limited liability company; Donald Chae, an individual; and
                       does 1 through 300, inclusive
County:                Orange
Court:                 Superior Court
Case No.:              30-2020-01165120-CU-BC-CJC
Nature of Action:      title to and/or possession to that certain real property described therein
Recording Date:        January 13, 2021
Recording No:          2021000025802, of Official Records

An examination of said proceedings has been ordered. Upon completion the Company reserves the right
to except additional items and/or make additional requirements.

76.  A claim of mechanic's lien or materialman's lien

Claimant:              Glendale Plumbing and Fire Supply, Inc.
Amount:                $14,845.76
Recording Date:        January 29, 2021
Recording No:          2021000065144, of Official Records

77.  A claim of mechanic's lien or materialman's lien

Claimant:              Best Quality Painting
Amount:                $80,000.00
Recording Date:        February 11, 2021
Recording No:          2021000099809, of Official Records

78.  A claim of mechanic's lien or materialman's lien

Claimant:              Mirae Construction Co.
Amount:                $5,000.00
Recording Date:        March 16, 2021
Recording No:          2021000181342, of Official Records

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

79.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | L2 Specialties, Inc. |
| Amount: | $10,440.00 |
| Recording Date: | March 18, 2021 |
| Recording No: | 2021000188744, of Official Records |

80.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Best Quality Painting |
| Amount: | $80,000.00 |
| Recording Date: | June 14, 2021 |
| Recording No: | 2021000391556, of Official Records |

81.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Western Concrete Pumping, Inc. |
| Amount: | $9,544.23 |
| Recording Date: | February 24, 2021 |
| Recording No: | 2021000129010, Official Records |

82.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Mirae Construction Co. |
| Amount: | $20,000.00 |
| Recording Date: | March 16, 2021 |
| Recording No: | 2021000181343, Official Records |

83.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Best Quality Painting |
| Amount: | $80,000.00 |
| Recording Date: | June 14, 2021 |
| Recording No: | 2021000391556, Official Records |

84.    Any other claims for mechanics' or materialman's liens that may be recorded, by reason of a recent work of improvement that is disclosed by the lien shown in the last above numbered item.

85.    Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

86.    Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.:  00157121-994-LT2-JC

# EXCEPTIONS
## (Continued)

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

**END OF EXCEPTIONS**

---

## REQUIREMENTS SECTION

1.      The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

Limited Liability Company:          The Source at Beach, LLC

    a)      A copy of its operating agreement, if any, and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

    b)      If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps.

    c)      If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member.

    d)      A current dated certificate of good standing from the proper governmental authority of the state in which the entity is currently domiciled.

    e)      If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

    f)      If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

    g)      Each member and manager of the LLC without an Operating Agreement must execute in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

---

### END OF REQUIREMENTS

---

# INFORMATIONAL NOTES SECTION

1.    None of the items shown in this report will cause the Company to decline to attach ALTA Endorsement Form 9 to an Extended Coverage Loan Policy, when issued.

2.    The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Commercial properties, known as The Source at Beach, LLC, located within the city of Buena Park, California, , to an Extended Coverage Loan Policy.

3.    Note:  The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

4.    Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

5.    Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

6.    Note:  Property taxes, including any personal property taxes and any assessments collected with taxes, are paid. For proration purposes the amounts are shown in the attached:

Hyperlink

---

## END OF INFORMATIONAL NOTES

---

Jordan Curiel (LA/Comm)/mn

WIRE SAFE™
Inquire before you wire!

# Wire Fraud Alert

*This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.*

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*               *Internet Crime Complaint Center:*
*http://www.fbi.gov*                                      *http://www.ic3.gov*

## Chicago Title Company

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone: (213) 488-4300 ● Fax: (213) 488-4377

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Company** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

## Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

## FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Effective August 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices.  If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics
<u>Cookies</u>. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

<u>Web Beacons</u>. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

<u>Do Not Track</u>. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

<u>Links to Other Sites</u>.  FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

### When Information Is Disclosed
We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;

Copyright © 2021. Fidelity National Financial, Inc. All Rights Reserved

- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

## Security of Your Information
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

## Choices With Your Information
If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

## Information From Children
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**Your Consent To This Privacy Notice; Notice Changes**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 714-2710 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

## ATTACHMENT ONE (Revised 05-06-16)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c) resulting in no loss or damage to the insured claimant;

    (d) attaching or created subsequent to Date of Policy; or

    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a.  building;

    b.  zoning;

    c.  land use;

    d.  improvements on the Land;

    e.  land division; and

    f.  environmental protection.

    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.  The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4.  Risks:

    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;

    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

---

Attachment One – CA (Rev. 05-06-16)                                                                          Page 1

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

c.   that result in no loss to You; or
d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.   Failure to pay value for Your Title.
6.   Lack of a right:
    a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.   in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.   Contamination, explosion, fire, flooding, vibration, fracture, earthquake, or subsidence.
9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
•   For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)    the occupancy, use, or enjoyment of the Land;
        (ii)   the character, dimensions, or location of any improvement erected on the Land;
        (iii)  the subdivision of land; or
        (iv)   environmental protection;
        or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
     (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
     (a)   created, suffered, assumed, or agreed to by the Insured Claimant;
     (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
     (c)   resulting in no loss or damage to the Insured Claimant;
     (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
     (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
     (a)   a fraudulent conveyance or fraudulent transfer, or
     (b)   a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).
The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

{Except as provided in Schedule B - Part II,{ t{or T}his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

## {PART I

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.}

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:}

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records. }
7.  {Variable exceptions such as taxes, easements, CC&R's, etc. shown here.}

**© California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)    the occupancy, use, or enjoyment of the Land;
   (ii)   the character, dimensions, or location of any improvement erected on the Land;
   (iii)  the subdivision of land; or
   (iv)   environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

**© California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

**PROOF OF SERVICE**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
333 S. Hope Street, 43rd Floor, Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled: **LENDER'S OBJECTION TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On September 15, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender**    rb@lnbyb.com
- **Christopher G. Cardinale**    ccardinale@agclawfirm.com, mgonzalez@agclawfirm.com
- **Michael G Fletcher**    mfletcher@frandzel.com, sking@frandzel.com
- **Amir Gamliel**    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Nancy S Goldenberg**    nancy.goldenberg@usdoj.gov
- **Peter F Jazayeri**    peter@jaz-law.com
- **Daniel A Lev**    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- **Robert K Lu**    ewu@reidwise.com
- **Kyle J Mathews**    kmathews@sheppardmullin.com
- **Juliet Y Oh**    jyo@lnbyb.com, jyo@lnbrb.com
- **Ho-El Park**    hpark@hparklaw.com
- **Ronald N Richards**    ron@ronaldrichards.com, morani@ronaldrichards.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 15, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL:**
The Honorable Erithe A. Smith
United States Bankruptcy Court – Central District of California
411 West Fourth Street, Suite 5040
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 15, 2021 | Margaret Tzeng | /s/ Margaret Tzeng |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.