# EXHIBIT 3

## SUBORDINATION AGREEMENT

Stewart Title of California, Inc.
Santa Ana

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

EVERTRUST BANK
18645 E. Gale Avenue, Suite 110
City of Industry, California 91748
Attention: Annie Ng, First Vice President /
   Loan Service Manager

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

63.00

*$R 0 0 0 8 4 2 6 6 3 8 $*
2016000252450  4:30 pm 06/03/16
156 403 S12 F13   19
0.00 0.00 0.00 0.00 54.00 0.00 0.00 0.00

Assessor's Parcel Nos.: See Exhibit A
01180-186406

## SUBORDINATION AGREEMENT (BEACH ORANGETHORPE HOTEL, LLC)

NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.

This Subordination Agreement (Beach Orangethorpe Hotel, LLC) (this "Agreement"), dated for reference purposes as of the 24th day of May, 2016, is among THE SOURCE HOTEL, LLC, a California limited liability company ("Borrower"), BEACH ORANGETHORPE HOTEL, LLC, a California limited liability company ("Subordinate Lender"), DONALD CHAE, an individual ("D. Chae"), MIN CHAE, an individual ("M. Chae," and together with D. Chae, individually and collectively, "Guarantor"), and EVERTRUST BANK, a California banking corporation ("Senior Lender").

### RECITALS

A.  Senior Lender has agreed to make a loan to Borrower in the original principal amount of Twenty Nine Million Five Hundred Thousand and No/100 Dollars ($29,500,000.00) (the "Senior Loan"). The Senior Loan is evidenced by, among other things, that certain Construction Loan Agreement between Borrower and Senior Lender dated as of May 24, 2016 ("Loan Agreement"), and a Promissory Note dated as of May 24, 2016 ("Promissory Note"), and is secured by, among other things, a Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (Leasehold) (the "Senior Deed of Trust"), executed by Borrower in favor of Senior Lender and dated as of May 24, 2016, to be recorded concurrently herewith in the Official Records of Orange County, California. The leasehold estate in the real property encumbered by the Senior Deed of Trust is legally described in Exhibit A attached hereto and is hereinafter referred to as the "Property". The Loan Agreement, Promissory Note, Senior Deed of Trust and other documents evidencing, securing, or otherwise relating to the Senior Loan, are collectively referred to as the "Senior Loan Documents".

B.  Subordinate Lender has agreed to make a loan to Borrower in the original principal amount of Ten Million and No/100 Dollars ($10,000,000.00) (the "Subordinate Loan"). The Subordinate Loan is evidenced by the following documents: (i) a Construction Loan Agreement dated as of June 1, 2014 (the "Subordinate Loan Agreement"); (ii) a Promissory Note dated as of June 1, 2014 (the "Subordinate Note") by Borrower; (iii) a Deed of Trust,

2162227.5

1

Assignment of Leases, Security Agreement and Fixture Filing dated as of June 1, 2014 (the "Subordinate Deed of Trust") by Borrower, to be recorded concurrently herewith in the Official Records of Orange County, California, and encumbering the Property; (iv) a Hazardous Substances Indemnity Agreement dated as of June 1, 2014 ("Subordinate Environmental Indemnity") by Borrower; (v) Hazard Insurance Disclosure dated as of June 1, 2014 ("Subordinate Hazard Insurance Disclosure") by Borrower; and (vi) Guaranty dated as of June 1, 2014 ("Subordinate Guaranty") by Guarantor. The Subordinate Loan Agreement, Subordinate Note, Subordinate Deed of Trust, Subordinate Environmental Indemnity, Subordinate Hazard Insurance Disclosure and Subordinate Guaranty are referred to herein collectively as the "Subordinate Loan Documents." Other than the Subordinate Loan Documents listed in this Recital B, there are no other agreements, documents, writings, arrangements, understandings, or otherwise, evidencing the Subordinate Loan.

    C.    As a condition precedent to the making of the Senior Loan, Senior Lender has required Subordinate Lender to subordinate the lien of the Subordinate Deed of Trust to the lien of the Senior Deed of Trust, and to subordinate Subordinate Lender's right to receive any and all payments, prepayments or other sums or monies under the Subordinate Loan Documents to Senior Lender's right to receive payment of the indebtedness secured by the Senior Loan Documents on the terms and conditions set forth below.

    NOW, THEREFORE, FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENTS

    1.    Subordination.

    1.1    <u>Lien Subordination</u>. Subordinate Lender intentionally and unconditionally subordinates the lien of the Subordinate Deed of Trust and all of Subordinate Lender's rights, remedies, and privileges thereunder and under the Subordinate Loan Documents to the Senior Deed of Trust and all of Senior Lender's rights, remedies and privileges thereunder and under the Senior Loan Documents. Nothing contained in the Subordinate Loan Documents shall operate to defeat, render invalid or impair the rights or liens of Senior Lender under the Senior Deed of Trust and the other Senior Loan Documents.

    1.2    <u>Payment Subordination</u>. Subordinate Lender agrees that its right to receive payments from Borrower or any Guarantor of any amount then due under the Subordinate Loan Documents ("Subordinate Indebtedness") shall be subordinated to the prior payment in full in cash of all amounts owing to Senior Lender under, and all right to receive payments from Borrower or any Guarantor then due under, the Senior Loan Documents ("Senior Indebtedness").

    (a)    Subsequent to the date hereof, Borrower shall not pay and Subordinate Lender will not demand or accept payment of any interest, principal or any other amounts (however characterized) in respect of the Subordinate Loan or receive any prepayments of the Subordinate Loan until all monies due from Borrower pursuant to the Senior Loan Documents shall have been paid in full. In

2162227.5

2

the event that Subordinate Lender receives any payment in violation of this paragraph, it shall hold such payment in trust for the benefit of Senior Lender and promptly deliver such payment to Senior Lender.

(b)  Subsequent to any event of default by Borrower and/or Guarantor under the Subordinate Loan Documents, Subordinate Lender shall not take any of the following actions without Senior Lender's prior written consent: (i) the exercise of any of its rights or remedies under the Subordinate Loan Documents (except advising Borrower and/or Guarantor, as the case may be, that Borrower and/or Guarantor, as the case may be, is (are) in default under the Subordinate Loan Documents, accruing interest at the default rate under the Subordinate Loan Documents and, in emergency situations, making advances or taking other actions reasonably necessary to preserve and protect the Property), including without limitation, (1) any action or proceeding for the appointment of a receiver or other action to divest Borrower of possession, management and/or control of the Property or any portion thereof or any interest therein, including without limitation, any rents, issues, profits, revenues or proceeds (including without limitation, insurance proceeds and/or condemnation proceeds) of the Property or any improvements thereon, (2) the commencement of a court action to foreclose the Subordinate Deed of Trust or to enforce any of the provisions thereof, (3) the commencement of proceedings for sale of the Property or any portion thereof under the power of sale granted by the Subordinate Deed of Trust, or (4) the acceptance of a deed in lieu of foreclosure from Borrower or any of Borrower's successors or assigns; or (ii) the exercise of any other rights or remedies available at law or in equity, with respect to the Property, including without limitation any rights of subrogation to the rights of Borrower with respect to the Senior Deed of Trust or the other Senior Loan Documents and/or the Property, except as otherwise provided herein.

(c)  Subordinate Lender shall from time to time, upon not more than ten (10) days prior written request, execute and deliver in recordable form, such additional documents or instruments as Senior Lender may require, in Senior Lender's sole discretion, in order to further evidence and confirm the subordinations provided for in this Agreement. Subordinate Lender shall also make a notation to the Subordinate Note stating that it is subject to the terms of this Agreement.

(d)  Subordinate Lender shall provide Senior Lender notice of any default under the Subordinate Loan Documents contemporaneously with the providing of notice by Subordinate Lender to Borrower and/or Guarantor of such default, if required to so provide such notice to Borrower and/or Guarantor. Additionally, if Subordinate Lender is not required to provide such notice to Borrower and/or Guarantor, Subordinate Lender shall provide notice to Senior Lender in the event Subordinate Lender has declared a default in writing under the Subordinate Loan Documents at or about the time Subordinate Lender does so.

(e)    Notwithstanding anything to the contrary in the Subordinate Loan Documents, including, without limitation, Section 4.20 of the Subordinate Loan Agreement and Section 5 of the Subordinate Deed of Trust, any and all condemnation proceeds and insurance proceeds shall be immediately be delivered to Senior Lender upon receipt by Borrower, Subordinate Lender or Guarantor, and Senior Lender shall apply such proceeds in accordance with the terms and conditions of the Senior Loan Documents.

(f)    Subordinate Lender shall not make any demand on any Guarantor in connection with the Subordinate Guaranty or any of the Subordinate Indebtedness until all monies due from Borrower pursuant to the Senior Loan Documents shall have been paid in full. In the event that Subordinate Lender receives any monies in violation of this paragraph, it shall hold such monies in trust for the benefit of Senior Lender and promptly deliver such payment to Senior Lender.

(g)    Subordinate Lender shall not make any demand on Borrower in connection with the Subordinate Environmental Indemnity or any of the Subordinate Indebtedness until all monies due from Borrower pursuant to the Senior Loan Documents shall have been paid in full. In the event that Subordinate Lender receives any monies in violation of this paragraph, it shall hold such monies in trust for the benefit of Senior Lender and promptly deliver such payment to Senior Lender.

1.3    Modifications of Senior Loan.

(a)    Subordinate Lender's agreement to subordinate the Subordinate Loan Documents and the liens created thereunder shall automatically apply to any and all additional advances, extensions, amendments or other modifications of the Senior Loan Documents or Senior Deed of Trust.

(b)    Subordinate Lender's agreement to subordinate the Subordinate Loan Documents and the liens created thereunder to the Senior Loan Documents and Senior Deed of Trust shall continue in full force and effect without the need for renewal of Subordinate Lender's promise and agreement of subordination, notwithstanding such additional advance, extension, amendment, or other modification. Furthermore, without limiting the generality of the foregoing, Subordinate Lender specifically acknowledges that its promise and agreement of subordination shall automatically apply to any and all additional advances, extensions, amendments, or other modifications of the Senior Loan Documents or Senior Deed of Trust arising in any of the following situations:

(i)    regardless of whether a default has occurred under the Senior Loan Documents, Senior Lender's election to advance additional funds to preserve or protect the Property and its security in the Property, including but not limited to advances to prevent waste or destruction, to pay or prevent liens, to pay taxes, insurance premiums, or other

assessments or charges against the Property, to defend Borrower's title or Senior Lender's lien priority, to pay collection costs or other expenses reimbursable by Borrower under the Senior Loan Documents, or to address any other risks reasonably perceived by Senior Lender as jeopardizing its security; and

(ii) regardless of whether a default has occurred under the Senior Loan Documents, Senior Lender's election to modify any other terms and provisions of its Senior Loan.

1.4 Modifications of Subordinate Loan.

(a) Neither Subordinate Lender, Borrower nor any Guarantor shall restate, modify, amend or otherwise alter any of the Subordinate Loan Documents without Senior Lender's prior written consent, which consent may be granted, denied or conditioned in Senior Lender's sole judgment.

(b) Any restatement, modification, amendment or other alteration of any of the Subordinate Loan Documents without Lender's prior written consent shall not be binding upon Senior Lender, and shall be of no force or effect as to Senior Lender.

2. Dealings With Borrower.

2.1 Senior Lender, in making disbursements pursuant to any of the Senior Loan Documents, has no obligation or duty to, nor has Senior Lender represented that it will, see to the application of any proceeds by the person or persons to whom Senior Lender disburses such proceeds, and any application or use of such proceeds for purposes other than those provided for in the Senior Loan Documents shall not defeat the subordination herein in whole or in part.

2.2 Senior Lender, in making disbursements pursuant to any of the Senior Loan Documents, may waive any and all conditions to a disbursement contained in the Senior Loan Documents. Any such waiver shall not defeat the subordination herein in whole or in part.

3. Representations of Subordinate Lender. Subordinate Lender represents and warrants to Senior Lender that, as of the date of this Agreement, (i) it is duly organized and validly existing under the laws of the jurisdiction of its formation and it has full power and authority to take, and has taken, all action necessary to authorize, execute and deliver this Agreement and any other documents required or permitted to be executed or delivered by it in connection with this Agreement and to fulfill its obligations hereunder; (ii) this Agreement has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable against such person or entity in accordance with the terms hereof, except as enforcement may be subject to bankruptcy, insolvency, moratorium, reorganization and other similar laws of general application relating to or affecting creditor's rights and to general equitable principles; (iii) no notices to, or consents, authorizations or approvals of, any person or entity are required for its due execution, delivery and performance of this Agreement; and (iv) all amounts owed by Borrower to Subordinate Lender under the Subordinate Note shall be due and

payable on the maturity date under the Subordinate Note, which maturity date shall be no earlier than June 1, 2019.

4. Other Provisions.

4.1 Subordinate Lender acknowledges and agrees that Senior Lender would not make the Senior Loan without this Agreement.

4.2 Subordinate Lender acknowledges having received and reviewed copies of all of the Senior Loan Documents and consents to and approves all of the provisions of each of the Senior Loan Documents and all other agreements delivered to Subordinate Lender, including, without limitation, any escrow or disbursement agreements, between Borrower and Senior Lender for the disbursement of the proceeds of the Senior Loan. Subordinate Lender shall deliver to Senior Lender true and correct copies of the fully executed Subordinate Loan Documents and copies of any future modifications or amendments to the Subordinate Loan Documents.

4.3 This Agreement constitutes the entire agreement between the parties, and shall supersede and cancel any prior agreements regarding the subordination of the Subordinate Loan Documents and any liens or rights created thereunder. This Agreement may be executed in counterparts, but shall not be binding on any party hereto until executed by all of the parties hereto.

4.4 If any provision of this Agreement is invalid, illegal, or unenforceable, such provision shall be considered severed from the rest of this Agreement and the remaining provisions shall continue in full force and effect as if the invalid provision had not been included.

4.5 This Agreement inures to the benefit of and is binding upon the parties hereto and their respective heirs, successors and assigns.

4.6 This Agreement is construed by and governed in accordance with the laws of the State of California.

4.7 This Agreement is not intended to create any joint venture, partnership or similar arrangement between Senior Lender and Subordinate Lender, or between Senior Lender and Guarantor.

4.8 Nothing contained in this Agreement is intended to affect or limit, in any way, the rights that any of the parties hereto may have against any person or entity not a party to this Agreement or, except as expressly provided herein, the rights that any of the parties hereto may have under the Subordinate Loan Documents or the Senior Loan Documents.

4.9 Any notice, request, demand, consent, approval or other communication provided or permitted hereunder, or that any party shall otherwise desire to give to another party in connection herewith, shall be in writing and be given by personal delivery, sent by nationally recognized private courier service or United States first class mail, postage prepaid, or transmitted by telecopy, delivered or addressed to the party for whom it is intended at its address set forth below.

| | |
|---|---|
| If to Senior Lender: | EVERTRUST BANK<br>18645 E. Gale Avenue, Suite 110<br>City of Industry, California 91748<br>Attn: Annie Ng, First Vice President /<br>  Loan Service Manager<br>Fax: (626) 854-9710 |
| If to Subordinate Lender: | BEACH ORANGETHORPE HOTEL, LLC<br>3100 East Imperial Highway<br>Lynwood, California 90262<br>Attn: Donald Chae & Min Chae<br>Fax: _____ |
| If to Borrower: | THE SOURCE HOTEL, LLC<br>3100 East Imperial Highway<br>Lynwood, California 90262<br>Attn: Donald Chae & Min Chae<br>Fax: _____ |
| If to D. Chae: | DONALD CHAE<br>3100 East Imperial Highway<br>Lynwood, California 90262<br>Fax: _____ |
| If to M. Chae: | MIN CHAE<br>3100 East Imperial Highway<br>Lynwood, California 90262<br>Fax: _____ |

4.10  In the event of any action or any suit with respect to this Agreement, or any documents executed pursuant hereto, whether or not suit is filed whether in federal court, state court, administrative proceedings, arbitration proceedings (if agreed upon by the parties hereto), insolvency proceedings, the prevailing party, in addition to all other sums to which it may be entitled by law, shall be entitled to a reasonable sum for attorneys' fees and costs incurred.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Subordinate Lender and Senior Lender have executed this Subordination Agreement (Beach Orangethorpe Hotel, LLC) as of the 24th day of May, 2016.

**SUBORDINATE LENDER:**

BEACH ORANGETHORPE HOTEL, LLC,
a California limited liability company

By: M&D Regional Center, LLC,
    a California limited liability company
Its: Manager

    By: M + D Properties,
        a California corporation
    Its: Manager

        By: _____
        Name: Donald Chae
        Its: Chief Executive Officer

**BORROWER:**

THE SOURCE HOTEL, LLC,
a California limited liability company

By: M + D Properties,
    a California corporation
Its: Manager

    By: _____
    Name: Donald Chae
    Its: President

**GUARANTOR**

_____
DONALD CHAE, an individual

_____
MIN CHAE, an individual

[CONTINUES ON NEXT PAGE.]

**SENIOR LENDER:**

EVERTRUST BANK,
a California banking corporation

By: _[signature]_
Name: ROBERT SITO
Title: EVP/CEO

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of _Los Angeles_ )

On _May 31, 2016_, before me, _Connie Dang_, a Notary Public, personally appeared _Donald Chae_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

[Notary Seal: CONNIE DANG, Commission # 2030624, Notary Public - California, Los Angeles County, My Comm. Expires Jun 23, 2017]

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of _Los Angeles_ )

On _May 31, 2016_, before me, _Connie Dang_, a Notary Public, personally appeared _Donald Chae_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

[Notary Seal: CONNIE DANG, Commission # 2030624, Notary Public - California, Los Angeles County, My Comm. Expires Jun 23, 2017]

[Notary Seal: CONNIE DANG, Commission # 2030624, Notary Public - California, Los Angeles County, My Comm. Expires Jun 23, 2017]

[Notary Seal: CONNIE DANG, Commission # 2030624, Notary Public - California, Los Angeles County, My Comm. Expires Jun 23, 2017]

2162227.5

10

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of Los Angeles          )

On May 31, 2016, before me, Connie Dang, a Notary Public, personally appeared Donald Chae, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

[Notary Seal: CONNIE DANG, Commission # 2030624, Notary Public - California, Los Angeles County, My Comm. Expires Jun 23, 2017]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of _____      )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of _Los Angeles_ )

On _May 31, 2016_, before me, _Connie Dang_, a Notary Public, personally appeared _Donald Chae_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _[signature]_

[Seal: CONNIE DANG, Commission # 2030624, Notary Public - California, Los Angeles County, My Comm. Expires Jun 23, 2017]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of _Los Angeles_ )

On _June 1, 2016_, before me, _Connie Dang_, a Notary Public, personally appeared _Robert Sato_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _[signature]_

[Seal: CONNIE DANG, Commission # 2030624, Notary Public - California, Los Angeles County, My Comm. Expires Jun 23, 2017]

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )
County of _____   )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature    _____

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )
County of _____   )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature    _____

**EXHIBIT A**
LEGAL DESCRIPTION

[SEE ATTACHED.]

The land referred to herein is situated in the State of California, County of Orange and described as follows:

THAT PORTION OF LOT 2 IN BLOCK 61 OF BUENA PARK, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18, PAGES 50 TO 52 INCLUSIVE, OF MISCELLANEOUS MAPS, AND THOSE PORTIONS OF LOTS 5 TO 9 INCLUSIVE OF TRACT NO. 1756, AS PER MAP RECORDED IN BOOK 60 PAGES 20 AND 21 OF MISCELLANEOUS MAPS, ALL IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

PARCEL 4A (LEVEL 1 - GROUND FLOOR LOBBY & ENTRANCE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 215.36 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 45.77 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE S 00°00'02" W 86.05 FEET, THENCE N 89°59'59" W 22.68 FEET, THENCE S 00°01'05" W 13.56 FEET, THENCE S 89°59'59" E 22.57 FEET, THENCE S 00°00'02" W 8.22 FEET, THENCE N 89°59'58" W 0.77 FEET, THENCE S 00°00'02" W 34.16, THENCE N 89°59'58" W 110.62 FEET, THENCE N 00°00'02" E 34.17 FEET, THENCE N 89°59'58" W 30.58 FEET, THENCE N 00°00'02" E 107.52 FEET, THENCE N 89°59'58" W 0.83 FEET, THENCE N 00°00'02" E 8.95 FEET, THENCE S 89°59'58" E 24.08 FEET, THENCE N 46°29'04" E 12.47 FEET, THENCE N 00°00'02" E 16.97 FEET, THENCE S 89°59'58" E 18.12 FEET, THENCE N 00°00'02" E 5.22 FEET, THENCE N 89°57'39" E 30.73 FEET, THENCE N 00°00'02" E 32.17 FEET, THENCE N 89°59'58" W 11.92 FEET, THENCE N 00°02" E 1.00 FEET, THENCE S 89°59'58" E 0.50 FEET, THENCE N 00°00'02" E 14.21 FEET, THENCE S 89°59'58" E 39.78 FEET, THENCE S 00°00'02" W 86.82 FEET, THENCE S 89°59'58" E 32.58 FEEL TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 77.76 FEET.

PARCEL 4B (LEVEL 1 - GROUND FLOOR STAIRS ON ORANGETHORPE AVENUE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF ORANGETHORPE AVENUE AS SHOWN ON SAID MAP S 89°27'51" E 199.02 FEET; THENCE LEAVING SAID CENTERLINE N 0°32'09" E 60.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE N 0°00'02" E 36.96 FEET; THENCE S 89°59'58" E 14.74 FEET; THENCE S 0°00'02" W TO A POINT ON SAID PARALLEL LINE; THENCE ALONG SAID PARALLEL LINE N 89°27'51" W 14.74 TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 77.76 FEET.

PARCEL 4C (LEVEL 1 - GROUND FLOOR STAIRS ON BRENNER AVENUE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 339.38 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 46.71 FEET TO THE TRUE POINT OF

BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE WEST 23.40 FEET; THENCE SOUTH 7.24 FEET; THENCE WEST 5.88 FEET; THENCE SOUTH 6.55 FEET; THENCE WEST 29.28 FEET; THENCE NORTH 13.79 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 77.76 FEET.

PARCEL 4D (LEVEL 2 - SECOND FLOOR HOTEL PARCEL)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 223.82 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 36.00 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE S 00°27'49" W 94.43 FEET; THENCE N 89°59'59" W 31.75 FEET; THENCE S 00°01'05" W 13.56 FEET; THENCE S 89°59'59" E 31.65 FEET; THENCE S 00°27'49" W 36.79 FEET; THENCE S 45°29'59" W 26.85 FEET; THENCE N 89°27'51" W 110.52 FEET; THENCE N 00°00'02" E 36.98 FEET; THENCE N 89°59'58" W 19.37 FEET; THENCE S 00°00'02" W 25.13 FEET; THENCE N 89°59'58" W 12.81 FEET; THENCE N 00°00'02" E 90.73 FEET; THENCE S 89°59'58" E 62.50 FEET; THENCE N 00°00'00" E 30.00 FEET; THENCE S 89°59'58" E 15.42 FEET; THENCE N 00°00'02" E 29.98 FEET; THENCE S 89°59'58" E 85.09 FEET; TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET.

PARCEL 4E (LEVEL 2 - SECOND FLOOR STAIRS ON BRENNER AVENUE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 339.38 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 46.71 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE WEST 23.40 FEET; THENCE SOUTH 7.24 FEET; THENCE WEST 5.88 FEET; THENCE SOUTH 6.55 FEET; THENCE WEST 29.28 FEET; THENCE NORTH 13.79 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 95.76 FEET.

PARCEL 4F (LEVEL 3 - THIRD FLOOR STAIRS ON BRENNER AVENUE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 339.38 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 46.71 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE WEST 23.40 FEET; THENCE SOUTH 7.24 FEET; THENCE WEST 5.88 FEET; THENCE SOUTH 6.55 FEET; THENCE WEST 29.28 FEET; THENCE NORTH 13.79 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 150.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET.

PARCEL 4G (LEVEL 3 - THIRD FLOOR STAIRS ON BRENNER AVENUE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND

BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 186.84 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 45.54 FEET TO THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE WEST 22.05 FEET; THENCE SOUTH 9.15 FEET; THENCE EAST 5.84 FEET; THENCE SOUTH 10.38 FEET; THENCE WEST 1.58 FEET; THENCE SOUTH 4.17 FEET; THENCE EAST 9.81 FEET; THENCE SOUTH 10.37 FEET; THENCE EAST 12.08 FEET; THENCE NORTH 9.62 FEET; THENCE EAST 1.44 FEET; THENCE NORTH 24.44 FEET TO THE SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 150.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET.

PARCEL 4H (LEVEL 3 - THIRD FLOOR STAIRS ON ORANGETHORPE AVENUE)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF ORANGETHOPE AVENUE AS SHOWN ON SAID MAP S 89°27'51" E 199.02 FEET; THENCE LEAVING SAID CENTERLINE N 0°32'09" E 60.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE N 0°00'02" E 36.96 FEET; THENCE S 89°59'58" E 14.74 FEET; THENCE S 0°00'02" W TO A POINT ON SAID PARALLEL LINE; THENCE ALONG SAID PARALLEL LINE N 89°27'51" W 14.74 TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 150.76 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 113.76 FEET.

PARCEL 4I (LEVEL 4 - FOURTH FLOOR HOTEL PARCEL INCLUDING DECK)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 353.11 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 36.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 36.00 FEET WESTERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF BRENNER AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE WEST 72.90 FEET; THENCE SOUTH 13.76 FEET; THENCE WEST 18.27 FEET; THENCE SOUTH 114.50 FEET; THENCE WEST 92.89 FEET; THENCE SOUTH 130.52 FEET; THENCE EAST 12.99 FEET; THENCE SOUTH 32.75 FEET TO A POINT ON A LINE PARALLEL WITH AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE AVENUE; THENCE ALONG SAID PARALLEL LINE S 89°27'51" E 143.94 FEET; THENCE N 45°29'59" E 26.85 FEET TO A POINT ON SAID PARALLEL LINE WITH THE CENTERLINE OF BRENNER AVENUE; THENCE ALONG LAST SAID PARALLEL LINE N 0°27'49" E 274.06 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 161.18 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 150.76 FEET.

PARCEL 4J (LEVEL 5 - FIFTH FLOOR HOTEL PARCEL)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 353.11 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 36.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 36.00 FEET WESTERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF BRENNER AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE WEST 72.90 FEET; THENCE SOUTH 165.38 FEET; THENCE WEST 6.81 FEET; THENCE

SOUTH 20.33 FEET; THENCE EAST 6.81 FEET; THENCE SOUTH 28.65 FEET; THENCE WEST 105.43 FEET; THENCE SOUTH 44.42 FEET; THENCE EAST 12.99 FEET; THENCE SOUTH 32.75 FEET TO A POINT ON A LINE PARALLEL WITH AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE AVENUE; THENCE ALONG SAID PARALLEL LINE S 89°27'51" E 143.94 FEET; THENCE N 45°29'59" E 26.85 FEET TO A POINT ON SAID PARALLEL LINE WITH THE CENTERLINE OF BRENNER AVENUE; THENCE ALONG LAST SAID PARALLEL LINE N 0°27'49" E 274.06 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 171.60 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 161.18 FEET.

PARCEL 4K (LEVEL 6 - SIXTH FLOOR HOTEL PARCEL)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 353.11 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 36.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 36.00 FEET WESTERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF BRENNER AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE WEST 72.90 FEET; THENCE SOUTH 165.38 FEET; THENCE WEST 6.81 FEET; THENCE SOUTH 20.33 FEET; THENCE EAST 6.81 FEET; THENCE SOUTH 28.65 FEET; THENCE WEST 105.43 FEET; THENCE SOUTH 44.42 FEET; THENCE EAST 11.33 FEET; THENCE SOUTH 32.75 FEET TO A POINT ON A LINE PARALLEL WITH AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF ORANGETHORPE AVENUE; THENCE ALONG SAID PARALLEL LINE S 89°27'51" E 145.60 FEET; THENCE N 45°29'59" E 26.85 FEET TO A POINT ON SAID PARALLEL LINE WITH THE CENTERLINE OF BRENNER AVENUE; THENCE ALONG LAST SAID PARALLEL LINE N 0°27'49" E 274.06 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 182.02 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 171.60 FEET.

PARCEL 4L (LEVEL 7 - SEVENTH FLOOR & ROOF HOTEL PARCEL)

COMMENCING AT THE CENTERLINE INTERSECTION OF ORANGETHORPE AVENUE AND BRENNER AVENUE AS SHOWN ON SAID MAP OF TRACT NO. 1756; THENCE ALONG THE CENTERLINE OF BRENNER AVENUE AS SHOWN ON SAID MAP N 0°27'49" E 353.11 FEET; THENCE LEAVING SAID CENTERLINE N 89°32'11" W 36.00 FEET TO A POINT ON A LINE PARALLEL WITH, AND 36.00 FEET WESTERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF BRENNER AVENUE, AND THE TRUE POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE WEST 72.90 FEET; THENCE SOUTH 165.38 FEET; THENCE WEST 6.81 FEET; THENCE SOUTH 20.33 FEET; THENCE EAST 6.81 FEET; THENCE SOUTH 28.65 FEET; THENCE WEST 105.43 FEET; THENCE SOUTH 44.42 FEET; THENCE EAST 12.99 FEET; THENCE SOUTH 32.75 FEET TO A POINT ON A LINE PARALLEL WITH AND 60.00 FEET NORTHERLY OF, MEASURED AT RIGHT ANGLES FROM, SAID CENTERLINE OF OANGETHORPE AVENUE; THENCE ALONG SAID PARALLEL LINE S 89°27'51" E 143.94 FEET; THENCE N 45°29'59" E 26.85 FEET TO A POINT ON SAID PARALLEL LINE WITH THE CENTERLINE OF BRENNER AVENUE; THENCE ALONG LAST SAID PARALLEL LINE N 0°27'49" E 274.06 FEET TO SAID TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THOSE PORTIONS LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF 210.00 FEET AND ABOVE A HORIZONTAL PLANE HAVING AN ELEVATION OF 182.02 FEET.

ELEVATIONS STATED HEREON ARE BASED ON THE NORTH AMERICAN VERTICAL DATUM OF 1988 (NAVD88) PER THE YEAR 2005 ADJUSTMENT BY THE ORANGE COUNTY SURVEYOR, USING THE FOLLOWING BENCHMARK:

OCS BM 404-31-05 ELEV.=80.151 FEET (NAVD88, YEAR 2005 LEVELED) STATION IS AN OCS

2162227.5

17

ALUMINUM DISK STAMPED 404-31-05 SET IN THE SE'LY CORNER OF A 15 FT. X 4.5 FT. CONCRETE CATCH BASIN, LOCATED IN NE'LY PORTION OF INTERSECTION OF STANTON AVE. & ARTESIA BLVD., 28 FT. N'LY OF THE CENTERLINE OF ARTESIA BLVD. & 81 FT. E'LY OF THE CENTERLINE OF STANTON AVENUE. MONUMENT IS LEVEL WITH THE SIDEWALK

APN: 276-361-20 and 276-361-22
(End of Legal Description)