Robert K. Lu
REID & WISE LLC
633 West 5th Street, 26th Floor
Los Angeles, CA 90071
619-300-1849
Email: rlu@reidwise.com

Edward Wu (admitted *pro hac vice*)
REID & WISE LLC
One Penn Plaza, Suite 2015
New York, New York 10119
Tel: (212) 858-9968
Email: ewu@reidwise.com

*Attorneys for Plaintiffs*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE SOURCE HOTEL, LLC, a California limited liability company,<br><br>    *Debtor and Debtor in Possession.* | Case No.: 8:21-bk-10525-ES<br><br>Chapter 11 |

JIAN HUA, HAIYUAN MA, JIAXIN BAO, JINGKUN SHAN, JUN LIU, ZHEN LIU, ZIYU LI, HONGWEI LIU, DONGMEI SHI, and BEACH ORANGETHORPE HOTEL, LLC,

    *Plaintiffs*

v.

SHADY BIRD LENDING, LLC,
EVERTRUST BANK,
M&D REGIONAL CENTER, LLC,
M+D PROPERTIES,
DONALD CHAE, and MIN CHAE,

    *Defendants.*

Adv. Pro. No. _____

**COMPLAINT FOR:**

   1) **BREACH OF FIDUCIARY DUTY;**

   2) **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**

   3) **CIVIL CONSPIRACY;**

   4) **CLAIM FOR A DEBT; AND**

   5) **EQUITABLE SUBORDINATION**

Beach Orangethorpe Hotel, LLC ("BOH1"), Jian Hua, Haiyuan Ma, Jiaxin Bao, Jingkun Shan, Jun Liu, Zhen Liu, Ziyu Li, Hongwei Liu, and Dongmei Shi (collectively, "Plaintiffs"), for their Complaint against Shady Bird Lending, LLC ("Shady Bird"), Evertrust Bank ("Evertrust"), M&D Regional Center, LLC ("M&D Regional Center"), Donald Chae, and Min Chae (together with Donald Chae, the "Guarantors"), and M+D Properties ("M+D Properties," and collectively with Shady Bird, Evertrust, M&D Regional Center, and the Guarantors, the "Defendants"), allege as follows:

## PRELIMINARY STATEMENT[1]

1.      Plaintiff, BOH1, which is a secured lender of the Debtor, and the remaining Plaintiffs, who are investors of BOH1, bring this adversary proceeding against (i) M&D Regional Center, the manager of BOH1, for breaching its fiduciary duties to BOH1 by facilitating the impermissibly excessive subordination of BOH1's secured claim to Evertrust's secured claim against the Debtor; (ii) M+D Properties, the Guarantors, and Evertrust for aiding and abetting and colluding in M&D Regional Center's breach of fiduciary duties; and (iii) Shady Bird, the assignee of Evertrust's secured claim, under the doctrine of equitable subordination.  Plaintiffs' equitable subordination claim against Shady Bird is a core proceeding.  All remaining claims are non-core, and Plaintiffs consent to entry of final orders or judgments by this Bankruptcy Court.

2.      M&D Regional Center, M+D Properties, and the Guarantors (collectively, the "Developer Group") worked together to raise capital for the development of a hotel that was being developed by the Debtor.  The Debtor and each entity in the Developer Group is, directly or indirectly, a wholly owned subsidiary of the Guarantors.

3.      The Developer Group raised $10 million of capital from the BOH1 Investors,

---

[1]    Capitalized terms that are used and not defined in this Preliminary Statement shall have the meaning ascribed to them in the other section of this Complaint.

who are all foreign individual investors, through the EB-5 investor immigration program.  The

Developer Group formed a limited liability company, BOH1, to serve as the lender, which the

Developer Group would control, to provide these funds to the Debtor.

4.      The Developer Group represented to the BOH1 Investors, in seven different

places in the private placement memorandum ("PPM") for BOH1, that BOH1's $10 million

secured loan to the Debtor would be junior only to a construction loan in the approximate

amount of just $16 million.

5.      Instead, the Developer Group obtained from Evertrust a senior construction loan

of $29.5 million—nearly *twice* the size of what was represented to the BOH1 Investors.  The

Developer Group Developer Group never asked or even informed the BOH1 Investors of this

senior loan.

6.      By facilitating this egregious subordination for the self-interested benefit of the

Developer Group, M&D Regional Center breached its fiduciary duties of loyalty and care to

BOH1 and the BOH1 Investors.

7.      The senior lender, Evertrust, was complicit in this tortious conduct.  When the

Evertrust Loan was made, Evertrust knew about the prior BOH1 Loan.  As a bank, Evertrust

would have extensively reviewed documents relating to the BOH1 Loan.  Based on such

review, Evertrust required the Developer Group to cause BOH1 to enter into a subordination

agreement to the detriment of BOH1 and the BOH1 Investors.

8.      Moreover, Evertrust provided financing despite flagrant signs of inappropriate

conduct by the Developer Group.  This included the obvious self-dealing nature of the

transaction whereby the Developer Group was causing BOH1 to be subordinated to Evertrust

in order to obtain financing for the benefit of the Debtor.  Evertrust knew the capital from

BOH1 was provided by the BOH1 Investors rather than from the Developer Group.  Evertrust

was well aware that, despite the patent conflicts of interest, Donald Chae signed the

subordination agreement on behalf of three parties: (i) BOH1, as the subordinating lender, (ii) the Debtor, as borrower, and (iii) on behalf of himself, as guarantor.

9.    When the Evertrust Loan was entered into, Evertrust knew that the Developer Group failed to record BOH1's lien, even though the BOH1 Loan was entered into approximately two years prior to the Evertrust Loan.  In fact, the Developer Group did not record BOH1's lien until approximately one year after the lien for Evertrust was recorded. When it was finally recorded, Evertrust entered into an agreement to reaffirm the subordination of BOH1 vis-à-vis Evertrust, which was again signed by Donald Chae on behalf of BOH1 and the Debtor.

10.    In addition, there are alarming irregularities concerning the documentation of the BOH1 Loan.  The BOH1 Loan Agreement, which bears a purported 2014 date, expressly references the $29.5 million Evertrust Loan, which was not entered into until 2016.  The BOH1 Loan Agreement even references the subordination agreement, defined as "that certain Subordination Agreement of even date herewith among [BOH1], [the Debtor], and EverTrust Bank."  These facts raise red flags as to when those agreements were actually drafted, who drafted those documents, and the knowledge and involvement of Evertrust in that process.

11.    Evertrust knew that the Developer Group was taking advantage of and violating their fiduciary duties to the EB-5 investors, yet Evertrust decided to do business with the Developer Group and engaged in transactions that would further the abuse of the EB-5 investors.

12.    After all of this, Evertrust sold its claim to Shady Bird, for a purported substantial discount from the face amount of the claim.  Shady Bird now stands in the shoes of Evertrust with respect to the claim arising under the Evertrust Loan.  Because Evertrust's prepetition conduct warrants subordination, the claim of Shady Bird must now be subordinated in order to avoid a grossly inequitable result for Plaintiffs.  Section 510(c) of the Bankruptcy

Code expressly provides that even an "allowed claim" may be subordinated to "all or part" of another claim under principles of equitable subordination.

<u>**JURISDICTION AND VENUE**</u>

13.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  The equitable subordination claim against Shady Bird is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K), and (O).  The claims against the remaining Defendants are non-core proceedings that are otherwise related to the Debtor's bankruptcy.  Therefore, the Court has subject matter jurisdiction over these claims under 28 U.S.C. § 157(c)(1).

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

<u>**PARTIES**</u>

15.    Plaintiff BOH1 is a California limited liability company.  Upon information and belief, BOH1's principal place of business is in California.

16.    Plaintiff Jian Hua is an investor of BOH1.  On or about September 9, 2021, he was elected as the Special Manager[2] of BOH1.  He is a citizen of China and currently resides in California.  Pursuant to the BOH1 Operating Agreement, the Special Manager has, *inter alia*, "the sole right and responsibility to represent [BOH1] in connection with negotiating, enforcing or otherwise dealing with the failure of the [Debtor] to pay the Loan when due to [BOH1], including but not limited to, enforcing [BOH1's] rights under the BOh1 Loan with the [Debtor], personal guarantees by Min Seok Chae, Donald Chae[.]"[3]

17.    Plaintiff Haiyuan Ma, an investor of BOH1, is a citizen of China and resides in California.

---

[2]    The term "Special Manager" shall have the meaning ascribed to it in the *Operating Agreement for Beach Orangethorpe Hotel, LLC*, dated as of August 1, 2013 (the "<u>BOH1 Operating Agreement</u>").

[3]    BOH1 Operating Agreement, § 5.2.4.

18.    Plaintiff Jiaxin Bao, an investor of BOH1, is a citizen of China and resides in the California.

19.    Plaintiff Jingkun Shan, an investor of BOH1, is a citizen of China and resides in New York.

20.    Plaintiff Jun Liu, an investor of BOH1, is a citizen of China and resides in California.

21.    Plaintiff Zhen Liu, an investor of BOH1, is a citizen of China and resides in Virginia.

22.    Platiniff Ziyu Li, an investor of BOH1, is a citizen of China and resides in China.

23.    Plaintiff Hongwei Liu, an investor of BOH1, is a citizen of China and resides in California.

24.    Plaintiff Dongmei Shi, an investor of BOH1, is a citizen of China and resides in California.

25.    Defendant Shady Bird is a California limited liability company.  Upon information and belief, its principal place of business is in California.

26.    Defendant Evertrust is a California banking corporation with its principal place of business in California.

27.    Defendant M&D Regional Center is a California limited liability company. Upon information and belief, its principal place of business is in California.  M&D Regional Center has been the manager of BOH1 since the formation of BOH1.  The Guarantors indirectly own 100% of the equity interest in M&D Regional Center.

28.    Defendant M+D Properties is a California corporation.  Upon information and belief, its principal place of business is in California.  M+D Properties is the manager of M&D Regional Center.  The Guarantors own 100% of the equity interest in M+D Properties.

6

29.    Defendant Donald Chae, upon information and belief, resides in California. Donald Chae is one of the Guarantors.  The Guarantors own, either directly or indirectly, all the equity interest in each entity in the Developer Group.  The Guarantors also own all the equity interest in the Debtor.

30.    Defendant Min Chae, upon information and belief, resides in California.

31.    Below is an organizational chart that sets forth the relationship among the Developer Group and BOH1:



## GENERAL ALLEGATIONS

32.    Prior to the commencement of its chapter 11 case, the Debtor had been

7

developing a hotel located at 6986 Beach Blvd., Buena Park, CA 90621. The hotel remains partially constructed.

33.    In order to finance the construction of the hotel, the Debtor obtained financing from: (i) BOH1, on or about June 1, 2014, in the form of a secured loan in the principal amount of $10 million (the "BOH1 Loan"), (ii) Beach Orangethorpe Hotel II, LLC ("BOH2"), on or about December 31, 2015, in the form of a secured loan in the principal amount of $11.5 million (the "BOH2 Loan"), (iii) Evertrust, on or about May 24, 2016, in the form of a secured loan in the principal amount of $29.5 million (the "Evertrust Loan"), and (iv) Beach Orangethorpe Hotel III ("BOH3"), on or about June 11, 2016, in the form of a preferred equity investment of $14.5 million.

34.    Each of the entities in the Developer Group was involved in raising capital for the development of the Debtor's hotel.

35.    The $10 million loan that was provided by BOH1 to the Debtor was funded by 20 individual foreign investors (the "BOH1 Investors") participating in the U.S. government's EB-5 immigrant visa program (the "EB-5 Program"). Each of the BOH1 Investors contributed $500,000, plus an administrative fee of $45,000.

36.    The funds provided by BOH2 and BOH3 to the Debtor were also funded by foreign investors participating in the EB-5 Program.

37.    The EB-5 Program, administered by the U.S. Citizenship and Immigration Services ("USCIS"), permits qualified foreign investors to obtain lawful permanent residence in the United States by investing in a commercial enterprise that meets certain qualifications, including creating or preserving at least ten jobs per investor.

38.    BOH1 was formed by the Guarantors and/or one of the other parties in the Developer Group.

39.    BOH1 was formed for the purpose of providing financing to the Debtor.

40.     After BOH1 was formed, M&D Regional Center was the sole manager for BOH1.

41.     As the sole manager of BOH1, M&D Regional Center owed fiduciary duties of loyalty and care to both BOH1 and the BOH1 Investors.

42.     In connection with raising capital from the BOH1 Investors, the Guarantors and/or one of the other parties in the Developer Group prepared and issued offering documents, including the PPM, to the BOH1 Investors.

43.     The PPM sets forth that the construction budget to develop the Debtor's hotel consists of (i) the BOH1 Loan, in the amount of $10 million, to be secured by substantially all of the Debtor's assets, and (ii) an as yet to be obtained senior construction loan, in the approximate amount of $16 million, to be secured by a senior security interest in substantially all of the Debtor's assets.

44.     The PPM set forth in seven different places that only approximately $16 million would be senior to the BOH1 Loan.

45.     Although the BOH1 Loan was entered into on or about June 1, 2014, no party in the Developer Group recorded BOH1's lien on the Debtor's assets at that time.

46.     Instead, the Developer Group then obtained $11.5 million of additional EB-5 financing from foreign investors (the "BOH2 Investors") by creating another entity, BOH2, to provide the BOH2 Loan to the Debtor.  The Developer Group represented to the BOH2 Investors that the BOH2 Loan would be secured by substantially all of the Debtor's assets, and would be *pari passu* with the BOH1 Loan.

47.     No party in the Developer Group obtained the consent of, or even informed, the BOH1 Investors with respect to the BOH2 Loan.

48.     After the BOH2 Loan was entered into on or about December 31, 2015, the Developer Group still did not record the liens for either BOH1 or BOH2.

9

49.    On or about May 24, 2016, the Developer Group obtained the Evertrust Loan in the principal amount of $29.5 million, secured by substantially all of the Debtor's assets.

50.    As such, although it was represented to the BOH1 Investors in the PPM that only approximately $16 million would be senior to the BOH1 Loan, the Evertrust Loan was obtained in an amount that was approximately double that size (i.e., $29.5 million).

51.    No party in the Developer Group obtained the consent of, or even informed, the BOH1 Investors with respect to the Evertrust Loan.

52.    At the time it entered into the Evertrust Loan, Evertrust knew about the BOH1 Loan and the BOH2 Loan.

53.    The BOH1 Loan and the BOH2 Loan are expressly referenced in the loan agreement for the Evertrust Loan (the "Evertrust Loan Agreement").[4]

54.    Upon information and belief, Evertrust reviewed the documents relating to the financing of the BOH1 Loan because, as a bank, Evertrust would not have provided financing to the Debtor without reviewing documents relating to known prior loans.

55.    Upon information and belief, Evertrust reviewed the PPM before entering into the Evertrust Loan.

56.    At the time it entered into the Evertrust Loan, Evertrust even required that BOH1 and BOH2 each enter into a subordination agreement (together, the "Subordination Agreements").[5]

57.    Donald Chae, one of the Guarantors, personally signed each of the Subordination Agreements on behalf of (i) BOH1 and BOH2, as the subordinating lenders, (ii)

---

[4]    *Construction Loan Agreement*, dated May 24, 2016, between the Debtor and Evertrust.

[5]    *Subordination Agreement (Beach Orangethorpe Hotel, LLC)*, dated as of May 24, 2016, among the Debtor, BOH1, the Guarantors, and Evertrust; *Subordination Agreement (Beach Orangethorpe Hotel II, LLC)*, dated as of May 24, 2016, among the Debtor, BOH2, the Guarantors, and Evertrust.

the Debtor, as the borrower, and (iii) himself, in his capacity as guarantor.

58.    Evertrust knew or should have known that the Guarantors were controlling BOH1 and BOH2.

59.    Evertrust knew that M&D Regional Center was the manager for BOH1 because such title is set forth in the signature block for the Subordination Agreements.

60.    Evertrust knew that, as the manager of BOH1 (a limited liability company), M&D Regional Center owed fiduciary duties to BOH1 and the BOH1 Investors.

61.    The Evertrust Loan provided financing for the benefit of the Debtor, which is wholly, indirectly owned by the Guarantors.

62.    Evertrust knew that the Evertrust Loan was a self-dealing transaction from the perspective of the Guarantors and/or the Developer Group.

63.    Evertrust knew that the capital provided by BOH1 to the Debtor pursuant to the BOH1 Loan was provided by the BOH1 Investors (rather than the Guarantors or any entity in the Developer Group).

64.    Evertrust knew that the subordination of the BOH1 Loan was to the detriment of BOH1.

65.    At the time that the Evertrust Loan was made, Evertrust knew that the liens for the BOH1 Loan and BOH2 Loan were not recorded, and that the Developer Group was responsible for recording those liens.

66.    Nevertheless, Evertrust entered into the Evertrust Loan with the Developer Group and recorded its lien before BOH1 and BOH2.

67.    The Developer Group did not record the BOH1 and BOH2 liens on the Debtor's assets until August 28, 2017, which was approximately three years after the BOH1 Loan was entered into, two years after the BOH2 Loan were entered into, and one year after the lien for Evertrust was recorded.

68.    After the BOH1 and BOH2 liens were finally recorded, Evertrust, BOH1, BOH2, and the Developer Group entered into agreements, dated June 29, 2018 (the "Reaffirmation Agreements"),[6] to reaffirm the subordination of the BOH1 Loan and BOH2 Loan vis-à-vis the Evertrust Loan.

69.    In the Reaffirmation Agreements, Donald Chae again signed on behalf of (i) BOH1 and BOH2, as the subordinating lenders, (ii) the Debtor, as the borrower, and (iii) himself, in his capacity as guarantor.

70.    Subsequently, Evertrust sold its interest in the Evertrust Loan to Shady Bird.

71.    Upon information and belief, the sale by Evertrust to Shady Bird of the interest in the Evertrust Loan occurred in December 2020.

72.    Upon information and belief, Shady Bird purchased the Evertrust Loan for $19 million,[7] even though the principal outstanding balance of the Evertrust Loan is $29.5 million.

73.    On February 26, 2021, the Debtor filed the above captioned chapter 11 case. Subsequently, Plaintiffs' counsel, in its capacity as counsel to three individual BOH1 Investors, requested certain information from the Developer Group, including the contact information for the investors of BOH1 and BOH2 for the purpose of soliciting a vote to appoint a Special Manager for BOH1 and BOH2 to protect the interests of the EB-5 investors during the Debtor's chapter 11 case.

74.    The Developer Group ignored the repeated requests for such information until,

---

[6]    *Reaffirmation of Subordination Agreement (Beach Orangethorpe Hotel, LLC)*, dated June 2018, among the Debtor, BOH1, the Guarantors, and Evertrust; *Reaffirmation of Subordination Agreement (Beach Orangethorpe Hotel II, LLC)*, dated June 2018, among the Debtor, BOH1, the Guarantors, and Evertrust.

[7]    See *Debtor's Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) / Debtor's Motion For Entry Of Order: (1) Authorizing Sale Of Substantially All Of The Debtor's Assets; (2) Authorizing The Debtor's Assumption And Assignment Of Ground Lease And Determining Cure Amount; (3) Waiving The 14-Day Stay Periods Set Forth In Bankruptcy Rules 6004(h) And 6006(d); And (4) Granting Related Relief; Memorandum Of Points And Authorities* [ECF No. 227], ¶13.

on September 2, 2021, the Bankruptcy Court ordered [ECF No. 225, 233] the Debtor to request that the Developer Group provide the contact information of the BOH1 Investors and the BOH2 Investors to Plaintiffs' counsel.

75.     Shortly after Plaintiffs' counsel received the contract information, on or about September 9, 2021, sufficient votes were received to duly appoint Jian Hua, an investor of BOH1, as the Special Manager for BOH1 and BOH2 [ECF No. 227].

76.     Plaintiffs' counsel, in its capacity as counsel to the Special Manager for BOH1 and BOH2, then requested from the Developer Group the loan documents for the BOH1 Loan and BOH2 Loan.  The documents sent by the Developer Group include the loan agreement for BOH1, dated as of June 1, 2014 (the "<u>BOH1 Loan Agreement</u>"),[8] and the loan agreement for BOH2, dated as of December 31, 2015 (the "<u>BOH2 Loan Agreement</u>").[9]

77.     Neither the BOH1 Loan Agreement nor the BOH2 Loan Agreement sets forth that it modifies, amends, or restates a prior version of the loan agreement.

78.     However, alarmingly, both the BOH1 Loan Agreement, bearing a 2014 date, and the BOH2 Loan Agreement, bearing a 2015 date, expressly reference the $29.5 million Evertrust Loan that was not entered into until 2016.

79.     Moreover, the BOH1 Loan Agreement references a "Subordination Agreement," which is defined in the BOH1 Loan Agreement to mean "that certain Subordination Agreement of even date herewith among [BOH1], [the Debtor], and EverTrust Bank."

80.     The reference to Evertrust in the BOH1 Loan Agreement and BOH2 Loan Agreement raises red flags as to when those agreements were actually drafted, who drafted those documents, and the knowledge and involvement of Evertrust in that process.

81.     Both the BOH1 Loan Agreement and the BOH2 Loan Agreement were signed

---

[8] *Construction Loan Agreement*, dated as of June 1, 2014, between the Debtor and BOH1.

[9] *Construction Loan Agreement*, dated as of December 31, 2015, between the Debtor and BOH2.

by Donald Chae on behalf of both the Debtor (as the borrower) and the lender.

## CAUSES OF ACTION

### COUNT 1 – BREACH OF FIDUCIARY DUTY
### (AGAINST M&D REGIONAL CENTER)

82.    Plaintiffs hereby incorporate all of the foregoing and subsequent paragraphs as if alleged herein.

83.    Until Jian Hua was appointed as the Special Manager of BOH1, which occurred on or about September 9, 2021, M&D Regional Center was the sole manager of BOH1.

84.    As the sole manager of a limited liability company, M&D Regional Center owed fiduciary duties of loyalty and care, under both the BOH1 Operating Agreement and California Law, to both BOH1 and the BOH1 Investors.

85.    M&D Regional Center breached its fiduciary duties by engaging in intentional and gross misconduct, including, but not limited to:

a.    Agreeing to permit the BOH1 Loan to be subordinated to the Evertrust Loan in an amount that was approximately twice the size represented to the BOH1 Investors in the PPM.

b.    Failing to consult or even notify the BOH1 Investors that M&D Regional Center was seeking to subordinate the BOH1 Loan to such a substantial extent.

c.    Agreeing to permit the BOH1 Loan to be *pari passu* with the BOH2 Loan.

d.    Failing to record and/or failing to timely record BOH1's liens on the Debtor's property.

e.    Failing to properly prepare loan documents on behalf of BOH1.

f.    Failing to properly protect BOH1's interest as a secured creditor of the Debtor.

g.    Facilitating self-dealing transactions for the benefit of the Developer Group.

14

86.    M&D Regional Center caused substantial monetary damages to BOH1 and the BOH1 Investors, who may also now lose their eligibility for permanent residency in the United States.

87.    The wrongful conduct of M&D Regional Center was willful, wanton, malicious, oppressive, and outrageous, and justifies an award of punitive damages in an amount sufficient to punish Defendants and deter future conduct of this type.

## COUNT 2 – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (AGAINST THE DEVELOPER GROUP AND EVERTRUST)

88.    Plaintiffs hereby incorporate all of the foregoing and subsequent paragraphs as if alleged herein.

89.    Each party in the Developer Group knew that M&D Regional Center owed fiduciary duties to BOH1 and the BOH1 Investors.

   a.    M+D Properties knew because it is the manager of M&D Regional Center (as well as the manager for the Debtor).

   b.    Donald Chae knew because he is the CEO and president of M+D Properties, and he signed virtually all of the operative documents in this case on behalf of both BOH1 (as lender) and the Debtor (as borrower), including, but not limited to, the BOH1 Operating Agreement, the BOH1 Loan Agreement, and the Subordination Agreements.

   c.    Each of the parties in the Developer Group knew that BOH1 was formed for the purpose of making the BOH1 Loan to the Debtor, because each of the parties in the Developer Group participated in its formation. Each of the parties in the Developer Group knew that M&D Regional Center was the manager and fiduciary of BOH1.

90.    Each of the parties in the Developer Group provided substantial assistance to M&D Regional Center to breach its fiduciary duties because the parties in the Developer

Group were the parties that controlled M&D Regional Center and caused it to breach its

fiduciary duties.

91.    Evertrust knew that M&D Regional Center owed fiduciary duties to BOH1 and

the BOH1 Investors because Evertrust was a party to the Subordination Agreements, wherein

M&D Regional Center is set forth in the signature block as the manager of BOH1.  Moreover,

prior to making the Evertrust Loan, Evertrust reviewed documents and conducted diligence

relating to the financing of the BOH1 Loan.  Evertrust knew that Donald Chae and the

Developer Group were controlling BOH1 because Donald Chae signed the Subordination

Agreements on behalf of BOH1 and M&D Regional Center (as well on behalf of the Debtor),

and Evertrust was a direct party and beneficiary of the Subordination Agreements.

92.    Evertrust provided substantial assistance in breach of M&D Regional Center's

fiduciary duties by providing financing to the Debtor and seeking the subordination of BOH1

despite recognizing flagrant irregularities, including, but not limited to:

  a. The repeated references in the PPM that only approximately $16 million

    would be senior to the BOH1 Loan.

  b. The failure of M&D Regional Center and the Developer Group to record the

    BOH1 liens.

  c. The decision by the Developer Group to cause BOH2 to be *pari passu* with

    BOH1.

  d. The obvious self-dealing nature of the transaction whereby the Developer

    Group was causing BOH1 to be subordinated to Evertrust in order to obtain

    financing for the benefit of the Debtor (which is owned by the Guarantors).

  e. The control and domination of BOH1 by the Developer Group despite how

    the capital from the BOH1 Loan was provided by the BOH1 Investors

    rather than from the Developer Group.

f. Irregularities in the documentation of the BOH1 Loan, such as the reference in the BOH1 Loan Agreement to the Evertrust Loan despite how the BOH1 Loan Agreement was dated as of June 1, 2014 (approximately two years prior to the date of the Evertrust Loan).

93.    Evertrust knew that the Developer Group was taking advantage and abusing their control over the EB-5 investors, yet Evertrust decided to do business with the Developer Group and engaged in transactions that would further the abuse of the EB-5 investors, including, but not limited to, entering into the Subordination Agreements and the Evertrust Loan.

94.    The participation of the Developer Group and Evertrust in M&D Regional Center's breach of fiduciary duties, as well as their acceptance of the benefits thereof, was a substantial factor in causing harm to BOH1 and the BOH1 Investors.  Indeed, without the Developer Group and Evertrust, M&D Regional Center could not have committed the breaches of fiduciary duties.  In addition to financial harm, the BOH1 Investors may now lose their eligibility for permanent residency in the United States.

95.    The wrongful conduct of the Developer Group and Evertrust was willful, wanton, malicious, oppressive, and outrageous, and justifies an award of punitive damages in an amount sufficient to punish Defendants and deter future conduct of this type.

<u>**COUNT 3 – CIVIL CONSPIRACY**</u>
<u>**(AGAINST THE DEVELOPER GROUP AND EVERTRUST)**</u>

96.    Plaintiffs hereby incorporate all of the foregoing and subsequent paragraphs as if alleged herein.

97.    The Developer Group and Evertrust conspired to cause BOH1 to be subordinated beyond the amount by which BOH1 was permitted to be subordinated in accordance with its representations to the BOH1 Investors.

98.    The Developer Group participated in this conspiracy to provide additional

financing for the benefit of the Debtor, which is owned indirectly by the Guarantors.

99.    Evertrust participated in this conspiracy for the benefit of earning interest and fees on the Evertrust Loan and to cause the entire amount of the Evertrust Loan to be senior relative to the BOH1 Loan.

100.   The Developer Group knew how much BOH1 was supposed to be subordinated because they formed BOH1 and prepared the PPM setting forth the representations regarding the limit of any subordination.

101.   Evertrust knew how much BOH1 was supposed to be subordinated because, as a bank, they would not have entered into the Evertrust Loan without first reviewing all the terms of the BOH1 financing.

102.   Together, the Developer Group and BOH1 acted in concert and in furtherance of the conspiracy by entering into the Evertrust Loan and the Subordination Agreements.

103.   The conduct of the Defendants caused substantial financial detriment to BOH1 and their EB-5 investors, who also now face the possibility that their application for permanent residency into the United States will be denied.

104.   The wrongful conduct of the Developer Group and Evertrust was willful, wanton, malicious, oppressive, and outrageous, and justifies an award of punitive damages in an amount sufficient to punish Defendants and deter future conduct of this type.

## COUNT 4 – CLAIM FOR A DEBT / BREACH OF GUARANTY (AGAINST THE GUARANTORS)

105.   Plaintiffs hereby incorporate all of the foregoing and subsequent paragraphs as if alleged herein.

106.   In connection with raising capital from the BOH1 Investors for the purpose of raising funds for BOH1 to lend to the Debtor, the Guarantors executed a personal guaranty

(the "Personal Guaranty")[10] for the benefit of BOH1.

107.    Plaintiffs are now entitled to enforce the Personal Guaranty pursuant to *inter alia*, section 5(B) of the Personal Guaranty, which provides that the Guarantors guarantee all obligations of the Debtor under the BOH1 Loan in the event of a bankruptcy proceeding by the Debtor.

## COUNT 5 – EQUITABLE SUBORDINATION
## (AGAINST SHADY BIRD)

108.    Plaintiffs hereby incorporate all of the foregoing and subsequent paragraphs as if alleged herein.

109.    Section 510(c) of the Bankruptcy Code expressly provides that even an "allowed claim" may be subordinated to "all or part" of another claim under principles of equitable subordination.

110.    Shady Bird is now the holder, as assignee, of the claims of Evertrust pursuant to the Evertrust Loan.

111.    As such, Shady Bird stands in the shoes of Evertrust with respect to the claims arising under the Evertrust Loan.

112.    As Evertrust's prepetition conduct warrants subordination for the reasons set forth above, the claims of Shady Bird must now be subordinated.

113.    Plaintiffs should not be denied the justice and protection afforded by the doctrine of equitable subordination simply because Evertrust divested itself of its claim.  This is particularly true where, as here, Shady Bird purportedly purchased the claim at a substantial discount from the face amount of the claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants, and each of them, as

---

[10]    *Guaranty (Beach Orangethorpe Hotel)*, by Min Chae and Donald Chae.

19

follows:

1) Judgment against Defendants for compensatory and exemplary damages in an amount to be determined at trial;

2) Judgment equitably subordinating all or part of Shady Bird's claim to the claim of BOH1;

3) Recission of the Subordination Agreements;

4) An injunction prohibiting Shady Bird from foreclosing on the Debtor's assets;

5) Punitive damages;

6) Prejudgment and post-judgment interest at the legal rate on all damages and sums awarded to Plaintiffs; and

7) Such other relief as this Court deems just and proper.


Dated: September 29, 2021                    Respectfully submitted,


By: _/s/ Edward Wu_____
      Robert K. Lu
      Edward Wu

      REID & WISE LLC
      633 West 5th Street, 26th Floor
      Los Angeles, CA 90071
      619-300-1849

      REID & WISE LLC
      One Penn Plaza, Suite 2015
      New York, New York 10119
      Tel: (212) 858-9968

      *Attorneys for Plaintiffs*

follows:

1)   Judgment against Defendants for compensatory and exemplary damages in an
     amount to be determined at trial;

2)   Judgment equitably subordinating all or part of Shady Bird's claim to the claim
     of BOH1;

3)   Recission of the Subordination Agreements;

4)   An injunction prohibiting Shady Bird from foreclosing on the Debtor's assets;

5)   Punitive damages;

6)   Prejudgment and post-judgment interest at the legal rate on all damages and
     sums awarded to Plaintiffs; and

7)   Such other relief as this Court deems just and proper.

Dated: September 29, 2021                    Respectfully submitted,


                                             By
                                                Robert K. Lu
                                                Edward Wu

                                             REID & WISE LLC
                                             633 West 5th Street, 26th Floor
                                             Los Angeles, CA 90071
                                             619-300-1849

                                             REID & WISE LLC
                                             One Penn Plaza, Suite 2015
                                             New York, New York 10119
                                             Tel: (212) 858-9968

                                             *Attorneys for Plaintiffs*

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>JIAN HUA, HAIYUAN MA, JIAXIN BAO, JINGKUN SHAN, JUN LIU, ZHEN LIU, ZIYU LI, HONGWEI LIU, DONGMEI SHI, and BEACH ORANGETHORPE HOTEL, LLC | DEFENDANTS<br>SHADY BIRD LENDING, LLC, EVERTRUST BANK, M&D REGIONAL CENTER, LLC, M+D PROPERTIES, DONALD CHAE, and MIN CHAE |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>REID & WISE LLC<br>One Penn Plaza, Suite 2015, New York, New York 10119<br>Tel: (212) 858-9968 | ATTORNEYS (If Known)<br>Ronald Richards & Associates, APC<br>P.O. Box 11480<br>Beverly Hills, CA 90213 |
| PARTY (Check One Box Only)<br>□ Debtor         □ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor       □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor         □ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor       □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
1) Breach of fiduciary duty    5) Equitable subordination 11 U.S.C. 510(c)
2) Aiding and abetting
3) Civil Conspiracy
4) Claim for a debt

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other    [3]

**FRBP 7001(8) Subordination of Claim or Interest**
☒ 81-Subordination of claim or interest    [1]

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)    [2]

| ☑ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand  $10,000,000 |

Other Relief Sought

Recission of contract

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Source Hotel | BANKRUPTCY CASE NO.<br>8:21-bk-10525-ES | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Honorable Erithe A. Smith |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>9/29/21 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Edward Wu | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.